# GOVERNMENT EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

IN RE GRAND JURY PROCEEDINGS

Misc. No. 09-84

MEMORANDUM OF LAW OF ███████████████ IN OPPOSITION TO GOVERNMENT'S MOTION TO TAKE DEPOSITIONS PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The government has moved, during the course of an ongoing grand jury investigation, for leave to take depositions of witnesses whom it claims will inevitably soon become unavailable (by death), purportedly to preserve their testimony for trial.[1]

Cutting directly to the chase, the government will no doubt suggest that, as the First Circuit said in United States v. Mann, 590 F.2d 361, 366 (1st Cir. 1978)(which involved post-indictment depositions): "[w]hen the question [about whether to allow a criminal deposition] is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence." This is clearly an attractive alternative for the court. No harm, no foul. Or so it seems. But to take the position that there is

---

[1] The facts presented in the government's motion are apparently compiled from its investigation and from interviews with and documents provided by one of the targets, Mr. Joseph Caramadre, and his counsel. ███████ does not concede the accuracy of any of these facts or the contents of any documents that may have been provided. It is expected that Mr. Caramadre's counsel will clarify, correct and otherwise supplement the factual background for the court at the hearing on September 17.

The government makes the statement in its motion that "[t]here is no dispute between the parties that the testimony of [the prospective deponents] is critical to the outcome of the investigation and any criminal case that may ensue." Gov't. Mot. at p. 2. Neither ███████ nor his counsel has met with or spoken to the government about this representation and it is therefore premature and without basis to say that it is indisputable. At the appropriate time, he may take the position that this testimony is not critical. What is important for purposes of this motion is that the government bears the burden of demonstrating to the court that the testimony is critical. ███████ does not concede that point and leaves the government to its burden.

Furthermore, there is nothing in the government's motion as submitted to the court that sets for the basis for a crime. ███████ disputes that the government's papers establish that there has been a crime committed and therefore contests the materiality of any proposed deposition testimony.

Finally, the government represents in its papers that "defense has asserted that [the prospective witnesses] were fully informed [of certain facts]." Gov't. Mot. at p. 3. ███████ submits that neither he nor his counsel has met with or spoken to the government and that he has therefore not made any assertions thus far.

really no downside to allowing the depositions to proceed because the court always holds the trump card of being able to exclude them from evidence at trial is a truly unacceptable expedient. If the opportunity to take depositions in these circumstances is not permissible, it is simply not available to the government, regardless of how attractive it may be to let the depositions proceed and worry about the propriety of such an order later.

In the case of pre-indictment depositions, this case is precariously perched at the top of the slippery slope. It is no answer to say that each case will be decided on its individual facts and circumstances. The entire universe of cases wherein the government seeks to take pre-indictment depositions is at issue in this proceeding, and with it a crucial point of substantive and procedural criminal law.

The government's motion for leave to take depositions must be denied for the following reasons:

I. Federal Rule of Criminal Procedure 15 ("Rule 15") does not permit pre-indictment depositions of potential trial witnesses.

There is precious little case law extant on the matter before the court. Probably the most explicative decision available is the en banc opinion of the Ninth Circuit in United States v. Hayes, 231 F.3d 663 (9th Cir.)(en banc), cert. denied, 532 U.S. 935 (2000), although, as the dissent correctly points out, the issue was neither raised nor decided there. 231 F.3d 678 (Reinhardt, J., dissenting). Despite the fact that the majority finds it unnecessary to decide the issue, the dissenters, in explaining their position, agree that the issue need not be decided but nevertheless articulate clearly and concisely the argument made here by ███████████ and further notes that in Hayes the government conceded this very point:

> The government concedes that Rule 15 plainly contemplates a post-indictment occurrence . . ., and that seems correct because, prior to indictment, there is no "defendant," "case," or even "party."

231 F.3d at 677.

Judge Reinhardt went on to describe "the text and purpose of Rule 15":

> The organizational structure of the Federal Rules of Criminal Procedure suggests that Rule 15 does not contemplate pre-indictment depositions. The rules are organized chronologically, beginning with the rule that describes a complaint. See Fed.R.Crim.P. 3. The rules then follow a time line from that point through the arrest or summons on complaint, initial appearance, indictment, arraignment, pretrial procedures, trial, and judgment. Rule 15 is located in the section entitled "Arraignment," which follows directly the section of the rules governing "Indictment and Information." (Within the "Arraignment" section, Rule 15 follows rules concerning joinder of indictments for trial.) Accordingly, the structure of the rules indicates that depositions under Rule 15 are intended to take place after a defendant has been indicted and thus underscores the adversarial nature of the Rule 15 proceedings.

