# GOVERNMENT EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

* * * * * * * * * * * *
IN RE:                              *     **SEALED HEARING**
GRAND JURY PROCEEDINGS    *     SEPTEMBER 17, 2009
                                          *     PROVIDENCE, RI
* * * * * * * * * * * *


HEARD BEFORE THE HONORABLE WILLIAM E. SMITH
DISTRICT JUDGE
(GOVERNMENT'S MOTION TO TAKE DEPOSITION TESTIMONY)

**APPEARANCES:**

FOR THE GOVERNMENT:        LEE VILKER, ESQ.
                                             and JOHN McADAMS, ESQ.
                                             U.S. Attorney's Office
                                             50 Kennedy Plaza
                                             Providence, RI   02903

FOR MR. CARAMADRE:         ROBERT G. FLANDERS, JR., ESQ.
                                             Hinckley, Allen & Snyder, LLP
                                             50 Kennedy Plaza
                                             Suite 1500
                                             Providence, RI   02903

FOR ▮▮▮▮▮▮▮▮▮▮▮:              ANTHONY M. TRAINI, ESQ.
                                             56 Pine Street
                                             Suite 200
                                             Providence, RI   02903

FOR MR. RADHAKISTAN:       DAVID VICINANZO, ESQ.
                                             Nixon Peabody, LLP
                                             100 Summer Street
                                             Boston, MA   02110

Court Reporter:                    Anne M. Clayton, RPR
                                             One Exchange Terrace
                                             Providence, RI   02903


Proceeding reported and produced by computer-aided
stenography

2

# I N D E X

| COURT EXHIBITS | PAGE |
| --- | --- |
| 1 | 63 |

```
 1        THE COURT: Good morning. We're here in the
 2   matter of Grand Jury Proceedings in a motion of the
 3   Government, In Re: Grand Jury Proceeding.
 4        Let's begin by having counsel identify
 5   themselves for the record beginning with the
 6   Government, please.
 7        MR. VILKER: Good morning, your Honor. Lee
 8   Vilker, Assistant United States Attorney, and I'm
 9   joined by John McAdams.
10        MR. FLANDERS: Robert Flanders for the
11   Defendant, Joseph Caramadre.
12        MR. BRENNER: Your Honor, Jeffrey Brenner
13   representing Defendant, Raymour Radhakistan. I was
14   just asked this morning to appear. I will enter my
15   appearance electronically when I return to my office.
16   I was in Newport County this morning before Judge
17   Nugent, and my office has filed a motion to admit pro
18   hac vice David Vicinanzo, who is one of my partners.
19   As set forth in the motion, he is admitted in New York,
20   New Hampshire and various federal courts, and I'm
21   asking for his admission pro hac vice. Assuming that
22   that's granted, he will be conducting the proceedings
23   on behalf of our client here, and I'll sit in the seat
24   in the back.
25        THE COURT: Is he here?
```

4

1  MR. BRENNER: He is here.
2  MR. VICINANZO: I am, your Honor.
3  THE COURT: Okay. Why don't you pass the motion
4  up. Do you have the motion?
5  MR. BRENNER: I have a copy. The motion was
6  filed downstairs.
7  THE COURT: All right. We'll grant that -- just
8  pass the copy up. Could I just take a quick look at
9  it, please.
10 Where's Mr. Traini?
11 Go off the record a minute.
12 (Discussion off the record.)
13 THE COURT: We'll get that pro hac motion
14 entered but you can go ahead and take part in the
15 hearing. Is it Mr. Vicinanzo?
16 MR. VICINANZO: Vicinanzo, your Honor.
17 THE COURT: Vicinanzo?
18 MR. VICINANZO: Yes. And Mr. Traini. Do you
19 want to enter your appearance?
20 MR. TRAINI: I do, your Honor? I thought I did
21 that already. I'm sorry, Judge.
22 THE COURT: Just on the record, I just wanted
23 you to enter your appearance.
24 MR. TRAINI: I'm sorry. I'm appearing for
25 ▓▓▓▓▓▓▓▓▓▓ your Honor. I apologize.

```
 1        THE COURT:  Anyone else?
 2        Okay.  I just want the record to reflect that
 3   we've had a chambers conference in this matter.  The
 4   Government had filed a motion to take deposition
 5   testimony from various individuals, and I requested
 6   that the Government and the two attorneys for the
 7   identified targets at that time come into chambers.  We
 8   did have an informal discussion in chambers.
 9        Subsequently, I've received this morning
10   memoranda from the Government and from Mr. Flanders on
11   behalf of Mr. Caramadre and from Mr. Traini on behalf
12   of ███████████ the two targets.
13        So Mr. Vilker, the burden is on the Government
14   so I'll turn it over to you.
15        MR. VILKER:  Thank you, your Honor.  Your Honor,
16   a couple of the issues that you raised in the
17   conference I'd like to address first, that is the
18   Government making more of a showing of the physical
19   ailments of these nine individuals we want to depose,
20   and, also, information concerning their receptiveness
21   to being deposed as well as the order that I have now
22   sat down and gone through with the agent, giving our
23   best guess, and none of us are medical professionals,
24   but our best guess of the urgency with which each of
25   these needs to be deposed and by our proposed order
```

