1    Amendment rights, and so yes. What would normally
2    happen -- and, frankly, your Honor, the Government
3    could simply do this. The Government could go to your
4    Honor or to a magistrate with affidavits which
5    establish probable cause that each of these nine
6    individuals are material witnesses, seek warrants and
7    then, essentially -- I mean, I'm not suggesting that we
8    would actually want to have them arrested and detained,
9    but we could seek to go out and secure their testimony
10   through depositions; 3144, the material witness
11   statute, specifically says those witnesses cannot be
12   detained if a deposition can be taken to secure their
13   testimony. And so I think that that's the context that
14   we're in. And given the speed of these proceedings,
15   perhaps it's best to look at these folks as material
16   witnesses.
17            THE COURT: Can you point me to any case where
18   that's been done pre-indictment?
19            MR. McADAMS: Yes, your Honor.
20            THE COURT: Okay. Which ones?
21            MR. McADAMS: I cited a case in the memorandum
22   that I submitted this morning. It is *United States v.*
23   *Sharif*, which was -- and the cite is 343 F.Supp 2nd
24   610. It's a District Court decision out of the Eastern
25   District of Michigan. And in that case, the

```
 1   defendant -- excuse me, the Government obtained
 2   material witness warrants on three individuals and
 3   deposed them and then deported them, I believe, and
 4   subsequently indicted the defendant. And the Court
 5   approved that.
 6        The quote that I have that I cited in the
 7   memorandum this morning is that, quote: (Reading:) The
 8   Government deposed three witnesses regarding
 9   defendant's complicity and the criminal charge, end
10   quote, the day before that they were indicted.
11        And I think that Mr. Traini also noted in his
12   memorandum, your Honor, the context in which material
13   witnesses are more frequently deposed. I believe it
14   was Footnote 3 of Mr. Traini's memorandum. He cited
15   the Awadallah case, which I cited in my memorandum,
16   which I believe is another instance where material
17   witnesses were deposed pre-indictment.
18        Now, I don't entirely agree with all of the
19   arguments Mr. Traini made in his footnote. He cites no
20   authority for the proposition that that can only be
21   done on the witness's request. I think 3144's plain
22   language requires the Government to do a deposition
23   rather than detaining a material witness, if it's
24   possible.
25        THE COURT: What page of your memorandum is that
```

```
 1    quote?  I don't see it.
 2         MR. McADAMS:  My quote or Mr. Traini's footnote?
 3         THE COURT:  The quote from the Sharif case.
 4         MR. McADAMS:  It's on page three.  It's the
 5    first paragraph that begins:  Courts have approved
 6    these pre-indictment depositions.  I cite Hayes and
 7    after that I note in Sharif, the Government deposed
 8    three witnesses regarding the defendants' complicity in
 9    the criminal charge the day before they were indicted.
10    And I know I don't point out that that was material
11    witnesses in that specific quote, but it's my belief
12    that they are, that they were material witnesses in
13    that case.
14         And your Honor, what we're essentially proposing
15    here is to protect the Defendants' Sixth Amendment
16    rights.  One of the cases that both sides have been
17    sort of bandying about is this Ninth Circuit decision
18    Hayes, which the defense is relying on dicta in the
19    dissent.  The Government is noting that the majority
20    approved it without deciding whether it was appropriate
21    or not.  I think that emphasizes the point that we're
22    all aware of, which is there's not a lot of law on
23    15(a) depositions in virtually any context, but
24    particularly in a pre-indictment context.
25         But that case I think it's really important to
```

```
 1   note was pre-Crawford. What we are trying to do here
 2   is balance the Defendants' rights under Crawford. As I
 3   said, we could have simply gone in an ex-parte
 4   proceeding to the magistrate, sought material witness
 5   warrants, taken these deposition, provided notice to
 6   the Defendants that we were going to do them without
 7   accommodating their schedule in any fashion, simply
 8   taken them. And that would have allowed us to proceed.
 9   But we in a good faith effort --
10        THE COURT: That would have allowed you to get
11   the testimony before the grand jury. It wouldn't have
12   allowed you to avoid Crawford.
