1  know exactly what the charges and what our theory is,
2  that would be spelled out in an indictment. And that
3  argument is very well taken; however, this is not
4  factually not a very complex case as far as these
5  individuals go. They were all approached by one of the
6  targets. They were told certain things about why they
7  were getting money and they signed some forms, usually
8  in one or two meetings. It's going to be very easy for
9  the targets to understand that the crux of their
10 testimony is what they were told about the documents
11 they were signing, whether they were told that it was
12 just charity or whether they were told that any
13 annuities or bonds would be purchased. It's really not
14 rocket science. And making an argument that it's
15 completely impossible to predict what this case will be
16 and exactly how we're going to charge it, in my view,
17 is really misleading. These people have one or two
18 interactions with some of the targets in this case, and
19 they can very easily be asked the same exact questions
20 they would be asked if they were at trial, which is
21 what was told to you, what was the reason why you
22 accepted this money, did you have any idea that your
23 name was going to be used. It's not that complicated.
24     And I would submit, your Honor, that the real
25 motivation is to not allow us to have these

      depositions, which they would be there, they would be able to cross-examine these defendants and their Crawford rights would be protected. So as time goes by these witnesses will disappear, and it will make the Government's job of bringing this case much more difficult.

      THE COURT: But every one of these witnesses has met with an investigator at this point, right?

      MR. VILKER: Everyone has met with the FBI agent except for Mr. Garvey in Las Vegas, we're still trying to arrange a meeting, or an investigator from one of these insurance companies.

      THE COURT: So if a grand jury were convened, you would be able to put the FBI agent on the stand to testify as to what each of these individuals has told the agent as to what happened with these individuals, right?

      MR. VILKER: Absolutely.

      THE COURT: So all of that could be put before a grand jury tomorrow.

      MR. VILKER: Absolutely.

      THE COURT: The grand jury is convened.

