```
 1      that the other aspects of these arguments that are
 2      implicated like the grand jury issues and the analogous
 3      Kastigar issue, the discovery issues, the release of
 4      grand jury information, the potential damage to the
 5      witnesses, which we didn't even talk about because, you
 6      know, as I said in my memo, it's one thing for them to
 7      come in with a pile of medical files and say this guy
 8      is going to die. It's another thing to have a doctor
 9      get up and say, well, I don't know whether the guy can
10      stand the strain of a deposition, even though he thinks
11      he can do it.
12              So a lot of those things may be discretionary
13      and I know that it would be very difficult to overturn
14      that. But, again, it's not my burden. I didn't start
15      this problem. They did. They should have to carry the
16      ball. Let them carry it to Boston and do what they
17      have to do. This is their problem. And I think that
18      on the issue of the Rule itself, we don't reach your
19      discretion on that one. And that's something that I
20      think needs to get decided, whether it's here or at the
21      Circuit, but somebody's got to make this decision and
22      this is the case, perhaps, to make it in because this
23      is capable of repetition. I'm not going to be
24      surprised and I think Mr. McAdams and Mr. Vilker
25      referenced another case before you that I'm not
```

```
 1   familiar with where maybe a defendant was seeking or a
 2   target was seeking to take pre-indictment depositions.
 3   And I'm not sure of any of the facts because I don't
 4   know them, but I got the sense that you were not
 5   inclined to allow that. And so, you know, we have to
 6   deal with this issue of what's good for the goose is
 7   good for the gander. It's not about whether this is an
 8   extraordinary case because we've got nine people that
 9   might die tomorrow, which I don't believe. It's does
10   the Rule allow it or doesn't it. If it doesn't and
11   they die, then they die. Thank you, your Honor.
12           THE COURT: Thank you.
13           MR. FLANDERS: Good afternoon, your Honor. May
14   it please the Court, Robert Flanders for Joseph
15   Caramadre.
16           I want to begin, your Honor, by emphasizing the
17   last point, which is the question you asked about is
18   this within your Honor's discretion to grant this or
19   isn't it. I want to make it clear that it's our
20   position or Defendant Caramadre's position that a court
21   in this situation has no discretion under Rule 15 to
22   grant a deposition under these circumstances
23   pre-indictment no matter how impressed it might be with
24   the circumstances that otherwise might justify it. And
25   the reason for that is not only the history of the Rule
```

that Mr. Traini has argued to you but the wording of the Rule and the practical consequences that your Honor put his finger on at the outset of this hearing, which is the problems and possibility, really, of targets effectively making decisions to participate or not to participate, to cross-examine or not to cross-examine when there are no charges pending.

So at the outset, I want to reemphasize that we don't think that this is a matter within the Court's discretion. We're saying it would be ultra vires for the Court to order a deposition pre-indictment under those circumstances for all of those reasons.

THE COURT: Let's say I disagree with that and as the reasoning for disagreeing with that I take the sentence that says "The Court may grant the motion because of exceptional circumstances and in the interest of justice" to mean that, unless this is done in this case, the witnesses will die and justice will not be served. Isn't the response to your concerns that if it turns out that Sixth Amendment or Fifth Amendment serious violations occurred because of those depositions, that the remedy for that is a motion to suppress? So we can't know now what we don't know. And so we can't, with any certainty, anticipate what the contours of a motion to suppress might be as a

1  result of this. But motions to suppress are -- the
2  exclusionary rule is a remedial doctrine that is
3  meant -- it's not in the constitution. It's a
4  court-made doctrine that's designed to deal with
5  situations that occur as things are developing.
6      So isn't that the vehicle that a court would use
7  to handle any violations that occur because of it?
8      MR. FLANDERS: If your Honor had the discretion
9  to order these depositions, that argument would have
10 more force. But the idea that because there's a
11 potential remedy to deal with unconstitutional
12 problems, with problems about not being able to
13 effectively cross-examine, all the issues that we
14 raised with your Honor down the road when, as and if
15 someone makes an argument as to admitting the evidence
16 doesn't answer the threshold problem, which is do
17 courts have the authority to put everyone through this
18 incredible, expensive, time-consuming and maybe even
19 life threatening procedure for nine different people
20 who are on their deathbeds, we're told, and having them
21 cross-examined and grilled by four sets of lawyers
22 under these circumstances. I mean, so in this case
23 it's going to open up a door that's going to put
24 everybody to the burden and expense of having to attend
25 these depositions, prepare if they decide to do so, and

