IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | **MISC 09    84** |
|---|---|
| IN RE GRAND JURY PROCEEDINGS | : Misc. No. _____ |
| | : |
| | : |

### MOTION TO SEAL

Comes now the United States of America, by and through its attorneys, Luis M. Matos,

Acting United States Attorney, Lee H. Vilker and John P. McAdams, Assistant United States

Attorneys, and hereby moves this Court to seal the accompanying Notice of Motion to Take

Depositions as well as this Motion to Seal on the ground that they pertain to an ongoing grand

jury investigation under Rule 6 of the Federal Rules of Criminal Procedure.

UNITED STATES OF AMERICA

By its attorneys,

LUIS M. MATOS
Acting United States Attorney

LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email:lee.vilker@usdoj.gov

SO ORDERED:

_____
HON. MARY M. LISI
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, hereby certify that on this 14th day of September 2009, I caused the within Government's Motion to Seal to be served by hand on:

Robert Flanders, Esq. (On behalf of Joseph Caramadre,  Raymour Radhakistan and ███████

███████ Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

Anthony Traini, P.C. ████████████████████
56 Pine Street
Suite 200
Providence, RI 02903

/s/Lee H. Vilker
Lee H. Vilker
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

**MISC 09    84**

IN RE GRAND JURY PROCEEDINGS           :
                                       :     Misc. No. _____
                                       :
                                       :

## MOTION TO SEAL

Comes now the United States of America, by and through its attorneys, Luis M. Matos,

Acting United States Attorney, Lee H. Vilker and John P. McAdams, Assistant United States

Attorneys, and hereby moves this Court to seal the accompanying Notice of Motion to Take

Depositions as well as this Motion to Seal on the ground that they pertain to an ongoing grand

jury investigation under Rule 6 of the Federal Rules of Criminal Procedure.

UNITED STATES OF AMERICA

By its attorneys,

LUIS M. MATOS
Acting United States Attorney

LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email:lee.vilker@usdoj.gov

SO ORDERED:

HON. MARY M. LISI
UNITED STATES DISTRICT JUDGE

## CERTIFICATE OF SERVICE

I, hereby certify that on this 14th day of September 2009, I caused the within Government's Motion to Seal to be served by hand on:

Robert Flanders, Esq. (On behalf of Joseph Caramadre, Raymour Radhakistan and ██████)
██████
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903


Anthony Traini, P.C. (Counsel for ██████████████████)
56 Pine Street
Suite 200
Providence, RI 02903


/s/Lee H. Vilker
Lee H. Vilker
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov



IT IS HEREBY ORDERED THAT THE CONTENTS OF THIS
ENVELOPE ARE SEALED AND SHALL REMAIN SEALED UNTIL
FURTHER ORDER OF THE COURT.

DATE 9/15/09

MARY M. LISI, CHIEF JUDGE
U.S. DISTRICT COURT

S09-238   (LHV)

USAO No.

MISC. No.   MISC 09   84

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE GRAND JURY PROCEEDINGS | : **MISC** 09 **84** |
| | : Misc. No. _____ |
| | : |
| | : |

## GOVERNMENT'S NOTICE OF MOTION TO TAKE DEPOSITIONS PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Comes now the United States of America, by and through its attorneys, Luis M. Matos, Acting United States Attorney, Lee H. Vilker and John P. McAdams, Assistant United States Attorneys, and hereby moves this Court under Rule 15 of the Federal Rules of Criminal Procedure to authorize the taking of depositions of the individuals listed below. The United States requests permission to take these depositions because of the exceptional circumstance that the individuals to be deposed are all terminally ill or very elderly and are therefore unlikely to be alive to testify at trial.

Overview of Grand Jury Investigation

The grand jury sitting in the District of Rhode Island is currently investigating the circumstances behind the issuance of a large number of corporate bonds and annuities by numerous corporate entities. The terms of these bonds and annuities provided for substantial benefits upon the death of the owner of the bond or the annuitant. Investigation has thus far determined that Joseph Caramadre, Esq. ("Caramadre") established a program to benefit terminally ill individuals living in Rhode Island, pursuant to which terminally ill individuals would be given a few thousand dollars. The names of many of these individuals (approximately 112) were subsequently used as "measuring lives" on bonds and annuities that were issued. That

is, upon the death of these terminally ill individuals, the owner of the bond or annuity stands to

make substantial sums from the bond issuers and insurance companies, collectively totaling

many millions of dollars. While Caramadre was the individual who organized this program and

who received a sizeable share of the many millions of dollars in profit upon the death of the

terminally ill individuals, there are, at the moment, three additional targets of this grand jury

investigation. First is Raymour Radhakistan, an individual who worked for Caramadre in

recruiting terminally ill individuals in Rhode Island to participate in this program. ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

#### Need for Depositions and Individuals to be Deposed

Criminal Procedure Rule 15(a)(1) provides that "[a] party may move that a prospective

witness be deposed in order to preserve testimony for trial. The court may grant the motion

because of exceptional circumstances and in the interest of justice."

Exceptional circumstances warranting the taking of depositions are present in this case, as

the individuals sought to be deposed are all terminally ill and/or unlikely to live long enough to

be able to testify at trial. These are the individuals whose names were used in corporate bonds

and annuities as the "measuring life" - meaning that upon their death substantial sums will be

paid to the targets of this investigation and others. Of the approximate 112 terminally individuals

who participated in this program, only 9 are believed to be still alive. There is no dispute

between the parties that the testimony of these individuals is critical to the outcome of the

investigation and any criminal case that may ensue. Many of these individuals have informed

law enforcement that they believed the money they received was a gift and that they had no

knowledge that their names were being used in the applications for bonds or annuities. The defense has asserted that these terminally ill individuals were all fully informed that their names would be used in these bonds or annuities and understood that those providing them with a few thousand dollars stood to make substantial sums upon their deaths. Clearly, the testimony of these nine individuals who are still alive is critical to this investigation. And, unfortunately, as described below, it is equally clear that these individuals are unlikely to be alive if and when a trial is commenced in this case. Their testimony therefore needs to be preserved.

Based on the foregoing, the United States requests that the Court approve the taking of depositions of the following individuals:



- ███████████ resident of Coventry, Rhode Island, ████████ 83 years old and is terminally ill with emphysema; he was previously under hospice care, but his insurance benefits expired and his hospice care was terminated.

- ████████████ resident of Warwick, Rhode Island, ██████████ is 33 years old. He is terminally ill with osteomyelitis, a disease of the bone that resulted from being shot during a car-jacking.

- ███████████ resident of Johnston, Rhode Island, ████████ 73 years old. He is terminally ill with lung cancer.

- ██████████ resident of Westerly, Rhode Island. ████████ is 80 years old. He is terminally ill with stage 4 lung cancer.

- ██████████ - resident of Woonsocket, Rhode Island. ████████ is 67 years old. He is terminally ill with emphysema.

- ██████████ resident of Cumberland, Rhode Island. ██████████ is 31 years old. He is terminally ill with stage 4 stomach cancer.

- ████████████ resident of Manville, Rhode Island. ██████████ is 86 years old.

- ████████████ resident of North Providence, Rhode Island. ████████ is 81 years old. He is terminally ill with emphysema and lung cancer.

- █████████ - resident of Las Vegas, Nevada. █████████ is 62 years old. He is terminally ill with heart failure.

If the Court approves the taking of these depositions, the United States will provide counsel for all targets with notices of the depositions and an opportunity to attend them and examine the deponent.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

LUIS M. MATOS
Acting United States Attorney

LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email:lee.vilker@usdoj.gov

/s/ JOHN P. MCADAMS
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001

## CERTIFICATE OF SERVICE

I, hereby certify that on this 14th day of September 2009, I caused the within Government's Notice of Motion to be served by hand on:

Robert Flanders, Esq. (On behalf of Joseph Caramadre, Raymour Radhakistan and ███████)

Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

Anthony Traini, P.C. (Counsel for ███████)
56 Pine Street
Suite 200
Providence, RI 02903

/s/Lee H. Vilker
Lee H. Vilker
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

IN RE GRAND JURY PROCEEDINGS  :
                              :    Misc. No. 09-84
                              :
                              :

MEMORANDUM OF LAW OF ████████████████████ IN
OPPOSITION TO GOVERNMENT'S MOTION TO TAKE DEPOSITIONS PURSUANT TO
RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The government has moved, during the course of an ongoing grand jury investigation, for

leave to take depositions of witnesses whom it claims will inevitably soon become unavailable

(by death), purportedly to preserve their testimony for trial.[1]

Cutting directly to the chase, the government will no doubt suggest that, as the First

Circuit said in United States v. Mann, 590 F.2d 361, 366 (1st Cir. 1978)(which involved post-

indictment depositions): "[w]hen the question [about whether to allow a criminal deposition] is

close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial

the question of whether the deposition will be admitted as evidence." This is clearly an attractive

alternative for the court. No harm, no foul. Or so it seems. But to take the position that there is

---

[1] The facts presented in the government's motion are apparently compiled from its investigation and from interviews with and documents provided by one of the targets, Mr. Joseph Caramadre, and his counsel. ████████████does not concede the accuracy of any of these facts or the contents of any documents that may have been provided. It is expected that Mr. Caramadre's counsel will clarify, correct and otherwise supplement the factual background for the court at the hearing on September 17.
    The government makes the statement in its motion that "[t]here is no dispute between the parties that the testimony of [the prospective deponents] is critical to the outcome of the investigation and any criminal case that may ensue." Gov't. Mot. at p. 2. Neither ████████████ nor his counsel has met with or spoken to the government about this representation and it is therefore premature and without basis to say that it is indisputable. At the appropriate time, he may take the position that this testimony is not critical. What is important for purposes of this motion is that the government bears the burden of demonstrating to the court that the testimony is critical. ████████████does not concede that point and leaves the government to its burden.
    Furthermore, there is nothing in the government's motion as submitted to the court that sets the basis for a crime. ████████████disputes that the government's papers establish that there has been a crime committed and therefore contests the materiality of any proposed deposition testimony.
    Finally, the government represents in its papers that "defense has asserted that [the prospective witnesses] were fully informed [of certain facts]." Gov't. Mot. at p. 3. ████████████submits that neither he nor his counsel has met with or spoken to the government and that he has therefore not made any assertions thus far.

really no downside to allowing the depositions to proceed because the court always holds the trump card of being able to exclude them from evidence at trial is a truly unacceptable expedient. If the opportunity to take depositions in these circumstances is not permissible, it is simply not available to the government, regardless of how attractive it may be to let the depositions proceed and worry about the propriety of such an order later.

In the case of pre-indictment depositions, this case is precariously perched at the top of the slippery slope. It is no answer to say that each case will be decided on its individual facts and circumstances. The entire universe of cases wherein the government seeks to take pre-indictment depositions is at issue in this proceeding, and with it a crucial point of substantive and procedural criminal law.

The government's motion for leave to take depositions must be denied for the following reasons:

I.    Federal Rule of Criminal Procedure 15 ("Rule 15") does not permit pre-indictment depositions of potential trial witnesses.

There is precious little case law extant on the matter before the court. Probably the most explicative decision available is the en banc opinion of the Ninth Circuit in United States v. Hayes, 231 F.3d 663 (9th Cir.)(en banc), cert. denied, 532 U.S. 935 (2000), although, as the dissent correctly points out, the issue was neither raised nor decided there. 231 F.3d 678 (Reinhardt, J., dissenting). Despite the fact that the majority finds it unnecessary to decide the issue, the dissenters, in explaining their position, agree that the issue need not be decided but nevertheless articulate clearly and concisely the argument made here by ▮▮▮▮▮▮▮▮▮▮ and further notes that in Hayes the government conceded this very point:

> The government concedes that Rule 15 plainly contemplates a post-indictment occurrence . . . , and that seems correct because, prior to indictment, there is no "defendant," "case," or even "party."

231 F.3d at 677.

Judge Reinhardt went on to describe "the text and purpose of Rule 15":

> The organizational structure of the Federal Rules of Criminal Procedure suggests that Rule 15 does not contemplate pre-indictment depositions. The rules are organized chronologically, beginning with the rule that describes a complaint. *See* Fed.R.Crim.P. 3. The rules then follow a time line from that point through the arrest or summons on complaint, initial appearance, indictment, arraignment, pre-trial procedures, trial, and judgment. Rule 15 is located in the section entitled "Arraignment," which follows directly the section of the rules governing "Indictment and Information." (Within the "Arraignment" section, Rule 15 follows rules concerning joinder of indictments for trial.) Accordingly, the structure of the rules indicates that depositions under Rule 15 are intended to take place after a defendant has been indicted and thus underscores the adversarial nature of the Rule 15 proceedings.

231 F.3d at 677, n.1.

The court is obligated to carefully examine Rule 15 and its history in order to correctly decide this matter. The original Rule did not allow for the government to take depositions at any time. This was a right accorded to only defendants. See, Reporters' Notes to Rule 15. In fact, the Supreme Court and the various Committees charged with the responsibility of revising the rules of criminal procedure from time to time resisted for decades the government's requests to be allowed the right to take depositions, even of its own witnesses. Id. In order to obtain that right, the government invoked the "Organized Crime" talisman, and lobbied successfully for the passage of 18 U.S.C. §3503 (as part of the Omnibus Crime Control Act of 1970), which, in practice, required the government to make an assertion that the witness was involved in organized crime. [The statute was passed to allow the government to take depositions of witnesses who might be killed as a result of their cooperation with the government in organized crime prosecutions.] Rule 15 itself was not amended to give the government the authority to

request depositions until 1975, and even then with grave reservations by the Supreme Court.[2]

Both the statute, which expressly stated that it applied only after the return of an

indictment, and the then current version of Rule 15(a) (absent this specific language), which the

Supreme Court said in Dunn v. United States, 442 U.S. 100, 112, n.11 (1979) were "substantially

the same", co-existed for over 25 years until, in 2002, the Rules were revised generally to make

them more easily understood and the statute was simultaneously repealed. It is clear that what

has always been contemplated by the drafters of Rule 15 was a post-indictment setting. Hayes,

231 F.3d 678 (Reinhardt, J., dissenting); see also, Judge Silverman's separate (concurring and

dissenting) opinion in the original panel decision in Hayes, 190 F.3d 939, 948 (9th Cir. 1999).

In one of the only other cases to directly discuss this issue, the Fifth Circuit, in In re

Application of Eisenberg, 654 F.2d 1107, 1113, n.9 (5th Cir. 1981), said

> there is no rule in criminal procedure analogous to Rule 27 by which a deposition
> can be taken by a potential defendant prior to the initiation of prosecution.
> Depositions of a party's own witness are allowed during the pendency of a
> criminal action only when preservation of the testimony is in the interest of justice
> due to exceptional circumstances. Fed.R.Crim.P. 15(a) (1975).

Likewise, in a decision that foreshadowed Judge Reinhardt's analysis of Rule 15 in

Hayes, the Fourth Circuit held, in United States v. McHan, 101 F.3d 1027, 1038 (4th Cir. 1996),

cert.denied, 520 U.S. 1281 (1997),

> Federal Rule of Criminal Procedure 15(a) speaks only of depositions by "a party"
> of "a prospective witness of a party." Because, in this case, [the defendant] had
> not yet been indicted or charged when [the witness] testified before the grand
> jury, Rule 15 was not an available avenue for preserving [the witness'] testimony.

