IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


\* \* \* \* \* \* \* \* \* \* \* \*    **SEALED HEARING**
IN RE:                          \*
GRAND JURY PROCEEDINGS    \*    SEPTEMBER 17, 2009
                          \*    PROVIDENCE, RI
\* \* \* \* \* \* \* \* \* \* \* \* \*


HEARD BEFORE THE HONORABLE WILLIAM E. SMITH
DISTRICT JUDGE
(GOVERNMENT'S MOTION TO TAKE DEPOSITION TESTIMONY)

**APPEARANCES**:

FOR THE GOVERNMENT:        LEE VILKER, ESQ.
                           and JOHN McADAMS, ESQ.
                           U.S. Attorney's Office
                           50 Kennedy Plaza
                           Providence, RI  02903


FOR MR. CARAMADRE:         ROBERT G. FLANDERS, JR., ESQ.
                           Hinckley, Allen & Snyder, LLP
                           50 Kennedy Plaza
                           Suite 1500
                           Providence, RI   02903


FOR ███████████            ANTHONY M. TRAINI, ESQ.
                           56 Pine Street
                           Suite 200
                           Providence, RI  02903


FOR MR. RADHAKISTAN:       DAVID VICINANZO, ESQ.
                           Nixon Peabody, LLP
                           100 Summer Street
                           Boston, MA  02110


Court Reporter:            Anne M. Clayton, RPR
                           One Exchange Terrace
                           Providence, RI  02903




Proceeding reported and produced by computer-aided
stenography

## I N D E X

COURT EXHIBITS                                     PAGE

1            -                                      63

-----------------------------------------

1    THE COURT:  Good morning.  We're here in the

2    matter of Grand Jury Proceedings in a motion of the

3    Government, In Re:  Grand Jury Proceeding.

4        Let's begin by having counsel identify

5    themselves for the record beginning with the

6    Government, please.

7        MR. VILKER:  Good morning, your Honor.  Lee

8    Vilker, Assistant United States Attorney, and I'm

9    joined by John McAdams.

10        MR. FLANDERS:  Robert Flanders for the

11    Defendant, Joseph Caramadre.

12        MR. BRENNER:  Your Honor, Jeffrey Brenner

13    representing Defendant, Raymour Radhakistan.  I was

14    just asked this morning to appear.  I will enter my

15    appearance electronically when I return to my office.

16    I was in Newport County this morning before Judge

17    Nugent, and my office has filed a motion to admit pro

18    hac vice David Vicinanzo, who is one of my partners.

19    As set forth in the motion, he is admitted in New York,

20    New Hampshire and various federal courts, and I'm

21    asking for his admission pro hac vice.  Assuming that

22    that's granted, he will be conducting the proceedings

23    on behalf of our client here, and I'll sit in the seat

24    in the back.

25        THE COURT:  Is he here?

```
 1              MR. BRENNER:  He is here.

 2              MR. VICINANZO:  I am, your Honor.

 3              THE COURT:  Okay.  Why don't you pass the motion

 4     up.  Do you have the motion?

 5              MR. BRENNER:  I have a copy.  The motion was

 6     filed downstairs.

 7              THE COURT:  All right.  We'll grant that -- just

 8     pass the copy up.  Could I just take a quick look at

 9     it, please.

10              Where's Mr. Traini?

11              Go off the record a minute.

12              (Discussion off the record.)

13              THE COURT:  We'll get that pro hac motion

14     entered but you can go ahead and take part in the

15     hearing.  Is it Mr. Vicinanzo?

16              MR. VICINANZO:  Vicinanzo, your Honor.

17              THE COURT:  Vicinanzo?

18              MR. VICINANZO:  Yes.  And Mr. Traini.  Do you

19     want to enter your appearance?

20              MR. TRAINI:  I do, your Honor?  I thought I did

21     that already.  I'm sorry, Judge.

22              THE COURT:  Just on the record, I just wanted

23     you to enter your appearance.

24              MR. TRAINI:  I'm sorry.  I'm appearing for

25     ███████████████  your Honor.  I apologize.
```

```
 1              THE COURT:  Anyone else?
 2              Okay.  I just want the record to reflect that
 3     we've had a chambers conference in this matter.  The
 4     Government had filed a motion to take deposition
 5     testimony from various individuals, and I requested
 6     that the Government and the two attorneys for the
 7     identified targets at that time come into chambers.  We
 8     did have an informal discussion in chambers.
 9              Subsequently, I've received this morning
10     memoranda from the Government and from Mr. Flanders on
11     behalf of Mr. Caramadre and from Mr. Traini on behalf
12     of ███████████      the two targets.
13              So Mr. Vilker, the burden is on the Government
14     so I'll turn it over to you.
15              MR. VILKER:  Thank you, your Honor.  Your Honor,
16     a couple of the issues that you raised in the
17     conference I'd like to address first, that is the
18     Government making more of a showing of the physical
19     ailments of these nine individuals we want to depose,
20     and, also, information concerning their receptiveness
21     to being deposed as well as the order that I have now
22     sat down and gone through with the agent, giving our
23     best guess, and none of us are medical professionals,
24     but our best guess of the urgency with which each of
25     these needs to be deposed and by our proposed order
```

1    based on that criterion.

2         I'm prepared, your Honor, to either proffer

3    individual by individual what information we've

4    gathered.  In many cases, I have some documentation I'd

5    like to hand up to the Court and to counsel.  I'm also

6    prepared -- the FBI agent, Pamela McDaid, is here to do

7    it through her testimony.  Some of the information is

8    gathered by the representations that these individuals

9    made to her in one-on-one meetings, and I'm prepared to

10   do this either way.

11        THE COURT:  Well, since we met in chambers, I've

12   had the opportunity to read most, if not all of the

13   cases that you all have cited as well as peruse the

14   memoranda that have been filed, although those only got

15   to me this morning and I did have some other matters

16   this morning.  And I have some serious concerns about

17   this.  I'm wondering, since this has all happened so

18   fast, we're kind of making this up as we go, but I'm

19   wondering if it might not be more appropriate to

20   discuss and have you argue on the threshold issues on

21   the assumption that you could demonstrate the imminent

22   threat of death at some stage to all of these

23   individuals.

24        I'm not sure that the counsel for the targets

25   are really -- would really dispute that.  I'm sure

1    they're not ready to concede it, but I think their

2    issues go -- the primary issues are not directed to the

3    health of these individuals.

4         So that might be a more productive way to move

5    forward.  If you have any thoughts on that or, counsel,

6    if you have any thoughts on that.

7         MR. VILKER:  That's fine with the Government,

8    your Honor.

9         MR. FLANDERS:  Your Honor, one matter that's a

10   threshold, and I agree with what your Honor just said,

11   is I wanted to point out that although Mr. Radhakistan

12   has been able to secure counsel, Mr. Vicinanzo, who was

13   admitted this morning, that was just done this morning.

14   The other named target, ███████████ is in the process

15   of still trying to obtain counsel.

16        So, you know, one real concern here, and I'm --

17   this is properly more coming from them than from me is

18   their ability to respond to this motion on such short

19   notice and, effectively, present themselves.

20        As your Honor has seen, we, on behalf of

21   Mr. Caramadre, and Mr. Traini, we have been able to

22   file something and do some research and get it to the

23   Court, but I am concerned about the other targets here

24   not yet having the ability to effectively respond to

25   this.  I just wanted to bring that to the Court's

1   attention.

2          THE COURT:  I appreciate that concern.  I'm

3   concerned about it, too.  And I think that it goes to

4   one of the sort of threshold issues that I wanted to

5   address and have the Government particularly address.

6   So why don't we talk about these issues.

7          I may just go forward and ask you my questions.

8   I have a lot of them.

9          MR. VILKER:  If I can just interrupt for one

10   second, your Honor.

11          THE COURT:  Sure.

12          MR. VILKER:  Mr. McAdams took the lead in

13   drafting the brief to the Court and doing the research

14   under Rule 15.  So if the questions your Honor is

15   getting to are the availability of these type of

16   depositions in a pre-indictment context, I would defer

17   to my colleague here.

18          THE COURT:  All right.  Well, I suppose most of

19   them are so that would be fine.

20          MR. VICINANZO:  Your Honor, could I be heard

21   preliminarily just for a moment?

22          THE COURT:  Sure.

23          MR. VICINANZO:  Can I approach the lectern?

24          THE COURT:  Yes.

25          MR. VICINANZO:  I feel like I'm shouting from

1    the back.

2            THE COURT:   No.  You should talk from the

3    lectern.

4            THE COURT:   Thank you, your Honor.  David

5    Vicinanzo.  I'm with the law firm of Nixon Peabody in

6    Boston and in other places.

7            Judge, I was just retained and just met my

8    client this morning.  And it seems to me, the little I

9    know of the case, that his rights, his very serious

10   Sixth Amendment rights are potentially at stake here.

11           THE COURT:   That's what I'm going to try to get

12   to with the Government.

13           MR. VICINANZO:   I'm not even prepared -- I don't

14   know enough to be intelligent on this.  I've been doing

15   federal criminal law for almost a quarter century.

16   More than half of that as a prosecutor like them.  I've

17   never seen anything like this so --

18           THE COURT:   Neither has anyone else in the room.

19   So you're not alone.

20           MR. VICINANZO:   I guess my point would be that

21   I'm not prepared really to represent him at this

22   hearing in a substantive way.  And that would include

23   even responding to their arguments, even understanding

24   their argument well at this point.

25           So I really feel that I'm not in the best

1    position to protect my client's rights.  He was just

2    informed, I'm told, by hearsay a couple of days ago --

3    he wasn't informed, somebody else was informed that he

4    may be a target.  I've never heard that from the

5    Government.  I don't know.

6         So I really think it's kind of premature to go

7    forward with too much when I'm not in a position to

8    really effectively represent my client.

9         THE COURT:  Well, at this point, I may not ask

10   you or expect you to say anything, and you may just

11   want to listen.  I'm not going to put any burden on

12   you.  But let me get on with what I want to do here.

13        MR. VICINANZO:  Okay.  Thank you.  I'm just

14   preserving all of his rights.

15        THE COURT:  Thank you.

16        MR. McADAMS:  Good morning, your Honor.

17        THE COURT:  Good morning.  The first question I

18   have goes directly to the issues that Mr. Vicinanzo was

19   just trying to raise.  And as I read the cases and

20   thought about this overnight, it seems a very serious

21   issue that is out here is the position that this puts

22   these targets into.  To conduct a deposition before

23   there is an indictment places these targets in a

24   position where, it seems to me, they may be

25   jeopardizing their Fifth or Sixth Amendment rights.

1           Let me spell that out a little bit. Without an

2   indictment, the Defendants don't know yet what the

3   theory of the Government's case is, what the charge is.

4   And yet, if there's a deposition, counsel -- these

5   targets and their counsel are going to have to make

6   some decisions about, first of all, do they have their

7   counsel appear at that deposition, as a threshold

8   matter. Should counsel even appear. What if one of

9   these targets decides I don't even want my lawyer to go

10  because I'm not indicted, I don't know what the charge

11  is, I don't know what the Government's theory is, I

12  shouldn't be put in a position where my lawyer might

13  ask a question of the deponent that unknowingly could

14  be self-incriminating. If the target is having to

15  guess at what the theory is, he may not know what

16  questions to ask or not to ask.

17          Yet, if the attorney or if the target and his

18  attorney choose either not to go or to send an attorney

19  who then remains mute because they don't know the

20  theory, seems to me we're creating a potential Sixth

21  Amendment problem.

22          So I'm just -- I want you to talk about those

23  constitutional issues first and why this shouldn't wait

24  until there is an indictment.

25          MR. McADAMS: First of all, your Honor, I think

1   that the answer as to why it shouldn't wait until there

2   is an indictment is because of the inherently

3   exceptional nature of the circumstances that we're

4   dealing with here.  We are dealing with a, granted,

5   alleged scheme which targeted terminally ill

6   individuals and used their information, made material

7   representations to these people and then used that

8   information in furtherance of a fraud scheme.

9         Now, roughly, of the 112 or so folks that are

10  involved in this, all but 9 have deceased due to the

11  inherent nature of the scheme.  So the circumstances

12  themselves are so exceptional that were there no remedy

13  available to the Government to secure their testimony

14  for a future trial, this scheme would be unprosecutable

15  in all contexts.

16        That said, I think that the issues that you're

17  raising with respect to the Fifth and Sixth Amendment

18  rights of the Defendants are analogous to the same

19  situation that a target -- when I say Defendant, your

20  Honor, I do mean target.  I apologize if I use that

21  phrase.  My intent is targets.  It's analogous to the

22  same situation that a target would be in when the

23  Government in the context of a grand jury investigation

24  seeks a material witness warrant, arrests the material

25  witness, and then subsequently deposes the material

1    witness at that point in time pursuant to the Rules

2    that are the same Rules that the Government is looking

3    to follow here, Rule 15.

4         So in that context, the same circumstances are

5    out there and Congress clearly in 3144 has designed a

6    structure for that to occur.  And the Rules of Criminal

7    Procedure anticipate that.  First of all, Rule 1, which

8    governs and defines the scope of the Rules of Criminal

9    Procedure says all criminal proceedings in district

10   court, appellate courts and Supreme Court and case law

11   universally has found that grand jury proceedings fall

12   within that meaning.  I'm not aware of any case that

13   says that it's not.  And Rule 46 specifically addresses

14   the procedures that the Court should follow in, for

15   example, the instances where there is a material

16   witness being detained, they should, essentially, be

17   released unless they can get a deposition under Rule

18   15.

19        THE COURT:  But if a material witness doesn't

20   have -- does he, I mean that's 15(a).  So if 15(a)

21   clearly provides that a deposition is an alternative to

22   a detention of a material witness, does a material

23   witness have the same Sixth Amendment rights as a

24   target or a defendant?

25        MR. McADAMS:  A material witness does have Sixth

1    Amendment rights, and so yes.  What would normally

2    happen -- and, frankly, your Honor, the Government

3    could simply do this.  The Government could go to your

4    Honor or to a magistrate with affidavits which

5    establish probable cause that each of these nine

6    individuals are material witnesses, seek warrants and

7    then, essentially -- I mean, I'm not suggesting that we

8    would actually want to have them arrested and detained,

9    but we could seek to go out and secure their testimony

10   through depositions.  3144, the material witness

11   statute, specifically says those witnesses cannot be

12   detained if a deposition can be taken to secure their

13   testimony.  And so I think that that's the context that

14   we're in.  And given the speed of these proceedings,

15   perhaps it's best to look at these folks as material

16   witnesses.

17          THE COURT:  Can you point me to any case where

18   that's been done pre-indictment?

19          MR. McADAMS:  Yes, your Honor.

20          THE COURT:  Okay.  Which ones?

21          MR. McADAMS:  I cited a case in the memorandum

22   that I submitted this morning.  It is United States v.

23   Sharif, which was -- and the cite is 343 F.Supp 2nd

24   610.  It's a District Court decision out of the Eastern

25   District of Michigan.  And in that case, the

1  defendant -- excuse me, the Government obtained

2  material witness warrants on three individuals and

3  deposed them and then deported them, I believe, and

4  subsequently indicted the defendant.  And the Court

5  approved that.

6       The quote that I have that I cited in the

7  memorandum this morning is that, quote: (Reading:)  The

8  Government deposed three witnesses regarding

9  defendant's complicity and the criminal charge, end

10  quote, the day before that they were indicted.

11       And I think that Mr. Traini also noted in his

12  memorandum, your Honor, the context in which material

13  witnesses are more frequently deposed.  I believe it

14  was Footnote 3 of Mr. Traini's memorandum.  He cited

15  the Awadallah case, which I cited in my memorandum,

16  which I believe is another instance where material

17  witnesses were deposed pre-indictment.

18       Now, I don't entirely agree with all of the

19  arguments Mr. Traini made in his footnote.  He cites no

20  authority for the proposition that that can only be

21  done on the witness's request.  I think 3144's plain

22  language requires the Government to do a deposition

23  rather than detaining a material witness, if it's

24  possible.

25       THE COURT:  What page of your memorandum is that

1    quote?  I don't see it.

2            MR. McADAMS:  My quote or Mr. Traini's footnote?

3            THE COURT:  The quote from the <u>Sharif</u> case.

4            MR. McADAMS:  It's on page three.  It's the

5    first paragraph that begins:  Courts have approved

6    these pre-indictment depositions.  I cite <u>Hayes</u> and

7    after that I note in <u>Sharif</u>, the Government deposed

8    three witnesses regarding the defendants' complicity in

9    the criminal charge the day before they were indicted.

10   And I know I don't point out that that was material

11   witnesses in that specific quote, but it's my belief

12   that they are, that they were material witnesses in

13   that case.

14            And your Honor, what we're essentially proposing

15   here is to protect the Defendants' Sixth Amendment

16   rights.  One of the cases that both sides have been

17   sort of bandying about is this Ninth Circuit decision

18   <u>Hayes</u>, which the defense is relying on dicta in the

19   dissent.  The Government is noting that the majority

20   approved it without deciding whether it was appropriate

21   or not.  I think that emphasizes the point that we're

22   all aware of, which is there's not a lot of law on

23   15(a) depositions in virtually any context, but

24   particularly in a pre-indictment context.

25            But that case I think it's really important to

1    note was pre-<u>Crawford</u>.  What we are trying to do here

2    is balance the Defendants' rights under <u>Crawford</u>.  As I

3    said, we could have simply gone in an ex-parte

4    proceeding to the magistrate, sought material witness

5    warrants, taken these deposition, provided notice to

6    the Defendants that we were going to do them without

7    accommodating their schedule in any fashion, simply

8    taken them.  And that would have allowed us to proceed.

9    But we in a good faith effort --

10         THE COURT:  That would have allowed you to get

11   the testimony before the grand jury.  It wouldn't have

12   allowed you to avoid <u>Crawford</u>.

13         MR. McADAMS:  It would not have allowed us to

14   avoid <u>Crawford</u>, exactly.  And, therefore, we would have

15   been faced with a dilemma of, okay, we can go out there

16   and get this testimony without the Defendants being

17   present -- well, if they appeared, then we would have

18   or we would have had the argument, or we would have

19   made the argument that they may have waived their right

20   to cross-examine down the road at some future motion to

21   suppress.  But the issue of whether or not we can go

22   out and take the depositions, we're discussing it as if

23   it's the threshold issue.  There's no question that we

24   can go out and get depositions.  The question is can we

25   just come to the Court and seek your approval without

1  going and getting material witness warrants from the

2  Defendant for the witnesses.  So I think that there's

3  no way that the Government can be prevented from

4  deposing these folks.  We can provide notice.  They can

5  appear and cross-examine.

6      THE COURT:  No, but that's not the point.  I

7  understand the problem and the Ninth Circuit decision

8  was pre-Crawford.  Now, the Government is in a

9  post-Crawford bind here, and you have a time problem

10 because of the health issues with these individuals.

11 I'm just not -- I understand the concern raised by

12 Crawford, but I just don't know that because of

13 Crawford do you now get to sort of convert material

14 witness depositions into, essentially, trial testimony.

15 And that's what's -- that would seem to be sort of an

16 odd result of what Crawford was all about.

17     MR. McADAMS:  Well, your Honor, I think that the

18 issue would be whether or not they're admissible would

19 be based on the Rules of Evidence.  And under Rule 804,

20 if the witnesses are truly unavailable at that point in

21 time and they're reliable, you know, significant

22 reasons to believe that it's reliable testimony, then

23 the Court would address that issue in terms of

24 admissibility at that point in time.

25     And I think that, frankly, with a lot of the

1   issues that counsel have raised with respect to taking

2   these depositions or not taking these depositions are

3   actually properly vetted in terms of whether or not any

4   such depositions should later be admissible in some

5   future proceeding if a trial actually results.

