UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **Criminal No. 11-186-S** |
| v. ) | |
| ) | |
| **JOSEPH CARAMADRE** ) | |
| ) | |
| and ) | |
| ) | |
| **RAYMOUR RADHAKRISHNAN** ) | |
| ) | |
| **Defendants.** ) | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT
## RADHAKRISHNAN'S MOTION TO SEVER

The United States of America, by and through its undersigned attorneys, hereby opposes Defendant Raymour Radhakrishnan's Motion to Sever. Because Radhakrishnan fails to meet the heavy burden required for severance, and because cautionary instructions by the Court will provide the relief that justice requires to ensure the defendants receive a fair trial, the motion should be denied.

## BACKGROUND

Defendants Joseph Caramadre and Raymour Radhakrishnan are charged in a sixty-six count indictment with wire fraud, mail fraud, conspiracy, identity fraud, aggravated identity theft, and money laundering. Caramadre is also charged with one count of witness tampering. Trial is scheduled to begin in November 2012 and expected

1

to last three to four months, with approximately seventy-five to one hundred witnesses.

The heart of the Indictment alleges that Caramadre developed a scheme, later joined by Radhakrishnan, to obtain millions of dollars from insurance companies and corporate bond issuers by obtaining the identities of terminally-ill people through material misrepresentations and omissions, in order to procure variable annuities and corporate bonds containing death benefit features.

Radhakrishnan now seeks a separate trial from Caramadre, claiming that (1) his defense is so antagonistic from Caramadre's defense that the jury will be required to choose one defendant over the other; (2) the defendants will be required to introduce otherwise inadmissible bad character evidence against one another; and (3) spillover evidence from the witness tampering charge against Caramadre will unfairly prejudice Radhakrishnan.

Radhakrishnan's claims are meritless and fail to meet the very high burden required for severance.  Cautionary instructions by the Court will provide the relief that justice requires to ensure the defendants receive a fair trial.

1. **Joint trial will promote the administration of justice**

There is a presumption in favor of joint trials in the federal system.  "Joint trials play a vital role in the criminal justice system." Zafiro v. United States, 506 U.S. 534, 537 (1993).  An

Indictment may join two defendants if they are alleged to have participated in "…the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count." Fed.R.Crim.P. 8(b); see also United States v. Nason, 9 F.3d 155, 158 (1st Cir. 1993).

Notwithstanding, the Court has discretion under Federal Rule of Criminal Procedure 14(a) "…to sever the defendants' trials, or provide any other relief that justice requires," if a joint trial appears to prejudice a defendant. Fed.R.Crim.P. 14(a).  The rule in the First Circuit is that:

> Persons who are indicted together should be tried together. This practice helps both to prevent inconsistent verdicts and to conserve resources (judicial and prosecutorial). Thus, when multiple defendants are named in a single indictment, a defendant who seeks a separate trial can ordinarily succeed in obtaining one only by making a strong showing of evident prejudice. The hurdle is intentionally high.

United States v. Pena-Lora, 225 F.3d 17, 39 (1st Cir. 2000). See also United States v. Flores-Rivera, 56 F.3d 319, 325 (1st Cir. 1995) (same); United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993)(same).

Prejudice in this context means "more than just a better chance of acquittal at a separate trial." United States v. DeCologero, 530 F.3d 36, 52 (1st Cir. 2001), quoting United States v. Boylan, 898 F.2d

230, 246 (1st Cir. 1990).  "This is a difficult battle for a defendant to win."  Id.  To overcome the presumption in favor of joint trial, a defendant must demonstrate "prejudice so pervasive that it would be likely to effect a miscarriage of justice."  United States v. Sotomayor-Vazquez, 249 F.3d 1, 17 (1st Cir. 2001).

Moreover, severance is especially disfavored in conspiracy cases because joint trials promote efficiency.  United States v. Trinh, 665 F.3d 1, 17 (1st Cir. 2011).  See also, e.g., United States v. Celestin, 612 F.3d 14 (1st Cir. 2010); United States v. Tejeda, 481 F.3d 44, 54 (1st Cir. 2007); Pena-Lora, 225 F.3d at 39-40.

