## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) **Criminal No. 11-186-S** |
| **v.** | ) |
| | ) |
| **JOSEPH CARAMADRE** | ) |
| | ) |
| **and** | ) |
| | ) |
| **RAYMOUR RADHAKRISHNAN** | ) |
| | ) |
| **Defendants.** | ) |

### MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION TO DISQUALIFY COUNSEL BASED ON CONFLICT OF INTEREST

On June 14, 2012, attorney Anthony Traini ("Traini") entered his appearance as co-counsel for defendant Joseph Caramadre ("Caramadre").[1]  For at least the past three years, Traini has represented unindicted co-conspirator Edward Maggiacomo, Jr. ("Maggiacomo"), a long-time associate of Caramadre, in criminal, civil and administrative proceedings related to the scheme alleged in the Indictment.  In the context of this representation, Traini secured a non-prosecution agreement on Maggiacomo's behalf.  As Maggiacomo is certain to be a key government witness in its case against Caramadre, Traini's representation of Caramadre and Maggiacomo constitutes an irreconcilable, unwaivable conflict of interest.  Accordingly, Traini should be disqualified from

---

[1]  Caramadre's retention of Traini is just the latest in a string of efforts on his part to switch counsel as this case progresses.  Caramadre was initially represented by Attorneys Robert Flanders, Michael Connolly, and Hinckley, Allen & Snyder LLP in the grand jury investigation until he terminated them in 2010.  He briefly appeared *pro se* and has been represented by Attorneys Lepizzera and McCormick in the criminal case.  He now apparently wishes to replace Attorney McCormick, a highly qualified and experienced defense attorney, with Traini.  Moreover, the government has been advised that Caramadre has also proposed representing himself at trial.

representing Caramadre.  The government requests a hearing.

## BACKGROUND

Attorney Traini has represented Maggiacomo in litigation and a variety of other matters related to his employment with Caramadre and the use of terminally-ill individuals on investment products.  This representation dates back at least to 2009 and includes his representation of Maggiacomo in proceedings before the Rhode Island Department of Business Regulation, in multiple civil actions brought by insurance companies, and in regulatory investigations conducted by the United States Securities Exchange Commission and the FINRA Department of Enforcement.  Traini also represented Maggiacomo throughout the entire grand jury investigation leading to the current Indictment and, to the best of our knowledge, continues to represent Maggiacomo to this day.

Under Traini's guidance and representation, Maggiacomo agreed to meet with and cooperate with the government in its investigation of Caramadre and co-defendant Raymour Radhakrishnan.  In exchange for his continued assistance and truthful information and testimony, the Government entered into a non-prosecution agreement with Maggiacomo (attached hereto as Exhibit A).  Maggiacomo testified before the grand jury on June 16, 2011.  Based on the information provided by Maggiacomo and his grand jury testimony, it is expected that Maggiacomo will be a principal government witness against Caramadre.  Maggiacomo is expected to testify, among other things, that he knowingly and intentionally lied to the various financial institutions at the direction of Caramadre.

Maggiacomo is identified in the Indictment as "John Doe # 1," an unindicted co-conspirator.  Maggiacomo worked as an insurance broker with Caramadre since 1995 and is

responsible for submitting numerous of the annuities and brokerage account applications using terminally-ill individuals as annuitants and co-owners.  The Indictment alleges that Maggiacomo played a critical role in the fraud scheme, including making numerous material misrepresentations at Caramadre's direction to insurance companies and to broker-dealer Lifemark. (Indictment at ¶¶ 56-59, 121-126, 130-137), improperly sharing commissions with Caramadre, (Indictment at ¶50), and concealing the sharing of commissions in order to conceal the scheme, (Indictment at ¶50).

## ARGUMENT

### 1.    A serious potential for an irreconcilable conflict of interest exists.

Notwithstanding the import of Maggiacomo as a trial witness against Caramadre and the fact that Traini has represented Maggiacomo for years related to this scheme, Traini now attempts to "switch sides" as trial approaches and represent Caramadre at trial.   Traini has not submitted waivers of this potential conflict of interest on behalf of either Maggiacomo or Caramadre.

