**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **JOSEPH CARAMADRE** | ) | |
| | ) | **Criminal No. 11-186-S-DLM** |
| **and** | ) | |
| | ) | |
| **RAYMOUR RADHAKRISHNAN** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## MEMORANDUM OF LAW IN OPPOSITION TO UNITED STATES' MOTION TO DISQUALIFY COUNSEL BASED ON CONFLICT OF INTEREST

### INTRODUCTION

#### A.    THE GOVERNMENT'S MOTION

The government has moved to disqualify Attorney Anthony M. Traini ("Mr. Traini") as co-counsel for Joseph Caramadre ("Mr. Caramadre") in the within matter, alleging a conflict of interest—unsupported by any facts—based on Mr. Traini's representation of Edward L. Maggiacomo, Jr. ("Mr. Maggiacomo"), a potential government witness at trial.  Mr. Caramadre strenuously objects to the attempt at disqualification on the grounds that: (1) he is entitled under the Sixth Amendment to counsel of his choice; (2) no conflict or potential for conflict arises from Mr. Traini's representation of Mr. Caramadre; (3) in the event that Mr. Maggiacomo, formerly represented by Mr. Traini in this criminal investigation, is called to testify as a witness, the confidentiality requirements of the Rules of Professional Conduct, coupled with Mr. Traini's and Mr. Lepizzera's  representations herein eliminate any potential conflict; and (4) both Mr.

Maggiacomo and Mr. Caramadre have knowingly, intelligently and voluntarily waived any actual or potential conflict of interest arising from Mr. Traini's representation of either of them.[1]

   B.   THE SIXTH AMENDMENT RIGHT TO COUNSEL

   Given the gravity of the charges, and the near inevitability of a hard-contested trial in this matter, the real value accorded to Mr. Caramadre's Sixth Amendment right to counsel cannot be overstated.  As argued below, the government's motion to disqualify Mr. Traini should be summarily denied.  It is important, however, to emphasize at the forefront of this memorandum—where it belongs and should remain throughout the Court's consideration of the government's attempt to deprive Mr. Caramadre of Mr. Traini's legal services—an issue to which the government's memorandum pays little attention: Mr. Caramadre's Sixth Amendment right to be represented by counsel of his choice.[2]

   "In all criminal prosecutions, the accused shall enjoy the right … to have the assistance of Counsel for his defense."  *U.S. Constitution, 6th Amendment*.  That provision "guarantees to a defendant the right to be represented by an otherwise qualified attorney when that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624-625 (1999).  It has been firmly established for more than seventy years that the right to counsel enshrined in the Sixth

---

[1]The Court is able to rely upon counsel's representations.  See *United States v. Rivera-Hernandez*, 332 F.Supp.2d 423, 433 (D.P.R. 2004).

[2]Prior to engaging Mr. Traini, Mr. Caramadre had already decided to sever his engagement of Attorney James McCormick and seek new trial counsel to assist lead counsel, Michael Lepizzera.  In part because of the looming trial date, and Caramadre's (as well as the Court's) reluctance to postpone it, Mr. Caramadre wished to hire competent and experienced counsel who would be ready for trial of this case on the date certain of November 13. Thus, securing the services of an attorney already well-versed in the facts and law of this case was imperative.  From Mr. Caramadre's perspective, Mr. Traini's acknowledged familiarity with this case, which the government acknowledges and tries to avoid, combined with the looming trial date, makes Mr. Traini the natural choice to replace Mr. McCormick.  Mr. McCormick has filed his notice of withdrawal in this matter.

Amendment includes "a fair opportunity to secure counsel of [defendant's] own choice." *Powell v. Alabama*, 287 U.S. 45, 53 (1932).

> The right to choose one's own counsel is an essential component of the Sixth Amendment because, were a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut.

*Wilson v. Mintzes*, 761 F.2d 275, 279 (6th Cir. 1985), quoting *Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981), cert. denied, 454 U.S. 1162 (1982).  The accused's right to retain counsel of his choice is crucial to the maintenance of a vigorous adversary system and of the objective fairness of the proceedings. See, *e.g.*, *Fuller v. Diesselin*, 868 F.2d 604, 610 (3d Cir.), cert. denied, 493 U.S. 873 (1989); *United States v. Panzardi Alvarez*, 816 F.2d 813, 815 (1st Cir. 1987); *United States v. Diozzi*, 807 F.2d 10, 16 (1st Cir. 1986).  And, as important as these considerations are, the right to counsel of choice "also reflects constitutional protection of the accused's free choice independent of these concerns." *Wilson*, 761 F.2d at 279, citing *Flanagan v. United States*, 465 U.S. 259 (1984).  As the Third Circuit has elaborated:

> [T]he most important decision a defendant makes in shaping his defense is his selection of an attorney. The selected attorney is the mechanism through which the defendant will learn of the options which are available to him. It is from his attorney that he will learn of the particulars of the indictment brought against him, of the infirmities of the government's case and of the range of alternative approaches to oppose or even cooperate with the government's efforts.
> . . . attorneys are not fungible, as are eggs, apples and oranges. Attorneys may differ as to their trial strategy, their oratory style, or the importance they give to various legal issues. These differences, all within the range of effective and competent advocacy, may be important in the development of a defense. It is generally the defendant's right to make a choice from the available counsel in the development of his defense. Given this reality, a defendant's decision to select a particular attorney becomes critical to the type of defense he will make and thus falls within the ambit of the sixth amendment.

> *United States v. Laura*, 607 F.2d 52, 56 (3d Cir. 1979), aff'd., 667 F.2d 365 (3d Cir. 1981).

The Sixth Amendment right to counsel of choice "commands, not that a trial be fair, but that a particular guarantee of fairness be provided – to wit, that the accused be defended by the counsel he believes to be best."   *United States v. Gonzalez–Lopez*, 548 U.S. 140, 146 (2006). Here the government seeks to deny Mr. Caramadre the defense team of his choice; a team that he believes can best represent his interests.

In *Gonzalez–Lopez* the Supreme Court reasoned that:

> We have little trouble concluding that erroneous deprivation of the right to counsel of choice, "with consequences that are necessarily unquantifiable and indeterminate, unquestionably qualifies as 'structural error.'" [citation omitted] Different attorneys will pursue different strategies with regard to investigation and discovery, development of the theory of defense, selection of the jury, presentation of the witnesses, and style of witness examination and jury argument. And the choice of attorney will affect whether and on what terms the defendant cooperates with the prosecution, plea bargains, or decides instead to go to trial. In light of these myriad aspects of representation, the erroneous denial of counsel bears directly on the "framework within which the trial proceeds," *Fulminante*, supra, at 310, 111 S.Ct. 1246—or indeed on whether it proceeds at all. It is impossible to know what different choices the rejected counsel would have made, and then to quantify the impact of those different choices on the outcome of the proceedings. Many counseled decisions, including those involving plea bargains and cooperation with the government, do not even concern the conduct of the trial at all.  548 U.S. at 150.

