UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| JOSEPH CARAMADRE | ) |
| | ) Criminal No. 11-186 -S |
| and | ) |
| | ) |
| RAYMOUR RADHAKRISHNAN | ) |
| | ) |
| Defendants. | ) |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES'
MOTION TO DISQUALIFY COUNSEL BASED ON CONFLICT OF INTEREST**

On June 18, 2012, the United Stated filed a motion to disqualify attorney Anthony Traini ("Traini"), citing his long standing representation of chief government witness Edward Maggiacomo, Jr. ("Maggiacomo"). On July 10, 2012, defendant Joseph Caramadre ("Caramadre") filed an Opposition to the United States' motion to disqualify, arguing, in essence, that any conflict can be resolved merely by having attorney Michael Lepizzera ("Lepizzera") perform the cross-examination of Maggiacomo. For the numerous reasons provided in its moving papers, the United States continues to strongly believe that it would be improper to permit Traini, the attorney of a primary government witness, to represent defendant Caramadre. In reply to defendant's Memorandum, the United States raises six key points:

1. **Maggiacomo Is Still Represented By Traini**

Perhaps the most glaring aspect of defendant's filing is the tacit acknowledgment that Traini is still representing Maggiacomo in the civil and administrative matters related to the scheme alleged in the Indictment. While Caramadre expresses in a footnote that Maggiacomo has

retained new counsel to represent him in his capacity as a witness in this trial, he adds that Maggiacomo has not even been asked to forego his representation by Traini in any other matter. (Def. Mem. at 13 and at fn. 13). What this means, apparently, is that Traini intends to continue to represent Maggiacomo in the ongoing civil actions and the SEC investigation related to this scheme.

None of the cases cited by defendant concern an attorney who is *currently* representing a government witness and who, *at the same time*, seeks to represent the defendant. It is easy to understand why. If Traini were allowed to represent Caramadre, he would be part of a defense team that will likely attack Maggiacomo's credibility. At the same time, he would continue to represent Maggiacomo in civil and administrative matters in which any damage to Maggiacomo's credibility could severely impact him.

An example of the profound nature of this conflict just arose in the civil cases pending before the Court. Last week, the attorney for another Government witness, who similarly entered into a non-prosecution agreement with the Government and is prepared to testify against Caramadre, advised the Government that he was engaged in settlement discussions with the attorney for Western Reserve Life Insurance Company ("Western Reserve"), one of the insurance company plaintiffs in the civil actions. The attorney for Western Reserve then advised the United States that Western Reserve had not commenced settlement discussions with Maggiacomo because Traini, his counsel, entered his appearance for Caramadre in this criminal proceeding. The Western Reserve attorney indicated that it seemed unlikely to him that Traini would agree to have Maggiacomo provide Western Reserve with the information it seeks related to Caramadre. This is simply one of numerous ways in which Traini, by seeking to simultaneously represent

Maggiacomo and Caramadre, will have to choose between the interests of one client or the other.

### 2. Maggiacomo Has Not Waived the Attorney-Client Privilege

Defendant's Memorandum makes clear that Maggiacomo has not even been asked if he agrees to waive the attorney-client privilege. Instead, defendant argues that Maggiacomo's apparent agreement generically to waive a conflict of interest is sufficient because Traini will not share any confidential information gleaned from Maggiacomo with Lepizzera. Thus, for all intents and purposes, Maggiacomo has not waived anything; he apparently refuses to let Traini disclose any information communicated by him and refuses to allow anything that he told Traini to be used against him in cross-examination.

