UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| JOSEPH CARAMADRE; and ) | Criminal No. 11-186-S |
| RAYMOUR RADHAKRISHNAN ) | |

**JOSEPH CARAMADRE'S SURREPLY MEMORANDUM OF LAW IN SUPPORT OF HIS OPPOSITION TO THE UNITED STATES' MOTION TO DISQUALIFY COUNSEL BASED ON CONFLICT OF INTEREST**

Defendant Joseph Caramadre ("Mr. Caramadre") submits this Surreply Memorandum in support of his opposition to the United States' Motion to Disqualify Attorney Anthony Traini ("Mr. Traini") as his co-counsel with Attorney Michael Lepizzera. The purpose of this memorandum is to respond to the government's reply memorandum in two areas: (i) to correct the government's misstatements and mischaracterizations of the issue before the court; and (ii) to distinguish the cases cited by the government.[1]

1. **The government continues to misstate the facts and mischaracterize the ultimate issue before the Court.**

The government continues its relentless effort to divert the court's attention from Mr. Caramadre's 6th Amendment right to counsel of his choice by directing the Court to focus on the purely collateral issue of Mr. Traini's representation of Mr. Maggiacomo. This occurs in two areas. First, the government has exaggerated Mr. Maggiacomo's role as one of scores of witnesses in the upcoming trial for the sole purpose of having Mr. Traini disqualified. A review of the Indictment reveals that the overwhelming majority of the counts arise out of various "bond" transactions in which Mr. Maggiacomo had very little, if any, involvement.  Second, the

---

[1] The length of this memorandum is due, in part, to the number of cases cited by the government in its reply brief.

1

government has focused entirely on the potential (and completely illusory) disadvantages to Mr. Maggiacomo if Mr. Traini remains part of Mr. Caramadre's defense team.[2]  For example, in its reply memorandum, the government offers that Western Reserve Insurance Company has not engaged in settlement discussions with Mr. Maggiacomo because Mr. Traini has entered his appearance for Mr. Caramadre in the criminal case (Gov. Reply Mem. at 2).

The government again mischaracterizes these events.  In the first place, Mr. Maggiacomo is not a defendant in any civil case in which Western Reserve is a plaintiff.  It is therefore not surprising that Western Reserve has not sought to settle with Mr. Maggiacomo.  Second, counsel for Western Reserve was involved in settlement negotiations with the other "non-prosecution" party well before Mr. Traini entered his appearance for Mr. Caramadre, and it is therefore unlikely that this had anything to do with a lack of settlement discussions at that time, even by the proper plaintiff.  Third, whether or not some other lawyer, in some other matter, has made no effort to conduct settlement negotiations because of what he perceives as a conflict, without even inquiring about the matter (as opposed to consulting with the government), is completely irrelevant to whether Mr. Caramadre should be deprived of his constitutional right to have Mr. Traini as part of his defense team of choice.

Additionally, the government continues to harp on Mr. Maggiacomo's failure to waive the attorney-client privilege.  Such a waiver is not required to allow Mr. Traini to remain a member of Mr. Caramadre's defense team.  Moreover, Mr. Caramadre readily acknowledges the continued existence of the privilege, and has specifically consented to Mr. Traini maintaining

---

[2]While the Court has the obligation to ensure that the proceedings have the "requisite integrity", the government's argument that it somehow has an interest in making sure that Mr. Traini continues to represent Mr. Maggiacomo is absurd, predicated upon its belief that Mr. Maggiacomo would be better served if Mr. Traini continues as his attorney.  Although one is left to wonder whether the government is truly concerned about Mr. Maggiacomo's legal welfare, or whether it simply seeks to remove Mr. Traini and his experience and acumen from Mr. Caramadre's defense team, such concerns are not relevant to the decision at hand.  The government is understandably concerned with the unfamiliar prospect of now facing a defense attorney who knows the case as well as the government, and who has had as much time to prepare for trial as government counsel.

