```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF RHODE ISLAND
_____
                                   )
UNITED STATES OF AMERICA           )
                                   )
     v.                            )   Cr. No.  11-186 S
                                   )
JOSEPH CARAMADRE; and              )
RAYMOUR RADHAKRISHNAN,             )
                                   )
               Defendants.         )
_____)
```

**OPINION AND ORDER**

WILLIAM E. SMITH, United States District Judge.

Before the Court is Defendant Raymour Radhakrishnan's motion to sever his trial from that of his co-Defendant, Joseph Caramadre. For the reasons set forth below, the motion is denied.

I.  Background

On November 17, 2011, in a sixty-six count indictment, Defendants Caramadre and Radhakrishnan were charged with wire fraud, mail fraud, conspiracy, identity fraud, aggravated identity theft, and money laundering. Caramadre was also charged with one count of witness tampering. (See generally Indictment, ECF No. 1.) At bottom, the Indictment alleges that Caramadre devised a fraudulent scheme, later joined by Radhakrishnan, to make millions of dollars by securing the identities of terminally-ill people through material misrepresentations and omissions to be used to

purchase variable annuities and corporate bonds with death-benefit features.

Due to the number of transactions and the number of people involved, along with the duration of the alleged scheme, which dates back to the 1990s, the trial is expected to span between three and four months. Trial is currently scheduled to begin in November 2012, and the parties expect there to be between seventy-five and one hundred witnesses.

II. Discussion

Radhakrishnan argues that a joint trial would prejudice his defense for two reasons: (1) because the co-Defendants' defenses will be so antagonistic to one another, the jury will hear otherwise inadmissible bad-character evidence against each Defendant and be required to choose one Defendant over the other; and (2) spillover evidence from the witness-tampering charge against Caramadre will prejudice Radhakrishnan.

In order to prevent undue prejudice to a defendant, Rule 14(a) of the Federal Rules of Criminal Procedure permits a court to sever the trial of defendants who have been indicted together, or to "provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, joint trials are preferred in the federal system because "[t]hey promote efficiency and serve the interests of justice by avoiding the . . . inequity of inconsistent verdicts." Zafiro v. United

States, 506 U.S. 534, 537 (1993) (internal quotation marks and citation omitted).  Indeed, "the presumption and common practice favor trying together defendants who are charged with crimes arising out of a common core of facts."  United States v. De La Paz-Rentas, 613 F.3d 18, 23 (1st Cir. 2010) (citing United States v. O'Bryant, 998 F.2d 21, 25 (1st Cir. 1993)).  Thus, the hurdle on a motion to sever is "intentionally high, particularly in conspiracy cases, where severance is especially disfavored."  United States v. Celestin, 612 F.3d 14, 19 (1st Cir. 2010) (quoting United States v. Peña-Lora, 225 F.3d 17, 33 (1st Cir. 2000) (internal quotation marks omitted)).  Accordingly, a court should only grant severance where "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."  Id. (quoting Zafiro, 506 U.S. at 539).

In this matter, concerns of efficiency and the due administration of justice are especially apparent, as the trial is expected to span several months, the government will call between seventy-five and one hundred witnesses to testify, and the government proffers that most of the evidence would need to be introduced at both trials, if Defendants were in fact tried separately.  Hence, there can be no doubt that a joint trial

3

would significantly conserve judicial and prosecutorial resources.

    A.    Antagonistic Defenses

Radhakrishnan first argues that his trial strategy is expected to be so antagonistic to that of Caramadre that he would be severely prejudiced by a joint trial. According to Radhakrishnan, in pursuit of their defenses, Defendants will present otherwise-inadmissible evidence of one another's bad character, and the jury will be left with no choice but to believe one Defendant at the expense of the other.

Severance on the basis of antagonistic defenses is only required "where the defenses are so inconsistent that the jury would have to believe one defendant at the expense of the other; the conflict alone establishes the guilt of the defendant." United States v. Arruda, 715 F.2d 671, 679 (1st Cir. 1983). In contrast, "mere fingerpointing among codefendants – i.e., the familiar 'he did it, not I' defense – normally is not a sufficient ground for severance." United States v. Trinh, 665 F.3d 1, 19 (1st Cir. 2011) (quoting Peña-Lora, 225 F.3d at 33). Moreover, defendants' pursuit of antagonistic defenses "does not, per se, require severance, even if defendants are hostile or attempt to cast blame on each other." United States v. McLaughlin, 957 F.2d 12, 18 (1st Cir. 1992).

