IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


```
* * * * * * * * * * * * *   CRIMINAL ACTION
UNITED STATES OF AMERICA  *   11-186-S
                          *
VS.                       *   AUGUST 7, 2012
                          *
JOSEPH CARAMADRE and      *
RAYMOUR RADHAKRISHNAN     *   PROVIDENCE, RI
* * * * * * * * * * * * *
```

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH

DISTRICT JUDGE

(Defendant Raymour Radhakrishnan Motion to Proceed

Pro Se)


**APPEARANCES**:

FOR THE GOVERNMENT:              LEE VILKER, AUSA
                                 and JOHN P. McADAMS, AUSA
                                 U.S. Attorney's Office
                                 50 Kennedy Plaza
                                 Providence, RI  02903

FOR THE DEFENDANT
Raymour Radhakrishnan:           Olin Thompson, Esq.
                                 Federal Defender's Office
                                 10 Weybosset St.
                                 Suite 300
                                 Providence, RI  02903

Court Reporter:                  Anne M. Clayton, RPR
                                 One Exchange Terrace
                                 Providence, RI  02903


Proceeding reported and produced by computer-aided
stenography

1    7 AUGUST 2012 -- 2:40 P.M.

2            THE COURT:  Good afternoon.  This is the matter

3    of the United States versus Raymour Radhakrishnan.

4            Let's have counsel identify themselves for the

5    record, please.

6            MR. McADAMS:  Good afternoon, your Honor.  John

7    McAdams and Lee Vilker on behalf of the United States.

8            MR. THOMPSON:  Olin Thompson for

9    Mr. Radhakrishnan, your Honor.

10           THE COURT:  Thank you.  I'm in receipt of notice

11   filed by Mr. Thompson expressing the interest of

12   Mr. Radhakrishnan to exercise his right to proceed in

13   this matter pro se; and upon receiving this notice, I

14   decided I wanted to hold a hearing, and then following

15   up on that I received a motion from the Government for

16   a hearing so I note that the Government filed a motion.

17           Mr. Thompson, before I address myself to

18   Mr. Radhakrishnan, do you want to say anything about

19   this notice that you filed?

20           MR. THOMPSON:  Not anything more than that this

21   was filed at the request of Mr. Radhakrishnan, and I

22   have spent considerable time discussing it with him.

23           We're also in receipt of the Government's

24   motion.  He's received a copy of that and reviewed it,

25   and he's prepared for any questions the Court has for

1     him.

2          THE COURT:  All right.  Does the Government want

3     to say anything?

4          MR. McADAMS:  Your Honor, I just, I guess, ask

5     the Court as an initial matter with Mr. Radhakrishnan

6     is to ask him whether or not it's his desire to proceed

7     representing himself or whether there's some other

8     issue going on that is instigating this, in other

9     words, he's concerned about his relationship with his

10    current counsel, because that would be a different line

11    of inquiry for the Court to explore.

12         Beyond that, the purpose of filing the motion

13    was simply to alert the Court to some of the issues

14    that the Government thinks the Court should address.

15    Thank you.

16         THE COURT:  Okay.  Mr. Radhakrishnan, would you

17    please stand up.

18         MR. RADHAKRISHNAN:  Yes, your Honor.

19         THE COURT:  I have a series of questions that I

20    am going to ask you if we proceed with this, but I

21    think Mr. McAdams makes a good point that I should ask

22    you, initially, and I would like to know from you if

23    this notice really is a reflection of your desire to

24    actually represent yourself or if it is rather an

25    expression of some dissatisfaction that you have with

1    the representation you're receiving from Mr. Thompson

2    or your relationship with Mr. Thompson or otherwise a

3    concern about the representation that you're receiving

4    here from your court-appointed counsel, because those

5    are really two different things.

6         MR. RADHAKRISHNAN:  Your Honor, as I expressed

7    to Mr. Thompson, I have been completely satisfied with

8    his representation.  This was a decision that I've made

9    on my own voluntarily, and I do plan to proceed pro se,

10   if the Court would allow.

