UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| JOSEPH CARAMADRE ) | Criminal No. 11-186-S |
| ) | |
| and ) | |
| ) | |
| RAYMOUR RADHAKRISHNAN ) | |
| Defendants ) | |

MEMORANDUM IN SUPPORT OF DEFENDANT JOSEPH CARAMADRE'S
MOTION FOR LEAVE TO WAIVE JURY TRIAL

Defendant Joseph Caramadre has moved this Honorable Court that, as an alternative to severance of his trial from that of his co-defendant, Mr. Radhakrishnan, his written waiver of jury trial be accepted by the Court, that he be allowed to proceed to trial before the Court only, and that any objection by the government to this request be overruled.[1]

The Facts.

At present, Mr. Caramadre and Mr. Radhakrishnan are joined for trial, which is to commence before this Court and a jury on November 13, 2012. On May 30, 2012, Mr. Radhakrishnan moved to sever his trial from that of Mr. Caramadre asserting that he would be prejudiced by spillover evidence. [See, Docket Entry No. 58]. That motion was denied by the Court. [See, Docket Entry No. 69]. More recently, Mr. Radhakrishnan advised the Court that he intended to forego an attorney and represent himself at trial. [See, Docket Entry No. 73]. The decision by Mr. Radhakrishnan to represent himself caused the court great concern due to the extent of prejudicial error likely to occur as a result, and the court exhorted Mr. Radhakrishnan to

---

[1] The defendant understands that the government will object (based on a telephone conversation between defense counsel and the prosecutor).

carefully consider and reconsider his position. [See Docket Entry No. 74; Transcript of Proceedings of 8/7/12]. After a hearing at which his right to counsel was subject to an informed waiver, Mr. Radhakrishnan was allowed to proceed pro se. [See, Docket Entry for Proceedings on 8/7/12]. Although Mr. Caramadre had no standing to object to Mr. Radhakrishnan's exercise of his right to represent himself, he was understandably concerned about the prejudicial effect Mr. Radhakrishnan's pro se representation would have on the jury, and how that would adversely impact Mr. Caramadre's right to a fair and impartial trial. For those reasons, Mr. Caramadre moved to sever his trial from that of Mr. Radhakrishnan. [See, Docket Entry No. 80]. The government has objected to severance for the usual reasons, chief among them judicial economy and the preference to try alleged co-conspirators together [See, Docket Entry No. 81], and the motion is pending.

Mr. Caramadre's Motion to Sever acknowledged the significantly countervailing considerations to severance, but that in addition to seeking a separate trial, he wished to preserve the abuse of discretion standard of review applied to a pre-trial request. The Court and the parties have acknowledged that severance may be premature at this time because it anticipates prejudicial conduct and effects which have yet to occur. Subsequent to the filing of the motion, at the last conference regarding jury selection issues, Mr. Caramadre reiterated his concern about being prejudiced by Mr. Radhakrishnan's actions, and the government restated its position that severance would be inappropriate in this case. In conjunction with its judicial economy reasoning, the government advised that there would be approximately a 90% overlap in the evidence if there were two trials; that in addition to the enormous expense and logistical effort in conducting the trial twice, there were significant witness preparation considerations, particularly among the families of the measuring lives, as well as the many witnesses who would be required

to travel to Rhode Island for trial, and of course the government reiterated its position that trial of alleged co-conspirators, as the courts continuously recognize, should be had together.

Despite the fact that Mr. Caramadre continues to believe that severance is appropriate because the risk of prejudice is overwhelming[2], he understands that the law does not favor severance at this time. Although none of the parties wishes to see severance occur as a result of a mistrial deep into the proceedings, the Court is within its discretionary ambit to withhold that remedy currently. Mr. Caramadre, however, has suggested an alternative[3], which addresses every one of the issues of concern to the Court. Most importantly, it addresses the primary concern the Court has been struggling with since Mr. Radhakrishnan made his decision to proceed pro se—the possibility that weeks into a lengthy and enormously expensive trial, there would arise an occasion for mistrial caused by the prejudicial impact on the jury of some action or accumulation of actions or mis-steps by Mr. Radhakrishnan.

The Court and the government have identified a number of issues which make severance inappropriate. Clearly, having to twice try a case that would last 3-4 months each time is a more than substantial reason. All the government's reasons for a single, joint trial, while contested by the defense in the Motion to Sever, are nevertheless not unreasonable. All, however, can be accommodated by a bench trial for Mr. Caramadre, conducted within the jury trial of Mr. Radhakrishnan.

