UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | |
| JOSEPH CARAMADRE ) | Criminal No. 11-186-S |
| ) | |
| and ) | |
| ) | |
| RAYMOUR RADHAKRISHNAN ) | |
| Defendants ) | |

**DEFENDANT JOSEPH CARAMADRE'S MEMORANDUM IN SUPPORT OF HIS MOTION IN LIMINE TO PRECLUDE EVIDENCE OF SO-CALLED "LOSS/GAIN" CALCULATIONS**

Defendant Joseph Caramadre has moved in limine that the Court preclude the use of evidence by the government of certain amounts of money the government alleges to be "losses" incurred by purported victims, as well as the characterization of such amounts as "losses".[1]

As noted in Mr. Caramadre's Initial Pretrial Memorandum, this motion relates to certain items of financial data, including the use of summaries of financial information which the government intends to offer into evidence, containing so-called "loss amounts." The defendant has raised the issues of whether (a) this evidence is material in this case [i.e., whether a jury determination of "loss" would be required to support the imposition of an alternative fine pursuant to 18 U.S.C. §3571(d)[2]], and (b) even if relevant, it is unfairly prejudicial and should be excluded under Fed.R.Evid. 403.

---

[1] The motion applies to amounts which the government characterizes as either "losses" to an alleged victim, or "gains" to the defendant; however, for ease of reading, the amounts are referred to throughout this memorandum as "losses".

[2] In part, this evidence might otherwise be necessary to comply with the recent holding of the Supreme Court in Southern Union Company v. United States, 132 S.Ct. 2344 (2012), in order to make available fines in excess of the statutory maximum, all as provided for in the Alternative Fine Statute [18 U.S.C. §3571(d)].

As to the question of materiality, the so-called <u>Southern Union</u> issue (as explicated in the Defendant's Initial Pretrial Memorandum[3]) appears to have been resolved by the government's agreement not to seek any fine in excess of the maximum statutory fines provided for each count, in the event of conviction, pursuant to 18 U.S.C. §3571(b).[4] The defendant concurs that in light of the government's agreement not to seek any fine beyond the statutory cap as described in its memorandum, there is no jury determination of "loss" or "gain" required under 18 U.S.C. §3571(d).

Despite the government's agreement to waive the application of §3571(d), however, the defendant submits that the government's financial evidence is so overwhelmingly prejudicial that, under a Rule 403 analysis, it should be excluded or limited. Mr. Caramadre agrees that the law is clear that while such evidence is <u>admissible</u> on the issues of motive, intent and knowledge[5], it is not <u>required</u> for proof of those factors. <u>See</u>, <u>United States v. Copple</u>, 24 F.3d 535, 544 (3d Cir.), <u>cert. denied</u>, 513 U.S. 989 (1994). While knowledge and intent are elements of the fraud offenses, motive is not. <u>See</u>, <u>United States v. Weinstein</u>, 172 F.3d 39, *3, citing <u>United States v. Simon</u>, 425 F.2d 796, 808-09 (2d Cir. 1969), <u>cert. denied</u>, 397 U.S. 1006 (1970);

---

[3]This explanation of the applicability of the <u>Southern Union</u> decision is incorporated herein by this reference.

[4]In its Pretrial Memorandum filed on October 18, 2012, the government agreed not to seek any fines pursuant to the Alternative Fine Statute and to essentially cap the maximum statutory fine at $15 million (which is the aggregate amount of maximum statutory fines available on each count of the indictment which provides for a fine, and assuming convictions on each of those counts: [The provisions of 18 U.S.C. §1028A(a)(1) (which applies only to Counts 60-64) are not at issue because there is no separate monetary penalty provided for by this statute. The provisions of 18 U.S.C. §1512(b)(3) (which applies only to Count 66), while providing for a fine pursuant to 18 U.S.C. §3571, is limited to the felony fine amount of $250,000 [provided by 18 U.S.C. §3571(b)] because there is (at least in this case) no gain or loss associated with this offense, and therefore no occasion for the imposition of an alternative fine. The 26 wire fraud counts (Counts 1-26) are governed by 18 U.S.C. §1343; the 6 mail fraud counts (Counts 27-32) by 18 U.S.C. §1341; and the single conspiracy count (Count 33) by 18 U.S.C. 371, which uses the penalties for the object offenses (the highest of which in this case are the wire/mail fraud penalties of imprisonment and the Title 18 fines). The 26 identity theft counts (Counts 34-59) are governed by 18 U.S.C. §1028(a)(1) and the single money laundering count (Count 65) by 18 U.S.C. §1957(a) and (b)(1) and (2). There are therefore a total of 60 felony counts for which the maximum Title 18 fine is $250,000 each (or $15 million in the aggregate)]).