231 F.3d at 677, n.1.

The court is obligated to carefully examine Rule 15 and its history in order to correctly decide this matter. The original Rule did not allow for the government to take depositions at any time. This was a right accorded to only defendants. See, Reporters' Notes to Rule 15. In fact, the Supreme Court and the various Committees charged with the responsibility of revising the rules of criminal procedure from time to time resisted for decades the government's requests to be allowed the right to take depositions, even of its own witnesses. Id. In order to obtain that right, the government invoked the "Organized Crime" talisman, and lobbied successfully for the passage of 18 U.S.C. §3503 (as part of the Omnibus Crime Control Act of 1970), which, in practice, required the government to make an assertion that the witness was involved in organized crime. [The statute was passed to allow the government to take depositions of witnesses who might be killed as a result of their cooperation with the government in organized crime prosecutions.] Rule 15 itself was not amended to give the government the authority to

request depositions until 1975, and even then with grave reservations by the Supreme Court.[2]

Both the statute, which expressly stated that it applied only after the return of an indictment, and the then current version of Rule 15(a) (absent this specific language), which the Supreme Court said in Dunn v. United States, 442 U.S. 100, 112, n.11 (1979) were "substantially the same", co-existed for over 25 years until, in 2002, the Rules were revised generally to make them more easily understood and the statute was simultaneously repealed. It is clear that what has always been contemplated by the drafters of Rule 15 was a post-indictment setting. Hayes, 231 F.3d 678 (Reinhardt, J., dissenting); see also, Judge Silverman's separate (concurring and dissenting) opinion in the original panel decision in Hayes, 190 F.3d 939, 948 (9th Cir. 1999).

In one of the only other cases to directly discuss this issue, the Fifth Circuit, in In re Application of Eisenberg, 654 F.2d 1107, 1113, n.9 (5th Cir. 1981), said

> there is no rule in criminal procedure analogous to Rule 27 by which a deposition can be taken by a potential defendant prior to the initiation of prosecution. Depositions of a party's own witness are allowed during the pendency of a criminal action only when preservation of the testimony is in the interest of justice due to exceptional circumstances. Fed.R.Crim.P. 15(a) (1975).

Likewise, in a decision that foreshadowed Judge Reinhardt's analysis of Rule 15 in Hayes, the Fourth Circuit held, in United States v. McHan, 101 F.3d 1027, 1038 (4th Cir. 1996), cert.denied, 520 U.S. 1281 (1997),

> Federal Rule of Criminal Procedure 15(a) speaks only of depositions by "a party" of "a prospective witness of a party." Because, in this case, [the defendant] had not yet been indicted or charged when [the witness] testified before the grand jury, Rule 15 was not an available avenue for preserving [the witness'] testimony.

The fact that there is so little case law on this point supports, rather than undermines ▓▓▓ ▓▓▓▓▓ position here, because what law there is clearly states that Rule 15 is not

---

[2] Even with those amendments, the Reporter noted that critical to the amendment was the terminology "for use at trial." There can be no trial without an indictment.

4

available in a pre-indictment setting. There is simply no case law that says otherwise. In the past, those pre-indictment depositions that occurred were largely conducted by agreement. See, e.g., United States v. Sanchez, 963 F.2d 152, 154-155 (8th Cir. 1992)(defendant challenging use of pre-indictment videotaped depositions held to have waived the right to object because counsel consented to the taking of the depositions at the time). In other cases, the fact that the indictment had already been returned was considered one factor in the evaluation of the admissibility of the depositions. See, e.g., United States v. Wilson, 36 F.Supp.2d 1177, 1181-1182 (N.D.Cal. 1999). Compare, United States v. Calderon-Lopez, 268 Fed.Appx. 279, 289-290 (5th Cir.), cert.denied sub nom. Rivas-Lopez v. United States, 129 S.Ct. 134 (2008).[3]

It is worth noting that if pre-indictment depositions were allowable at all, any target who became aware of a grand jury investigation and could identify witnesses meeting the potential unavailability criteria would seek to depose them on the same basis the government seeks to do so here, claiming such witnesses as "his" at the (inevitable) trial. Not only would the government object on the same grounds offered by ▓▓▓▓▓ here, it would also undoubtedly cite Rule 6 and allege interference with the grand jury's function. And it is highly unlikely that this court would grant such a motion. It is absolutely appropriate for the court to ask itself whether it would—or more accurately could—allow the targets to do what the government is seeking to do, and what it would it mean to the operation of the criminal justice system—particularly in the grand jury context—if the answer is "yes."