1  based on that criterion.
2      I'm prepared, your Honor, to either proffer
3  individual by individual what information we've
4  gathered. In many cases, I have some documentation I'd
5  like to hand up to the Court and to counsel. I'm also
6  prepared -- the FBI agent, Pamela McDaid, is here to do
7  it through her testimony. Some of the information is
8  gathered by the representations that these individuals
9  made to her in one-on-one meetings, and I'm prepared to
10  do this either way.
11      THE COURT: Well, since we met in chambers, I've
12  had the opportunity to read most, if not all of the
13  cases that you all have cited as well as peruse the
14  memoranda that have been filed, although those only got
15  to me this morning and I did have some other matters
16  this morning. And I have some serious concerns about
17  this. I'm wondering, since this has all happened so
18  fast, we're kind of making this up as we go, but I'm
19  wondering if it might not be more appropriate to
20  discuss and have you argue on the threshold issues on
21  the assumption that you could demonstrate the imminent
22  threat of death at some stage to all of these
23  individuals.
24      I'm not sure that the counsel for the targets
25  are really -- would really dispute that. I'm sure

```
 1    they're not ready to concede it, but I think their
 2    issues go -- the primary issues are not directed to the
 3    health of these individuals.
 4         So that might be a more productive way to move
 5    forward. If you have any thoughts on that or, counsel,
 6    if you have any thoughts on that.
 7         MR. VILKER: That's fine with the Government,
 8    your Honor.
 9         MR. FLANDERS: Your Honor, one matter that's a
10    threshold, and I agree with what your Honor just said,
11    is I wanted to point out that although Mr. Radhakistan
12    has been able to secure counsel, Mr. Vicinanzo, who was
13    admitted this morning, that was just done this morning.
14    The other named target, [REDACTED] is in the process
15    of still trying to obtain counsel.
16         So, you know, one real concern here, and I'm --
17    this is properly more coming from them than from me is
18    their ability to respond to this motion on such short
19    notice and, effectively, present themselves.
20         As your Honor has seen, we, on behalf of
21    Mr. Caramadre, and Mr. Traini, we have been able to
22    file something and do some research and get it to the
23    Court, but I am concerned about the other targets here
24    not yet having the ability to effectively respond to
25    this. I just wanted to bring that to the Court's
```

8

1  attention.
2  THE COURT: I appreciate that concern. I'm
3  concerned about it, too. And I think that it goes to
4  one of the sort of threshold issues that I wanted to
5  address and have the Government particularly address.
6  So why don't we talk about these issues.
7  I may just go forward and ask you my questions.
8  I have a lot of them.
9  MR. VILKER: If I can just interrupt for one
10 second, your Honor.
11 THE COURT: Sure.
12 MR. VILKER: Mr. McAdams took the lead in
13 drafting the brief to the Court and doing the research
14 under Rule 15. So if the questions your Honor is
15 getting to are the availability of these type of
16 depositions in a pre-indictment context, I would defer
17 to my colleague here.
18 THE COURT: All right. Well, I suppose most of
19 them are so that would be fine.
20 MR. VICINANZO: Your Honor, could I be heard
21 preliminarily just for a moment?
22 THE COURT: Sure.
23 MR. VICINANZO: Can I approach the lectern?
24 THE COURT: Yes.
25 MR. VICINANZO: I feel like I'm shouting from

```
 1   the back.
 2         THE COURT: No. You should talk from the
 3   lectern.
 4         THE COURT: Thank you, your Honor. David
 5   Vicinanzo. I'm with the law firm of Nixon Peabody in
 6   Boston and in other places.
 7         Judge, I was just retained and just met my
 8   client this morning. And it seems to me, the little I
 9   know of the case, that his rights, his very serious
10   Sixth Amendment rights are potentially at stake here.
11         THE COURT: That's what I'm going to try to get
12   to with the Government.
13         MR. VICINANZO: I'm not even prepared -- I don't
14   know enough to be intelligent on this. I've been doing
15   federal criminal law for almost a quarter century.
16   More than half of that as a prosecutor like them. I've
17   never seen anything like this so --
18         THE COURT: Neither has anyone else in the room.
19   So you're not alone.
20         MR. VICINANZO: I guess my point would be that
21   I'm not prepared really to represent him at this
22   hearing in a substantive way. And that would include
23   even responding to their arguments, even understanding
24   their argument well at this point.
25         So I really feel that I'm not in the best
```

```
 1   position to protect my client's rights. He was just
 2   informed, I'm told, by hearsay a couple of days ago --
 3   he wasn't informed, somebody else was informed that he
 4   may be a target. I've never heard that from the
 5   Government. I don't know.
 6       So I really think it's kind of premature to go
 7   forward with too much when I'm not in a position to
 8   really effectively represent my client.
 9       THE COURT: Well, at this point, I may not ask
10   you or expect you to say anything, and you may just
11   want to listen. I'm not going to put any burden on
12   you. But let me get on with what I want to do here.
13       MR. VICINANZO: Okay. Thank you. I'm just
14   preserving all of his rights.
15       THE COURT: Thank you.
16       MR. McADAMS: Good morning, your Honor.
17       THE COURT: Good morning. The first question I
18   have goes directly to the issues that Mr. Vicinanzo was
19   just trying to raise. And as I read the cases and
20   thought about this overnight, it seems a very serious
21   issue that is out here is the position that this puts
22   these targets into. To conduct a deposition before
23   there is an indictment places these targets in a
24   position where, it seems to me, they may be
25   jeopardizing their Fifth or Sixth Amendment rights.
```