13        MR. McADAMS: It would not have allowed us to
14   avoid Crawford, exactly. And, therefore, we would have
15   been faced with a dilemma of, okay, we can go out there
16   and get this testimony without the Defendants being
17   present -- well, if they appeared, then we would have
18   or we would have had the argument, or we would have
19   made the argument that they may have waived their right
20   to cross-examine down the road at some future motion to
21   suppress. But the issue of whether or not we can go
22   out and take the depositions, we're discussing it as if
23   it's the threshold issue. There's no question that we
24   can go out and get depositions. The question is can we
25   just come to the Court and seek your approval without
```

1  going and getting material witness warrants from the
2  Defendant for the witnesses. So I think that there's
3  no way that the Government can be prevented from
4  deposing these folks. We can provide notice. They can
5  appear and cross-examine.
6      THE COURT: No, but that's not the point. I
7  understand the problem and the Ninth Circuit decision
8  was pre-<u>Crawford</u>. Now, the Government is in a
9  post-<u>Crawford</u> bind here, and you have a time problem
10 because of the health issues with these individuals.
11 I'm just not -- I understand the concern raised by
12 <u>Crawford</u>, but I just don't know that because of
13 <u>Crawford</u> do you now get to sort of convert material
14 witness depositions into, essentially, trial testimony.
15 And that's what's -- that would seem to be sort of an
16 odd result of what <u>Crawford</u> was all about.
17     MR. McADAMS: Well, your Honor, I think that the
18 issue would be whether or not they're admissible would
19 be based on the Rules of Evidence. And under Rule 804,
20 if the witnesses are truly unavailable at that point in
21 time and they're reliable, you know, significant
22 reasons to believe that it's reliable testimony, then
23 the Court would address that issue in terms of
24 admissibility at that point in time.
25     And I think that, frankly, with a lot of the

```
 1        issues that counsel have raised with respect to taking
 2        these depositions or not taking these depositions are
 3        actually properly vetted in terms of whether or not any
 4        such depositions should later be admissible in some
 5        future proceeding if a trial actually results.
 6             I mean, again, I emphasize that Rule 15 says
 7        that the Court has the authority in the interest of
 8        justice. And in this circumstance where exceptional
 9        circumstances and the interest of justice we are
10        attempting to preserve this testimony for future trial
11        recognizing that there's a possibility that that
12        testimony might ultimately be suppressed, we're going
13        to do everything we can to make sure that it is
14        admissible, but I point, again, to the Mann case, which
15        both myself and Mr. Traini cited as a First Circuit
16        case from 1978. If the Court is concerned it's a close
17        question, the Court should allow the deposition and
18        then at a future point when it has a more complete
19        record deal with its admissibility in part because I
20        think Mann explicitly states that the harm comes to the
21        defendant when the testimony is admitted at trial.
22        There's no harm now to these targets.
23             THE COURT:  To the extent you can discuss this
24        given the provisions of Rule 6, why not indict these
25        individuals if you think you are there? You're talking
```

```
 1   as if the testimony needs to be preserved for a trial.
 2   You talk as if you clearly understand the trial
 3   testimony that you need from these people. And if it
 4   is all that clear, then why isn't it reasonable to
 5   believe that you've developed a theory of a case which
 6   could get an indictment from a grand jury?
 7        MR. McADAMS: Your Honor, first of all, while
 8   this is in the context of grand jury proceedings, there
 9   has been no evidence before the grand jury. So the
10   extent I divulged to the Court or any of the parties
11   any information that we've learned, it's not 6(e)
12   material. It's from agent interviews. And we have
13   received evidence based in the context of agent
14   interviews which lead us to the belief that at this
15   stage, this very early stage of the investigation that
16   there is a viable theory of prosecution, and that is,
17   if I may summarize it, that the targets or some of the
18   targets made false material representations to these
19   terminally ill individuals in order to induce them to
20   provide information and to sign documents including
21   identity information, which was then used to perpetrate
22   a fraud on these financial service companies. And so
23   in essence, that's the nature of the fraud scheme.
24        And could we seek an indictment based on the
25   interviews that we have at this point plus some other
```

1  documents? Quite possibly, your Honor. As the Court
2  knows, the standard for getting an indictment is
3  probable cause. That is not generally, although we
4  have permissible, that's not generally how we operate.
5  We don't like to bring charges against defendants
6  unless we believe that we're going to be able to prove
7  them at trial.