      MR. VILKER: That's true, your Honor. I guess, in listening to your questions to Mr. McAdams, a case like this to put together is enormously complex.

```
 1      There's lots of witnesses that need to be interviewed.
 2      They dealt with a lot of different social workers who
 3      were involved.  They got a legal opinion at one point.
 4      There's the fine tracing of where all the money went
 5      to.  The Government is not in a position at this
 6      moment, and I told counsel for Mr. Caramadre that this
 7      will likely be in all likelihood six months to another
 8      year until we're at a point where we can even make the
 9      decision do we have enough evidence to prove this case
10      beyond a reasonable doubt, which is the standard we
11      use.  We are nowhere near that point now.  By the time
12      we do a full investigation, which we owe to these
13      targets to make sure there's enough probable cause,
14      will be many months from now.  By that point, all of
15      these people will die.
16           The alternative of rushing to the grand jury,
17      getting an indictment and have a public accusation
18      against these individuals where we don't feel
19      comfortable there's enough evidence to convict these
20      people beyond a reasonable doubt would be a disservice
21      to them.  The end result of this investigation may very
22      well be a determination that we don't have enough
23      evidence, and that may be the end of it.
24           To require us to rush to the grand jury to get
25      an indictment when we have not completed our
```

```
 1    investigation, I think that would be much more of a
 2    travesty of justice than having depositions where they
 3    can appear, they can cross-examine these witnesses and
 4    later down the road we can examine the issue of whether
 5    Crawford has been satisfied, whether the constitutional
 6    rights have been protected, whether this is a viable
 7    exception to the hearsay rule. Right now, we're just
 8    trying to preserve some testimony so when it comes to
 9    trial, these people have a voice. And to deny it, and
10    this to me in the interest of justice, this is a case
11    where that phrase cries out for a judicial remedy.
12    This is the interest of justice. Without intervening
13    and taking the depositions now, these witnesses will be
14    gone, and, by and large, this will be an extremely
15    difficult case to prove. And basically, it's a case
16    that's directed at terminally ill individuals. And by
17    preventing us from at least recording their testimony
18    with them there, with them having a chance to
19    cross-examine it, it's basically saying you can have a
20    scheme directed at terminally ill individuals and,
21    guess what, you can never be charged for it.
22         We're just requesting assistance from the Court
23    in what we believe to be a truly extraordinary
24    circumstance. It's going to be a very, very rare case,
25    if ever again, that the Government will come in and
```

```
 1    seek to take Rule 15 depositions pre-indictment.
 2         We know this is unusual. We know there's not a
 3    lot of law. We know there's not a lot of precedent.
 4    We just believe this is such an extraordinary fact
 5    pattern where all these witnesses are on their deathbed
 6    that without judicial intervention and your authority
 7    now, a grave, grave injustice will take place.
 8         THE COURT: Thank you.
 9         All right. Rather than start this now, I think
10    what I'd like to do -- I've got to go to a meeting. It
11    won't take too long. So why don't we reconvene at one
12    o'clock. I know Mr. Flanders has an argument at 2:30,
13    but I think we should have plenty of time if we get
14    back here at 1:00 or shortly thereafter and then I'll
15    hear from all of you folks. And that will also give
16    you a chance to maybe think about what you've heard
17    here and decide how you want to approach this without
18    having to do it off the cuff. Okay. So let's take an
19    hour, and we'll reconvene at one o'clock.
20         (Recess taken at 12 o'clock)
21         THE COURT: All right. How would counsel like
22    to proceed?
23         MR. TRAINI: I'll go ahead, if it please the
24    Court, your Honor.
25         At the risk of snatching defeat from the jaws of
```

```
 1  victory, your Honor, you can stop me any time you're
 2  going to deny the Government's motion, and I won't be
 3  offended.
 4       THE COURT: All right.
 5       MR. TRAINI: I think there are a couple of
 6  points that need to be responded to in addition to what
 7  I raised in the memo that I filed, Judge. I think that
 8  we, once again, need to go back to the Rule. I think
 9  the problem that we have right now is that the
10  Government has the burden to demonstrate to the Court
11  that it has the authority to do this.
12       THE COURT: Before you get too far into the
13  Rule, what is your feeling about -- just assume that I
14  think that the Rule allows this. Just assume it for
15  purposes of this question. Do you have any dispute
16  about the quantum of proof that the Government has put
17  on with respect to the situation that these nine
18  individuals are in, the imminence of their demise?
19       MR. TRAINI: It's difficult to answer for a
20  couple of reasons, your Honor. One is that, for
21  example, I heard Mr. Vilker say that the FBI agent
22  recently interviewed one of the people and she
23  determined that he was about to die. I don't know what
24  her medical qualifications are.
25       Another one was, I think, ████████████ who
```

1  nobody can figure out why he's still alive after three
2  years when they told him he was going to be dead in six
3  months. He could live for another three years.
4      So I'm not sure that I'm satisfied with the
5  quantum of evidence that they've offered the Court
6  relative to this imminence of death, if you will. I
7  think we need some more of that. And I also have some
8  reservations about how we go about doing that because
9  this is all protected medical information. This is all
10 HIPAA information, Judge.
11     THE COURT: Those aren't your rights to assert.
12     MR. TRAINI: I understand that, but I don't know
13 that anybody's here asserting those rights and somebody
14 might want to do that. One of the things that is so
15 troublesome about this whole process is that lots of
16 people have lots of different rights and I'm not sure
17 that they're all being accounted for in the equation.
18 But having said that, it's difficult for me to just
19 concede that they've met that burden in addition to the
20 other ones that they haven't met.
21     THE COURT: Okay.
22     MR. TRAINI: I don't know if that answers your
23 question --
24     THE COURT: Yes, it does.
25     MR. TRAINI: -- but that's the best I can do.