1  have to make a decision, as your Honor pointed out,
2  whether to attend but a potential prejudice to them if
3  they don't. And also -- so they're in a Hobson's
4  choice situation right at the outset without knowing
5  what the charges are, and then trying to cross-examine
6  about speculating what all the theories might be in an
7  atmosphere where we're hearing different theories,
8  legal theories to support this factual situation.
9        So in other words, I don't think, no matter how
10 impressed the Court might be with the idea that these
11 people are about to die and, therefore, we may lose
12 their testimony forever, that doesn't make up for the
13 lack of authority and it doesn't obviate the
14 grammatical problems that the Court would have to
15 overlook in interpreting Rule 15, which talks about
16 defendants, which talks about opposing parties, which
17 talks about parties in a non-existent case.
18        So, sure you could, but I think the better
19 course for your Honor to take is, in addition to the
20 authority issue, is is it really in the interest of
21 justice, even assuming that you had the authority, is
22 it in the interest of justice under all these
23 circumstances to go forward.
24        Your Honor put your finger on a number of
25 solutions that the Government has, indictment being one

1  of them. They put themselves into this situation. If
2  they think they can apparently arrest these people and
3  take their depositions under a statute, they think they
4  can indict without it, you know, they've got remedies
5  if they want to truly do this, apparently.
6      We don't think that's the right way to go. And
7  they even haven't made a showing that this testimony is
8  necessary. There's been no showing that the only
9  witnesses to what happened are these prospective
10 deponents. In fact, there were family members that
11 were present, at least in many of these situations, and
12 who are able to testify about what was said and what
13 wasn't said. So, you know, the showing here has not
14 been what it needs to be in order to require the
15 interests of justice to warrant such an extraordinary
16 procedure.
17     I think, your Honor, that the notion that the
18 Defendants ought to be put in this position is not in
19 the interest of justice is the bottom line.
20 Ultimately, this is a case that the First Circuit or
21 some court is going to have to decide because it's
22 really, you know, more or less a case of first
23 impression in terms of should Rule 15 -- but make no
24 mistake. If this Court were to allow the prosecution
25 to go forward, then you're going to have situations

```
 1    where the defense is going to want to preserve
 2    testimony even while grand juries are being convened.
 3    So we're really opening a door here that Rule 15, by
 4    its terms, doesn't seem to allow.  Unless that door is
 5    to be opened, I think that the Government has to find
 6    other ways of meeting whatever necessities it feels.
 7    And we're told on the one hand that it's simple, that
 8    just get the facts before the grand jury and then they
 9    can struggle with their legal theories.  If they can't
10    find the legal theories, maybe this case shouldn't be
11    indicted, which is obviously our position.
12         So for all the reasons Mr. Traini said, for
13    those that are in our brief, I would submit to your
14    Honor that, number one, no authority to do it but even
15    if you thought you might have the authority, the
16    interests of justice here are what weigh in favor of
17    denying the motion because the Government hasn't
18    demonstrated that all of these problems warrant them
19    being allowed to take the depositions and alter the
20    prejudice of these prospective defendants, targets or
21    whatever they are.
22         THE COURT:  Thank you.  All right.  Do you wish
23    to add anything?
24         MR. VICINANZO:  Thank you, your Honor.  For
25    Mr. Radhakistan, I still am in a very difficult
```