The fact that there is so little case law on this point supports, rather than undermines 

████████████ position here, because what law there is clearly states that Rule 15 is not

---

[2]Even with those amendments, the Reporter noted that critical to the amendment was the terminology "for use at trial." There can be no trial without an indictment.

available in a pre-indictment setting. There is simply no case law that says otherwise. In the

past, those pre-indictment depositions that occurred were largely conducted by agreement. See,

e.g., United States v. Sanchez, 963 F.2d 152, 154-155 (8th Cir. 1992)(defendant challenging use

of pre-indictment videotaped depositions held to have waived the right to object because counsel

consented to the taking of the depositions at the time). In other cases, the fact that the indictment

had already been returned was considered one factor in the evaluation of the admissibility of the

depositions. See, e.g., United States v. Wilson, 36 F.Supp.2d 1177, 1181-1182 (N.D.Cal. 1999).

Compare, United States v. Calderon-Lopez, 268 Fed.Appx. 279, 289-290 (5th Cir.), cert.denied

sub nom. Rivas-Lopez v. United States, 129 S.Ct. 134 (2008).[3]

It is worth noting that if pre-indictment depositions were allowable at all, any target who

became aware of a grand jury investigation and could identify witnesses meeting the potential

unavailability criteria would seek to depose them on the same basis the government seeks to do

so here, claiming such witnesses as "his" at the (inevitable) trial. Not only would the

government object on the same grounds offered by ███████████ here, it would also

undoubtedly cite Rule 6 and allege interference with the grand jury's function. And it is highly

unlikely that this court would grant such a motion. It is absolutely appropriate for the court to

ask itself whether it would—or more accurately could—allow the targets to do what the

government is seeking to do, and what it would it mean to the operation of the criminal justice

system—particularly in the grand jury context—if the answer is "yes."

---

[3]The only circumstances under which pre-indictment depositions are allowed with any regularity is in conjunction
with the issuance of material witness warrants as provided for in 18 U.S.C. §1344. This procedure was discussed at
length in United States v. Awadallah, 349 F.3d 42, 59-61 (2d Cir. 2003), cert.denied, 543 U.S. 1056 (2005). In
those cases, Rule 15 is used as an adjunct to the statute to provide a means for a material witness in a grand jury
proceeding to be released from custody by providing a deposition in lieu of being held. But even in those cases,
Rule 15(a)(2) provides that the deposition request must come from the witness himself. Moreover, the Rule is
applied by labeling the government and the witness as "parties" who both have protectable interests before the grand
jury. This not such a case.

It is important that the court keep focused on the fact that this is the government's motion and the government's burden. And as a threshold matter, the government bears the initial burden of demonstrating clearly that Rule 15 allows it to take these depositions. It has not and cannot meet that burden. The myriad other issues, and the other burdens the government must meet, including the burden to prove unavailability of the witnesses and materiality of the proposed testimony, are never reached. The court need go no further than the Rule itself. And the court should be mindful of the fact that, as noted above, since the Supreme Court was always loathe to give the government the ability to take depositions at all, it would be inconsistent with the legislative history of the Rule to broaden its scope to allow depositions in a pre-indictment setting.

II.   The depositions are not permissible because they are not to preserve material testimony for trial.

An additional burden the government must bear is to convince the court that the purpose of taking the requested depositions is to preserve material testimony for trial. But in a pre-indictment setting this is impossible. And again, the court must look not only to the Rule itself, but to the clear mandate that depositions in criminal cases are highly disfavored, limiting the Rule 15 procedure to very specific circumstances. United States v. McKeeve, 131 F.3d 1, 8 (1st Cir. 1997).

Leaving aside the issue raised earlier that there can be no trial unless there is an indictment, the government has itself identified two other problems. One is whether the testimony sought to be preserved is material and the other is whether the depositions are discovery tools. As to the first, defense counsel has had some conversations with the government counsel about the alleged criminal activity being investigated by the grand jury. The upshot of those conversations is that the government has two theories upon which they may

6

attempt a prosecution, but itself is not sure whether a crime has been committed. As represented to defense counsel (but not in the government's papers), the government has suggested that either the annuity companies, or insurance companies, or bond issuers were induced to part with funds as a result of misrepresentations made by one or more of the targets to the prospective deposition witnesses; or that the witnesses themselves were defrauded because in reliance of misrepresentations allegedly made by one or more of the targets, they were deprived of the right to seek additional compensation for themselves.

First of all, without an indictment to limn the charge, it is understandably difficult to determine to what extent the testimony of these witnesses would be material, and as to which of the targets. More importantly, however, the government has not been able to articulate a crime. Their second theory of prosecution sounds in the language of 18 U.S.C. §1346, which is available only for honest services cases. The first theory sounds in mail or wire fraud, but there is no suggestion that in all cases, obtaining money from one party in the course of incomplete representations to another party is necessarily illegal, particularly when the misrepresentations, if made at all, may not have been material to any transaction. In short, there has been no adequate explanation by the government to satisfy the burden of showing not only what the testimony is expected to be but that it is in fact material—and consequently, no showing that failure to preserve the evidence would result in a failure of justice.[4]

This is clearly yet another reason why pre-indictment depositions are not allowed. With an indictment in place, it is much easier for the court and the parties to determine what is material and what is not in the context of preserving evidence. The targets, having become

---

[4] The court is invited to look at F.R.Civ.P. 27. To take a pre-filing deposition in a civil case, a party would have to demonstrate more than the government has demonstrated—or can demonstrate—here. It is inappropriate to even consider the government's request in a criminal case when it cannot meet the lighter burden and lower standards employed in civil cases.

defendants, know what they are charged with and what theory of prosecute they must defense. They have an idea at least of what evidence can hurt them and what can help. There is a framework with which to conduct a meaningful deposition. In fact, where a defendant has sought to invoke Rule 15 even post-indictment, the court has determined that

> [i]n order to obtain leave of Court to take the deposition of a prospective witness, a Defendant must, of course, show that the anticipated testimony would be material to some defense. 2 Wright & Miller, *Federal Practice and Procedure,* [Section 241 (West 1982)] and cases cited at page 6.

United States v. Ontiveros-Lucero, 621 F.Supp. 1037, 1038 (W.D.Tex. 1985),

aff'd., 790 F.2d 891 (5th Cir. 1986).

The second problem—the deposition as a discovery tool—is more troubling. The government has advised the court, in writing and orally, that these depositions are being requested strictly for the purpose of preserving testimony. Aside from the fact that the witnesses have not testified before the grand jury (so even the government does not know what testimony it is trying to preserve), the more significant problem is that because this is being done in the context of an ongoing grand jury investigation, these depositions are discovery devices, whether or not the government wishes to characterize them as such. Such use of depositions in a criminal case is strictly prohibited. See, e.g., In Re United States, 878 F.2d 153 156-157 (5th Cir.), cert.denied, Noons v. United States, 493 U.S. 991 (1989). In fact, at the chambers conference on September 15, the court specifically inquired of the government as to whether the depositions would be used in the grand jury and the government responded that they probably would.[5] This is not preserving testimony for trial. This is investigating and preparing a case for indictment, notwithstanding the government's stated purpose. In fact, the government represents twice in its motion that the proposed testimony "is critical to the outcome of the investigation" (Gov't. Mot.

---

[5]This fact alone presents several other difficult issues for the court which are discussed below.

8

at p. 2) and "critical to this investigation" (Gov't. Mot. at p. 3). The government has not, and cannot meet its burden to demonstrate to the this court that the purpose—and the effect—of taking the depositions will be to preserve material evidence for trial as opposed to collecting evidence of uncertain materiality as part of indicting the targets. No matter the label, any pre-indictment deposition is, of necessity, a discovery tool in the same way that Rule 27 depositions are in civil cases, despite the fact that they are described as being used "to perpetuate testimony." See, In Re Eisenberg, 654 F.3d at 1111-1112.

    III.    Other Complex Issues.

    1.    Discovery. As defense counsel pointed out at the chambers conference, any effort to take a meaningful deposition in these circumstances requires discovery material to be produced by the government. Although the government has said that the bulk of its evidence is documents already produced by one of the targets, that is not the only discovery that would be necessary. More important would be the 302 reports and interview notes of the F.B.I. agent that interviewed the witnesses and other individuals that were present with the witness during any meeting with the targets or who themselves had conversations with or knowledge of conversations with the targets. Since the depositions are being requested in the vacuum left by the absence of an indictment, the targets would need to have everything the government has by way of evidence, and perhaps other materials that have not yet been discovered by anyone. The government has told the court that it will "open its files" and provide the targets with everything they wish to see. While this may be a bona fide offer, defense counsel questions whether the government can make it and live up to it and whether the court can approve, countenance or order it. This is an ongoing grand jury investigation. The material at issue may become Jencks (18 U.S.C. §3500) material at some point (after a witness testifies at trial) but it is not yet. The

government may not be able to commit wholesale violations of Rule 6(e) in order to achieve its objective. More importantly, the court may not be able to be a party to such action. Clearly, without the discovery material, the depositions would be meaningless in the context of effective cross-examination and the requirements of confrontation. But can one Rule be violated in an effort to make applicable another Rule that truly does not apply, simply because the government wants it that way? And—far more importantly—should the court put its imprimatur on such a procedure?

Once again, the court must look to the Rules. Rule 6(e) places an absolute prohibition on the government. Its attorneys must not divulge matters occurring before the grand jury. And again, the court must look at the other side of the coin. In similar circumstances, where the targets may have sought the depositions and needed the discovery material to conduct them (because, inter alia, the discovery was necessary to determine what is material in their examinations), could the court even countenance a request to order the government to turn over the same material in violation of Rule 6(e) (or otherwise)? Defense counsel thinks not.

2.    Compromising the Grand Jury. As noted above, the government has suggested that if allowed to take the depositions it will likely use them in the grand jury. Yet another reason for precluding the depositions is that they will require a protective order prohibiting their use before the grand jury. It will also be necessary for the court to order the government to certify its grand jury evidence in much the same way that it does in Kastigar proceedings, because if the allowance of the depositions is ultimately improper, there is no other way to prevent the infiltration of the depositions and evidence derived from them into the grand jury proceedings. They will not be able to be used, for example, by the F.B.I. to further investigate the case or develop leads from the testimony. After all, they are not being requested for

discovery purposes and cannot be used that way. These limitations, made necessary only by the government's request, clearly constitute an interference with the operation of the grand jury— something strictly prohibited by well-settled law. See, Branzburg v. Hayes, 408 U.S. 665, 702, n.39 (1972).

Of course, if the depositions are not sought or allowed until after an indictment is in place, there is no possibility of infecting the grand jury because it will no longer be considering this case and by law cannot be used to prepare a pending case for trial. In re Grand Jury Proceedings, 814 F.2d 61, 70 (1st Cir. 1987). Like so many other thorny and difficult issues, this one disappears with an order denying the government's request for the depositions.

3.   Prejudicial Pre-Indictment Delay. Without being accusatory, or challenging the bona fides of government counsel, the procedure being sought here creates an opportunity for further prejudice to be visited upon the targets. On the extremely limited basis presently available, and with the limited discovery that may (or may not) be allowed, these depositions even if taken, may require being continued again after the indictment (if any) is returned. The government could easily obtain these depositions and then wait until the witnesses become permanently unavailable before returning the indictment, thereby making it impossible for the targets—then defendants—to re-take or further take the depositions when they finally do know what they are charged with and what may be material to their defense. As the Supreme Court held in United States v. Lovasco, 431 U.S. 783, 791 (1977), ". . . prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." The court should not allow this situation to be created, regardless of whether anyone believes the government would act in such a way.

4.    Condition and Rights of the Witnesses. There are several issues that affect the prospective witnesses. Assuming that the government can or has met the burden it must bear to demonstrate to the court that the witnesses are likely to become unavailable in the very short term, the government must also demonstrate that the witnesses are able to withstand the rigors of the depositions. This cannot be done by providing a summary medical report that says, for example, that a witness has terminal cancer and is expected to live only another three weeks. It will require testimony. See, e.g., United States v. Edwards, 69 F.3d 419, 438 (10th Cir. 1995), cert.denied sub nom. Chaplin v. United States, 517 U.S. 1243 (1996).[6] The court must satisfy itself and defense counsel that these witnesses are not likely to expire during the depositions, or have their already limited life expectancy further shortened or their fragile health otherwise compromised by depositions that are clearly not permitted by Rule 15 and the taking of which will necessarily require violations of other Rules as well.

A second issue is that the witnesses themselves have rights. Despite the government's characterization of the witnesses as victims, they may be participants in the allegedly criminal activity, to the extent the government has been able to articulate it. Whether the government believes that they may have exposure or not, they are entitled to be advised of their Miranda rights and they are entitled to counsel in the depositions. These matters would need to be addressed before any witness' deposition is scheduled.

5.    Counsel for the targets. As discussed in the chambers conference on September 15, the depositions would also require that each target have independent counsel. At present, three of the four targets are represented by only one defense counsel. The conflict of interest concerns have previously been articulated and even the government agrees that separate counsel

---

[6]Counsel for Mr. Caramadre has already raised another delicate issue concerning the effects on the witnesses and their families of the actual deposition proceedings. He will undoubtedly elaborate on that point at the hearing.

for each target would be a pre-requisite to any deposition. Moreover, each attorney representing

a target must be prepared. While the two defense attorneys that have been involved in this

matter for some time may (or may not) be able to adequately prepare, it is important that the

other two defense counsel be equally prepared, because a lack of preparedness on the part of

counsel for one target may compromise or damage one or more of the other targets.

IV.    <u>Stay pending further proceedings.</u>   It is the intention of ▮▮▮▮▮▮▮▮to seek a

writ of mandamus in the Court of Appeals if this court allows the depositions to go forward

under any circumstances. He therefore requests that if such an order enters, that the court stay

the order and allow adequate time for a petition to be filed in the Court of Appeals.


Respectfully submitted.

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
By His Attorney

<u>/s/ Anthony M. Traini</u>
Anthony M. Traini (#4793)
56 Pine Street – Suite 200
Providence, RI 02903
Tel.   401.621.4700
Fax   401.621.5888
Email: amt@atrainilaw.com

13



**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

---

Fleet Center                                    (401) 709-5000
50 Kennedy Plaza, 8ᵗʰ Floor            FAX  (401) 709-5001
Providence, Rhode Island 02903

September 17, 2009

Honorable William E. Smith
United States District Judge
United States District Court
District of Rhode Island
United States Courthouse                    <u>MATTER UNDER SEAL</u>
One Exchange Terrace
Providence, RI 02903

Dear Judge Smith:

    This letter is intended to elaborate the government's position with respect to the request to conduct Rule 15 depositions of nine material witnesses. Because the proceedings are under seal and due to the expeditious nature of the government's request, the government is submitting a letter rather than a formal pleading.

    <u>BACKGROUND</u>

    The grand jury is investigating a fraud scheme in which it appears that the targets of the investigation made material misrepresentations and omissions to terminally ill hospice patients in order to obtain their identity information and signatures for use on documents. These documents were then used to obtain lucrative financial instruments which paid substantial sums to the targets upon the death of the terminally ill person. In the interest of justice, the government seeks to obtain the depositions of nine material witnesses due to the exceptional circumstances of their likely death to preserve their testimony for a potential trial. The government proposes obtaining the depositions in accordance with F.R.Cr.P. 15 in order to protect the targets' Sixth Amendment rights.

    <u>RULE 15 DEPOSITIONS</u>

    This Court has the authority to order the requested depositions. Rule F.R.Cr.P. 15(a)(1) provides that "A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice." Rule 15(a), F.R.Cr.P.; <u>see also</u> Rule 15(a), F.R.Crim.P. advisory committee's note ("The principal objective is the preservation of evidence for use at trial."). A district court has the inherent jurisdiction to permit the taking of depositions in order to prevent injustice. <u>United States v. Dockery</u>, 50 F. Supp. 410 (E.D.N.Y. 1943).