6        I mean, again, I emphasize that Rule 15 says

7   that the Court has the authority in the interest of

8   justice.  And in this circumstance where exceptional

9   circumstances and the interest of justice we are

10  attempting to preserve this testimony for future trial

11  recognizing that there's a possibility that that

12  testimony might ultimately be suppressed, we're going

13  to do everything we can to make sure that it is

14  admissible, but I point, again, to the Mann case, which

15  both myself and Mr. Traini cited as a First Circuit

16  case from 1978.  If the Court is concerned it's a close

17  question, the Court should allow the deposition and

18  then at a future point when it has a more complete

19  record deal with its admissibility in part because I

20  think Mann explicitly states that the harm comes to the

21  defendant when the testimony is admitted at trial.

22  There's no harm now to these targets.

23       THE COURT:  To the extent you can discuss this

24  given the provisions of Rule 6, why not indict these

25  individuals if you think you are there?  You're talking

20

1   as if the testimony needs to be preserved for a trial.

2   You talk as if you clearly understand the trial

3   testimony that you need from these people. And if it

4   is all that clear, then why isn't it reasonable to

5   believe that you've developed a theory of a case which

6   could get an indictment from a grand jury?

7       MR. McADAMS: Your Honor, first of all, while

8   this is in the context of grand jury proceedings, there

9   has been no evidence before the grand jury. So the

10  extent I divulged to the Court or any of the parties

11  any information that we've learned, it's not 6(e)

12  material. It's from agent interviews. And we have

13  received evidence based in the context of agent

14  interviews which lead us to the belief that at this

15  stage, this very early stage of the investigation that

16  there is a viable theory of prosecution, and that is,

17  if I may summarize it, that the targets or some of the

18  targets made false material representations to these

19  terminally ill individuals in order to induce them to

20  provide information and to sign documents including

21  identity information, which was then used to perpetrate

22  a fraud on these financial service companies. And so

23  in essence, that's the nature of the fraud scheme.

24      And could we seek an indictment based on the

25  interviews that we have at this point plus some other

1    documents?  Quite possibly, your Honor.  As the Court

2    knows, the standard for getting an indictment is

3    probable cause.  That is not generally, although we

4    have permissible, that's not generally how we operate.

5    We don't like to bring charges against defendants

6    unless we believe that we're going to be able to prove

7    them at trial.

8         So what we are seeking to do here is not --

9    excuse me, what we're seeking to do here is truly to

10   preserve their testimony because let's say we go and

11   seek an indictment from these folks, then based on the

12   information that we have now, the defendant has now

13   been publicly indicted and has been publicly charged

14   with these crimes based on a good faith probable cause

15   standard, and yet we may not have that testimony

16   available at trial to prove.  And the defendant -- in

17   one case, your Honor, the Government submitted -- the

18   Government knew that a witness, material witness,

19   material not in the material witness warrant sense, but

20   a key witness in the case was terminally ill, and the

21   Government chose not to do a Rule 15 deposition.  The

22   case is McHan.  The defense cites it.  The Government

23   instead uses at trial that witness's grand jury

24   testimony and the Court admitted it as reliable

25   testimony.  And the defense in that case complained

1      that, look, our Sixth Amendment rights are violated.

2      And the Court of Appeals upheld it.  Now, that was,

3      again, a pre-Crawford case.

4          So we would be in that situation where there's

5      case law out there that says we can do it but in order

6      to protect the defendant's Crawford rights, we think

7      the appropriate way to do it is -- and also to not make

8      an indictment of these targets that we're not going to

9      be able to prove at trial regardless of the fact that

10     we may have a good faith reason to bring it at the

11     grand jury stage, we are attempting to do, to secure

12     their testimony for trial so that it's available at

13     that point.  And not only secure it at trial, but so

14     the defendants have an opportunity to cross-examine

15     those witnesses.

16         THE COURT:  It seems to me you might be cutting

17     off your nose to spite your face, in a way.  Maybe

18     that's not the right term, but by rushing this

19     pre-indictment, you may inadvertently be giving the

20     targets a better argument to exclude the evidence when

21     it comes time for trial because you did all this

22     pre-indictment, if I were to allow it.

23         MR. McADAMS:  I understand that, your Honor.  If

24     we don't do this, these people will die.  They will not

25     be available.  And so -- I mean, 112 people, 9 are

1    alive at this point.  And that's only since -- we've

2    been looking at this case for a couple of months, your

3    Honor.  So they are going to die.  Every single person

4    that has been involved in this scheme was a person who

5    was identified by the targets, again, allegedly, on the

6    basis of the fact that they were terminally ill.  They

7    were going to die soon.  So we may be providing

8    arguments for the defense down the road.

9         On the other hand, if we go and simply obtain

10   the indictment and then are unable to prove the case at

11   trial because we didn't have this testimony, I think --

12   I don't think it's beyond the scope of logic that the

13   defendants will cry bad faith, that the Government

14   didn't seek to preserve their testimony for trial, went

15   out and made unsustainable allegations against their

16   clients.  The counsel for the defense has already

17   implied that the Government is improperly conducting an

18   investigation and threatened to refer us to the Office

19   of Professional Responsibility in an investigation

20   that's mere weeks old.

21        THE COURT:  Well, no one could say that you're

22   not trying.  If I were to deny this motion, you would

23   have certainly tried to do it pre-indictment, and none

24   of the targets could claim that you didn't expend every

25   effort to try to get this information prior to bringing

 1    an indictment.  And actually, it would be by virtue of

 2    their efforts that they stopped you from doing so.

 3         So it would be kind of hard, I think, for them

 4    to complain that you failed to secure the testimony

 5    pre-indictment if they're the ones that stopped you

 6    from doing so.

 7         If you then move forward, got the indictment,

 8    and then sought to preserve the testimony for trial,

 9    seems to me the Government is in a much safer position

10    in terms of the admissibility of that testimony at

11    trial.

12         MR. McADAMS:  That may be, your Honor.  Another

13    option that would be available to the Government, as

14    we've discussed briefly, is seeking material witness

15    warrants in order to secure their testimony.  So I

16    don't really have a response to the point your Honor is

17    making.  I think that's something the Government would

18    have to consider, and we don't make indictment

19    decisions, you know, on the fly, respectfully, your

20    Honor, so that's not something I'd be prepared to,

21    frankly, elaborate more on than I just have.

22         THE COURT:  Right.  Now, what do you say to this

23    argument that Rule 15 just historically does not

24    contemplate the use of this tool by the Government?  I

25    think it was pointed out by counsel that Rule 15

1    originally was really only for defendants to secure

2    this testimony.

3         MR. McADAMS:  I don't deny that that's the

4    history, your Honor.  I looked at the history of the

5    Rule, and there is a long history of efforts by

6    Congress and the Rules Committee to provide this avenue

7    to the Government through a period of many, many years,

8    in which several times the Rule got to the Supreme

9    Court and the Supreme Court, without comment, I believe

10   without comment on any instance, did not approve the

11   use of the Government having the Rule 15 option

12   available.  That changed some nearly 40 years ago in

13   1970 I think was the first time that the Government was

14   able to have the rule.  And then subsequently, it's

15   been broadened.

16        So I guess one point to make is I'm not going to

17   deny that historically that was an issue.  On the other

18   hand, the law is now the Government does have this

19   available.  I think that the language of the Rule

20   anticipated that it would be primarily used in the

21   post-indictment context.  That said, I think, clearly,

22   Rule 46 clearly anticipates in a pre-indictment context

23   that Rule 15 depositions are going to be taken because

24   it says pending indictment right in Rule 46 that a Rule

25   15 deposition may be taken of a material witness.

 1       So I think that the focus that the Court should

 2    be looking at on Rule 15 is the language that says:   In

 3    exceptional circumstances and in the interest of

 4    justice.   And that is what the Government is telling

 5    the Court we are in right now, very exceptional

 6    circumstances where witnesses are literally dying; and

 7    in the interest of justice, in order to prevent what

 8    may very well be -- what would be a miscarriage of

 9    justice and, frankly, the alternative of rushing to

10    indict the Defendants is not necessarily a better

11    outcome in the interest of justice, whereas in this

12    context these proceedings would be -- are not public.

13    There's no public charge against the Defendants.   The

14    Government and the Defendants can continue through the

15    process subsequent to the depositions to have

16    discussions about their materiality in terms of the

17    crime that would be alleged and so forth.

18       So I think that, frankly, this is the safest

19    route for the Defendants and that's why we have come to

20    the Court seeking approval rather than taking the more

21    aggressive route that we are entitled to.

22       THE COURT:   So if the shoe was on the other

23    foot, let's say that the Defendants felt that these

24    individuals would be helpful to their case, even though

25    they haven't been indicted, are you saying that the

1   Government would agree that a Defendant could -- I

2   mean, a target could secure trial testimony pending

3   prior to indictment under Rule 15?

4        MR. McADAMS:   I think it's a very tricky

5   situation.   I know that there are a lot of cases out

6   there in which defendants have sought to do that and

7   courts have said no.   I know in another case before

8   your Honor we addressed a similar issue in terms of

9   defendants seeking to depose Government witnesses.   I

10  think that it may very well be that the Government

11  would oppose it.   I think that in every one of these

12  cases, and I think the case law says that, the Court

13  should make a close, fact-based case-by-case scenario

14  decision.

15       THE COURT:   Well, just take exactly the same

16  facts.

17       MR. McADAMS:   I don't see what harm there would

18  be to the Government in preserving the testimony of a

19  witness at this point.   In fact, frankly, when counsel

20  for Mr. Caramadre and the Defendant and the Government

21  were discussing these depositions up until the day,

22  frankly, of the chambers conference the other day,

23  counsel for Mr. Caramadre had indicated there may be

24  some additional witnesses that he wanted to do Rule 15

25  depositions on, and we had indicated that we would be

1    willing to do that.

2           THE COURT:  Slow down a little bit.

3           MR. McADAMS:  I apologize, your Honor.

4    So we certainly had taken the position with

5    counsel for Mr. Caramadre that that would be

6    permissible, we were not going to oppose that.

7    So if they have folks that they want to go and

8    depose, in this specific case, given the extreme nature

9    of this, of these circumstances, the Government would

10   have been amenable to that.  I'm not going to take the

11   position that in every other case we would do that.  I

12   can't answer that.

13          THE COURT:  Now, are you in a position to speak

14   to the physical condition of these individuals?

15          MR. McADAMS:  I think Mr. Vilker is in a better

16   position than I am to do that, your Honor.

17          THE COURT:  All right.  Mr. Vilker, just before

18   we give the targets a chance to talk about all this,

19   could you just address that?

20          MR. VILKER:  Thank you, your Honor.  We put the

21   witnesses, the proposed deponents in order, based on

22   how severe we believe their situation is now.

23          The first person we'd like to depose is ███████

24   ███████████████████Westerly.  We have before the

25   Court, and I'm happy to hand up to the Court a letter

1    from the VA where he is receiving treatment, which says

2    that he has been diagnosed with non-small cell lung

3    cancer metastatic to the adrenal.  He has very limited

4    survival.  His expected survival is in the months.  And

5    when his symptoms get worse, he will be a candidate for

6    hospice care.  He's met several times with the FBI

7    agent who is reporting that his health is

8    deteriorating.  And according to her view, if we don't

9    take his deposition in the next week or two, that will

10   be the end of ███████████  unfortunately.

11       The next individual is ████████████      He

12   has -- by the way, ████████  we've talked to him

13   about the deposition.  We are very sensitive to the

14   potential stresses it will add to their lives and that

15   is definitely one factor we are considering.  If we get

16   to the point where this is approved and we're closing

17   in and if their health situation deteriorates and we

18   believe that this would cause too much stress for them

19   and their families, then we will in all likelihood

20   refrain from taking those particular depositions.  But

21   up to now, ████████ has indicated that he has no

22   objection to his deposition being taken.

23       The next individual is ██████████ He has

24   terminal -- he's 33 years old.  He has terminal

25   osteomyelitis.  This is a disease infecting the bone

1   that resulted from him being shot several years ago.

2   We have -- he informed the agent that doctors told him

3   in November 2007 that the disease had progressed to his

4   pelvis and that he had six months to three years to

5   live.  He's paralyzed and confined to a hospital bed.

6   He also indicated that he has no objection to his

7   deposition being taken now.

8            The third individual on our list is ████████

9   ██████████  He has lung cancer.  He has now gone back

10  into Miriam Hospital with pneumonia in his lungs.  He

11  and his wife both told the agent that he's terminally

12  ill and they're not sure how much longer he has to

13  live.  When he was told about the possible depositions,

14  he indicated he would be amenable to it but he would

15  not be able to go to court, were his words.

16           The fourth individual is ████████████████

17  of North Providence.  He has emphysema and lung cancer.

18  We have a fax from the VA indicating that he has

19  metastatic lung cancer and pulmonary disease.  He was

20  diagnosed with lung cancer ten years ago.  Three and a

21  half years ago, doctors gave him seven months to live

22  and no one can figure out how he's still alive.

23           The fifth individual is ██████████████████of

24  Coventry.  His wife told the agent that three years ago

25  ██████████████ was diagnosed with emphysema and chronic

1    pulmonary disease.  Three years ago he was put on

2    hospice care and was given six months to live.  We have

3    a note from his doctor, and I'm happy to hand up all

4    this evidence, that he suffers from chronic emphysema.

5    We're trying to get additional documentation.  He's

6    going through an additional personal crisis now.  His

7    daughter, who is 55 years old, had a -- just had a

8    stroke and she's in the hospital.  And given this

9    situation, the family has expressed some hesitancy

10   about taking these depositions now.  It's something

11   we're sensitive to, and we're hoping that as time goes

12   on that that particular situation resolves itself.  And

13   if it doesn't, the Government will honor their wishes

14   and skip the deposition if the Court authorizes them.

15            The sixth individual is ███████████  He's 86

16   years old.  We have a letter from his doctors listing a

17   whole long list of cardiological problems that he has.

18   He's indicated that he has no problem having his

19   deposition taken.

20            The seventh individual is a man in Las Vegas,

21   who just moved to Las Vegas a couple of years ago.  He

22   got involved in this while he was still in Rhode

23   Island.  He's ███████████  He is 62 years old.  He

24   is terminally ill with heart failure.  We have a report

25   of an interview that an investigator for an insurance

1   company did with him in which he reported that he was

2   told several months ago that he only had three months

3   to live, that he's diagnosed with heart failure and the

4   left side of his heart is entirely dead.  He needs a

5   heart transplant to survive but he cannot get one.

6        The eighth individual is ███████████ of

7   Cumberland, Rhode Island.  He has Stage IV stomach

8   cancer.  He told the agent that he is dying.  Just

9   yesterday the agent spoke with him.  He went back to

10   the hospital and the cancer has returned and what they

11   had thought was a temporary remission has now ended.

12   He also indicated that he has no problem with having

13   his deposition taken.

14        The ninth individual is a man named ██████

15   ███████ who is 67 years old from Woonsocket.  He's

16   terminally ill with emphysema, and we've been unable to

17   get any further information from him since the past

18   chambers conference.

19        There's really, respectfully, not going to be a

20   viable argument that this is not an exceptional case

21   with exceptional circumstances.  These are nine very

22   important witnesses who will all be dead in the next

23   few months.

24        And your Honor, if I might address, I understand

25   the concern you raised about how will the Defendants

1    know exactly what the charges and what our theory is,

2    that would be spelled out in an indictment.  And that

3    argument is very well taken; however, this is not

4    factually not a very complex case as far as these

5    individuals go.  They were all approached by one of the

6    targets.  They were told certain things about why they

7    were getting money and they signed some forms, usually

8    in one or two meetings.  It's going to be very easy for

9    the targets to understand that the crux of their

10   testimony is what they were told about the documents

11   they were signing, whether they were told that it was

12   just charity or whether they were told that any

13   annuities or bonds would be purchased.  It's really not

14   rocket science.  And making an argument that it's

15   completely impossible to predict what this case will be

16   and exactly how we're going to charge it, in my view,

17   is really misleading.  These people have one or two

18   interactions with some of the targets in this case, and

19   they can very easily be asked the same exact questions

20   they would be asked if they were at trial, which is

21   what was told to you, what was the reason why you

22   accepted this money, did you have any idea that your

23   name was going to be used.  It's not that complicated.

24         And I would submit, your Honor, that the real

25   motivation is to not allow us to have these

1    depositions, which they would be there, they would be

2    able to cross-examine these defendants and their

3    Crawford rights would be protected.  So as time goes by

4    these witnesses will disappear, and it will make the

5    Government's job of bringing this case much more

6    difficult.

7          THE COURT:  But every one of these witnesses has

8    met with an investigator at this point, right?

9          MR. VILKER:  Everyone has met with the FBI agent

10   except for Mr. Garvey in Las Vegas, we're still trying

11   to arrange a meeting, or an investigator from one of

12   these insurance companies.

13         THE COURT:  So if a grand jury were convened,

14   you would be able to put the FBI agent on the stand to

15   testify as to what each of these individuals has told

16   the agent as to what happened with these individuals,

17   right?

18         MR. VILKER:  Absolutely.

19         THE COURT:  So all of that could be put before a

20   grand jury tomorrow.

21         MR. VILKER:  Absolutely.

22         THE COURT:  The grand jury is convened.

23         MR. VILKER:  That's true, your Honor.  I guess,

24   in listening to your questions to Mr. McAdams, a case

25   like this to put together is enormously complex.

1   There's lots of witnesses that need to be interviewed.

2   They dealt with a lot of different social workers who

3   were involved.  They got a legal opinion at one point.

4   There's the fine tracing of where all the money went

5   to.  The Government is not in a position at this

6   moment, and I told counsel for Mr. Caramadre that this

7   will likely be in all likelihood six months to another

8   year until we're at a point where we can even make the

9   decision do we have enough evidence to prove this case

10   beyond a reasonable doubt, which is the standard we

11   use.  We are nowhere near that point now.  By the time

12   we do a full investigation, which we owe to these

13   targets to make sure there's enough probable cause,

14   will be many months from now.  By that point, all of

15   these people will die.

16       The alternative of rushing to the grand jury,

17   getting an indictment and have a public accusation

18   against these individuals where we don't feel

19   comfortable there's enough evidence to convict these

20   people beyond a reasonable doubt would be a disservice

21   to them.  The end result of this investigation may very

22   well be a determination that we don't have enough

23   evidence, and that may be the end of it.

24       To require us to rush to the grand jury to get

25   an indictment when we have not completed our

1   investigation, I think that would be much more of a

2   travesty of justice than having depositions where they

3   can appear, they can cross-examine these witnesses and

4   later down the road we can examine the issue of whether

5   Crawford has been satisfied, whether the constitutional

6   rights have been protected, whether this is a viable

7   exception to the hearsay rule.  Right now, we're just

8   trying to preserve some testimony so when it comes to

9   trial, these people have a voice.  And to deny it, and

10  this to me in the interest of justice, this is a case

11  where that phrase cries out for a judicial remedy.

12  This is the interest of justice.  Without intervening

13  and taking the depositions now, these witnesses will be

14  gone, and, by and large, this will be an extremely

15  difficult case to prove.  And basically, it's a case

16  that's directed at terminally ill individuals.  And by

17  preventing us from at least recording their testimony

18  with them there, with them having a chance to

19  cross-examine it, it's basically saying you can have a

20  scheme directed at terminally ill individuals and,

21  guess what, you can never be charged for it.

22      We're just requesting assistance from the Court

23  in what we believe to be a truly extraordinary

24  circumstance.  It's going to be a very, very rare case,

25  if ever again, that the Government will come in and

37

1    seek to take Rule 15 depositions pre-indictment.

2         We know this is unusual.  We know there's not a

3    lot of law.  We know there's not a lot of precedent.

4    We just believe this is such an extraordinary fact

5    pattern where all these witnesses are on their deathbed

6    that without judicial intervention and your authority

7    now, a grave, grave injustice will take place.