Efficiency considerations and the due administration of justice are particularly relevant here, where trial is expected to last several months, dozens of witnesses will testify and almost all of the same evidence would be introduced at a separate trial of Radhakrishnan.  Although the Indictment alleges a scheme conducted by Caramadre over a nearly fifteen-year period, the nature of the scheme was such that the vast majority of witnesses with direct knowledge of Caramadre's actions before 2007 are dead.  Accordingly, only a handful of witnesses will testify regarding events which occurred before Radhakrishnan joined the scheme in 2007.  These include a man used by Caramadre as a measuring life in the mid 1990s who has miraculously survived AIDS, the widower of a woman Caramadre used as a measuring life in the mid 1990s, and the late Robert Mizzoni,

the childhood bus driver and Caramadre client who was deposed pursuant to Rule 15.  Two other witnesses will testify to events which occurred both before and after Radhakrishnan joined the scheme and would be necessary to testify at both trials.  If separate trials were held, the overwhelming majority of witnesses would need to testify at both trials and a second trial would not be meaningfully shorter than the first trial.  Joint trial will significantly conserve judicial and prosecutorial resources.

**2. Radhakrishnan and Caramadre's Defenses Are Not Truly Antagonistic**

Radhakrishnan claims that "his trial strategies are so antagonistic to that of Mr. Caramadre that it will likely cause undue prejudice." (Motion to Sever at 6).  Radhakrishnan indicates that his defense will be "that Mr. Caramadre was always in charge, he directed Mr. Radhakrishnan to perform certain acts, and assured him that all of the business they were conducting was legal." (Motion to Sever at 7).

As an initial matter, Caramadre's trial defense is unknown. "Speculative allegations as to possible prejudice do not meet the burden" required for a severance.  United States v. Porter, 764 F.2d 1, 13 (1st Cir. 1985).  Radhakrishnan speculates that Caramadre's defense strategy "will allege that Mr. Radhakrishnan took charge and did many things on his own for his own gain." (Motion to Sever at

7).  But Caramadre has not committed to a particular defense.  See *Caramadre's Reply Memorandum in Support of His Motion to Suppress Rule 15 Depositions* at 13-14 ("The blind strategy Caramadre was forced to literally wing may not be the actual trial strategy he will use at trial.  While trial counsel is not obligated to publicly divulge his overall defense to the Government's case, the Court should understand that there are other real defenses to this indictment which will exonerate the defendant of these charges").

Caramadre has publicly suggested a variety of defenses, from blanket denials to claiming through his media spokesperson that the case was "crafted and conceived by overzealous prosecutors and federal agents who were led astray by an insurance industry upset that it got beat at its own game." ("Lawyer bet on terminally ill to get death benefits," InvestmentNews.com, November 18, 2011)[1].  Caramadre himself told members of the media after his arraignment that "there were no forgeries, there was no deception." ("Two men plead not guilty to $25 million investment fraud", Associated Press, November 28, 2011).

Of course, Caramadre is free to use a different strategy at trial, including pointing the finger at Radhakrishnan.  But "mere finger pointing among co-defendants – i.e., the familiar 'he did it, not I' defense – normally is not ground for a severance."  Trinh, 665

---

[1] www.investmentnews.com/article/20111118/FREE/111119916.

F.3d at 19, quoting Pena-Lora, 225 F.3d at 33.  "The fact that defendants assert antagonistic defenses does not, per se, require severance, even if defendants are hostile or attempt to cast blame at each other."  United States v. McLaughlin, 957 F.2d 12, 18 (1st Cir. 1992).