The Sixth Amendment right to assistance of counsel encompasses the corollary right to choose one's counsel. Powell v. Alabama, 287 U.S. 45, 53 (1932); United States v. Richardson, 894 F.2d 492, 495-96 (1st Cir. 1990).  The right to counsel of choice, however, is not absolute. It "is circumscribed in several important respects," including by the potential conflict of interest that may arise from the fact that the chosen attorney has represented other participants in the same or related criminal proceedings.  Wheat v. United States, 486 U.S. 153, 159-60 (1988).  Although the district court must recognize a presumption in favor of counsel of choice, that presumption may be overcome "not only by demonstrating actual conflict but by showing a serious potential for conflict." Wheat, 486 U.S. at 164; see also United States v. Mazzaferro, 865 F.2d 450, 456 (1st Cir. 1989) ("the loyalty a lawyer owes to his client is so basic ... it should not be sullied by even the

-3-

appearance of a possible conflict").  The conflict of interest created by Traini's representation of

both a criminal defendant (Caramadre) and a principal government witness against him

(Maggiacomo) is so blatant and apparent that it would be obvious to any objective and reasonable

attorney.  Traini's representation of both clients will require him to either betray his duty of loyalty

to Maggiacomo or provide ineffective assistance to Caramadre by defending him with one

proverbial arm tied behind his back.

**2.      A hearing is necessary to determine whether Maggiacomo and Caramadre knowingly and voluntarily waive any potential conflict of interest.**

While multiple representations are not *per se* violative of constitutional guarantees of

effective assistance of counsel, Holloway v. Arkansas, 435 U.S. 475, 482 (1978), a court

confronted with a possible conflict must ascertain whether the conflict warrants separate counsel.

Wheat, 486 U.S. at 160; cf. Fed. R. Crim. P. 44(c) ("[T]he court shall promptly inquire with

respect to joint representation .... Unless it appears there is good cause to believe no conflict of

interest is likely to arise, the court shall take such measures as may be appropriate to protect each

defendant's right to counsel.").

It is unclear if Traini intends to continue to represent Maggiacomo in this criminal

proceeding, the civil proceedings and/or the SEC investigation going forward.  It is also unclear if

Traini intends (or if Maggiacomo expects) to continue to represent Maggiacomo in corollary

matters subsequent to the Caramadre trial.  It is also unclear why Maggiacomo has apparently

agreed to terminate his relationship with Traini and how, if at all, his consent was obtained to

release Traini to represent Caramadre at trial.  At a minimum, a hearing is required to determine

whether Maggiacomo has knowingly and voluntarily consented to (1) forfeit Traini as his counsel

(in this and other proceedings); (2) waive the duty of loyalty and other protections of the attorney-client relationship; (3) consented to Traini using the information he provided in the course of the attorney-client relationship against him; and (4) consented to Traini being part of Caramadre's defense team that will cross-examine him and advocate against his credibility at trial.  The hearing should also establish whether Caramadre knowingly consents to waive this clear conflict of interest and whether he understands that Traini has an existing duty of loyalty to Maggiacomo which prohibits Traini from advocating against Maggiacomo, or from sharing information he knows about Maggiacomo even if it is helpful to Caramadre's defense.  In short, the hearing must establish that Caramadre knows Traini cannot fully serve as a zealous advocate on his part at trial.

   **3.**      <u>**The potential conflict of interest is so serious that it is unwaivable.**</u>

   As is apparent from these issues, even if both Maggiacomo and Caramadre knowingly consent to all of the above, Traini must be disqualified from representing Caramadre at trial given the profound, irreconcilable conflict that exists between the interests of Caramadre and Maggiacomo.  This conflict by necessity will prejudice both Maggiacomo and Caramadre.  Moreover, it creates an actual and apparent conflict of interest that undermines the integrity of the judicial process.