The government's memorandum ignores *Gonzalez–Lopez*, instead focusing on *Wheat v. United States*, 486 U.S. 153, 160 (1988), a decision that predated *Gonzalez-Lopez* by 18 years. *Wheat,* in full accord with the later *Gonzalez-Lopez* decision clearly articulates there is a presumption in favor of the constitutional right to be represented by counsel of choice.  486 U.S. at 160. [3]

Although the right to counsel of choice—to have the trusted guidance of a particular hand—is not absolute, a court's undertaking an assessment of a governmental attempt to divest a

---

[3]*Wheat* represents the outside limits of the Court's power to abrogate a defendant's Sixth Amendment right to counsel of his choice.  *Gingras*, on the other hand, is much more closely aligned with the facts of this case and embodies the appropriate result.

criminal defendant of that guidance must begin with the recognition of the *strong presumption in favor of a defendant's right to retain the services of his counsel of choice*. See, *e.g*., *Wheat*, 486 U.S. at 164; *In re Grand Jury Proceedings*, 859 F.2d 1021, 1024 (1st Cir. 1988). Indeed, because of the overriding importance of the right to counsel of choice, disqualification of counsel should be ordered *only* as a "*last resort*," *Diozzi*, 807 F.2d at 12, and the government bears a "*heavy burden*" in seeking to establish that disqualification is justified, *Id*. See, *e.g*., *In re Grand Jury Proceedings*, 859 F.2d at 1026; *United States v. Washington*, 797 F.2d 1461, 1465 (9th Cir. 1986).

It has been held that a criminal defendant's right to select counsel of his or her choosing may be abrogated only "where such drastic action is necessary to further some overriding social or ethical interest." *United States v. Hobson*, 672 F.2d 825, 828 (11th Cir. 1982); *United States v. Snyder*, 707 F.2d 139, 145 (5th Cir.1983). Courts must confront government motions to disqualify with a discerning eye:

> The government may seek to manufacture a conflict in order to prevent a defendant from having particularly able defense counsel at his side; but trial courts are undoubtedly aware of this possibility, and must take it into consideration along with all of the other factors which inform this sort of decision.

*Wheat*, 486 U.S. at 163.

In *United States v. Rivera–Hernandez*, 332 F.Supp.2d 423 (D.P.R., 2004), the trial court held that when seeking defense counsel's disqualification, the government carries a heavy burden in demonstrating that disqualification is justified, and while the trial court must inquire and explore whether such actual or serious potential conflict exists, the court may rely on counsel's representations assuring the absence of conflict, citing *Cuyler v. Sullivan*, 446 U.S. 335 348 (1980). See also *United States v. Santiago-Lugo*, 167 F.3d 81 (1st Cir.1999), citing *United States v. Kliti*, 156 F.3d 150, 153 (2nd Cir. 1998). This is the case here. Similar to the case at

bar, the *Rivera–Hernandez* court dealt with the potential for conflict arising from a defense attorney's prior representation of the immunized father of the defendant, who might be called to testify against his son. The Court noted that "[the father] has received immunity and is not subject to prosecution, except for perjury or obstruction of justice." *United States v. Rivera–Hernandez*, 332 F.Supp.2d at 433. The Court apparently reasoned that the immunity grant prevented any adverse consequence to the witness arising out of his prior attorney now representing his son, resulting in no actual conflict.

The government's memorandum also suggests that this case is somehow unique and there are no cases involving the fact pattern presented here. The government conveniently ignores *United States v. Gingras*, 2002 WL 31106609 (D.N.H. 2002) (not for publication) a First Circuit trial court decision in a matter of striking similarity to the present case.[4] The Court, "[a]dhering to principles within our circuit, cited approvingly to *Gingras*, where the trial court in New Hampshire "refused to disqualify as co-counsel for a criminal defendant an attorney who had previously represented an immunized witness within the case." *Rivera-Hernandez* at 434.

In *Gingras*, a case nearly identical to that here, an attorney had (1) provided legal representation to a prospective government witness, (2) negotiated immunity for the prospective witness, and (3) represented the witness in forfeiture matters directly related to the case about which he testified before the Grand Jury. In *Gingras*, once immunity was granted and the grand jury testimony was completed, the witness' attorney was retained as the co-counsel for the defendant who was indicted based on the witness' testimony before the Grand Jury. Judge McAuliffe, in a thoughtful and detailed analysis of the law, determined there was no conflict in

---

[4]The Court in *Rivera-Hernandez* also found additional support for its denial of the government's motion to disqualify in *Gingras*.

allowing counsel to undertake the legal representation of the indicted defendant.[5]  See *In Re Grand Jury Proceedings*, 859 F.2d at 1026 (cited in *Gingras* as holding that a district court should not have disqualified an attorney in the absence of evidence suggesting that the attorney's former client, an immunized witness, had any incriminating or confidential information generating an actual or serious potential conflict).  See also, *United States v. Shepard*, 675 F.2d 977 (8th Cir. 1982).  The circumstances in the instant case are almost identical to those in *Gingras*.  Mr. Traini and Mr. Lepizzera have performed all the cautionary tasks the *Gingras* Court indicated were sufficient to establish and insure informed consent and to waive any actual or potential conflict.

A defendant's right to counsel of his choice is the constitutional principal that must guide this Court's consideration of the government's attempt to deprive Mr. Caramadre of his right to the counsel of Mr. Traini.

**ARGUMENT**

      A.    **THE ETHICAL RULES CITED BY THE GOVERNMENT ARE NOT APPLICABLE TO THE FACTS AND CIRCUMSTANCES OF THIS CASE AND DISQUALIFICATION IS THEREFORE NOT APPROPRIATE.**

With respect to issues such as conflict of interest, "the district court is vested with the power and responsibility of supervising the professional conduct of attorneys appearing before it." *Kevlik v. Goldstein*, 724 F.2d 844, 847 (1st Cir. 1984).  The standards for Professional Conduct applicable in this court are the Rules of Professional Conduct adopted by the Rhode Island Supreme Court ("the Rules").  See, Local Rules, United States District Court for the District of Rhode Island, *LR Gen. 208*.  Therefore, whether Mr. Traini's representation of Mr. Caramadre in this case will create a conflict of interest is governed, in part, by Rule 1.7, which provides in relevant part:

---

[5]Judge McAuliffe actually analyzed the *Gingras* case against the dictates of *Wheat* and still denied disqualification.

Rule 1.7. Conflict of interest: Current clients. (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
(1) the representation of one client will be directly adverse to another client; or
(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
(1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
(2) the representation is not prohibited by law;
(3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
(4) each affected client gives informed consent, confirmed in writing.

As adopted by the court on February 16, 2007, eff. April 15, 2007.