The result of this non-waiver is that Traini may well be in a position at trial in which he is aware of some information provided to him by Maggiacomo but be unable to use that information to assist Caramadre. At that point, the conflict of interest would become an actual one. Nonetheless, at the apex of circular logic, the defense argues there can be no conflict of interest because "The Rules provide an absolute bar to the disclosure of confidential information by Mr. Traini under any circumstances." (Def. Mem at 11). By this faulty reasoning, there could never be a conflict of interest where an attorney represents multiple clients, due to the prohibition against revealing confidential information. But such is not the law. See In re Grand Jury Proceedings, 859 F.2d 1021, 1026 (1st Cir. 1988)("If [the attorney] receives information from [a former client] that could aid in the defense of defendant, his duty to defendant would be to use and to disclose such information as they formulate their strategy. However, by so doing [the attorney] would breach his ethical obligation to [the former client] to not disclose the information"), citing In re Grand Jury Proceedings on April 10, 1979, 480 F.Supp. 162 at 167 (N.D.OH, 1979).

In <u>United States v. Alfonzo-Reyes</u>, 592 F.3d 280 (1st Cir. 2010), <u>cert. denied</u>, 131 S.Ct. 366 (2010), the First Circuit affirmed the disqualification of an attorney who had previously represented a witness who the government indicated may testify at trial. The Court of Appeals upheld the disqualification even though "the government witness *was willing to waive the attorney client privilege* and represented this willingness to the district court." <u>Id.</u> at 294 (emphasis added). In the instant case, not only does Traini seek to represent a defendant while simultaneously representing a key government witness, he has not even obtained the consent of that witness to waive the attorney-client privilege and even denies such a waiver is necessary.

A similar refusal to waive the attorney-client privilege was considered in <u>United States v. Campbell</u>, 491 F.3d 1306 (11th Cir. 2007), in which the Court of Appeals affirmed the disqualification of an attorney who previously represented a government witness notwithstanding the suggestion made to the district court that another attorney conduct the cross-examination of the witness in question. As here, the attorney in <u>Campbell</u> failed to secure a waiver of the attorney-client privilege, a fact deemed significant by the Court of Appeals:

> While it is true that Campbell was free to waive the conflict, the district court was not required to accept his waiver. <u>Ross</u>, 33 F.3d at 1524. Unlike in <u>Ross</u>, where all of the relevant co-defendants waived any potential conflict of interest, *Greene refused to waive the attorney-client privilege, which means that the instant case presents a stronger justification for disqualification than even <u>Ross</u>*.

<u>Id.</u> at 1312 (emphasis added), <u>citing</u> <u>United States v. Ross</u>, 33 F.3d 1507, 1523 (11th Cir. 1994), <u>cert</u>. <u>denied</u>, 515 U.S. 1132 (1995) ("the need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial").

As the Court in Campbell concluded, the failure to obtain a waiver of the attorney-client privilege from the government witness presents a strong justification for disqualification. Without such a waiver, a defendant's attorney is prevented from using any and all information at his disposal to assist the defendant, resulting in an unavoidable conflict.[1]

### 3. Traini's Attempt to Minimize His Knowledge Should Be Rejected

At the core of defendant's Opposition is the assertion made by Traini that "he has no impeachment information or other facts concerning Mr. Maggiacomo or his involvement in this case which was not disclosed or *otherwise made available* to the government during the exchanges of information between Mr. Traini and the prosecutors, during the proffer session, or during Mr. Maggiacomo's grand jury appearance." (Def. Mem. at 10, emphasis added.) It simply defies common sense to believe that Traini, who has spent many, many hours with Maggiacomo over at least a three year period, is not in possession of information that, for whatever reason, was not transmitted to the United States during its brief meetings with Maggiacomo. Traini seeks to avoid this core problem by cleverly indicating that all facts concerning Maggiacomo have been "made available" to the United States, an apparent reference to the brief proffer sessions that took place between the United States and Maggiacomo in Traini's presence. While Traini certainly made Maggiacomo "available" to the United States, it cannot seriously be argued that Traini is not in possession of confidential information that has never been shared with the Government.