that privilege while defending him. Finally, the press to waive the privilege betrays the government's lack of real concern for Mr. Maggiacomo and the tactical nature of its Motion. The facts on this issue dispose of the government's argument.[3]

In short, the government has sought, incorrectly and improperly, to focus the court's attention on whether Mr. Maggiacomo may be effectively represented by counsel other than Mr. Traini in a case where Mr. Maggiacomo is not a defendant, not on trial, and will not be prosecuted by the government, rather than on whether Mr. Caramadre is entitled to have Mr. Traini assist his current counsel in defending against this sixty-six (66) count indictment. The government has gone so far as to create out of whole cloth an argument, based on no facts, and no evidence, which is contradicted by Mr. Maggiacomo's express consent, given after consultation with independent counsel, that Mr. Traini's representation of Mr. Maggiacomo is so critical to Mr. Maggiacomo that he could not possibly have knowingly and intelligently consented to Mr. Traini's representation of Mr. Caramadre. The government has also sought, again improperly, to divert the court's attention to the question of whether Mr. Traini can effectively represent Mr. Maggiacomo (rather than Mr. Caramadre) and whether Mr. Maggiacomo's interests will be better served by having Mr. Traini continue to represent him in cases other than the one before the court here, despite Mr. Traini having received Mr. Maggiacomo's knowing, intelligent and voluntary consent following consultation with independent counsel. Mr. Caramadre has expressed his clear understanding of any potential conflict and has consented to Mr. Traini's representation knowingly and voluntarily after

---

[3]The court will recall that this was also the case in *United States v. Gingras*, 2002 WL 31106609 (D.N.H. 2002)(not for publication), in which the court declined to order disqualification.

consultation with counsel other than Mr. Traini.[4] This—and not whether Mr. Maggiacomo is satisfied or better off with Mr. Traini's representation of him—is the real issue before the court.

**2. The steps taken by the defense team adequately protect the integrity of these proceedings.**

In addition to securing the necessary conflict waivers, Mr. Lepizzera and Mr. Traini have put in place tried and true safeguards that will eliminate any potential conflict affecting the trial of this case. First, and foremost, Mr. Traini will not cross-examine Mr. Maggiacomo and he will not assist Mr. Lepizzera in preparing for the cross-examination, assuming Mr. Maggiacomo testifies at the trial. Second, Mr. Traini will not comment upon or address Mr. Maggiacomo's credibility in either Mr. Caramadre's opening statement or closing argument to the jury. Third, from the perspective of the Rules of Professional Conduct, Mr. Maggiacomo and Mr. Caramadre have provided informed consent, confirmed in writing, to Mr. Traini's role in these proceedings and the limitations on it.

The adequacy of the safeguards is sufficiently effective in this case, particularly in light of the scope and breadth of the indictment. As noted above, Mr. Maggiacomo played a relatively minor role in the transactions for which the defendants have been charged. While it appears at this time that Mr. Maggiacomo will play some role in the upcoming trial, he is but one of over 120 individuals identified by the government as potential witnesses in this case. Moreover, there are numerous issues, separate and apart from Mr. Maggiacomo's testimony, that are involved in a trial of this nature. Mr. Traini provides the experience and background to the defense team that Mr. Caramadre needs to mount an effective defense to this complex seventy-two (72) page indictment. The overwhelming majority of the government's proposed witnesses and evidence

---

[4] In addition to the disclosures made to Caramadre and the advice he received from independent counsel (which alone should establish a knowing and voluntary waiver), Mr. Caramadre is also a member of the bar and, as such, fully understands the nature and ramifications of conflict waivers.

have nothing to do with Mr. Maggiacomo or his alleged role in the charged activities.

**3.     The cases relied upon by the government in support of its contention that the defense safeguards are inadequate are readily distinguishable from this case.**

Even the cases relied upon by the government in its tactical effort to disqualify Mr. Traini do not require disqualification whenever any conflict of interest is shown to exist. When a potential or actual conflict of interest presents itself, the court "must take adequate steps to ascertain whether the conflict warrants the attorney's disqualification." *United States v. Lemieux*, 532 F.Supp.2d 225, 230 (D.Mass. 2008) citing *United States v. Lanoue*, 137 F.3d 656, 664 (1st Cir. 1998). The court must "exercise its own independent judgment as to whether the proceedings are likely to have the requisite integrity if a particular lawyer is allowed to represent a party". *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir.1996). The government's argument that any potential or actual conflict of interest requires disqualification misstates the law.