4

Radhakrishnan's and Caramadre's defenses, as Radhakrishnan predicts them to be, are not inherently incompatible. Radhakrishnan says that he will try to demonstrate that Caramadre was the "older experienced businessman and known philanthropist" and that Radhakrishnan acted only at Caramadre's direction, all while Caramadre assured him that the investment scheme was legal. Radhakrishnan speculates that Caramadre will argue that Radhakrishnan made decisions and acted on his own volition.

Even if Radhakrishnan's speculation is accepted as fact, these defenses are not so antagonistic as to require severance. A jury could accept both defense theories and still acquit or convict both or either of Defendants. Neither defense compels the conviction of either Defendant. See United States v. Serafino, 281 F.3d 327, 330 (1st Cir. 2002) (holding that severance was not required where the defendant argued that he merely followed the instruction of the conspiracy's mastermind, because the defense "did not necessarily require that the jury either accept or reject the defense that [the defendant] was an unwitting participant"); see also Arruda, 715 F.2d at 679 (stating that severance was not mandated where the defense "consisted of nothing more than fingerpointing and tattling").

To support his argument, Radhakrishnan points to United States v. Breinig, 70 F.3d 850 (6th Cir. 1995). In Breinig,

5

Breinig and his former wife, Moore, were tried jointly for tax evasion. Id. at 851-52. At trial, Moore argued that she lacked the requisite mens rea because she was "dominated and controlled" by Breinig. Id. at 852. On appeal, the Sixth Circuit ruled that the evidence admitted to support this defense was "highly inflammatory evidence of [Breinig's] bad character," and, because the evidence would have been inadmissible if the defendants had been tried separately, the court concluded that Breinig had suffered extreme prejudice. Id. at 852-53.

Radhakrishnan contends that the unbalanced power structure in his relationship with Caramadre is similar to the one discussed in Breinig. Part of Radhakrishnan's defense, he argues, will be to highlight the hierarchy of this relationship.

The similarities to Breinig end with the purported imbalance of power, however. Radhakrishnan does not identify the nature of the bad-character evidence expected to be admitted by either Defendant, and there is no reason to think that it involves the same sort of inflammatory evidence involved in Breinig, which aired the dirty laundry of Breinig and Moore's twenty-four-year marriage. With only this highly speculative argument before it, the Court concludes that Radhakrishnan has not demonstrated that there is a serious risk that he will be prejudiced by a joint trial.

    B.    Prejudicial Spillover Evidence

For a defendant to prevail on a motion to sever on the basis of prejudicial spillover evidence, he "must prove prejudice so pervasive that a miscarriage of justice looms." United States v. Levy-Cordero, 67 F.3d 1002, 1008 (1st Cir. 1995) (quoting United States v. Pierro, 32 F.3d 611, 615 (1st Cir. 1994)).  Radhakrishnan contends that Defendants' trials should be severed because he believes the evidence relating to the witness-tampering charge against Caramadre will unduly prejudice Radhakrishnan.

This argument is baseless.  Radhakrishnan argues, in essence, that the jury may be more likely to believe that he is guilty if additional evidence of Caramadre's guilt is admitted at their joint trial.  But this speculative guilt-by-association concern is not sufficient to overcome the high burden necessary to win severance.  Moreover, the Court will instruct the jury to consider the evidence of each count and each Defendant separately; "juries are presumed to follow their instructions," Zafiro, 506 U.S. at 540-41 (quoting Richardson v. Marsh, 481 U.S. 200, 211 (1987)), and the Court's instructions will safeguard against Radhakrishnan's concerns.  Accordingly, the motion to sever must be denied.

III. Conclusion

    For the foregoing reasons, Radhakrishnan's motion to sever is DENIED.

IT IS SO ORDERED.

*/s/ William E. Smith*
William E. Smith
United States District Judge
Date:  July 25, 2012