11        THE COURT:  All right.  Now, I know that you've

12   had a little bit of law school, what, a semester or so

13   or a year or what?

14        MR. RADHAKRISHNAN:  A semester, your Honor.

15   Didn't even quite finish that.

16        THE COURT:  All right.  Well, you know enough

17   and you're a smart enough individual to understand that

18   a trial, particularly a criminal trial, is a very

19   complicated matter and it's governed by technical

20   rules, including the Rules of Evidence and the Rules of

21   Criminal Procedure that, if you were to represent

22   yourself, you would be required to follow and you would

23   be held to, just like any other individual, any other

24   person representing -- any other attorney representing

25   a client.  You understand that?

1          MR. RADHAKRISHNAN: I do, your Honor.

2          THE COURT: Now, representing yourself is not a

3   matter of telling -- just telling a story, telling your

4   story. You're not going to be able to necessarily do

5   that if that's what you think you're going to be able

6   to do. It's a matter of presenting the evidence and

7   dealing with the evidence that the Government presents

8   in a coherent and sensible way. Do you understand

9   that?

10         MR. RADHAKRISHNAN: Yes, your Honor.

11         THE COURT: Now, if you fail to follow the rules

12   as you're required to follow them, then you're going to

13   put yourself in jeopardy. You can make and I will tell

14   you I think it's likely that if you represent yourself

15   you will make a mistake, and you will likely make a

16   serious mistake during the course of the trial. And if

17   you do that, it could irrevocably damage your case in

18   front of the jury, and there will likely be nothing

19   that you can do about that once you make that mistake.

20   Do you understand that?

21         MR. RADHAKRISHNAN: Yes, your Honor.

22         THE COURT: Are you willing to live with the

23   likelihood that you're going to make a mistake and you

24   might hurt yourself?

25         MR. RADHAKRISHNAN: I don't believe I'm going to

1    be making any mistakes, your Honor, but I understand

2    that in the past that's probably very, very likely.

3           THE COURT:  Well, let me tell you something,

4    experienced attorneys who know a lot more than you do

5    about what's going on here make mistakes in trials.

6    And sometimes they make serious mistakes.  I can

7    virtually guarantee you you're going to make some

8    mistakes in this trial.  I don't know what they're

9    going to be, but I know you're going to make mistakes;

10   and if you do, there's no getting that back.  If you're

11   hurt by it, you have to live with it.  Do you

12   understand that?

13          MR. RADHAKRISHNAN:  I understand, your Honor.

14          THE COURT:  Now, you understand that if you

15   begin making mistakes in the midst of the trial, it's

16   not my job to keep you from going down a path that you

17   shouldn't go down.  I'm not necessarily going to try to

18   guide you or coach you or keep you from making any kind

19   of mistake.  Do you understand that?

20          MR. RADHAKRISHNAN:  Yes, your Honor.

21          THE COURT:  And I will likely appoint

22   Mr. Thompson to be standby counsel for you if you go

23   forward with this, but it may be that he's going to be

24   unable as standby counsel to keep you from doing

25   something that you shouldn't do before you do it.  Do

1    you understand that?

2         MR. RADHAKRISHNAN:  Yes, your Honor.

3         THE COURT:  And now, you understand that you

4    will not be able to rely on Mr. Traini and

5    Mr. Lepizzera, who represent Mr. Caramadre, to

6    necessarily do things in the course of the trial like

7    make objections or arguments that will help you out.

8    It may be they don't want to help you out.  It could be

9    that they see that the interest of their client is

10   different than your interest.  So you might think that

11   they're going to step up and do something like make an

12   objection to something and they're not going to do it,

13   leaving you by yourself, to fend for yourself.  Do you

14   understand that?

15        MR. RADHAKRISHNAN:  Yes, your Honor.

16        THE COURT:  You may not know whether they're

17   staying quiet in a situation where you're getting

18   damaged and you don't know enough about the Rules of

19   Evidence to make an objection where you ought to be

20   making objections and they're not helping you.  Do you

21   understand that situation could well occur?