All critical elements of the case, which presently militate against a severance, will remain unchanged: the trial time will be the same (or more likely less, with the elimination of numerous side bar conferences, and limiting or curative instructions, to deal with prejudice issues). The

---

[2] By requesting this alternative form of relief, Mr. Caramadre does not waive his request for severance, or any of his arguments in support of that request.

[3] Another alternative would be to empanel two juries for simultaneous or separate but substantially concurrent trials. Either possibility presents significant administrative, financial and logistical concerns.

evidence will be the same. The witnesses will be the same. The government's preparation will be the same and the government will also maintain its ability to try alleged co-conspirators together. What will change will be matters which only benefit the Court and the parties.

To the extent Mr. Radhakrishnan makes the highly prejudicial errors the court is convinced he will make [Tr. 8/7/12, at 5:11-19; 6:3-11, 21-25; 11:12-12:13], they will now prejudice only him, and not Mr. Caramadre. There will be no need for limiting instructions. There will be no need for curative instructions. Most importantly, there will be no occasion for mistrial based on prejudice to Mr. Caramadre before the jury.[4] To the extent Mr. Radhakrishnan creates problems for himself because of his pro se representation, they remain his problems, and the court will no longer need to be concerned with protecting Mr. Caramadre from any ill effects occasioned by Mr. Radhakrishnan. All prejudice will inure to Mr. Radhakrishnan alone, and cannot spill over onto Mr. Caramadre.

The Law.

In moving for a bench trial, Mr. Caramadre waives an important constitutional right—that of trial by jury. He has, however, made a determination that there is a conflict in his rights created by Mr. Radhakrishnan's actions, which compel him to elect between rights. The right he chooses to preserve is his right to a fair and impartial trial, and he believes that he is unable to secure that right before the jury if Mr. Radhakrishnan continues to act pro se.[5]

---

[4]Ironically, although the government objects to the waiver, it serves a governmental purpose as well. Throughout the recent proceedings, the government has been noticeably concerned (as has the court) with the potential for internet and other media attention which could lead to contamination of the jury. Obviously, the government believes, as does the defendant and the court, that protection of the jury panel from any outside influence is critical to a fair trial. The court has recognized that there is little that can be done to control media coverage of the case, and the government has expressed concern, on more than one occasion, about the possibility of media coverage unduly influencing the jury. The jury waiver would, of course, moot this issue.

[5]Mr. Caramadre also notes that in the event a mistrial becomes necessary, his speedy trial rights may be impacted on retrial. Speedy trial is also a consideration in the event the court decides to sever the cases prior to trial. But these speedy trial issues evaporate if the jury waiver is accepted.

The law on the question before the court is sparse and aged.[6] Its genesis is the nearly fifty-year-old Supreme Court decision in Singer v. United States, 380 U.S. 24 (1965), which affirmed the validity of F.R.Crim.P. 23(a), and (inexplicably) held that, without the consent of the government and the court, a defendant has no right to waive a jury trial—a right which is accorded by the Constitution to only the defendant.  There are two legal issues before the Court in this matter.  One is the largely theoretical question of whether Singer and its progeny should be revisited.  Mr. Caramadre raises this issue to preserve the record and to protect his right to argue at a later time, if necessary, that Singer was wrongly decided and to allow for the opportunity, if the First Circuit so chooses on the facts of this case, to position the matter for review by the Supreme Court.[7]  Mr. Caramadre insists that he has a constitutional right to waive the jury, and wishes to exercise that right at this time.

It is not the defendant's intention to burden the Court with the constitutional argument here, other than to fully state it and have the court acknowledge that the issue has been preserved.  That issue is multi-faceted, and includes that (a) the defendant has a constitutional right to a trial by jury, that the right is his and his alone, and that he can and should be allowed to waive that right as long as the court determines, as it does in the cases of other waivers, that the relinquishment of that right is knowing, intelligent and voluntary; (b) that the defendant has an absolute right to a fair and impartial trial and that it is not necessary that this right be exercised

---

[6]There is an excellent (albeit older) law review article on this subject.  See, DeCicco, *Waiver of Jury Trials In Federal Criminal Cases:  A Reassessment Of The "Prosecutorial Veto"*, 51 Fordham L. Rev. 1091 (April, 1983).