[5]<u>See</u>, <u>United States v. Munoz-Franco</u>, 487 F.3d 25, 62 (1st Cir.), <u>cert. denied</u>, 552 U.S. 1042 (2007).

and <u>United States v. Chestnut</u>, 533 F.2d 40, 48 (2d Cir.), <u>cert. denied</u>, 429 U.S. 829 (1976). More importantly, loss is not an element of the charged offenses. <u>United States v. Munoz-Franco</u>, 487 F.3d at 62. Here, the government's proffered evidence is directed more to the unnecessary proof of motive than anything else. And although knowledge and intent must be proven, the so-called "numbers evidence", albeit arguably helpful, is not necessary to that task. <u>Id.</u>, citing <u>United States v. Kenrick</u>, 221 F.3d 19, 29 (1st Cir.), <u>cert. denied</u>, 531 U.S. 961 (2000). In fact, its unfair prejudice outweighs its usefulness as part of the proof. <u>See</u>, <u>United States v. Stoecker</u>, 920 F.Supp. 867, 875-876 (N.D.Ill. 1996).[6]

While the defendant acknowledges that all evidence is prejudicial (or else it would not be evidence), it cannot be <u>unfairly</u> prejudicial. <u>See</u>, <u>United States v. Raymond</u>, 2012 WL 4801323 (1st Cir. 10/10/2012), and quoting <u>United States v. Rodriguez–Estrada</u>, 877 F.2d 153, 156 (1st Cir.1989). In this case, the unfair prejudice emanates from two directions. First is the sheer magnitude of the numbers, which in this case are staggering—so much so that they drive the sentencing guidelines into Draconian territory.[7] Second is the characterization used in the summary chart, which denotes these amounts as "losses".

Even if the government is allowed to attempt to prove amounts paid out in excess of amounts received, it is unfair to allow the characterization of any such amount as a "loss".[8] While the amount used—whatever it is—certainly represents, in part, the difference between the amount paid in and the amount paid out, adjusted for market effects, contract provisions and

---

[6] Moreover, at least one count of the indictment (Count 66) has nothing to do with the amounts of money at all.

[7] The government's summaries project "losses" in excess of $45 million. That figure alone, without any other enhancements, adds 22 levels to the base offense guideline of 7 [U.S.S.G. §2B1.1(a)(1) and (b)(1)(L)], raising the sentencing range from 0-6 <u>months</u> to 7-9 <u>years</u>.

[8] It is even less necessary to prove the figure when the jury is not required to make a reasonable doubt or <u>Apprendi</u> determination of the amount, as under <u>Southern Union</u>.

3

other factors, it is up to the jury to determine whether this amount is actually a "loss."[9] There may be a variety of factors which contributed to a "loss" on any particular account. See, e.g., United States v. Rand, 2011 WL 4914962 (W.D.N.C. 10/17/2011). In addition, to the extent the evidence is being offered to prove motive, intent, and/or knowledge, unless the government is alleging that it was the defendant's intention to harm the alleged victim entities (rather than to benefit himself), evidence of "loss amounts" is not appropriate; however, whether or not there is a "loss", irrespective of amount, is relevant to the question of intent (in a mail fraud/wire fraud context) and is therefore a jury question. See, Minisohn v. United States, 101 F.2d 477 (3d Cir. 1939). Compare, e.g., United States v. Lane, 323 F.3d 568, 583-584 (7th Cir.), cert. denied, 540 U.S. 818 (2003). The "loss amount" evidence, as well as its characterization as "losses", as opposed to differences in the figures, will be unfairly prejudicial here. See, e.g., United States v. Copple, 24 F.3d at 545-546.

Although the government may argue that its evidence represents the other side of a single coin (i.e., "gain", as opposed to "loss"), the analogy is not apt. While evidence quantifying a defendant's gain may be relevant to intent and motive (and therefore admissible), it does not necessarily represent a corresponding loss to an alleged victim. If the purpose of this evidence is to provide the *raison d'etre* for the alleged scheme to defraud, it is unfairly prejudicial to characterize as "losses" to the alleged victims amounts which the defendant may have made as profits; in addition, to the extent the alleged victims were themselves responsible for whatever happened (whether it be their loss or the defendant's gain), characterizing the amounts as "losses", even if accurate, places the burden for the "loss" on the defendant—something which

---

[9] Also relevant on this issue is the more specific determination of so-called "bond losses" sought by the government by the use of its proposed expert, Andrew Kalotay. Mr. Caramadre has filed a separate motion in limine to exclude this so-called "expert testimony", and incorporates those arguments herein by this reference.

may not be correct (and in fact which the defendant contests[10]), and which is, at bottom, a jury issue, as intent to defraud cannot be based solely on a defendant's desire for benefit.  See, United States v. Frank, 156 F.3d 332, 336-337 (2d Cir. 1998), cert. denied, 526 U.S. 1020 (1999); United States v. Starr, 816 F.2d 94, 101 (2d Cir. 1987).