---

[3] The only circumstances under which pre-indictment depositions are allowed with any regularity is in conjunction with the issuance of material witness warrants as provided for in 18 U.S.C. §1344. This procedure was discussed at length in United States v. Awadallah, 349 F.3d 42, 59-61 (2d Cir. 2003), cert.denied, 543 U.S. 1056 (2005). In those cases, Rule 15 is used as an adjunct to the statute to provide a means for a material witness in a grand jury proceeding to be released from custody by providing a deposition in lieu of being held. But even in those cases, Rule 15(a)(2) provides that the deposition request must come from the witness himself. Moreover, the Rule is applied by labeling the government and the witness as "parties" who both have protectable interests before the grand jury. This not such a case.

It is important that the court keep focused on the fact that this is the government's motion and the government's burden. And as a threshold matter, the government bears the initial burden of demonstrating clearly that Rule 15 allows it to take these depositions. It has not and cannot meet that burden. The myriad other issues, and the other burdens the government must meet, including the burden to prove unavailability of the witnesses and materiality of the proposed testimony, are never reached. The court need go no further than the Rule itself. And the court should be mindful of the fact that, as noted above, since the Supreme Court was always loathe to give the government the ability to take depositions at all, it would be inconsistent with the legislative history of the Rule to broaden its scope to allow depositions in a pre-indictment setting.

II.   <u>The depositions are not permissible because they are not to preserve material testimony for trial.</u>

An additional burden the government must bear is to convince the court that the purpose of taking the requested depositions is to preserve material testimony for trial. But in a pre-indictment setting this is impossible. And again, the court must look not only to the Rule itself, but to the clear mandate that depositions in criminal cases are highly disfavored, limiting the Rule 15 procedure to very specific circumstances. <u>United States v. McKeeve</u>, 131 F.3d 1, 8 (1st Cir. 1997).

Leaving aside the issue raised earlier that there can be no trial unless there is an indictment, the government has itself identified two other problems. One is whether the testimony sought to be preserved is material and the other is whether the depositions are discovery tools. As to the first, defense counsel has had some conversations with the government counsel about the alleged criminal activity being investigated by the grand jury. The upshot of those conversations is that the government has two theories upon which they may

attempt a prosecution, but itself is not sure whether a crime has been committed. As represented to defense counsel (but not in the government's papers), the government has suggested that either the annuity companies, or insurance companies, or bond issuers were induced to part with funds as a result of misrepresentations made by one or more of the targets to the prospective deposition witnesses; or that the witnesses themselves were defrauded because in reliance of misrepresentations allegedly made by one or more of the targets, they were deprived of the right to seek additional compensation for themselves.

First of all, without an indictment to limn the charge, it is understandably difficult to determine to what extent the testimony of these witnesses would be material, and as to which of the targets. More importantly, however, the government has not been able to articulate a crime. Their second theory of prosecution sounds in the language of 18 U.S.C. §1346, which is available only for honest services cases. The first theory sounds in mail or wire fraud, but there is no suggestion that in all cases, obtaining money from one party in the course of incomplete representations to another party is necessarily illegal, particularly when the misrepresentations, if made at all, may not have been material to any transaction. In short, there has been no adequate explanation by the government to satisfy the burden of showing not only what the testimony is expected to be but that it is in fact material—and consequently, no showing that failure to preserve the evidence would result in a failure of justice.[4]

This is clearly yet another reason why pre-indictment depositions are not allowed. With an indictment in place, it is much easier for the court and the parties to determine what is material and what is not in the context of preserving evidence. The targets, having become

---

[4] The court is invited to look at F.R.Civ.P. 27. To take a pre-filing deposition in a civil case, a party would have to demonstrate more than the government has demonstrated—or can demonstrate—here. It is inappropriate to even consider the government's request in a criminal case when it cannot meet the lighter burden and lower standards employed in civil cases.