11

1    Let me spell that out a little bit. Without an
2    indictment, the Defendants don't know yet what the
3    theory of the Government's case is, what the charge is.
4    And yet, if there's a deposition, counsel -- these
5    targets and their counsel are going to have to make
6    some decisions about, first of all, do they have their
7    counsel appear at that deposition, as a threshold
8    matter. Should counsel even appear. What if one of
9    these targets decides I don't even want my lawyer to go
10   because I'm not indicted, I don't know what the charge
11   is, I don't know what the Government's theory is, I
12   shouldn't be put in a position where my lawyer might
13   ask a question of the deponent that unknowingly could
14   be self-incriminating. If the target is having to
15   guess at what the theory is, he may not know what
16   questions to ask or not to ask.
17   Yet, if the attorney or if the target and his
18   attorney choose either not to go or to send an attorney
19   who then remains mute because they don't know the
20   theory, seems to me we're creating a potential Sixth
21   Amendment problem.
22   So I'm just -- I want you to talk about those
23   constitutional issues first and why this shouldn't wait
24   until there is an indictment.
25   MR. McADAMS: First of all, your Honor, I think

1   that the answer as to why it shouldn't wait until there
2   is an indictment is because of the inherently
3   exceptional nature of the circumstances that we're
4   dealing with here. We are dealing with a, granted,
5   alleged scheme which targeted terminally ill
6   individuals and used their information, made material
7   representations to these people and then used that
8   information in furtherance of a fraud scheme.
9       Now, roughly, of the 112 or so folks that are
10  involved in this, all but 9 have deceased due to the
11  inherent nature of the scheme. So the circumstances
12  themselves are so exceptional that were there no remedy
13  available to the Government to secure their testimony
14  for a future trial, this scheme would be unprosecutable
15  in all contexts.
16      That said, I think that the issues that you're
17  raising with respect to the Fifth and Sixth Amendment
18  rights of the Defendants are analogous to the same
19  situation that a target -- when I say Defendant, your
20  Honor, I do mean target. I apologize if I use that
21  phrase. My intent is targets. It's analogous to the
22  same situation that a target would be in when the
23  Government in the context of a grand jury investigation
24  seeks a material witness warrant, arrests the material
25  witness, and then subsequently deposes the material

```
 1   witness at that point in time pursuant to the Rules
 2   that are the same Rules that the Government is looking
 3   to follow here, Rule 15.
 4         So in that context, the same circumstances are
 5   out there and Congress clearly in 3144 has designed a
 6   structure for that to occur. And the Rules of Criminal
 7   Procedure anticipate that. First of all, Rule 1, which
 8   governs and defines the scope of the Rules of Criminal
 9   Procedure says all criminal proceedings in district
10   court, appellate courts and Supreme Court and case law
11   universally has found that grand jury proceedings fall
12   within that meaning. I'm not aware of any case that
13   says that it's not. And Rule 46 specifically addresses
14   the procedures that the Court should follow in, for
15   example, the instances where there is a material
16   witness being detained, they should, essentially, be
17   released unless they can get a deposition under Rule
18   15.
19         THE COURT: But if a material witness doesn't
20   have -- does he, I mean that's 15(a). So if 15(a)
21   clearly provides that a deposition is an alternative to
22   a detention of a material witness, does a material
23   witness have the same Sixth Amendment rights as a
24   target or a defendant?
25         MR. McADAMS: A material witness does have Sixth
```