8      So what we are seeking to do here is not --
9  excuse me, what we're seeking to do here is truly to
10 preserve their testimony because let's say we go and
11 seek an indictment from these folks, then based on the
12 information that we have now, the defendant has now
13 been publicly indicted and has been publicly charged
14 with these crimes based on a good faith probable cause
15 standard, and yet we may not have that testimony
16 available at trial to prove. And the defendant -- in
17 one case, your Honor, the Government submitted -- the
18 Government knew that a witness, material witness,
19 material not in the material witness warrant sense, but
20 a key witness in the case was terminally ill, and the
21 Government chose not to do a Rule 15 deposition. The
22 case is McHan. The defense cites it. The Government
23 instead uses at trial that witness's grand jury
24 testimony and the Court admitted it as reliable
25 testimony. And the defense in that case complained

1  that, look, our Sixth Amendment rights are violated.
2  And the Court of Appeals upheld it. Now, that was,
3  again, a pre-Crawford case.
4      So we would be in that situation where there's
5  case law out there that says we can do it but in order
6  to protect the defendant's Crawford rights, we think
7  the appropriate way to do it is -- and also to not make
8  an indictment of these targets that we're not going to
9  be able to prove at trial regardless of the fact that
10 we may have a good faith reason to bring it at the
11 grand jury stage, we are attempting to do, to secure
12 their testimony for trial so that it's available at
13 that point. And not only secure it at trial, but so
14 the defendants have an opportunity to cross-examine
15 those witnesses.
16     THE COURT: It seems to me you might be cutting
17 off your nose to spite your face, in a way. Maybe
18 that's not the right term, but by rushing this
19 pre-indictment, you may inadvertently be giving the
20 targets a better argument to exclude the evidence when
21 it comes time for trial because you did all this
22 pre-indictment, if I were to allow it.
23     MR. McADAMS: I understand that, your Honor. If
24 we don't do this, these people will die. They will not
25 be available. And so -- I mean, 112 people, 9 are

```
 1    alive at this point. And that's only since -- we've
 2    been looking at this case for a couple of months, your
 3    Honor. So they are going to die. Every single person
 4    that has been involved in this scheme was a person who
 5    was identified by the targets, again, allegedly, on the
 6    basis of the fact that they were terminally ill. They
 7    were going to die soon. So we may be providing
 8    arguments for the defense down the road.
 9            On the other hand, if we go and simply obtain
10    the indictment and then are unable to prove the case at
11    trial because we didn't have this testimony, I think --
12    I don't think it's beyond the scope of logic that the
13    defendants will cry bad faith, that the Government
14    didn't seek to preserve their testimony for trial, went
15    out and made unsustainable allegations against their
16    clients. The counsel for the defense has already
17    implied that the Government is improperly conducting an
18    investigation and threatened to refer us to the Office
19    of Professional Responsibility in an investigation
20    that's mere weeks old.
21            THE COURT: Well, no one could say that you're
22    not trying. If I were to deny this motion, you would
23    have certainly tried to do it pre-indictment, and none
24    of the targets could claim that you didn't expend every
25    effort to try to get this information prior to bringing
```

24

```
 1    an indictment. And actually, it would be by virtue of
 2    their efforts that they stopped you from doing so.
 3         So it would be kind of hard, I think, for them
 4    to complain that you failed to secure the testimony
 5    pre-indictment if they're the ones that stopped you
 6    from doing so.
 7         If you then move forward, got the indictment,
 8    and then sought to preserve the testimony for trial,
 9    seems to me the Government is in a much safer position
10    in terms of the admissibility of that testimony at
11    trial.
12         MR. McADAMS: That may be, your Honor. Another
13    option that would be available to the Government, as
14    we've discussed briefly, is seeking material witness
15    warrants in order to secure their testimony. So I
16    don't really have a response to the point your Honor is
17    making. I think that's something the Government would
18    have to consider, and we don't make indictment
19    decisions, you know, on the fly, respectfully, your
20    Honor, so that's not something I'd be prepared to,
21    frankly, elaborate more on than I just have.
22         THE COURT: Right. Now, what do you say to this
23    argument that Rule 15 just historically does not
24    contemplate the use of this tool by the Government? I
25    think it was pointed out by counsel that Rule 15
```

1  originally was really only for defendants to secure
2  this testimony.
3       MR. McADAMS: I don't deny that that's the
4  history, your Honor. I looked at the history of the
5  Rule, and there is a long history of efforts by
6  Congress and the Rules Committee to provide this avenue
7  to the Government through a period of many, many years,
8  in which several times the Rule got to the Supreme
9  Court and the Supreme Court, without comment, I believe
10 without comment on any instance, did not approve the
11 use of the Government having the Rule 15 option
12 available. That changed some nearly 40 years ago in
13 1970 I think was the first time that the Government was
14 able to have the rule. And then subsequently, it's
15 been broadened.