1  Going back to the Rule, Judge, the Government
2  needs to demonstrate that they have the authority to do
3  this. The only place that authority can come from is
4  the Rule. There is no case law that supports the
5  Government's position. They haven't cited anything.
6  They haven't argued anything. They haven't brought you
7  anything. The only cases that are out there that we
8  know of that deal with this issue all say that Rule 15
9  depositions are not done in a pre-indictment context
10 for a variety of reasons. The <u>Mann</u> case, which both of
11 us cite in our respective memos, was a post-indictment
12 deposition case, not a pre-indictment case.
13    THE COURT: Realistically speaking, how could
14 you expect there to be any case law on this situation
15 given that it's <u>Crawford</u> that's really driving it?
16 <u>Crawford</u> is only a few years old.
17    MR. TRAINI: But even before <u>Crawford</u> --
18 <u>Crawford</u> isn't the only thing that's driving the bus
19 here, your Honor. You have to look at the Rule, which
20 you pointed out yourself earlier this morning, that
21 historically, this Rule was a defendant's rule. The
22 Government fought tooth and nail for decades to get the
23 right to do this, and every time they did, the Rules
24 Committee or the Supreme Court said no. The only time
25 they relented, when they didn't really, was the

```
 1      Government was able to convince Senator McClellan in
 2      the 1970's when they passed the Omnibus Crime Control
 3      Act to give them a statute because they couldn't get a
 4      rule so they got 3504, which said specifically after an
 5      indictment has been returned.  And it was only in
 6      organized crime cases, and you had to certify that you
 7      had a witness who was probably going to be killed
 8      because he was an organized crime witness.
 9           When that statute was repealed, it was repealed
10      as part of the amendments to the Rules, and done, as I
11      pointed out in the memo, the Supreme Court said that
12      the Rule and the statute was substantially the same.
13           Nobody ever contemplated pre-indictment
14      depositions for all the reasons that Mr. McAdams was
15      unable to articulate to you this morning.  I was
16      listening to that argument, and I couldn't make any
17      sense except for the fact that he was going all over
18      the place trying to find someplace to hang his hat.
19      And it isn't there.  We have to stick to the burden.
20      They have it.  They haven't met it.  They can't meet,
21      and there's no case law that allows them to do it and
22      that really should be the end of the matter.
23           And one of the reasons why that's the case, your
24      Honor, is because, as you again pointed out, because
25      you've obviously given this some thought, as we argued
```

```
 1    to you, this is -- we're all at the very top of the
 2    slippery slope here.  The application of Rule 15
 3    doesn't depend on whether it's rare or not rare or
 4    complex or simple.  The Rule is the Rule.  And if it
 5    doesn't allow for something, it doesn't allow for
 6    something, whether, by the way, it's the defendant that
 7    wants it, or the target that wants, or the Government
 8    that wants it.  And I can assure you that despite what
 9    Mr. McAdams said about his conversations with
10    Mr. Flanders, which, by the way, I had nothing to do
11    with, that if I was in here by myself not having had
12    any previous contact with him and I wanted to take
13    depositions of potential grand jury witnesses, you'd
14    already be off the bench having denied my motion.
15    There is no way in the world you're going to let a
16    potential defendant in a grand jury investigation muck
17    around with the grand jury and start taking depositions
18    of potential grand jury witnesses.  It isn't going to
19    happen.  That's why Rule 15 doesn't allow this.
20         The 3144 scenario is an entirely different
21    thing.  And to answer Mr. McAdams' question, what I was
22    referring to in my memo, which I think I cited in
23    Footnote 3 was Rule 15(a)(2) itself contains the
24    language that says that it is the witness that has to
25    request the deposition.  That is the witness's
```