1  position. I just met him this morning. I've heard the
2  arguments. I have to say I found Mr. Traini and
3  Mr. Flanders' arguments very persuasive, but I am still
4  not in a position to actually make the arguments myself
5  and adequately represent my client's interests here.
6  　　　　So I think I'm going to ask the Court, if the
7  Court is willing, to help me a little bit on some
8  procedural or kind of record-making basis, I want to
9  make sure that my client's individual Fifth and Sixth
10 Amendment rights are preserved, that his rights as to
11 the interpretation of the Rule, of the statute are
12 preserved, the construction of Rule 15. I'm not in a
13 position to do anything today. So I guess what I'm
14 asking for, and I don't know if it's something the
15 Court can accommodate me on or not, but is if the Court
16 is inclined to deny the Government's motion -- let's
17 say this, to grant the Government's motion as to these
18 two individuals, I want to say defendants, but they're
19 not defendants, they're just individuals, not parties,
20 I would request from the Court more time on behalf my
21 client to interpose our objection and to brief the
22 issue and be heard.
23 　　　　If the Court, on the other hand, were inclined
24 to deny the Government's motion, there may be some good
25 chance that the issue will be taken up to a court above

1  us, and I think that I want to be included in that
2  appeal. I would probably want to ask the Court if I
3  might be allowed then, if the Court denies the
4  Government's motion, that I be allowed to adopt their
5  arguments so that we can all go up together and not do
6  it piecemeal. That's what I'm thinking anyway, off the
7  top of my head here as I'm listening.
8  But for efficiency's sake, I think I would like
9  to remain with these individuals who are plowing much
10 the same ground that I would plow had I had the
11 opportunity, but I'm trying to figure out, really, how
12 I can best in every possible circumstance make sure
13 that my client's interests and rights are preserved.
14 THE COURT: Well, I want to help you do that.
15 I'm not going to decide this from the bench at the
16 close of this hearing. I can tell you that right now.
17 In all likelihood, I'm going to give an answer on
18 Monday or Tuesday. And that should give you enough
19 time to meet with your client and have a more thorough
20 conversation with him and find out whether your client
21 is in a position to be simply adopting the arguments
22 that have been made so you don't have to make filings
23 that say the same things that Mr. Traini and Flanders
24 have said or if you have some other circumstances that
25 cause you to want to file something that draws whatever

```
 1   distinctions you want.  So that should give you enough
 2   time to do that.  And then I think you'd be able to
 3   proceed just the way you outlined, depending on what I
 4   do.
 5        MR. VICINANZO:  Okay.  So the Court intends to
 6   probably decide it sometime early next week?
 7        THE COURT:  Right.
 8        MR. VICINANZO:  So you're giving me until
 9   perhaps Monday or Tuesday to submit something to at
10   least state a position like that or --
11        THE COURT:  I'm happy to give you until Monday
12   morning to state -- if you want to distinguish yourself
13   from these two, I think that's really the question;
14   otherwise, I'll assume you're adopting the same
15   position that has been adopted by the others.
16        MR. VICINANZO:  I can get something to you by
17   Monday morning by noon?  By 11 or so?
18        THE COURT:  That's fine.
19        MR. VICINANZO:  Okay.  And then one way or the
20   other, I want it to be clear for my client's sake and
21   for any court above it's sake so we're not in Boston
22   and hearing that, oh, you didn't preserve this or you
23   didn't say that below.  That's my concern.
24        THE COURT:  That's fine.  That's fine.
25        MR. VICINANZO:  Okay.  Thank you, your Honor.
```

```
 1         THE COURT: All right. Mr. McAdams or Vilker,
 2   do you want to say anything in reply to what you heard?
 3         MR. VILKER: I don't think we have anything to
 4   add beyond what we stated this morning, your Honor.
 5         THE COURT: All right. One thing that I'm still
 6   a bit concerned about is the actual condition of these
 7   individuals. And we sort of moved past that rather
 8   quickly based on the proffer that you've made about
 9   their situation. I think, based on that proffer, I can
10   safely assume that they're in various stages of
11   terminal illness and that some are more acutely ill
12   than others.
13         I think it would be, frankly, helpful if you
14   could make some kind of a filing that's more detailed.
15   I understand that doctors can't predict with certainty
16   when someone is going to die or when they're going to
17   go from a fully cognitive state into a state where
18   they're maybe still alive but not able to communicate,
19   but it would be useful to know, I think, if that is
20   truly imminent with respect to any of these people, you
21   know, as best as can be said.
22         So it would be helpful to me if there's any more
23   that you can provide in terms of the detail with
24   respect to these individuals. If you could do that,
25   that would be good.
```