The nature of the fraud scheme being investigated inherently renders material witnesses unavailable for any future criminal trial. Indeed, of the approximately 112 individuals identified by the government as victims in this fraud scheme, only the 9 sought to be deposed remain alive. These nine face terminal diagnoses or are elderly and in extremely bad health.[1] While "authority on the application of Rule 15(a) and the exceptional circumstances standard is sparse," United States v. Hajbeh, 284 F.Supp.2d 380 (E.D.VA 2003), it is difficult to conceive of any more "exceptional circumstances."

The decision to grant or deny a motion to take a deposition of a proposed witness for use at a criminal trial is committed to the discretion of the district court. United States v. Keithan, 751 F2d 9, (1st Cir. 1984); United States v. Mann, 590 F.2d 361 (1st Cir. 1978). Courts typically require a party seeking a deposition to establish both that the witness's testimony is material and that the witness will likely be unavailable to testify at trial. In this case, each of the proposed deponent's testimony is material because it is necessary to establish what, if any, material misrepresentations and/or omissions were made to each of them by the targets in furtherance of the fraud scheme. Moreover, none of them is likely to be available at trial as they are diagnosed with terminal illnesses or are extremely elderly and in bad health. Time is of the essence, and any delay could result in a serious miscarriage of justice, as it will inevitably result in the unavailability of the witnesses due to their near certain deaths.

## TAKING OF DEPOSITIONS PRE-INDICTMENT

Federal law authorizes the taking of pre-indictment depositions by the government in cases involving extraordinary circumstances. Fed.R.Crim.P. 1 provides that "These rules govern the procedure in all criminal proceedings in the United States District Courts, the United States Courts of Appeals, and the Supreme Court of the United States." The term "criminal proceeding" includes grand jury proceedings. United States v. Awadallah, 349 F.3d 42, 49-51 (2d Cir. 2003); Bacon v. United States, 449 F.2d 933, 939-41 (9th Cir. 1971) (same). As the Rules of Criminal Procedure unquestionably govern grand jury proceedings, Rule 15 should be read to include depositions taken in furtherance of a grand jury proceeding when exceptional circumstances are present.

Rule 15 depositions are exceedingly rare because "attendance of the witnesses at trial is the favored method of presenting testimony." United States v. Wilson, 601 F.2d 95 (3rd Cir., 1979). Given the rarity of Rule 15 depositions in the trial context, depositions will be even rarer in the grand jury context. However, it does not follow that since the depositions are rare, they are impermissible. The antipathy toward depositions is grounded on the inability of the factfinder to observe the demeanor of the deponent and the threat to the defendant's Sixth Amendment rights. United States v. Drogoul, 1 F.3d 1546, 1552 (11th Cir., 1993). In this case, live courtroom testimony is in all likelihood impossible and the proposed depositions are the best method to

---

[1] Although representations by counsel are sufficient to establish the unavailability of a witness as a ground for taking a deposition in a criminal case, United States v. Farfan-Carreon, 935 F.2d 678, 679 (5th Cir. 1991); United States v. Daniels, 194 F.R.D. 700, 702 (D. Kan., 2000) United States v. Marteau, 162 F.R.D. 364, 368 (M.D.Fla., 1995), the government intends to make an evidentiary showing at the pending hearing.

09/17/2009 08:48 FAX 7095005          US-ATTORNEYS                    @005/006

### TARGET'S OBJECTIONS

At the chambers conference, Counsel for the targets objected to the government's request to conduct depositions pursuant to Fed. R. Cr. P. 15 because they believe as a "threshold issue" that the rules of criminal procedure do not permit pre-indictment depositions. Counsel cites no binding authority for the proposition that Rule 15 depositions are impermissible pre-indictment. Instead, counsel points to dicta in a dissenting opinion in a Ninth Circuit case. See United States v. Hayes, 231 F.3d 663, 676 (9th Cir. 1999) (Reinhardt, dissenting). The focus of both the majority and the dissent in that opinion was whether the pretrial depositions triggered the putative defendant's Sixth Amendment right to counsel. The majority held that it did not, and did not address the permissibility of pretrial depositions since the question was not before it. See id. at 673, footnote 6.

The other case counsel cites is United States v. McHan, 101 F.3d 1027 (4th Cir. 1996). In McHan, the defendant complained that the government had *not* sought a Rule 15 deposition when it knew that a material witness was terminally ill. Instead, the government called the witness to testify before the grand jury, then introduced the grand jury testimony under the residual hearsay rule. Defendant argued that his Sixth Amendment confrontation rights were violated. The Court rejected the argument, holding that "absent any suggestion that the government intentionally procured a declarant's unavailability for trial, ...[the Confrontation Clause is not violated]." Id. at 101 F.3d 1037. Again in dicta, the court made two inconsistent observations with respect to Rule 15. Compare id. at 101 F.3d 1037, "When the government knows that a witness will be unavailable, it has the choice of seeking to preserve the witness' testimony under Federal Rule of Criminal Procedure 15, or relying at its own risk on its ability to introduce hearsay (such as the witness' grand jury testimony), or losing the benefit of the witness' testimony altogether," with id. at 101 F.3d 1038 "Federal Rule of Criminal Procedure 15 speaks only of depositions by 'a party' of 'a prospective witness of a party.' Because in this case, McHan had not yet been indicted or charged when [the witness] testified before the grand jury, Rule 15 was not an available avenue for preserving [the witness'] testimony."

Moreover, McHan was decided prior to Crawford v. Washington, 541 U.S. 36 (2004), which is now the seminal Confrontation Clause case. In this case, the government seeks to *protect* the target's Confrontation Clause rights by using the procedures outlined in Rule 15. Neither Hayes nor McHan are binding on this Court, and they should not be persuasive for the proposition that Rule 15 depositions are impermissible as there is little or no reasoning behind them.

### CONCLUSION

Finally, to the extent that the Court believes the use of Rule 15 depositions in this context to be a close question, the Court should err on the side of permitting the depositions. If the depositions proceed, any error can be remedied at later stage in the proceedings (if any result) by virtue of a motion to suppress. If on the other hand, the depositions are not allowed to proceed,

4

preserve the defendant's Sixth Amendment rights.

Courts have approved the use of pre-indictment depositions. See, e.g., United States v. Hayes, 231 F.3d 663, 666 (9th Cir., 2000)("The government asked for (and got) court approval to take material witness depositions" prior to indictment). In United States v. Sharif, "the government deposed three witnesses regarding the defendants' complicity in the criminal charge" the day before they were indicted. 343 F. Supp.2d 610, 612(E.D.MI. 2004). At least one noted scholar has cited Hayes for the proposition that the government may use Rule 15 Depositions in a pre-indictment setting. Wright and Herring, Federal Practice and Procedure Ch 5, Section 243.

In fact, 18 U.S.C. § 3144 goes so far as to permit the government to have material witnesses arrested and detained in order to secure their testimony via deposition. The material witness statute provides in part: "If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of [Title 18]. No material witness may be detained ... if the testimony of such witness can adequately be secured by deposition..."

Fed R. Cr. P. 46(h) provides that the district court must supervise the detention of material witnesses to eliminate any unnecessary detention and that, as part of that supervisory role, an attorney for the government must "report biweekly to the court, listing each material witness held in custody for more than 10 days *pending indictment*, arraignment, or trial. For each material witness listed in the report, [the AUSA] must state why the witness should not be released with or without *a deposition being taken under Rule 15(a)*." (Emphasis added).

Surely the law could not *require* the government to arrest a material witnesses in order to depose them. Here, the government considers the proposed deponents to be material witnesses and could seek material witness warrants for them, which is what the government did in United States v. Sharif, 343 F. Supp. 2d 610, 617 (E.D. MI 2004). Given the extremely sensitive circumstances related to their illnesses and the fact that they are potential victims, and in order to protect the targets' Sixth Amendment rights under the Confrontation Clause, the government has instead chosen to seek the Court's permission to depose the witnesses according to the procedures outlined in Rule 15.

Having a witness testify before the grand jury might help obtain an indictment, but if the government is unable to secure the witness's presence for the trial, his grand jury testimony will be unusable at trial in light of Crawford v. Washington, 541 U.S. 36 (2004). In this case, depositions pursuant to the procedures outline in Rule 15 are the best means for balancing the grand jury's right to obtain evidence and protecting the target's rights under the Confrontation Clause.

3

09/17/2009 08:46 FAX 7095005                US-ATTORNEYS                        ☑006/006

the result could be a serious miscarriage of justice.[2]   In United States v. Mann, 590 F2d 361 (1st Cir. 1978) the First Circuit stated that "we do not mean to suggest that courts should be fearful to exercise their proper fully informed discretion to allow a deposition. When the question is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence. At that time, if the witness proves unavailable, the court may have before it a more complete information base, F.R.Crim.P. 15(e) accords no presumption of admissibility simply because the deposition was taken. The party requesting the deposition cannot escape its burden of taking all reasonable steps to bring to trial a witness whose testimony the party chooses to present. And the major harm to the other party's interests does not occur unless the deposition is admitted." 590 F2d 361 at 366-367.

For the reasons identified above, the Court should grant the government's motion to take Rule 15 depositions.

Respectfully submitted,

PETER F. NERONHA
UNITED STATES ATTORNEY

By: _____
John P. McAdams
Lee H. Vilker
Assistant United States Attorneys

cc:   Robert Flanders, Esq.
      Anthony Trainee, Esq.

---

[2]Unfortunately, the targets have all too clear a motive for delay. In a meeting at the U.S. Attorney's Office yesterday, counsel for Mr. Caramadre went so far as to state that they were considering filing a complaint against the government attorneys with the Office of Professional Responsibility for conducting an improper investigation.

**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

Fleet Center                        (401) 709-5000
50 Kennedy Plaza, 8ᵗʰ Floor   FAX  (401) 709-5001
Providence, Rhode Island 02903

## R-E-S-T-R-I-C-T-E-D   I-N-F-O-R-M-A-T-I-O-N

THIS COMMUNICATION IS INTENDED FOR THE SOLE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, RESTRICTED AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. *If the reader of this communication is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication may be strictly prohibited. If you have received this communication in error, please notify me immediately by telephone and return the communication to me at the address above. Thank you.*

TO:        Hon William E. Smith

FAX #:     401-752-7247

FROM:      John McAdams, AUSA

PHONE #:   (401) 709-5000          FAX #:  (401) 709-5001

DATE:      9-17-2009

COMMENTS: Under Seal

Any inquiries on this transmission should be directed to:

John McAdams, AUSA
United States Attorney's Office
District of Rhode Island          PAGES TO FOLLOW [ 5 ]
(401) 709-5000

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE GRAND JURY PROCEEDINGS ) ) ) ) ) ) ) | Misc. No. _____  <br><br> Honorable William E. Smith |

## MEMORANDUM OF LAW IN SUPPORT OF THE OBJECTION OF JOSEPH A. CARAMADRE TO THE GOVERNMENT'S NOTICE OF MOTION TO TAKE DEPOSITIONS PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

The Court should not permit the Government to conduct the depositions in question for two reasons.

First, Rule 15 is inapplicable to this situation because no one has yet been indicted or charged with any crime. Indeed, a grand jury has yet to hear any evidence on this matter. Thus, there is no case pending in which to take depositions. A Rule 15 deposition cannot be conducted in the abstract without any pending charges against any defendant. Moreover, the Government should not be allowed to force a prospective defendant to exercise his or her Sixth Amendment rights – or waive them – before those rights even attach.

Second, it would be contrary to the interests of justice to allow the Government to depose the potential witnesses – all of whom are alleged to be terminally ill – because of the extraordinary burdens and costs that such depositions would place on them and their families and on Mr. Caramadre and the other targets of the investigation. Indeed, how does one conduct any effective cross-examination when no charges exist, the issues are undefined, and the witnesses' relationship to unspecified misconduct is unknown?

## FACTS

On September 14, 2009, the Government noticed the deposition of nine individuals whom the Government alleges are terminally ill and who the Government says were used by Mr. Caramadre and the other targets of the investigation as "measuring lives" for a program involving the issuance of corporate bonds and annuities. The Government alleges that, in exchange for their agreements to become measuring lives for these bonds and annuities, these potential witnesses received consideration ("a few thousand dollars"). It is the Government's contention, however, that many of them subsequently informed law enforcement that they believed that this money was a gift, and that they had no knowledge that their names would be used in the subsequent bond and annuity applications (even though the documents they signed authorized such use). A grand jury has yet to receive any evidence about this investigation and the targets of the Government's investigation have not yet been indicted or formally charged with any crime.

## ARGUMENT

The Court should deny the motion because Federal Rule of Criminal Procedure 15(a) provides only that "a *party* may move that a prospective witness be deposed." (emphasis added). Fed. R. Crim. P. 15(a). Without an indictment, there are no "parties," no opposing parties, and no defendants as these terms are used in the Rule. Moreover, the organizational structure of the Federal Rules of Criminal Procedure suggests that depositions can only occur following an indictment. "The rules are organized chronologically, beginning with the rule that describes a complaint." United States v. Hayes, 231 F.3d 663, 677 n.1 (9th Cir. 2000) (Reinhardt, J. dissenting). Rule 15 is found in the "Arraignment and Preparation for Trial" section, *after* the section governing indictments. Fed. R. Crim. P. 6-15. In addition, the Government has not met

its burden of showing that it would be "in the interest of justice" to allow these depositions to

proceed. Fed. R. Crim. P. 15(a); see 2 Charles Alan Wright & Peter J. Henning, Federal Practice

and Procedure § 243 (4th ed. 2009). The value of the proposed depositions would be far

outweighed by the extraordinary costs and burdens that they would impose on the terminally ill

potential witnesses and their families, let alone on Mr. Caramadre, and on the other targets of the

investigation.

I.

### RULE 15 DEPOSITIONS CANNOT BE CONDUCTED BEFORE ANY INDICTMENT HAS OCCURRED.

Although this is a matter of first impression in the First Circuit, cases out of the Ninth and

Fourth Circuit Courts of Appeals both suggest that pre-indictment depositions are improper.

Hayes, 231 F.3d 663 at 673 n.6; United States v. McHan, 101 F.3d 1027, 1038 (4th Cir.1996).

In Hayes, which is the only reported case where the Government actually took pre-

indictment depositions, the Ninth Circuit never had to address the depositions' validity because

they were never contested or admitted at trial. Hayes, 231 F.3d at 673 n.6. Ultimately, the case

centered on whether the Government's seeking and obtaining of an order to conduct the

depositions was an initiation of "adversary judicial proceedings" so as to invoke the defendant's

Massiah rights. Id. at 676; see Massiah v. United States, 377 U.S. 201 (1964). The court,

however, did note that such depositions are "normally (or even, presumptively) taken only after

formal charges are brought when the defendant's Sixth Amendment rights have already attached."

Hayes, 231 F.3d at 673. In a later footnote, the court pointed out the possibility that the

depositions were "prematurely or otherwise improperly requested or ordered because there was

no 'case' and no 'defendant' under Rule 15 . . . ." Id. at 673 n.6. A dissenting opinion echoed

this point.[1]  Id. at 677.  In addition to noting the lack of a "party" prior to an indictment, the

dissent also raised a structural argument.  Id. at 677 n.1.

> The rules are organized chronologically, beginning with the rule that describes a
> complaint. See Fed. R. Crim. P. 3. The rules then follow a time line from that
> point through the arrest or summons on complaint, initial appearance, indictment,
> arraignment, pre-trial procedures, trial, and judgment. Rule 15 is located in the
> section entitled "Arraignment," which follows directly the section of the rules
> governing "Indictment and Information." (Within the "Arraignment" section, Rule
> 15 follows rules concerning joinder of indictments for trial.) Accordingly, the
> structure of the rules indicates that depositions under Rule 15 are intended to take
> place after a defendant has been indicted . . . .