8         THE COURT:  Thank you.

9         All right.  Rather than start this now, I think

10   what I'd like to do -- I've got to go to a meeting.  It

11   won't take too long.  So why don't we reconvene at one

12   o'clock.  I know Mr. Flanders has an argument at 2:30,

13   but I think we should have plenty of time if we get

14   back here at 1:00 or shortly thereafter and then I'll

15   hear from all of you folks.  And that will also give

16   you a chance to maybe think about what you've heard

17   here and decide how you want to approach this without

18   having to do it off the cuff.  Okay.  So let's take an

19   hour, and we'll reconvene at one o'clock.

20        (Recess taken at 12 o'clock)

21        THE COURT:  All right.  How would counsel like

22   to proceed?

23        MR. TRAINI:  I'll go ahead, if it please the

24   Court, your Honor.

25        At the risk of snatching defeat from the jaws of

1    victory, your Honor, you can stop me any time you're

2    going to deny the Government's motion, and I won't be

3    offended.

4         THE COURT:  All right.

5         MR. TRAINI:  I think there are a couple of

6    points that need to be responded to in addition to what

7    I raised in the memo that I filed, Judge.  I think that

8    we, once again, need to go back to the Rule.  I think

9    the problem that we have right now is that the

10   Government has the burden to demonstrate to the Court

11   that it has the authority to do this.

12        THE COURT:  Before you get too far into the

13   Rule, what is your feeling about -- just assume that I

14   think that the Rule allows this.  Just assume it for

15   purposes of this question.  Do you have any dispute

16   about the quantum of proof that the Government has put

17   on with respect to the situation that these nine

18   individuals are in, the imminence of their demise?

19        MR. TRAINI:  It's difficult to answer for a

20   couple of reasons, your Honor.  One is that, for

21   example, I heard Mr. Vilker say that the FBI agent

22   recently interviewed one of the people and she

23   determined that he was about to die.  I don't know what

24   her medical qualifications are.

25        Another one was, I think, ███████████████ who

1   nobody can figure out why he's still alive after three

2   years when they told him he was going to be dead in six

3   months.  He could live for another three years.

4        So I'm not sure that I'm satisfied with the

5   quantum of evidence that they've offered the Court

6   relative to this imminence of death, if you will.  I

7   think we need some more of that.  And I also have some

8   reservations about how we go about doing that because

9   this is all protected medical information.  This is all

10  HIPAA information, Judge.

11       THE COURT:  Those aren't your rights to assert.

12       MR. TRAINI:  I understand that, but I don't know

13  that anybody's here asserting those rights and somebody

14  might want to do that.  One of the things that is so

15  troublesome about this whole process is that lots of

16  people have lots of different rights and I'm not sure

17  that they're all being accounted for in the equation.

18  But having said that, it's difficult for me to just

19  concede that they've met that burden in addition to the

20  other ones that they haven't met.

21       THE COURT:  Okay.

22       MR. TRAINI:  I don't know if that answers your

23  question --

24       THE COURT:  Yes, it does.

25       MR. TRAINI:  -- but that's the best I can do.

```
 1          Going back to the Rule, Judge, the Government
 2   needs to demonstrate that they have the authority to do
 3   this.  The only place that authority can come from is
 4   the Rule.  There is no case law that supports the
 5   Government's position.  They haven't cited anything.
 6   They haven't argued anything.  They haven't brought you
 7   anything.  The only cases that are out there that we
 8   know of that deal with this issue all say that Rule 15
 9   depositions are not done in a pre-indictment context
10   for a variety of reasons.  The Mann case, which both of
11   us cite in our respective memos, was a post-indictment
12   deposition case, not a pre-indictment case.
13          THE COURT:  Realistically speaking, how could
14   you expect there to be any case law on this situation
15   given that it's Crawford that's really driving it?
16   Crawford is only a few years old.
17          MR. TRAINI:  But even before Crawford --
18   Crawford isn't the only thing that's driving the bus
19   here, your Honor.  You have to look at the Rule, which
20   you pointed out yourself earlier this morning, that
21   historically, this Rule was a defendant's rule.  The
22   Government fought tooth and nail for decades to get the
23   right to do this, and every time they did, the Rules
24   Committee or the Supreme Court said no.  The only time
25   they relented, when they didn't really, was the
```

1   Government was able to convince Senator McClellan in

2   the 1970's when they passed the Omnibus Crime Control

3   Act to give them a statute because they couldn't get a

4   rule so they got 3504, which said specifically after an

5   indictment has been returned.  And it was only in

6   organized crime cases, and you had to certify that you

7   had a witness who was probably going to be killed

8   because he was an organized crime witness.

9        When that statute was repealed, it was repealed

10  as part of the amendments to the Rules, and done, as I

11  pointed out in the memo, the Supreme Court said that

12  the Rule and the statute was substantially the same.

13       Nobody ever contemplated pre-indictment

14  depositions for all the reasons that Mr. McAdams was

15  unable to articulate to you this morning.  I was

16  listening to that argument, and I couldn't make any

17  sense except for the fact that he was going all over

18  the place trying to find someplace to hang his hat.

19  And it isn't there.  We have to stick to the burden.

20  They have it.  They haven't met it.  They can't meet,

21  and there's no case law that allows them to do it and

22  that really should be the end of the matter.

23       And one of the reasons why that's the case, your

24  Honor, is because, as you again pointed out, because

25  you've obviously given this some thought, as we argued

1  to you, this is -- we're all at the very top of the

2  slippery slope here.  The application of Rule 15

3  doesn't depend on whether it's rare or not rare or

4  complex or simple.  The Rule is the Rule.  And if it

5  doesn't allow for something, it doesn't allow for

6  something, whether, by the way, it's the defendant that

7  wants it, or the target that wants, or the Government

8  that wants it.  And I can assure you that despite what

9  Mr. McAdams said about his conversations with

10  Mr. Flanders, which, by the way, I had nothing to do

11  with, that if I was in here by myself not having had

12  any previous contact with him and I wanted to take

13  depositions of potential grand jury witnesses, you'd

14  already be off the bench having denied my motion.

15  There is no way in the world you're going to let a

16  potential defendant in a grand jury investigation muck

17  around with the grand jury and start taking depositions

18  of potential grand jury witnesses.  It isn't going to

19  happen.  That's why Rule 15 doesn't allow this.

20          The 3144 scenario is an entirely different

21  thing.  And to answer Mr. McAdams' question, what I was

22  referring to in my memo, which I think I cited in

23  Footnote 3 was Rule 15(a)(2) itself contains the

24  language that says that it is the witness that has to

25  request the deposition.  That is the witness's

1       get-out-of-jail card.  Those statutes and the Rule in

2       connection with 3144 is designed for a specific

3       purpose.  It's deposition in lieu of detention.  That

4       is so a witness, usually a foreign national, can get

5       out of jail.  That's what that is all about.  It's got

6       nothing to do with this.

7            THE COURT:  But if, as a matter of logic, if the

8       Government has the power to detain someone and deprive

9       them of their freedom in order to preserve their

10      testimony, then logically, why wouldn't they have the

11      ability to obtain it by virtue of a deposition, which

12      is much less intrusive.

13           MR. TRAINI:  On the witness maybe, but detaining

14      a witness doesn't impact the rights of the target.  It

15      impacts the rights of the witness.  The deposition

16      impacts everybody's rights.  And one of the problems we

17      have is, and you raised it yourself on the Sixth

18      Amendment issue, the whole point of the en banc opinion

19      in Hayes was in the ruling that Hayes had no Sixth

20      Amendment right, the target had no Sixth Amendment

21      right to counsel until he was charged.

22           He tried to make the argument that the

23      depositions triggered his Sixth Amendment right.  And

24      the Court said no.  And the problem that we have is the

25      Government can argue, if the depositions go forward,

1  that whatever the deficiencies were in the depositions,

2  that the targets had no Sixth Amendment rights anyway

3  so there's no prejudice to them.  So if we're forced to

4  do this, we can get blown out of the box later on the

5  grounds that they can stand up and say you didn't have

6  a Sixth Amendment right anyway because you weren't

7  charged at the time.

8  THE COURT:  I'm not sure they could get away

9  with saying that, having already said that the reason

10  that they're making this motion in the first place is

11  because of Crawford.

12  MR. TRAINI:  But, Judge, with all due respect,

13  they don't get to confer constitutional rights on

14  people.  They don't get to decide whether we have them

15  or not.  And I can guarantee that they'll stand up in

16  the Court of Appeals and say they didn't have any Sixth

17  Amendment right because that would support the argument

18  that they will have to make at the time.  We're over

19  here today.  We're not in the First Circuit later on.

20  I can protect my client's Sixth Amendment rights.  I

21  don't need any help from them.  They don't get to

22  decide what we do about confrontation rights.  But I

23  don't think that you can put us in a position where we

24  have to choose between exercising or not exercising

25  rights that we may or may not have.  That's the

1   irreparable harm to the Defendants.  Mr. McAdams was

2   wrong when he said that the only irreparable harm that

3   can come is to the Government.  That's not true at all.

4   And the fact that there is no authority for this --

5        THE COURT:  Well, the harm -- it may be that

6   both the Government and the targets have rights and

7   issues here that are simply presented by this situation

8   and are unavoidable.  It seems to me that the rights

9   that you're talking about, I'm not denying that they're

10  real, but they seem more speculative or hypothetical

11  than the interests or the rights that the Government is

12  asserting, which is, Look, if we don't have this

13  testimony, then there is no case, it all goes away.

14  Which means that as long as you pick on people who are

15  ready to die, you get away with the crime.  That seems

16  a lot more concrete to me than what you're -- I'm not

17  denying that you don't have issues.  I just see an

18  irreconcilable tension here between the Government's

19  interests in preserving trial testimony and your

20  client's interests, Fifth and Sixth Amendment

21  interests.

22       MR. TRAINI:  But there are two, I think, pieces

23  to the response to that, your Honor.  One is that no

24  matter what they tell you, no matter how they label it,

25  they're not preserving trial testimony.  They don't

1   even know what the trial is.  They haven't indicted

2   anybody.  These depositions, whether they say they're

3   to preserve trial testimony or not, these are discovery

4   depositions.  They want to use this stuff in the grand

5   jury.

6           THE COURT:  What if they were prohibited from

7   using it in the grand jury?

8           MR. TRAINI:  Okay.  That's fine.  I raised that

9   issue in the memo.  Does the Court want to get involved

10  in interfering with the grand jury process?

11          THE COURT:  That's the Court's job is to deal

12  with grand jury problems, isn't it?  That's when we're

13  supposed to step in.  No, I don't want to get involved.

14          MR. TRAINI:  I don't know that that's true, your

15  Honor.  There's a line of cases starting with Branzburg

16  and every day there's another one where lower courts

17  are cautioned by courts of appeal not to fool around

18  with what goes on in the grand jury.  And I think that

19  that's another slippery slope.  You're walking into a

20  mine field with boots on if you're going to start

21  controlling what kind of evidence gets before the grand

22  jury, because as I said in the memo, that means we have

23  to do something like what you do in a Kastigar hearing.

24  Now we have to freeze their evidence.  We have to find

25  out whether or not they used these depositions to

1  develop any other leads or any other evidence.  This is

2  going to open up a whole Calandra-Costello problem down

3  the line, motions to dismiss.  I can see where this is

4  going to end up, and I don't think that you want to be

5  there.  And, more importantly, I don't think you have

6  to go there.  This is a situation where the Government

7  cannot meet the burden.  They can't even meet the

8  materiality burden on the case itself because, as

9  Mr. Vilker said to you -- and I'm really confused now

10  because I don't know if this case is simple or if it's

11  complicated.  It's apparently simple enough that I

12  could take these depositions with my eyes closed but

13  it's so complicated that they can't indict it for six

14  or eight months because it's such a complex case, but

15  it's very simple for me to know exactly what questions

16  to ask or not ask.

17      THE COURT:  That I appreciate.  But in fairness,

18  what they're saying is that the factual information

19  relating to each of these individuals is fairly

20  straightforward and simple.  The legal theories under

21  which they would prosecute your clients are not

22  straightforward and simple.  They're complex.  I'm not

23  sure those are irreconcilable.

24      MR. TRAINI:  I accept that, Judge.  The problem

25  is not whether they're irreconcilable.  The problem is

1   I don't know what to do in the deposition unless I know

2   the complicated part.  I mean, yeah, I've been

3   practicing law a long time but --

4        THE COURT:  I asked the question when I first

5   started inquiring of the Government and, you know, what

6   happens if you don't even go to the deposition.

7        MR. TRAINI:  Then they're going to say we waived

8   our Sixth Amendment right to cross-examine, which we

9   may not have had, but I'm sure the argument will be,

10  well, they didn't have it, but if they had it, they

11  waived it.  Or they might get the opportunity to argue,

12  like you said a minute ago, they gave it to us because

13  they're the Government.  They can give us our rights or

14  not give us our rights.  So they said, Okay, we gave

15  them their rights but then they waived them.  That's

16  the position that I don't think the Court can put us

17  in, and I think that's the reason, Judge, why Rule 15

18  depositions are not pre-indictment.

19        You saw the footnote in the Eisenberg opinion,

20  Footnote 9, where the Court specifically makes the

21  comparison to Rule 27 in the Civil Rules that says

22  there is no corresponding rule that allows them.  You

23  saw Judge Reinhardt's dissenting opinion in Hayes.  He

24  didn't have to say all that stuff because the issue

25  wasn't there, but he said it, and he was right, and he

1    was right for all the reasons he articulated, which I

2    can't do better than he did.

3         You saw it in <u>McHan</u> where the defendant made the

4    complaint as opposed to the Government and the court

5    said no. That's the reason why you don't do Rule 15

6    depositions pre-indictment because of all these

7    problems, not to mention all the stuff that happens in

8    the grand jury. I think it was a little disingenuous

9    for the Government to stand up here and say, well, it's

10   okay for us to do all this and produce all this

11   material because it's really not 6(e) material because

12   we haven't presented anything to the grand jury. The

13   opening line of their motion is the Grand Jury sitting

14   in the District of Rhode Island is currently

15   investigating the circumstances. I mean, it's either a

16   grand jury investigation or it isn't. Or we're closed

17   hearing or we're not. So I don't think that they can

18   have their cake and eat it, too.

19        And this is the last thing I'll say, and I'll

20   let Mr. Flanders take it from here, Judge, but it seems

21   to me that given what we have and what we know and the

22   historical aspects of the Rule and the fact that there

23   was a tremendous effort by the Supreme Court over the

24   years not to expand this Rule, I think it would be

25   flying in the face of the intention of the Supreme

1   Court to go down this road.  And for all the other

2   reasons that I said, I think the appropriate course of

3   action is to deny the Government's motion.  Let them

4   take a direct appeal from your order, which I believe

5   they can do, or let them file a petition for mandamus.

6   We shouldn't have to bear the burden of doing that

7   because they're the ones that have to prove that they

8   can do this and they just haven't been able to do it.

9        THE COURT:  That's an interesting question

10  because I have been thinking about what would happen if

11  either I granted or denied this motion.  And it seemed

12  to me that either party would seek a stay or seek an

13  emergency hearing before the Court of Appeals to

14  challenge whatever I did.  But it also seems to me that

15  from reading these cases that the standard of review is

16  abuse of discretion.  So I think I've got a pretty good

17  deal of discretion here.  Now I'd just like to have you

18  comment on that.

19       MR. TRAINI:  I know the standard is abuse of

20  discretion and I know that that's a difficult row to

21  hoe.  But we don't get to the abuse of discretion issue

22  if the Rule doesn't allow this to be done.

23       THE COURT:  If it's legal error, then it's abuse

24  of discretion is your response.

25       MR. TRAINI:  Right.  And, you know, then I think

1    that the other aspects of these arguments that are

2    implicated like the grand jury issues and the analogous

3    Kastigar issue, the discovery issues, the release of

4    grand jury information, the potential damage to the

5    witnesses, which we didn't even talk about because, you

6    know, as I said in my memo, it's one thing for them to

7    come in with a pile of medical files and say this guy

8    is going to die.  It's another thing to have a doctor

9    get up and say, well, I don't know whether the guy can

10   stand the strain of a deposition, even though he thinks

11   he can do it.

12        So a lot of those things may be discretionary

13   and I know that it would be very difficult to overturn

14   that.  But, again, it's not my burden.  I didn't start

15   this problem.  They did.  They should have to carry the

16   ball.  Let them carry it to Boston and do what they

17   have to do.  This is their problem.  And I think that

18   on the issue of the Rule itself, we don't reach your

19   discretion on that one.  And that's something that I

20   think needs to get decided, whether it's here or at the

21   Circuit, but somebody's got to make this decision and

22   this is the case, perhaps, to make it in because this

23   is capable of repetition.  I'm not going to be

24   surprised and I think Mr. McAdams and Mr. Vilker

25   referenced another case before you that I'm not

1   familiar with where maybe a defendant was seeking or a

2   target was seeking to take pre-indictment depositions.

3   And I'm not sure of any of the facts because I don't

4   know them, but I got the sense that you were not

5   inclined to allow that.  And so, you know, we have to

6   deal with this issue of what's good for the goose is

7   good for the gander.  It's not about whether this is an

8   extraordinary case because we've got nine people that

9   might die tomorrow, which I don't believe.  It's does

10   the Rule allow it or doesn't it.  If it doesn't and

11   they die, then they die.  Thank you, your Honor.

12        THE COURT:  Thank you.

13        MR. FLANDERS:  Good afternoon, your Honor.  May

14   it please the Court, Robert Flanders for Joseph

15   Caramadre.

16        I want to begin, your Honor, by emphasizing the

17   last point, which is the question you asked about is

18   this within your Honor's discretion to grant this or

19   isn't it.  I want to make it clear that it's our

20   position or Defendant Caramadre's position that a court

21   in this situation has no discretion under Rule 15 to

22   grant a deposition under these circumstances

23   pre-indictment no matter how impressed it might be with

24   the circumstances that otherwise might justify it.  And

25   the reason for that is not only the history of the Rule

1    that Mr. Traini has argued to you but the wording of

2    the Rule and the practical consequences that your Honor

3    put his finger on at the outset of this hearing, which

4    is the problems and possibility, really, of targets

5    effectively making decisions to participate or not to

6    participate, to cross-examine or not to cross-examine

7    when there are no charges pending.

8         So at the outset, I want to reemphasize that we

9    don't think that this is a matter within the Court's

10   discretion.  We're saying it would be ultra vires for

11   the Court to order a deposition pre-indictment under

12   those circumstances for all of those reasons.

13        THE COURT:  Let's say I disagree with that and

14   as the reasoning for disagreeing with that I take the

15   sentence that says "The Court may grant the motion

16   because of exceptional circumstances and in the

17   interest of justice" to mean that, unless this is done

18   in this case, the witnesses will die and justice will

19   not be served.  Isn't the response to your concerns

20   that if it turns out that Sixth Amendment or Fifth

21   Amendment serious violations occurred because of those

22   depositions, that the remedy for that is a motion to

23   suppress?  So we can't know now what we don't know.

24   And so we can't, with any certainty, anticipate what

25   the contours of a motion to suppress might be as a

1   result of this.  But motions to suppress are -- the

2   exclusionary rule is a remedial doctrine that is

3   meant -- it's not in the constitution.  It's a

4   court-made doctrine that's designed to deal with

5   situations that occur as things are developing.

6        So isn't that the vehicle that a court would use

7   to handle any violations that occur because of it?