Moreover, even assuming, *arguendo*, that Caramadre's trial defense will be to claim that Radhakrishnan "did many things on his own for his own gain," it does not follow that such a defense requires severance.  "In order to obtain a severance based on antagonistic defenses, the antagonism must be such that if a jury believes one defense, it is compelled to convict the other defendant."  Pena-Lora, 225 F.3d at 39 (internal quotations and citations omitted).  "The tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." United States v. Smith, 46 F.3d 1223, 1230 (1st Cir. 1995).  See also United States v. Angiulo, 897 F.2d 1169 at 1195 (1st Cir. 1990) ("To conclude that defenses are antagonistic, we must find that the jury's belief of one defendant's theory necessarily *compels* a finding that the other defendant is guilty.")(emphasis in original).

Such is not the case here.  The jury could well choose to believe both of the proffered defenses, i.e., that Caramadre was in charge, directed Radhakrishnan, and assured him everything was legal and also that Radhakrishnan "did things on his own for his own gain" and still

convict both defendants, acquit both, or convict one and acquit the other. Neither proffered defense will compel the conviction of either defendant. "Garden variety prejudice, which always occurs when more than one defendant or offense are tried together" does not warrant a severance. Tejeda, 481 F.3d 44 at 56.

In United States v. Serifino, 281 F.3d 327 (1st Cir. 2002), the defendants were charged with conspiracy, mail fraud, and money laundering. Like Radhakrishnan, Serifino's defense was that he was a dupe who followed the direction of the other defendant, Peckham, who devised the fraud scheme. Id. at 329. Peckham's defense was that he was not a mastermind or driving force behind a fraud scheme. The First Circuit held that such defenses were not so antagonistic as to require severance. "Peckham's contention that he was neither the mastermind nor the driving force behind the scheme did not necessarily require that the jury either accept or reject the defense that Serafino was an unwitting participant." Id. at 329.

Numerous other cases have met with the same result. In United States v. Arruda, 715 F.2d 671 (1st Cir. 1983), the Court found defenses not to be sufficiently antagonistic even though one defendant's theory consisted of blaming his co-defendant for the crime while proclaiming his own innocence. In declining to require severance, the Court stated that the first defendant's theory "consisted of nothing more than fingerpointing and tattling, which

does not justify severance." Id. at 679.

Similarly, in United States v. Pacheco, 794 F.2d 7, (1st Cir. 1986), the First Circuit rejected a claim of antagonistic defenses where one defendant's theory consisted explicitly of blaming his two co-defendants. See id. at 9-10.  See also, e.g., United States v. Rose, 104 F.3d 1408 (1st Cir. 1997) (defenses not antagonistic where one defendant claimed to be no more than accessory after fact while other defendant claimed government failed to meet burden of proof); United States v. McLaughlin, 957 F.2d 12 (1st Cir. 1992) (bank fraud defendant failed to show sufficiently antagonistic defense in claim he was victim of other defendants' bank fraud); United States v. Paradiso, 802 F.2d 553 (1st Cir. 1986)(no severance where one defendant claimed co-defendant was the one delivering drugs and co-defendant claimed government overreaching); United States v. Porter, 764 F.2d 1 (1st Cir. 1985)(no severance where one defendant claimed entrapment and co-defendant claimed outrageous government conduct).

Radhakrishnan further claims that Caramadre will introduce otherwise inadmissible bad character evidence against Radhakrishnan which would cause the jury to convict Radhakrishnan not on the evidence, but based on his bad character.  (Motion to Sever at 7-8). This argument is entirely speculative, as Radhakrishnan nowhere identifies what this bad character evidence is, how it is admissible

in a joint trial but not in a separate trial, or how it would prejudice him. Such speculative allegations are impossible to respond to and fall well below the "intentionally high" standard the First Circuit requires to obtain a severance. See Porter, 764 F2d. at 13).