   The divided loyalties of an attorney who has previously represented either a codefendant or government witness represent a "serious potential for conflict." <u>Wheat</u>, 486 U.S. at 164.  Counsel is prevented from zealously representing the current client because counsel still owes a duty of confidentiality to the previous client who, if and when called as a witness, must be cross-examined vigorously.  <u>Id.</u>

   Although a valid waiver of conflict-free counsel may alleviate the problem in certain

circumstances, there is no "flat rule" which obligates a district court to accept such a waiver. Wheat, 486 U.S. at 160.  Prior to the commencement of trial, "relationships are seen through a glass, darkly" and "nascent conflicts of interest are notoriously hard to predict."  Id. at 162. Therefore, review of district court rulings disqualifying attorneys on conflict-of-interest grounds is "limited to inquiring whether the lower court has abused its concededly wide discretion." In re Grand Jury Proceedings, 859 F.2d 1021, 1024 (1st Cir. 1988); Wheat, 486 U.S. at 163 (noting that a trial court has the discretion to reject a proffered waiver in "the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses").

In Wheat, the Supreme Court upheld the disqualification of an attorney who had represented a co-conspirator whom the government intended to call as a witness, even though the defendant and the co-conspirator agreed to waive any future claim of conflict of interest.  Wheat, 486 U.S. at 163-64.  In addressing the waivers obtained by counsel, the Court noted: "Nor is it amiss to observe that the willingness of an attorney to obtain such waivers from his clients may bear an inverse relation to the care with which he conveys all the necessary information to them." Id. at 163.  The Court had no difficulty in affirming the finding of an irreconcilable conflict of interest when the government indicated that it intended to call one of the attorney's clients in the trial of the other: "[The attorney], because of his prior representation of [the witness], would have been unable ethically to provide that cross-examination."  Id. at 164.

This case presents perhaps the most compelling conflict of interest possible, as Traini seeks to represent a defendant after for years having represented one of the chief witnesses against that defendant.  Indeed, it is difficult to find a case in with a conflict as egregious as here, where Traini

-6-

seeks to represent both a criminal defendant and a chief witness against him. The cases are legion, however, in which courts have disqualified attorneys who are subject to lesser conflicts of interest, including those who seek to represent defendants and potential government witnesses.

The First Circuit recently addressed a similar circumstance in United States v. Reyes, 592 F.3d 280 (1st Cir. 2010), in which the Court of Appeals upheld the disqualification of counsel where defendant's attorney of choice had previously represented a government witness who was scheduled to testify at trial. In Reyes, defense counsel had informed the district court that the government witness was willing to waive the attorney-client privilege, though no actual waiver was presented. Id. at 294. Although the defendant in Reyes had waived any conflict of interest, the Court affirmed the attorney's disqualification, noting that "although a defendant may generally waive his Sixth Amendment right to a non-conflicted attorney, the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." Id. at 293, 294, quoting Wheat. In affirming the disqualification, the Court held that the attorney's "representation may have placed her in the position of having to cross-examine her former client, a witness with whom she shared confidences protected by attorney-client privilege." Id. at 294. It is worth noting that the witness at issue in Reyes was a relatively minor witness who did not even end up testifying at trial; in this case, Maggiacomo is a critical government witness who will certainly testify at trial.

A similar result was reached in United States v. Lanoue, 137 F.3d 656 (1st Cir. 1998), in which the Court disqualified an attorney who had earlier represented a co-defendant who was acquitted in a separate trial. In affirming the disqualification, the Court of Appeals noted that the "government told the district court that it might call the [co-defendant] as a witness to testify on

whether [defendant] possessed a firearm" and that "a conflict of interest could arise if [the attorney] had to cross-examine [his former client]." Id. at 663.   Even in this situation, when there was a mere possibility that a former client would be called as a government witness, the Court affirmed the disqualification of counsel.  The conflict apparent in this case is far more compelling than in Lanoue, as Traini's client (Maggiacomo) is certain to testify at trial and is expected to offer highly inculpatory evidence against Caramadre.

### 4. Maggiacomo and Caramadre will both be prejudiced by Traini's representation of Caramadre.

Even if waived, Traini's representation of both Maggiacomo and Caramadre is problematic because it will harm both clients.