The government, in its Memorandum in Support of Motion of United States' to Disqualify Counsel based on Conflict of Interest (hereinafter "*Gov. Mem*. at ___") states that Mr. Traini's representation would violate the Rules because his "representation of one client will be directly adverse to another client." See Rule 1.7(a)(1);  The government says that "[f]or at least the past three years, Traini has represented unindicted co-conspirator Edward Maggiacomo, Jr. ("Maggiacomo"), a long-time associate of Caramadre, in criminal, civil and administrative proceedings related to the scheme alleged in the Indictment."  *Gov. Mem. at 1.*  As a result of such representation, the government says "Traini secured a non-prosecution agreement on Maggiacomo's behalf."  *Gov. Mem. at 2.*  The government asserts that "Maggiacomo is certain to be a key government witness in its case against Caramadre."  *Gov. Mem. at 1.*  Therefore, because of the confluence of these two facts, the government says "Traini's representation of Caramadre and Maggiacomo constitutes an irreconcilable, unwaivable conflict of interest."  (*Id.*),

and, therefore, "… Traini should be disqualified from representing Caramadre."[6] *Gov. Mem. at 1-2.*

### B.   THE GOVERNMENT'S FACTUAL RECITATION DOES NOT SHOW EITHER AN *ACTUAL* OR *POTENTIAL* CONFLICT OF INTEREST.

The nub of the government's argument is that Mr. Traini has supposedly gained, or obtained, confidential information from Mr. Maggiacomo during their attorney-client relationship that may be used in discrediting him during cross-examination in the Caramadre trial.[7]  The government submits that with "Traini's guidance and representation, Maggiacomo agreed to meet with and cooperate with the government in its investigation of Caramadre …" *Gov. Mem. at 2.*  In exchange for Mr. Maggiacomo's assistance and truthful information and testimony, "the Government entered into a non-prosecution agreement with Maggiacomo."  *Id.*  Thereafter, Mr. Maggiacomo testified before the grand jury on June 16, 2011. *Id.*

Without further identifying the information Mr. Maggiacomo may have provided to Mr. Traini, either specifically or generally, the government appears to argue that the merely alleged

---

[6]The fallacy of the government's position is brought into focus when compared to this Court's own *Foster* warning form that is used in cases that are arguably far more egregious than the instant case.  A copy of the Advice of Rights and Waiver of Conflict of Interest Form is attached hereto as Exhibit "A".  This form is provided to multiple defendants who may be simultaneously represented by the same counsel at trial.  The form, which is promulgated by the Court, notifies the defendants of the potential conflict inherent in such a representation, **but still allows the defendants to waive the conflict.**   Any assertion by the government that Mr. Traini's representation of Mr. Caramadre is "irreconcilable" and "un-waivable" is unsupportable.

[7]The government explicates in great detail Mr. Traini's past representation, as support for its request to abrogate Mr. Caramadre's constitutional right to his choice of counsel.  Without identifying any actual conflict, the government reports that "Traini has represented Maggiacomo in litigation and a variety of other matters related to his employment with Caramadre…"  *Gov. Mem. at 2.*  Amplifying on the extent of the relationship between Mr. Traini and Mr. Maggiacomo, the government writes that Mr. Traini's representation of Mr. Maggiacomo dates back at least to 2009 and includes his representation of Mr. Maggiacomo "in proceedings before the Rhode Island Department of Business Regulation, in multiple civil actions brought by insurance companies, and in regulatory investigations conducted by the United States Securities Exchange Commission and the FINRA Department of Enforcement."  *Id* .  Closer to the point, the government further notes that "Traini also represented Maggiacomo throughout the entire grand jury investigation leading to the current Indictment and, … continues to represent Maggiacomo to this day."  *Id.*  In fact, Mr. Maggiacomo has retained new counsel to represent him in his capacity as a witness in this trial.  Although the government's historical narrative attempts to outline the Traini-Maggiacomo relationship, the identified representations, in and of themselves, do not create a potential or actual conflict.  The government has the burden of demonstrating the existence of such a conflict, and it has fallen woefully short of doing so.

existence of such information, with the concomitant duty on Mr. Traini not to share it, lest he breach his duty of confidentiality, will somehow prejudice both Mr. Caramadre and Mr. Maggiacomo.  The government seems to be arguing that the unidentified information Mr. Traini gained during his interaction with the government on Mr. Maggiacomo's behalf to secure the non-prosecution agreement and, thereafter, "oversee" Mr. Maggiacomo's grand jury appearance, somehow gives Caramadre an advantage.[8]

However, what Mr. Maggiacomo told the grand jury is not a secret now, and is subject to full disclosure as *Jencks* material.[9]  Additionally, any statements Mr. Maggiacomo made to the government in his proffer prior to his appearance and when accompanied by Mr. Traini during his debriefing are also subject to disclosure as FD-302 statements of a witness.[10]  In addition, Mr. Traini herein represents that he has no impeachment information or other facts concerning Mr. Maggiacomo or his involvement in this case which was not disclosed or otherwise made available to the government during the exchanges of information between Mr. Traini and the prosecutors, during the proffer session, or during Mr. Maggiacomo's grand jury appearance. Therefore, Mr. Traini does not have any information to impart to Mr. Lepizzera about the statements made by Mr. Maggiacomo during the negotiations for his non-prosecution agreement, which have not already been provided or will not be provided by the time of trial.

Finally, it is important to note that Mr. Traini's inability (by application of the Rules) to disclose confidential information he received from Mr. Maggiacomo would bar any disclosure whether Mr. Traini represented Mr. Caramadre or not.  The government's entire argument for

---

[8] One of the government's most significant problems in this matter is that it assumes such information exists.

[9] The *Jencks* material in this case had already been provided to Mr. Lepizzera before Mr. Traini entered his appearance.

[10] *Id.*

disqualification is based on the assumption that Mr. Traini is possessed of confidential information he does not have, and that he would disclose that information in violation of the Rules.  The government also argues conversely, that Mr. Traini's failure to use this non-existent confidential information to Mr. Caramadre's advantage, by either himself cross-examining Mr. Maggiacomo or in preparing Mr. Lepizzera to do so, would result in ineffective assistance of counsel to Mr. Caramadre.  This argument is specious.

The Rules provide an absolute bar to the disclosure of confidential information by Mr. Traini under any circumstances.  It is impossible for him to be found ineffective for failing, in abject violation of an ethical Rule, to use confidential information in cross-examining Mr. Maggiacomo, which he is absolutely prohibited from using.  Moreover, as Mr. Traini and Mr. Lepizzera each acknowledges, Mr. Traini will neither cross-examine Mr. Maggiacomo nor will he prepare Mr. Lepizzera to do so.  The fact that Mr. Lepizzera will be responsible for cross examining Mr. Maggiacomo, eliminates any potential conflict engendered by Mr. Traini's representation of Mr. Caramadre.

Recognizing its Achilles heel, the government, attempts to bolster its baseless argument, by saying that "[b]ased on the information provided by Maggiacomo and his grand jury testimony, it is expected that Maggiacomo will be a principal government witness against Caramadre." *Gov. Mem. at 2*.  The government argues that, among other circumstances, the non-prosecution agreement and the fact that Mr. Maggiacomo will be a witness against Mr. Caramadre, combined with Mr. Maggiacomo's having been represented by Mr. Traini creates "[a] serious *potential* for an irreconcilable conflict of interest [to] exist[]." *Gov. Mem. at 3*.  The government claims that Mr. Traini is now attempting to "switch sides" as trial approaches and

represent Mr. Caramadre at trial.[11]  As a consequence, the government opines that "[t]he conflict of interest created by Traini's representation of both a criminal defendant (Caramadre) and a principal government witness against him (Maggiacomo) is so blatant and apparent that it would be obvious to any objective and reasonable attorney."[12]  *Gov. Mem. at 3.*  These statements are nothing more than conclusory assertions without any underlying factual support.