Traini's attempt to downplay his knowledge of privileged information is not novel. Indeed,

---

[1] Campbell is yet another case in which the defense unpersuasively proposed having co-counsel conduct cross-examination of the former client witness. See District Court's Order on Motion to Disqualify Counsel in United States v. Campbell, 2005 WL 6436177 (N.D.Ga., 2005).

in United States v. Lemieux, 532 F. Supp.2d 225 (D. Mass. 2008), the district court disqualified an attorney who has earlier represented a co-defendant for a brief period following his arrest. Counsel in Lemieux, like Traini, attempted to "downplay" his prior representation, by arguing that he "represented [the co-defendant] only for the limited purpose of his initial appearance and the issues of probable cause and detention." Id. at 233. The Lemieux court found even this limited representation sufficient to warrant disqualification as the record made clear that the attorney and co-defendant "necessarily had substantive communications concerning the facts and law underlying the instant charges . . ." Id. In this case, there can be no question that Traini has had extensive substantive communications with Maggiacomo concerning the scheme alleged in the Indictment.

### 4. A "Chinese Wall" Will Not Resolve This Conflict

The heart of defendant's argument is that so long as Traini refrains from conducting the cross-examination of Maggiacomo, there is no conflict of interest. This argument is erroneous and avoids the reality of what will take place during trial. By virtue of the fact that Maggiacomo's testimony is expected to be powerfully incriminating against Caramadre, the defense team will need to decide upon a strategy of whether or not it will seek to attack Maggiacomo's credibility. If believed by the jury, Maggiacomo's testimony alone can convict Caramadre of some of the charges in the Indictment. As co-counsel, Traini will be part of the defense team (and is likely to become lead attorney) that will have to decide upon a strategy of how to combat Maggiacomo's testimony. Even if Lepizzera is the attorney conducting the questioning, Traini will still partake in the formulation of the overall defense strategy, which will likely include attacks on Maggiacomo's credibility. Moreover, Traini does not address who will examine other witnesses to whom

Maggiacomo made misrepresentations, including representatives of Lifemark, Maggiacomo's broker-dealer. If Traini conducts these examinations, or in any way assists Lepizzera in his preparation for these witnesses, Traini may be forced again to attack the credibility of Maggiacomo by arguing that it was Maggiacomo, and not Caramadre, who made the misrepresentations in question. Furthermore, Traini does not address who will be arguing to the jury. If Traini seeks to make an opening or closing statement to the jury, he will be forced to consider whether he should attack the credibility of his other client, Maggiacomo. If it is Lepizerra who will argue the case to the jury, Traini will undoubtedly assist in the formulation of the arguments to be made, including whether and how Maggiacomo's credibility is to be attacked. The simple fact is that no matter who conducts the actual cross-examination of Maggiacomo, Traini will be sitting at the defense table and taking a very active, if not lead, role in the formulation of the overall defense strategy, the examination of Maggiacomo-related witnesses and the arguments to the jury, all of which will likely include direct attacks on Maggiacomo's credibility.

Another essential problem with defendant's argument is that trials are, by definition, uncertain. Although Maggiacomo testified in the grand jury, no one knows exactly how he will testify at trial. There may well be differences, whether inadvertent or not, between what Maggiacomo testifies to at trial and the confidential information he previously imparted to Traini. There may also be new pieces of evidence, whether testimonial or documentary, that will have an impact on the significance of Maggiacomo's testimony and the information he may have communicated to Traini. Because of the uncertain nature of trials, the Supreme Court made clear that there need not be an actual conflict to disqualify counsel but only a "serious potential for conflict." Wheat, 486 U.S. at 164. Moreover, the Supreme Court observed that this determination

must be made prior to the commencement of trial, when "relationships are seen through a glass, darkly" and "nascent conflicts of interest are notoriously hard to predict." Id. at 162. The uncertainties of the trial process led the court in United States v. Delevo, 2002 WL 844401 (D. Mass. 2002), quoting the Supreme Court in Wheat, to disqualify an attorney who previously represented an "essential" government witness:

> The likelihood and dimension of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

Id., quoting Wheat, 486 U.S. at 162-63. It could well be that during trial, Traini will find himself in possession of information previously gleaned through his representation of Maggiacomo that will be relevant to the defense of Caramadre. The conflict at that point would become an actual one as Traini would be forced to choose between violating the confidences of one client (Maggiacomo) to assist in the defense of another (Caramadre) or to sit silent, knowing he could provide information that could assist at trial. No matter what he chooses, the groundwork will be laid for an ineffective assistance of counsel claim by Caramadre.