The government contends that the defense safeguards employed here (*i.e.*, that Mr. Traini neither cross-examine Mr. Maggiacomo nor prepare Mr. Lepizzera to do so, and that he not refer to Mr. Maggiacomo's credibility in any opening or closing statements), will not eliminate the potential for an actual conflict to occur during the course of the trial. According to the government, this requires Mr. Traini's disqualification. The government cites to a host of cases—all (with one exception) from outside the First Circuit—where the trial court disqualified a defendant's chosen attorney. Superficially, these cases appear to be analogous to this case; however, upon closer examination, the facts of those cases (which the government failed to explicate) demonstrate that they are all distinguishable.

The government relies most heavily upon *United States v. Gharbi*, 510 F.3d 550 (5th Cir.2007), a close call by the Fifth Circuit which presented a simultaneous representation issue.

5

Gharbi was one of twenty-seven defendants, one of whom was his daughter Maryam, who entered into a plea agreement which required her to testify against her father. *Id.*, at 552. At the time of Gharbi's trial, Maryam's plea had not been accepted by the court. *Id.* Not until the day Gharbi's trial was to begin did his attorney seek to enlist the assistance of Maryam's attorney as co-counsel, both of whom then proposed to erect a "Chinese Wall" between them to prevent the sharing of any confidential information. *Id.* Both Gharbi and Maryam agreed to waive any conflict of interest. *Id.* Notwithstanding the waivers, the district court disqualified Maryam's attorney from representing Gharbi. *Id.*

The government seizes on the trial court and then the Fifth Circuit's rejection of the defenses team's "Chinese Wall" in *Gharbi* as reason for this Court to reject the safeguards in this case. *Gharbi* is readily distinguishable, however, on several key points. First, the attempt to bring Maryam's attorney into the defense team occurred on the day Gharbi's trial was set to begin. There is no indication in the decision that the size and scope of the case necessitated co-counsel, or that Gharbi's original counsel needed any assistance, let alone that of Maryam's attorney in particular.[5] Second, there is no indication that either Gharbi or Maryam consulted with independent counsel prior to waiving the conflict. In this case, both Mr. Caramadre and Mr. Maggiacomo received advice from independent counsel. Third, the *Gharbi* courts were concerned with the paternal relationship between Gharbi and his daughter. As the Fifth Circuit noted, this relationship compounded the difficulties facing the district court. *Id.*, at 553. No such familial relationship exists here. Fourth, Maryam's plea had not been accepted by the court and her attorney was still representing her <u>in the same case</u>. Mr. Maggiacomo is not a co-defendant, he has not pled guilty, there is no pending plea before the court, and most importantly,

---

[5]The court is well aware of the volume of discovery and the number of witnesses who are expected to be called in this case. Gharbi's trial lasted only five days; this trial is expected to last four months.

6

Mr. Traini has ceased representing Mr. Maggiacomo in this case. Mr. Maggiacomo has retained separate and independent counsel to represent him if he is called as a witness at trial. Unlike Maryam's attorney, Mr. Traini is not simultaneously representing both Mr. Maggiacomo and Mr. Caramadre in the same matter. Finally, the Fifth Circuit acknowledged that " 'other district courts might have reached differing or opposite conclusions' if faced with somewhat similar facts." *Id*. at 554, citing *Wheat v. United States*, 486 U.S. 153, 164 (1988). The facts in *Gharbi* are significantly different from the facts in this case and *Gharbi*, like all of the government's cited cases, does not require Mr. Traini's disqualification.