22        MR. RADHAKRISHNAN:  Yes, your Honor.

23        THE COURT:  Now you understand that if you do

24   this you can't make a complaint later that you didn't

25   have an adequate defense or quality defense or that I

1   should have prevented you from doing this.  You're

2   waiving that.  Do you understand that?

3           MR. RADHAKRISHNAN:  Yes, your Honor.

4           THE COURT:  Now, maybe the Government can help

5   me out on this a little bit.  I think I need to advise

6   you about the seriousness of the charges against you,

7   which you know are serious, but I've not sat down and

8   tried to figure out what the potential penalties are

9   for the crimes that you're charged with.  Perhaps the

10  Government has.

11          MR. McADAMS:  Yes, your Honor, if I may approach

12  the podium.

13          Your Honor, Mr. Radhakrishnan, as opposed to

14  Mr. Caramadre, is charged in Counts I through XXVI with

15  wire fraud offenses.  Each count carries a maximum

16  statutory offense of 20 years imprisonment, $250,000

17  fine, or twice the gross gain or loss that resulted

18  from the offense, as well as three years supervised

19  release and $100 special assessment.  He's also charged

20  in Counts XXVIII, XXIX and XXXI with mail fraud, each

21  of which also carries a 20-year maximum statutory

22  sentence, $250,000 fine or twice the amount of gain or

23  loss, and three years supervised release, as well as

24  the special assessment.

25          He's charged in Count XXXIII with conspiracy to

1    commit offenses, mail fraud, wire fraud, identity

2    theft, aggravated identity theft.  That count carries a

3    maximum statutory offense of five years imprisonment,

4    $250,000 fine and potentially twice the gain or loss

5    involved in the case, as well as three years supervised

6    release, and a special assessment of $100.

7         He's charged in Counts XXXV through LIX

8    inclusive with identity fraud in violation of 18 U.S.C.

9    1028(a)(7).  And each of those counts carries a maximum

10   statutory penalty of 15 years imprisonment, a $250,000

11   fine, not more than twice the gain or loss, three years

12   supervised release and the mandatory $100 special

13   assessment.  And he's charged in Counts LX through LXIV

14   inclusive with aggravated identity theft, each of which

15   carries a mandatory minimum of two years imprisonment

16   on top of whatever other sentence he might receive in

17   this case, a $250,000 fine and not more than twice the

18   loss or gain, one year of supervised release and a

19   mandatory special assessment.

20        And he's charged in Count LXV with money

21   laundering, which carries a maximum offense of ten

22   years imprisonment, $250,000 fine and not more the

23   twice the gain or loss, as well as three years

24   supervised release and a $100 mandatory special

25   assessment.

1        Obviously, as well, your Honor, the sentencing

2    guidelines will play a factor in the sentence that the

3    Court determines in the event that Mr. Radhakrishnan is

4    convicted of any of these offenses.  I have not done a

5    specific guideline calculation on Mr. Radhakrishnan,

6    but we have looked sort of generally and without, you

7    know, getting into the real fine details of it, I can

8    represent to the Court that if convicted of all of

9    these offenses, his guideline range will be well in

10   excess of 15 years imprisonment at the low end of the

11   guideline range.  And of course, those guidelines are

12   not binding on the Court, but that's something that

13   Mr. Radhakrishnan should understand, that if he is

14   convicted the Court will certainly be required to

15   consider those guidelines.

16        THE COURT:  How many counts are there with

17   mandatory terms, the two-year mandatory consecutive?

18        MR. McADAMS:  There are four counts -- excuse

19   me, five counts of aggravated identity theft, Count LX,

20   LXI, LXII, LXIII and LXIV, each of which carry the

21   two-year mandatory minimum.