[7]There are two First Circuit decisions on this subject  In the first, United States v. Ceja, 451 F.2d 399 (1st Cir. 1971), the Court said ". . . we will assume without so deciding that proof of circumstances set out in the Singer dicta would warrant granting the defendant a trial to the court notwithstanding prosecutor's objection thereto."  In the second case, United States v. Houghton, 554 F.2d 1219 (1st Cir. 1977), the Court held that Rule 23 precluded a waiver absent government and court consent, and endorsed Singer; however, the Court acknowledged Ceja, and found that on the facts before it, the Singer dicta did not apply, as the defendant in Houghton did not raise that issue and it was mooted by the actions of the trial judge concerning certain offending evidence.

only in conjunction with his right to a jury trial, and that in certain circumstances, at the discretion of the defendant, he may elect which of those rights he wishes to pursue; (c) that it is not permissible for the government, in insisting on a refusal to consent to a waiver under Rule 23, to thwart the defendant's right to fair and impartial trial; (d) that on the facts of this case, the defendant cannot receive a fair and impartial trial before a jury and that his election to proceed without a jury should be subject only to a determination that his decision is knowing and voluntary; (e) that the government's action in refusing to consent to a bench trial in this case, if indeed the government's consent is truly legally necessary, will result in the denial of a fair and impartial trial under the Sixth amendment, as well as denial of due process under the Fifth Amendment, to the United States Constitution; (f) that any suggestion or claim that the government is entitled to a jury trial and has a right thereto is not found in or supported by the Constitution; and (g) that it is insufficient and inappropriate, in the context of deciding a constitutional issue, that the government, in any case wherein it withholds its consent to a jury waiver, is not required to specifically explain the reason for its action.

      The second issue—the practical one—is whether the question which <u>Singer</u> expressly reserved, which allows for a waiver under certain circumstances, is appropriately applied in this case. There is precedent for its application, and Mr. Caramadre believes that the language of <u>Singer</u> itself suggests that it is available here.

      The <u>Singer</u> Court said, "[w]e need not determine in this case whether there might be some circumstances where a **<u>defendant's reasons</u>** for wanting to be tried by a judge alone are **<u>so compelling</u>** that the Government's insistence on a trial by jury would result in the denial to a defendant of an impartial trial." [emphasis supplied] <u>Singer</u>, 380 U.S. at 37. Shortly after <u>Singer</u> was decided, the United States District Court for the Eastern District of New York (Weinstein,

J.), held that the government, which had previously consented to a jury waiver, could not rescind its consent on a remand after appeal.  While recognizing that there originally was a consent in that case, Judge Weinstein also found that there were circumstances under which a waiver would be appropriate even absent consent. United States v. Schipani, 44 F.R.D. 461, 463 (E.D.N.Y. 1968).  Thereafter, there were two cases decided by other district courts which held specifically that Singer's reservation on this question allowed those courts to grant a waiver over the government's objection because of the singularly specific facts of the cases before the Court.  One of those cases, United States v. Panteleakis, 422 F.Supp. 247 (D.R.I. 1976), was decided here, by Judge Pettine.  Mr. Caramadre's case presents not only many of the same factors which led Judge Pettine to grant the bench trial in Panteleakis, but is overlaid with the additional reasons which inform the severance issue in this case.

     To summarize briefly, Panteleakis concerned a complicated Medicare fraud scheme involving government contracts, dozens of witnesses, hundreds of exhibits, intricate accounting and financial transactions, and other features which the court reasonably believed would make the case difficult for a jury to comprehend and fairly decide.  Judge Pettine determined that, within the meaning of the Singer dicta, his was a case which would result in the denial of a fair trial for the defendants if a jury were to hear the evidence, notwithstanding the government's objection to the jury waiver.  Judge Pettine found that the "government consent" required by Rule 23 is not "an inflexible condition precedent to a trial before a judge alone." 422 F.Supp. at 248.  And like this case, Panteleakis was one in which severance was eschewed by the government. Id., at 250.

     Likewise, in United States v. Braunstein, 474 F.Supp. 1, 12-18 (D.N.J. 1979), the court faced a similar case (Medicaid, as opposed to Medicare fraud), with circumstances and

considerations very similar to those in Panteleakis.  In granting the request for a bench trial, the court in Braunstein undertook an exhaustive analysis of all the cases decided to date where the waiver issue had been raised and rejected, and distinguished every one of them.  The present case bears no similarity to the cases so distinguished, and in fact is much more akin to both Panteleakis and Braunstein.  Moreover, Braunstein reserved on the constitutional issues (similar to those raised here) and decided the case based on the control of Rule 23 by the provisions of F.R.Crim.P. 2, which provides that "[t]hese rules are to be interpreted to provide for the just determination of every criminal proceeding, to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay."  The defendant agrees with the Braunstein court that a jury waiver as to him will advance that purpose.