Summaries such as those at issue here are allowed if the underlying admissible evidence is too voluminous for ready review by the jury, the summary is accurate and it conveys the information in a neutral, non-argumentative manner.  Fed.R.Evid. 1006; United States v. Milkiewicz, 470 F.3d 390, 397-398 (1st Cir. 2006).   Summaries under Rule 1006 become full exhibits which are published to the jury because they are, in effect, substitutes for the underlying voluminous evidence.  Id.  The cornerstone of admissibility under Rule 1006 is accuracy and neutrality.  Id.

While the government may argue that use of the term "loss" is neutral because it merely states a fact (i.e., that an insurance company, for example, lost money on a specific transaction), such an argument begs the question.  Does that insurance company "lose" money when it pays a death benefit and other amounts in accordance with an annuity contract the insurance company drafted and for which it was paid a premium?  Such a myopic view of "loss" would cause any payment made by any insurance company which exceeds the premium charged to constitute a "loss", when in fact it was simply making a payment which it was contractually obligated to make.

In the context of a criminal indictment, "loss" has a specific contextual meaning that is significantly different than a simple mathematically-based definition that equates a "plus" in the ledger with a "gain", and a "minus" in the ledger with a "loss".  In the context of this case, "loss"

---

[10] The defendant should be allowed to introduce evidence that any losses were not caused by his alleged fraud.  See, United States v. DeSantis, 134 F.3d 760, 768 (6th Cir. 1998).

should mean only one thing—payments made by insurance companies or bond issuers that resulted from the defendant's alleged fraudulent conduct. The government's characterization of the payments made by the insurance companies as "losses" on its summary charts impermissibly and prejudicially conflates "loss" as a result of the alleged scheme to defraud, and a simple mathematical "loss". It is precisely this conflation of terms that causes the unfair prejudice to Mr. Caramadre as it plants the seed in the minds of the jurors that any payments were the result of criminal conduct—a fact the government must prove beyond a reasonable doubt. Allowing the government to characterize an alleged victim's payments as "losses" on their summaries creates an argumentative exhibit that no longer fairly and accurately summarizes the underlying evidence.

    Insofar as any piece of documentary evidence says what it says, its interpretation is left to the jury. If a document is admitted as a business record, for example, there is no argument as to what it says, only as to what it means. The summaries, while perhaps composed largely of information taken from business records (even including the stipulation as to the fees earned by the insurance companies), are nonetheless documents created by the government. The characterizations of any items as "losses" are therefore part of the evidence if the document is admitted. These items should not be deemed, as a matter of evidence, to be "losses" simply because this is how the government chooses to describe them. That is more accurately argument than evidence. It is up to the jury to decide if any alleged victim actually suffered any "loss". See and compare, e.g., United States v. Richardson, 233 F.3d 1285, 1293-1294 (11th Cir. 2000), cert. denied, 532 U.S. 913 (2001). The court has wide latitude in fashioning remedies for exactly these sorts of concerns. That discretion was used in United States v. Milkiewicz to ameliorate the same issues raised here. See 470 F.3d at 398, and n. 16.

WHEREFORE, Mr. Caramadre hereby moves that

(a) evidence of particular amounts of alleged "losses" and/or "gains" be excluded from admission, and

(b) any summary charts or exhibits used by the government at trial, whether or not admitted into evidence, be labeled in such a way as to eliminate prejudicial and inflammatory references to "losses" or "gains" or other characterizations of the defendant's conduct, which are determinations that must be made by the jury.

Respectfully submitted,
JOSEPH CARAMADRE
By his Attorneys,
/s/ *Anthony M. Traini*
Anthony M. Traini (#4793)
56 Pine Street, Suite 200
Providence, RI 02903-2819
Tel: (401) 621-4700
Fax: (401) 621-5888
Email: amt@trainilaw.com

*/s/ Michael J. Lepizzera, Jr.*
Michael J. Lepizzera, Jr. (#4995)
LEPIZZERA & LAPROCINA, LTD.
117 Metro Center Boulevard, Suite 2001
Warwick, Rhode Island 02886
Tel. (401) 739-7397
Fax (401) 691-3558
Email: mlepizzera@leplap.com

### CERTIFICATE OF SERVICE

I hereby certify that on November 8, 2012, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Anthony M. Traini*
Anthony M. Traini