7

defendants, know what they are charged with and what theory of prosecute they must defense. They have an idea at least of what evidence can hurt them and what can help. There is a framework with which to conduct a <u>meaningful</u> deposition. In fact, where a defendant has sought to invoke Rule 15 even post-indictment, the court has determined that

> [i]n order to obtain leave of Court to take the deposition of a prospective witness, a Defendant must, of course, show that the anticipated testimony would be material to some defense. 2 Wright & Miller, *Federal Practice and Procedure*, [Section 241 (West 1982)] and cases cited at page 6.

United States v. Ontiveros-Lucero, 621 F.Supp. 1037, 1038 (W.D.Tex. 1985), aff'd., 790 F.2d 891 (5th Cir. 1986).

The second problem—the deposition as a discovery tool—is more troubling. The government has advised the court, in writing and orally, that these depositions are being requested strictly for the purpose of preserving testimony. Aside from the fact that the witnesses have not testified before the grand jury (so even the government does not know what testimony it is trying to preserve), the more significant problem is that because this is being done in the context of an ongoing grand jury investigation, these depositions are discovery devices, whether or not the government wishes to characterize them as such. Such use of depositions in a criminal case is strictly prohibited. See, e.g., In Re United States, 878 F.2d 153 156-157 (5th Cir.), cert.denied, Noons v. United States, 493 U.S. 991 (1989). In fact, at the chambers conference on September 15, the court specifically inquired of the government as to whether the depositions would be used in the grand jury and the government responded that they probably would.[5] This is not preserving testimony for trial. This is investigating and preparing a case for indictment, notwithstanding the government's stated purpose. In fact, the government represents twice in its motion that the proposed testimony "is critical to the outcome of the investigation" (Gov't. Mot.

---

[5] This fact alone presents several other difficult issues for the court which are discussed below.

at p. 2) and "critical to this investigation" (Gov't. Mot. at p. 3). The government has not, and cannot meet its burden to demonstrate to the this court that the purpose—and the effect—of taking the depositions will be to preserve material evidence for trial as opposed to collecting evidence of uncertain materiality as part of indicting the targets. No matter the label, any pre-indictment deposition is, of necessity, a discovery tool in the same way that Rule 27 depositions are in civil cases, despite the fact that they are described as being used "to perpetuate testimony." See, In Re Eisenberg, 654 F.3d at 1111-1112.

    III.    Other Complex Issues.

    1.    Discovery. As defense counsel pointed out at the chambers conference, any effort to take a meaningful deposition in these circumstances requires discovery material to be produced by the government. Although the government has said that the bulk of its evidence is documents already produced by one of the targets, that is not the only discovery that would be necessary. More important would be the 302 reports and interview notes of the F.B.I. agent that interviewed the witnesses and other individuals that were present with the witness during any meeting with the targets or who themselves had conversations with or knowledge of conversations with the targets. Since the depositions are being requested in the vacuum left by the absence of an indictment, the targets would need to have everything the government has by way of evidence, and perhaps other materials that have not yet been discovered by anyone. The government has told the court that it will "open its files" and provide the targets with everything they wish to see. While this may be a bona fide offer, defense counsel questions whether the government can make it and live up to it and whether the court can approve, countenance or order it. This is an ongoing grand jury investigation. The material at issue may become Jencks (18 U.S.C. §3500) material at some point (after a witness testifies at trial) but it is not yet. The

government may not be able to commit wholesale violations of Rule 6(e) in order to achieve its objective. More importantly, the court may not be able to be a party to such action. Clearly, without the discovery material, the depositions would be meaningless in the context of effective cross-examination and the requirements of confrontation. But can one Rule be violated in an effort to make applicable another Rule that truly does not apply, simply because the government wants it that way? And—far more importantly—should the court put its imprimatur on such a procedure?

Once again, the court must look to the Rules. Rule 6(e) places an absolute prohibition on the government. Its attorneys must not divulge matters occurring before the grand jury. And again, the court must look at the other side of the coin. In similar circumstances, where the targets may have sought the depositions and needed the discovery material to conduct them (because, inter alia, the discovery was necessary to determine what is material in their examinations), could the court even countenance a request to order the government to turn over the same material in violation of Rule 6(e) (or otherwise)? Defense counsel thinks not.