16      So I guess one point to make is I'm not going to
17 deny that historically that was an issue. On the other
18 hand, the law is now the Government does have this
19 available. I think that the language of the Rule
20 anticipated that it would be primarily used in the
21 post-indictment context. That said, I think, clearly,
22 Rule 46 clearly anticipates in a pre-indictment context
23 that Rule 15 depositions are going to be taken because
24 it says pending indictment right in Rule 46 that a Rule
25 15 deposition may be taken of a material witness.

1   So I think that the focus that the Court should
2   be looking at on Rule 15 is the language that says: In
3   exceptional circumstances and in the interest of
4   justice. And that is what the Government is telling
5   the Court we are in right now, very exceptional
6   circumstances where witnesses are literally dying; and
7   in the interest of justice, in order to prevent what
8   may very well be -- what would be a miscarriage of
9   justice and, frankly, the alternative of rushing to
10  indict the Defendants is not necessarily a better
11  outcome in the interest of justice, whereas in this
12  context these proceedings would be -- are not public.
13  There's no public charge against the Defendants. The
14  Government and the Defendants can continue through the
15  process subsequent to the depositions to have
16  discussions about their materiality in terms of the
17  crime that would be alleged and so forth.
18      So I think that, frankly, this is the safest
19  route for the Defendants and that's why we have come to
20  the Court seeking approval rather than taking the more
21  aggressive route that we are entitled to.
22      THE COURT: So if the shoe was on the other
23  foot, let's say that the Defendants felt that these
24  individuals would be helpful to their case, even though
25  they haven't been indicted, are you saying that the

```
 1    Government would agree that a Defendant could -- I
 2    mean, a target could secure trial testimony pending
 3    prior to indictment under Rule 15?
 4         MR. McADAMS: I think it's a very tricky
 5    situation. I know that there are a lot of cases out
 6    there in which defendants have sought to do that and
 7    courts have said no. I know in another case before
 8    your Honor we addressed a similar issue in terms of
 9    defendants seeking to depose Government witnesses. I
10    think that it may very well be that the Government
11    would oppose it. I think that in every one of these
12    cases, and I think the case law says that, the Court
13    should make a close, fact-based case-by-case scenario
14    decision.
15         THE COURT: Well, just take exactly the same
16    facts.
17         MR. McADAMS: I don't see what harm there would
18    be to the Government in preserving the testimony of a
19    witness at this point. In fact, frankly, when counsel
20    for Mr. Caramadre and the Defendant and the Government
21    were discussing these depositions up until the day,
22    frankly, of the chambers conference the other day,
23    counsel for Mr. Caramadre had indicated there may be
24    some additional witnesses that he wanted to do Rule 15
25    depositions on, and we had indicated that we would be
```

```
 1   willing to do that.
 2            THE COURT: Slow down a little bit.
 3            MR. McADAMS: I apologize, your Honor.
 4       So we certainly had taken the position with
 5   counsel for Mr. Caramadre that that would be
 6   permissible, we were not going to oppose that.
 7       So if they have folks that they want to go and
 8   depose, in this specific case, given the extreme nature
 9   of this, of these circumstances, the Government would
10   have been amenable to that. I'm not going to take the
11   position that in every other case we would do that. I
12   can't answer that.
13            THE COURT: Now, are you in a position to speak
14   to the physical condition of these individuals?
15            MR. McADAMS: I think Mr. Vilker is in a better
16   position than I am to do that, your Honor.
17            THE COURT: All right. Mr. Vilker, just before
18   we give the targets a chance to talk about all this,
19   could you just address that?
20            MR. VILKER: Thank you, your Honor. We put the
21   witnesses, the proposed deponents in order, based on
22   how severe we believe their situation is now.
23       The first person we'd like to depose is █████
24   █████████████████████████ Westerly. We have before the
25   Court, and I'm happy to hand up to the Court a letter
```

```
 1   from the VA where he is receiving treatment, which says
 2   that he has been diagnosed with non-small cell lung
 3   cancer metastatic to the adrenal. He has very limited
 4   survival. His expected survival is in the months. And
 5   when his symptoms get worse, he will be a candidate for
 6   hospice care. He's met several times with the FBI
 7   agent who is reporting that his health is
 8   deteriorating. And according to her view, if we don't
 9   take his deposition in the next week or two, that will
10   be the end of [REDACTED] unfortunately.