1  get-out-of-jail card. Those statutes and the Rule in
2  connection with 3144 is designed for a specific
3  purpose. It's deposition in lieu of detention. That
4  is so a witness, usually a foreign national, can get
5  out of jail. That's what that is all about. It's got
6  nothing to do with this.
7      THE COURT: But if, as a matter of logic, if the
8  Government has the power to detain someone and deprive
9  them of their freedom in order to preserve their
10 testimony, then logically, why wouldn't they have the
11 ability to obtain it by virtue of a deposition, which
12 is much less intrusive.
13     MR. TRAINI: On the witness maybe, but detaining
14 a witness doesn't impact the rights of the target. It
15 impacts the rights of the witness. The deposition
16 impacts everybody's rights. And one of the problems we
17 have is, and you raised it yourself on the Sixth
18 Amendment issue, the whole point of the en banc opinion
19 in *Hayes* was in the ruling that *Hayes* had no Sixth
20 Amendment right, the target had no Sixth Amendment
21 right to counsel until he was charged.
22     He tried to make the argument that the
23 depositions triggered his Sixth Amendment right. And
24 the Court said no. And the problem that we have is the
25 Government can argue, if the depositions go forward,

```
 1   that whatever the deficiencies were in the depositions,
 2   that the targets had no Sixth Amendment rights anyway
 3   so there's no prejudice to them.  So if we're forced to
 4   do this, we can get blown out of the box later on the
 5   grounds that they can stand up and say you didn't have
 6   a Sixth Amendment right anyway because you weren't
 7   charged at the time.
 8           THE COURT:  I'm not sure they could get away
 9   with saying that, having already said that the reason
10   that they're making this motion in the first place is
11   because of Crawford.
12           MR. TRAINI:  But, Judge, with all due respect,
13   they don't get to confer constitutional rights on
14   people.  They don't get to decide whether we have them
15   or not.  And I can guarantee that they'll stand up in
16   the Court of Appeals and say they didn't have any Sixth
17   Amendment right because that would support the argument
18   that they will have to make at the time.  We're over
19   here today.  We're not in the First Circuit later on.
20   I can protect my client's Sixth Amendment rights.  I
21   don't need any help from them.  They don't get to
22   decide what we do about confrontation rights.  But I
23   don't think that you can put us in a position where we
24   have to choose between exercising or not exercising
25   rights that we may or may not have.  That's the
```

1  irreparable harm to the Defendants. Mr. McAdams was
2  wrong when he said that the only irreparable harm that
3  can come is to the Government. That's not true at all.
4  And the fact that there is no authority for this --
5      THE COURT: Well, the harm -- it may be that
6  both the Government and the targets have rights and
7  issues here that are simply presented by this situation
8  and are unavoidable. It seems to me that the rights
9  that you're talking about, I'm not denying that they're
10 real, but they seem more speculative or hypothetical
11 than the interests or the rights that the Government is
12 asserting, which is, Look, if we don't have this
13 testimony, then there is no case, it all goes away.
14 Which means that as long as you pick on people who are
15 ready to die, you get away with the crime. That seems
16 a lot more concrete to me than what you're -- I'm not
17 denying that you don't have issues. I just see an
18 irreconcilable tension here between the Government's
19 interests in preserving trial testimony and your
20 client's interests, Fifth and Sixth Amendment
21 interests.
22     MR. TRAINI: But there are two, I think, pieces
23 to the response to that, your Honor. One is that no
24 matter what they tell you, no matter how they label it,
25 they're not preserving trial testimony. They don't

1  even know what the trial is. They haven't indicted
2  anybody. These depositions, whether they say they're
3  to preserve trial testimony or not, these are discovery
4  depositions. They want to use this stuff in the grand
5  jury.
6      THE COURT: What if they were prohibited from
7  using it in the grand jury?
8      MR. TRAINI: Okay. That's fine. I raised that
9  issue in the memo. Does the Court want to get involved
10 in interfering with the grand jury process?
11     THE COURT: That's the Court's job is to deal
12 with grand jury problems, isn't it? That's when we're
13 supposed to step in. No, I don't want to get involved.
14     MR. TRAINI: I don't know that that's true, your
15 Honor. There's a line of cases starting with Branzburg
16 and every day there's another one where lower courts
17 are cautioned by courts of appeal not to fool around
18 with what goes on in the grand jury. And I think that
19 that's another slippery slope. You're walking into a
20 mine field with boots on if you're going to start
21 controlling what kind of evidence gets before the grand
22 jury, because as I said in the memo, that means we have
23 to do something like what you do in a Kastigar hearing.
24 Now we have to freeze their evidence. We have to find
25 out whether or not they used these depositions to