1  MR. VILKER: Your Honor, I did come to Court
2  today with all the records we've been able to get. A
3  number of these are letters from doctors explaining the
4  nature of the illness and the fact that they're
5  terminal. A number of these individuals don't have any
6  medical records that they keep. They have a list of
7  their prescriptions. Where without going and trying to
8  track down each of their doctors and interviewing them
9  and going through that whole procedure, we gathered
10 what we believe, and we're waiting for one or two more,
11 but we gathered what we believe we will gather in terms
12 of documentation. I did want to submit these to your
13 Honor. I'll do it now or in a separate filing and
14 submit it to counsel.
15  THE COURT: Is there any problem with respect to
16 confidentiality of the medical information in doing
17 that?
18  MR. VILKER: The individuals all voluntarily
19 provided the information to us with the understanding
20 that this would be disclosed in Court and to defense
21 counsel. So I believe we have their full consent to
22 use the information.
23  THE COURT: All right. And this is a sealed
24 proceeding, so, obviously, what is submitted cannot be
25 disseminated beyond this -- the parties that are here

1    in the Court.
2         So why don't you pass those up, and we'll make
3    those an exhibit to the hearing, Exhibit 1, I guess, as
4    a group.
5         (Court Exhibit 1 admitted in full.)
6         THE COURT: And you have copies for counsel?
7         MR. VILKER: I'll give them to counsel.
8         THE COURT: All right.
9         MR. TRAINI: Your Honor, can I just --
10        THE COURT: Yes.
11        MR. TRAINI: This is really just a preservation
12   of the record issue because I don't know where this is
13   going to go. And it may be that -- there may be Rule 6
14   implications even in what we've done thus far and so I
15   just want it to be clear on the record that by
16   accepting documents from Mr. Vilker we're not conceding
17   that this is a legitimate proceeding in the sense that
18   it's not in violation of Rule 6 itself. But in an
19   effort to give the Court the benefit of our view on the
20   issue before the Court, we'll accept the documents but
21   with the understanding that we're not conceding
22   anything about the legitimacy of the proceeding.
23        THE COURT: All right. I appreciate that.
24        What I'm going to do is take this under
25   advisement. My plan is to try to give you a ruling, if

1 possible, in writing Monday or Tuesday, give myself a
2 couple of days to work on it. And I think a written
3 ruling would be useful to both sides. And regardless
4 of which way I go, I'm assuming that someone will seek
5 an immediate appeal at the Court of Appeals. And so I
6 think if I can set forth my reasoning in writing, it
7 will expedite that process. It will help the Court of
8 Appeals judges who are going to have to ultimately look
9 at this, and so I think it's worth a couple of days to
10 do that. And beyond that, I want some time to more
11 fully digest some of the things that you have given to
12 me in this sort of flurry of activity that we've had
13 this morning.
14 So that's my plan. If anything regarding that
15 changes, I'll let you know.
16 MR. TRAINI: Your Honor, just again,
17 procedurally, maybe to save a step, since we all know
18 that it's likely to go up anyway, whichever way you go,
19 can you address the stay issue at the same time so we
20 don't have to come back and ask for that to be ruled
21 on?
22 THE COURT: I think it probably would be useful,
23 if I grant the Government's motion, to perhaps either
24 stay it or limit it in a way that allows you to
25 prosecute your appeal as quickly as possible but limit

```
 1   the amount of testimony or the damage, so to speak,
 2   that is done in the interim.
 3          So for example, if there is somebody who truly
 4   is at death's door, I might not stay it as to that
 5   individual but maybe stay it as to the others so that
 6   they can take one deposition and get it done while
 7   you're prosecuting your appeal. I may do that. I'm
 8   just speaking hypothetically, obviously.
 9          MR. TRAINI: I was trying to avoid, you know,
10   having to request another hearing specifically to deal
11   with the stay issue, your Honor.
12          THE COURT: Right. I hear you.
13          MR. VILKER: Your Honor, on the stay issue in
14   the event your Honor is just discussing if your Honor
15   does grant the depositions, we would request at a
16   minimum that we be allowed to depose ███████ and
17   ███████ since they seem to be in the most
18   imminent danger at the moment. And then, I guess,
19   hopefully, that will give the Court of Appeals enough
20   time to decide this issue before the depositions
21   proceed.
22          THE COURT: Okay. I understand that request.
23   The other issue that we talked about in chambers
24   yesterday, and I think it would be good to bring up
25   now, is in the event I were to grant the motion, you
```