Id.  A logical, linear reading of the Rules implies that the drafters only intended depositions to

follow an indictment or formal charges.  See id.

In McHan, the Fourth Circuit applied the same, common-sense reading to Rule 15's text

when it concluded that such depositions are only available once a defendant has been indicted.

McHan, 101 F.3d at 1038.  On appeal, the defendant had argued that the Government should

have deposed a later unavailable witness under Rule 15, rather than preserving the witness's

testimony by bringing him before a grand jury.  Id. at 1037.  In dismissing that claim, the court

noted that a pre-indictment Rule 15 deposition was not an option.  Id. at 1038.  "Because, in this

case, McHan had not yet been indicted or charged when Cunningham testified before the grand

jury, Rule 15 was not an available avenue for preserving Cunningham's testimony."  Id.  As with

the Hayes court, the Fourth Circuit found the plain text of Rule 15(a) persuasive.  Id.

The Fourth and Ninth Circuits are not the only authorities that indicate that the

Government may not take pre-indictment depositions.  Admitting that there is a dearth of case

law on point, Moore's Federal Practice reads Rule 15 in the same light.  25 James Wm. Moore et

al., Moore's Federal Practice § 615.03[1][b] (3d ed. 2009).  "It is an open question whether the

---

[1] "The Government concedes that Rule 15 plainly contemplates a post-indictment occurrence . . . because prior to indictment, there is no 'defendant,' 'case,' or even 'party.'" . Hayes, 231 F.3d at 677.

Government may take depositions before the filing of any formal charges. The use of the word 'party' in Rule 15(a)(1) suggests that the Government may not do so." Id. (emphasis added). Although Wright and Henning's Federal Practice and Procedure reaches the opposite conclusion, the only case it cites in support of that view is Hayes, a case where the parties never challenged the depositions' validity. 2 Charles Alan Wright & Peter J. Henning Federal Practice and Procedure § 243 (4th ed. 2009) (citing Hayes, 231 F.3d at 663, 673).

For these reasons, we submit this Court lacks the authority to grant the motion in question and, for that reason alone, the Court should deny the motion.

## II.

**IN ANY EVENT, IT WOULD BE CONTRARY TO THE INTERESTS OF JUSTICE TO ALLOW THE GOVERNMENT TO DEPOSE THE POTENTIAL WITNESSES BECAUSE OF THE EXTRAORDINARY BURDENS AND COSTS THAT SUCH DEPOSITIONS WOULD PLACE ON THEM AND ON MR. CARAMADRE AND THE OTHER TARGETS OF THE INVESTIGATION.**

Without any charges pending, how are the targets such as Mr. Caramadre to effectively cross-examine these witnesses? And given their alleged terminal conditions, how do we know the witnesses in question are even competent to testify? If they are suffering from terminal illnesses, many of them may be on medications that might affect their ability to testify, and under Rule 15, there is no practical way to determine their competency to do so before allowing them to be deposed.

To allow the Government to depose these potential witnesses – who the Government avers are terminally ill, house-bound, and in some cases literally on their death beds – would place an unconscionable burden on these individuals and on their families and caregivers for a dubious benefit. Even when Rule 15 depositions are permissible, a court may only allow them

under "exceptional circumstances and in the interests justice;" and its discretion to do so is

narrow. Fed. R. Crim. P. 15(a); United States v. Mann, 590 F.2d 361, 365 (1st Cir. 1978) ("the

language of the rule suggests that the discretion is not broad and should be exercised carefully").

The Court must weigh the interests of justice to the potential witnesses, to the targets of the

investigation, and to the public. Mann, 590 F.2d at 366. To proceed with these depositions

would subject these individuals to intense pressures and cross-examinations from multiple sets of

attorneys in the final days of their lives. There is no showing that the information they can

provide is only available from them. Although the window of time to depose them may be

small, taking that limited time away from them, their families, and loved ones and subjecting

them to the rigors of multiple cross-examinations is grossly unfair and unjustified. Due to the

fact that they would need to occur on such an expedited basis and with all concerned "in the

dark" about what relevance their testimony may have to unknown charges, Mr. Caramadre and

the other targets are incapable of conducting the cross-examination that Rule 15 contemplates.

Also, if the Government were to use the witnesses' videotaped testimony at trial, the effect on

the jury of seeing the witnesses in such a state of suffering would be unfairly prejudicial.

Finally, how would the Court make competency determinations, especially if the witnesses are

on medication(s)?

## CONCLUSION

Due to the strong textual arguments against reading Rule 15 to allow pre-indictment

depositions, and the compelling policy reasons why any deposition would not be in the interests

of justice, Mr. Caramadre hereby objects to the Government's Notice of Motion to Take

Depositions, and requests that the Court deny the motion and bar these depositions from going

forward. Respectfully, we submit that the Court lacks the authority to do so on the grounds

requested and that the interests of justice strongly argue in favor of denying the motion in any

event.

JOSEPH CARAMADRE

By his Attorney,

*[signature]*

Robert G. Flanders, Jr., Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI  02903
Tel.  (401) 274-2000
Fax.  (401) 277-9600
rflanders@haslaw.com

DATED:  September 17, 2009

## CERTIFICATION

TO:

Lee H. Vilker
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI  02903

I certify that a true copy of the within Memorandum of Law was hand delivered to

counsel of record, as set forth above, on September 17, 2009.

*[signature]*

(Effective 3/17/2008)

## UNITED STATES DISTRICT COURT
### FOR THE DISTRICT COURT OF RHODE ISLAND

__In re: Sealed Grand Jury Investigation__
                    Plaintiff(s)

v.                                                            Dkt. No. __09-84__ _____

_____ Defendant(s)

## MOTION FOR ADMISSION PRO HAC VICE

     ~~Plaintiff~~/Defendant __Raymour Radhakistan__ _____ hereby moves that

__David A. Vicinanzo__ _____ be admitted PRO HAC VICE in the
above case as counsel with local counsel identified below.

_____
Signature of Pro Hac Vice Applicant

     I hereby certify that I have reviewed the Application for Pro Hac Vice Admission that is being
submitted with the application fee, and I join in the foregoing motion. I acknowledge and agree to
observe the requirements of LR Gen 204 in its entirety and as it relates to the participation and
responsibilities of local counsel.

_____
Signature of Local Counsel

__Jeffrey S. Brenner__ _____          RI Bar ID # __4369__ _____
Print Name

__Nixon Peabody LLP__ _____          Email: __jbrenner@nixonpeabody.com__
Firm and Business Address
                                          Tel. # __401-454-1000__ _____
__One Citizens Plaza, Suite 500__
                                          Fax # __401-454-1030__ _____
__Providence, RI 02903__ _____

------------------------------------------------

## ORDER

This motion is hereby _____ GRANTED     _____ DENIED

_____              _____
District Judge                          Date

(Effective 3/17/2008)

UNITED STATES DISTRICT COURT<br>
FOR THE DISTRICT COURT OF RHODE ISLAND

**In re: Sealed Grand Jury Investigation**
_____
                    Plaintiff(s)

v.                                          Dkt. No.  **09-84**_____

_____
                    Defendant(s)

## APPLICATION FOR PRO HAC VICE ADMISSION

(1)     I am a member in good standing of the bar of every state and federal court to which I have been admitted, and my eligibility to practice before those courts has not been restricted in any way.

　　　(a) Please list all state courts:  __**New York, New Hampshire**_____

　　　(b) Please list all federal courts: __**See attachment**_____

　　　_____

(2)     Have you ever been disciplined or sanctioned by any court or other body having disciplinary authority over attorneys? Yes _____ No **X** (If Yes, please provide a full explanation.)

(3)     Are there any disciplinary proceedings pending against you at this time?
　　　Yes _____ No **X** (If Yes, please provide a full explanation.)

(4)     Has your _pro hac vice_ status ever been revoked by any court?
　　　Yes _____ No **X** (If Yes, please provide a full explanation.)

(5)     Have you ever been convicted of a crime (other than minor traffic offenses)?
　　　Yes _____ No **X** (If Yes, please provide a full explanation.)

(6)     Are there any criminal charges pending against you at this time?
　　　Yes _____ No **X** (If Yes, please provide a full explanation.)

(7)     Have you appeared or applied for _pro hac vice_ admission in this District during the past 12 months? Yes _____ No **X** (If Yes, please provide the date(s), case name(s) and name(s) of the judge(s) who presided).

(8)     I understand my obligation to notify this Court of any changed circumstances that affect my answers to the preceding questions.

## Attachment to Application for Pro Hac Vice Admission

United States Supreme Court, United States Court of Appeals for the First Circuit, United States Court of Appeals for the Second Circuit, United States Court of Appeals for the Eight Circuit, and United States Court of Appeals for the District of Colombia Circuit.

12710255.1

Pro Hac Vice Application Form  (cont'd)

(9)     I have read, acknowledge, and agree to observe and be bound by the local rules and orders of this Court, including the Rules of Professional Conduct of the Rhode Island Supreme Court, as adopted by this Court as the standard of conduct for all attorneys appearing before it.

(10)   For the purpose of this case, I have associated with local counsel identified below, and have read acknowledge, and will observe the requirements of this Court respecting the participation of local counsel, as set out in LR Gen 204, recognizing that failure to do so may result in my being disqualified, either upon the Court's motion or motion of other parties in the case.

Name of Local Counsel:  **Jeffrey S. Brenner, Esq.**

I hereby certify that the foregoing is true and correct.

Signature of Pro Hac Vice Applicant

**David A. Vicinanzo**

Print Name

**Nixon Peabody LLP**

Firm Name

100 Summer Street

Business Address

Boston, MA  02110

671-345-1177                         866-947-0758
Tel. #                                        Fax #

**\*DO NOT FILE THIS FORM ELECTRONICALLY. File this completed form in a conventional manner along with the applicable fee.**

(Effective 3/17/2008)

UNITED STATES DISTRICT COURT
FOR THE DISTRICT COURT OF RHODE ISLAND

In re: Sealed Grand Jury Investigation
_____
Plaintiff(s)                                Dkt. No. ___09-84___

v.

_____
Defendant(s)

## MOTION FOR ADMISSION PRO HAC VICE

~~Plaintiff~~/Defendant  Raymour Radhakistan _____ hereby moves that

David A. Vicinanzo _____ be admitted PRO HAC VICE in the
above case as counsel with local counsel identified below.

_____
Signature of Pro Hac Vice Applicant

I hereby certify that I have reviewed the Application for Pro Hac Vice Admission that is being
submitted with the application fee, and I join in the foregoing motion. I acknowledge and agree to
observe the requirements of LR Gen 204 in its entirety and as it relates to the participation and
responsibilities of local counsel.

_____
Signature of Local Counsel

Jeffrey S. Brenner
_____
Print Name                              RI Bar ID # ___4369___

Nixon Peabody LLP
_____
Firm and Business Address               Email: jbrenner@nixonpeabody.com

One Citizens Plaza, Suite 500           Tel. # 401-454-1000
_____
                                        Fax # 401-454-1030
Providence, RI 02903

===============================================

## ORDER

This motion is hereby ✓ GRANTED ____ DENIED

_____                  9/17/09
District Judge                             Date

**U.S. Department of Justice**

*United States Attorney*
*District of Rhode Island*

---

Fleet Center                                        (401) 709-5000
50 Kennedy Plaza, 8th Floor                   FAX (401) 709-5001
Providence, Rhode Island 02903

September 18, 2009

**FILED**

SEP 18 2009

Honorable William E. Smith
United States District Judge
United States District Court
District of Rhode Island
United States Courthouse          **MATTER UNDER SEAL**     **U.S. DISTRICT COURT**
One Exchange Terrace                                        **DISTRICT OF R.I.**
Providence, RI 02903

Dear Judge Smith:

    As a follow-up to yesterday's hearing concerning the Government's request to depose nine witness under Rule 15 of the Federal Rules of Criminal Procedure, we wish to make two additional follow-up points before Your Honor renders a decision on the motion. <u>First</u>, we would like to clarify the Government's position on the targets' request to stay the depositions if the Court were to grant the Government's motion. The United States opposes any stay due to the precarious health situation of the nine witnesses. They are all suffering from extreme physical ailments and it is virtually impossible to predict how long any of these witnesses will live. While we have identified ███████ and ███████████ as the two individuals whose death appears to be most imminent, we are not medical personnel and have no way to predict accurately how much longer any of the nine witnesses have to live. The Government's concern is that any stay in the taking of the depositions - if the Court were to grant the motion - would result in a delay while a mandamus petition is litigated and considered by the Court of Appeals. This delay will, in all likelihood, result in the death of one or more of the potential deponents.

    If, however, the Court were inclined to grant a stay or a partial stay, the Government requests that the order include a strict time limitation by which the targets need file a petition for mandamus with the Court of Appeals. There is no requirement in the Rules that a petition for mandamus be filed within any specific time period. Our concern, of course, if that any delay in filing a petition for mandamus would further delay the taking of the depositions and make it more likely that one or more of the witnesses will pass away before they can be deposed. Unfortunately, we find ourselves in a race against time and any unnecessary delay can lead to irreparable harm to the Government in the investigation of this case. We therefore suggest - if the Court were to grant the Government's motion and impose either a full or partial stay - that the Court require the targets to file a petition of mandamus within 48 hours of the Court's order.

    <u>Second</u>, on a house-keeping note, we request that this letter and the Government's letter-brief to the Court of September 17, 2009 be made a part of the record of this proceeding. This will assist the Court of Appeals in obtaining a full record of the proceedings before Your Honor in the matter.

    Thank you for your attention to this matter.

                    Respectfully submitted,

                    PETER F. NERONHA
                    UNITED STATES ATTORNEY

              By: _____
                    Lee H. Vilker
                    John P. McAdams
                    Assistant United States Attorneys

cc (via facsimile):  Robert Flanders, Esq.
                 Anthony Traini, Esq.
                 David Vicinanzo, Esq.

AO 187 (Rev. 7/87) Exhibit and Witness List

# UNITED STATES DISTRICT COURT

## DISTRICT OF RHODE ISLAND

In re: Grand Jury Proceedings

V.

### EXHIBIT AND WITNESS LIST

Case Number:  MC09-84ML

| PRESIDING JUDGE William E. Smith | | | | | PLAINTIFF'S ATTORNEY McAdams, Vilker | DEFENDANT'S ATTORNEY Brenner, Flanders, Traini, Vicinanzo |
|---|---|---|---|---|---|---|
| TRIAL DATE (S) 9/17/2009 | | | | | COURT REPORTER Anne Clayton | COURTROOM DEPUTY Rana Smith |
| PLF. NO. | DEF. NO. | DATE OFFERED | MARKED | ADMITTED | DESCRIPTION OF EXHIBITS* AND WITNESSES | |
| 1 | | 9/17/2009 | ID | | Collection of Medical Records | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

* Include a notation as to the location of any exhibit not held with the case file or not available because of size.