8        MR. FLANDERS:  If your Honor had the discretion

9   to order these depositions, that argument would have

10   more force.  But the idea that because there's a

11   potential remedy to deal with unconstitutional

12   problems, with problems about not being able to

13   effectively cross-examine, all the issues that we

14   raised with your Honor down the road when, as and if

15   someone makes an argument as to admitting the evidence

16   doesn't answer the threshold problem, which is do

17   courts have the authority to put everyone through this

18   incredible, expensive, time-consuming and maybe even

19   life threatening procedure for nine different people

20   who are on their deathbeds, we're told, and having them

21   cross-examined and grilled by four sets of lawyers

22   under these circumstances.  I mean, so in this case

23   it's going to open up a door that's going to put

24   everybody to the burden and expense of having to attend

25   these depositions, prepare if they decide to do so, and

Case 1:09-mc-00084-S *SEALED*   Document 16   Filed 09/21/09   Page 55 of 69 PageID #: 199

55

1   have to make a decision, as your Honor pointed out,

2   whether to attend but a potential prejudice to them if

3   they don't.  And also -- so they're in a Hobson's

4   choice situation right at the outset without knowing

5   what the charges are, and then trying to cross-examine

6   about speculating what all the theories might be in an

7   atmosphere where we're hearing different theories,

8   legal theories to support this factual situation.

9        So in other words, I don't think, no matter how

10   impressed the Court might be with the idea that these

11   people are about to die and, therefore, we may lose

12   their testimony forever, that doesn't make up for the

13   lack of authority and it doesn't obviate the

14   grammatical problems that the Court would have to

15   overlook in interpreting Rule 15, which talks about

16   defendants, which talks about opposing parties, which

17   talks about parties in a non-existent case.

18        So, sure you could, but I think the better

19   course for your Honor to take is, in addition to the

20   authority issue, is is it really in the interest of

21   justice, even assuming that you had the authority, is

22   it in the interest of justice under all these

23   circumstances to go forward.

24        Your Honor put your finger on a number of

25   solutions that the Government has, indictment being one

1   of them.  They put themselves into this situation.  If

2   they think they can apparently arrest these people and

3   take their depositions under a statute, they think they

4   can indict without it, you know, they've got remedies

5   if they want to truly do this, apparently.

6        We don't think that's the right way to go.  And

7   they even haven't made a showing that this testimony is

8   necessary.  There's been no showing that the only

9   witnesses to what happened are these prospective

10  deponents.  In fact, there were family members that

11  were present, at least in many of these situations, and

12  who are able to testify about what was said and what

13  wasn't said.  So, you know, the showing here has not

14  been what it needs to be in order to require the

15  interests of justice to warrant such an extraordinary

16  procedure.

17       I think, your Honor, that the notion that the

18  Defendants ought to be put in this position is not in

19  the interest of justice is the bottom line.

20  Ultimately, this is a case that the First Circuit or

21  some court is going to have to decide because it's

22  really, you know, more or less a case of first

23  impression in terms of should Rule 15 -- but make no

24  mistake.  If this Court were to allow the prosecution

25  to go forward, then you're going to have situations

1    where the defense is going to want to preserve

2    testimony even while grand juries are being convened.

3    So we're really opening a door here that Rule 15, by

4    its terms, doesn't seem to allow.  Unless that door is

5    to be opened, I think that the Government has to find

6    other ways of meeting whatever necessities it feels.

7    And we're told on the one hand that it's simple, that

8    just get the facts before the grand jury and then they

9    can struggle with their legal theories.  If they can't

10   find the legal theories, maybe this case shouldn't be

11   indicted, which is obviously our position.

12           So for all the reasons Mr. Traini said, for

13   those that are in our brief, I would submit to your

14   Honor that, number one, no authority to do it but even

15   if you thought you might have the authority, the

16   interests of justice here are what weigh in favor of

17   denying the motion because the Government hasn't

18   demonstrated that all of these problems warrant them

19   being allowed to take the depositions and alter the

20   prejudice of these prospective defendants, targets or

21   whatever they are.

22           THE COURT:  Thank you.  All right.  Do you wish

23   to add anything?

24           MR. VICINANZO:  Thank you, your Honor.  For

25   Mr. Radhakistan, I still am in a very difficult

1   position. I just met him this morning. I've heard the

2   arguments. I have to say I found Mr. Traini and

3   Mr. Flanders' arguments very persuasive, but I am still

4   not in a position to actually make the arguments myself

5   and adequately represent my client's interests here.

6       So I think I'm going to ask the Court, if the

7   Court is willing, to help me a little bit on some

8   procedural or kind of record-making basis, I want to

9   make sure that my client's individual Fifth and Sixth

10   Amendment rights are preserved, that his rights as to

11   the interpretation of the Rule, of the statute are

12   preserved, the construction of Rule 15. I'm not in a

13   position to do anything today. So I guess what I'm

14   asking for, and I don't know if it's something the

15   Court can accommodate me on or not, but is if the Court

16   is inclined to deny the Government's motion -- let's

17   say this, to grant the Government's motion as to these

18   two individuals, I want to say defendants, but they're

19   not defendants, they're just individuals, not parties,

20   I would request from the Court more time on behalf my

21   client to interpose our objection and to brief the

22   issue and be heard.

23       If the Court, on the other hand, were inclined

24   to deny the Government's motion, there may be some good

25   chance that the issue will be taken up to a court above

1   us, and I think that I want to be included in that

2   appeal.  I would probably want to ask the Court if I

3   might be allowed then, if the Court denies the

4   Government's motion, that I be allowed to adopt their

5   arguments so that we can all go up together and not do

6   it piecemeal.  That's what I'm thinking anyway, off the

7   top of my head here as I'm listening.

8         But for efficiency's sake, I think I would like

9   to remain with these individuals who are plowing much

10   the same ground that I would plow had I had the

11   opportunity, but I'm trying to figure out, really, how

12   I can best in every possible circumstance make sure

13   that my client's interests and rights are preserved.

14         THE COURT:  Well, I want to help you do that.

15   I'm not going to decide this from the bench at the

16   close of this hearing.  I can tell you that right now.

17   In all likelihood, I'm going to give an answer on

18   Monday or Tuesday.  And that should give you enough

19   time to meet with your client and have a more thorough

20   conversation with him and find out whether your client

21   is in a position to be simply adopting the arguments

22   that have been made so you don't have to make filings

23   that say the same things that Mr. Traini and Flanders

24   have said or if you have some other circumstances that

25   cause you to want to file something that draws whatever

1    distinctions you want.  So that should give you enough

2    time to do that.  And then I think you'd be able to

3    proceed just the way you outlined, depending on what I

4    do.

5          MR. VICINANZO:  Okay.  So the Court intends to

6    probably decide it sometime early next week?

7          THE COURT:  Right.

8          MR. VICINANZO:  So you're giving me until

9    perhaps Monday or Tuesday to submit something to at

10   least state a position like that or --

11         THE COURT:  I'm happy to give you until Monday

12   morning to state -- if you want to distinguish yourself

13   from these two, I think that's really the question;

14   otherwise, I'll assume you're adopting the same

15   position that has been adopted by the others.

16         MR. VICINANZO:  I can get something to you by

17   Monday morning by noon?  By 11 or so?

18         THE COURT:  That's fine.

19         MR. VICINANZO:  Okay.  And then one way or the

20   other, I want it to be clear for my client's sake and

21   for any court above it's sake so we're not in Boston

22   and hearing that, oh, you didn't preserve this or you

23   didn't say that below.  That's my concern.

24         THE COURT:  That's fine.  That's fine.

25         MR. VICINANZO:  Okay.  Thank you, your Honor.

Case 1:09-mc-00084-S *SEALED*   Document 16   Filed 09/21/09   Page 61 of 69 PageID #: 205

 1      THE COURT:  All right.  Mr. McAdams or Vilker,

 2   do you want to say anything in reply to what you heard?

 3      MR. VILKER:  I don't think we have anything to

 4   add beyond what we stated this morning, your Honor.

 5      THE COURT:  All right.  One thing that I'm still

 6   a bit concerned about is the actual condition of these

 7   individuals.  And we sort of moved past that rather

 8   quickly based on the proffer that you've made about

 9   their situation.  I think, based on that proffer, I can

10   safely assume that they're in various stages of

11   terminal illness and that some are more acutely ill

12   than others.

13      I think it would be, frankly, helpful if you

14   could make some kind of a filing that's more detailed.

15   I understand that doctors can't predict with certainty

16   when someone is going to die or when they're going to

17   go from a fully cognitive state into a state where

18   they're maybe still alive but not able to communicate,

19   but it would be useful to know, I think, if that is

20   truly imminent with respect to any of these people, you

21   know, as best as can be said.

22      So it would be helpful to me if there's any more

23   that you can provide in terms of the detail with

24   respect to these individuals.  If you could do that,

25   that would be good.

1        MR. VILKER:  Your Honor, I did come to Court

2  today with all the records we've been able to get.  A

3  number of these are letters from doctors explaining the

4  nature of the illness and the fact that they're

5  terminal.  A number of these individuals don't have any

6  medical records that they keep.  They have a list of

7  their prescriptions.  Where without going and trying to

8  track down each of their doctors and interviewing them

9  and going through that whole procedure, we gathered

10  what we believe, and we're waiting for one or two more,

11  but we gathered what we believe we will gather in terms

12  of documentation.  I did want to submit these to your

13  Honor.  I'll do it now or in a separate filing and

14  submit it to counsel.

15        THE COURT:  Is there any problem with respect to

16  confidentiality of the medical information in doing

17  that?

18        MR. VILKER:  The individuals all voluntarily

19  provided the information to us with the understanding

20  that this would be disclosed in Court and to defense

21  counsel.  So I believe we have their full consent to

22  use the information.

23        THE COURT:  All right.  And this is a sealed

24  proceeding, so, obviously, what is submitted cannot be

25  disseminated beyond this -- the parties that are here

1   in the Court.

2      So why don't you pass those up, and we'll make

3   those an exhibit to the hearing, Exhibit 1, I guess, as

4   a group.

5      (Court Exhibit 1 admitted in full.)

6   THE COURT:  And you have copies for counsel?

7   MR. VILKER:  I'll give them to counsel.

8   THE COURT:  All right.

9   MR. TRAINI:  Your Honor, can I just --

10   THE COURT:  Yes.

11   MR. TRAINI:  This is really just a preservation

12   of the record issue because I don't know where this is

13   going to go.  And it may be that -- there may be Rule 6

14   implications even in what we've done thus far and so I

15   just want it to be clear on the record that by

16   accepting documents from Mr. Vilker we're not conceding

17   that this is a legitimate proceeding in the sense that

18   it's not in violation of Rule 6 itself.  But in an

19   effort to give the Court the benefit of our view on the

20   issue before the Court, we'll accept the documents but

21   with the understanding that we're not conceding

22   anything about the legitimacy of the proceeding.

23   THE COURT:  All right.  I appreciate that.

24   What I'm going to do is take this under

25   advisement.  My plan is to try to give you a ruling, if

1   possible, in writing Monday or Tuesday, give myself a

2   couple of days to work on it.  And I think a written

3   ruling would be useful to both sides.  And regardless

4   of which way I go, I'm assuming that someone will seek

5   an immediate appeal at the Court of Appeals.  And so I

6   think if I can set forth my reasoning in writing, it

7   will expedite that process.  It will help the Court of

8   Appeals judges who are going to have to ultimately look

9   at this, and so I think it's worth a couple of days to

10  do that.  And beyond that, I want some time to more

11  fully digest some of the things that you have given to

12  me in this sort of flurry of activity that we've had

13  this morning.

14        So that's my plan.  If anything regarding that

15  changes, I'll let you know.

16        MR. TRAINI:  Your Honor, just again,

17  procedurally, maybe to save a step, since we all know

18  that it's likely to go up anyway, whichever way you go,

19  can you address the stay issue at the same time so we

20  don't have to come back and ask for that to be ruled

21  on?

22        THE COURT:  I think it probably would be useful,

23  if I grant the Government's motion, to perhaps either

24  stay it or limit it in a way that allows you to

25  prosecute your appeal as quickly as possible but limit

1    the amount of testimony or the damage, so to speak,

2    that is done in the interim.

3          So for example, if there is somebody who truly

4    is at death's door, I might not stay it as to that

5    individual but maybe stay it as to the others so that

6    they can take one deposition and get it done while

7    you're prosecuting your appeal. I may do that. I'm

8    just speaking hypothetically, obviously.

9          MR. TRAINI: I was trying to avoid, you know,

10   having to request another hearing specifically to deal

11   with the stay issue, your Honor.

12         THE COURT: Right. I hear you.

13         MR. VILKER: Your Honor, on the stay issue in

14   the event your Honor is just discussing if your Honor

15   does grant the depositions, we would request at a

16   minimum that we be allowed to depose ███████ and

17   ████████████ since they seem to be in the most

18   imminent danger at the moment. And then, I guess,

19   hopefully, that will give the Court of Appeals enough

20   time to decide this issue before the depositions

21   proceed.

22         THE COURT: Okay. I understand that request.

23   The other issue that we talked about in chambers

24   yesterday, and I think it would be good to bring up

25   now, is in the event I were to grant the motion, you

1     made some representations in chambers about expedited

2     discovery that you would give to counsel for the

3     targets.  And I'd like to hear from you about what your

4     plan is with respect to giving them everything they

5     could possibly need or use in order to make the

6     depositions of say ██████████ or ██████████████ fully

7     protective of their clients' interests and rights.

8               MR. VILKER:  They would have an absolute right

9     and we would give them all prior statements of these

10    witnesses.  So for example, we have a number of

11    interview reports that the FBI agent has completed.

12    Another of these individuals were interviewed by

13    representatives of insurance companies and they have

14    the reports of their interviews, and all of that stuff

15    we would provide to counsel on prior statements.

16              And frankly, almost all of the records, they

17    have much more than we have at this moment.  We're

18    waiting for a response to our subpoena, which is due, I

19    believe, at the end of the month to get the records.

20    We don't have any independent records now that are

21    covered by Rule 6(e).  All the information we have has

22    been provided to us by the -- directly by the insurance

23    companies and bond issuers because they consider

24    themselves victims outside of the subpoena process and

25    interviews that each of them have conducted.

1        So what I would do is any piece of paper we have

2   that's at all related to any individual who we're going

3   to be deposing, I will turn it over to all counsel well

4   before the deposition.  I mean, as soon as the

5   deposition is scheduled, I will turn it over.  They

6   will have everything they need to conduct their

7   examination.

8        THE COURT:  Have you developed a proposed

9   schedule of depositions?

10       MR. VILKER:  Well, I have a proposed order of

11   depositions, your Honor.

12       THE COURT:  The order is what you read to me.

13       MR. VILKER:  No.  What I would be hoping to do

14   in the next two to three weeks is do one every other

15   day or something in that line.  One of the witnesses is

16   in Las Vegas so that's going to require some

17   arrangements for everybody's schedule, but, you know, I

18   think once we get beyond the first two, then there's a

19   little bit more flexibility in terms of maybe we have a

20   little bit more time to play with.  I'm not sure how

21   much more time, but it could easily be spread out over

22   five to six weeks to make accommodations for

23   everybody's schedule.  I'm waiting to hear if we're

24   going to be allowed to do this before I try to

25   coordinate precisely with these witnesses and with

68

1    counsel what will work best for everyone.

2         THE COURT:  Okay.

3         MR. TRAINI:  Judge, if I can just -- last thing.

4         THE COURT:  Yes.

5         MR. TRAINI:  This is similar to the point I made

6    before about the medical records.  We'll accept

7    whatever Mr. Vilker gives us but with the understanding

8    that we don't concede that it is all that there is.  If

9    it is all that there is, we don't concede that it's all

10   that we need, and I don't want to waive any argument

11   that we're getting it perhaps in violation of Rule 6.

12   There's no court order that permits this.  And to the

13   extent that the Government thinks that they can do

14   whatever they want with the Rule 6 because they're the

15   Government, I don't think that's what the Rule says,

16   but, in any event, I just want to preserve all those

17   issues for later on.

18        THE COURT:  Okay.  I appreciate that.  You will

19   hear from me early in the week.  If anything changes,

20   if there's anything that anyone feels that they should

21   provide to me, get it filed.  I'll wait to hear from

22   you by 11 o'clock on Monday.  Okay.  All right.  Thank

23   you.

24        (Court concluded at 2:00 p.m.)

25

C E R T I F I C A T I O N

      I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Anne M. Clayton

—————————————————————————————

Anne M. Clayton, RPR

September 17, 2009

—————————————————————————————

Date

Case 1:09-mc-00084-S *SEALED*   Document 17   Filed 09/18/09   Page 1 of 1 PageID #: 45

| AO 435 (Rev. 03/08) | Administrative Office of the United States Courts | FOR COURT USE ONLY |
|---|---|---|
| | **TRANSCRIPT ORDER** | DUE DATE |

Please Read Instructions:

| 1. NAME Robert G. Flanders, Jr. | 2. PHONE NUMBER (401) 274-2000 | 3. DATE |
|---|---|---|
| 4. MAILING ADDRESS 50 Kennedy Plaza, Suite 1500 | 5. CITY Providence | 6. STATE RI | 7. ZIP CODE 02903 |

| 8. CASE NUMBER N/A | 9. JUDGE William E. Smith | DATES OF PROCEEDINGS |
|---|---|---|
| | | 10. FROM 9/17/2009 | 11. TO 9/17/2009 |

| 12. CASE NAME In Re Grand Jury Proceedings | LOCATION OF PROCEEDINGS |
|---|---|
| | 13. CITY Providence | 14. STATE Rhode Island |

**15. ORDER FOR**

- [ ] APPEAL
- [ ] NON-APPEAL
- [ ] CRIMINAL
- [ ] CIVIL
- [ ] CRIMINAL JUSTICE ACT
- [ ] IN FORMA PAUPERIS
- [ ] BANKRUPTCY
- [X] OTHER

**16. TRANSCRIPT REQUESTED** (Specify portion(s) and date(s) of proceeding(s) for which transcript is requested)

| PORTIONS | DATE(S) | PORTION(S) | DATE(S) |
|---|---|---|---|
| [ ] VOIR DIRE | | [ ] TESTIMONY (Specify Witness) | |
| [ ] OPENING STATEMENT (Plaintiff) | | | |
| [ ] OPENING STATEMENT (Defendant) | | | |
| [ ] CLOSING ARGUMENT (Plaintiff) | | [ ] PRE-TRIAL PROCEEDING (Spcy) | |
| [ ] CLOSING ARGUMENT (Defendant) | | | |
| [ ] OPINION OF COURT | | [X] OTHER (Specify) | |
| [ ] JURY INSTRUCTIONS | | Motion to Stay | 9/17/2009 |
| [ ] SENTENCING | | Court Reporter/Ann Clayton | |
| [ ] BAIL HEARING | | | |

**17. ORDER**

| CATEGORY | ORIGINAL (includes Certified Copy to Clerk for Records of the Court) | FIRST COPY | ADDITIONAL COPIES | NO. OF PAGES ESTIMATE | COSTS |
|---|---|---|---|---|---|
| ORDINARY | [ ] | [ ] | NO. OF COPIES | | |
| 14-Day | [ ] | [ ] | NO. OF COPIES | | |
| EXPEDITED | [X] | [ ] | NO. OF COPIES 1 | | |
| DAILY | [ ] | [ ] | NO. OF COPIES | | |
| HOURLY | [ ] | [ ] | NO. OF COPIES | | |
| REALTIME | | | | ESTIMATE TOTAL | 0.00 |

**CERTIFICATION (18. & 19.)**
By signing below, I certify that I will pay all charges (deposit plus additional).

| 18. SIGNATURE *[signature]* | PROCESSED BY | |
|---|---|---|
| 19. DATE 9/18/2009 | PHONE NUMBER | |

| TRANSCRIPT TO BE PREPARED BY | COURT ADDRESS |
|---|---|

| | DATE | | |
|---|---|---|---|
| ORDER RECEIVED | | | DEPOSIT PAID | |
| DEPOSIT PAID | | | TOTAL CHARGES | 0.00 |
| TRANSCRIPT ORDERED | | | LESS DEPOSIT | 0.00 |
| TRANSCRIPT RECEIVED | | | | |
| ORDERING PARTY NOTIFIED TO PICK UP TRANSCRIPT | | | TOTAL REFUNDED | |
| PARTY RECEIVED TRANSCRIPT | | | TOTAL DUE | 0.00 |

DISTRIBUTION:   COURT COPY   TRANSCRIPTION COPY   ORDER RECEIPT   ORDER COPY

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| ) | |
| ) | |
| ) | MC No. 09-84 |
| IN RE GRAND JURY PROCEEDINGS ) | |
| ) | MATTER UNDER SEAL |
| ) | |
| ) | |

## EMERGENCY MOTION TO EXTEND STAY

Joseph A. Caramadre and the other individuals identified as "targets" of a pending grand jury investigation respectfully move for an Emergency Order to stay the Court's September 22, 2009 Order (hereinafter the "Order") until Monday, September 28, 2009.  With respect to two witnesses ███████████████████ that the Government intends to depose under Rule 15(a)(1) of the Federal Rules of Criminal Procedure, the Court stayed its Order for 48 hours in order to allow Mr. Caramadre and the other Targets of the Grand Jury's investigation (hereinafter the "Targets") to initiate an appeal.  (Order at 32).  The Order, however, also required that the Government "make a full disclosure to the Targets of all materials which would be disclosed in the usual course under Fed. R. Cim. P. 16 [sic] including any and all Brady and Jencks statements . . . ." id.  Later yesterday afternoon (September 23, 2009), as the Targets were preparing their papers to bring before the First Circuit Court of Appeals, the Government notified the Targets of its intention to depose ███████████ first thing on Friday morning (September 25, 2009).  Exhibit A (Government's Letter and Deposition Notices, September 23, 2009).  The Government, however, only delivered its required discovery disclosures to Mr. Caramadre's counsel that same afternoon.  With less than 48 hours to review the myriad of materials that the Government has only now just disclosed, the Targets bring this matter to the

Court's attention. Without a more reasonable amount of time to review these materials in preparation to cross-examine ███████ the Targets' Fifth Amendment and Sixth Amendment rights will be forever compromised by the Government's deposition.