**3. There is no risk of spillover effect**

Radhakrishnan next argues that joint trial will prejudice Radhakrishnan as a result of "spill-over evidence" related to the witness tampering charge against Caramadre. (Motion to Sever at 8-9). Radhakrishnan again falls far short of the standard required for severance. It is extremely common, as Rule 8 contemplates, for one defendant to be charged in an indictment with crimes for which a co-defendant is not charged. See Fed R. Crim. P. 8(b) ("All defendants need not be charged in each count."). Moreover, "the unsavoriness of one's co-defendant, (including past criminal conduct) is not enough, by itself, to mandate severance. Defendants still must make a strong showing of prejudice." DeCologero, 530 F.3d at 53. "Spillover occurs when evidence establishing guilt of one defendant, but not admissible against another, creates an atmosphere clouding the jury's ability to fairly evaluate the guilt or innocence of the latter." United States v. Rodriguez, 53 F.3d 327 (1st Cir. 1995), quoting United States v. Perkins, 926 F.2d 1271, 1281 (1st Cir. 1991) (internal quotation marks omitted).

There is absolutely no reason to believe that evidence of

Caramadre's tampering with one witness will create an atmosphere in which the jury will be unable to impartially evaluate the evidence against Radhakrishnan. Caramadre is charged with directing a witness to lie to a federal agent by concealing the nature of payments he received from Caramadre for referring a terminally ill person to Caramadre. Recognizing that such conduct is indicative of Caramadre's consciousness of guilt, Radhakrishnan leaps from inference to inference to conclude that the jury will inevitably convict Radhakrishnan of all counts based on evidence that Caramadre tampered with a single witness. Such an unlikely string of inferences would require the jury to disregard all of the instructions the Court will give in the case. But of course, "juries are presumed to follow their instructions." Zafiro, 506 U.S. at 541, quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987).

Finally, Radhakrishnan claims he will be prejudiced because Caramadre concocted the fraud scheme, benefitted more from it financially, made misrepresentations to broker-dealers, and dealt with co-conspirators. (Motion to Sever at 4). A difference in roles is not a basis for a severance, particularly in conspiracy cases, where severance is particularly disfavored. DeCologero, 530 F.3d at 54 ("in the context of conspiracy, severance will rarely, if ever be required due to evidentiary spillover."). "The mere fact that a 'minnow' stands trial with a 'kingfish,' and the government aims

11

most of its ammunition at the kingfish, does not, without more, necessitate separate trials." United States v. Levy-Cordero, 67 F.3d 1002, 1007 (1st Cir. 1995).  Accordingly, a severance is not warranted here.

**4. Cautionary instructions can cure any potential prejudice**

In any event, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." Zafiro, 506 U.S. at 538-539.  "There are ways, with skillful trial management and diligent counsel, to prevent the[] risks [of prejudice and jury confusion] from growing into actual harm.  Trial judges have broad power to cope with the complexities and contingencies inherent in the adversary process."  DeCologero, 530 F.3d at 18, (internal quotations and citations omitted).

To the extent that Radhakrishnan identifies some risk of prejudice or jury confusion, the Court can well mitigate that risk by properly instructing the jury that the government has the burden of proving each charge beyond a reasonable doubt, that it must give separate consideration to each individual defendant and to each charge against him, and that each defendant is entitled to have his case determined from his own conduct and the evidence that may be applicable to him.  Zafiro, 506 U.S. at 540-541.

## **Conclusion**

For the reasons set forth herein, Defendant Radhakrishnan's Motion to Sever should be denied.

```
                                    Respectfully submitted,
                                    PETER F. NERONHA
                                    UNITED STATES ATTORNEY

                                    /s/ John P. McAdams
                                    JOHN P. McADAMS
                                    Assistant U.S. Attorney

                                    LEE H. VILKER
                                    Assistant U.S. Attorney
                                    U.S. Attorney's Office
                                    50 Kennedy Plaza, 8th Floor
                                    Providence, RI 02903
```

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2012, I caused the within Government's Response to Defendant Radhakrishnan's Motion to Sever to be served via the Court's Electronic Filing System on:

For Joseph Caramadre:
Michael J. Lepizzera, Esq.
James T. McCormack, Esq.

For Raymour Radhakrishnan:
Olin Thompson, Esq.

/s/John P. McAdams
John P. McAdams
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
John.p.mcadams@usdoj.gov