### A. Maggiacomo will be prejudiced.

Traini's representation of Caramadre at trial will inevitably put Traini in the position of choosing between the interests of his current client (Caramadre) and his other or former client (Maggiacomo).  This conflict of interest will ultimately prejudice both Maggiacomo and Caramadre.  The prejudice to Maggiacomo is readily apparent.[2]  It cannot possibly be in Maggiacomo's best interests to terminate his relationship with the attorney who is fully-versed in this matter and has represented him admirably for years.  Although Maggiacomo has entered into a

---

[2]  Indeed, the prejudice to Maggiacomo has already commenced due to Traini's entry of his appearance to represent Caramadre.  In his representation of Maggiacomo, Traini has gone to great lengths to keep from having Maggiacomo's status in the investigation publicly disclosed. Most recently, Traini insisted that Maggiacomo's name be redacted from the court filings in the grand jury proceeding before they were unsealed.  By agreeing to represent Caramadre after the government advised that it believed an irreconcilable conflict existed, Traini put the government in the position in which it had to publicly divulge the nature of Maggiacomo's involvement in this scheme and the fact that he entered into a non-prosecution agreement with the government. This is just the first of what will be many instances in which Traini's conflicted loyalties in this case will cause harm to one client or the other.

non-prosecution agreement with the government, that agreement has clear limitations and

Maggiacomo, as an unindicted coconspirator, still faces criminal exposure if he were to violate the

terms of that agreement in any way.  Among Maggiacomo's responsibilities under that agreement

is to meet with the government as often as necessary to prepare for trial.  Another attorney - one

who is far less familiar than Traini with the facts of the case - would need to represent

Maggiacomo during these meetings, increasing the risk that Maggiacomo will violate the terms of

the agreement.  In addition, he is named as a defendant in ongoing civil actions brought by

insurance companies in which he faces the potential loss of large sums of money.  Moreover, he is

a target of an SEC investigation in which his securities license and substantial fines are at risk.

Maggiacomo is more than ever in need of highly-qualified counsel and it seems unimaginable that

terminating his longstanding relationship with Traini can be in his best interests.

A well-reasoned analysis of this issue was offered by the court in United States v. Lemieux,

532 F.Supp. 2d 225 (D. Mass. 2008), in which an attorney who had earlier represented a co-

defendant for a brief period following his arrest sought to represent another defendant at trial.  Both

the defendant and co-defendant had waived any conflict of interest.  The court noted that in cases

"of successive representation, conflicts of interest may arise if the cases are substantially related or

if the attorney reveals privileged communication of the former client or otherwise divides his

loyalties."  Id. at 230, quoting Mannhalt v. Reed, 847 F.2d 576, 580 (9th Cir.), cert. denied, 488

U.S. 908 (1988).  The court noted that major possibilities of conflict can exist in this situation.

First, "the attorney may be tempted to use confidential information learned during the prior

representation to the disadvantage of the former client, or (2) the attorney may fail to cross-

examine the former client rigorously for fear of revealing or misusing privileged information

learned during the prior representation to the disadvantage of the successive client." Id., quoting

United States v. Agosto, 675 F.2d 965, 971 (8ᵗʰ Cir. 1982).  Based on this concern, the court in

Lemeiux disqualified counsel.   In so ruling, the court rejected counsel's attempt "to downplay his

prior representation" of the government witness by arguing that he only represented the witness

during the initial phases of the case.  Id. at 233.  In the case at bar, there can be no question that

Traini has extensively represented Maggiacomo in this very case and any attempt to "downplay"

his representation of Maggiacomo or the extensive privileged communications between them

should be rejected.

The Lemeiux court further explained that "[t]he second major possibility of conflict in the

successive relationship situation is that the attorney's pecuniary interest in possible future business

may cause him to make trial decisions with a view toward avoiding prejudice to the client he

formerly represented." Id. at 230-231, quoting Agosto at 971.  This concern is particularly acute in

this case as Traini has represented (and may still represent) Maggiacomo in the ongoing civil

actions and SEC investigation related to the facts of this case.  By representing Caramadre in this

case, Traini will be presented with an irreconcilable conflict, in which he will forced to decide

whether to take steps that may well prejudice a prior client whom he may hope will once again be

his client, or else fail to properly serve his current client by forgoing viable areas of cross

examination and advocacy.