The government, compelled to acknowledge the presumption in favor of counsel of choice, but arguing that the presumption can be overcome by either demonstrating *actual* conflict or by showing a *serious potential for conflict*, suggests that a "[a] hearing is necessary to determine whether Maggiacomo and Caramadre knowingly and voluntarily waive any *potential* conflict of interest." *Gov. Mem. at 4* ("While multiple representations are not *per se* violative of constitutional guarantees of effective assistance of counsel, *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978) and quoting *Wheat*, 486 U.S. at 160 and Fed. R. Crim. P. 44(c) ("[T]he court shall promptly inquire with respect to joint representation .... Unless it appears there is good cause to believe no conflict of interest is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.").  While the Court is certainly required to ensure that Mr. Caramadre's rights are protected, the government's proposed evidentiary hearing is beyond the pale.

At this hearing, the government wants the Court to ask "why Maggiacomo has apparently agreed to terminate his relationship with Traini and how, if at all, his consent was obtained to

---

[11]The notion that Mr. Traini was somehow on the government's "side" by representing Mr. Maggiacomo is laughable.  Mr. Traini represented Mr. Maggiacomo first as a target, then as a witness; no more, no less.  At no time did he represent the prosecution in this matter.  Moreover, in response to the government's concerns, both  Mr. Maggiacomo and Mr. Caramadre have stated that each fully understands the risk of any potential conflict and nevertheless consents to Mr. Traini's representation of Mr. Caramadre.  See, *Gingras*, 2002 WL 31106609.

[12]This statement implies that Mr. Traini is simultaneously representing both Mr. Maggiacomo and Mr. Caramadre **in this case**.  This is simply not true.  As noted herein, Mr. Maggiacomo has secured new counsel to represent him in his capacity as a witness in this matter.

release Traini to represent Caramadre at trial." *Gov. Mem. at 4.*  The government further argues that "a hearing is required to determine whether Maggiacomo has knowingly and voluntarily consented to (1) forfeit[13] Traini as his counsel (in this and other proceedings); (2) waive the duty of loyalty and other protections of the attorney-client relationship; (3) consented to Traini using the information he provided in the course of the attorney-client relationship against him; and (4) consented to Traini being part of Caramadre's defense team that will cross-examine him and advocate against his credibility at trial." *Gov. Mem. at 5.*  These are not legitimate or proper questions.

Mr. Maggiacomo has not been asked –and is not required—to consent to any acts of representation which may occur in the future specifically because they are premature; he has not been asked to waive his attorney-client privilege or Mr. Traini's duty of loyalty and is not waiving, nor is he required to waive them in order to consent to Mr. Traini's representation of Mr. Caramadre, as the Rules absolutely protect him on those issues; he has not consented to Mr. Traini using against him any information he provided in the course of the attorney-client relationship, again because such consent has not been requested nor is it necessary to Mr. Traini's representation of Mr. Caramadre; and his consent to Mr. Traini's being part of Mr. Caramadre's defense team is made with the knowledge and understanding that Mr. Traini will not cross-examine him nor participate in Mr. Lepizzera's preparation to cross-examine him; Mr. Traini will have no role in Mr. Caramadre's position on Mr. Maggiacomo's credibility.   There

---

[13]The government does not explain why or how Mr. Traini's representation will be forfeited in the future.  While another hearing might be required at that time, his ability to represent Mr. Maggiacomo in the future can neither be automatically pretermitted nor prematurely determined.  Moreover, with all due respect, it is also none of the government's concern.

is, therefore, no need for a hearing which would invariably infringe on Mr. Maggiacomo's attorney client privilege.[14]

Equally invasive is the government's request that  the Court inquire of Mr. Caramadre to determine whether he knowingly consents to waive any actual or possible conflict of interest. The government wants the Court to inquire and determine if Mr. Caramadre understands the consequences and the possible ways Mr. Traini's representation will possibly be encumbered. *Gov. Mem. at 4-5*.  This will likewise impinge upon Mr. Caramadre's attorney client communications with Mr. Lepizzera concerning his consent.[15]  Furthermore, the government has produced no information or identified any evidence that would suggest that counsel's representations are somehow unreliable or inaccurate so as to necessitate an evidentiary hearing. Such a hearing is unnecessary because the Court is able to rely upon counsel's representations. See *Rivera-Hernandez*, supra.

### C.    THE GOVERNMENT'S ALTERNATIVE ARGUMENT – A POTENTIAL CONFLICT.

Arguing in the alternative, and moving from a claim of an *actual* conflict to a *potential* conflict, the government says that "[t]he *potential* conflict of interest is so serious that it is unwaivable."  *Gov. Mem. at 5*.  The government claims that it is "apparent from these issues, even if both Maggiacomo and Caramadre knowingly consent to all of the above, Traini must be disqualified from representing Caramadre at trial given the profound, irreconcilable conflict that exists between the interests of Caramadre and Maggiacomo."  *Id.*

---

[14]On this point, there are two attorney-client relationships at play.  Mr. Maggiacomo's relationship with Mr. Traini and Mr. Maggiacomo's relationship with his independent counsel.  Moreover, the phrasing of the questions the government wants the Court to ask Mr. Maggiacomo, impliedly set out in its Memorandum, assumes the existence of facts it has not yet proven and is circular.

[15]In both of these circumstances, if the Court decides that Mr. Maggiacomo and/or Mr. Caramadre need to be examined, any such questioning should occur *in camera* and outside the presence of the government.

Without explaining how or why, the government claims "[t]his conflict by necessity will prejudice both Maggiacomo and Caramadre." *Gov. Mem. at 5.*[16] Citing *Wheat*, 486 U.S. at 164, the government argues that "[t]he divided loyalties of an attorney who has previously represented either a codefendant or government witness represent a 'serious potential for conflict.'". *Id.* The reason for such conflict and the hampering of Counsel's ability to zealously represent his current client is because counsel "still owes a duty of confidentiality to the previous client who, *if and when called as a witness, must be cross-examined vigorously.*" *Id.* See, *United States v. Lemieux*, 532 F.Supp.2d 225, 230 (D. Mass. 2008), where the trial judge, citing *Ross v. Heyne*, 638 F.2d 979, 983 (7th Cir.1980), acknowledged that an actual conflict would arise *where defense counsel is unable to cross-examine prosecution witness effectively because attorney also represented witness.* Mr. Caramadre and Mr. Maggiacomo have diligently examined the possible conflicts and each has knowingly and intelligently waived them.

The government's memorandum overlooks the factual setting that led to the holding in *Wheat*. There, the attorney who represented the prior defendants—one who went to trial and won a portion of the case and pled to a lesser charge and the other who pled guilty—would be the only attorney representing the defendant Wheat. Therefore, he would be the attorney conducting the cross-examination of his prior clients. See *Wheat*, 486 U.S. at 156 ("This scenario [the attorney simultaneously representing the witness and the defendant][17] would pose a conflict of interest for Iredale [Wheat's prospective attorney], *who would be prevented from*

---

[16]Presenting still another alternative theory for Mr. Traini's disqualification, the government says that "it . . . [Traini's representation] creates an actual and *apparent* conflict of interest that undermines the integrity of the judicial process." *Gov. Mem. at 12*.

[17]The witness, Gomez-Barajas, had entered into a plea agreement with the government, that had been negotiated by the attorney, but had not been accepted by the trial court. The Court was concerned that Gomez-Barajas could still withdraw his plea, which would then make Wheat a witness against him, thereby creating the irreconcilable conflict because the attorney would simultaneously be representing both a witness and the defendant in the same matter. *Wheat* at 155-156.