In its Opposition, the defense ignores the two Fifth Circuit cases cited by the Government in which the Court of Appeals rejected the formation of a "Chinese Wall" between defense counsel, pursuant to which one attorney would not participate in the cross-examination of his former client. See United States v. Sanchez Guerrero, 546 F.3d 328, 334-35 (5th Cir. 2008) and United States v. Gharbi, 510 F.3d 550, 553 (5th Cir. 2007). The Gharbi decision is particularly

informative. In Gharbi, the defendant sought to enlist co-counsel who also represented the defendant's daughter, a potential government witness. In response to a motion to disqualify, the defense suggested that a "Chinese Wall" be established, pursuant to which co-counsel would not share any confidential information and would not cross-examine the witness in question. Id. at 552. The Court of Appeals affirmed the disqualification of counsel despite the proposed "Chinese Wall" solution, holding that it was "impossible to guess whether [defendant's] combined defense team would pull punches on cross-examination . . . or [if they would] attack [the witness] with great detail and thereby jeopardize her plea agreement." Id. at 553. The Sanchez Guerrero and Gharbi decisions make clear that the conflict created when a former client is a government witness cannot be solved merely by finding another attorney to conduct the cross-examination of that client.

Courts across the country have similarly rejected the proposal of having a non-conflicted attorney conduct the cross-examination of the witness in question. For example, in United States v. Williams, 81 F.3d 1321 (4th Cir. 1996), the Court of Appeals affirmed the disqualification of an attorney who had previously represented a government witness, notwithstanding counsel's suggestion that "auxiliary" counsel be retained to cross-examine the witness in question. Id. at 1325. The Court held: "Nor could that conflict so surely have been avoided by the device of retaining auxiliary counsel for the special purpose of cross-examining Ms. Williams. . . . Significant, unavoidable risks would have remained. After all, Crawley, would remain at counsel table and likely be the auxiliary lawyers's chief source of information about the case." Id.

A similar result was reached in United States v. Campbell, 2005 WL 6436177 (N.D. Ga. 2005) (not for publication), aff'd 491 F.3d 1306 (2007), in which the government moved to

disqualify an attorney who had previously represented a government witness. The district court rejected counsel's suggestion that the conflict could be solved merely by having another attorney conduct the cross-examination of the witness in question:

> This Court agrees with the authorities cited above and concludes that permitting Sadow to cross-examine Greene would not rectify the actual, albeit imputed, conflict in this case. Although Sadow has agreed to cross-examine Greene, this Court cannot prevent Gillen from assisting Sadow in preparing for the cross-examination of from participating in the formulation of Defendant's defense as a whole.

Id. at *4. See also United States v. Tinsley, 166 F.3d 336 (4th Cir. 1998), cert. denied, 525 U.S. 1113 (1999) (unpublished) (affirming disqualification of attorney who previously represented government witness even where attorney proposed that co-counsel would cross-examine witness, holding that "Representation by counsel who had represented a significant potential witness for the Government poses a real risk of conflict, one that might not be eliminated by having co-counsel examine the witness."); United States v. Stites, 56 F.3d 1020, 1025 (9th Cir. 1995) (upholding disqualification of attorney even though "Chinese Wall" proposed because "Chinese Wall could have crumbled."); United States v. Stewart, 1997 WL 611594 at * 3 (E.D. Pa. 1997), aff'd 185 F.3d 112, 121 (3d Cir. 1999) (disqualifying attorneys who represented government witness, noting that "even if [attorneys] do not personally [cross-examine witness], they will undoubtedly be able to supply such information to Mr. Welsh or otherwise to aid him in his cross-examination of those witnesses. Messrs. Russell and Young will most likely be present at the defense table while this occurs."); United States v. Breslin, 947 F. Supp. 866, 870 (E.D. Pa. 1996) (disqualifying attorney who previously represented government witness, rejecting idea that co-counsel would conduct cross-examination of witness, holding that "The strategy of having Mr. Weinstein conduct the