The government's reliance upon *United States v. Delevo*, 2002 WL 844401 (D.Mass.) is equally unavailing. Counsel in *Delevo* was simultaneously representing three co-defendants. *Id*., at *1. Initially the trial court approved the representation. *Id*., at *3. Subsequently, the government disclosed that it intended to call as a witness a former client of the attorney. *Id.,* at *4. The witness refused to waive the conflict and the attorney acknowledged "that absent a waiver from [the witness], [the attorney] 'would be strictly prevented from cross-examining [the witness]…'" *Id*. The trial court correctly focused on the fact that the attorney would be placed in a situation where he would be required to cross-examine a former client, without that client waiving the conflict. *Id*. at *5.

Once again these facts are clearly distinguishable from this case. Mr. Traini will not be faced with cross-examining Mr. Maggiacomo, as that task will fall to Mr. Lepizzera.[6] Furthermore, the attorney in *Delevo* was representing three co-defendants, a situation that is innately fraught with potential conflicts, in addition to having previously represented the

---

[6] Moreover, Mr. Traini has made it clear not only to the court, but to Mr. Maggiacomo and Mr. Caramadre that he will not be cross-examining or participating in the preparation of Mr. Lepizzera to cross-examine Mr. Maggiacomo, and Mr. Caramadre has specifically consented to this limitation.

7

government witness.⁷ Last, and most importantly, Mr. Maggiacomo has given informed consent, confirmed in writing, to the representation, where the witness in *Delevo* had not.

*United States v. Sanchez Guerrero*, 546 F.3d 328 (5th Cir. 2008) is a third simultaneous representation matter relied on by the government. Counsel there was representing two co-defendants, and simultaneously representing a government witness against the defendant who was trying to obtain a reduction in his sentence by cooperating with the government. The attorney met with all parties, the two co-defendants and the witness, obtained conflict waivers from all, and then advised the trial court that he would hire co-counsel for the purpose of cross-examining the witness. The trial court rejected the attorney's proffer of co-counsel and disqualified him. *Id*., at 331.

Sanchez Guerrero is also distinguishable. First, the attorney was representing two co-defendants and a government witness simultaneously in the same case. Second, although the attorney had procured his clients' waivers, they were obtained without the advice of independent counsel. Third, and perhaps most glaring, was the attorney's admission that he had told the defendant of the government witnesses' identity and the fact that he was in the same jail facility as the defendant, thereby endangering the witnesses' safety. *Id*., at 334. Finally, the attorney merely offered to hire co-counsel to cross-examine his client. There was no separate independent counsel representing the defendant. In this case, Mr. Traini is the co-counsel, and he is not being brought into the case for the sole purpose of cross-examining a former client of Mr. Lepizzera.⁸ There is no need to hire co-counsel to conduct the potential cross-examination

---

⁷Even such a peril-laden circumstance as multiple representation of current clients in the same case is possible with a proper Foster waiver.

⁸The government asserts that Mr. Traini "is likely to become lead attorney". Aside from the fact that there is no basis for saying so, whether Mr. Traini became lead counsel is irrelevant to the issues before the court, which are only whether or not Mr. Caramadre and Mr. Maggiacomo have consented to the representation and whether the

8

of Mr. Maggiacomo because Mr. Lepizzera is already in the case, and has always been responsible for Mr. Maggiacomo's cross-examination.

The facts in *United States v. Williams*, 81 F.3d 1321, 1324 (4th Cir. 1996), are also distinguishable. Counsel there initially represented the defendant's wife during the government's investigation of both of them. Following the defendant's arrest, the government decided not to proceed with charges against the wife. The wife's attorney then began to represent the defendant even though the wife was to be called as a witness against him. Like the attorney in *Sanchez Guerrero*, the attorney in *Williams* also offered to hire "auxiliary counsel" to conduct the cross-examination of his former client. The trial court did not accept this proposal and disqualified counsel. *Id.*, at 1323. Like the other cases, *Williams* dealt with a single attorney attempting to represent a defendant and a witness. Although the attorney had offered to obtain auxiliary counsel, no such counsel had been retained at the time of his disqualification.[9] *Id.* at 1325. Here, Mr. Maggiacomo will be cross-examined by counsel who is already in the case and who has never represented him.