22        THE COURT:  Okay.  Thank you, Mr. McAdams.

23        Mr. Radhakrishnan, did you listen to Mr. McAdams

24   outline the potential penalties here?

25        MR. RADHAKRISHNAN:  Yes, your Honor.

1          THE COURT:  I think it's fair to say, and I'm

2     sure you've perceived from this that if you were

3     convicted of some or all of these counts you face a

4     potential sentence that is easily well in excess of ten

5     years and could be in a range much higher than that.

6          So we're not dealing here with a minor

7     accusation with a lenient potential penalty associated

8     with it.  You understand the seriousness of the

9     potential penalties that could result if you're

10    convicted in this case?

11         MR. RADHAKRISHNAN:  Yes, I do, your Honor.

12         THE COURT:  Now, I have to just tell you from my

13    experience and from my heart that I've presided over a

14    number of pro se trials.  Every single one of them has

15    been a disaster for the defendant.  I've never seen a

16    pro se defendant do a good job representing himself.  I

17    firmly believe you're making a very serious mistake by

18    doing this.  I think you stand the potential of doing

19    serious harm to yourself if you do this.

20         You're a smart, young man.  I have no doubt that

21    you have a lot of confidence in your own intelligence

22    and your ability, but I have to tell you that I really

23    believe you're making a mistake and I ask you to please

24    reconsider what you've decided to do here, because my

25    job is to make sure there's a fair trial and to make

1    sure that defendants are treated fairly by the system.

2    I don't have any dog in this fight other than to make

3    sure that you and Mr. Caramadre get a fair trial, and I

4    just feel I've seen enough and I know enough to know

5    when I can see somebody's making a terrible mistake and

6    that's what you're about to do.

7          So I just feel the right thing to do is to try

8    to talk you out of it.  I hope Mr. Thompson has tried

9    to talk you out of it.  And so if you'd like a little

10   more time to think about it, I'm happy to give you that

11   time.  I'm happy to do whatever it takes to try to keep

12   you from making what I think is a terrible mistake

13   here.

14         So would you like to take a little more time?

15         MR. RADHAKRISHNAN:  Your Honor, I appreciate

16   your insight, and I must say that this was not an

17   overnight decision.  I have been contemplating it for

18   years now while this investigation has been going on.

19   I specifically made it well aware to the law schools

20   that I applied to that the investigation was going on

21   and that I was going to need a legal education.  I

22   unfortunately did not complete that legal education,

23   but I do stand firm that I would like to move forward

24   representing myself.

25         THE COURT:  Okay.  Let me tell you one other

1    thing.  I have a cynical and suspicious side to me, I

2    suppose, that makes me think that there's something

3    else afoot here, which I don't know what it might be,

4    but I'm always suspicious if I see something that

5    doesn't look right.  And I want to tell you that if

6    there is something else afoot here that I'm not going

7    to let you derail this trial by any kind of a, you

8    know, ill-conceived strategy to throw it off the rails

9    at some point.  I'm not going to let that happen.  You

10   don't even have to respond to this, but if that is

11   something that's going on here, you should

12   understand -- everyone should understand that I'm going

13   to be very much on guard about that, and I'm not going

14   to let that happen.  So just keep that in mind.  For

15   any reason, if this is not just a well-intentioned move

16   on your part that you think is in your best interest,

17   there's something else going on here, I'm not going to

18   let this trial be disrupted or thrown off track.  Okay?

19          MR. RADHAKRISHNAN:  Yes, your Honor.

20          THE COURT:  All right.  Does the Government have

21   anything else you want me to ask?  It seems like this

22   Defendant is exercising his right.  I can't stop him.

23          MR. McADAMS:  Your Honor, I think that the Court

24   has made a very thorough inquiry and ascertained

25   Mr. Radhakrishnan's knowing and voluntary intent to

1   waive his Sixth Amendment rights and the benefits to

2   it.  I would simply, I guess, request the Court observe

3   to the Defendant that this trial is on a schedule that

4   has long been made; that he has been in receipt of all

5   the discovery through his counsel at the same point in

6   time that counsel received it and co-defendants

7   received it; that it is anticipated to be a lengthy

8   trial, and that this decision would not be an

9   opportunity to seek a continuance to change the

10  schedule of the trial.  Nor if he changes his mind,

11  which certainly the Government will have no objection

12  to if he changes his mind at some or any future point

13  to receive counsel, but it would not be a reason to

14  alter the schedule of the trial and I think the defense

15  should understand that.