   More recently, this issue was the subject of a detailed analysis in the context of the tension between competing constitutional rights, and whether the government is able, by virtue of its veto conferred by Rule 23 to deny a defendant the benefit of another constitutional right.  See, United States v. Lewis, 638 F.Supp. 573 (W.D.Mich. 1986).  In Lewis, the tension was between the defendants' effort to waive a jury trial (other than by guilty plea) to avoid submitting themselves to a jury which they believed was composed in a way that would violate their religious beliefs.  After a searching analysis, the court determined, among other things, that the government's objection to the jury waiver would not prevail because if the defendants were able to demonstrate a sincere religious belief that would implicate their First Amendment right, the government could not deprive them of that right with a veto of their jury waivers.  The discussion in Lewis considers and analyzes many of the same considerations at work in this case, and is extremely helpful to any proper application of the Singer dicta.

While not having sufficient facts to fit within Singer, other courts have acknowledged that in appropriate cases, the waiver can be granted over the government's objection.  See, e.g., and compare, United States v. Senogles, 2008 WL 3200178 (D.Minn. 08/04/08).  See also, United States v. Daniels, 282 F.Supp. 360, 361 (N.D.Ill. 1968)("[i]t is clear to this court that although there may be circumstances where a waiver of this type should be allowed even over the objection of the government, this case does not present such a situation."); United States v. Harris, 314 F.Supp. 437, 439 (D.Minn. 1970); United States v. DiPasquale, 561 F.Supp. 1338, 1348 n. 16 (E.D.Pa. 1983).  Another decision has collected many of these cases and itself recognized that under the appropriate circumstances, Singer allowed for the waiver.  See, Doepel v. United States, 434 A.2d 449, 456-457 (D.C.App. 1981), and cases cited.

Mr. Caramadre believes, and therefore respectfully submits to the Court, that although he continues to maintain his entitlement to severance, in the absence of such a remedy, he will be irreparably prejudiced in a joint trial with Mr. Radhakrishnan held before the same fact-finder.  All severance issues are reduced to prejudice claims, and all such prejudice claims revolve around the jury.  Since the court is always called upon to determine motions in limine, preliminary matters of admissibility of evidence, to give limiting and curative instructions, and otherwise deal with matters the jury cannot consider, there can be no argument that the court will be prejudiced by determining the facts.  The court is presumed to be able to distinguish between what evidence is placed on the scale and what is not.  Mr. Caramadre's concern has always been the jury itself.

Likewise, the Court's concern has been to what extent Mr. Radhakrishnan's self-representation will adversely affect the jury, causing prejudice to both himself and to Mr. Caramadre.  Of the two moving parts in the prejudice equation—Mr. Radhakrishnan and the

jury—removing Mr. Radhakrishnan is a function of a severance, which is not likely to be granted for a variety of reasons.  The only other solution is to remove the other moving part—the jury—and that is accomplished by the waiver, while maintaining all the other factors critical to the court and the conduct of the trial.  The waiver does not upset the trial schedule, does not in any way adversely affect the interests of judicial economy, protects Mr. Caramadre's right to a fair and impartial trial and eliminates the possibility of a mistrial caused, whether inadvertently or not, by Mr. Radhakrishnan.  The only disadvantage to Mr. Caramadre—which he is willing to absorb—is his waiver of right to a jury trial.

In this case, a jury trial for him would likely not be fair and impartial, and to insist on it impinges upon, and derogates from, Mr. Caramadre's other constitutional rights; namely, that he be tried fairly and impartially, on the basis of the evidence, and without risk that the case will have to be tried a second time.

Since the law clearly provides that a defendant can waive every other constitutional right he has (including his right to a jury trial in the case of a guilty plea), it is unimaginable that the court cannot allow a waiver of his right to a jury trial in order to prevent the derogation of his rights to a fair trial and to due process.

For the foregoing reasons Mr. Caramadre requests that his jury waiver be granted.

Respectfully submitted,
JOSEPH CARAMADRE
By and through his Attorneys,
/s/ *Anthony M. Traini*
Anthony M. Traini (#4793)
56 Pine Street, Suite 200
Providence, RI 02903-2819
Tel: (401) 621-4700
Fax: (401) 621-5888
Email: amt@trainilaw.com

/s/ Michael J. Lepizzera, Jr.
Michael J. Lepizzera, Jr. (#4995)
LEPIZZERA & LAPROCINA, LTD.
117 Metro Center Boulevard, Suite 2001
Warwick, Rhode Island 02886
Tel. (401) 739-7397
Fax (401) 691-3558
Email: mlepizzera@leplap.com

CERTIFICATE OF SERVICE

    I hereby certify that on September 20, 2012, a copy of the foregoing Defendant Joseph Caramadre's Motion for Leave to Waive Jury Trial was filed electronically and served by e-mail and mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Michael J. Lepizzera, Jr.
Michael J. Lepizzera, Jr.