  2.  <u>Compromising the Grand Jury.</u> As noted above, the government has suggested that if allowed to take the depositions it will likely use them in the grand jury. Yet another reason for precluding the depositions is that they will require a protective order prohibiting their use before the grand jury. It will also be necessary for the court to order the government to certify its grand jury evidence in much the same way that it does in <u>Kastigar</u> proceedings, because if the allowance of the depositions is ultimately improper, there is no other way to prevent the infiltration of the depositions and evidence derived from them into the grand jury proceedings. They will not be able to be used, for example, by the F.B.I. to further investigate the case or develop leads from the testimony. After all, they are not being requested for

discovery purposes and cannot be used that way. These limitations, made necessary only by the government's request, clearly constitute an interference with the operation of the grand jury—something strictly prohibited by well-settled law. See, Branzburg v. Hayes, 408 U.S. 665, 702, n.39 (1972).

Of course, if the depositions are not sought or allowed until after an indictment is in place, there is no possibility of infecting the grand jury because it will no longer be considering this case and by law cannot be used to prepare a pending case for trial. In re Grand Jury Proceedings, 814 F.2d 61, 70 (1st Cir. 1987). Like so many other thorny and difficult issues, this one disappears with an order denying the government's request for the depositions.

3.   Prejudicial Pre-Indictment Delay. Without being accusatory, or challenging the bona fides of government counsel, the procedure being sought here creates an opportunity for further prejudice to be visited upon the targets. On the extremely limited basis presently available, and with the limited discovery that may (or may not) be allowed, these depositions even if taken, may require being continued again after the indictment (if any) is returned. The government could easily obtain these depositions and then wait until the witnesses become permanently unavailable before returning the indictment, thereby making it impossible for the targets—then defendants—to re-take or further take the depositions when they finally do know what they are charged with and what may be material to their defense. As the Supreme Court held in United States v. Lovasco, 431 U.S. 783, 791 (1977), ". . . prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." The court should not allow this situation to be created, regardless of whether anyone believes the government would act in such a way.

4.  <u>Condition and Rights of the Witnesses.</u> There are several issues that affect the prospective witnesses. Assuming that the government can or has met the burden it must bear to demonstrate to the court that the witnesses are likely to become unavailable in the very short term, the government must also demonstrate that the witnesses are able to withstand the rigors of the depositions. This cannot be done by providing a summary medical report that says, for example, that a witness has terminal cancer and is expected to live only another three weeks. It will require testimony. <u>See, e.g.,</u> <u>United States v. Edwards</u>, 69 F.3d 419, 438 (10th Cir. 1995), <u>cert.denied</u> <u>sub nom.</u> <u>Chaplin v. United States</u>, 517 U.S. 1243 (1996).[6] The court must satisfy itself and defense counsel that these witnesses are not likely to expire during the depositions, or have their already limited life expectancy further shortened or their fragile health otherwise compromised by depositions that are clearly not permitted by Rule 15 and the taking of which will necessarily require violations of other Rules as well.

A second issue is that the witnesses themselves have rights. Despite the government's characterization of the witnesses as victims, they may be participants in the allegedly criminal activity, to the extent the government has been able to articulate it. Whether the government believes that they may have exposure or not, they are entitled to be advised of their <u>Miranda</u> rights and they are entitled to counsel in the depositions. These matters would need to be addressed before any witness' deposition is scheduled.

5.  <u>Counsel for the targets.</u> As discussed in the chambers conference on September 15, the depositions would also require that each target have independent counsel. At present, three of the four targets are represented by only one defense counsel. The conflict of interest concerns have previously been articulated and even the government agrees that separate counsel

---

[6]Counsel for Mr. Caramadre has already raised another delicate issue concerning the effects on the witnesses and their families of the actual deposition proceedings. He will undoubtedly elaborate on that point at the hearing.

for each target would be a pre-requisite to any deposition. Moreover, each attorney representing a target must be prepared. While the two defense attorneys that have been involved in this matter for some time may (or may not) be able to adequately prepare, it is important that the other two defense counsel be equally prepared, because a lack of preparedness on the part of counsel for one target may compromise or damage one or more of the other targets.

IV. <u>Stay pending further proceedings.</u> It is the intention of ▮▮▮▮▮ to seek a writ of mandamus in the Court of Appeals if this court allows the depositions to go forward under any circumstances. He therefore requests that if such an order enters, that the court stay the order and allow adequate time for a petition to be filed in the Court of Appeals.

Respectfully submitted,<br>
▮▮▮▮▮<br>
By His Attorney<br><br>
<i>/s/ Anthony M. Traini</i><br>
Anthony M. Traini (#4793)<br>
56 Pine Street – Suite 200<br>
Providence, RI 02903<br>
Tel. 401.621.4700<br>
Fax 401.621.5888<br>
Email: amt@atrainilaw.com