11        The next individual is [REDACTED] He
12   has -- by the way, [REDACTED] we've talked to him
13   about the deposition. We are very sensitive to the
14   potential stresses it will add to their lives and that
15   is definitely one factor we are considering. If we get
16   to the point where this is approved and we're closing
17   in and if their health situation deteriorates and we
18   believe that this would cause too much stress for them
19   and their families, then we will in all likelihood
20   refrain from taking those particular depositions. But
21   up to now, [REDACTED] has indicated that he has no
22   objection to his deposition being taken.
23        The next individual is [REDACTED] He has
24   terminal -- he's 33 years old. He has terminal
25   osteomyelitis. This is a disease infecting the bone
```

```
 1    that resulted from him being shot several years ago.
 2    We have -- he informed the agent that doctors told him
 3    in November 2007 that the disease had progressed to his
 4    pelvis and that he had six months to three years to
 5    live. He's paralyzed and confined to a hospital bed.
 6    He also indicated that he has no objection to his
 7    deposition being taken now.
 8            The third individual on our list is ▓▓▓▓▓▓
 9    ▓▓▓▓▓▓ He has lung cancer. He has now gone back
10    into Miriam Hospital with pneumonia in his lungs. He
11    and his wife both told the agent that he's terminally
12    ill and they're not sure how much longer he has to
13    live. When he was told about the possible depositions,
14    he indicated he would be amenable to it but he would
15    not be able to go to court, were his words.
16            The fourth individual is ▓▓▓▓▓▓▓▓▓▓▓▓
17    of North Providence. He has emphysema and lung cancer.
18    We have a fax from the VA indicating that he has
19    metastatic lung cancer and pulmonary disease. He was
20    diagnosed with lung cancer ten years ago. Three and a
21    half years ago, doctors gave him seven months to live
22    and no one can figure out how he's still alive.
23            The fifth individual is ▓▓▓▓▓▓▓▓▓▓ of
24    Coventry. His wife told the agent that three years ago
25    Mr. Sanford was diagnosed with emphysema and chronic
```

```
 1    pulmonary disease.  Three years ago he was put on
 2    hospice care and was given six months to live.  We have
 3    a note from his doctor, and I'm happy to hand up all
 4    this evidence, that he suffers from chronic emphysema.
 5    We're trying to get additional documentation.  He's
 6    going through an additional personal crisis now.  His
 7    daughter, who is 55 years old, had a -- just had a
 8    stroke and she's in the hospital.  And given this
 9    situation, the family has expressed some hesitancy
10    about taking these depositions now.  It's something
11    we're sensitive to, and we're hoping that as time goes
12    on that that particular situation resolves itself.  And
13    if it doesn't, the Government will honor their wishes
14    and skip the deposition if the Court authorizes them.
15         The sixth individual is [REDACTED]  He's 86
16    years old.  We have a letter from his doctors listing a
17    whole long list of cardiological problems that he has.
18    He's indicated that he has no problem having his
19    deposition taken.
20         The seventh individual is a man in Las Vegas,
21    who just moved to Las Vegas a couple of years ago.  He
22    got involved in this while he was still in Rhode
23    Island.  He's [REDACTED] He is 62 years old.  He
24    is terminally ill with heart failure.  We have a report
25    of an interview that an investigator for an insurance
```

1  company did with him in which he reported that he was
2  told several months ago that he only had three months
3  to live, that he's diagnosed with heart failure and the
4  left side of his heart is entirely dead. He needs a
5  heart transplant to survive but he cannot get one.
6     The eighth individual is ███████████ of
7  Cumberland, Rhode Island. He has Stage IV stomach
8  cancer. He told the agent that he is dying. Just
9  yesterday the agent spoke with him. He went back to
10 the hospital and the cancer has returned and what they
11 had thought was a temporary remission has now ended.
12 He also indicated that he has no problem with having
13 his deposition taken.
14    The ninth individual is a man named ████
15 ████ who is 67 years old from Woonsocket. He's
16 terminally ill with emphysema, and we've been unable to
17 get any further information from him since the past
18 chambers conference.
19    There's really, respectfully, not going to be a
20 viable argument that this is not an exceptional case
21 with exceptional circumstances. These are nine very
22 important witnesses who will all be dead in the next
23 few months.
24    And your Honor, if I might address, I understand
25 the concern you raised about how will the Defendants