1  develop any other leads or any other evidence. This is
2  going to open up a whole Calandra-Costello problem down
3  the line, motions to dismiss. I can see where this is
4  going to end up, and I don't think that you want to be
5  there. And, more importantly, I don't think you have
6  to go there. This is a situation where the Government
7  cannot meet the burden. They can't even meet the
8  materiality burden on the case itself because, as
9  Mr. Vilker said to you -- and I'm really confused now
10 because I don't know if this case is simple or if it's
11 complicated. It's apparently simple enough that I
12 could take these depositions with my eyes closed but
13 it's so complicated that they can't indict it for six
14 or eight months because it's such a complex case, but
15 it's very simple for me to know exactly what questions
16 to ask or not ask.
17     THE COURT: That I appreciate. But in fairness,
18 what they're saying is that the factual information
19 relating to each of these individuals is fairly
20 straightforward and simple. The legal theories under
21 which they would prosecute your clients are not
22 straightforward and simple. They're complex. I'm not
23 sure those are irreconcilable.
24     MR. TRAINI: I accept that, Judge. The problem
25 is not whether they're irreconcilable. The problem is

```
 1      I don't know what to do in the deposition unless I know
 2      the complicated part.  I mean, yeah, I've been
 3      practicing law a long time but --
 4           THE COURT:  I asked the question when I first
 5      started inquiring of the Government and, you know, what
 6      happens if you don't even go to the deposition.
 7           MR. TRAINI:  Then they're going to say we waived
 8      our Sixth Amendment right to cross-examine, which we
 9      may not have had, but I'm sure the argument will be,
10      well, they didn't have it, but if they had it, they
11      waived it.  Or they might get the opportunity to argue,
12      like you said a minute ago, they gave it to us because
13      they're the Government.  They can give us our rights or
14      not give us our rights.  So they said, Okay, we gave
15      them their rights but then they waived them.  That's
16      the position that I don't think the Court can put us
17      in, and I think that's the reason, Judge, why Rule 15
18      depositions are not pre-indictment.
19           You saw the footnote in the Eisenberg opinion,
20      Footnote 9, where the Court specifically makes the
21      comparison to Rule 27 in the Civil Rules that says
22      there is no corresponding rule that allows them.  You
23      saw Judge Reinhardt's dissenting opinion in Hayes.  He
24      didn't have to say all that stuff because the issue
25      wasn't there, but he said it, and he was right, and he
```

1  was right for all the reasons he articulated, which I
2  can't do better than he did.
3      You saw it in <u>McHan</u> where the defendant made the
4  complaint as opposed to the Government and the court
5  said no. That's the reason why you don't do Rule 15
6  depositions pre-indictment because of all these
7  problems, not to mention all the stuff that happens in
8  the grand jury. I think it was a little disingenuous
9  for the Government to stand up here and say, well, it's
10 okay for us to do all this and produce all this
11 material because it's really not 6(e) material because
12 we haven't presented anything to the grand jury. The
13 opening line of their motion is the Grand Jury sitting
14 in the District of Rhode Island is currently
15 investigating the circumstances. I mean, it's either a
16 grand jury investigation or it isn't. Or we're closed
17 hearing or we're not. So I don't think that they can
18 have their cake and eat it, too.
19     And this is the last thing I'll say, and I'll
20 let Mr. Flanders take it from here, Judge, but it seems
21 to me that given what we have and what we know and the
22 historical aspects of the Rule and the fact that there
23 was a tremendous effort by the Supreme Court over the
24 years not to expand this Rule, I think it would be
25 flying in the face of the intention of the Supreme

```
 1    Court to go down this road.  And for all the other
 2    reasons that I said, I think the appropriate course of
 3    action is to deny the Government's motion.  Let them
 4    take a direct appeal from your order, which I believe
 5    they can do, or let them file a petition for mandamus.
 6    We shouldn't have to bear the burden of doing that
 7    because they're the ones that have to prove that they
 8    can do this and they just haven't been able to do it.
 9         THE COURT:  That's an interesting question
10    because I have been thinking about what would happen if
11    either I granted or denied this motion.  And it seemed
12    to me that either party would seek a stay or seek an
13    emergency hearing before the Court of Appeals to
14    challenge whatever I did.  But it also seems to me that
15    from reading these cases that the standard of review is
16    abuse of discretion.  So I think I've got a pretty good
17    deal of discretion here.  Now I'd just like to have you
18    comment on that.
19         MR. TRAINI:  I know the standard is abuse of
20    discretion and I know that that's a difficult row to
21    hoe.  But we don't get to the abuse of discretion issue
22    if the Rule doesn't allow this to be done.
23         THE COURT:  If it's legal error, then it's abuse
24    of discretion is your response.
25         MR. TRAINI:  Right.  And, you know, then I think
```