1  made some representations in chambers about expedited
2  discovery that you would give to counsel for the
3  targets. And I'd like to hear from you about what your
4  plan is with respect to giving them everything they
5  could possibly need or use in order to make the
6  depositions of say ▆▆▆▆▆▆ or ▆▆▆▆▆▆ fully
7  protective of their clients' interests and rights.
8      MR. VILKER: They would have an absolute right
9  and we would give them all prior statements of these
10 witnesses. So for example, we have a number of
11 interview reports that the FBI agent has completed.
12 Another of these individuals were interviewed by
13 representatives of insurance companies and they have
14 the reports of their interviews, and all of that stuff
15 we would provide to counsel on prior statements.
16      And frankly, almost all of the records, they
17 have much more than we have at this moment. We're
18 waiting for a response to our subpoena, which is due, I
19 believe, at the end of the month to get the records.
20 We don't have any independent records now that are
21 covered by Rule 6(e). All the information we have has
22 been provided to us by the -- directly by the insurance
23 companies and bond issuers because they consider
24 themselves victims outside of the subpoena process and
25 interviews that each of them have conducted.

1    So what I would do is any piece of paper we have
2 that's at all related to any individual who we're going
3 to be deposing, I will turn it over to all counsel well
4 before the deposition. I mean, as soon as the
5 deposition is scheduled, I will turn it over. They
6 will have everything they need to conduct their
7 examination.
8    THE COURT: Have you developed a proposed
9 schedule of depositions?
10   MR. VILKER: Well, I have a proposed order of
11 depositions, your Honor.
12   THE COURT: The order is what you read to me.
13   MR. VILKER: No. What I would be hoping to do
14 in the next two to three weeks is do one every other
15 day or something in that line. One of the witnesses is
16 in Las Vegas so that's going to require some
17 arrangements for everybody's schedule, but, you know, I
18 think once we get beyond the first two, then there's a
19 little bit more flexibility, in terms of maybe we have a
20 little bit more time to play with. I'm not sure how
21 much more time, but it could easily be spread out over
22 five to six weeks to make accommodations for
23 everybody's schedule. I'm waiting to hear if we're
24 going to be allowed to do this before I try to
25 coordinate precisely with these witnesses and with

```
 1    counsel what will work best for everyone.
 2         THE COURT:  Okay.
 3         MR. TRAINI:  Judge, if I can just -- last thing.
 4         THE COURT:  Yes.
 5         MR. TRAINI:  This is similar to the point I made
 6    before about the medical records. We'll accept
 7    whatever Mr. Vilker gives us but with the understanding
 8    that we don't concede that it is all that there is. If
 9    it is all that there is, we don't concede that it's all
10    that we need, and I don't want to waive any argument
11    that we're getting it perhaps in violation of Rule 6.
12    There's no court order that permits this. And to the
13    extent that the Government thinks that they can do
14    whatever they want with the Rule 6 because they're the
15    Government, I don't think that's what the Rule says,
16    but, in any event, I just want to preserve all those
17    issues for later on.
18         THE COURT:  Okay. I appreciate that. You will
19    hear from me early in the week. If anything changes,
20    if there's anything that anyone feels that they should
21    provide to me, get it filed. I'll wait to hear from
22    you by 11 o'clock on Monday. Okay. All right. Thank
23    you.
24         (Court concluded at 2:00 p.m.)
25
```

# C E R T I F I C A T I O N

I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Anne M. Clayton

―――――――――――――――――――――――

Anne M. Clayton, RPR

September 17, 2009

―――――――――――――――――――――――

Date