Page 1 of ___1___ Pages

Case 1:09-mc-00084-S *SEALED*  Document 11   Filed 09/21/09   Page 1 of 12 PageID #: 46

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

IN RE GRAND JURY PROCEEDINGS     :
                                 :     Misc. No. MC-09-84-S
                                 :

SUPPLEMENTAL MEMORANDUM OF LAW OF ███████████████
IN OPPOSITION TO GOVERNMENT'S MOTION TO TAKE DEPOSITIONS PURSUANT
TO RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

At the hearing on the government's motion to take depositions held on September 17,

2009, several critical points were examined by the court. One was to what extent the court had

discretion to order the depositions, to which counsel responded that in the first instance the court

had no discretion with respect to the determination of whether or not Rule 15 applied to the

government's request.[1] Another was whether and to what extent the rights of the targets as

---

[1]This question is different from whether the court has the discretion to allow the deposition. As to that question,
however, one of our District Courts has noted that

"[t]he decision whether to grant or deny a motion to take the deposition of a proposed witness for
use at a criminal trial is committed to the discretion of the district court. We have held that this
discretion is not broad, and should be exercised carefully." *U.S. v. Keithan*, 751 F.2d at p. 12,
citing *United States v. Mann*, 590 F.2d 361, 365 (1st Cir. 1978).

*United States v. Acevedo-Ramos*, 605 F.Supp. 190 (D.C.P.R. 1985). In *Keithan*, quoted above, the circumstances
were remarkably similar to those here. *Keithan* involved a mail fraud prosecution of two defendants accused of
defrauding "numerous elderly people in the sale of insurance policies." *Keithan*, 751 F.2d 9, 11 (1st Cir. 1984). The
court upheld the taking of the depositions because the proposed testimony "was essential to support the
government's claimed fraudulent representations charged in count eight of the indictment." *Keithan*, 751 F.2d at 12
(emphasis supplied).
  Magistrate Judge Kravchuck of the District of Maine recently had occasion to examine this issue to a limited
extent in a case in which a defendant sought leave to take a deposition of a potentially unavailable witness due to
likely unavailability by imminent death. See, *United States v. Bunnell*, 201 F.Supp.2d 169, 170 (D.Me. 2002). In
his analysis, the Magistrate Judge reviewed some of the only other decisions in which the First Circuit has
considered these issues, even tangentially. See, *United States v. Ferrara*, 746 F.2d 908, 912-913 (1st Cir. 1984);
*United States v. Mann*, 590 F.2d 361 (1st Cir. 1978); and *In re United States*, 348 F.2d 624 (1st Cir. 1965). However,
in *Bunnell*, as in all the other cases, one point of commonality is that the depositions were sought for purposes of
trial while the indictment was pending. Moreover, the court in *Bunnell* was concerned that the use of Rule 15 could
easily exceed its intended scope absent strict control by the district courts. Important to this issue there, as it is here,
is that the pendency of the indictment is crucial to "mapping out" in advance the admissibility analysis to be
performed later:

potential defendants were impacted by the exercise of whatever power the court may have to order the depositions. And a third was whether the government had met the burden of demonstrating that the potential witnesses were truly subject to imminent unavailability by death.

▮▮▮▮▮▮▮▮▮▮has previously filed a memorandum on some of these issues and now that the court has focused on them at the hearing, he wishes to supplement his earlier arguments.

    1.   <u>The Application of Rule 15.</u>

The government made much of the fact that there is an alternative procedure for the court to consider in using the Rule 15 deposition mechanism in this case—specifically the material witness approach. At the hearing and in their respective previous filings, both the targets and the government brought to the court's attention the Second Circuit's decision in <u>United States v. Adwalladah</u>, 349 F.3d 42, 59-61 (2d Cir. 2003), <u>cert.denied</u>, 543 U.S. 1056 (2005). What was not developed at the hearing, however, was the specific relationship that a material witness case has to the statutory procedure under which it occurs. Furthermore, the government, in that context, also argued that depositions are permitted pursuant to Rule 46, which itself refers to Rule 15.

Rule 15(a), which deals with the deposition process, is broken into two separate sections, 15(a)(1) and 15(a)(2). Rule 15(a)(1) is sought to be employed here and simply does not provide

---

It seems that though the time for crossing the availability bridge must certainly be at the trial stage, it must at least be mapped out at the pre-trial Rule 15 juncture, otherwise depositions of witnesses in a criminal matter would have become the norm (as in the civil arena) rather than the exception. *See In re United States*, 348 F.2d 624, 626 (1st Cir. 1965). The 1975 amendments cannot be read to work such a far sweeping change to the pre-trial process in a criminal case.

Bunnell, 201 F.Supp.2d at 171 n. 1.

Importantly, in <u>In re United States</u>, 348 F.2d 624, 626 (1st Cir. 1965), a defendant was initially granted leave by the district court to take depositions of two grand jury witnesses. The government appealed the order. The defendant argued in the Court of Appeals that if the district court got it wrong, the judge merely abused his discretion. the government, on the other hand, argued that the district court was simply "without power" to allow the depositions at all. This question continues to be unresolved.

for pre-indictment depositions. Rule 15(a)(2) is the material witness provision, and it does

provide for pre-indictment depositions under very limited circumstances. Moreover, the

reference to pre-indictment is exactly that—pre-indictment—not pre-"charge". See, e.g., United

States v. Seijo, 595 F.2d 116 (2d Cir. 1979).

The law on material witness cases is very specific, as is the procedure that surrounds it.

As one court has pointed out, it was designed for a very specific purpose, which is not the

purpose for which the government seeks to use it here. See, e.g., Torres-Ruiz v. United States

District Court For The Southern District Of California, 120 F.3d 933, 935-936 (9th Cir. 1997).[2]

Moreover, it requires steps the government has not taken in order for it to be effective. For

example, no material witness affidavit has been filed by the government outlining why and how

the testimony of any of the proposed witnesses is material.[3] This was an issue at the September

17 hearing, because both counsel argued extensively on the question of whether the government

could make the necessary materiality showing without having charged the targets with an

offense; it becomes critical because, among other things, it makes the difference between

whether the depositions are truly to preserve trial testimony (as is required by Rule 15) or are in

reality part of the investigation and therefore discovery tools (which is strictly prohibited by the

---

[2]The "material witness" procedure was extensively analyzed shortly after 18 U.S.C. §3144 was enacted as part of
the Comprehensive Crime Control Act of 1984. See, In Re Class Action Application For Habeas Corpus On Behalf
Of All Material Witnesses In The Western District Of Texas, 612 F.Supp. 940 (W.D.Tex. 1985).

[3]In United States v. Sharif, 343 F.Supp.2d 610, 616 (E.D.Mich. 2004), cited by the government, the court noted that

> [t]he Supreme Court in U.S. v. Valenzuela-Bernal stated that the government is justified in a
> prompt deportation of illegal alien witnesses upon a good-faith determination that the witnesses
> possess no evidence favorable to the defendant. 458 U.S. 858, 873, 102 S.Ct. 3440, 73 L.Ed.2d
> 1193 (1982). A defendant "cannot establish a violation of his constitutional right to compulsory
> process merely by showing that deportation of the [witnesses] deprived him of their testimony."
> Id. at 867, 102 S.Ct. 3440. The defendant is required to "make some plausible showing of how
> their testimony would have been both material and favorable to his defense." Id.

The government should be similarly required to make the same showing before being allowed to take depositions
which will ultimately affect the target's fundamental rights.

Case 1:09-mc-00084-S *SEALED*   Document 11   Filed 09/21/09   Page 4 of 12 PageID #: 49

Rule).[4]  As the court very recently said in <u>United States v. Poulin</u>, 592 F.Supp.2d 137, 145-146

(D.Me. 2008):

> Federal Rule of Criminal Procedure 15 addresses <u>pre-trial</u> depositions:
> A party may move that a prospective witness be deposed in order to <u>preserve</u>
> <u>testimony for trial.</u> The court may grant the motion because of exceptional
> circumstances and in the interest of justice. Fed.R.Crim.P. 15(a)(1). Unlike civil
> actions, where depositions may be taken as a matter of right and may be for
> discovery or to obtain evidence, "depositions may be taken in a criminal case only
> upon court order, and are not for discovery of information but only to preserve
> evidence." Wright § 241, at 8. Mr. Poulin's motion to depose Sony and the
> Houston "spy shop", as currently cast, is a discovery motion, seeking to obtain
> information with which he plans to demonstrate that the Government's evidence is
> faulty. It is precisely the type of discovery not allowed in a criminal case. *United
> States v. Edwards*, 69 F.3d 419, 437 (10th Cir. 1995); *United States v. Kelley*, 36
> F.3d 1118, 1124-25 (D.C.Cir. 1994); *United States v. Drogoul*, 1 F.3d 1546, 1551
> (11th Cir. 1993). If Mr. Poulin is to convince the Court to exercise its discretion,
> which the First Circuit has said should be "exercised carefully," and allow the
> taking of pretrial depositions, he bears the burden to demonstrate exceptional
> circumstances. *United States v. Mann*, 590 F.2d 361, 365 (1st Cir. 1978); *see
> United States v. Ferrera*, 746 F.2d 908, 912 (1st Cir. 1984); *United States v.
> Bunnell*, 201 F.Supp.2d 169, 170 (D.Me. 2002). On this record, he has fallen far
> short of this burden.

The court recognized this very issue when it inquired of counsel as to the possibility of

precluding the government from using the depositions in the grand jury.[5]  There is, in reality,

absolutely no difference between what the government is doing here and what civil litigants seek

---

[4]This is a most important point for the court to determine because the issue of the court's discretion is never reached if Rule 15 does not apply or otherwise permit these depositions. It is beyond speculation that Rule 15 is not an investigatory tool and strictly prohibits anything other than preservation of trial testimony (even in the §3144 context). The beginning of this analysis, of which more will be said later, is that as long as the case is in the pre-indictment (in the context of the present case, the pre-"charge") stage, it is considered investigatory, and only <u>after</u> charges have been filed can it become "trial-oriented." This is one reason cases in the First Circuit and elsewhere hold that the grand jury may not be used to prepare a pending case for trial.  <u>In re Grand Jury Proceedings</u>, 814 F.2d 61, 70 (1st Cir. 1987), and cases cited therein.

[5]As counsel pointed out, this would raise the very difficult and complicated question of whether the court has the authority to enter such a protective order [<u>see, e.g.</u>, <u>Branzburg v. Hayes</u>, 408 U.S. 665, 702, n. 39 (1972)]. By not re-arguing the issue here, counsel does not mean to suggest that it does not continue to be important. Clearly, the impact this decision may have on grand jury practice is potentially far-reaching. ▊▊▊▊▊▊▊ will continue to press the court for protective orders on the use of the depositions prior to any request that they be admitted at trial.

to do under Rule 27. And that was precisely the subject of the 5th Circuit's comment in footnote 9 of its opinion in In Re Application of Eisenberg, 654 F.2d 1107, 1113 (5th Cir. 1981).

Secondly, a "material witness" is such only by virtue of there having been a crime committed. The government has already conceded that it does not know if there has been a crime committed here. Moreover, in the material witness context, no case was found where a material witness deposition was taken, even in a pre-indictment setting, where the target of the ultimate indictment had not already been arrested and charged with an offense, even if on the basis of a complaint only. The vast majority of material witness cases concern illegal aliens that are themselves the subjects or victims of the criminal offense of illegal transportation of aliens or hostage taking or other offense related to trafficking in aliens. In some cases, they are drug prosecutions and the material witnesses were somehow involved in the drug transactions. But in all cases able to be researched in the available time, a crime was committed, the government knew what the crime was, and someone had been charged with the crime. It is inconceivable for an individual to be arrested on a "material witness" warrant and held pending a deposition without someone having been charged with a known criminal offense. That is why the government's procedure is inapplicable here and why Rule 15 depositions are not otherwise available in pre-indictment cases.

2.     The rights of the targets.

The court raised the issue of confrontation and at one point indicated that it appeared that Crawford v. Washington, 541 U.S. 36 (2004), was the driving force behind the exercise of its discretion to allow the depositions in light of the admissibility analysis to be made in the future. Counsel's response was that there was great concern about what rights the targets had and whether they could be preserved and protected in the context of the deposition proceeding. This

issue is absolutely critical to this proceeding because the target's position on this issue is itself one of the principal reasons why the government cannot use Rule 15 to take these depositions— i.e., the consequences of allowing these depositions compromises the target's Sixth Amendment rights regardless of whether he is present at or participates in the depositions.

The government cited the court to United States v. Sharif, 343 F.Supp.2d 610 (E.D.Mich. 2004). In that case, after the court allowed the depositions (which were attended by the defendants and counsel) to occur, the defendants argued that for a variety of reasons, they were denied their rights to confrontation and effective assistance because their counsel could not be effective at the depositions and therefore sought to exclude them. The court's response in Sharif, which will undoubtedly be the government's argument later in this case, is that the defendants had no claim of ineffectiveness and no issue to raise because they had no Sixth Amendment rights at the pre-indictment stage [essentially the majority opinion in United States v. Hayes, 231 F.3d 663 (9th Cir.)(en banc), cert.denied, 532 U.S. 935 (2000)]. Counsel for the targets argued this very point to the court at the hearing and in Sharif the court made the same observation and agreed with the government. The process the court will embark on if it grants these depositions is equally dangerous. The targets legally have no Sixth Amendment right to counsel at this stage of the proceedings, whether they in fact have counsel or not. The presence of the attorney in the process does not mean the Sixth Amendment is present. It merely means that the lawyer is there. It is inappropriate and disingenuous for the government to advance the argument that the court should allow the depositions because the target will be represented by counsel and can participate and cross-examine, because the government can later argue (when the then-defendants complain that their counsel could not have been effective at that time and under those circumstances) that the defendants at that time had no Sixth Amendment rights anyway, so

6

whatever the shortcomings were are immaterial. Under the logic of Sharif, this argument would carry the day.

For the court to allow the depositions under the government's plan, it would be required to make a finding that the targets actually are entitled to their Sixth Amendment rights to counsel and to confrontation at the time of the depositions. As pointed out in Hayes, there is no authority for that proposition. The dissenters in Hayes disagreed, but there has been no decision where the issue has been tested again. Therefore, despite the court's good intentions and even the government's efforts to see that the depositions are conducted with counsel present, the targets have no Sixth Amendment rights while these depositions are in progress, regardless of whether their lawyers participate or not.

This is one reason why Sixth Amendment rights do not attach until after a target has been charged and becomes a defendant, since it is at that point that the evidence that brought the government to the charging stage is determined. Even though the government may develop additional evidence between charge and trial, it has at least established probable cause to believe that a crime has been committed and that the defendant has committed it, and thus laid a charge.

The pre-indictment deposition procedure allows the government to collect evidence without charging anyone in denial of a soon-to-be-defendant's Sixth Amendment rights, and then use the evidence to circumvent Crawford. Crawford requires a determination of whether the then-defendant has a Sixth Amendment right. It presumes that the right existed and was triggered and that the defendant exercised it. Crawford looks to whether confrontation and cross-examination has actually been achieved, was available, or was waived and it assumes things that have not occurred in the space when the deposition took place, i.e., between the investigation stage and the actual trial. Crawford is the other side of the coin. At trial, the court

will perform a <u>Crawford</u> analysis on the deposition and find that the defendant was represented by counsel and had the opportunity for cross-examination and that therefore the deposition is admissible under the Sixth Amendment. The question that will naturally be raised is whether there could have been a waiver of the right to confront and cross-examine—a right which presumably had not attached at the time of the deposition. Can a waiver be effective if it is of a right that may be known but does not exist at the time? On the other hand, if the target participates in the deposition without all necessary preparation (including discovery that may not yet exist), can the cross-examination—and counsel—be effective?

███████████ must deal with this question now. Does he participate in the deposition without knowing the government's theory of prosecution, or with what crime he will be charged, and without all discovery material, and in doing so risk an adverse determination when he claims that ineffectiveness of the cross-examination or his counsel that he had no Sixth Amendment rights at the time, and therefore he cannot have been harmed? Or does he forego the opportunity to appear and cross-examine the witnesses and in so doing risk a waiver? Since he has no Sixth Amendment rights now, he should not be able to be held to have waived them later on but there is case law holding that this is precisely what happens. <u>See</u>, <u>e.g.</u>, <u>United States v. Williams</u>, 116 Fed.Appx. 890, 891 (9th Cir. 2004), <u>cert.denied</u>, 546 U.S. 860 (2005).