In addition, this matter will soon before the First Circuit in which these crucial constitutional arguments will hopefully be resolved very shortly. The Targets contend that the depositions, if allowed to proceed, will violate their Fifth and Sixth Amendment rights by treating them as *de facto* criminal defendants, stripping them of the grand jury shield, and forcing them to submit to a degraded form of criminal procedure not contemplated or allowed by the Constitution.

The Targets therefore move for an extension of the stay to at least Monday, September 28, 2009.

JOSEPH CARAMADRE
By his Attorney,

/s/ Robert G. Flanders, Jr.
Robert G. Flanders, Jr. (#1785)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI  02903
Tel.  (401) 274-2000
Fax.  (401) 277-9600
rflanders@haslaw.com


████████████████████
By his Attorney,

/s/ Anthony M. Traini
Anthony M. Traini (#4793)
Anthony M. Traini, P.C.
56 Pine Street, Suite 200
Providence, RI  02903
Tel.  (401) 621-4700
Fax.  (401) 621-5888
amt@trainilaw.com

RAYMOUR RADHAKRISHNAN
By his Attorney,

/s/ David A. Vicinanzo
David A. Vicinanzo (*Pro Hac Vice*)
Nixon Peabody LLP
100 Summer Street
Boston, MA 02110
Tel: (617) 345-1177
Fax: (617) 345-1300
dvicinanzo@nixonpeabody.com

██████████████

By his Attorney,

/s/ John A. MacFadyen
John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer Street
Providence, RI 02903
Tel. (401) 751-5090
Fax. (401) 751-5096
jam@ridefense.com


DATED:  September 24, 2009

## CERTIFICATION

I hereby certify that on September 24, 2009, a copy of foregoing was filed electronically
and served by electronic mail on all counsel of record.


/s/ Robert G. Flanders, Jr.


3

# EXHIBIT A

Redacted 9/23/09 letter
from AUSA Vilker
to counsel

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| IN RE GRAND JURY PROCEEDINGS | : |

Misc. No. 09-84

**MATTER UNDER SEAL**

### GOVERNMENT'S OPPOSITION TO
### TARGETS' EMERGENCY MOTION TO EXTEND STAY

Comes now the United States of America, by and through its attorneys, Peter F. Neronha, United States Attorney, John P. McAdams and Lee H. Vilker, Assistant United States Attorneys, and hereby opposes the Emergency Motion to Extend Stay filed this morning by the targets.

Every day the depositions are delayed creates additional risk the deponents will be unavailable to be deposed. The Court already granted a 48 hour stay to allow the Targets an opportunity to file an appeal with the First Circuit Court of Appeals, and an additional 5 day stay with respect to all but two of the proposed deponents. Notwithstanding the fact that counsel for target ███████ indicated intent to file a writ of mandamus pursuing such an appeal in its brief filed a week ago, the targets still have not done so. The government intends to vigorously oppose the targets' appeal, both against any additional request for a stay, and on the substantive merits of the Court's Order and Opinion. Michael Rotker, an Appellate Attorney for the United States Department of Justice, Criminal Division, will represent the United States before the First Circuit. Mr. Rotker has indicated that he is prepared to file an opposition to the target's writ (should it come) within hours.

The government has provided its entire file in this matter to counsel. The entire file consists of approximately 45 documents. It would take no more than one hour to review the

entirety of the discovery.  Moreover, with respect to Mr. Rodriguez, whose deposition is currently scheduled for 25 at 9:30 a.m., the materials consist of 4 documents totaling eleven pages including the FBI form 302. Within moments of this writing, counsel for target Caramadre provided additional documents to the government with respect to Mr. Rodriguez, consisting of 22 pages of additional materials some of which is duplicitive of that already provided.

Any additional delay will only increase the risk the deponents will either die or continue to deteriorate in health such that the deposition will be impossible.  Accordingly, the target emergency motion to extend the stay should be denied.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

PETER F. NERONHA
United States Attorney

/s/ JOHN P. MCADAMS
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001

/s/LEE H. VILKER
LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001

## CERTIFICATE OF SERVICE

I, hereby certify that on this 24th day of September 2009, I caused the within

Government's Opposition to Motion to be served on:


For target Joseph Caramadre:
Robert Flanders, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

████████████████████

Anthony M. Traini, Esq.
56 Pine Street
Providence RI 02903

For target Raymour Radhakrishnan:
Jeffrey B. Pine, Esq.
321 South Main Street
Providence, RI


David Vicananzo, Esq.
Nixon Peabody, LLP
100 Summer Street
Boston, MA 02110

████████████████████

John A. MacFadyen, Esq.
101 Dyer Street
Providence RI

                                   /s/John P. McAdams
                                   John P. McAdams
                                   Assistant U.S. Attorney
                                   United States Attorney's Office
                                   50 Kennedy Plaza, 8th Floor
                                   Providence, RI 02903
                                   John.p.mcadams@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE GRAND JURY PROCEEDINGS | : |
| | :    Misc. No. 09-84 |
| | : |

### MOTION TO UNSEAL

Comes now the United States of America, by and through its attorneys, Peter F. Neronha, United States Attorney, Lee H. Vilker and John P. McAdams, Assistant United States Attorneys, and hereby moves this Court to unseal the proceedings in this matter for the limited purpose of disclosing the proceedings to the Court and to the parties in the related civil actions pending before the Hon. Chief Judge Mary M. Lisi and Hon. Magistrate Judge David L. Martin.

As the Court is aware, on September 22, 2009, this Court granted the Government's motion to take Rule 15 depositions of nine terminally ill individuals. The purpose of these depositions is to preserve trial testimony, not to produce evidence to present to the grand jury. Two of the depositions have taken place and the Government is in the process of scheduling the remaining depositions, consistent with the health situations of the deponents.

The Government recently learned that two of the insurance companies at issue, Western Reserve Life Ins. Co. of Ohio and Transamerica Life Insurance Co, have filed four lawsuits against targets of this investigation and others in cases that are now pending before the Hon. Mary M. Lisi. (CA 09-470, 09-471, 09-472 and 09-473). These cases relate to the annuities executed by four of the individuals whom the Court granted the Government the ability to depose under Rule 15. The allegations made in the Complaints are similar in nature to those being investigated by the Government in its criminal investigation.

The plaintiffs in the civil actions have moved to take the immediate depositions of four of the individuals whom the Court has granted the Government the right to depose under Rule 15. Two of these individuals, ███████████ and ███████████, are experiencing health issues so severe in nature that the Government has delayed their Rule 15 depositions in the hope that they recover and are able to proceed with the depositions. Attorney Traini has written to Judge Lisi and advised the Court of the pendency of the criminal investigation.

By this motion, the United States seeks the Court's permission to disclose the Court's September 22, 2009 Order and information concerning the Rule 15 depositions to the Court and the litigants in the civil actions. We believe such a limited unsealing is necessary to advise the Court and the parties of the pendency and status of the Rule 15 depositions so that the Court is aware of the necessary facts before ruling on any discovery motions in the civil case. As the Rule 15 depositions are meant to preserve trial testimony - not to further a grand jury investigation - we do not believe that Rule 6(e) of the Federal Rules of Criminal Procedure is implicated by the limited disclosure being sought in this motion. However, as this matter is under seal, the Government must obtain permission of the Court to disclose relevant information to the Court and parties in the civil actions.

Based on the foregoing, the United States respectfully requests that this Court partially unseal the proceedings in this matter so as to permit the United States to disclose this Court's

orders and other information related to the Rule 15 depositions to Judge Lisi, Judge Martin and

the litigants in civil actions CA 09-470-473.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

PETER F. NERONHA
United States Attorney


/s/ Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000/Fax (401) 709-5001
email:lee.vilker@usdoj.gov


/s/ John P. McAdams
JOHN P. McADAMS
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000/Fax (401) 709-5001
email: john.mcadams@usdoj.gov


ENTER:


_____
HON. WILLIAM E. SMITH
UNITED STATES DISTRICT JUDGE

DATE:      _____

## CERTIFICATE OF SERVICE

On this 15th day of October 2009, I caused a copy of the within Government's Motion to Unseal to be filed electronically and it is available for viewing and downloading from the ECF system:

Electronic notification:
Robert Flanders, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

Anthony Traini, P.C.
56 Pine Street, Suite 200
Providence, RI 02903

Jeffrey Pine, Esq.
321 South Main Street
Providence, R.I. 02903

John A. MacFadyen, Esq.
101 Dyer Street
Providence, Rhode Island 02903

/s/Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401)709-5000/FAX(401)709-5001
email: lee.vilker@usdoj.gov

/s/ John P. McAdams
JOHN P. McADAMS
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000/Fax (401) 709-5001
email: john.mcadams@usdoj.gov

4

## THE UNITED STATES DISTRICT COURT
### FOR THE STATE OF RHODE ISLAND

IN RE GRAND JURY PROCEEDINGS   :             Misc. No. 09-84

### MOTION OF JOHN DOE # 3 TO ISSUE A
### SUBPOENA DUCES TECUM PURSUANT TO RULE 17(c)

Now comes an individual previously identified as John Doe # 3 in this matter, pursuant to

Federal Rule of Criminal Procedure 17 (c), and moves this Court for the issuance of a Subpoena Duces

Tecum to Cox Communications Inc. for the records described below.

As grounds for this Motion John Doe # 3 submits he has been identified as a target in the above

entitled investigation, and that the records and information sought contain probative, relevant, and

potentially exculpatory evidence concerning the ongoing investigation.

The records sought are contained in the attached *Exhibit A* and pertain to the interaction and

numerous contacts between John Doe # 3 and Patrick Garvey during the period of time November

2007-April 2008.

In requesting Court permission pursuant to Rule 15 (a) to take the deposition of Mr. Garvey the

government has submitted that Mr. Garvey would have relevant and probative information concerning

the ongoing investigation, and furthermore that the government had a need to preserve the testimony of

Mr. Garvey for trial because of his status as a terminally ill individual. The government has noticed the

video deposition of Patrick Garvey for November 20, 2009.

John Doe # 3 and the other targets of this investigation have a similar need for the phone

records of Mr. Garvey during the period of time of December 2007-April 2008. The phone records of

Mr. Garvey are necessary and relevant to the defense and would be used at his deposition in order to effectively cross-examine him on points that may come out during his deposition.

Counsel has discussed this subpoena request with AUSA Vilker and the government does not object to the issuance of the subpoena for the requested records.

WHEREFORE, John Doe # 3 moves for the issuance of the subpoena attached as *Exhibit A.*

Respectfully submitted,

John Doe # 3

By His Attorney,


/s/ Jeffrey B. Pine
Jeffrey B. Pine, Esq. #2278
321 South Main Street
Providence, Rhode Island 02903
401-351-8200

## CERTIFICATION

I hereby certify that this Motion was filed electronically on the 4th day of November 2009, and a copy was electronically sent to Lee Vilker Esq. AUSA, 50 Kennedy Plaza, Providence, Rhode Island 02903 and the following attorneys:

Robert Flanders Esq.
Hinckley Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

Anthony Traini Esq.
56 Pine St.
Suite 200
Providence, RI 02903

John A. McFayden Esq.
101 Dyer St.
Providence, RI 02903


/s/ Jeffrey B. Pine

## EXHIBIT A

To:      Keeper of Records
            Cox Communications Inc.
            9 J. P. Murphy Highway
            West Warwick, RI 02893

Records:
            Any and all phone records for the number (401) 467-2453, during the period of time
            November 1, 2007 – April 30, 2008.

Return Date:
            On or before November 18, 2009

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

IN RE GRAND JURY PROCEEDINGS      :      Misc. No. 09-84
     :
     :      **UNDER SEAL**

## GOVERNMENT'S NOTICE OF MOTION TO TAKE ADDITIONAL DEPOSITION PURSUANT TO RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Comes now the United States of America, by and through its attorneys, Peter F. Neronha, United States Attorney, Lee H. Vilker and John P. McAdams, Assistant United States Attorneys, and hereby moves this Court under Rule 15 of the Federal Rules of Criminal Procedure to authorize the taking of the deposition of ██████████ for the reasons stated below.

As the Court is well aware, on September 22, 2009, Your Honor granted the United States' motion to take Rule 15 depositions of nine terminally ill individuals who served as "measuring lives" in annuities and brokerage agreements that are owned by the targets of this investigation and others. Since that time, the United States has taken the depositions of three of the terminally-ill individuals, and a fourth deposition has been noticed for November 20, 2009. Unfortunately, two of the individuals the United States sought to depose have passed away before their depositions could be taken. Two of the remaining individuals are in dire health and, for that reason, the United States postponed their depositions out of concern of the stress such depositions could place upon them.

In response to a grand jury subpoena, the United States last week received some documentation from Estate Planning Resources, Inc., the corporation owned and controlled by target Joseph Caramadre, Esq. Those documents revealed the existence of a small number of

other individuals of which the Government was previously unaware who also served as "measuring lives" for the targets. Based upon our review of the documents received to date from Estate Planning Resources, Inc., the United States seeks the Court's permission to take one additional Rule 15 deposition - that of ███████████ is a 72 year old resident of Providence with cancer and severe damage to his lungs, which requires him to be on an oxygen machine at all times. ██████████ has been informed that he could die at any moment. Counsel for the targets in this case have advised the undersigned that they have no objection to the Government taking the deposition of ███████ apart from the objections they have already lodged with the Court, including their objection to the propriety of Rule 15 depositions which they request be incorporated by reference.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

PETER F. NERONHA
United States Attorney

LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
email:lee.vilker@usdoj.gov

/s/ JOHN P. MCADAMS
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001

## CERTIFICATE OF SERVICE

I, hereby certify that on this 6th day of November 2009, I caused the within Government's Notice of Motion to be served electronically (via e-mail) on:

Robert Flanders, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

Anthony Traini, P.C.
56 Pine Street
Suite 200
Providence, RI 02903

Jeffrey Pine, Esq.
321 South Main Street
Providence, R.I. 02903

John A. MacFadyen, Esq.
101 Dyer Street
Providence, Rhode Island 02903

/s/Lee H. Vilker
Lee H. Vilker
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401)709-5000
(401)709-5001(fax)
Lee.vilker@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF RHODE ISLAND

IN RE GRAND JURY PROCEEDINGS

MISC. NO. 09-84

UNDER SEAL

### NOTICE OF MOTION TO TAKE DEPOSITION PURSUANT TO
### RULE 15 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Now come the petitioners in the above entitled matter and hereby move this Court under

Rule 15 of the Federal Rules of Criminal Procedure to order the taking of the deposition of

███████████ for the reasons stated below.

In its original motion to take Rule 15 depositions, the government sought to depose nine

terminally ill individuals who allegedly served as "measuring lives" in certain annuities and as

joint account holders regarding certain bonds . *Government's Notice of Motion to Take*

*Depositions Pursuant to Rule 15 of the Federal Rules of Criminal Procedure* at 1, 2. After

listing each of the nine individuals, it represented that, "[i]f the Court approves the taking of

these depositions, the United States will provide counsel for all targets with notices of the

depositions and an opportunity to attend them and examine the deponent. *Id.* at 4. One of the

nine originally named individuals is ███████████

On this basis, this Court issued an order authorizing the depositions.

Since this Court's order, the United States has taken the depositions of four of the

terminally-ill individuals[1]. Upon information and belief, the government has interviewed Mr.

---

[1]One of the deposed individuals, ███████████, has since died. Two other individuals, ███████████ and ███████████, have died without being deposed.

███████ and has indicated that it intends to attempt to depose the remaining individuals before reaching a decision whether it will notice his deposition at all.[2] ███████ differs from the other deponents only because he has previously spoken with counsel for Mr. Caramadre and, according to an F.B.I. 302, has told the government, "the second time Raymour came to the Buckmans' home, ███████ listened to Raymour read the documents to them word by word." Meanwhile, his condition continues to deteriorate.

Petitioners continue to believe Rule 15 does not authorize the taking of pre-indictment depositions. Consequently, they do not waive any of the objections previously made before this Court, before the Court of Appeals, and placed on the record at each of the depositions. But as this Court has ordered the depositions to go forward, the procedure should be administered equitably, and the government should not be permitted to cherry pick among the deponents on which this Court premised its authorization.[3]

These depositions were ordered by this Court to preserve potentially relevant testimony for trial, not to give the government a tool to develop a partisan case for indictment, or to provide the government with an evidentiary advantage at trial. Either the government should be instructed to take the deposition of ███████ forthwith, or the petitioners should be given leave to do it if the government will not.

---

[2] This despite the fact that two of those individuals ███████ and ███████ have been unable to be deposed almost since the original motion was filed by the government because of their deteriorating medical conditions.

[3] In its original motion, the government stated that "the testimony of these individuals is critical to the outcome of the investigation and any criminal case that may ensue" [p. 2], and that "[c]learly, the testimony of these . . . individuals who are still alive is critical to this investigation." [p.3].

2

Respectfully submitted,

JOSEPH CARAMADRE

By His Attorney,

/s/ Robert G. Flanders Jr.
Robert G. Flanders Jr. (#1785)
Hinckley Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax. (401) 277-9600
rflanders@haslaw.com

████████████████

By His Attorney,

/s/ Anthony M. Traini
Anthony M. Traini (#4793)
Anthony M. Traini P.C.
56 Pine St., Suite 200
Providence, RI 02903
Tel. (401) 621-4700
Fax. (401) 621-5888
amt@trainilaw.com

RAYMOUR RADHAKRISHNAN

By His Attorney,

/s/ Jeffrey B. Pine
Jeffrey B. Pine (#2278)
321 South Main St.
Providence, RI 02903
Tel. (401) 351-8200
Fax. (401) 351-9032
jbp@pinelaw.com

███████████████

By His Attorney,

/s/ John A. MacFadyen
John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer St., 3rd Floor
Providence, RI 02903
Tel. (401) 751-5090
Fax. (401) 751-5096
jmacfadyen@mgolaw.com

## CERTIFICATION

I hereby certify that this Motion was filed electronically on the 30th day of November 2009, and a copy was electronically sent to Lee Vilker Esq. AUSA, 50 Kennedy Plaza, Providence, Rhode Island 02903.