The above cited cases are hardly unique.  Indeed, in case after case throughout the country,

courts have affirmed the disqualification of attorneys whose conflicts were far less dramatic than

the circumstances presented in this case.  See, e.g., United States v. Williams, 439 F. Appx. 254-

256-57 (4ᵗʰ Cir. 2011) (per curium) (affirming disqualification of attorney who previously

represented potential government witness even though government advised that it did not know

whether it would call witness at trial); United States v. Sanchez Guerrero, 546 F.3d 328, 334-35

(5th Cir. 2008) (representation of co-defendant and government witness by defendant's attorney

raised irreconcilable conflict of interest despite conflict waiver); United States v. Voigt, 89 F.3d

1050, 1074-78 (3d Cir.), cert. denied, 519 U.S. 1047 (1996) (representation of codefendant at

grand jury proceedings created a conflict of interest "[s]ince there was a strong possibility that

[codefendant] might face cross-examination by a former attorney"); United States v. Ross, 33 F.3d

1507, 1523 (11th Cir. 1994), cert. denied, 515 U.S. 1132 (1995) ("the need for fair, efficient, and

orderly administration of justice overcomes the right to counsel of choice where an attorney has an

actual conflict of interest, such as when he has previously represented a person who will be called

as a witness against a current client at a criminal trial"); United States v. Locascio, 6 F.3d 924, 932

(2d Cir. 1993), cert. denied, 511 U.S. 1070 (1994) (affirming disqualification of counsel, in part

because prior representation of potential government witness gave rise to conflict of interest), cert.

denied, 511 U.S. 1070 (1994); In re Grand Jury Proceedings, 859 F.2d at 1021, 1025-26 (1st Cir.

1988) ("[G]enerally there must be a direct link between the clients of an attorney - or at least some

concrete evidence that one client, such as an immunized witness, has information about another

client, such as a target of a grand jury investigation - before the right to counsel of choice is barred

by disqualification").

　　　If Traini is allowed to represent Caramadre, he will be part of a defense team that will

undoubtedly seek to attack the credibility of Maggiacomo throughout the trial, including during

argument and on cross-examination of Maggiacomo.  Traini will be put into a position of choosing

between attacking the credibility of his client (Maggiacomo) or refraining from doing so to the

detriment of his other client (Caramadre).  A defense Caramadre is likely to pursue is to attempt to

shift the blame to Maggiacomo, by arguing that Maggiacomo on his own accord lied to the

insurance companies and to broker-dealer Lifemark.  While this defense may offer some benefit at

trial to Caramadre, it will be directly adverse to Maggiacomo's interests in the ongoing civil and

administrative actions.  Traini will therefore be forced to take steps that could well harm

Maggiacomo.

        **B.**       **Caramadre will also be prejudiced.**

    This conflict of interest also has the potential of prejudicing Caramadre.  Caramadre is

entitled to counsel who is unquestionably acting in his best interests, not one who must consider

the effect his questions or trial strategy will have upon another client, be it a current or former one.

Attorney Traini will be in a position of having to decide whether to take steps that might harm

Maggiacomo or to impeach his credibility.  He may have to decide whether to share a piece of

information provided to him by Maggiacomo in an effort to impeach Maggiacomo at trial.

    Another serious concern is that Traini may also be contemplating resuming his

representation of Maggiacomo in the civil and administrative proceedings after the criminal trial

has completed.  With that in mind, Traini will be in an improper position at trial of deciding

whether to assist his current client (Caramadre) by taking steps that could ultimately damage the

interests of a future client (Maggiacomo), or forgoing those opportunities.

        **5.**       **The conflict undermines the integrity of the adversarial process.**

    Allowing Traini to represent Caramadre would effectively permit Caramadre to purchase

the services of the attorney of a chief witness against him, together with the knowledge that

attorney has received from that witness and the government.  Traini has participated in numerous

meetings and discussions with government counsel concerning this case, both in and outside of the presence of Maggiacomo.  In the months leading to Maggiacomo's grand jury testimony, Traini was present as the government prepared Maggiacomo for his testimony and was privy to the legal and investigative strategies employed by the government.  He also spent many hours meeting with Maggiacomo and preparing him for his meetings with the government and his grand jury testimony.  It would, at the very least, create a significant appearance of impropriety for the attorney of a lead cooperator to represent the defendant after he has secured a non-prosecution agreement for his first client.  See Wheat, 486 U.S. at 160 ("Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.")