*cross-examining* petitioner and thereby from effectively representing Gomez-Barajas.")  In the instant case, this problem is obviated because Mr. Traini (a) has herein informed the Court that he has no information which is not known to the government and which the government is not otherwise obligated to disclose under *Brady* or *Jencks* which could be used to cross-examine Mr. Maggiacomo, and (b) will be co-counsel, has already agreed to construct a Chinese Wall between himself and Mr. Lepizzera, and has further herein informed the Court that he will not conduct the cross-examination of Maggiacomo or assist Mr. Lepizzera in preparing to do so.[18] See *Gingras*, supra.

Without any support, the government says that "Traini's representation of both clients will require him to either betray his duty of loyalty to Maggiacomo or provide ineffective assistance to Caramadre by defending him with one proverbial arm tied behind his back."  *Gov. Mem. at 4*.[19]  The government fails to identify any potential conflict that is not entirely eliminated by Mr. Lepizzera being responsible for cross examining Mr. Maggiacomo at trial. This abject failure by the government is fatal to its Motion to Disqualify.

### D.   AN INFORMED, KNOWING AND INTELLIGENT WAIVER IS SUFFICIENT TO PROTECT BOTH MAGGIACOMO AND CARAMADRE'S RIGHTS.

Although a valid waiver of conflict-free counsel may alleviate the problem in certain circumstances, there is no "flat rule" which obligates a district court to accept such a waiver.

---

[18]Without being completely disingenuous, the government cannot seriously claim that the construction of the Chinese Wall is inapplicable, inappropriate or otherwise insufficient, since their own guidelines suggest exactly the same procedure when creating a "privilege team" or "taint team" to review confidential attorney client communications or other privileged information.  See, United States Attorney's Manual at §9-13.420 (December 2006).

[19]Without belaboring the point, Mr. Traini is prevented by the Rules from breaching his duty of loyalty to Mr. Maggiacomo, and will have neither of his hands tied behind his back because neither hand contains any knowledge or information unknown to the government and not otherwise discoverable.  While the government would undoubtedly respond to any challenge that it has not pointed to any such information with the retort that such an argument makes their point, because they have no way of knowing about it, they have utterly failed to provide the court with any reason to believe that any such information exists.  This despite Mr. Traini's representation that the only information which does exist has been provided or made available to the government.

*Wheat*, 486 U.S. at 160.   Appellate review of trial court rulings disqualifying attorneys on conflict-of-interest grounds is "limited to inquiring whether the lower court has abused its concededly wide discretion."  See, *In re Grand Jury Proceedings*, 859 F.2d at 1024.

The government, contending that the potential for conflict in the instant case is more compelling than in *Wheat*, argues that "This case presents perhaps the most compelling conflict of interest possible, as Traini seeks to represent a defendant after for years having represented one of the chief witnesses against that defendant." *Gov. Mem. at 6*.   The government further argues "Indeed, it is difficult to find a case []with a conflict as egregious as here, where Traini seeks to represent both a criminal defendant and a chief witness against him." *Gov. Mem. at 6-7.*[20]

The government's statements are nothing more than hyperbole.  A reading of the recent Supreme Court and First Circuit cases relied on by the government will readily disclose the factual distinctions between the predicate for the holdings in those cases and the circumstances in this case.  In *United States v. Alfonzo–Reyes*, 592 F.3d 280 (1st Cir. 2010), where the Court upheld the disqualification of counsel, the Court noted that although the defendant waived any conflict of interest the attorney's "representation may have placed her in the position *of having to cross-examine her former client*, a witness with whom she shared confidences protected by attorney-client privilege." *Id*. at 294 (emphasis added).

The same circumstances and basis for disqualification existed in another case cited by the government, *United States v. Lanoue*, 137 F.3d 656 (1st Cir. 1998).  In *Lanoue*, the trial court disqualified an attorney who had earlier represented a co-defendant who was acquitted in a separate trial.   The Court of Appeals, in affirming the trial court's ruling, based its decision on

---

[20]The government conveniently failed to find *Gingras*, which is on all fours with the instant case.  *Gingras* permitted the representation to proceed, over the government's objection, despite such "egregious" conflicts.  *Gingras*, supra.

the fact that the "government told the district court that it might call the [co-defendant] as a witness to testify on whether [defendant] possessed a firearm" and that "a conflict of interest could arise *if [the attorney] had to cross-examine [his former client]*." *Id*. at 663 (emphasis added).

With respect to a potential conflict of interest, the First Circuit has noted that such a conflict "is a matter that is uniquely factual and presents a special dilemma for trial courts." *Lanoue*, 137 F.3d at 663.   Accordingly, "[t]he evaluation of the facts and circumstances of each case ... must be left primarily to the informed judgment of the trial court." *Wheat*, 486 U.S. at 164, 108 S.Ct. 1692.  See *Alfonzo–Reyes*, 592 F.3d 280.  When this Court conducts that individual evaluation it will find that, as in *Wheat*, *Alfonzo–Reyes*, and *Lanoue,* and all the other cases cited by the government, the overarching factual foundation for the decision was that the allegedly conflicted attorney *would be required [**and unable**] to cross-examine his former client*. No such circumstance exists in this case.  Instead, this Court should follow the rulings in *Rivera-Hernandez*, *Gingras*, and *Santiago-Lugo*.

The trial judge in *Gingras*, distinguishing the facts in *Lanoue* from defendant Gingras' matter, said

> This case is markedly different from *Lanoue*. In *Lanoue*, the defendant apparently was represented by *one* attorney, the one whose potential conflict might serve to deny him effective representation. Here, however, Attorney Gordon will serve as *co-counsel* to Gingras's lead counsel, Attorney Weinberg. In the event Bellavance is actually called as a government witness and testifies, Gordon, as he fully informed both Gingras and Bellavance, *will neither participate in cross-examining Bellavance nor consult with Attorney Weinberg regarding the preparation of such cross-examination,* nor will he reveal any privileged information derived from his representation of Bellavance. Those limitations fully protect Bellavance, and will not interfere with Gingras's constitutional right to the effective assistance of counsel. Attorney Weinberg, as lead counsel, is entirely capable of providing effective representation in all respects. To the extent Gordon provides legal assistance to Gingras without compromising Bellavance's interests, as Gingras has agreed, Bellavance is not prejudiced and Gingras is benefitted,

> and, of course, Gingras can lay no claim to Gordon's unfettered representation or
> to access to privileged information Gordon may have obtained during his
> representation of Bellavance. He has no right to either Gordon's representation, if
> it involves a conflict, nor to information protected by the attorney-client privilege.
> *Gingras* at \*5.

The same protections afforded the defendant and potential witness in *Gingras* exist in this

case.  Based on the same reasoning, the government's request to disqualify Mr. Traini should be

summarily denied.

### E.   EFFORTS MADE BY MR. TRAINI TO ASSURE THE KNOWING AND INTELLIGENT DECISION BY BOTH MR. MAGGIACOMO AND MR. CARAMADRE WHETHER TO CONSENT TO MR. TRAINI'S REPRESENTATION OF MR. CARAMADRE.