cross-examination of Chucas, however, does not diminish the court's finding that there exists a serious potential for a conflict of interest concerning Mr. Turner's representation of Defendant Mersky. As joint counsel for Mersky, Mr. Turner and Mr. Weinstein must necessarily consult with each other and share information in order to effectively defend Mersky. This includes sharing information which may have been obtained by Mr. Turner during the course of his attorney-client relationship with Chucas."); and United States v Perez, 694 F. Supp. 854, 858 (S.D. Fla. 1988) (rejecting suggested alternative of a "pinch hitter" for the conflicted lawyer as "uninviting" and "not contemplated by the ethical rules.").

     All of the above courts reached the same conclusion when a conflicted attorney suggested walling himself off from the cross-examination of the witness in question. They have all concluded that the mere act of having another attorney ask the questions of the witness is insufficient to ameliorate the conflict of interest. These decisions have recognized that the conflicted attorney will still partake in the formulation of the overall defense strategy, which may well include attacks on the witness's credibility, and that they will still partake in other significant aspects of the case related to the witness in question, including examining related witnesses and arguing to the jury. This Court should adopt the reasoning of the numerous cases cited above and determine that a "Chinese Wall" among defense counsel is an insufficient remedy given the profound conflict of interest between Caramadre and Maggiacomo.

    **5. <u>The Cases Cited by Defendant are Clearly Distinguishable</u>**

     In its moving Memorandum, the United States cited to an avalanche of cases supporting the proposition that an attorney cannot represent a criminal defendant after having represented a government witness in the same matter. Two of the cases relied upon by the United States are the

two First Circuit cases to rule on this issue.  See United States v. Reyes, 592 F.3d 280 (1st Cir. 2010) and United States v. Lanoue, 137 F.3d 656 (1st Cir. 1998).  Defendant points to no appellate court decision to support his position.[2]  Indeed, the only First Circuit Court of Appeals decision relied upon by the defendant, United States v. Santiago-Lugo, 167 F.3d 81 (1st Cir. 1999), is completely inapposite to the case at bar, as the attorney in Santiago-Lugo had previously represented a government witness in a transaction that was "completely unrelated to the transactions relevant to this case." Id. at 84.  Having found no support in any Court of Appeals decisions, defendant instead relies upon an unpublished decision from the District of New Hampshire and a decision from the District of Puerto Rico.  These cases are clearly distinguishable from the facts of the present case.

Defendant first relies on United States v. Rivera-Hernandez, 332 F.Supp.2d 423 (D. P.R. 2003).  In Rivera-Hernandez, the government sought to disqualify attorneys who had previously represented the defendant's father, who had received immunity and testified before the grand jury.  In denying the motion to disqualify, the district court relied on the attorneys' "assurances that they never discussed with [the father] the substance of his testimony prior to [his] appearance before the Grand Jury." Id. at 432-33.  Given the representations by the attorneys that they had never discussed the substance of the case with the witness prior to his grand jury testimony, the court held that "the government has not presented any evidence or description, even in general terms,

---

[2] Curiously, defendant accuses the Government of "ignoring" the Supreme Court decision of United States v. Gonzalez-Lopez, 548 U.S. 140 (2006).  See Def. Mem. at 4.  What defendant fails to point out is that Gonzalez-Lopez had nothing to do with conflicts of interest.  Rather, the Supreme Court in Gonzales-Lopez found a Sixth Amendment violation when the district court denied a *pro hac vice* motion after an out-of-state attorney had violated a local rule by passing a note during a hearing.  Id.

regarding the matters over which [the father] will be questioned or has knowledge which are not known by his son . . ." Id. at 433.  Given the attorneys' representations that they had no substantive communications with the father and the government's inability to describe the areas of questioning it would have of the father, the court ruled that there was no need to disqualify counsel.  Id.  The reasoning behind this decision in inapplicable to this case as Traini has had significant and numerous substantive communications with Maggiacomo and the United States has represented that Maggiacomo will testify that he made numerous misrepresentations in furtherance of the scheme.