The government's reliance on *United States v. Campbell*, 2005 WL 6436177 (not for publication) *aff'd.,* 491 F.3d 1306 (11th Cir. 2007), is equally misplaced. There, a different attorney from the defendant's attorney's law firm had previously represented a proposed government witness. *Id.*, at *1. While the defendant had waived the conflict, the witness refused to do so and <u>specifically objected</u> to the law firm's representing the defendant. *Id.*, at *2. In an attempt to avoid disqualification, the attorney offered to have his co-counsel cross-examine the

---

Court is satisfied that the integrity of the trial will not be adversely affected by the representation, regardless of whether Mr. Traini is co-counsel or lead counsel.

[9]Notwithstanding the trial court's disqualification, the Fifth Circuit affirmed that the use of non-conflicted counsel to conduct the cross-examination of the former client may be an acceptable alternative to disqualification. *Williams* at 1325 (allowing the use of co-counsel to conduct the cross-examination "might have been within the court's discretion, declining to use it cannot be held an abuse of discretion").

9

witness. The trial court rejected the attorney's offer and disqualified the firm. *Id.*, at *4. In this case, Mr. Maggiacomo has consented to Mr. Traini's representing Mr. Caramadre. This in and of itself makes *Campbell* inapposite. The attorney in *Campbell* had a conflict that his former client was unwilling to waive and who took it one step further by specifically objecting to the law firm representing the defendant. As the trial court stated, "providing alternative counsel to cross-examine [the witness] does not, in the Court's view, adequately address **the ethical conflict**, and appearance of impropriety resulting therefrom, **in this case**." [emphasis added] *Id.*, at *5. Again, these facts are not present here and there is no ethical conflict because both Mr. Caramadre and Mr. Maggiacomo have waived any conflict in conformity with the Rules of Professional Conduct.

*United States v. Tinsley*, 166 F.3d 336 (4th Cir. 1998) (unpublished) cert. denied, 525 U.S. 1113 (1999) is similarly inapposite. There, the defendant's attorney acknowledged that he had a conflict because he had previously represented a witness who refused to waive the conflict. *Id.*, at *8. Not surprisingly, the trial court ordered disqualification due to the fact that counsel was unable to secure the necessary waiver.

Because the facts in *United States v. Stites*, 56 F.3d 1020 (9th Cir.1995) are so distinguishable from the case at bar, its citation is puzzling. *Stites* dealt with the disqualification of two different attorneys.[10] The first attorney had previously represented the defendant before indictment. *Id.*, at 1022. The defendant had fled the jurisdiction and the same attorney began representing his sister, who eventually pled guilty. *Id.*, at 1023. While representing the sister, the attorney did not disclose to the court that she had previously represented the defendant. *Id.*, at 1023-1024. In securing a lenient sentence for the sister, the attorney vehemently attacked the

---

[10]The disqualification of the second attorney was for reasons unrelated to the issues raised by the government's motion.

defendant and indicated to the court that the defendant was guilty of the crimes charged. *Id*., at 1023. She also submitted a psychological report that showed the sister to be psychologically dependent upon the defendant and that the defendant had subjected his sister to psychological abuse. *Id*.

Despite the positions she had taken on behalf of the sister, when the defendant was apprehended, the attorney attempted to represent him. *Id*. Given the foregoing facts, the court took a dim view of the representation. Although the sister had purportedly waived any conflict, the trial court specifically found that she was incapable of making a knowing, intelligent and voluntary waiver due to her psychological issues raised by the attorney during her sentencing. *Id*. The trial court was also understandably displeased that the attorney had failed to disclose her prior representation of the defendant during the sister's sentencing. *Id*., at 1023-1024. And finally, the court found that the attorney's representation of the sister and the defendant were considered to be the in same proceeding. *Id*., at 1026. As such, the attorney could not make representations about the defendant's guilt while representing the sister, and in the very same proceeding claim the defendant was innocent. *Id*. Based on the attorney's conduct, the court correctly rejected her proffer to use co-counsel and a "Chinese Wall" as remedial measures to address this glaring conflict. *Stites* provides no guidance to this Court in deciding the government's motion.