16           THE COURT:  I think that's fine.  I think that's

17  implicit, but you make a good point I should make

18  clear.

19           You understand all that, Mr. Radhakrishnan?

20           MR. RADHAKRISHNAN:  I do, your Honor.

21           THE COURT:  All right.  I haven't received

22  anything from Mr. Thompson or Mr. Radhakrishnan that

23  indicates that they're seeking a continuance of

24  anything by virtue of this decision.

25           I am going to appoint Mr. Thompson to be standby

1    counsel for you, and Mr. McAdams' point is also good

2    that I'll tell you that if at any point you change your

3    mind about this, whether it's tomorrow or in the middle

4    of jury selection or right before opening statements, I

5    will allow Mr. Thompson to assume the defense, assume

6    your defense.  But I do want it to be clear that I

7    expect that Mr. Thompson will have to be prepared at

8    any given moment to take over without any delay.  So

9    if, for example, you do change your mind right before

10   the start of trial, Mr. Thompson will still be expected

11   to go forward with opening statements to the jury on

12   the schedule that we have established, and I'm not

13   going to entertain any continuance requests if you

14   decide to make a change.  Do you understand that?

15           MR. RADHAKRISHNAN:  Yes, your Honor.

16           THE COURT:  Mr. Thompson.

17           MR. THOMPSON:  Unfortunately, I do understand

18   that, your Honor.  One question that I do have, your

19   Honor, is I know that you appointed me as standby

20   counsel.  In different cases that tends to have

21   different meaning, and I have never found a clear

22   definition of what that means other than I need to be

23   prepared to go forward with the trial.  But I'd like

24   some clarification on what sort of logistical support

25   your Honor would expect my office to offer to

1    Mr. Radhakrishnan.  I do have an investigator who has

2    spent considerable time on this case already.  I have

3    let Mr. Radhakrishnan know that if he's representing

4    himself my investigator will not be working full-time

5    on his case, and I will not be working at the same

6    level on his case that I would have otherwise been

7    working.  I just cannot do that given the number of

8    cases we have in this district and the number of cases

9    my office has.

10        On the other hand, I am more than happy, if the

11   Court so directs, to give him all the logistical

12   support that we can give him in terms of, for example,

13   serving subpoenas, giving him assistance in legal

14   research, investigation, that kind of thing.  I'm happy

15   to do it, but if I could just have some clarification

16   from the Court on what the Court expects.

17        THE COURT:  I think you said it well.  The only

18   question I have, and I haven't had a chance to look

19   into it, is whether there are any restrictions in terms

20   of what you're guided by in that respect.  As long as

21   you're comfortable with using the resources of your

22   office in that way and it's permissible and in

23   accordance with your guidelines, then I'm okay with it.

24   I do want you ready so that you could assume

25   Mr. Radhakrishnan's defense if he has a change of heart

1    here, and I certainly have been through this with

2    defendants who have had a change of heart as trial

3    draws near.

4            MR. THOMPSON:  I understand.

5            THE COURT:  In terms of other levels of

6    commitment, I expect in your role as standby counsel

7    that you will be present for all official matters

8    before the Court, including conferences, jury

9    selection, going through the questionnaires, which

10   we're going to be doing in a week or so, two weeks,

11   whatever it is, and ultimately jury selection.  I think

12   the logistics of how we do these things is going to

13   have to change now that we have a pro se defendant.

14   Probably means that some of the matters which we might

15   have held in the conference room be held in court, open

16   court, or at least in the court, but we'll otherwise

17   try to keep things as normal as possible.