The court should not be able to place the target in such a position ███████████'s essentially being inserted by the court between the rock and the hard place—<u>Sharif</u> and <u>Williams</u>. And even if it is correct that ███████████ has no Sixth Amendment rights that can be denied at this stage of the "proceedings", the fact that it is the court that has created the Hobson's choice for him makes the court's action a Fifth Amendment due process violation.

3.   <u>The government has not established potential unavailability</u>.

At the hearing on September 17, the court inquired of counsel as to whether there was any real challenge to the government's allegation that the determination of immediate prospective unavailability of the deponents was well-founded. Counsel's response was that he had seen no documentary evidence supporting the government's allegations, but what he heard thus far at the hearing suggested to him that perhaps the government's position was not well-taken and that he would not be in a position to better respond to the court until he had seen the evidence. That event has now occurred.

With all due respect to the deponents, a review of the "medical records" provided by the government suggests that they are wholly insufficient to meet the burden that any of the potential witnesses will not be available to testify as the government claims. The government has repeatedly told the court that the witnesses are dying daily and that each moment is precious to the government's humanitarian effort to someday give a voice to the victims. However, the documents provided by the government do not justify the melodrama.

a.   █████████████████ is alleged to be 79 years old with stage IV lung cancer and other unidentified ailments. He is not recommended for chemotherapy and his expected survival is described as "in months." The government has apparently had this report for a month and a half but made no effort to take the deposition earlier. Moreover, the report indicates that he will be a candidate for hospice care in the future but apparently is not at the present time. Without even considering whether such thin evidence establishes the prospect of imminent of death, there is, at a minimum, nothing in this report and no further medical information provided to the court that indicates tha ████████ deposition cannot wait until the

Court of Appeals has had an opportunity to hear this matter on either a direct appeal by the government or a petition for writ of mandamus by the targets.

  b. ██████████ –The entire "medical record" submitted in the case of ██████ ██████ is a list of medications and some references to certain ailments. This is not even a letter from a physician. It has no medical significance whatsoever and certainly does not establish that ████████ is about to die.

  c. ████████ –The report on ██████ indicates that he has been under cardiology care for the past eight years. Again, the documents provides a list of medications, as if it were a talisman of imminent death. More accurately, however, there is not a word in the letter that even suggests, let alone predicts, what ████████ life expectancy might be. This report is wholly inadequate to establish that a deposition is required because of imminent death.

  d. ████████ –This "medical report" is from a private investigator hired by an insurance company who is reporting to the insurance company's counsel. Aside from the obvious credibility issues with the source, most of the letter is redacted. Furthermore, the only medical information in it comes by way of hearsay from the patient who says he has three months to live. He also mentions to the insurance investigator that he needs a heart transplant to survive but has no money, although, he admits that he was apparently diagnosed with heart failure five years ago and is miraculously still alive. This "report" cannot seriously be considered by the court as supporting the proposition that there has been a medical opinion offered to suggest that ████████ will be dead in the immediate future.

  e. ████████ –Once again, the court has been nothing more than a diagnosis of an illness, in this case chronic emphysema, and a laundry list of medication. There is not a word from a medical professional saying that ████████ is in imminent danger of death or even what

is life expectancy is. there is no information of any kind concerning his condition, other than what the agent apparently wants non-medical persons to divine from the medication list.

f.   ███████████ This report is the least supportive of the government's position. The fact that the patient actually has a long-term prognosis being considered indicates that death is, at the very least, not around the corner.

In short, the government's alleged "unavailability" showing is woefully inadequate. It certainly is not sufficient to warrant the complete disdain for constitutional rights inherent in its deposition motion, at least without the ultimate oversight of the Court of Appeals.

At a minimum, it cannot be credibly stated that any of these people will become permanently unavailable before the Court of Appeals has had an opportunity to rule on the serious and complicated issues presented by this case. There is no doubt that the court will be available to grant an emergency hearing this week. To suggest that any of these individuals will not be available a week from now is ludicrous, given the dearth of medical evidence provided to the court.

The issues in this case are clearly sufficiently important ot warrant review by the Court of Appeals regardless of whether the court grants or denies the government's motions. That opportunity should be allowed, and there is nothing in the "medical evidence" that can legitimately undermine such a determination.[6]

---

████████████ is aware that the government has requested that the court not stay its order of it grants the government's motion, or that if it does enter a stay it prescribe a very short (48-hour) time frame within which the targets must file their petition for writ of mandamus. ████████████ as no objection to a reasonable time-limited stay in order to file the mandamus, with the understanding that (a) he does not thereby waive any rights or arguments that a longer stay is warranted and (b) he will ask the Court of Appeals to extend the stay until the matter is resolved in that court.

Respectfully submitted,

██████████████████████

By His Attorney,


/s/ Anthony M. Traini
Anthony M. Traini (#4793)
56 Pine Street – Suite 200
Providence, RI 02903
Tel.    401.621.4700
Fax     401.621.5888
Email: amt@atrainilaw.com


CERTIFICATION

   I hereby certify that I have given notice to other counsel by required means based on the sealed nature of these proceedings.

/s/ Anthony M. Traini
Anthony M. Traini

**HinckleyAllenSnyder** LLP

ATTORNEYS AT LAW

50 Kennedy Plaza
Suite 1500
Providence, RI 02903-2319
TEL: 401.274.2000
FAX: 401.277.9600
www.haslaw.com

*Robert G. Flanders, Jr.*
rflanders@haslaw.com

September 20, 2009

*Via Hand Delivery*

Honorable William E. Smith
United States District Judge
United States District Court
District of Rhode Island
United States Courthouse
One Exchange Terrace
Providence, RI 02903

**MATTER UNDER SEAL**

Dear Judge Smith:

This letter is intended to respond to some of the government's positions as elaborated in its
September 17, 2009 letter to the Court and to provide some additional law that may be helpful in
guiding the Court's decision on the government's request to conduct Rule 15 depositions of nine
terminally ill individuals.

1.    **In re Application of Eisenberg**

The Court may find additional guidance in In re Application of Eisenberg, 654 F.2d 1107, 1113
n.9 (5th Cir. 1981) (copy enclosed). In that case, fearing that it would jeopardize a related
criminal investigation, the trial court denied the petitioner's request to depose a witness pursuant
to Fed. R. Civ. P 27, which allows for the taking of pre-complaint depositions under certain
circumstances in advance of *civil* actions. Id. at 1109. The trial court suspected, however, that
the petitioner was attempting to use the civil discovery rules as a "back door" to information that
was otherwise beyond his reach under the criminal discovery rules. Id. at 1113. On appeal, the
court noted that

> there is no rule in criminal procedure analogous to Rule 27 by which a deposition
> can be taken by a potential defendant prior to the initiation of prosecution.
> Depositions of a party's own witness are allowed during the pendency of a
> criminal action only when preservation of the testimony is in the interest of justice
> due to exceptional circumstances.

28 State Street, Boston, MA 02109-1775  TEL: 617.345.9000  FAX: 617.345.9020
20 Church Street, Floor, Hartford, CT 06103-1221  TEL: 860.725.6200  FAX: 860.278.3802
11 South Main Street, Suite 400, Concord, NH 03301-4846  TEL: 603.225.4334  FAX: 603.224.8350

**HinckleyAllenSnyder**LLP
ATTORNEYS AT LAW

Honorable William E. Smith
September 21, 2009
Page 2

---

Id. at 1113 n.9 (citing Fed. R. Crim. P. 15(a)) (emphasis added). Although dicta, this language further supports the plain reading of Rule 15(a) that it only applies to pending criminal actions, i.e., post-indictment, because only "parties" may employ its provisions, and then only under exceptional circumstances.

2.    **Response to the Government's Arguments**

In its letter to the Court, the Government discussed United States v. Mann, 590 F.2d 361, 366 (1st Cir. 1978) for its holding that "[w]hen the question is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence." Mann, 590 F.2d at 366. Mann, however, is not on point. In Mann, the Government *had already obtained* an indictment before it moved to take the depositions that were later discussed on appeal. Id. at 363.

The Government also argued below that Rule 15 should be read to allow for pre-indictment depositions because of procedures providing for the detention of certain material witnesses, found at Fed. R. Crim. P. 46(h)(2) and 18 U.S.C. § 3144. The latter provision does not apply, however, because, as with Rule 15, it speaks in terms of "parties" to a criminal action and therefore, like Rule 15, presupposes an indictment and a *pending* criminal action. 18 U.S.C. § 3144 ("If it appears from an affidavit *filed by a party* . . ."). Rule 46's provisions regarding supervisory detention of witnesses "pending trial" does reference Rule 15(a) in that it requires the filing of bi-weekly government reports indicating why the material witnesses "should not be released with or without a deposition being taken under Rule 15(a)." But the Government has cited no authority, even in *dicta*, for the Government's interpretation of this Rule. Moreover, a plain reading of Rule 46(h)(2) does not endorse pre-indictment depositions. It merely indicates that where a witness is held "pending indictment, arraignment, or trial," the requisite government report shall be made. In pre-indictment situations, a proper report would therefore indicate that the witness was still being detained because pre-indictment depositions are not authorized under Rule 15(a) and/or that the Government was not yet prepared to file an indictment.

Finally, at the hearing on this matter, the Government noted that Rule 1 of the Federal Rules of Criminal Procedure provides "These rules govern the procedure in *all* criminal proceedings." Fed. R. Crim. P. 1 (emphasis added). Because courts have held that the term "criminal proceedings" includes grand jury proceedings, the Government argued that this means all of the rules, including Rule 15, must apply to grand jury proceedings. See United States v. Awadallah, 349 F.3d 42, 49-51 (2d Cir. 2003); Bacon v. United States, 449 F.2d 933, 939-41 (9th Cir. 1971). But several of the rules are completely irrelevant to grand jury proceedings. See, e.g., Fed. R. Crim. P. 32-38 ("Post Conviction Procedures"). For example, Rule 29.1 provides that the defense makes its closing argument after the government. Fed. R. Crim. P. 29.1(b). This obviously would not apply to a grand jury proceeding, because the defense does not even have a

**HinckleyAllenSnyder**LLP
ATTORNEYS AT LAW

Honorable William E. Smith
September 21, 2009
Page 3

_____

right to be present.  Fed. R. Crim. P. 6(d)(1).  For this reason, it is inappropriate to conclude that Rule 1 means that Rule 15 depositions apply in a pre-indictment context.  Rather, one must look to the text of each specific Rule to determine its applicability to a specific type of criminal proceeding.

For these reasons and those previously identified, the Court should deny the Government's motion to take Rule 15 depositions.

Sincerely yours,

Robert G. Flanders, Jr.


RGF:dmf
Enclosure

cc:     Lee Vilker, Esq.
        John P. McAdams, Esq.
        Anthony M. Traini, Esq.
        David A. Vicinanco, Esq.
        Michael J. Connolly, Esq.
        (all with enclosure)



LEXSEE 654 F.2D 1107

In re Application of Lance EISENBERG, Petitioner-Appellant.

No. 80-5525

UNITED STATES COURT OF APPEALS, FIFTH CIRCUIT, UNIT B

*654 F.2d 1107; 1981 U.S. App. LEXIS 17982; 32 Fed. R. Serv. 2d (Callaghan) 660; 60 A.L.R. Fed. 915*

September 4, 1981

**PRIOR HISTORY:**   [**1] Appeal from the United States District Court for the Southern District of Florida.

**COUNSEL:** Martin R. Baach, Washington, D.C., William Edward Junell, Jr., Houston, Tex., for petitioner-appellant.

Barbara L. Herwig, Katherine Gruenheck, Attys., Civil Div., Dept. of Justice, Washington, D.C., for appellee.

**JUDGES:** Before KRAVITCH and HENDERSON, Circuit Judges, and THOMAS, * District Judge.

*    * Judge of the Southern District of Alabama, sitting by designation.

**OPINION BY:** HENDERSON

**OPINION**

[*1109] Lance Eisenberg appeals from the refusal of the United States District Court for the Southern District of Florida to reconsider its order vacating his permission to depose an alleged government informant.

In June, 1979, Eisenberg filed a petition pursuant to *Rule 27 of the Federal Rules of Civil Procedure* seeking leave to depose in anticipation of litigation. [1] The subject of [*1110] the deposition was to be Kenneth Guilbert, an agent of Scotland Yard assigned to the Cayman Islands, who was believed by Eisenberg to have been conducting surveillance of him at the request of the United States government. Eisenberg's amended petition [2] stated that he "expect(ed) a civil action [**2] to be commenced concerning certain financial transactions and tax strategies conducted by said petitioner on his own behalf and on behalf of his clients." [3] (Record at 18.) Eisenberg

sought to elicit testimony concerning Guilbert's relationship to the United States government, including instructions and compensation he had received from it, and all documents and reports submitted by Guilbert to agencies of the United States on Eisenberg's banking and monetary transactions in the Cayman Islands. The British agent was expected to leave the Cayman Islands within several months and to establish a new residence beyond the jurisdiction of the United States courts. Because this new domicile would be potentially difficult or impossible to locate, Eisenberg contended that the evidence might be lost unless he was allowed to depose Guilbert in advance of suit.

1   The rule states:

(a) Before Action.

(1) Petition.  A person who desires to perpetuate his own testimony or that of another person regarding any matter that may be cognizable in any court of the United States may file a verified petition in the United States District Court in the district of the residence of any expected adverse party.  The petition ... shall show: 1, that the petitioner expects to be a party to an action cognizable in a court of the United States but is presently unable to bring it or cause it to be brought, 2, the subject matter of the expected action and his interest therein, 3, the facts which he desires to establish by the proposed testimony and his reasons for desiring to perpetuate it, 4, the names or a description of the persons he expects will be adverse parties and their addresses so far as known, and 5, the names and addresses of the persons to be examined and the substance of the testimony which he expects to elicit from each ...."

654 F.2d 1107, *; 1981 U.S. App. LEXIS 17982, **;
32 Fed. R. Serv. 2d (Callaghan) 660; 60 A.L.R. Fed. 915

*Fed.R.Civ.P. 27(a)(1)* (1971).

[**3]

2   Eisenberg's original petition asserted that the anticipated action would be a Freedom of Information Act suit pursuant to *5 U.S.C. §§ 552, 552a (1978)* to obtain information, records and other materials pertaining to the petitioner and others. The government attacked this petition for failure to state a claim under *Rule 27*, because it did not demonstrate that Eisenberg had a discrete cause of action upon which a suit could not then be filed and, without the right to preserve testimony, valuable evidence would be lost. Technical objections to the pleading's form were also made. Faced with this motion to dismiss, Eisenberg amended his petition.

3   Eisenberg is an international tax attorney.

The United States opposed Eisenberg's amended petition on grounds that it failed to satisfy the requirements of *Rule 27*. More specifically, the government urged that Eisenberg had failed to adequately identify the anticipated litigation and he had not established that absent the requested deposition valuable evidence would be unavailable for trial. The district court was not persuaded by the government's [**4] objections, however, and granted Eisenberg's amended petition for deposition upon the court's determination that perpetuation of Guilbert's testimony might prevent a failure or delay of justice.

On March 3, 1980, the government filed a motion for relief from the court's deposition order pursuant to *Rule 60(b) of the Federal Rules of Civil Procedure*. The motion renewed the government's earlier contentions as to the insufficiency of Eisenberg's request and, for the first time, identified Eisenberg as the target of a pending grand jury investigation in Houston. [4] By way of reply to Eisenberg's opposition, the government further elaborated that relations of the United States with foreign countries would be harmed should Guilbert be deposed.