4

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF RHODE ISLAND

|                                  |   |                          |
|----------------------------------|---|--------------------------|
| IN RE GRAND JURY PROCEEDINGS     | : | Misc. No. 09-84          |
|                                  | : |                          |
|                                  | : | **MATTER UNDER SEAL**    |

### GOVERNMENT'S RESPONSE TO MOTION TO TAKE RULE 15 DEPOSITION

Comes now the United States of America, by and through its attorneys, Peter F. Neronha, United States Attorney, John P. McAdams and Lee H. Vilker, Assistant United States Attorneys, and responds to the Targets Joseph Caramadre, ████████████████████ and Raymour Radhakrishnan's (collectively, "the Targets") "Notice of Motion to Take Deposition Pursuant To Rule 15 of The Federal Rules of Criminal Procedure." For the reasons set forth below, the United States has no objection to the Targets' taking the deposition of Charles Buckman.

On September 22, 2009, the Court authorized the taking of depositions of nine individuals pursuant to Rule 15 of the Federal Rules of Criminal Procedure. On November 6, 2009, the Court authorized the taking of the deposition of an additional witness. Four of the ten depositions authorized have been taken. A fifth deposition is scheduled for Tuesday, December 1, 2009. The first deponent, Richard Wiley, passed away a few weeks after the taking of his deposition. The deposition of Anthony Lancelotti was postponed due to health considerations. Unfortunately, Mr. Lancelotti passed away, and his deposition was not able to be taken. The deposition of Alfred Sanford was never scheduled because of his health; sadly Mr. Sanford passed away without his deposition being taken. The deposition of Jason Veveiros was also cancelled due to Mr. Veveiros' health situation. The deposition of Anthony Pitocco has not yet

been scheduled.

The government has made every effort to schedule the depositions consistent with the health and availability of the deponents and the limited openings in the schedules of the Targets' counsel. Accordingly, the Government objects to the Targets' suggestion that the government is "cherry pick[ing] among the deponents" in order to "develop a partisan case for indictment." Targets' *Notice* at 2. To the contrary, the depositions, consistent with the Court's Order, are for the purpose of preserving trial testimony; they are not for presentment to the grand jury.

The government has maintained from the outset of this matter that Rule 15 authorizes the government's taking of pre-indictment depositions due to the extraordinary circumstances inherent in the nature of the scheme perpetrated by the Targets, i.e., defrauding terminally ill individuals and various insurance and financial services companies by defrauding the terminally ill of their identity information and by making false material representations and omissions to the terminally ill and the companies. The government has consistently maintained that "extraordinary circumstances" exist in this matter due to the nature of the Targets' scheme. Therefore, without conceding the propriety of the taking of pre-indictment depositions by targets generally in all cases, the government has no objection to the Targets' preserving the trial testimony of Mr. Buckman in this matter.

However, the government is perplexed as to how the Targets can now claim that they are still objecting to Rule 15 depositions in a pre-indictment context. They now seek to use a procedure they maintain is unlawful without waiving their objections to its legality. The Targets cannot have it both ways. They cannot object to the use of Rule 15 in a pre-indictment setting while simultaneously taking advantage of the Rule to conduct pre-indictment depositions.

Accordingly, the reasons set for above, the United States has no objection to the Targets taking the deposition of Mr. Charles Buckman.

Respectfully submitted,

UNITED STATES OF AMERICA

By its attorneys,

PETER F. NERONHA
United States Attorney

/s/ JOHN P. MCADAMS
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001

/s/LEE H. VILKER
LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th FL
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001

## CERTIFICATE OF SERVICE

I, hereby certify that on this 30th day of November 2009, I caused the within

Government's Opposition to Motion to be served on:

For target Joseph Caramadre:
Robert Flanders, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

██████████████████████
Anthony M. Traini, Esq.
56 Pine Street
Providence RI 02903

For target Raymour Radhakrishnan:
Jeffrey B. Pine, Esq.
321 South Main Street
Providence, RI 02903

████████████████
John A. MacFadyen, Esq.
101 Dyer Street
Providence RI 02903

/s/John P. McAdams
John P. McAdams
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
John.p.mcadams@usdoj.gov

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| In re Grand Jury Proceedings | SEALED CASE<br><br>MC No. 09-84 |

## OPINION AND ORDER REDACTED FOR PUBLICATION

WILLIAM E. SMITH, United States District Judge.

In a highly unusual move, the United States has moved this Court to issue an Order allowing it to depose potential witnesses pursuant to Rule 15(a) of the Federal Rules of Criminal Procedure, before it has obtained an indictment against four individuals who are presently targets of an investigation (the "Targets").[1] The exigency behind the government's unprecedented motion is the result of the fact that the alleged scheme targeted individuals standing at death's door. The government seeks to preserve the testimony of the nine remaining terminally ill witnesses of the alleged scheme (over one hundred witnesses having already perished). By using Rule 15(a) to conduct the proposed depositions, the government hopes to avoid any potential Sixth Amendment problems when it seeks to later admit the depositions at the eventual trial, which, if it

---

[1] While the government brief states that "the grand jury is investigating a fraud scheme," during the hearing on this motion, in response to the Targets' counsel raising a possible Rule 6 violation, counsel for the government indicated that no evidence has actually been presented to the Grand Jury.

occurs, will likely be long after the nine witnesses have died. See <u>Crawford v. Washington</u>, 541 U.S. 36, 124 S. Ct. 1354 (2004).

**Procedural Posture**

Upon request of the government, an emergency in-chambers conference was held under seal on Tuesday, September 15, 2009. At the conference, counsel for the Targets was present, although it was made clear at the onset that conflict issues were imminent as one attorney was acting on behalf of three of the Targets. The government requested permission to depose the nine remaining terminally ill witnesses over the next several weeks, in order to preserve their testimony for trial. Counsel for the Targets objected, arguing that Rule 15 had no applicability in a pre-indictment setting. Counsel protested that they were ill-prepared to depose anyone without the benefit of notice of the alleged criminal conduct, discovery, <u>Jencks</u> material, and the like. The government countered it was willing to provide such material. The Court held a formal hearing two days later, and the parties submitted well argued briefs on the morning of the hearing. The Court took the matter under advisement and promised a ruling within several days.[2] The parties further supplemented their initial

---

[2] This lightning fast process is not without its consequences. Following the conference, the two Targets, who were previously represented by counsel for one of the main Targets, worked to secure independent counsel. One did secure counsel prior to Thursday's hearing, but counsel understandably protested that he was ill-prepared to represent his client having only met him that

briefs on Monday, September 21st, just prior to the issuance of this opinion.

## The Government's Basis for the Motion

At this nascent stage very little is known regarding the facts of the underlying investigation against the Targets.   In broad strokes, the government alleges that the Targets approached terminally ill individuals and, in exchange for a few thousand dollars, asked them to sign documents permitting the use of their names as "measuring lives" for certain bonds and annuities.   The government alleges that the Targets made false material representations to these individuals in order to induce them to sign the documents and to perpetuate a fraudulent scheme against insurers of the financial instruments.   However, as counsel for the government noted during argument, the case is very complex, the legal theory of the case has yet to be fully determined, and no criminal indictment has issued.[3]

---

morning; on Monday, he filed a formal objection the government's motion essentially adopting the arguments of his co-counsel.   The other purported Target has not, as of this writing, secured counsel (to the Court's knowledge).

[3]   In response to questions from the Court regarding the government's hesitation to pursue an indictment, the government stated that its policy is to only seek indictment when they are satisfied "beyond a reasonable doubt" that a crime has been committed.   Of course, this may be the policy of the United States Attorney's office, but a grand jury indictment only requires a showing of probable cause.   United States v. Bergeson, 425 F.3d 1221, 1226 (9th Cir. 2005) ("All a federal grand jury needs to indict is 'probable cause,' and it can indict based on hearsay.").

3

During the hearing the government proffered information regarding the witnesses it wishes to depose. The government indicated that approximately three years ago the Targets began approaching terminally ill individuals. Approximately 112 individuals had been identified; however, as noted above, only nine remain alive today. The government offered medical exhibits and information obtained by an FBI interviewer as evidence of the terminal illnesses that the witnesses suffered (the details of the government proffer on this point are set forth in this opinion on pp. 22-25, _infra_).

As the Court discusses in some detail below, the standard of exceptional circumstances has been held (at least in the material witness context) to include terminal illness. Because time was so limited the Court accepted the government's proffer with respect to the terminal nature of the illnesses of the nine proposed witnesses. While the record on this point is less developed than it might be in less urgent circumstances, this element of the government's burden seems easily satisfied given the proffer.

**The Targets' Objection to the Government's Motion**

Counsel for the Targets strenuously object to the government's Motion. First, as a threshold matter the Targets contend that Rule 15 does not apply pre-indictment and that this Court has no discretion to authorize a procedure that is not available under the Rule. Second, they contend the government cannot meet its burden

of demonstrating materiality, unavailability, or show that this motion is in the interests of justice.   Indeed, allowing pre-indictment depositions would be contrary to the interests of justice, the Targets argue, because of the adverse impact upon the "potential" Defendants' Fifth and Sixth Amendment rights to effectively confront and cross examine all trial testimony, and to be fully informed of the charges against them before they are required to defend.

The Court's authority to grant a pre-indictment deposition

A critical threshold issue is whether the Court has the authority to apply Rule 15(a)(1) in a pre-indictment context. Rule 15(a)(1) provides:

> (a) When Taken.
>
> (1) In General. A party may move that a prospective witness be deposed in order to preserve testimony for trial. The court may grant the motion because of exceptional circumstances and in the interest of justice. If the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data.

There is virtually no case, in any court, at any level, which the parties, or this Court, have been able to locate that confronts <u>directly</u> the question of whether the Rule 15(a)(1) deposition process ever may allow for pre-indictment depositions.   This is truly a matter of first impression - and both sides readily acknowledge (as does the Court) that whatever the Court decides, the matter will, in short order, be before the First Circuit Court

of Appeals for determination.  Unfortunately, the limited time and complete dearth of direct authority has left this Court with fewer than usual analytic tools with which to work the problem.

The first consideration, and doubtless the most important, is the text of the rule itself.  After all, the rules have "the force and effect of law.  Just as a statute, the requirements promulgated in these rules must be obeyed."  1 Charles Alan Wright et al., Federal Practice and Procedure § 32 n.1 (2009) (citing Dupoint v. United States, 388 F.2d 39, 44 (5th Cir. 1967)).  Advisory Committee notes and even historical context may be helpful interpretive guides, but it is the text of the rule ultimately that governs.  See id. at §32.

Rule 2 of the Federal Rules of Criminal Procedure also provides some interpretative guidance.  It states that "[t]hese rules are to be interpreted to provide for the just determination of every criminal proceeding.  They shall be construed to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay."  Fed. R. Crim. P. 2. The United States Supreme Court has said that Rule 2 "sets forth a principle of interpretation to be used in construing ambiguous rules, not a principle of law superseding clear rules that do not achieve the stated objectives."  Carlisle v. United States, 517 U.S. 416, 424, 116 S. Ct. 1460, 1465 (1996).

The plain language of Rule 15 gives discretion to the district court such that "the court may grant the motion because of exceptional circumstances and in the interest of justice." Fed. R. Crim. P. 15(a)(1). This discretion is widely acknowledged by the Courts of Appeal in the post-indictment setting. See United States v. Mann, 590 F.2d 361, 365 (1st Cir. 1978) ("[T]he language of the rule and prior case authority commit the decision to the discretion of the district court."); United States v. Rosenstein, 474 F.2d 705, 715 (2nd Cir. 1973) (within the discretion of the trial judge to deny defendant's motion to depose prior to trial); United States v. Puchi, 441 F.2d 697, 701 (9th Cir. 1971) (where defendant moved to depose two weeks before trial "[t]he granting or denial of a motion under Rule 15(a) rests in the sound discretion of the district court").

Unlike the original Rule 15, there is no language in today's Rule 15 that directly, or even implicitly, prohibits its application in the pre-indictment setting.[4] If the Advisory Committee drafters, or the Supreme Court adopters of the Rules, had intended to limit the taking of depositions to the post-indictment

---

[4] Rule 15 depositions are only permitted to "preserve trial testimony." Although the Targets suspect otherwise, there has been no indication to the Court that the government is seeking these depositions for any other improper purpose, such as to pursue discovery. See United States v. Poulin, 592 F. Supp. 2d 137, 145 (D. Me. 2008) (denying defendant's Rule 15 motion for pretrial deposition because it was for impermissible purpose of discovery). This point will be addressed in the Court's Order below.

context, it would have been easy enough to do so by retaining the post-indictment limitation that was present from the inception of the rule until 1974 (this historical development is discussed in further detail below).

Both parties rely upon <u>United States v. Hayes</u>, 231 F.3d 663 (9th Cir. 2000) in arguing the propriety (or impropriety) of pre-indictment depositions.  In <u>Hayes</u>, the Ninth Circuit Court of Appeals held that pre-indictment depositions taken by the government did not trigger a target's Sixth Amendment right to counsel.  <u>See</u> <u>id.</u> at 676.  Prior to indicting the targets, the government filed, under seal, material witness complaints against four foreign student-witnesses.  <u>See</u> <u>id.</u> at 668.  These material witnesses were scheduled to graduate and return to the United Arab Emirates.  <u>See</u> <u>id.</u>  The government moved to take their depositions and each target was given notice.  <u>See</u> <u>id.</u>  Although the majority did not specifically address the permissibility of pre-indictment depositions, since the question was not before it, the dissent contended that adversary proceedings had begun upon the taking of the deposition, thus triggering the Sixth Amendment right to counsel.  <u>See</u> <u>id.</u> at 676 (Reinhardt, J., Hug, J., Graber, J., and Fletcher, J., dissenting).  In a footnote, the dissenters argued that "[t]he organizational structure of the Federal Rules of Criminal Procedure suggests that Rule 15 does not contemplate pre-indictment depositions."  <u>Id.</u> at 677 n.1.  To be sure, the Rule is

8

located under section IV dealing with Arraignment and Preparation for Trial. The dissent continued to note that "in no case has the [United States Supreme] Court considered the constitutional consequences of anything resembling the court-ordered, pre-indictment taking and preserving of _actual trial testimony_." _Id._ at 678 (emphasis in original).

In dicta, the Fourth Circuit has also stated the view that Rule 15(a) only applies to post-indictment settings because the language of the rule refers to "a party" and "a prospective witness of a party." _United States v. McHan_, 101 F.3d 1027, 1037 (4th Cir. 1996) In _McHan_, which like _Hayes_ is a pre-_Crawford_ case, the government chose to bypass Rule 15 and have its witness testify in grand jury proceedings. The government had knowledge that a material witness was suffering from advanced emphysema and was not expected to live for more than two years. _See id._ at 1031. To preserve his testimony, the government brought the witness before a federal grand jury. _See id._ Approximately two years later, the grand jury returned a superseding 17-count indictment against the defendant. _See id._ at 1032. When the government moved to admit the testimony of the now-deceased witness at trial, the defendant moved to suppress. _See id._ at 1036-37. The defendant argued that a Rule 15 deposition would have afforded the defendant the right to confront the witness. _See id._ at 1037. The Fourth Circuit affirmed the District Court, which admitted the grand jury

testimony over defendant's objection, holding that the admittance of the testimony did not violate the Confrontation clause. See id. In so holding, the Court noted that the mechanism suggested by the defendant (a Rule 15(a) deposition) was not available prior to indictment. See id.

Adding more confusion than clarity, it is notable that the deposed parties in Hayes were deemed material witnesses under § 3144, yet the opinion cites generally to Rule 15 and it appears the "government filed a motion to take pre-indictment videotaped depositions," not the deponents. Hayes, 231 F.3d at 668. Indeed, the opinion relies on the language of both 15(a)(1) and 15(a)(2). See id. at 668. This is confusing because 15(a)(1) and (a)(2) work differently in the procedural sense.[5] Under 15(a)(2) the material

_____

[5] Rule 15(a)(2) provides:

"A witness who is detained under 18 U.S.C. § 3144 may request to be deposed by filing a written motion and giving notice to the parties. The court may then order that the deposition be taken and may discharge the witness after the witness has signed under oath the deposition transcript." (Emphasis added).

Section 3144 deals with the "Release or detention of a material witness" and provides in relevant part:

If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material

witnesses may invoke the taking of a deposition in lieu of detention; while in 15(a)(1) it is the party (i.e. the government, the defendant/Target) that requests the deposition.

In any event, the dissenting judges in Hayes took special care to note that the language of Rule 15(a) "plainly contemplates a post-indictment occurrence at which the defendant's right to counsel has indisputably attached, and that seems correct because, prior to indictment, there is no 'defendant,' no 'case,' or even 'party.'" Id. at 677. And it is this dissent-based dicta that the Targets heavily rely upon (along with McHan) to suggest that pre-indictment depositions are simply prohibited. Both the Hayes dissent and the McHan dicta support the Targets' contention that the structure of the Rules can be read to implicitly limit the right of the government (and the defendant for that matter) to preserve trial testimony to the post-indictment context. But, it must be remembered that in both Hayes and McHan the issue was not directly before the Courts, and further, both cases were pre-Crawford. The latter point is important because before Crawford, the prosecution had the possible option under the law at that time

---

witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

to bring the dying witnesses before the Grand Jury and later use the testimony at trial if the witness in fact died. This is precisely what occurred in McHan. And, as one of the Targets points out in his brief, even under pre-Crawford law this approach was not a slam dunk for the government; in the post-Crawford world this option is, without doubt, unavailable. Nothing in Rule 15(a) would reasonably have anticipated this important change in Sixth Amendment law.

Moreover, the language and structural analysis is more complicated than the Hayes dissenters and the McHan Court (as well as the Targets here) suggest. To begin, although the term 'party' is used in Rule 15(a)(1), the term 'parties' is also used in Rule 15(a)(2), which applies explicitly to detained material witnesses. Rule 46(h)(2),[6] which deals with the biweekly reports the

---

[6] Fed. R. Crim. P. 46(h)(2) provides:

(2) Reports. An attorney for the government must report biweekly to the court, listing each material witness held in custody for more than 10 days pending indictment, arraignment, or trial. For each material witness listed in the report, an attorney for the government must state why the witness should not be released with or without a deposition being taken under Rule 15(a).

The Targets suggest that the allowance of pre-indictment depositions pursuant to 46(h) and 15(a)(2) for material witnesses is evidence that no such procedure is available for undetained material witnesses. But this simplistic suggestion ignores the fact that 46(h) is a rule about reports to the Attorney General; it was designed to reduce the number of detained individuals not charged with criminal conduct. Rule 46, Advisory Committee Notes

government must provide for detained witnesses, makes clear that material witnesses may be held, and depositions may occur, "pending indictment."[7]  It appears to this Court that the use of the terms "pending indictment" in Rule 46(h) gives a clear indication that the drafters of the modern Rule 15(a) in the 1970s conceived of situations where witnesses, whether detained or not, could be deposed prior to an indictment whether in lieu of detention or because of likely unavailability.   Therefore, the formalistic reading of the word 'party' advanced by the Targets (and utilized in both Hayes and McHan) appears too restrictive.

The Targets point to the history of Rule 15(a) as a reason to deny the government's motion; and while that history gives some superficial support to their argument, a deeper look actually makes it clear that government position is correct, and pre-indictment depositions were contemplated by the revision to Rule 15(a) in 1974.

---

1966 Amendment.  The point here is that 46(h) gives recognition to the fact that depositions may be called for pre-indictment, and in this recognition at least, there is no real difference between a 15(a)(2) and a 15(a)(1) deposition.  The sockdolager on this point is the actual history of Rule 15 discussed below.

[7] The government indicated in passing at the hearing that perhaps it should have pursued this avenue (the material witness approach) to achieve its ends.  The Court sees no reason to address whether this procedure may be available because the issue is not before the Court and §§ 3142 and 3144 have not been sufficiently briefed by the parties.