To permit Traini to represent Caramadre now, when such a clear conflict of interest exists, would simply lay the groundwork for a future claim by Caramadre that he was denied effective assistance of counsel due to Traini's allegiance to Maggiacomo.  As the Supreme Court noted in Wheat, "trial courts confronted with multiple representations face the prospect of being 'whipsawed' by assertions of error no matter which way they rule.  If a district court agrees to multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance."  Wheat, 486 U.S. 161-162 (citing Courts of Appeals decisions which entertained ineffective assistance claims from defendants who had specifically waived the right to conflict-fee counsel).  Permitting Traini to represent Caramadre, given his longstanding representation of a chief government witness, is a precursor to  an ineffective assistance of counsel claim that will be raised if Caramadre is convicted at trial.

**6.  A "Chinese Wall" will not cure the conflict.**

In a recent chambers-conference, counsel for Caramadre suggested that any conflict can be resolved by the erection of a "Chinese Wall," pursuant to which Attorney Traini would be precluded from sharing with Attorney Lepizzera any confidential information he learned from Maggiacomo or from cross-examining Maggiacomo during trial.  These steps, however, would not ameliorate the conflict of interest apparent in Traini representing the defendant and a chief government witness.

It makes no difference whatsoever if it is Lepizzera, rather than Traini, who asks the actual questions of Maggiacomo during his cross-examination[3].  Traini would still be opposing counsel and would still take part in the formulation of the defense strategy (which will include attacking Maggiacomo's credibility).  Traini has spent countless hours with Maggiacomo, delving into the details of his 15 year relationship with Caramadre and Maggiacomo's dealings with terminally-ill individuals and the respective companies.  Traini will thus be in a position to share the information he obtained directly from Maggiacomo against him.  Whether Traini delivers the closing argument or not, the defense will need to argue that Maggiacomo should be disbelieved.

The "Chinese Wall" suggestion was raised by defense counsel and rejected by the Court in Sanchez Guerrero, 546 F.3d at 334-35.  In that case, defendant's choice of counsel also represented a witness that was scheduled to testify against the defendant at trial.  Counsel, who secured conflict waivers from the defendant and the witness, attempted to alleviate the conflict by arguing "that he

---

[3]There will also be other witnesses at trial who were lied to by Maggiacomo at Caramadre's direction; Traini will be faced with a similar conflict in attempts to impeach these witnesses. A zealous advocate on Caramadre's behalf would seek to emphasize Maggiacomo's deception and distinguish from Caramadre's.  To do so, Traini would need to advocate against Maggiacomo.

could simply hire another attorney to cross-examine Witness, and that he would not inform that attorney any confidential information he had gleaned from his previous representation." Id. at 334. The Court of Appeals rejected this argument, holding that such an arrangement created an "irreconcilable conflict of interest because if [defendant]'s team pulled punches in cross-examining [the witness], they would render [defendant] ineffective assistance of counsel, while if they attacked her strongly, they might jeopardize her plea agreement." Id., citing United States v. Gharbi, 510 F.3d 550, 553 (5th Cir. 2007) (disqualifying proposed co-counsel who represented co-defendant scheduled at trial; holding that proposed "Chinese Wall" solution, in which counsel would not share any confidential information and would not cross-examine witness, did not resolve conflict of interest because of the risks that defense counsel could "pull punches" or alternatively attack the witness "with great detail and thereby jeopardize her plea agreement.")

A "Chinese Wall" among defense counsel is simply inconsistent with a defendant's right to effective assistance of counsel. If Traini were to represent Caramadre at trial, he would have an unfettered duty of loyalty to Caramadre, which would include the obligation to share any information he received from Maggiacomo and to assist in the defense effort to undermine Maggiacomo's credibility. At the same time, Traini would still owe a duty of loyalty to his other client, Maggiacomo, and would have an obligation to refrain from taking any steps that could endanger Maggiacomo's agreement with the government or to that could damage Maggiacomo in the pending civil actions and SEC investigation. This conflict is irreconcilable and the proposed solution of walling Traini off from Maggiacomo's cross-examination is inadequate.