In May of 2012, Mr. Lepizzera requested that Mr. Traini serve as co-counsel, assisting in

Mr. Caramadre's representation.  Before agreeing to represent Mr. Caramadre, Mr. Traini

consistent with his ethical obligations contacted Mr. Maggiacomo to discuss the matter with him

and to secure his consent.  Based upon personal and telephone conferences in which he

addressed issues associated with his potential representation of Mr. Caramadre, and after Mr.

Maggiacomo's consultation with independent counsel, Mr. Traini obtained Mr. Maggiacomo's

oral consent.  Mr. Traini subsequently confirmed in correspondence to Mr. Maggiacomo their

previous discussions concerning Mr. Maggiacomo's consent, and requested his written

consent.[21]

Mr. Traini represents herein that his disclosures to Mr. Maggiacomo concerning the

potential for conflict and the application of the ethical rules, specifically Rules 1.6 (Client

Confidentiality), 1.7 (Conflict of Interest: General Rule),  1.8 (Conflict of Interest: Prohibited

Transactions),  1.9 (Conflict of Interest: Former Client), and 3.3 (Candor Toward a Tribunal),

was fully and completely explained.  Lastly, Mr. Traini's letter encouraged further consultation

---

[21]This is consistent with the procedure established in *Gingras*.

between Mr. Maggiacomo and independent counsel.  Thereafter, Mr. Maggiacomo provided Mr. Traini with his written consent.

Upon receipt of Mr. Maggiacomo's written consent, Mr. Traini reiterated to Mr. Caramadre and Mr. Lepizzera he would not and could not disclose to them of any confidential information he acquired during the course of his representation of Mr. Maggiacomo, and that if Mr. Maggiacomo was called as a witness, he would not participate in case preparation related to Maggiacomo or in his cross-examination.  Mr. Traini also suggested that Mr. Caramadre and Mr. Lepizzera again discuss the matter.  Thereafter, Mr. Caramadre provided Mr. Lepizzera with his written consent acknowledging the role Mr. Traini would play as co-counsel and the restrictions placed upon the representation.

**F.  THE GOVERNMENT'S CLAIM THAT MR. MAGGIACOMO WILL BE PREJUDICED BY MR. TRAINI'S REPRESENTATION OF MR. CARAMADRE IS NOT FACTUALLY SUPPORTED AND IS CLEARLY WRONG.**

The government, without specifying its factual basis, asserts that "Traini's representation of Caramadre at trial will inevitably put Traini in the position of choosing between the interests of his current client (Caramadre) and his other or former client (Maggiacomo)."  *Gov. Mem. at 8.*  Asserting that "[t]he prejudice to Maggiacomo is readily apparent", the government proffers that "[i]t cannot possibly be in Maggiacomo's best interests to terminate his relationship with the attorney who is fully-versed in this matter and has represented him admirably for years."  *Id.*  With all due respect to the government attorneys, provided with all the necessary information about the potential for conflict, what is in Mr. Maggiacomo's best interest is for him—and not the government—to determine.

Further, the government claims that Mr. Maggiacomo might be somehow prejudiced because he has entered into a non-prosecution agreement with the government that has

limitations, and that he still faces criminal exposure if he were to violate the terms of that agreement in any way.  In this circumstance, Mr. Maggiacomo is no different than any other witness who has made an agreement with the government—he must live up to the terms of his deal.  The claimed prejudice in this situation is that when Mr. Maggiacomo is preparing to testify "[a]nother attorney – one who is far less familiar than Mr. Traini with the facts of the case - would need to represent Mr. Maggiacomo during these meetings."  *Gov. Mem. at 9*.  The government "worries" that trial preparation with a different attorney will, "increase[e] the risk that Maggiacomo will violate the terms of the agreement."  This leads one to ponder – Whose testimony does the government expect and want, Mr. Maggiacomo's or Mr. Traini's?

Mr. Maggiacomo's non-prosecution agreement is simple and straightforward.  It requires that he (a) meet with the government to prepare for trial; (b) testify when and where requested; and (c) continue to tell the truth.  It does not require Mr. Traini to do or not do anything.  It does not prevent Mr. Traini from representing Mr. Caramadre and it certainly does not require Mr. Traini to remain as Mr. Maggiacomo's counsel, nor could the government have imposed such requirements.  The government has obviously believed that Mr. Maggiacomo has been truthful up to this point—otherwise, they presumably would not have entered into the agreement.  And they have every right to believe that he will appear when and where they ask him to and that he will continue to tell the truth.  There is no doubt that Mr. Maggiacomo likewise understands that, and would, whether he was being represented by Mr. Traini or by anyone else.[22]

Whether or not Mr. Maggiacomo's new counsel, who will accompany him through trial, is as familiar as Mr. Traini with the facts of the case is not the issue.  Mr. Maggiacomo is the witness and he is familiar with the facts of the case and with what he has already told the

---

[22]There are myriad circumstances under which Mr. Traini's representation of Mr. Maggiacomo could terminate, including a breakdown of the attorney client relationship and illness.  The suggestion that Mr. Traini must remain as Mr. Maggiacomo's counsel  has no support in the law and is, quite frankly, ludicrous.

government and the grand jury.  Whether he appears as a witness or meets with the government

in the company of Mr. Traini or anyone else is immaterial.  The only thing that counts is that he

show up and that he tell the truth.  The government has absolutely no reason to believe that he

will not do both of those things and they have pointed to absolutely no evidence that suggests

otherwise.  Mr. Traini's representation has no bearing on Maggiacomo's testimony, and the

government's suggestion to the contrary should be rejected out of hand.

Without any basis, the government implies that Mr. Maggiacomo is being manipulated

into consenting to allow Mr. Traini to represent Mr. Caramadre.  The government writes:

> In addition, he is named as a defendant in ongoing civil actions brought by
> insurance companies in which he faces the potential loss of large sums of money.
> Moreover, he is a target of an SEC investigation in which his securities license
> and substantial fines are at risk.  Maggiacomo is more than ever in need of highly-
> qualified counsel and it seems *unimaginable* that terminating his longstanding
> relationship with Traini can be in his best interests.

*Gov. Mem. at 9.*

As in other areas of its argument, the government bases this statement on no facts and

points to absolutely nothing to suggest it has a reasonable basis for making such a statement.  As

mentioned above, what is in Mr. Maggiacomo's best interest, when he knows all the facts and

potential conflicts, is for him to decide.  As support for its argument, the government cites

*United States v. Lemieux*, 532 F.Supp. 2d 225 (D. Mass. 2008), as "a well-reasoned analysis of

this issue, … in which an attorney who had earlier represented a codefendant for a brief period

following his arrest sought to represent another defendant at trial."  *Gov. Mem. at 9.*  However, in

*Lemieux*, and the other cases cited by the government, upholding disqualification decisions made

by the trial court, the government fails to note or distinguish the consistent factual predicate in

each case—that the attorney who represented the former client was the sole attorney representing

the current defendant and would be required to cross-examine his former client.  That is the

circumstance in virtually every case cited by the government upholding a disqualification

decision by the trial judge:

- *Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir.), cert. denied, 488 U.S. 908 (1988) ("Second, Morris' accusation against Kempton adversely affected Kempton's cross-examination of Morris. Kempton's personal interest in preserving his reputation and avoiding criminal prosecution may have *impacted the manner of the cross-examination*.")