The other case relied upon by defendant is the unpublished decision of United States v. Gingras, 2002 WL 31106609 (D. N.H. 2002).  In Gingras, the court denied the government's motion to disqualify co-counsel, who had previously represented a potential government witness who had been given immunity.  As an initial matter, Gingras is distinguishable in several critical respects.  First, the attorney in Gingras had ceased any representation of the witness in question long before the disqualification motion was filed.  Traini, by contrast, has represented Maggiacomo for three years and, indeed, is still representing Maggiacomo to this day.  The Gingras court thus predicated its entire analysis on the rules governing *former* clients, not *current* clients.  Second, the conflicted attorney in Gingras agreed that "he would not participate in case preparation related to [the witness] or his cross-examination."  Id. at *2.  Here, Traini is not suggesting that he not participate in any aspect of the case related to Maggiacomo.  Nor could he, as the effort to combat Maggiacomo's testimony is likely to be essential to the defense.  Third, the witness in Gingras had been given immunity, thereby providing the witness with significantly more protection from being charged with the underlying crime.  No such protection has been given to Maggiacomo as he

remains subject to criminal prosecution for his role in the scheme should he violate any aspect of the non-prosecution agreement. And fourth, in Gingras, there was no prospect of divided loyalties based on the attorney's possible representation of the former client at some future point. In this case, Traini attempts to reserve for himself the ability to represent Maggiacomo in the future, arguing that "his ability to represent Mr. Maggiacomo in the future can neither be automatically pretermitted nor prematurely determined." (Def. Mem. at fn. 13).[3] Finally, even the Gingras decision recognized that "a defendant's right to choose particular counsel *should normally be overridden* if, for example, his or her selection would create a conflict of interest." Gingras, 2002 WL 31106609 at *3, (emphasis added).

Beyond the factual differences between Gingras and the current case, the United States believes that Gingras was wrongly decided. The Gingras court began its analysis by stating that the determination of whether a conflict exists is to be governed by the New Hampshire Rules of Professional Conduct and how those rules are interpreted by the New Hampshire Supreme Court. While the ethical rules governing attorney conduct are relevant to this inquiry, the law is clear that "the disqualification of a defendant's chosen counsel need not be, and in this case was not predicated on a finding of a specific [Rules of Professional Conduct] violation." United States v. Voight, 89 F.3d 1050, 1076 (3d Cir. 1996). After beginning its analysis on an incorrect premise, the court in Gingras compounded its error by providing a circular analysis of the ethical rule regarding conflicts of interest. After determining that there were four elements to determine

---

[3] It should also be noted that contrary to defendant's contention, defendant has not in fact followed all of the procedures used in Gingras. In Gingras, the defendant made part of the record all of the communications between the attorney and the witness and the attorney and the defendant, including written waivers. Gingras, 2002 WL 31106609 at *4.

whether an attorney was conflicted due to representation of a former client, the court concluded that there could be no violation if the former client has consented to the new representation. By this reasoning, obtaining the consent of a former client would obviate any and all conflicts. This, of course, is contrary to <u>Wheat</u> and its progeny, which clearly hold that a trial court has the discretion to reject a proffered waiver in "the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." <u>Wheat v. United States</u>, 486 U.S. 153, 163 (1988).

### 6. **An evidentiary hearing is warranted**

If an issue of actual or potential conflict arises, the Court is duty bound to inquire into the circumstances and determine whether the defendant can receive a fair trial with effective assistance of counsel. <u>United States v. Santiago-Lugo</u>, 167 F.3d 81, 84 (1st Cir. 1999). <u>See</u> also <u>Cuyler v. Sullivan</u>, 446 U.S. 335 (1980) (trial court has duty to inquire when Court knows or reasonably should know conflict exists); <u>Mountjoy v. Warden, New Hampshire State Prison</u>, 245 F.3d 31, 38 (1st Cir. 2001) (same). "This need to investigate potential conflicts arises in part from the legitimate wish of district courts that their judgments remain intact on appeal." <u>Wheat</u>, 486 U.S. at 161.