In *United States v. Stewart*, 1997 WL 611594 (E.D.Pa. 1997), *aff'd*., 185 F.3d 112, 121 (3rd Cir.1999), the criminal defendant was initially represented by a single attorney. Two other attorneys were representing several defendants, including the criminal defendant, in a parallel civil proceeding. At some point, the civil attorneys decided to enter as co-counsel in the criminal cases, in which the other civil defendants (their clients) would be witnesses against the criminal

defendant. All the clients purportedly waived the potential conflict. *Id*., at *1. Importantly, the trial court found that the civil defendants did not "fully comprehend the ramifications flowing from joint representations…" thereby questioning their "knowing" waivers. *Id*., at *3. Furthermore, the court also found that the waivers were not voluntary because of the relationships between the parties (one of the four civil defendants was the criminal defendant's employee, another his intimate companion, a third his son, and the last his stepson), and the fact that the criminal defendant was paying the legal fees for one of the civil defendants. *Id*., at *4. As with *Stites*, the facts underlying the *Stewart* decision are so dissimilar from those presented here that the decision provides no assistance to the court.

In *United States v. Breslin*, 947 F.Supp. 866 (E.D.Pa. 1996), defense counsel in a criminal case also had previously represented a potential witness. *Id*., at 868. Initially, the witness was willing to waive the conflict, but two days after the hearing the witness withdrew his consent. *Id*., at 868-869. The attorney then attempted to bring in co-counsel solely to cross-examine the witness. *Id*., at 869. *Breslin* is plainly different from the situation here. Both Mr. Maggiacomo and Mr. Caramadre have waived any conflict, and Mr. Lepizzera would be left with the task of cross-examining Mr. Maggiacomo in any event, regardless of Mr. Traini's appearance in the case.

Lastly, the government cites *United States v. Perez*, 694 F.Supp. 854 (S.D.Fla. 1988). Defense counsel there had previously represented a witness who was the source of the evidence leading to the defendant's indictment. *Id*., at 856. While the defendant waived the conflict, <u>the witness did not</u>. The trial court found that both clients were required to consent to the representation. *Id*., at 857. Importantly, the court stated that had the witness not objected to the representation "the integrity of the system might adequately have been protected by the public

record made at the hearing on this motion." *Id*. Here both the defendant and witness have provided the informed consent which is designed to protect the integrity of the system.

**4.     *United States v. Gingras* is the decision most analogous to this case.**

Contrary to the Government's assertions, of all the cases cited by the parties, the facts in *United States v. Gingras*, 2002 WL 31106609 (D.N.H. 2002)(not for publication) are the most analogous to the facts here. Like this case, *Gingras* dealt with an attorney [Mr. Gordon] who was asked to join a current attorney [Mr. Weinberg] as co-counsel for the defendant. Mr. Gordon had previously represented a witness who was expected to testify against the defendant, and he obtained the informed consent of both the defendant and the potential witness. *Id*. , at *1. Mr. Gordon specifically informed the defendant, and the defendant accepted, that the representation was **limited** in that Mr. Gordon would be unable to participate in the cross-examination of the witness and that he could not share any confidential information gained from his prior representation.[11] *Id*., **1-2. Moreover, Mr. Gordon gave the witness the opportunity to seek independent counsel prior to executing the waiver.[12] *Id*., at *1.

The government's unsuccessful attempt to distinguish *Gingras* is based on several mischaracterizations of that case and this one. First, forced to concede Judge McAuliffe's acceptance of the "no cross-examination" safeguard, the government makes the unfounded and illogical leap that "Here, Traini is not suggesting that he not participate in any aspect of the case related to Maggiacomo." (Gov. Reply Mem.at 13.) Judge McAuliffe did not require Mr. Gordon to be so limited because no such restriction is required. The appropriate limitation is that Mr. Traini not participate in cross-examining, or preparing Mr. Lepizzera to cross-examine Mr.