18           MR. THOMPSON:  I understand, your Honor.  Thank

19   you.

20           THE COURT:  All right.  Anything further?

21           MR. McADAMS:  Your Honor, I think it goes

22   without saying but, since we're here, I remind

23   Mr. Radhakrishnan that in going forward, as opposed to

24   in the past when Mr. Thompson represented him in

25   dealings with the Government, Mr. Thompson would

1    communicate with us on his behalf.  And that was a

2    protection for Mr. Radhakrishnan.  If he communicates

3    with us in the future going forward, it's entirely

4    possible that he will incriminate himself, and he

5    should understand that, and that that can be used

6    against him potentially in this trial; or if that

7    communication leads to some other type of offense, I

8    won't speculate as to what that would be, but I simply

9    think he should recognize that his status changes when

10   he speaks to us because now he can speak to us as

11   opposed to before.  Thank you.

12        THE COURT:  Good point.

13        Do you understand that, Mr. Radhakrishnan?

14        MR. RADHAKRISHNAN:  Yes, your Honor.

15        THE COURT:  That same point pertains to what

16   happens during any aspect of the trial process.  For

17   example, you might say something in a conference,

18   pretrial conference or during jury selection or during

19   opening statements or while you're examining a witness

20   that could actually be a self-incriminating statement.

21   And if you do that, the Government can take that

22   statement and use it against you.  Do you understand

23   that?

24        MR. RADHAKRISHNAN:  Yes, your Honor.

25        THE COURT:  As well as anything you might say to

1       them in a phone call or a meeting that they would

2       otherwise have with counsel.  And you may not know that

3       you're doing it.  Do you understand that?

4                   MR. RADHAKRISHNAN:  I understand, your Honor.

5                   THE COURT:  Okay.  Very good.

6                   Mr. Traini, I saw that you wanted to say

7       something.

8                   MR. TRAINI:  I have a question following up on

9       what Mr. Thompson said to the Court, your Honor, about

10      his status as standby counsel.  As you know, there are

11      ethical rules that govern our communication with people

12      who are represented by counsel.  So we also have a

13      concern about how we should communicate during trial

14      preparation, for example.  Normally, in any

15      multi-defendant case, the lawyers would be talking to

16      each other at least about some things.  We're not sure

17      whether we are to be speaking to Mr. Radhakrishnan or

18      to Mr. Thompson or under what circumstances we can do

19      that without violating the ethical rules.  So we're

20      just a little concerned about how we handle our

21      communications, Judge.

22                  THE COURT:  Well, I think, but you or

23      Mr. Thompson can correct me if you disagree, or

24      Mr. McAdams, I think you are free to communicate with

25      Mr. Radhakrishnan as you would with counsel for any

1    other defendant and that he understands and needs to

2    understand that you are communicating with him not as

3    his lawyer, but as Mr. Caramadre's lawyer, and that

4    there may be risks associated with his communicating

5    with you directly, and that if he needs to talk to

6    somebody before either he answers questions or talks to

7    you, he has standby counsel that he can refer to.

8    That's my understanding of the ethical rules, but if

9    you understand it to be different --

10          MR. TRAINI:  I don't, your Honor.  I just wanted

11   to have that point clarified in the same way that

12   Mr. McAdams wanted to clarify the point that he just

13   spoke to the Court about so that I wanted to make sure

14   that Mr. Radhakrishnan also understands that the

15   communication will now be somewhat different.

16          THE COURT:  Right.  And I think this brings up

17   another point, which is, Mr. Radhakrishnan, that we

18   don't have a system of hybrid representation here.

19   Okay?  So once you cross that line and say, I want to

20   represent myself, I appoint Mr. Thompson as standby

21   counsel, backup counsel, but he's not co-counsel.