4   Crimes for which the petitioner was being investigated included violations of *18 U.S.C. §§ 1341, 1343, 1503, 371 (1970)*. By affidavit, an FBI agent stationed in Houston testified that Eisenberg's name had surfaced during the gathering of information on certain oil reseller corporations under the federal RICO, mail fraud, wire fraud and other related statutes. Eisenberg was subpoenaed in connection with the investigation as early as December 11, 1979, several months after he had filed his civil discovery petition.

[**5]  To prove its case, the United States attorney was prepared to introduce an affidavit and two in camera groups of documentary evidence. A formal "state se-

crets" privilege as to the documents was not claimed, however. [5] During the argument [*1111] on the motion, this evidence was examined by the court in camera and found to be probative of the government's allegation that foreign relations would be impaired by discovery. Eisenberg was never permitted to inspect the documents.

5   One such exception is the government's privilege against revealing state secrets of a diplomatic or military nature. Another which may be formally invoked is the federal privilege for production of documents relating to ongoing criminal investigations. *Swanner v. United States, 406 F.2d 716, 719 (5th Cir. 1969); Sirmans v. City of South Miami, 86 F.R.D. 492, 495 (S.D.Fla., N.D.1980)*. Generally a privilege like the state secrets right must be formally claimed by the head of the applicable agency, specifically describe the privilege documents and state why the information is confidential. *United States v. Reynolds, 345 U.S. 1, 73 S. Ct. 528, 97 L. Ed. 727 (1953); Halkin v. Helms, 194 U.S. App. D.C. 82, 598 F.2d 1, 4-5 (D.C. Cir. 1978); Sigler v. LeVan, 485 F. Supp. 185, 192 (D.Md.1980)*. See Annot., *32 A.L.R.2d 391 (1953)*. The government conceded that it had claimed no privilege formally, but asked to reserve the right to assert a state secrets privilege, if necessary. In this case, where discovery was sought before an action was filed, we do not think the trial judge overstepped his bounds by considering the foreign relations aspect of the request, despite the lack of the formal assertion which would be obligatory at trial.

[**6]  At the conclusion of the presentations, the court granted the government's *Rule 60(b)* motion and vacated and set aside the order granting the amended petition for deposition. In accordance with *Campbell v. Eastland, 307 F.2d 478 (5th Cir.), cert. denied, 371 U.S. 955, 83 S. Ct. 502, 9 L. Ed. 2d 502 (1963)*, the court declared that Eisenberg's need for the deponent's information in the preparation of his civil case must be subordinated to the pending grand jury's interest in secrecy. A concern that the deposition would invade a very sensitive area of foreign relations, as well as jeopardize the FBI's foreign interests, also contributed to the court's decision. In its April 4, 1980, order, the court found as a matter of fact that the information was actually sought by Eisenberg for use in the criminal proceeding that was foreshadowed by the grand jury inquiry. Prelitigation discovery was denied for at least six months, pending the outcome of the criminal investigation. Secret documents and grand jury materials presented to the court under seal were ordered to be preserved as such until the court ordered otherwise.

654 F.2d 1107, *; 1981 U.S. App. LEXIS 17982, **;
32 Fed. R. Serv. 2d (Callaghan) 660; 60 A.L.R. Fed. 915

Eisenberg unsuccessfully sought reconsideration of the court's ruling [**7] on April 14, 1980, on the grounds that the order (1) was improperly based on ex parte evidence submitted to the court in camera in violation of the due process clause, and (2) did not conform to the *Rule 60(b)* criteria. This appeal was lodged from the court's refusal to reconsider its order.

On appeal, Eisenberg again presents his basic two-point argument. His major premise is that the district court judged the merits of his discovery petition on the basis of an in camera, ex parte examination of secret evidence in direct violation of his *fifth amendment* due process rights. He cites *United States v. Dillman, 146 F.2d 572, 574 (5th Cir. 1944)*, cert. denied, *325 U.S. 870, 65 S. Ct. 1409, 89 L. Ed. 1989 (1945)*, for the proposition that a full and fair hearing includes the right of each party to be apprised of all the evidence upon which the adjudication will rest, plus the right of each party to examine, explain or rebut all such evidence. Eisenberg says that ex parte submissions are permissible to determine the privileged nature of the submitted evidence. But he contends that such evidence cannot be used to decide whether other evidence merits discovery, in the way that the instant [**8] documents were employed to resolve the merits of his request for permission to depose.

Apart from this alleged constitutional error in the court's disallowance of his petition, Eisenberg insists that the judge abused his *Rule 27* discretion by denying the prelitigation deposition on the basis of inapposite authority and unsupported findings. Under *Rule 27*, the district judge may deny discovery in anticipation of litigation if the petition fails to show that the petitioner expects to be a party to an action which he is unable to bring or cause to be brought and that without the perpetuation of the testimony a failure or delay of justice will occur. *Fed.R.Civ.P. 27(a) (1966)*. See *Shore v. Acands, Inc., 644 F.2d 386 (5th Cir. 1981)*; *Ash v. Cort, 512 F.2d 909 (3d Cir. 1975)*; *In re Boland, 79 F.R.D. 665 (D.D.C.1978)*. In this case, the district judge prohibited the deposition because he doubted the sincerity of Eisenberg's representation that the information was sought for forthcoming civil litigation. Eisenberg strongly disputes this appraisal of his motive, reminding the court that his *Rule 27* petition was filed some six months before he knew [*1112] of the criminal investigation. [**9] [6] He submits that the conclusion has no basis of fact in the evidence and that to predicate an order on this finding constitutes an abuse of discretion. He further contests the applicability of *Campbell v. Eastland* to the present facts.

6   In his memorandum seeking reconsideration, Eisenberg cites what he terms "indisputable facts" establishing that he filed his petition solely for civil purposes. His support is drawn from a chronology of dates illustrating that his petition was filed, amended and briefed prior to December 11, 1979, the date on which he was first advised that a Houston grand jury subpoena had been issued for his appearance. (Record at 101.)

Our adversarial legal system generally does not tolerate ex parte determinations on the merits of a civil case. *Kinoy v. Mitchell, 67 F.R.D. 1, 15 (S.D.N.Y.1975)*. As Eisenberg points out, the right granted a party by the due process clause to a full and fair hearing encompasses the individual's right to be aware of and refute the evidence against [**10] the merits of his case. An exception to this principle is made when countervailing government interests dictate that information sought to be discovered should remain secret. Privilege questions are determined on the basis of in camera, ex parte examinations of the evidence. [7] If a petitioner were permitted to participate in the debate on discoverability, he could in essence win before he loses. He might ascertain the desired information, even if the court later denied formal disclosure. Clearly, the merits of discovery requests can be addressed on the basis of an in camera, ex parte examination of the information likely to be discovered without offending the due process clause.

7   It is settled that in camera proceedings are an appropriate means to resolve disputed issues of privilege. *Kerr v. United States District Court, 426 U.S. 394, 96 S. Ct. 2119, 48 L. Ed. 2d 725 (1976)*. In these formal privilege cases, the court examines the evidence in camera and balances the individual's interests in the information against the government's need to preclude disclosure. In *Halkin v. Helms, 598 F.2d at 7*, the Fourth Circuit was quoted:

Disclosures in camera are inconsistent with the normal rights of a plaintiff of inquiry and cross-examination, of course, but if the two interests cannot be reconciled, the interests of the individual litigant must give way to the government's privilege against disclosure of its secrets of state.

*Heine v. Raus, 399 F.2d 785, 791 (4th Cir. 1968)*, after remand, *432 F.2d 1007 (4th Cir. 1970)*, cert. denied, *402 U.S. 914, 91 S. Ct. 1368, 28 L. Ed. 2d 658 (1971)*.

[**11] For purposes of *Rule 27*, a decision that information presented ex parte by documents should not be made available to the opposing party by way of deposition prior to litigation is, in effect, a ruling on discoverability, even though the information was placed before the court in a different form than that in which the oppo-

654 F.2d 1107, *; 1981 U.S. App. LEXIS 17982, **;
32 Fed. R. Serv. 2d (Callaghan) 660; 60 A.L.R. Fed. 915

sition is likely to discover it. Essentially, the court decides that the information itself is privileged from disclosure, whether that revelation be by deposition or by document. As in the privilege cases, this weighing of the litigant's right to obtain evidence against the countervailing policies favoring nondisclosure can include an ex parte examination of the information sought.

We are influenced also by the fact that Eisenberg's request is premised on *Rule 27*. Due process is a flexible concept. *Mathews v. Eldridge, 424 U.S. 319, 335, 96 S. Ct. 893, 903, 47 L. Ed. 2d 18 (1976); Morrissey v. Brewer, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600, 33 L. Ed. 2d 484 (1972).* The lesser the interest of which a person stands to be deprived, the fewer the procedural safeguards afforded to him by the Constitution. *Connecticut Board of Pardons v. Dumschat, 452 U.S. 458,* [**12] *101 S. Ct. 2460, 69 L. Ed. 2d 158 (1981).* A person contemplating litigation has no absolute entitlement to early discovery under *Rule 27.* Moreover, the refusal to permit discovery prior to the institution of a suit is a ruling with only temporary application. The petitioner is free to seek discovery once the anticipated action has been filed. Additionally, the district judge in this case expressly granted the petitioner the right to renew his request after the expiration of six months. [*] We [*1113] hold that Eisenberg's due process rights were adequately protected in the proceeding in the district court.

[8] The order denying discovery was dated April 4, 1980. More than six months have elapsed since that date. We point out that by affirming the district court's order we do not endorse a result that necessarily will remove the information from the petitioner's reach. He is presently free to request discovery by reapplication to the United States District Court for the Southern District of Texas, and, during this fifteen-month period, the grand jury proceedings may have evolved so that discovery is now timely.

[**13] In this case, the district judge was called upon to balance the potential litigant's limited right to obtain evidence preliminarily with the significant governmental interests in preserving grand jury secrecy and foreign policy confidences. He properly considered Campbell v. Eastland's statement of this circuit's policy that criminal prosecutions take priority over civil actions. The Campbell court analyzed the precedence to be given to secrecy in criminal actions when that goal conflicts with a litigant's right to civil discovery during the pendency of litigation and prompt determination of his civil claim. As a concomitant of its conclusion that criminal cases should advance before parallel civil actions, Campbell held that liberal civil discovery procedures

were not a "back door" to information otherwise beyond reach under the criminal discovery rules. [9]

[9] *Rule 6(e)(3)(c) of the Federal Rules of Criminal Procedure* provides that a grand juror, an attorney for the government, certain governmental personnel, an interpreter, a stenographer, an operator of a recording device or a typist who transcribes recorded testimony may not disclose matters occurring before the grand jury unless so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant in certain instances. *Fed.R.Crim.P. 6(e)(3)(c) (1979).* Witnesses before the grand jury are not obliged to keep silent. In re Investigation Before April 1975 Grand Jury, 531 F.2d 600, 606-07 n.2 (D.C. Cir. 1976); In re Grand Jury Witness Subpoenas, 370 F. Supp. 1282, 1285 (S.D.Fla.1974). However, there is no rule in criminal procedure analogous to *Rule 27* by which a deposition can be taken by a potential defendant prior to the initiation of prosecution. Depositions of a party's own witness are allowed during the pendency of a criminal action only when preservation of the testimony is in the interest of justice due to exceptional circumstances. *Fed.R.Crim.P. 15(a)* (1975). In criminal cases, depositions are not intended as discovery devices. They are in limited favor where a party's own witness is unable to attend trial. *United States v. Wilson, 601 F.2d 95, 97 (3d Cir. 1979); United States v. Rich, 580 F.2d 929, 933-34 (9th Cir.), cert. denied, 439 U.S. 935, 99 S. Ct. 330, 58 L. Ed. 2d 331 (1978); United States v. Adcock, 558 F.2d 397, 406 (8th Cir.), cert. denied, 434 U.S. 921, 98 S. Ct. 395, 54 L. Ed. 2d 277 (1977).* Moreover, *18 U.S.C. § 3500* states that in any criminal prosecution brought by the United States, no statement or report in the possession of the United States which was made by a government witness or prospective government witness other than the defendant shall be the subject of subpoena, discovery, or inspection unless the witness has testified on direct examination in the trial of the case. *18 U.S.C. § 3500* (1970).

[**14] Distinctions can be drawn between the facts in Campbell and those in this case. There, a civil case was pending at the time of the civil discovery request, and the discovery of documents, rather than permission to take a deposition, was the desired objective. On the other hand, this case presents stronger facts for the denial of discovery than Campbell, in that the civil case is not yet filed, the limited opportunity provided by the federal rules under *Rule 27* for prelitigation discovery is subject

654 F.2d 1107, *; 1981 U.S. App. LEXIS 17982, **;
32 Fed. R. Serv. 2d (Callaghan) 660; 60 A.L.R. Fed. 915

to the broad discretion of the trial judge, and this limited right to discover must be balanced here with governmental interests in both grand jury secrecy and foreign relations.

Nor do we find that the trial judge incorrectly concluded that Eisenberg's civil discovery request was a disguised attempt at criminal discovery. Credibility is to be assessed by the trial judge and on appeal that determination is given great weight. It is true that Eisenberg's discovery request was filed before he was subpoenaed by the grand jury. But the trial judge must have concluded that Eisenberg knew of the grand jury investigation before he was actually subpoenaed. We see nothing in the record to [**15] indicate that his determination was clearly erroneous. Moreover, Campbell furnishes au-

thority that the petitioner's motive is a germane inquiry. In Campbell, the trial judge concluded that the discovery sought was directed towards learning more facts about the criminal case. Even if Eisenberg [*1114] possessed the purest of motives, he would have been the beneficiary of materials otherwise unavailable to him under the criminal rules if the motion were granted, thus nullifying in effect the criminal discovery limitations. Hence the trial judge did not abuse his discretion in denying permission to take the deposition.

For the foregoing reasons the judgment of the district court is

AFFIRMED.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

IN RE GRAND JURY PROCEEDINGS   )
  )
  )    Misc. No. 09-84-S

## OBJECTION OF RAYMOUR RADHAKRISHNAN TO GOVERNMENT'S MOTION TO TAKE PRE-INDICTMENT DEPOSITIONS WITH INCORPORATED ARGUMENTS AND AUTHORITY

    Raymour Radhakrishnan objects to the Government's Motion to take Pre-Indictment

Depositions pursuant to F.R.Crim. P. 15. The undersigned first met Mr. Radhakrishnan and

appeared on his behalf on the morning of the hearing, September 17, 2009. The Court gave the

undersigned until Monday, September 20 at 11:00 a.m. to decide whether to object to the

government's Motion and to join in the objections and argument of counsel for Mr. Caramadre

and ▮▮▮▮▮▮▮

    Mr. Radhakrishnan OBJECTS to the Motion of the government. He ADOPTS and joins

the objections and arguments made by counsel for ▮▮▮▮▮▮ and ▮▮▮▮▮▮ Mr.

Radhakrishnan asserts that compelling him to participate in depositions before any indictment

has been returned against him is beyond the Court's authority and not authorized by F. R. Crim.

P. 15, and an infringement of his 5th and 6th Amendment rights. Even if Rule 15 were to be

applicable in this situation, the government has not met its burden of proving exceptional

circumstances. Moreover, the disruption and damage done to the federal criminal process and to

the constitutional rights of all persons who are or may be investigated by the federal government,

and Mr. Radhakrishnan in this instance, actually undermines justice, and is not "in the interest of

justice."