When the Federal Rules of Criminal Procedure were first adopted in the 1940s, long before the split between 15(a)(1) and (a)(2) was fashioned, only a defendant was authorized to take depositions per Rule 15(a).   Lester B. Orfield, <u>Depositions in Federal Criminal Procedure</u> 9 S.C. L.Q. 376 (1956-57); <u>see</u> Fed. R. Crim. P. 15 Advisory Commitee Notes, 1944 Adoption.[8]   In its original form, the Rule clearly contemplated only post-indictment depositions, and only by the defendant.   The language "after the filing of an indictment or information" did not survive the later development of Rule 15, and its absence speaks volumes.

During the 1940s, as the Rules were being developed by the Supreme Court Advisory Committee, numerous proposals were made to allow the government to depose witnesses in criminal proceedings, in order to preserve testimony for trial on an equal footing with

---

[8] Originally, Rule 15(a) provided:

If it appears that a prospective witness may be unable to attend or prevented from attending a trial or a hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice, the court at any time <u>after the filing of an indictment or information</u> may upon motion of a defendant and notice to the parties order that his testimony be taken by deposition . . . If a witness is committed for failure to give bail to appear to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may direct that this deposition be taken, After the deposition has been subscribed the court may discharge the witness.

Fed. R. Crim. P. 15(a) (reprinted in Orfield, <u>supra</u>, at 376) (emphasis added).

14

defendants.   It   was   vigorously   debated,   however,   "whether depositions taken by the government would be constitutional." Orfield, supra at 378.   Commentators, practitioners, and judges lined up on both sides of the issue during the drafting phase, which occurred over some years.  Ultimately, the Advisory Committee proposal to the Supreme Court allowed for government depositions; but, these suggestions were rejected by the Court, and not included in the final Rule submitted to Congress.  See id.

Orfield notes that the second draft of the Rules of Criminal Procedure, dated January 12, 1942, attempted to deal with the issue of criminal depositions in Rule 57.  During these early years, the Criminal Rules referenced the Rules of Civil Procedure for many mechanical details.   One notable exclusion, Orfield notes, was "Civil Rule 27 . . . because it relates to depositions to perpetuate testimony taken before the institution of an action and therefore is not germane to criminal procedure."  Id. at 379; see also In re Application of Eisenberg, 654 F.2d 1107, 1113 n.9 (5th Cir. 1981) ("[T]here is no rule in criminal procedure analogous to Rule 27 by which a deposition can be taken by a potential defendant prior to the initiation of prosecution.  Depositions of a party's own witness are allowed during the pendency of a criminal action only when preservation of the testimony is in the interest of justice due to exceptional circumstances.").  Although proponents of  government deposition authority were unsuccessful in the early

years, Orfield notes that "seventeen states [had] conferred the right by statute." Id. at 398.   And so there existed, for over twenty-five years, from the adoption of the Rules until 1970, no government avenue to request depositions in federal criminal matters.   The right to request depositions belonged only to defendants and explicitly was limited to after the filing of an indictment or information.

It was not until the passage of the Organized Crime Control Act of 1970 that the government began to make headway in its quest for the authority to take depositions.   As part of that legislation, 18 U.S.C. § 3503(a) (Title VI) allowed the government to take depositions in a criminal case when a defendant was alleged to have participated in organized criminal activity.   Title VI retained the language of then-applicable Rule 15, limiting the availability of depositions to "after the filing of an indictment or information."   See 41 A.L.R. Fed. 764, Depositions to preserve testimony under 18 U.S.C.A. § 3503 (1979).

Beginning again with the 1971 preliminary draft of proposed changes to the criminal rules, the Advisory Committee attempted to codify into the Rules the government right to depose.   In the 1971 draft, however, the limitation "after the filing of an indictment or information" was eliminated. Committee on Rules of Practice and Procedure, 52 F.R.D. 409, 438 (1971).   The "redlined" version of Rule 15(a) that appears in the proposed rule clearly strikes this

limitation;[9] but the notes accompanying the draft give little insight as to the Advisory Committee's reasoning. The notes clearly refer to the passage of the Organized Crime Control Act of 1970 as the impetus, and leave little doubt that the intent of the Committee was to sweep somewhat broader, while also providing certain procedural protections to deponents. Excerpts from the Advisory Committee notes reveal some (but not much) of the thinking of the Committee:

> The proposed revision of rule 15 authorizes the taking of depositions by the government. Under present rule 15 only

----

[9] In April 1971, the Committee on Rules of Practice and Procedure submitted a preliminary draft of proposed amendments to the Federal Rules of Criminal Procedure for the United States District Courts. 52 F.R.D. 409 (1971). The proposed amendments for Rule 15 Depositions provided:

> (a) WHEN TAKEN. ~~If it appears that a prospective witness may be unable to attend or prevented from attending a trial or hearing, that his testimony is material and that it is necessary to take his deposition in order to prevent a failure of justice,~~ *Whenever due to special circumstances of the case it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved for use* at trial, the court ~~at any time after the filing of an indictment or information~~ may upon motion of ~~a defendant~~ *such party* and notice to the parties order that his testimony of such witness be taken by deposition and that any designated ~~books papers, documents or tangible objects,~~ *book, paper, document, record, recording, or other material* not privileged, be produced at the same time and place. If a witness is committed for failure to give bail to appear to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness. <u>Id.</u> at 438-39.

a defendant is authorized to take a deposition. <u>The revision is similar to Title VI of the Organized Crime Control Act of 1970</u>. The principal difference is that [sic] Title VI (18 U.S.C. § 3503) limits the authority of the government to take depositions to cases in which the Attorney General certifies that the "proceeding is against a person who is believed to have participated in an organized criminal activity." <u>This limitation is not contained in proposed rule 15</u>. Dealing with the issue of government depositions so soon after the enactment of 18 U.S.C. § 3503 is not inconsistent with the congressional purpose. On the floor of the House Congressman Poff, a principal spokesman for the proposal, said that the House version was not designed to "limit the Judicial Conference of the United States in the exercise of its rulemaking authority . . . from addressing itself to other problems in this area or from adopting a broader approach." 116 Cong. Rec. H9709 (Oct. 7, 1970, daily ed.).

52 F.R.D. at 442-43 (emphasis added).

In 1974, after years of rebuffing the proposed change, the Supreme Court proposed a myriad of amendments to the Federal Rules of Criminal Procedure, one of which was to allow both parties (the government and the defendant) to move to take depositions in a criminal proceeding. H.R. Rep. No. 94-247, at 10 (1975). The proposed amendments passed, and the current version of Rule 15 reflects those changes, clearly establishing the government's authority to request depositions in criminal proceedings.[10] <u>See</u> Fed. R. Crim. P. 15(a). Most interesting and relevant to the task at hand is that "after the filing of an indictment or information" was deleted from the rule in the 1971 draft.

---

[10] In 2002, long after Rule 15 was amended to include the government, 18 U.S.C. § 3503 was repealed as "duplicative authority." 116 Stat. 1758, 1809.

The sum of this history seems to be that with the passage of the Organized Crime Control Act in 1970 the government was first empowered to take depositions. This was a limited power, as it included both a post-indictment or information limitation, and a requirement that the Attorney General certify the defendant was believed to be involved in organized criminal activity. Then, in 1971 the Advisory Committee, responding to the Organized Crime Control Act, attempted to again introduce the concept of government depositions into Rule 15 (an effort that began in the 1940s, as discussed above). In drafting the proposal, however, the Advisory Committee eliminated both the organized crime certification and the post-indictment or information requirement. The Committee gave little explanation regarding these specific aspects of the rule change. Moreover, the Committee draft restructured Rule 15 to incorporate the "special circumstances" and the "interests of justice" (a slight rewording of the prior rule) requirements.

The Supreme Court, after initially rejecting these changes, proposed them to Congress as part of the 1974 Rules Amendment, and Congress, in due course, adopted the proposed changes, again with little in the way of explanation on the critical point in question. The bottom line is the language was eliminated from the Rule in 1974.[11]

---

[11] There is one historical anomaly worth mentioning, although it does not change the Court's analysis or conclusion. It appears that from 1974 through 2002, the year the Organized Crime Control

The Targets take from this history that the Supreme Court never intended to allow pre-indictment depositions; that, in fact, the allowance of a prosecutorial vehicle to preserve testimony was expected by the Court to be a very circumscribed grant of authority.   While not a completely unreasonable reading of the development of Rule 15(a), it is not the most reasonable reading of the history.   The better reading of this history is that the Court, in finally adopting the changes supported by the Rules Committee, intended to give the authority to conduct depositions (in both material witness situations and other exceptional circumstances) to both the government and defendants/targets, subject to the oversight of the district court.   In fact, to agree with the Targets would be to effectively put back into the rule a limitation taken out by the Supreme Court and Congress.   This may be good policy, but it should not be judicially imposed policy in the face of this clear history.

Target counsel persuasively argued at the hearing that if the shoe were on the other foot, and the Targets were seeking to preserve testimony during an ongoing grand jury investigation, then the government would oppose and the Court would deny their request

---

Act was repealed, both Rule 15 (containing the government right to depose with no post-indictment limitation, nor subject matter limitation) and Title VI of the Organized Crime Control Act (with these latter limitations) were operative.   How this could work is by no means clear to the Court; but, with the repeal of the Organized Crime Control Act, the anomaly becomes little more than a historical curiosity.

in a heartbeat.   The government claimed at hearing that in the circumstances of this case it would not oppose any such effort.   It is hard to imagine the scenario, but in any event this does little to elucidate the meaning of the rule.

Finally, the Targets argue that in spite of the government's assurances to the contrary, the proposed depositions are in fact discovery depositions not trial testimony preservation.   Therefore, they say, the proposed depositions violate the clear rule against pretrial discovery.   Moreover, the Targets claim that the Court may inadvertently march [redacted] if it attempts  to control how the government may use the deposition testimony if allowed. [redacted]; see United States v. Williams, 504 U.S. 36, 55 (1992) ("courts have no authority to prescribe such a duty [on a prosecutor] pursuant to their inherent supervisory authority over their own proceedings") and In re Impounded, 241 F.3d 308 (3d Cir. 2001) (holding courts may not impose substantive limitation on the power of the grand jury to issue subpoenas, nor place the initial burden on the government to prove the validity of its subpoenas).

Once again, counsels' arguments are well taken, but ultimately unpersuasive.   As the Order below makes clear, the Court believes it can formulate an order that 1) holds the government to its word that the proposed depositions are intended for trial (and not presentation to the grand jury); 2) that ensures the playing field

is leveled (as much as feasible) to replicate the trial setting; and 3) does not interfere with the grand jury function.

In light of the plain language of Rule 15(a), its history, as well as the analysis discussed above, the Court finds it has the discretion to grant the motion, and the government has the authority to conduct pre-indictment depositions to preserve trial testimony. The government, however, must still meet its burden as the moving party to show that "exceptional circumstances" mandate this action and that it is "in the interests of justice" to do so.[12] The Court is cognizant that "the language of the rule suggests that the discretion is not broad and should be exercised carefully." Mann, 590 F.2d at 365.

Exceptional Circumstances

Unavailability

"[I]t nevertheless has been established that when the district court exercises its discretion in ruling on a Rule 15(a) motion, considerations of materiality (of the testimony) and unavailability (of the witnesses) remain critical." United States v. Ismaili, 828 F.2d 153, 159 (3d Cir. 1987) (citing United States v. Johnson, 752 F.2d 206, 209 (6th Cir. 1985); United States v. Bello, 532 F.2d 422, 423 (5th Cir. 1976); United States v. Sun Myung Moon, 93

_____

[12] This is essentially the same test utilized for depositions of material witnesses in lieu of arrest and detention under Rule 15(a)(2). See United States v. Drogoul, 1 F.3d 1546, 1552 (11th Cir. 1993).

F.R.D. 558 (S.D.N.Y. 1982), cert. denied, 466 U.S. 971, 104 S.Ct. 2344, 80 L.Ed.2d 818 (1984)).  The government made the following proffer:

> [redacted]

The exhibits presented to the Court include various doctors' notes and lists regarding the medications that the potential witnesses are taking.  For example, Dr. Rosado, attending physician to [redacted], states that "[redacted] is a 79 y/o patient . . . with newly diagnosed stage IV Non-Small Lung Cancer metastaic to the adrenal.  As per his multiple co-morbities, his advanced age and his borderline performance status he is [a] candidate to Best supportive Care and chemotherapy is not recommended.  His expected survival is in [the] months and when his symptoms get worse, he will be [a] candidate for hospice care."  Similarly, the government proffers a list by [redacted] physician outlining his condition, which indicates that his time is limited.  Additional documentation is provided for [redacted], [redacted], [redacted], and [redacted].

One of the Targets in supplemental briefing argues strongly that the government has failed to meet its burden here.  He contends that the medical records are scant, the proffer replete with hearsay, and the assertions are nothing more than government agents' speculation.  But the issue is not whether the Court believes the witnesses will die within the next week or two; rather

it is whether there is a likelihood that they will be available for trial.

Unavailability may occur certainly because of death, but may also be caused by severe medical condition that prohibits attendance at trial, or affects memory or speech. Based upon the government's proffer outlined above, the Court concludes with little difficulty that the potential witnesses will, in all probability, be unavailable should a trial come to pass at some point in the future.

Rule 804(a) of the Federal Rules of Evidence defines unavailability of a witness to include an inability "to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity." The First Circuit has used this test in the context of determining the propriety of admitting video deposition testimony per Rule 15(e) of two elderly and infirm witnesses in Keithan, and other courts have also agreed with this approach. See e.g., Laurie L. Levenson, Federal Criminal Rules Handbook, 213 n. 17 (2009) (citing United States v. Sudeen, 2002 WL 31427364 (E.D. La. 2002) (witness who was in poor health and resided in Poland, and had already traveled to the United States but could not return for rescheduled trial date, could be deposed); United States v. Donaldson, 978 F.2d 381 (7th Cir. 1992) (witness who recently gave birth and had been hospitalized with chest pains was considered unavailable and justified use of

videotaped deposition); <u>United States v. Keithan</u>, 751 F.2d 9 (1st Cir. 1984) (government witness' advanced age constituted exceptional circumstances); <u>United States v. Terrazas-Montano</u>, 747 F.2d 467 (8th Cir. 1984) (exceptional circumstances existed when witnesses went on dangerous hunger strike); <u>Furlow v. United States</u>, 644 F.2d 764 (9th Cir. 1981) <u>cert. denied</u>, 454 U.S. 871 (1981) (witness' illness warranted deposition); and <u>United States v. Dunseath</u>, 1999 WL 165703 at *1-2 (S.D.N.Y. 1999) (exceptional circumstances existed when witness was 86 years old and the legal guardian for his elderly wife who was suffering from advanced Alzheimer's disease)).

It is undisputed that the potential witnesses are all at varying stages of terminal illness, and have been (in some cases) for several years outliving their prognosis. They are (apparently) the last nine people with direct knowledge of what transpired, out of an original 112 who participated. Of course, it is no tragic coincidence that this is the case; the government alleges that the witnesses' imminent death was precisely why they were used as "measuring lives" to begin with. The fact that many of the potential witnesses have outlived their doctor's predictions of life expectancy and are alive today, is, for the government, a case-making stroke of luck – but one that only yields its potential benefit if the requested depositions are allowed. For these reasons, the Court concludes that the unavailability prong is met.

## Materiality

At hearing, the government noted that although its legal theories are still in a nascent stage, the testimony of these remaining individuals was determined to be of material significance.  Materiality is defined in Blacks Law Dictionary as "having some logical connection with the consequential facts."  In the context of basic evidentiary rules defining relevance, "[m]ateriality concerns the fit between the evidence and the case. It looks to the relation between the propositions that the evidence is offered to prove and the issues in the case . . . . What is 'in issue' . . . is determined mainly by the pleadings, read in the light of the rules of pleading and controlled by the substantive law."  1 Kenneth S. Broun, <u>McCormick on Evidence</u>, § 185 (6th ed. 2006).

The government proffered that the testimony from these witnesses that needed to be preserved for any future prosecution included: what representations the targets made to them to induce them to sign the consent forms, whether they understood they were being used as measuring lives, and whether they were told the money they were receiving was for charity.  It is unclear whether any other healthy witnesses were present when the exchanges between the targets and the terminally ill witnesses took place.  However, even if such individuals were present, this would not affect the materiality calculus.  While it is true that this calculation is

more difficult to make where there is not yet a "case" or an indictment to base the comparison upon, the Court concludes based upon the government's representations that the testimony of these individuals is in all likelihood material to the determination of whether fraudulent conduct occurred.

## The Interests of Justice

The next consideration, whether the interests of justice are best served in granting the government's motion, raises for the Court a difficult question because it arises within the confines of a pre-indictment, post-<u>Crawford</u> setting. Permitting pre-indictment depositions places citizens, who are under the spotlight of investigation but not yet formally accused, in the dangerous position of having to defend against what is intended to be trial testimony, before any formal adversary proceeding has been triggered, and without the benefit of knowing precisely the basis of the government's allegations or its legal theories. Further, once the trigger of an indictment has been pulled, other benefits (such as discovery and the timeline of the Speedy Trial Act) come into play. It is debatable whether the Targets' Sixth Amendment rights can be afforded full respect in a context such as this, and counsel for the Targets ask if the Sixth Amendment right has even attached. The government appears to concede it has; but the Targets are understandably skeptical and suspicious that their

position will change later on.  But there is a remedy, if one is required, in the form of a motion to suppress before trial.

While the Sixth Amendment implications are serious, this Court cannot be insensitive to the facts at hand.  [redacted]  The Court has concluded that the Rule does apply, and thus, the government should have the opportunity to preserve the testimony.  A potential criminal scheme targeting terminally ill individuals should not escape prosecution simply because of the foresight to utilize the dying, none of whom ever will be able to take the stand.  Furthermore, the government motion seeks to preserve the potential defendants' Crawford rights, by force apparently, if only for its self-interest in assuring the admittance of the testimony at trial.

This is without question a close call.  The Court is reminded that the First Circuit has stated:

> we do not mean to suggest that courts should be fearful to exercise their proper fully informed discretion to allow a deposition.  When the question is close a court may allow a deposition in order to preserve a witness' testimony, leaving until trial the question of whether the deposition will be admitted as evidence.  At that time, if the witness proves unavailable, the court may have before it a more complete information base.  F. R. Crim. P. 15(e) accords no presumption of admissibility simply because the deposition was taken.  The party requesting the deposition cannot escape its burden of taking all reasonable steps to bring to trial a witness whose testimony the party chooses to present.  And the major harm to the other party's interests does not occur unless the deposition is admitted.

Mann, 590 F.2d. 361 at 366-67.  The words of the Mann court are about the best guidance this Court could hope for in resolving this

28

difficult issue. Under the peculiar circumstances of this case, unlikely as it is to pass this way again, the Court finds that the government has met its burden and the balance regarding the interests of justice must tip in the government's favor.

Conclusion and Order

In granting the government's motion, the Court nevertheless intends to narrowly draft an order appropriate to the circumstances of this case. Therefore it is ordered as follows:

1.   The Government's motion pursuant to Rule 15(a)(1) is GRANTED, subject to the conditions set forth below;

2.   All Targets shall be offered the opportunity to be represented at the depositions and each shall be afforded the opportunity to examine the witness.

3.   The Government must make a full disclosure to the Targets of all materials which would be disclosed in the usual course under Fed. R. Cim. P. 16 including any and all <u>Brady</u> and <u>Jencks</u> statements;

4.   Upon completion of some or all of the depositions, any Target may request an opportunity to re-depose a witness if circumstances warrant;

5.   The Court reserves for trial (whether before this or another District Judge) any issues with respect to admissibility of the deposition (including Motions to Suppress);

6.  While the Court may not order that the Government refrain from using such depositions in the Grand Jury, the Court takes the government counsel at their word that this is not the purpose and intent of the depositions; use of the depositions at Grand Jury therefore would subject counsel to the remedial and disciplinary authority of this Court.