**7.   Relevant ethical standards weigh against Traini representing Caramadre.**

In evaluating the conflict of interest apparent in this case, the rules governing the ethical behavior of attorneys are relevant.   Of course, the Court need not find specific violations of these rules in order to disqualify an attorney due to a conflict of interest; rather, the rules merely form a backdrop to this Court's analysis of its interest in protecting the integrity of the adversarial process. As the Third Circuit stated in United States v. Voigt, 89 F.3d 1050, 1076 & n.12 (3d Cir. 1996), cert. denied, 519 U.S. 1047 (1996):

> the disqualification of a defendant's chosen counsel need not be, and in this case was not predicated on a finding of a specific [Rules of Professional Conduct] violation.  The 'fair and proper administration of justice' side of the equation merely 'includes the interests underlying the ethical standards governing the practice of law,' Davids v. Stamler, 650 F.2d 477, 479-80 (3d Cir. 1981); it is neither defined nor circumscribed by those standards.  On the contrary, a district court has independent interests in protecting its judgments against later collateral attack, preserving the integrity of its proceedings, and protecting the truth seeking function of proceedings.

Id. at 1076 n.12.  See also In re Bushkin Associates, Inc., 864 F.2d 241, 245 (1st Cir. 1989) (discussing the "court's need to protect the integrity of the judicial process, enforce its rules against transgressors, and maintain public confidence in the legal profession").

The standard to be applied in situations which involve an ethical conflict is that of reasonableness (see Preamble to R.I. Disciplinary Rules of Professional Conduct, para. 14), always bearing in mind that "a lawyer's conscience need not only be at peace with itself, but that also he is required not to inflame ethical nor moral doubts to his clients nor to the courts." Carreras v. Cable West Corp., 624 F.Supp. 1167, 1169 (D.P.R. 1986) (attorney cannot provide concurrent representation for parent corporation as well as subsidiary in adversarial contest).

-16-

Several specific Rules apply due to Mr. Traini's roles in this case.  Rule 1.6 raises

concerns with regards to how he has handled and will handle confidences he has received from

Maggiacomo.  Rule 1.6(a) provides, "[a] lawyer shall not reveal information relating to the

representation of a client unless the client gives informed consent, except for disclosures that are

impliedly authorized in order to carry out the representation, and except as stated in paragraph

(b)."   Rule 1.8(b) further provides: "[a] lawyer shall not use information relating to

representation of a client to the disadvantage of the client unless the client gives informed

consent, except as permitted or required by these Rules."

Clearly, Mr. Traini owes a duty of loyalty to his current and former clients.  "Loyalty [is]

an essential element [] in the lawyer's relationship to a client."  Comment to Rule 1.7.  This duty

is addressed in several Rules relating to conflicts of interest.  The general conflict of interest rule,

Rule 1.7, prohibits Traini from representing Caramadre if it would be adverse to the interests of

Maggiacomo.  This Rule provides:

> (a) Except as provided in paragraph (b), a lawyer shall not
> represent a client if the representation involves a concurrent
> conflict of interest.   A concurrent conflict of interest exists if:
>    (1) the representation of one client will be directly adverse to
> another client; or
>    (2) there is a significant risk that the representation of one or
> more clients will be materially limited by the lawyer's
> responsibilities to another client, a former client or a third person
> or by a personal interest of the lawyer.
> (b) Notwithstanding the existence of a concurrent conflict of
> interest under paragraph (a), a lawyer may represent a client if:
>    (1) the lawyer reasonably believes that the lawyer will be able to
> provide competent and diligent representation to each affected
> client;
>    (2) the representation is not prohibited by law;
>    (3) the representation does not involve the assertion of a claim
> by one client against another client represented by the lawyer in the

same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

The comments to Rule 1.7 clearly contemplate the irreconcilable nature of the conflict when an attorney is required to cross-examine one client in defense of another.  See *Comment* to Rule 1.7:  "[A] directly adverse conflict may arise when a lawyer is required to cross-examine a client who appears as a witness in a lawsuit involving another client, as when the testimony will be damaging to the client who is represented in the lawsuit."

As it is unclear whether or not Traini has completely terminated his relationship with Maggiacomo, Rule 1.9 may also be relevant as it governs duties owed to former clients.  It provides:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former . .. client unless the former client gives informed consent, confirmed in writing.

> (c)  A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
> (1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client.