- *United States v. Lemieux*, 532 F.Supp. 2d 225 (D. Mass. 2008)("The primary concern is that the attorney's loyalties may be compromised if the former client testifies at the trial of the successive client because: (1) the attorney may be tempted to use confidential information learned during the prior representation to the disadvantage of the former client, or (2) the attorney *may fail to cross-examine the former client rigorously* for fear of revealing or misusing privileged information learned during the prior representation to the disadvantage of the successive client.")

- *United States v. Agosto*, 675 F.2d 965, 971 (8th Cir. 1982)("The second potential for conflict is that attorney Walters may overcompensate and *fail to fully cross-examine* defendants Bruins and Newstrum for fear of misusing confidential information.")

- *United States v. Williams*, 439 Fed.Appx. 254-256-57 (4th Cir. 2011)(Williams argued there was no conflict because "Dowdy's ability to earn a Rule 35 reduction in his sentence was tied to his truthful testimony, which would not infringe [his attorney]'s ability to vigorously cross-examine Dowdy. However, controlling Fourth Circuit law clearly supports disqualification under these circumstances [*when the attorney must cross-examine a previous client*].")

- *United States v. Sanchez Guerrero*, 546 F.3d 328, 334-35 (5th Cir. 2008)("Because the district court held that Womack would have a conflict of interest between attempting to discredit Witness or going easy on him to the detriment of Guerrero, it disqualified Womack as counsel.")

- *United States v. Voigt*, 89 F.3d 1050, 1074-75 (3d Cir.), cert. denied, 519 U.S. 1047 (1996)("The district court's … decision,… indicates that the principal, if not the sole, basis for its decision was Binns' prior status as an attorney for the Trust, Anchors, Anderskow and, perhaps, Travis during the grand jury investigation. *To allow him … possibly to examine persons as to whom he represented beforehand … is exactly the concern that the cases have raised*.")

- *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir. 1994), *cert. denied*, 515 U.S. 1132 (1995) ("the need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial.")

- *United States v. Locascio*, 6 F.3d 924, 932 (2d Cir. 1993), *cert. denied*, 511 U.S. 1070 (1994) (affirming disqualification of counsel, in part because prior representation of potential government witness gave rise to conflict of interest), cert. denied, 511 U.S. 1070 (1994).

- *In re Grand Jury Proceedings*, 859 F.2d at 1021, 1025-26 (1st Cir. 1988) ("[G]enerally there must be a direct link between the clients of an attorney - or at least some concrete evidence that one client, such as an immunized witness, has information about another client, such as a target of a grand jury investigation - before the right to counsel of choice is barred by disqualification.")

Despite the government's argument, that is not the case here.  Because of the steps taken by Mr. Traini and Mr. Lepizzera, the single circumstance arguably supporting disqualification—that Mr. Traini would be required to cross-examine Mr. Maggiacomo—does not, and will not, exist in the case at bar.

## G.  THERE IS NOT AND WILL NOT BE ANY PECUNIARY CONSEQUENCES THAT FLOW AS A RESULT OF MR. TRAINI REPRESENTING MR. CARAMADRE.

As its last-ditch effort to disqualify Mr. Traini, the government, relying on virtually the same circumstances disregarded for disqualification in *Lemeiux*, alleges "that '[t]he second major possibility of conflict in the successive relationship situation is that the attorney's pecuniary interest in possible future business may cause him to make trial decisions with a view toward avoiding prejudice to the client he formerly represented.'"  *Gov. Mem. at 10*.  The government claims that "[t]his concern is particularly acute in this case as Traini has represented (and may still represent) Maggiacomo in the ongoing civil actions and SEC investigation related to the facts of this case."  *Id*.  The dilemma, according to the government, is that "[b]y representing Caramadre in this case, Traini will be presented with an irreconcilable conflict, in which he will forced to decide whether to take steps that may well prejudice a prior client whom he may hope will once again be his client, or else fail to properly serve his current client by forgoing viable areas of cross examination and advocacy."  *Id*.

The government asserts that "[i]f Traini is allowed to represent Caramadre, he will be part of a defense team that will undoubtedly seek to attack the credibility of Maggiacomo throughout the trial, including during argument and on cross-examination of Maggiacomo. Traini will be put into a position of choosing between attacking the credibility of his client (Maggiacomo) or refraining from doing so to the detriment of his other client (Caramadre). A defense Caramadre is likely to pursue is to attempt to shift the blame to Maggiacomo, by arguing that Maggiacomo on his own accord lied to the insurance companies and to broker-dealer Lifemark. While this defense may offer some benefit at trial to Caramadre, it will be directly adverse to Maggiacomo's interests in the ongoing civil and administrative actions. Traini will therefore be forced to take steps that could well harm Maggiacomo." *Id.* As noted above, however, Mr. Traini will not cross-examine Mr. Maggiacomo and will not argue or participate in the preparation for his cross-examination. These circumstances, combined with the knowing waivers adequately protect both Mr. Maggiacomo and Mr. Caramadre.

## H.   THE GOVERNMENT'S CONTENTION THAT THE CONFLICT UNDERMINES THE INTEGRITY OF THE ADVERSARIAL PROCESS IS INCORRECT.

### 1.   MR. TRAINI'S POSSESSION OF INFORMATION GAINED FROM HIS REPRESENTATION OF MAGGIACOMO IS NOT A BASIS FOR DISQUALIFICATION IN LIGHT OF MR. MAGGIACOMO'S CONSENT.

The government next contends that even if Mr. Traini's representation of Mr. Caramadre does not create a disqualifying conflict of interest under Rule 1.7, he should nevertheless be disqualified in the interest of protecting the integrity of the trial process. *Gov. Mem. at 12-13.* ("Allowing Traini to represent Caramadre would effectively permit Caramadre to purchase the services of the attorney of a chief witness against him, together with the knowledge that attorney has received from that witness and the government."). This argument, which is nothing more than a gratuitous and baseless attack on Mr. Traini, presupposes that Mr. Traini will deliberately

violate his ethical obligations to Mr. Maggiacomo, an assertion for which the government can offer absolutely no support.  Since Mr. Traini has no such information, and would be prohibited from disclosing it to Mr. Lepizzera or Mr. Caramadre in any event, no information is being "purchased."  There is no appearance of impropriety because (1) Mr. Caramadre fully understands and accepts the limitation on Mr. Traini's assistance, and (2) Mr.  Lepizzera "is primarily responsible for and capable of providing entirely independent and entirely conflict-free representation."  *Gingras*, 2002 WL 31106609, at *5.

The government also argues that because Mr. Traini has participated in numerous meetings and discussions with government counsel concerning this case, both in and outside of the presence of Mr. Maggiacomo; was present as the government prepared Mr. Maggiacomo for his Grand Jury testimony, and was privy to the "legal and investigative strategies" employed by the government "would, at the very least, create a significant appearance of impropriety for the attorney of a lead cooperator to represent the defendant after he has secured a non-prosecution agreement for his first client. See *Wheat*, 486 U.S. at 160."  *Gov. Mem. at 13*.  This argument is unavailing. [23]

First, there were not "numerous meetings and discussions" with government counsel in this case which would not have occurred under any other circumstances.  During the course of proceedings in the Sealed Case, Mr. Traini certainly had many conversations with government counsel.  In none of these discussions did the government disclose its "legal or investigative strategy."  Nor would (or did) the government disclose such sensitive information to any defense lawyer, even here, during the negotiations culminating in Mr. Maggiacomo's non-prosecution

---

[23] Any "appearance" of impropriety is entirely the government's own doing.  The government's Motion to Disqualify undermines this Court's prior efforts to limit the public disclosure of the unindicted co-conspirator's identity, who had not been identified in the indictment.  The Court and the parties had previously agreed to redact their identity from any public filings with the Court.  The government's motion ignores this prior directive.

agreement.  Moreover, even if such disclosures were made, they were not privileged. Mr. Traini made no agreement with the government concerning them, and any adverse consequence to the government of such disclosure is the government's own doing.