Defense counsel argued in its filing that the Court "may rely on counsel's representations assuring the absence of conflict." (Def. Mem at 5 and Fn. 1). In a chambers conference, counsel went even further, suggesting that requiring testimony from Maggiacomo and/or Caramadre to determine whether their waivers of conflict of interest are knowing and voluntary would improperly intrude upon the attorney-client privilege. It is true that in fulfilling its *initial* obligation to inquire into the *existence* of a conflict of interest, the trial court may rely on counsel's

representations. See Santiago-Lugo, 167 F.3d at 84, citing a case from the Second Circuit, United States v. Kilti, 156 F.3d 150, 153 (2nd Cir. 1999). But here a conflict unquestionably exists; defense counsel's proposal of a "Chinese Wall" to cure the conflict both implicitly and explicitly acknowledges the existence of the conflict. That rubicon has been passed.

Kilti, the Second Circuit case on which the defense relies, describes the procedures the Court should follow once the Court has an indication there may be a conflict. First, the Court noted that if a district court ignores a possible conflict and does not conduct the initial inquiry, reversal of a defendant's subsequent conviction is automatic. Kilti, 156 F.3d at 153. Moreover, if, through this inquiry, the Court determines that the attorney suffers from an actual *or potential* conflict of interest, the court has a "disqualification /waiver" obligation. Id. (Emphasis added). If the conflict is so severe that no rational defendant would waive it, the court must disqualify the attorney. Id. If it is a lesser conflict, the court must conduct a hearing pursuant to United States v. Curcio 680 F.2d 881 (2nd Cir. 1982), to determine whether the defendant will knowingly and intelligently waive his right to conflict-free representation. Id.

As the First Circuit has said, "It has long been recognized that there are inherent difficulties in reviewing claims of conflicts of interests. These difficulties arise because in a case of joint representation of conflicting interests the evil ... is in what the advocate finds himself compelled to *refrain* from doing. It is often unclear that the conflict of interests, and not pure trial strategy, is the reason for the tactics adopted—or forgone—at trial. United States v. Hernandez-Lebron, 23 F.3d 600, 603 (1st Cir. 1994) (internal citations and quotations omitted). Moreover, as the Supreme Court recognized, "a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the

trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." Wheat, 486 U.S. at 161.

The United States submits that the conflict of interest is so apparent that Traini should be disqualified even if Caramadre and Maggiacomo knowingly waive any and all conflicts. If the Court agrees with this position, it will be unnecessary to inquire of Caramadre and Maggiacomo their understanding of the scope of the conflict they would waive. If, however, the Court considers the conflict to be waivable, it should satisfy itself that both Maggiacomo and Caramadre fully understand the nature of the conflict and determine whether any waiver is knowing and voluntary. For these reasons, an evidentiary hearing is warranted to prevent the Court from being "whip-sawed" by assertions of error no matter which way it rules. Id. at 161.

## CONCLUSION

For the reasons stated in its Memorandum of Law in Support of its Motion to Disqualify and Counsel and this Reply Memorandum, the United States therefore respectfully requests that a hearing be conducted and that Attorney Traini be disqualified from representing Caramadre in this case.

Respectfully submitted,

PETER F. NERONHA
UNITED STATES ATTORNEY

/s/ Lee H. Vilker
LEE H. VILKER
Assistant U.S. Attorney

JOHN P. MCADAMS
Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

     I, hereby certify that on this 16th day of July 2012, I caused the within Government's Reply Memorandum of Law to be served via the Court's Electronic Filing System on:

**For Joseph Caramadre**:
Michael J. Lepizzera, Esq.
Anthony Traini, Esq.

**For Raymour Radhakrishnan**:
Olin Thompson, Esq.

                                            /s/ John P. McAdams
                                            John P. McAdams
                                            Assistant U.S. Attorney
                                            United States Attorney's Office
                                            50 Kennedy Plaza, 8th Floor
                                            Providence, RI 02903