---

[11] These facts are essentially a mirror image of this case.

[12] While the record is unclear in Gingras as to whether the witness actually availed himself of the opportunity, here both Mr. Maggiacomo and Mr. Caramadre have done so.

13

Maggiacomo. There is no requirement that Mr. Traini refrain from participating "in any aspect of the case related to Maggiacomo."

Next, the Government asserts that there is somehow a practical difference between Mr. Maggiacomo's non-prosecution agreement and the grant of immunity given to the witness in *Gingras*. This argument is based on the government's flawed premise that Mr. Traini's representation of Mr. Caramadre somehow translates into Mr. Maggiacomo's violating the terms of his non-prosecution agreement.[13] While there may be a technical difference between the grant of immunity in *Gingras* and Mr. Maggiacomo's non-prosecution agreement, practically speaking they are functionally equivalent. Both require the witness to testify truthfully or face prosecution.[14] Consequently, the government offers only a distinction without a difference.

The government next makes the following bald assertion – "in *Gingras*, there was no prospect of divided loyalties based upon the attorney's possible representation of the former client **at some future point**". [emphasis added] (Gov. Reply Mem.at 14.) By making this argument, the government expects this court to condition Mr. Traini's representation of Mr.

---

[13]This argument arises out of the government's incorrect focus on the possible impacts that Mr. Traini's representation of Mr. Caramadre may have on Mr. Maggiacomo. The government's circular argument posits that the defense will attack Mr. Maggiacomo's credibility, and that these attacks will cause Mr. Maggiacomo to, in turn, violate his obligations under the non-prosecution agreement; therefore, the government's theory goes, Mr. Traini's representation of Mr. Caramadre will increase Mr. Maggiacomo's likelihood of breaching the agreement. This argument is ridiculous. If the defense chooses to attack Mr. Maggiacomo's credibility (this is but one of several possible defenses in this action and the government has no basis for deciding or commenting upon what the actual defense will be), it will do so with or without Mr. Traini, and it is clear that the government has already anticipated that this may occur at trial, with or without Mr. Traini. The terms of the non-prosecution agreement are plain and simple; Mr. Maggiacomo is required to testify truthfully. The measure of his performance will be based upon a comparison between his testimony at trial on the one hand, and his interviews with government agents (which should have all been disclosed to the defense) and his grand jury testimony (which has already been turned over to the defense), on the other. It is illogical, to say the least, to suggest that Mr. Traini's representation of Mr. Caramadre will cause Mr. Maggiacomo to change his testimony in violation of his agreement, or that it is more likely that Mr. Maggiacomo will testify truthfully only if Mr. Traini continues to represent him rather than his new counsel. Mr. Maggiacomo himself controls whether or not he abides by or violates the terms of his non-prosecution agreement which again is predicated on Mr. Maggiacomo testifying truthfully. (The government has notably not pointed to a scintilla of evidence to suggest that Mr. Maggiacomo will breach the terms of his agreement with the Government.) The identity of his counsel has absolutely no bearing on Mr. Maggiacomo's trial testimony in these proceedings.

[14]Even an immunized witness is subject to prosecution for perjury if that witness fails to testify truthfully.

14

Caramadre on an agreement that Mr. Maggiacomo and Mr. Traini have no future attorney-client relationship. While such a notion is devoid of merit for myriad reasons, important here is that the issue of "divided loyalty" arises only if Mr. Traini was the sole attorney in this case and therefore required to cross-examine Mr. Maggiacomo. As discussed above, the overwhelming majority of cases cited by the government deal with a single attorney attempting to represent one client while being forced to cross-examine another client. The safeguards implemented by Mr. Traini and Mr. Lepizzera, which have been agreed to by both Mr. Caramadre and Mr. Maggiacomo, obviate this issue. Ethical counsel with a keen eye to their clients' interests are the capable and proper persons to address the clients' concerns without the "help" of the government.