22   Okay?  So you're not half represented and half pro se.

23   You're pro se.  And with that comes all the risks that

24   I told you about.  Mr. Thompson can help you.  He can

25   assist you, but he's not your associate.  He's not

1  going to be assuming the role part-time as your

2  attorney when you think it might be a good idea to have

3  an attorney speaking for you.  You can't put him in

4  that position.  And you can't put the Government or

5  Mr. Traini or Mr. Lepizzera in that position.  They

6  have to know what's permissible to do, and I'm telling

7  them it's permissible to treat you the way you say you

8  want to be treated, which is as a pro se defendant.  Do

9  you understand all that?

10  MR. RADHAKRISHNAN:  Yes, your Honor, I do.

11  MR. TRAINI:  Thank you, your Honor.

12  THE COURT:  Thank you.

13  Counsel come up for a minute, for Mr. Caramadre,

14  come up.

15  (Side bar conference off the record.)

16  THE COURT:  All right.  Is there anything

17  further from anyone?

18  MR. RADHAKRISHNAN:  Your Honor, I just wanted to

19  see if there was any special provision that could be

20  granted to me to be allowed to bring in my phone as

21  well as my laptop computer during any hearings or as we

22  proceed in this case.

23  THE COURT:  Well, your laptop computer I think

24  is fine.  What do you need a phone for?

25  MR. RADHAKRISHNAN:  I use my phone, it's a PDA.

1    It helps with all of my contacts, calendars, and I use

2    it much more than for just contacting people.  Doubles

3    as my computer, my personal computer.

4            THE COURT:  Can you disable the phone function

5    at least temporarily, like put it on, whatever,

6    airplane mode or something like that?

7            MR. RADHAKRISHNAN:  Yes, your Honor, I can do

8    that.

9            THE COURT:  All right.  I'll allow you to bring

10   it in as long as you can guarantee me that when you're

11   in court, you'll put it on to that mode.  This is in

12   your interest.  Believe me.  I've had trials where

13   attorneys have forgotten to turn off their phones and

14   had them ring during closing arguments, for example.

15   That's not a good thing.  You don't want that to

16   happen.

17           So as long as you will do that and use it only

18   for the purpose of calendaring and contacts and so

19   forth, I'm okay with that.

20           Your laptop computer is fine.  You're going to

21   need to coordinate with Mr. Traini, with Mr. Lepizzera,

22   the Government, about the exhibits in the case and how

23   they're going to be presented and you may want to load

24   them up on your computer, for example.  That's

25   possible.  But that's all fine.

1          You're also going to have to familiarize

2    yourself with all the courtroom technology if you

3    intend to participate as an attorney here.  You need to

4    schedule some time with the clerk's office so that you

5    get familiar with this technology.  You don't want to

6    be fumbling around trying to figure out how to use the

7    projectors and how to hook the laptop up to the system,

8    if you're going to use an electronic presentation

9    system of some sort.  These are all the kinds of

10   logistical things you're going to need to learn how to

11   do.  Okay?

12          MR. RADHAKRISHNAN:  Yes.  Thank you, your Honor.

13          THE COURT:  All right.  We'll be in recess until

14   the next time we get together, which is -- what date?

15          MR. McADAMS:  Next Friday, the 17th, your Honor.

16          THE COURT:  The 17th?

17          MR. McADAMS:  Yes.  For the jury questionnaire

18   process.

19          THE COURT:  And you all received the color-coded

20   questionnaires?

21          MR. McADAMS:  Yes, your Honor.

22          THE COURT:  Did you receive that,

23   Mr. Radhakrishnan?

24          MR. RADHAKRISHNAN:  Yes, your Honor.

25          THE COURT:  All right.  Very good.  All right.

1       We'll see you all on the 17th.

2               (Court concluded at 3:15 p.m.)

C E R T I F I C A T I O N

        I, Anne M. Clayton, RPR, do hereby certify
that the foregoing pages are a true and accurate
transcription of my stenographic notes in the
above-entitled case.




            /s/ Anne M. Clayton

    _____
            Anne M. Clayton, RPR




            August 24, 2012

    _____
            Date