12714030.1

## ADDITIONAL ARGUMENT

Mr. Radhakrishnan makes the following arguments in addition to those made by the other non-charged individuals and adopted by him.

Rule 15 is placed <u>after</u> the rules applicable to charging and arraigning the *"defendant,"* and after rules governing the defendant's post-charge rights and the pre-trial preparation process. <u>See</u> Rule 3 (Complaint), Rule 4 (Arrest Warrant or Summons on a Complaint), Rule 5 and 5.1 (Initial Appearance and Preliminary Hearing), Rule 6 (Grand Jury, Indictment and Information), Rule 7 (Indictment and Information), Rule 8 (Joinder of Offenses or Defendants), Rule 9 (Arrest Warrant or Summons on the Indictment or Information), Rule 10 (Arraignment), Rule 11 (Plea), Rule 12 (Pleadings and Pretrial Motions), Rules 12.1, 12.2, 12.3 (Notice of Certain Trial Defenses), and Rule 14 (Relief from Prejudicial Joinder).

The structure of the rules could not make clearer that Rule 15 was intended by its drafters to be a post-charge option.

Additionally, the text of Rule 15 is not ambiguous. The rule refers in various places to the "defendant." There is <u>no</u> *"defendant"* until a charge is brought.

Additionally, the rule begins with the words: "A <u>party</u> may move that a prospective witness be deposed in order to preserve testimony for trial." (F. R. Crim. P. 15(a)(1) (emphasis added). The word "party" has a well-established meaning in the law. In fact, the word "party" is "encrusted with an obvious common law meaning and history . . ." It denotes "the person or entity who sues or is sued." <u>Taucher v. Rainer</u>, 150 F. Supp. 2d 24, 26 (D.D.C. 2001). Black's Law Dictionary 114 (7th Ed. 1999) defines a "party" as "[o]ne by or against whom a lawsuit is brought." A "lawsuit" is [any] proceeding <u>by a party</u> or parties <u>against another</u> in a court of law." <u>In re Chan</u>, 271 F. Supp. 2d 539, 542 (SDNY 2003). <u>See also</u> <u>American Boat Co., Inc. v.</u>

Unknown Sunken Barge, 567 F.3d 348, 353 n. 8 (8th Cir. 2009) (a "party" is "one by or against whom a lawsuit is brought").

In short, a "party" is a legal adversary of another in a commenced adversarial proceeding.

A grand jury investigation, however, is not an adversarial proceeding until it brings an indictment. Mr. Radhakrishnan is not a "defendant" in a criminal lawsuit. He is charged with nothing. Because he faces no charge, he is a citizen under no obligation to act to defend himself against the powers of the government. Until the government or grand jury ends the investigation phase of the process, and commences the "accusatory" phase with an arrest or charge based on probable cause, no person can be forced to defend himself, or risk forfeiting basic guaranteed rights intended to ensure the fairness and integrity of trial.

The accusatory phase begins with a formal charge, either by an indictment or information (if the defendant has waived his constitutional right to be charged only by grand jury indictment). The formal charge triggers - in short, predictable order - the right to an appearance before a magistrate, advice of rights, the appointment of counsel, and other protections and well-developed procedures.

In essence, because he has not been charged, he has not received the panoply of rights and procedures triggered by the filing of a charge -- yet he is being treated de facto like a "defendant," and being forced to "defend" himself against the power of the state although he has not been charged and the well-established rules for defense against the state have not been triggered.

It is instructive to look at Rule 7 (eight rules prior to Rule 15) which governs how the government must charge a person. Rule 7(c)(1) reads in pertinent part:

> The indictment or information must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . .

3

Certainly, the primary purpose of the requirement of Rule 7 is to provide clear and definite notice to the (new) defendant of what it is he must defend himself against. Only when the clear and definite notice of a precise charge is filed (based on probable cause) against the new defendant can it be said that the investigatory phase has ended and the accusatory phase has begun. And only at that point can it be said that an investigated person has now become an indicted "party" who is the "defendant" in the criminal lawsuit commenced by the government. See United States v. Ryans, 903 F.2d 731, 739-740 (10th Cir. 1990) (A "target" of a grand jury is not a "party" because "the adversarial process had not yet begun," and only begins when he is "charged, arrested or indicted").

The government's proffered expansion of Rule 15 is wrong not only because it violates basic canons of statutory construction, but because it would be inconsistent with the carefully -- calibrated systems of rules and laws created by Congress to support and protect the constitutional rights of individuals against the state. As noted, it would commence the accusatory phase of the process sometime before a formal charge is brought. In this instance, the government has stated that the grand jury has not yet heard any evidence, that it is quite uncertain whether any charges will ever be brought, and that it may be many months or even a year or more before that decision is made.[1] Nonetheless, the government is asking the Court to compel to Mr. Radhakrishnan to begin the expensive, intrusive burden of defending himself now, before any charge (let alone a clear and "definite" charge based on a finding of probable cause) is brought. He is being asked to either waive his prospective 6th Amendment rights, or to hire a lawyer who

---

[1] Grand jury investigations as well as government theories of liability are notoriously elastic and evolutionary. The current theory, or sets of theories, under consideration today may bear almost no relation to where the grand jury is a year from now, especially once it begins to receive actual evidence.

must cob together an incomplete, perhaps completely wrong-headed cross-examination in exercise of the client's <u>prospective</u> 6th Amendment rights (again, without any clear and definite statement of the charge and without the benefit of access to all the discoverable fruits of a mature and thorough investigation).

    This cannot be a "choice" the law is willing to countenance. First, it is axiomatic that any "waiver" of significant rights must be "knowing." How can the defendant "know" what he is waiving if he does not know what the "plain" and "definite" charge (<u>see</u> Rule 7) is that he must defend himself against or what the full discovery of a thorough investigation will tell him? And how can he exercise <u>prospective</u> 6th Amendment rights that he does <u>not</u> yet have and <u>may</u> never have? And which he should <u>never</u> – as a person with rights and no charge against him by the grand jury – be compelled to "exercise" in "defense" of a charge that has not been levied against him, and which may never be? <u>See</u>, <u>e.g.</u>, <u>Patterson v. Illinois</u>, 487 U.S. 285, 292 (1988) (a waiver of Fifth and Sixth Amendment rights "must be knowing, intelligent and voluntary. . . [T]he <u>accused</u> must know what he is doing so that his choice is made with his eyes open"). Here, Mr. Radhakrishnan is of necessity flying blind.

    Forcing a non-defendant to "defend" himself without a formal charge and without all the procedural and substantive procedures and protections laid out in the federal rules is a due process violation under the 5th Amendment. Forcing a non-defendant to either waive or haphazardly guess at how to exercise prospective <u>trial</u> rights before he has received a clear and definite statement of the charge against him also violates the 5th Amendment as well as the 6th Amendment. <u>See</u> <u>Michigan v. Jackson</u>, 475 U.S. 625, 633 (1986) (the court must "indulge every reasonable presumption against waiver" and "all doubts must be resolved in favor of protecting" the constitution right.

Being forced into being a de facto "defendant" before a charge converts the investigative

role of the grand jury into an accusatory one.  There is no authority in the law to permit the Court

to tamper with that basic structure of the grand jury and the criminal procedure system found in

the rules.  The relationship between the state and the citizen only becomes adversarial upon "the

initiation of adversarial judicial criminal proceedings - - whether by formal charge, preliminary

[probable cause] hearing, indictment, information or arraignment."  Rothgery v. Gillespie

County, 128 S. Ct. 2578, 2583 (2008).  The Court has emphasized that this

> rule is not "mere formalism," but a recognition of the point at which "the
> government has committed itself to prosecute," "the adverse positions of
> government and defendant have solidified," and the accused "finds
> himself faced with the prosecutorial forces of organized society, and
> immersed in the intricacies of substantive and procedural criminal law."

Id. (quoting Kirby v. Illinois, 406 U.S. 682, 689) (1972).

Some of the unintended consequences of the government's proposal highlight its

inconsistency with the current law.

For instance, the rule proposed by the government -- stretching Rule 15 to cover the pre-

accusatory, investigatory phase of the criminal system -- would mean that non-defendants are

penalized for retaining counsel, and that the unrepresented are in a better posture.

If a grand jury subject or target has the wit or wherewithal to retain counsel, his counsel

will be expected to participate in the pre-charge deposition.  But what about the subject or target

who for whatever reason does not have counsel?  He cannot be expected to participate in the

deposition himself.  Yet a person like Mr. Radhakrishnan is forced to carry a substantial extra

burden only because he has retained counsel, something he was under no obligation to do.

That is unfair and incongruous.  It cannot be the law.

\* \* \*

6

A final point relates to the government's allusion to the Crawford decision as creating the "necessity"[2] for expanding Rule 15 beyond limits ever previously recognized. See Crawford v. Washington, 541 U.S. 36 (2004). The government's argument has some surface appeal, but fails to pass muster under real scrutiny.

While Crawford represents a shoring-up of some of the erosion that had occurred with respect to the 6th Amendment, the pre-Crawford approach to hearsay was hardly the Wild Wild West. The government suggests that – prior to Crawford – it could have taken the ex parte grand jury testimony of the nine witnesses here, and expect to have it admitted at trial if the witnesses passed away in the intervening period.

This is a vast overstatement. The truth is that prior grand jury testimony of an unavailable trial witnesses was almost never admitted before Crawford either. It was not even until 1990 that the First Circuit acknowledged that prior grand jury testimony could "potentially" be admissible in certain limited circumstances under the residual hearsay exception (then – Fed. R. Evid. 804(b)). See United States v. Donlon, 909 F. 2d 650, 654 (1st Cir. 199). In order to qualify, however, then-Judge Breyer wrote that the particular grand jury testimony of the particular witness had to clear a very substantial hurdle – it had to possess "circumstantial guarantees of trustworthiness" that were "equivalent" to "former testimony" or several other highly-reliable exceptions. Thus, the grand jury testimony had to be, in the peculiar circumstances, equivalent in reliability to "former testimony." Id.

---

[2] Of course, it is dubious to suggest that the government's asserted "need" alone ever justifies an incursion upon a constitutional right or an expansion of a long-established rule. If warrantless searches were "necessary" for the government to get evidence, would that make it right?

This was a very exacting standard, and it was a rare event when prior grand jury testimony of an unavailable witness was admitted over 6th Amendment objections. Accordingly, Crawford has not changed the law significantly in this area. The government had the same 5th and 6th Amendment challenges in the 1970s, 80s, and 90s that it faces here; and no one in the 1970s, 80s or 90s was arguing (certainly not successfully) that Rule 15 applied to compel non-defendants in a grand jury investigation to either gropingly exercise prospective, potential rights that they might someday have, or risk losing them forever.

The Motion should be denied. If any part of the Motion is granted, the Court is requested to stay its effect for a reasonable time consistent with respect for this non-defendant's procedural and substantive statutory and constitutional rights to permit the filing of a Mandamus Petition with the Court of Appeals.

Respectfully submitted,
RAYMOUR RADHAKRISHNAN
By his attorneys,

Jeffrey S. Brenner (#4369)
NIXON PEABODY LLP
One Citizens Plaza
Providence, RI 02903
Tel: (401) 454-1000
Fax: (401) 454-1030
E-mail: jbrenner@nixonpeabody.com

David A. Vicinanzo, Esquire (Pro Hac Vice)
NIXON PEABODY LLP
100 Summer Street
Boston, MA 02110
Tel: (617) 345-1177
Fax: (617) 345-1300
E-mail: dvicinanzo@nixonpeabody.com

Dated: September 21, 2009

## CERTIFICATE OF SERVICE

I hereby certify that I caused a copy of the within Objection to be hand-delivered to the following counsel or record on September 21, 2009:

Lee Vilker, Esq.
U.S. Attorney's Office
50 Kennedy Plaza
8th Floor
Providence, RI 02903

John P. McAdams, Esq.
U.S. Attorney's Office
50 Kennedy Plaza
8th Floor
Providence, RI 02903

Anthony M. Traini, Esq.
55 Pine Street
Providence, RI 02903

Robert G. Flanders, Jr., Esq.
Hinckley Allen & Snyder LLP
50 Kennedy Plaza
15th Floor
Providence, RI 02903

9

| ⬤AO 435 (Rev. 12/03) | Administrative Office of the United States Courts TRANSCRIPT ORDER | | FOR COURT USE ONLY DUE DATE: |
|---|---|---|---|

*Please Read Instructions above*

| 1. NAME John P. McAdams, AUSA | | 2. PHONE NUMBER (401) 709-5000 | | 3. DATE 09/21/09 | |
|---|---|---|---|---|---|
| 4. MAILING ADDRESS US Attorney's Office, 50 Kennedy Plaza - 8th Fl | | 5. CITY Providence | | 6. STATE RI | 7. ZIP CODE 02903 |
| 8. CASE NUMBER Sealed Case | 9. JUDGE Hon. William E. Smith | DATES OF PROCEEDINGS | | | |
| | | 10. FROM 9/17/2009 | | 11. | |
| 12. CASE NAME GJ PROCEEDINGS - SEALED CASE (ct rptr Ann Clayton) | | LOCATION OF PROCEEDINGS | | | |
| | | 13. | | 14. | |

15. ORDER FOR
☐ APPEAL   ☒ CRIMINAL   ☐ CRIMINAL JUSTICE ACT   ☐ BANKRUPTCY
☐ NON-APPEAL   ☐ CIVIL   ☐ IN FORMA PAUPERIS   ☐ OTHER

16. TRANSCRIPT REQUESTED (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| ☐ VOIR DIRE | | ☐ TESTIMONY (Specify Witness) | |
| ☐ OPENING STATEMENT (Plaintiff) | | | |
| ☐ OPENING STATEMENT | | | |
| ☐ CLOSING ARGUMENT (Plaintiff) | | ☐ PRE-TRIAL PROCEEDING | |
| ☐ CLOSING ARGUMENT (Defendant) | | | |
| ☐ OPINION OF COURT | | | |
| ☐ JURY INSTRUCTIONS | | ☒ OTHER (Specify) | |
| ☐ SENTENCING | | HEARING | 9/17/2009 |
| ☐ BAIL HEARING | | | |

17. ORDER

| CATEGORY | ORIGINAL (Includes Free Copy for the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
|---|---|---|---|---|---|
| ORDINARY | ☐ | ☐ | NO. OF COPIES | | |
| EXPEDITED | ☒ | ☐ | NO. OF COPIES | | 329.80 |
| DAILY | ☐ | ☐ | NO. OF COPIES | | |
| HOURLY | ☐ | ☐ | NO. OF COPIES | | |

| CERTIFICATION (18. & 19.) By signing below, I certify that I will pay all charges (deposit plus additional). | | ESTIMATE TOTAL | 329.80 |
|---|---|---|---|
| 18. SIGNATURE /s/ JOHN P. McADAMS, AUSA | | PROCESSED BY | |
| 19. DATE 09/21/09   DCN: I70928220 | | PHONE NUMBER | |
| TRANSCRIPT TO BE PREPARED BY | | COURT ADDRESS | |

| | DATE | BY | | |
|---|---|---|---|---|
| ORDER RECEIVED | | | | |
| DEPOSIT PAID | | | DEPOSIT PAID | |
| TRANSCRIPT ORDERED | | | TOTAL CHARGES | 329.80 |
| TRANSCRIPT RECEIVED | | | LESS DEPOSIT | 329.80 |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | | | TOTAL REFUNDED | |
| PARTY RECEIVED TRANSCRIPT | | | TOTAL DUE | 329.80 |

(Previous editions of this form may still be used)
DISTRIBUTION:   COURT COPY   TRANSCRIPTION COPY   ORDER RECEIPT   ORDER COPY