7.  All witnesses may be represented by counsel, if they wish, and as unlikely as the case may be, the government shall advise all deponents of their 5th Amendment rights if circumstances dictate, as if the witnesses were in the courtroom.

8.  The Court's order shall be stayed for 48 hours in order to allow the Targets to initiate an appeal.  The Stay shall then be lifted for witnesses [redacted] and [redacted], but stayed for five additional days for the remaining witnesses.

IT IS SO ORDERED.

_William E. Smith_
William E. Smith
United States District Judge
Date: 3/18/10

## THE UNITED STATES DISTRICT COURT
## FOR THE STATE OF RHODE ISLAND

IN RE GRAND JURY PROCEEDINGS   :          Misc. No. 09-84

## MOTION OF RAYMOUR RADHAKRISHNAN FOR
## ISSUANCE OF A PROTECTIVE ORDER

Now comes Raymour Radhakrishnan, an identified target in the above matter, and moves this

Court for a Protective Order pursuant to Federal Rule of Civil Procedure 26 (c) 1, said Order directing

that the deposition of ███████████ not go forward on April 16, 2010.

As grounds for this Motion it is the position of Mr. Radhakrishnan as follows:

███████████ was one of the original proposed deponents when the government first sought

permission from this Court to take pre-indictment depositions pursuant to Rule 15 (a) in September

2009.

Since that time the Government has taken several depositions; ███████████ has not been one

of them. His deposition was noticed and scheduled for January 20, 2010, however ███████ did not

appear. There was no explanation given and it was never shown that his failure to appear was health-

related; it appeared that it was ███████████ unwillingness to cooperate with the Government's request

that precipitated his non-appearance. Whatever the reason, shortly thereafter in late January, Attorney

Scott Kilpatrick was engaged to represent Mr. Pitocco.

The Government then communicated with counsel[1] that it wanted to take the deposition of ███

███████ on February 10, 2010 at Mr. Kilpatrick's office. On February 8, 2010 the Government advised

---

[1] Unless otherwise noted where communication between counsel is referenced or quoted in this Motion, particular emails
are being cited.

that ████████ had been hospitalized with pneumonia and the deposition would not go forward on February 10, 2010.

Several weeks passed with no word about ████████ approximately seven weeks later, on March 29, 2010, Mr. Vilker advised that ████████ health had improved and he circulated five dates in April that he, Mr. Vilker, was available to conduct this deposition. Those dates were: April 7 (after 2:00), April 8 (after 2:00), and April 14, 15, and 16.

The undersigned counsel for Mr. Radhakrishan responded in the affirmative to the afternoons of April 7th and 8th, as well as April 15th and April 16th. Based upon the responses from all counsel, the government chose April 16th to take ████████ deposition and this was communicated to counsel later in the day on March 29th through an email from Mr. Vilker.

On the morning of March 31st the undersigned counsel for Mr. Radhakrishnan alerted Mr. Vilker and all counsel to the fact that Mr. Radhakrishnan was not available on April 16th and requested the postponement of the deposition to any date thereafter, from April 19th on.

Mr. Magratten, who is counsel for Western Reserve Life and does not represent ████████ originally responded on March 31st to this request by stating that ████████ was "quite ill".

Importantly for the purposes of this Motion, even after receiving this information, Mr. Vilker did not respond by saying ████████ health necessitated the taking of the deposition on April 16th and not a day later; instead Mr. Vilker suggested through an email that either April 21st or April 23rd would be possible dates and he circulated them to counsel.

All counsel responded to Mr. Vilker on March 31st, including Mr. Kilpatrick as counsel for ████ ████████ as well as Mr. Magratten, who stated that both of those dates of April 21st and April 23rd "work for us".

It was therefore decided that April 23rd would be agreeable for all concerned and the deposition was scheduled for April 23rd. On April 2, 2010 at 9:23 a.m. Mr. Vilker indicated that he was re-noticing the deposition for April 23rd at 10:00 a.m.

Then, out of the blue, Mr. Kilpatrick advised that he was going to be out of town at a "function" on April 23rd and would not be available, to which Mr. Vilker then responded by saying that "Given all of these factors and the precarious state of Mr. Pitocco's health, we will proceed with his deposition on April 16th at 10:00 a.m."

In support of this Motion for a Protective Order it is interesting to note that the first time ▮▮▮▮ ▮▮▮▮ "precarious state of health" is ever mentioned by Mr. Vilker was after Mr. Kilpatrick alerted everyone to the fact that he was not available on April 23rd. Prior to that in all of the scheduling discussions and emails, ▮▮▮▮ health was not referenced as being "precarious" and even when Mr. Magratten referenced ▮▮▮▮ health on March 31st, Mr. Magratten also advised that he, Mr. Magratten, was available for the deposition on either April 21st and 23rd.

Mr. Radhakrishnan moves this Court to issue an order that the deposition not go forward on April 16th, as Mr. Radhakrishnan is out of state, is unable to attend, and has attended in person each of the previous depositions both in state and out of state. In order to effectively confront and cross-examine ▮▮▮▮ for a deposition being taken under Rule 15 (a) Mr. Radhakrishnan needs to be present.

It is furthermore Mr. Radhakrishnan's position that the Government has made no showing of the medical need to move the deposition back from the agreed upon date of April 23rd to the earlier date of April 16th and that they should be required at a minimum to produce medical evidence or opinions that state that this deposition must go forward on April 16th and no later.

As stated, Mr. Radhakrishnan and his counsel are available to attend the deposition of Mr.

Pitocco on April 19th or any date thereafter, including April 23rd , and this had been agreeable to all

concerned, including Mr. Vilker.

WHEREFORE, Mr. Radhakrishnan requests that this Honorable Court issue a Protective Order

which prohibits the deposition of Anthony Pitocco from taking place on April 16, 2010.

Respectfully submitted,

RAYMOUR RADHAKRISHNAN

By His Attorney,


/s/ Jeffrey B. Pine
Jeffrey B. Pine, Esq. #2278
321 South Main Street
Providence, Rhode Island 02903
401-351-8200

## CERTIFICATION

I hereby certify that this Motion was filed electronically on the 5th day of April 2010, and a
copy was mailed to Lee Vilker Esq. AUSA, 50 Kennedy Plaza, Providence, Rhode Island 02903 and
the following attorneys:

Robert Flanders Esq.
Hinckley Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

Anthony Traini Esq.
56 Pine St.
Suite 200
Providence, RI 02903

John A. McFayden Esq.
101 Dyer St.
Providence, RI 02903

Scott Kilpatrick Esq.
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Ste. 1313
Providence, RI  02903

Brooks Magratten Esq.
Pierce Atwood LLP
10 Weybosset St.
Suite 400
Providence, RI 02903

/s/ Jeffrey B. Pine

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| IN RE GRAND JURY PROCEEDINGS | MISC. NO. 09-84 |
| | UNDER SEAL |

## CERTIFICATE OF SERVICE

    I hereby certify that ▮▮▮▮▮▮▮▮▮▮ *Objection to Government's Objection to Motion For Protective Order By Raymour Radhakrishnan and Incorporated Motion To Strike and To Limit Dissemination of Statements* was filed electronically on the 7th day of April, 2010, and copies served by email and regular mail to:

Lee H. Vilker, Esq.
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
lee.vilker@usdoj.gov

John P. Mcadams, Esq.
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
John.P.McAdams@usdoj.gov

Robert Flanders, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903
rflanders@haslaw.com

Anthony Traini, P.C.
56 Pine Street, Suite 200
Providence, RI 02903
amt@atrainilaw.com

Jeffrey Pine, Esq.
321 South Main Street
Providence, R.I. 02903
jbp@pinelaw.com

Scott Kilpatrick, Esq.
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Ste. 1313
Providence, RI 02903
JSKilpatrick@cck-law.com

Brooks Magratten, Esq.
Pierce Atwood LLP
10 Weybosset Street, Suite 400
Providence, RI 02903
bmagratten@PierceAtwood.com

/s/ John A. MacFadyen

2

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF RHODE ISLAND

**IN RE GRAND JURY PROCEEDINGS**

**MISC. NO. 09-84**

**UNDER SEAL**

████████████████████ **OBJECTION TO GOVERNMENT'S
OBJECTION TO MOTION FOR PROTECTIVE ORDER BY
RAYMOUR RADHAKRISHNAN AND INCORPORATED MOTION
TO STRIKE AND TO LIMIT DISSEMINATION OF STATEMENTS**

███████████ hereby joins in and adopts ███████ objection to the government's objection to Mr. Radhakrishnan's motion for protective order. The arguments made in █████████ motion apply equally to ███████████ and will not be restated here.[1]

████████████ also joins in ███████████ requests that the challenged statements be stricken from consideration, and that all recipients of the government's pleading be ordered not to disseminate it further, including to their clients.

Respectfully submitted,

████████████████████

By his attorney,
/s/ Anthony M. Traini
Anthony M. Traini (#4793)
56 Pine Street – Suite 200
Providence, RI 02903
Tel. (401) 621-4700
Fax. (401) 621-5888
amt@atrainilaw.com

---

[1] ████████████ was mentioned in one of the earlier depositions, but not in a context that materially affects the arguments made in Mr. ███████ motion.

## CERTIFICATION

I hereby certify that this document was filed electronically on the 7th day of April, 2010, and copies served by facsimile and mail to:

Robert Flanders, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street, 3rd Floor
Providence, RI 02903

Jeffrey Pine, Esq.
321 South Main Street
Providence, R.I. 02903

Scott Kilpatrick, Esq.
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Ste. 1313
Providence, RI 02903

Brooks Magratten, Esq.
Pierce Atwood LLP
10 Weybosset Street, Suite 400
Providence, RI 02903

Lee H. Vilker, Esq.
John McAdams, Esq.
Assistant United States Attorneys
50 Kennedy Plaza – 8th Floor
Providence, RI 02903

## UNITED STATES DISTRICT COURT
### DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| ) | |
| ) | |
| IN RE GRAND JURY PROCEEDINGS   ) | Misc. No. 09-84 / WS |
| ) | |
| ) | |
| ) | **MATTER UNDER SEAL** |
| ) | |

### NOTICE OF APPEARANCE

I, Matthew H. Parker, hereby enter my appearance on behalf of Joseph A. Caramadre.

*/s/ Matthew H. Parker*
Matthew H. Parker (#8111)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI  02903
Tel:  (401) 274-2000
Fax:  (401) 277-9600
Email:  mparker@haslaw.com

DATED:  April 7, 2010

### CERTIFICATION

I hereby certify that on April 7, 2010, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

*/s/ Matthew H. Parker*

60197-138559
# 1044723

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| ) | |
| ) | |
| IN RE GRAND JURY PROCEEDINGS   ) | Misc. No. 09-84-S |
| ) | |
| ) | **MATTER UNDER SEAL** |
| ) | |
| ) | |

### JOSEPH A. CARAMADRE'S OBJECTION TO GOVERNMENT'S OBJECTION TO MOTION FOR PROTECTIVE ORDER BY RAYMOUR RADHAKRISHNAN AND INCORPORATED MOTION TO STRIKE AND LIMIT DISSEMINATION OF STATEMENTS

Joseph A. Caramadre ("Mr. Caramadre") hereby joins in and adopts by reference ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮ objection to the Government's objection to Raymour Radhakrishnan's motion for a protective order.

Mr. Caramadre also joins in ▮▮▮▮▮▮ requests that the challenged statements be stricken from consideration, and that all recipients of the Government's pleading be ordered to not disseminate it further, including to their clients.

Respectfully submitted,

JOSEPH A. CARAMADRE
By his Attorneys,

*/s/ Robert G. Flanders, Jr.*
Robert G. Flanders, Jr., Esq. (#1785)
Matthew H. Parker, Esq. (#8111)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel. (401) 274-2000
Fax. (401) 277-9600
rflanders@haslaw.com
mparker@haslaw.com

Dated: April 8, 2010

60197-138559
# 1045116-v1

## CERTIFICATE OF SERVICE

I hereby certify that this document was filed electronically on the 8th day of April, 2010, and copies were served by facsimile and mail to:

Anthony M. Traini, Esq.
Anthony M. Traini, P.C.
56 Pine Street – Suite 200
Providence, RI 02903

John A. MacFadyen, Esq.
MacFadyen, Gescheidt & O'Brien
101 Dyer Street, 3rd Floor
Providence, RI 02903

Jeffrey B. Pine, Esq.
Jeffrey B. Pine, P.C.
321 South Main Street
Providence, R.I. 02903

J. Scott Kilpatrick, Esq.
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Ste. 1313
Providence, RI 02903

Brooks R. Magratten, Esq.
Michael J. Daly, Esq.
Pierce Atwood LLP
10 Weybosset Street, Suite 400
Providence, RI 02903

Lee H. Vilker, Esq.
John P. McAdams, Esq.
Assistant United States Attorneys
50 Kennedy Plaza – 8th Floor
Providence, RI 02903

/s/ Robert G. Flanders, Jr.

60197-138559
# 1034077-v1

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| IN RE GRAND JURY PROCEEDINGS | ) ) ) ) ) ) ) | Misc. No. 09-84 / WS <br><br> **MATTER UNDER SEAL** |

## NOTICE OF APPEARANCE

I, Eric S. Giroux , hereby enter my appearance on behalf of Joseph A. Caramadre.

/s/ *Eric S. Giroux*
Eric S. Giroux (#7420)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI  02903
Tel:  (401) 274-2000
Fax:  (401) 277-9600
Email:  egiroux@haslaw.com

DATED:  April 28, 2010

## CERTIFICATION

I hereby certify that on April 28, 2010, a copy of foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

/s/ *Eric S. Giroux*

60197-138559
# 1048664

**FILED UNDER SEAL**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

---

IN RE GRAND JURY PROCEEDINGS                    Misc. No. 09-84

---

### NOTICE OF ENTRY OF APPEARANCE

I, Michael J. Lepizzera, Jr., hereby enter my appearance as co-counsel for Joseph Caramadre in the above-entitled matter.

I, James T. McCormick, hereby enter my appearance as co-counsel for Joseph Caramadre in the above-entitled matter.

Respectfully submitted,
JOSEPH CARAMADRE
By His Attorney
/s/ Michael J. Lepizzera, Jr.
Michael J. Lepizzera, Jr. (#4995)
Lepizzera & Laprocina, Counsellors at Law, Ltd.
117 Metro Center Boulevard, Suite 2001
Warwick, Rhode Island 02886
Tel. (401) 739-7397
Fax (401) 691-355
Email: mlepizzera@leplap.com

Respectfully submitted,
JOSEPH CARAMADRE
By His Attorney
/s/ James T. McCormick
James T. McCormick (#2614)
McKenna & McCormick
128 Dorrance Street Suite 330
Providence, Rhode Island 02903
Tel. (401) 831-2970
Fax (401) 751-1797
Email: mclaw@choiceonemail.com

## NOTICE OF WITHDRAWAL OF APPEARANCE

I, Robert G. Flanders, Jr., along with the law firm of Hinckley, Allen & Snyder hereby

withdraw their appearance as counsel for Joseph Caramadre in the above-entitled matter.

Respectfully submitted,

/s/ Robert G. Flanders, Jr.
Robert G. Flanders, Jr., Esq. (#1785)
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza Suite 1500
Providence, Rhode Island 02903
Tel. (401) 274-2000
Fax (401) 277-9600
Email: rflanders@haslaw.com

### Certificate of Service

I hereby certify that on this 26th day of March, 2012, I e-mailed a true and accurate copy

of the within Notice to counsel of record in this matter.

/s/ Michael J. Lepizzera, Jr.

2

## IN THE UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF RHODE ISLAND

---

IN RE GRAND JURY PROCEEDINGS

MISC. NO. 09-84

UNDER SEAL

---

## ▇▇▇▇▇▇▇▇▇▇▇▇ OBJECTION TO GOVERNMENT'S
## OBJECTION TO MOTION FOR PROTECTIVE ORDER BY
## RAYMOUR RADHAKRISHNAN AND INCORPORATED MOTION
## TO STRIKE AND TO LIMIT DISSEMINATION OF STATEMENTS

▇▇▇▇▇▇▇▇ objects to two assertions in the *Government's Objection to Motion For Protective Order By Raymour Radhakrishnan (GO)*. He asks this Court to strike them from any consideration of the questions presented in this case and to order all recipients not to disseminate them further.

Responding to a motion for protective order filed by Raymour Radhakrishnan alone, the government has stated the following:

- It was the *targets* – including Radhakrishnan – who formulated a scheme aimed at deceiving terminally ill individuals. *GO* at 3-4 (emphasis supplied).

- "It was *their* doing that brought us to the point at which the parties are forced to juggle their schedules so that the testimony of a cancer-stricken patient can be taken before he dies." *Id.* (emphasis supplied).

In no uncertain terms, the government is asserting that the targets, presumably including ▇▇▇▇▇▇▇ have "formulated a scheme aimed at deceiving terminally ill individuals." No one has been indicted yet, much less convicted, but the government nevertheless makes these statements.

There are multiple reasons why these accusations, coming prior to the return of any charge, are inappropriate.

*First*, the government's position before this Court when it sought to take these depositions was that it did not know if a crime had been committed, much less whether any particular person was responsible. Hearing of September 17, 2009 at p. 35. Since that time, the government has taken some six depositions. In none of them has ███████████ name been mentioned. Consequently, the government's change in position regarding ███████████ seems likely to have been premised, not on the depositions themselves, but what it has learned through its grand jury investigation. This could raise questions under F.R.Crim. 6(e)(2)(B), particularly as the government has certified its *Objection* to counsel representing an adverse party in a civil case and to counsel for the witness in the proposed deposition.

This in turn points up the intrinsic problem of conducting depositions prior to indictment. Instead of the complete secrecy which ordinarily attends federal grand jury investigations, here we have a direct accusation made in advance of any charge which has been broadcast to an attorney representing a client who is currently suing ███████████.

*Second,* ███████████ has not objected to the scheduling of the Pitocco deposition. Consequently, the government's statements are not only inappropriate, but unnecessary.

Perhaps the government's accusations are no more than a slip of the electronic tongue – an overly dramatic rhetorical flourish to highlight its concern that the Pitocco deposition be taken posthaste. But this raises a further concern that ███████████ should be so casually swept into a dispute in which he had no part. "[T]here are opportunities of great oppression" when prosecutors can "sweep within the drag-net of conspiracy all those who have been associated in any degree whatever with the [principals]." *Krulewitch v. United States*, 336 U.S. 440, 446 n. 2 (1949), quoting Judge Learned Hand in *United States v. Falcone*, 109 F.2d 579, 581 (2nd Cir. 1940), *aff'd.*, 311 U.S. 205 (1940).

████████ asks that this Court strike these two statements from consideration and direct that the recipients not share them with anyone, including their clients.

Respectfully submitted,

████████

By his attorney,

/s/ John A. MacFadyen
John A. MacFadyen (#1209)
MacFadyen, Gescheidt & O'Brien
101 Dyer St., 3rd Floor
Providence, RI 02903
Tel. (401) 751-5090
Fax. (401) 751-5096
jmacfadyen@mgolaw.com

## CERTIFICATION

I hereby certify that this document was filed electronically on the 7th day of April, 2010, and copies served by email and regular mail to:

Robert Flanders, Esq.
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza
Providence, RI 02903
rflanders@haslaw.com

Anthony Traini, P.C.
56 Pine Street, Suite 200
Providence, RI 02903
amt@atrainilaw.com

Jeffrey Pine, Esq.
321 South Main Street
Providence, R.I. 02903
jbp@pinelaw.com

Scott Kilpatrick, Esq.
Chisholm Chisholm & Kilpatrick LLP
One Turks Head Place, Ste. 1313
Providence, RI 02903
JSKilpatrick@cck-law.com

Brooks Magratten, Esq.
Pierce Atwood LLP
10 Weybosset Street, Suite 400
Providence, RI 02903
bmagratten@PierceAtwood.com

/s/ John A. MacFadyen