When read together, these Rules raise serious questions concerning the propriety of Traini representing Caramadre when he has represented Maggiacomo in this very matter.  Rule 1.6 prohibits Traini from disclosing any information provided to him by Maggiacomo without the informed consent of Maggiacomo.  It is unknown at this moment whether Maggiacomo has consented to allow Traini to disclose to Caramadre all that Maggiacomo told Traini in confidence.  Further, Rule 1.7 would appear to bar Traini from concurrently representing both

-18-

Caramadre and Maggiacomo, as the interests of the two are so antagonistic that no attorney could "reasonably believe" that he could provide competent and diligent representation to each client. And even if Traini were to completely terminate his relationship with Maggiacomo, he would still be subject to Rule 1.8(b), which prohibits an attorney from using information related to the representation of a client to the disadvantage of that client without the client's informed consent. Again, it is unclear whether Maggiacomo has consented to allow Traini to use the information Maggiacomo provided him to Maggiacomo's disadvantage. Finally, Traini is subject to Rule 1.9, which prohibits an attorney from using information received from a former client to the disadvantage of that client.

In 1992, the American Bar Association issued a formal ethics opinion in which it concluded that "a lawyer's examining the lawyer's client as an adverse witness . . . will ordinarily present a conflict of interest that is disqualifying . . . ." AMERICAN BAR ASSOCIATION, FORMAL ETHICS OP. 92-367 (1992). Apart from the difficulties imposed on cross-examination by the attorney's knowledge of confidential information, "a lawyer's general familiarity with how a client's mind works is relevant and useful information" that may warrant disqualification under Rule 1.8(b). Id. While Rule 1.7 allows for exceptions, including client consent and the attorney's reasonable belief that he or she can represent the client competently and diligently, "[t]here will be situations in which the lawyer cannot be said to hold a 'reasonable belief' that the relationship will not be adversely affected." Id. at n.14. For example, an attorney could not hold such a "reasonable belief" in factual situations, like that in Wheat, in which an attorney might have to cross-examine a client in order to defend another client. Id. (citing Wheat, 486 U.S. at 164). In such cases, client consent cannot surmount the ethical barrier erected by the

conflict. <u>Id.</u>

While the Rules of Professional Conduct provide some useful guideposts for ethical conduct by attorneys, the Court need not find a violation of an ethical rule in order to disqualify Traini (and the government is not alleging the rules have yet been violated).   <u>United States v. Voigt</u>, 89 F.3d 1050, 1076 & n.12 (3d Cir. 1996), <u>cert. denied</u>, 519 U.S. 1047 (1996).  Rather, the relevant inquiry, as delineated in the <u>Wheat</u>, <u>Reyes</u>, and <u>Lemeiux</u> decisions discussed above, is whether Traini can now represent a criminal defendant when his other client is certain to provide inculpatory testimony against the defendant.  Traini simply cannot be permitted to represent Caramadre given his long-standing attorney-client relationship with Maggiacomo and the utterly antagonistic positions of Caramadre and Maggiacomo in this case.

CONCLUSION

Attorney Traini is irreconcilably conflicted from representing defendant Caramadre in this case.  Traini has been actively representing a chief government witness, Edward Maggiacomo, Jr., for years in a variety of settings, including this criminal case, multiple civil actions and an investigation conducted by the SEC.  Traini cannot be part of a defense team that will attack the credibility of his other client, whether or not he be the attorney doing the questioning.  Traini also cannot be in the position of having to decide whether to violate the confidences of one client to the detriment or advantage of the other.  The actual and apparent conflict created by Traini's representation of both the lead defendant and one of the government's main witnesses requires his disqualification.

The United States therefore respectfully requests that a hearing be conducted and that Attorney Traini be disqualified from representing Caramadre in this case.

-20-

Respectfully submitted,

PETER F. NERONHA
UNITED STATES ATTORNEY

/s/ Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney

JOHN P. MCADAMS
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

## CERTIFICATE OF SERVICE

I, hereby certify that on this 18th day of June, 2012, I caused the within Government's Memorandum of Law  to be served via the Court's Electronic Filing System on:

**For Joseph Caramadre**:
Michael J. Lepizzera, Esq.
James T. McCormack, Esq.
Anthony Traini, Esq.

**For Raymour Radhakrishnan**:
Olin Thompson, Esq.

/s/ John P. McAdams
John P. McAdams
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903