Secondly, the government's argument makes no sense.  There is nothing about the discussions the attorneys may have had, or even the fact that they occurred, or about Mr. Traini's representation of Mr. Maggiacomo in the negotiations for his non-prosecution agreement, which was public prior to the government's disclosure of this information in its disqualification papers. In fact, the government's disclosure of this information runs counter to the efforts made by the court and the parties to maintain the confidentiality of certain information from the Sealed Case. The government has deliberately manufactured this so-called "appearance of impropriety" and now seeks to rely upon it to justify disqualification.  This should not be permitted.

### 2. ALLOWING MR. TRAINI TO REPRESENT MR. CARAMADRE WILL NOT CREATE A BASIS FOR FUTURE CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

The government argues that "To permit Traini to represent Caramadre now, when such a clear conflict of interest exists, would simply lay the groundwork for a future claim by Caramadre that he was denied effective assistance of counsel due to Traini's allegiance to Maggiacomo.  As the Supreme Court noted in *Wheat*, 'trial courts confronted with multiple representations face the prospect of being "whipsawed" by assertions of error no matter which way they rule. If a district court agrees to multiple representation, and the advocacy of counsel is thereafter impaired as a result, the defendant may well claim that he did not receive effective assistance.'  Permitting Traini to represent Caramadre, given his longstanding representation of a chief government witness, is a precursor to an ineffective assistance of counsel claim that will be raised if Caramadre is convicted at trial." *Gov. Mem. at 13*.

Specifically, the government argues that Mr. Traini's representation of Mr. Caramadre would subject a guilty verdict to a challenge on ineffective assistance of counsel grounds, given the similarities between this case and *Lanoue*.  In *Lanoue*, a criminal defendant chose the same attorney who had represented a codefendant in an earlier trial. 137 F.3d at 663.  The government moved to disqualify the attorney because the government intended to call the previously represented codefendant as a witness in the defendant's trial.  *Id*.  Despite the fact that both the codefendant and Lanoue had "waived any right to conflict-free representation" and the codefendant "submitted an affidavit" claiming that he had no information concerning the matters about which the government proposed to have him testify, the court nevertheless disqualified the attorney from representing Lanoue.  *Id*.  The court reasoned that although the circumstances of the case represented the "outer limits" of a potential conflict, it was necessary to disqualify counsel because if a conflict did arise "the defendant may not receive the representation to which he is entitled, resulting in an ineffective assistance of counsel appeal." 137 F.3d at 664.

This is not the case here.  First, there was only one attorney involved in *Lanoue*.  The distinctions in this case, due to the presence of Mr. Lepizzera, have already been articulated.  And second, in *Lanoue*, the witness stated under oath (by affidavit) that he "had no knowledge" of the matters about which the government intended to have him testify.  That very strange circumstance may have caused the court some concern.[24]  Here, the government knows exactly what Mr. Maggiacomo will testify about.  They have debriefed him and have his grand jury testimony.  They were sufficiently satisfied with his credibility to agree to waive prosecution.  They have no reason to believe and have articulated no facts to support a reasonable belief that

---

[24]That the government would call a witness whom it had not debriefed and whose prospective testimony was unknown to it, or whom it knew in advance would have no knowledge of the matters involved in the trial, is itself an unusual circumstance.  Not surprisingly, this may have led the court to surmise that the witness was being called by the government for some reason other than his testimony.

he will not continue to be truthful if they call him at trial.  And here, both the court and the government are aware that Mr. Traini will have no involvement in his cross-examination.

## CONCLUSION

In *Gingras*, the government also raised the specter of a claim by the defendant of ineffective assistance.  Judge McAuliffe dismissed that maneuver out of hand, concluding that the defendant was not entitled to any confidential information from the prior representation and hence there was no prejudice to the defendant.  Gingras, 2002 WL 31106609, at *5.  There, the court ruled that "disqualification [was] not warranted because: (1) a material element of a Rule 1.9 violation is not established; and (2) neither fairness nor the appearance of fairness of Gingras's trial will be compromised by allowing Gordon to serve in a limited role as co-counsel to Gingras."  *Gingras*, 2002 WL 31106609 at *4.

Consistent with the ethical rules, Mr. Maggiacomo has given knowing, informed, and voluntary consent to Mr. Traini's representation of Mr. Caramadre, under circumstances that fully protect his own rights to confidentiality.  There is no evidence, and the government has offered no reason to believe, that Mr. Maggiacomo's consent does not qualify as "informed consent."   Given Mr. Traini's thorough disclosure, Mr. Maggiacomo's consultation with independent counsel and documented consent, as well as the protective limitation placed on Mr. Traini's representation, agreed to by both Mr. Maggiacomo and Mr. Caramadre, Rule 1.7(b) has been satisfied, and no violation of Rule 1.7(a) is possible.  And, as in *Gingras*, Maggiacomo, like Gordon, has not agreed to any disclosure of information protected by the attorney-client privilege, consistent with the goals of Rule 1.6.  Mr. Maggiacomo's and Mr. Caramadre's knowing waivers of any actual or potential conflict, coupled with Mr. Lepizzera's independent representation with respect to Mr. Maggiacomo's examination, eliminates any possible

29

ineffective assistance of counsel claim based on Mr. Traini's appearance as co-counsel, and

vitiates any conflict of interest which would support disqualification.

WHEREFORE, for all of the reasons set forth herein, and the arguments of counsel at the

hearing, the government's Motion to Disqualify Mr. Traini must be denied.

Respectfully submitted,
Joseph Caramadre, defendant
By His Attorneys,

*/s/Michael J. Lepizzera, Jr.*
Michael J. Lepizzera, Jr. (#4995)
117 Metro Center Blvd. – Suite 2001
Warwick, RI 02886
Tel.    (401) 739-7397
Fax     (401) 691-3558
email:  mlepizzera@leplap.com

*/s/Anthony M. Traini*
Anthony M. Traini (4793)
56 Pine Street – Suite 200
Providence, RI 02903-2819
Tel.    401.621.4700
Fax     401.621.5888
Email   amt@atrainilaw.com

*/s/ Thomas R. Kiley*
Thomas R. Kiley, BBO No. 271460
William J. Cintolo, BBO No. 084120
COSGROVE EISENBERG & KILEY
One International Place, Suite 1820
Boston, MA 02110
Tel.    617.439.7775
Fax     617.330.8774
Email   trkiley159@aol.com

Dated: July 10, 2012              Email   wcintolo@aol.com

## **CERTIFICATION**

I hereby certify that on the 10th day of July, 2012, I filed this document through the ECF system with notice to all parties listed therein.

*/s/ Scott K. DeMello*