Finally, in a last ditch effort to distinguish *Gingras,* the government asserts that "even the *Gingras* decision recognized that 'a defendant's right to choose particular counsel should normally be overridden if, for example, his or her selection would create a conflict of interest." (Gov. Reply Mem. at 14.) This assertion is a *non sequitur* because Mr. Maggiacomo and Mr. Caramadre have waived any such conflict, and Mr. Traini and Mr. Lepizzera have further eliminated any conflict by prohibiting Mr. Traini from participating in the preparation or conduct of Mr. Maggiacomo's cross examination. They have also stated that Mr. Traini will not address Mr. Maggiacomo in any opening and/or closing statement. The government's argument provides the Court with no assistance in deciding this Motion.[15]

---

[15] The government misstates the underpinnings of Judge McAuliffe's ruling in *Gingras* by claiming that the Court incorrectly premised his decision upon the principal that "the determination of whether a conflict of interest exists is to be governed by the New Hampshire Rules of Professional Conduct…." Gov. Reply Mem. at 14. The government's claim that conflicts of interest are governed by anything other than the applicable rules of professional conduct is not an accurate representation of the applicable law. One need go no further than the United States Supreme Court in *Wheat v. United States* which made it abundantly clear that "Federal Courts have an independent interest in ensuring that criminal trials are conducted within the **ethical standards of the profession** and that legal proceedings appear fair to all who observe them." [emphasis added] *Wheat* at 160. *See also, In Re: Grand Jury*

WHEREFORE, for all of the reasons set forth herein, and the arguments of counsel at the hearing, the government's Motion to Disqualify Mr. Traini must be denied.

Respectfully submitted,
Joseph Caramadre, defendant
By His Attorneys,

*/s/Michael J. Lepizzera, Jr.*
Michael J. Lepizzera, Jr. (#4995)
117 Metro Center Blvd. – Suite 2001
Warwick, RI 02886
Tel.    (401) 739-7397
Fax    (401) 691-3558
Email: mlepizzera@leplap.com

*/s/Anthony M. Traini*
Anthony M. Traini (4793)
56 Pine Street – Suite 200
Providence, RI 02903-2819
Tel.    401.621.4700
Fax    401.621.5888
Email: amt@atrainilaw.com

/s/ *Thomas R. Kiley*
Thomas R. Kiley, BBO No. 271460
William J. Cintolo, BBO No. 084120
COSGROVE EISENBERG & KILEY
One International Place, Suite 1820
Boston, MA 02110
Tel.    617.439.7775
Fax    617.330.8774
Email: trkiley159@aol.com

Dated: July 23, 2012                         Email: wcintolo@aol.com

---

*Proceedings*, 859 F.2d 1021, 1023 (1st Cir.1988)(applicable professional standards constrain the representation of multiple clients in the same case.)

A review of Judge McAuliffe's decision reveals that he began his legal analysis by recounting the relevant case law and citing to many of the same decisions relied upon by the government in this case. *Gingras* at **2-3.  The Court then proceeded to determine whether there was an actual conflict of interest under the New Hampshire Rules of Professional Conduct which governed the attorney's conduct in that case. *Gingras* at **3-4.  Finally, he concluded his decision by analyzing whether or not Mr. Gordon's representation would be detrimental to the integrity of the process. *Gingras* at *4.  Judge McAuliffe's measured and logical analysis fully comports with *Wheat* and its progeny.  It must also be noted that the United States Attorney in *Gingras* "agree[d] that whether Attorney Gordon's representation of Gingras…will create a conflict of interest is governed by" the New Hampshire Rules of Professional Conduct. *Gingras* at *3.  While the government here may disagree with the ultimate outcome in *Gingras*, it has absolutely no grounds to attack the legal reasoning and analysis employed by Judge McAuliffe.

## CERTIFICATE OF SERVICE

     I hereby certify that on July 23, 2012, a copy of the within Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

                                            */s/ Michael J. Lepizzera, Jr.*
                                            Michael J. Lepizzera, Jr.