UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA ) 
)
v. )
)
JOSEPH CARAMADRE )    Criminal No. 11-186-S
)
and )
)
RAYMOUR RADHAKRISHNAN )
Defendants )

**DEFENDANT JOSEPH CARAMADRE'S MEMORANDUM IN SUPPORT OF HIS
MOTION IN LIMINE TO PRECLUDE THE TESTIMONY OF ANDREW KALOTAY OR
IN THE ALTERNATIVE TO HOLD A DAUBERT HEARING**

This Memorandum of Law is submitted in support of Joseph Caramadre's Motion in

Limine to Exclude the testimony of Andrew Kalotay or in the Alternative to Hold a Daubert[1]

Hearing.

**Background**

Mr. Caramadre has been charged with mail and wire fraud, conspiracy, identify theft,

aggravated identify theft, money laundering and witness tampering.  A significant portion of the

government's allegations rest on its contention that Mr. Caramadre devised/participated in a

scheme to defraud bond issuers by causing investors and terminally ill individuals to purchase

bonds that included a survivor benefit.  It is alleged that upon the death of the terminally ill joint

account owners, the bonds were then able to be redeemed at their face value from the bond

issuers.  As part of its proof at trial, the government proposes to introduce the testimony of Dr.

Andrew Kalotay to "prove" that the bond issuers incurred a "loss" as a result of the alleged

---

[1] Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).

scheme to defraud.  Dr. Kalotay's proposed testimony is set forth in his draft report provided by

the government.[2]  Mr. Caramadre seeks to exclude Dr. Kalotay's testimony and report, or in the

alternative to have the Court hold a so-called <u>Daubert</u> hearing to determine if Dr. Kalotay

qualifies as an expert.

## I.    <u>THE LAW</u>

Admission of expert testimony is governed by Fed.R.Evid. 702 and 703.  Rule 702

provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training,
> or education may testify in the form of an opinion or otherwise if:
>
> (a)    the expert's scientific, technical, or other specialized knowledge
>        will help the trier of fact to understand the evidence or to
>        determine a fact in issue;
> (b)    the testimony is based on sufficient facts or data;
> (c)    the testimony is the product of reliable principles and methods; and
> (d)    the expert has reliably applied the principles and methods to the
>        facts of the case.

Rule 703 amplifies Rule 702:

> An expert may base an opinion on facts or data in the case that the expert has
> been made aware of or personally observed. If experts in the particular field
> would reasonably rely on those kinds of facts or data in forming an opinion on the
> subject, they need not be admissible for the opinion to be admitted. But if the
> facts or data would otherwise be inadmissible, the proponent of the opinion may
> disclose them to the jury only if their probative value in helping the jury evaluate
> the opinion substantially outweighs their prejudicial effect.

A further prerequisite to admissibility is that the proffered expert evidence must be

relevant.  <u>Daubert</u>, at 591.  "Expert testimony which does not relate to any issue in the case is not

relevant, and, ergo, non-helpful."  <u>Id</u>., quoting <u>Weinstein & Berger</u> ¶702[02], pp. 702-18.  <u>See</u>

<u>also</u>, <u>Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.</u>, 161 F.3d 77, 81 (1st Cir. 1998):

[2]A copy of Dr. Kalotay's draft report is attached hereto as <u>Exhibit A</u>.  References to the report are to <u>Kalotay</u>, p. ___.
Because the report is a draft, and even in final form may not be admitted into evidence, the report, as well as
excerpts from and references to it, have been redacted from the CM/ECF version of this Memorandum.

> To be admissible, expert testimony must be relevant not only in the sense that all evidence must be relevant, *see* Fed.R.Evid. 402, but also in the incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue, *see* Daubert, 509 U.S. at 591-92, 113 S.Ct. 2786. In other words, Rule 702, as visualized through the Daubert prism, "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. at 592, 113 S.Ct. 2786.

Lastly, proffered expert evidence may be excluded when its prejudicial effect unfairly outweighs its probative value.  See, Daubert, at 595, and Fed.R.Evid. 403.

Daubert[3] sets forth several areas of inquiry on which the trial court should focus in determining the admissibility of the proffered expert testimony.  These include whether (1) the technique or theory has been tested, (2) it has been subjected to peer review, (3) there is a known error rate, (4) there are any standards or controls, and (5) the technique or theory has gained general acceptance.  Daubert, at 592-594.  Daubert's factors are not exclusive and the trial court must fashion its inquiry based upon the nature of the proffered testimony.  Daubert, at 594-95 ("[t]he inquiry envisioned by Rule 702 is, we emphasize, a flexible one [fn. omitted]"), and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (1999):

> [that the trial court may consider these additional factors] reflects Daubert's description of the Rule 702 inquiry as "a flexible one." 509 U.S., at 594, 113 S.Ct. 2786.  Daubert makes clear that the factors it mentions do not constitute a "definitive checklist or test." Id., at 593, 113 S.Ct. 2786.  And Daubert adds that the gatekeeping inquiry must be " 'tied to the facts' " of a particular "case." Id., at 591, 113 S.Ct. 2786 (quoting United States v. Downing, 753 F.2d 1224, 1242 (C.A.3 1985)).

In carrying out its role as gatekeeper, the trial court must focus on the expert's underlying principles and methodology.  Daubert, at 595.  In other words, in making its preliminary

---

[3]Although Daubert dealt with scientific expert testimony, its holding concerning the trial court's role as gatekeeper in evaluating proposed expert evidence was extended to all expert testimony by the Supreme Court's holding in Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999).

assessment of admissibility, the trial court reviews a proposed expert's basis for his/her opinion.

It does not focus, necessarily, on the expert's conclusion.  Id.

## II.    ARGUMENT

### A.    Dr. Kalotay's testimony should be excluded because "loss" is not an issue before the jury.

The government need not prove that the bond issuers incurred any "loss" to prove any of

the charged offenses.  United States v. Munoz-Franco, 487 F.3d 25, 62 (1st Cir), cert. denied, 552

U.S. 1042 (2007); see also, United States v. Copple, 24 F.3d 535, 544 (3d Cir.), cert. denied, 513

U.S. 989 (1994).  The elements of mail and wire fraud are "(1) the defendant's knowing and

willing participation in a scheme or artifice to defraud with the specific intent to defraud, and (2)

the use of the mails or interstate wire communications in furtherance of the scheme." United

States v. Sawyer, 85 F.3d 713, 724 (1st Cir.1996).[4]  The defense is also not aware of any evidence

which the government intends to introduce to show that Mr. Caramadre intended to cause the

bond issuers to incur "losses".  The bottom line is that the jury does not need to hear any

evidence concerning the amount of alleged "losses" to the bond issuers as this is not an issue the

jury will be required to decide.

Because these alleged "losses"  are not before the jury, Dr. Kalotay's proposed testimony

fails the fundamental relevancy requirement set out in Daubert and its progeny.[5]  Quite simply,

the jury does not need Dr. Kalotay's assistance because it is not required to make any factual

determinations predicated on the alleged "losses" to the bond issuers.  The absence of a factual

issue before the jury should, in and of itself, preclude the government's use of Dr. Kalotay's

---

[4]The other pending charges, conspiracy, identity theft, aggravated identity theft, money laundering and witness tampering also do not require proof of "loss".

[5]These cases include Kumho Tire Co., Ltd. v. Carmichael, supra, 526 U.S. 137 (1999); General Electric Co. v. Joiner, 522 U.S. 136 (1997); see also, Granfield v. CSX Transportation, Inc., 597 F.3d 474 (1st Cir. 2010); and Seahorse Marine Supplies, Inc. v. Puerto Rico Sun Oil Co., 295 F.3d 68 (1st Cir. 2002).

testimony at trial.  Daubert, at 591.  Accordingly, the government should be precluded from

calling Dr. Kalotay or any other witness concerning the alleged "losses" to the bond issuers.

**B.**     **Dr. Kalotay's proffered testimony should be excluded because he does not qualify as an expert in calculating "loss" to bond issuers.**

The government has provided the defense with Dr. Kalotay's biography, which does not

reveal any indication that he has previously conducted research or provided expert testimony on

the subject of "loss" to bond issuers when a survivor bond is redeemed.  Mr. Caramadre contends

that the mere fact Dr. Kalotay has had a long career in dealing with bonds—in fact, some

literature credits him with developing the "ratchet bond"—does not, *per se*, qualify him as an

expert in calculating a bond issuer's alleged actual "loss".  Accordingly, the government should

be precluded from calling Dr. Kalotay concerning these alleged "losses", or in the alternative, the

Court should conduct a Daubert hearing to determine Dr. Kalotay's qualifications to render such

an opinion.  In this case, due to the inflammatory nature of the proffered evidence, that hearing

should occur outside the presence of the jury. See, e.g., United States v. Bourgeois, 2011 WL

1920684, *89 (S.D.Tex. 5/19/2011).

**C.**     **Dr. Kalotay's testimony concerning the alleged "losses" to the bond issuers should be excluded because his methodology and techniques do not comport with Rule 702 or with the Daubert/Kumho standards for admissibility.**

As set out above, Daubert requires the trial court to make a preliminary assessment of

expert testimony to determine if it meets Rule 702's requirements for admissibility.  See Daubert

at 592-95.  In this case, Dr. Kalotay's proposed testimony concerns the amount of the purported

"loss" suffered by bond issuers arising out of the defendants' alleged scheme to defraud.  While

Dr. Kalotay's opinion is based in mathematics, it is not based in science.  Rather, it emanates

from Dr. Kalotay's experience and observations coupled with the application of mathematical

formulas and equations.

Although the rules of evidence do not require all of the facts relied upon by an expert to be admissible and/or admitted in evidence (see, Rule 703), the expert's testimony must nevertheless be based upon sufficient facts or data and reliable principles and methods, which must be reliably applied to the facts of this case.  Rule 702.  Dr. Kalotay's opinions concerning the alleged "losses" to the bond issuers fails to meet these preconditions to admissibility.

i.      **Sufficient Facts or Data**

Dr. Kalotay's opinion is not based upon sufficient facts or data thereby rendering his testimony inadmissible.  Dr. Kalotay opines ███████████████████████████████ ████████████████████████████████████████████████████████████████ █████████████████████ Kalotay, p. 3.  The amount paid to the surviving joint account holders is found in the various account statements, which the government provided to its expert.  Kalotay, p. 2.

Dr. Kalotay states that █████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████████████████████ Kalotay, p. 2.  ████████████████████████ ████████████████████████████████████ He states that ███████████████ ██████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████ █████████████████████████

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████

Dr. Kalotay's entire calculation of the bond issuer's alleged "loss" is based on his

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ This is precisely the

type of facts and data that the <u>Daubert</u> process is designed to exclude because it does not have a

reliable evidentiary basis.

ii.      **Reliable Principles and Methods**

Dr. Kalotay's proffered testimony is fraught with problems.  His opinion as to the bond

issuers' "loss" is speculation because he acknowledges that ████████████████████

█████████████████████████████████████████████████ Moreover, his

opinion assumes, without any evidentiary foundation, that ███████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████

Absent evidence of such an undertaking, Dr. Kalotay's testimony is wholly unreliable

because it is based upon two layers of speculation.[6] █████████████████████████

████████████████████████████████████████████████████████

---

[6]This is the equivalent of allowing an inference to be drawn from another inference, which is clearly prohibited. <u>See</u>, <u>Morgan v. Dickhaut</u>, 677 F.3d 39, 47 (1st Cir. 2012), quoting <u>United States v. Valerio</u>, 48 F.3d 58, 64 (1st. Cir. 1995).

███████████████████████████████   This not a reliable method for calculating the alleged

actual "loss" to a bond issuer.

In addition to the rank speculation permeating Dr. Kalotay's proffered testimony, he also

utilizes a "Survivor's Option Bond Calculator" ("Bond Calculator") which he patented.  The

"Bond Calculator" uses the speculative ██████████████████████████████████

██████████████████████████████████████████████████████████

██████████   Although Dr. Kalotay clearly has a financial interest in using his patented "Bond

Calculator", there is no evidence that this "device" is an acceptable method for calculating the

actual value of a survivor option bond.  Once again, neither the government nor Dr. Kalotay has

provided any evidence that the "Bond Calculator" or his method of calculating the alleged "loss"

to the bond issuers (1) has been tested as an accepted and reliable methodology, (2) has been

peer-reviewed, (3) has known error rates, (4), has controls or standards applicable to his

methodology, or (5) is a technique/method which has been generally accepted by bond issuers or

other financial researchers and/or professionals.  We are essentially left with Dr. Kalotay

vouching for his own patented "Bond Calculator".[7]  The government, as the proponent of his

testimony, has the burden of demonstrating that Dr. Kalotay's "conclusion has been arrived at in a

scientifically sound and methodologically reliable fashion".  See, Ruiz-Troche, at 85.

### iii.      Reliably Applies the Principles and Methods to the Facts of this Case

Daubert, Kumho and their progeny dictate that the proffered expert opinion must directly

relate to the facts of this case.  Even generally accepted/acceptable methodologies are

---

[7]"[N]othing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence
that is connected to existing data only by the ipse dixit of the expert."  General Electric Co. v. Joiner, 522 U.S. 136,
146 (1997).  See also, United States v. 33.92356 Acres Of Land, 585 F.3d 1, 7 (1st Cir. 2009).

inadmissible if they do not have any relation to the facts of the underlying matter.[8]  Kumho is

illustrative of the interplay between the expert's methodology and its application to the

underlying facts.

Kumho dealt with an automobile accident that the plaintiff contended was caused by a

defective tire.  See, Kumho, at 142.  The district court ruled that the plaintiff's proffered expert

testimony was inadmissible.  Id., at 145.  The Supreme Court, after extending Daubert's general

principles to non-scientific testimony, such as that of the engineer in Kumho upheld the

exclusion of the proffered testimony:  the "relevant issue was whether the expert could reliably

determine the cause of this tire's separation [that on the plaintiff's vehicle]" * * * and "not the

reasonableness in general of a tire expert's [methodology] [emphasis in original]."  Id., at 153-54.

Analyzing Dr. Kalotay's proposed testimony through the Kumho lens demonstrates that

he is not applying his methodology and principles to the facts of this case.  Even assuming,

arguendo, that Dr. Kalotay's underlying approach ████████████████████

████████████████████████████████████████████████

is admissible for determining the "loss" to the bond issuers, his proffered testimony is still

inadmissible because it is not directly related to the facts of this case.  Stated another way, even if

Dr. Kalotay may have devised a valid method for calculating "loss" (which is not conceded), his

testimony does not provide the "loss" **in this case**.

Quite simply, Dr. Kalotay is calculating ████████████████████

████████████████████████████████████████████████

---

[8]The requirement that the proffered testimony directly relate to the facts of the case at issue is distinguishable from
Mr. Caramadre's objection based upon "loss" not being an issue before the jury addressed above.  Mr. Caramadre's
initial objection set forth above, generally concerns the introduction of any expert testimony concerning "loss" to the
bond issuers because the government does not need to prove such "losses".  [This issue is developed in greater detail
in Mr. Caramadre's Memorandum in support of his motion in limine concerning the government's summaries, which
has been filed simultaneously herewith and is incorporated herein by this reference.]  The objection discussed in this
section, namely the application of the proffered methodology to the facts of this case, however, is a specific
objection to Dr. Kalotay's testimony.

████████████████████████████████████ his testimony does not aid the jury in calculating the actual "loss" to the bond issuers.

**D.    Dr. Kalotay's testimony should be excluded because it is unfairly prejudicial, confusing, will cause undue delay and it wastes time.**

Rule 703 allows an expert to testify to otherwise admissible facts or data only if the assistance the expert's opinion provides to the jury outweighs the prejudicial effect of the testimony.  Additionally, Rule 403 allows the court to exclude otherwise admissible evidence that unfairly prejudices the defendant or is confusing, causes undue delay, or wastes time.  Dr. Kalotay's testimony meets the criteria for exclusion found in both rules.

As an initial matter, Dr. Kalotay's testimony is dependent upon inadmissible evidence,

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████  As such, Mr. Caramadre contends that such evidence is inadmissible. Even if admissible, Dr. Kalotay's testimony should be excluded because the prejudicial nature of the testimony far outweighs any probative value.

The unfair prejudice is readily apparent when Dr. Kalotay's proposed testimony is viewed in  light of the issues before the jury.  The government has alleged a scheme to defraud the bond issuers and Dr. Kalotay's testimony does not assist the jury in determining whether the government proved the scheme beyond a reasonable doubt because "loss" is not an element of the charged offenses.  As the Court held in United States v. Frazier, 387 F.3d 1244 (11th Cir. 2004), the jury may assign "talismanic significance" to expert testimony.  Frazier at 1263.  Dr. Kalotay's opinion that the bond issuers suffered any "loss" is tantamount to testifying that Mr. Caramadre was engaged in a scheme to defraud because the jury may place such great weight on

the fact that Dr. Kalotay is an expert, that his finding of "loss" must mean, *ipso facto*, that a crime was committed, otherwise there would be no "loss".

The unfair prejudice to Mr. Caramadre is compounded where Dr. Kalotay's testimony concerning "loss" is based upon the methodologically flawed premises discussed above.  While "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence" [Daubert, at 590], these avenues will not ameliorate the unfair prejudice that flows from Dr. Kalotay's testimony.  There are numerous methodological defects in his opinion, his ultimate opinion is not an issue actually before the jury, and his application of his methodology does not lead to a determination of the actual "loss" to the bond issuers.

Moreover, Dr. Kalotay's testimony should be excluded under Rule 403 because the bond issuers themselves do not acknowledge any "losses" and  are not claiming any "losses" associated with the transactions at issue in this case.  There have been two civil interpleader actions brought in this court wherein bond issuers have been named and in which they did not assert any claims for "losses" arising out of the very transactions the government contends were part of the scheme to defraud.  See, Kane Reid Securities Group, Inc., d/b/a/ TradeKing v. Raymour Radhakrishnan, et al.[9], and Kane Reid Securities Group, Inc., d/b/a/ TradeKing v. Paula Caramadre, et al.[10]  These are cases in which the bond issuers themselves—the alleged victims, according to the government, and the same entities for whom Dr. Kalotay has calculated a "loss" ██████████████████████████████—have agreed, in documents filed with this court, that they have no interest in the transaction which supposedly represents their "loss."

---

[9]United States District Court for the District of Rhode Island, No. 1:09-cv-264-S.

[10]United States District Court for the District of Rhode Island, No. 1:10-cv-042-S.

In both of these cases, this court entered Orders and Judgments in favor of Mr.
Radhakrishnan (in case no. 09-264)[11] and Mrs. Caramadre (in case no. 10-042)[12], affirming that
neither TradeKing (i.e., Kane Reid, the brokerage house), nor the bond issuers, nor the terminally
persons or their estates had any right, title or interest in the proceeds of the survivor bond
accounts, and that the proceeds of the bonds were the property of Mr. Radhakrishnan and Mrs.
Caramadre, respectively.  In both matters, the parties—including the bond issuers—filed joint
motions for entry of the Order, which provided, in pertinent part, that

> There is neither a dispute between the Defendants as to the ownership of
> the TradeKing Account or the assets therein, nor the existence of adverse claims
> to the TradeKing Account or assets.  The Defendants are aligned in their
> respective positions and are in complete agreement that no one but Ms.
> Caramadre has any right, claim or interest in the TradeKing Account and assets,
> and that Ms. Caramadre is their rightful owner with sole authority to instruct
> TradeKing as to the disposition of assets in the TradeKing Account.[13]

The defense is not aware of any other evidence that would support the proposition that
the bond issuers either suffered a "loss" or are somehow claiming a "loss" from the transactions.
Only the government (and its expert) are attempting to make such a claim.  If the bond issuers
themselves are not claiming a loss, ███████████████████████████████████
██████████████████████████████████████, then the government should be
precluded from introducing Dr. Kalotay's testimony, not only for all the other reasons stated
herein, but quite importantly because there is no loss.

The jury will be needlessly confused by the contradictory evidence showing the bond
issuers not claiming any losses and the government presenting evidence that they did suffer

---

[11]The Order and Judgment are attached hereto collectively as Exhibit B.

[12]The Order and Judgment are attached hereto collectively as Exhibit C.

[13]See, Document No. 21-1 in Case No. 1:10-cv-042-S, at Page ID #50 (a copy of the entire pleading is attached
hereto as Exhibit D).

"losses". This case is sufficiently complex without the need to introduce further complexity on an issue that does not need to be decided by the jury and that in reality does not seem to have any evidentiary support because the bond issuers are not acknowledging or claiming any "losses".

To the extent the Court believes that Dr. Kalotay's testimony is admissible under Daubert/Kumho and Rules 702 and 703, it still should be excluded pursuant to Rule 403 because it is unfairly prejudicial in that the prejudice far outweighs its probative value, it will lead to confusion among the jury, it will unduly delay the trial and it is a waste of time. See, United States v. Buchanan, 964 F.Supp. 533 (D.Mass. 1997) .

**E.     Request for Daubert Hearing**

If the Court is not inclined to exclude Dr. Kalotay's testimony at this time, as requested herein, Mr. Caramadre respectfully requests that an evidentiary hearing be held to determine whether Dr. Kalotay qualifies as an expert in calculating the alleged "loss" to the bond issuers and whether his underlying methodologies and techniques are sufficiently reliable to be admissible under Rule 702. The defense recognizes that a hearing outside the presence of the jury is not a requirement; however, given the numerous methodological issues plaguing Dr. Kalotay's opinion and the prejudicial nature of his testimony (in particular, the monetary figures), Mr. Caramadre respectfully requests that the hearing be conducted outside the jury's presence.

Respectfully submitted,
JOSEPH CARAMADRE
By and through his Attorneys,
*/s/ Anthony M. Traini*
Anthony M. Traini (#4793)
56 Pine Street, Suite 200
Providence, RI 02903-2819
Tel: (401) 621-4700
Fax: (401) 621-5888
Email: amt@trainilaw.com

*/s/ Michael J. Lepizzera, Jr.*
Michael J. Lepizzera, Jr. (#4995)
LEPIZZERA & LAPROCINA, LTD.
117 Metro Center Boulevard, Suite 2001
Warwick, Rhode Island 02886
Tel. (401) 739-7397
Fax (401) 691-3558
Email:  mlepizzera@leplap.com


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 8, 2012, a copy of the foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Anthony M. Traini*
Anthony M. Traini

# Exhibit A

## (redacted)

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

KANE REID SECURITIES GROUP, INC. :
d/b/a TRADEKING, :
 :
   Plaintiff :
 :
   v. :  Civil Action No. 09-264-S
 :
RAYMOUR RADHAKRISHNAN and :
ESTATE OF CATERINA NERO-FRANCO, :
 :
   Defendants. :

## ORDER

  Defendant Raymour Radhakrishnan ("Mr. Radhakrishnan") and Defendant Estate of Caterina Nero-Franco (the "Estate") hereby consent, stipulate and agree to the entry of this Order, as follows:

  1. Judgment shall enter in favor of Mr. Radhakrishnan.

  2. As acknowledged by Plaintiff's Verified Interpleader Complaint (hereinafter, the "Complaint"), Plaintiff claims no right, title and/or interest in or to (a) TradeKing Account No. 17153415 (hereinafter, the "TradeKing Account," as further described and defined in the Complaint); (b) any assets, monies or proceeds contained in the TradeKing Account or that may in the future be deposited into the TradeKing Account; and/or (c) the proceeds of redeemed bonds that are contained in the TradeKing Account or that may in the future be deposited into the TradeKing Account (hereinafter, the "Redemption Proceeds," as further described and defined in the Complaint).

  3. The Estate acknowledges, stipulates and agrees that it has no claim, right, title and/or interest in or to (a) the TradeKing Account; (b) any assets, monies or proceeds

contained in the TradeKing Account or that may in the future be deposited into the TradeKing Account; and/or (c) any of the Redemption Proceeds (whether currently in the TradeKing Account or in the future deposited into the TradeKing Account).

4.     The Estate acknowledges, stipulates and agrees that Mr. Radhakrishnan has all right, title and interest in and to (a) the TradeKing Account; (b) any and all assets, monies and proceeds contained in the TradeKing Account and that may in the future be deposited into the TradeKing Account; and (c) any and all Redemption Proceeds (whether currently in the TradeKing Account or in the future deposited into the TradeKing Account).

5.     The Estate acknowledges, stipulates and agrees that any and all assets, monies and proceeds contained in the TradeKing Account (including but not limited to the Redemption Proceeds), including any and all interest thereon, should be paid, transferred and remitted to Mr. Radhakrishnan.

6.     The Estate acknowledges, stipulates and agrees that any and all assets, monies or proceeds that may in the future be deposited into the TradeKing Account (including but not limited to Redemption Proceeds), including any and all interest thereon, should be paid, transferred and remitted to Mr. Radhakrishnan.

7.     Within three (3) business days of entry of this Order, TradeKing shall pay, transfer and remit to Mr. Radhakrishnan any and all assets, monies and proceeds contained in the TradeKing Account (including but not limited to the Redemption Proceeds), including any and all interest thereon.

8.     Within three (3) business days of entry of this Order, TradeKing shall provide written notification to Mr. Radhakrishnan of the following:  (a) whether all of the

bonds referenced in paragraph 11 of the Complaint (the "Bonds") have been redeemed;
(b) if not all of the Bonds have been redeemed, when the remaining unredeemed Bonds
are expected to be redeemed; (c) whether all of the proceeds of the redemption of the
Bonds have been deposited into the TradeKing Account; and (d) if not all of the proceeds
of the redemption of the Bonds have been deposited into the TradeKing Account, when
the remaining proceeds of the redemption of the Bonds are expected to be deposited into
the TradeKing Account.

9.      If not all of the Bonds have been redeemed, and/or if not all of the
proceeds of the redemption of the Bonds have been deposited into the TradeKing
Account, TradeKing shall pay, transfer and remit to Mr. Radhakrishnan any and all
proceeds of the redemption of the Bonds (including any and all interest thereon) within
three (3) business days of being deposited into the TradeKing Account.

10.     Upon TradeKing's full performance and satisfaction of all its obligations
set forth above in paragraphs 7 through 9 of this Order, TradeKing shall be discharged
from any further liability with respect to the assets, monies and proceeds contained in the
TradeKing Account (including but not limited to the Redemption Proceeds).

11.     Mr. Radhakrishnan and the Estate agree that upon TradeKing's full
performance and satisfaction of all its obligations set forth above in paragraphs 7 through
9 of this Order, Mr. Radhakrishnan and the Estate release one another from any liability
with respect to the assets, monies and proceeds contained in the TradeKing Account
(including but not limited to the Redemption Proceeds).

12.     Mr. Radhakrishnan and the Estate agree that TradeKing's request for
payment of costs and attorneys' fees in this case shall be allowed in the amount of seven

thousand and 00/100 dollars ($7,000.00). Mr. Radhakrishnan and the Estate agree that

the amount that TradeKing shall pay, transfer and remit to Mr. Radhakrishnan pursuant to

the terms of this Order shall be reduced by the amount of seven thousand and 00/100

dollars ($7,000.00).

      13.    This Court shall retain jurisdiction over this case to enforce the terms of

this Order.

| | |
|---|---|
| RAYMOUR RADHAKRISHNAN | THE ESTATE OF<br>CATERINA NERO-FRANCO |
| By his attorneys: | By its attorney: |
| _/s/ Nicholas Mancini_<br>NICHOLAS MANCINI (#7100)<br>nmancini@apslaw.com<br>JOSEPH AVANZATO (#4774)<br>javanzato@apslaw.com<br>ADLER POLLOCK & SHEEHAN P.C.<br>One Citizens Plaza, 8th Floor<br>Providence, RI 02903<br>Tel: (401) 274-7200<br>Fax: (401) 351-4607 | _/s/ Robert B. Jacquard_<br>ROBERT B. JACQUARD (#6077)<br>bjacquard@excite.com<br>231 Reservoir Avenue<br>Providence, RI 02907<br>Tel: (401) 467-2300<br>Fax: (401) 467-8678 |

Dated: September 8, 2009

SO ORDERED:

_William E. Smith_
William E. Smith
U.S. District Judge, District of Rhode Island

9/8/09

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing *Order* through the ECF system on the 8th day of September, 2009, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case No.: 09-264-S.

Joseph V. Cavanagh, Jr, Esq.
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903

Robert B. Jacquard, Esq.
231 Reservoir Avenue
Providence, RI 02907.

/s/ Nicholas Mancini

*507361_1.doc*

# UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

KANE REID SECURITIES GROUP, INC.  :
d/b/a TRADEKING,        :
               :
   Plaintiff       :
               :
   v.         :   Civil Action No. 09-264-S
               :
RAYMOUR RADHAKRISHNAN and  :
ESTATE OF CATERINA NERO-FRANCO, :
               :
   Defendants.     :

## JUDGMENT

Pursuant to the Order of this same date, judgment hereby enters in favor of

Defendant Raymour Radhakrishnan.

RAYMOUR RADHAKRISHNAN

By his attorneys:

 /s/ Nicholas Mancini
NICHOLAS MANCINI (#7100)
nmancini@apslaw.com
JOSEPH AVANZATO (#4774)
javanzato@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI  02903
Tel:  (401) 274-7200
Fax:  (401) 351-4607
Dated:  July 16, 2009

THE ESTATE OF
CATERINA NERO-FRANCO

By its attorneys:

/s/ Robert B. Jacquard
ROBERT B. JACQUARD (#6077)
bjacquard@excite.com
231 Reservoir Avenue
Providence, RI  02907
Tel:  (401) 467-2300
Fax:  (401) 467-8678

SO ORDERED:

_William E. Smith_ (signature)

William E. Smith
U.S. District Judge, District of Rhode Island

9/8/09

## **CERTIFICATION**

I hereby certify that I filed the foregoing *Judgment* through the ECF system on the 16th day of July, 2009, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case No.: 09-264-S.

Joseph V. Cavanagh, Jr
Blish & Cavanagh, LLP
30 Exchange Terrace
Providence, RI 02903

Robert B. Jacquard
231 Reservoir Avenue
Providence, RI 02907

*/s/ Nicholas Mancini*

*500539_1.doc*

2

# EXHIBIT C

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KANE REID SECURITIES GROUP, INC. | : | |
| D/B/A TRADEKING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. NO. 10-042/S |
| | : | |
| PAULA M. CARAMADRE, ESTATE OF | : | |
| RICHARD WILEY, GENERAL MOTORS | : | |
| ACCEPTANCE CORPORATION, | : | |
| AMERICAN GENERAL FINANCIAL | : | |
| GROUP, INC., and INTERNATIONAL | : | |
| LEASE FINANCE CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## ORDER

Defendants Paula M. Caramadre ("Ms. Caramadre"), the Estate of Richard Wiley
(the "Wiley Estate"), General Motors Acceptance Corporation ("GMAC"), American General
Financial Group, Inc. ("American General") and International Lease Finance Corporation
("International Lease") (hereinafter referred to collectively as the "Defendants") hereby consent
and agree to the entry of this Order, as follows:

1.      Pursuant to the terms of this Order, Judgment shall enter in favor of Ms
Caramadre.

2.      As acknowledged by Plaintiff Kane Reid Securities Group, Inc. d/b/a
TradeKing, ("Plaintiff" or "TradeKing"), in its Verified Interpleader Complaint (hereinafter, the
"Complaint"), Plaintiff claims no right, title, and/or interest in or to (a) TradeKing Account No,
XXXX2141 (hereinafter, the "TradeKing Account," as further described and defined in the
Complaint) or (b) any assets, monies, or proceeds contained in the TradeKing Account or that
may in the future be deposited into the TradeKing Account.

3. The Wiley Estate, GMAC, American General, and International Lease acknowledge, stipulate, and agree that they have no claims, rights, title, and/or interests in or to (a) the TradeKing Account or (b) any assets, monies, or proceeds contained in the TradeKing Account or that may in the future be deposited into the TradeKing Account.

4. The Wiley Estate, GMAC, American General, and International Lease acknowledge, stipulate, and agree that Ms. Caramadre has the sole authority to instruct TradeKing as to the disposition of assets in the TradeKing Account and that, in accordance with this Order, Ms. Caramadre has instructed TradeKing that any and all assets, monies and proceeds contained in the TradeKing Account, or that may in the future be deposited to the TradeKing Account, including any and all interest thereon, should be paid, transferred, and remitted to Ms. Caramadre.

5. TradeKing shall comply with Ms. Caramadre's instructions regarding disposition of the assets in the TradeKing Account as follows:

a. The TradeKing Account presently contains $603,574.55 in cash. Immediately upon entry of this Order Ms. Caramadre shall provide to counsel for TradeKing all information necessary, including the name of a financial institution, account number and routing number, for TradeKing to deliver to a bank, brokerage, or other similar account of which Ms. Caramadre is the owner or has a pecuniary interest, all cash, subject to paragraph 5(b) below, in the TradeKing Account, via wire transfer.

b. TradeKing shall transfer to Ms. Caramadre all cash in the TradeKing Account, less $12,500 to be retained by TradeKing as payment of its attorneys' fees incurred in connection with this interpleader action, within five (5) business days of receiving from Ms. Caramadre all information necessary to effectuate a wire transfer to Ms. Caramadre.

2

c.      The TradeKing Account presently contains one Bond position

consisting of an American General Financial Group, Inc. Death Put Bond with Survivor Option,

CUSIP 02639ENG5, Face Value $200,000. TradeKing received an instruction from Ms.

Caramadre to exercise the "put" option on the American General Bond in December 2009 and

TradeKing forwarded Ms. Caramadre's exercise instruction to the bond issuer, American

General. Ms. Caramadre reconfirms her instruction to exercise the "put" option on the American

General Bond with the understanding that: (i) redemption of the American General Bond will be

made in accordance with its offering documents; (ii) American General may have certain rights

pursuant to the Offering Documents whereby it may limit or reject Ms. Caramadre's exercise

instruction; and (iii) TradeKing has no discretion with respect to whether the American General

Bond will be redeemed in accordance with Ms. Caramadre's instruction. Assuming that

American General accepts and effectuates Ms. Caramadre's exercise request, the American

General Bond will be redeemed for face value, $200,000, in accordance with its offering

documents, on or about June 15, 2010.

d.      If and when Ms. Caramadre's exercise of the "put" option is

effectuated by American General on the American General Bond, TradeKing shall transfer to

Ms. Caramadre all proceeds received as a result of said exercise. Such proceeds shall be

transferred to Ms. Caramadre within five (5) business days of TradeKing's receipt of those

proceeds. TradeKing shall transfer the proceeds received from the exercise of the "put" option

on the American General Bond via wire transfer in accordance with wire instructions received

from Ms. Caramadre pursuant to paragraph 5(a) of this Order.

e.      In the event Ms. Caramadre's exercise of the "put" option on the

American General Bond is not effectuated, for whatever reason, then Ms. Caramadre instructs

3

TradeKing, immediately upon learning that the "put" option has not been effectuated, to sell the American General Bond to the market at the highest available "bid" on the sale date. Ms. Caramadre understands that the American General Bond will be sold to the market on a "bid and ask" basis and that there is no guarantee as to the liquidity of the American General Bond. Ms. Caramadre further understands that a sale of the American General Bond to the market is likely to yield less than a redemption of the American General Bond at face value. TradeKing shall transfer to Ms. Caramadre all proceeds received as a result of the sale of the American General Bond within five (5) business days of TradeKing's receipt of those proceeds. TradeKing shall transfer the proceeds received from the sale of the American General Bond via wire transfer in accordance with wire instructions received from Ms. Caramadre pursuant to paragraph 5(a) of this Order.

      f.    Upon full liquidation of the TradeKing Account, TradeKing shall close the TradeKing Account.

      6.    Upon entry of this Order TradeKing shall be released from any liability with respect to the TradeKing Account by the Wiley Estate, GMAC, American General, and International Lease and the Wiley Estate, GMAC, American General, and International Lease shall be permanently restrained and forever enjoined from commencing any action or proceeding, including any arbitration, against TradeKing which action or proceeding relates in any way to the TradeKing Account.

      7.    Upon entry of this Order, American General, International Lease, and GMAC shall be released from any liability with respect to the TradeKing Account by TradeKing, and TradeKing shall be permanently restrained and forever enjoined from commencing any action or proceeding, including any arbitration, against American General,

4

International Lease, and GMAC, which action or proceeding relates in any way to the TradeKing

Account. Nothing herein shall prevent TradeKing from asserting a claim for indemnity or

contribution against American General wherein such indemnity or contribution claim arises out

of an underlying claim by Caramadre alleging failure to redeem a Death Put Bond contained in

the TradeKing Account.

   8. Upon TradeKing's compliance with Ms. Caramadre's instructions, as set

forth in paragraphs 5(a)-5(d) or 5(e) above, TradeKing shall be released from any liability with

respect to the TradeKing Account by Ms. Caramadre and Ms. Caramadre shall be permanently

restrained and forever enjoined from commencing any action or proceeding, including any

arbitration, against TradeKing which action or proceeding relates in any way to the TradeKing

Account.

   9. The litigation bar permanently restraining and forever enjoining the Wiley

Estate, GMAC, American General, International Lease and Ms. Caramadre from commencing

any action or proceeding, including any arbitration, against TradeKing when such action or

proceeding relates in any way to the TradeKing Account shall also apply to the respective heirs,

spouses, children, parents, successors, assigns, and subsidiaries, as the case may be, of the Wiley

Estate, GMAC, American General, International Lease and Ms. Caramadre

   10. As set forth in Paragraph 5(a) above, TradeKing shall retain $12,500 from

the cash proceeds presently in the TradeKing Account to recover attorneys' fees incurred by it in

prosecuting the interpleader action, including, among other things, its preparation of papers in

opposition to Ms. Caramadre's Motion to Dismiss.

   11. This Court shall retain jurisdiction over this case to enforce the terms of

this Order, it being understood that any dispute between Ms. Caramadre and TradeKing

5

concerning the TradeKing Account not within the scope of this Order shall be subject to

arbitration in accordance with the terms of the TradeKing New Account Agreement and the rules

of the Financial Industry Regulatory Authority.


SO ORDERED:

_____

William E. Smith
U.S. District Judge, District of Rhode Island


Dated: May _____, 2010

63685-142942
# 1050556

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| KANE REID SECURITIES GROUP, INC.<br>D/B/A TRADEKING, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | C.A. NO. 10-042/S |
| | : | |
| PAULA M. CARAMADRE, ESTATE OF<br>RICHARD WILEY, GENERAL MOTORS<br>ACCEPTANCE CORPORATION,<br>AMERICAN GENERAL FINANCIAL<br>GROUP, INC., and INTERNATIONAL<br>LEASE FINANCE CORPORATION, | : | |
| | : | |
| Defendants. | : | |

## JUDGMENT

Pursuant to the Order of this same date, judgment hereby enters in favor of Defendant

Paula M. Caramadre and the Plaintiff Kane Reid Securities Group, Inc. shall pay over to the

Defendant Paula M. Caramadre any and all amounts, monies, and proceeds contained in that

certain TradeKing Account No. XXXX2141 as per the terms of the aforesaid Order.

ENTERED as an Order of this Court this _11th_ day of May, 2010.

ENTER:                                          BY ORDER:

_____                               _____

# EXHIBIT D

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| **KANE REID SECURITIES GROUP, INC.**<br>**D/B/A TRADEKING,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **C.A. NO. 10-042/S** |
| | : | |
| **PAULA M. CARAMADRE, ESTATE OF** | : | |
| **RICHARD WILEY, GENERAL MOTORS** | : | |
| **ACCEPTANCE CORPORATION,** | : | |
| **AMERICAN GENERAL FINANCIAL** | : | |
| **GROUP, INC., and INTERNATIONAL** | : | |
| **LEASE FINANCE CORPORATION,** | : | |
| | : | |
| **Defendants.** | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR JOINT MOTION FOR ENTRY OF AN ORDER AND JUDGMENT

Defendants Paula M. Caramadre ("Ms. Caramadre"), the Estate of Richard Wiley (the "Wiley Estate"), General Motors Acceptance Corporation ("GMAC"), American General Financial Group, Inc. ("American General") and International Lease Finance Corporation ("International Lease") (hereinafter referred to collectively as the "Defendants") hereby move this Honorable Court for the entry of an Order and Judgment in the above-captioned interpleader matter in the forms attached hereto as Exhibit A and Exhibit B, respectively. Defendants agree that Ms. Caramadre has the sole right, claim, title, and interest in the interpleaded account and assets. Thus, entry of the proposed Order and Judgment resolving this litigation is appropriate and in the interests of both the litigants and the Court.

4

## BACKGROUND

TradeKing commenced this action under the Federal Interpleader Statute, 28 U.S.C. §1335(a)(l) on February 1, 2010. TradeKing's Verified Interpleader Complaint (the "Complaint") requests that the Court determine the ownership and entitlement of the Defendants to certain assets held by TradeKing in an online account (No. XXXX2141) (the "TradeKing Account"). Ms. Caramadre opened the TradeKing Account on February 2, 2009 as a joint owner with a right of survivorship with Richard Wiley ("Mr. Wiley"). TradeKing alleges that "possible improprieties" may have occurred that would create an issue as to the Defendants' respective entitlement to assets in the TradeKing Account. (Complaint at ¶¶ 18, 19). Without intervention from the Court, TradeKing is concerned that Defendants may have adverse claims that would expose TradeKing to double liability and the possibility of multiple lawsuits and inconsistent judgments. (Id. at ¶ 21).

TradeKing has acknowledged that the assets in the TradeKing Account do not belong to it and TradeKing does not claim an interest in those assets. (Id.). TradeKing has also stated that it is prepared to deliver the assets contained in the TradeKing Account "to whichever Defendant(s) the Court shall adjudge is entitled thereto." (Id. at ¶ 22). Accordingly, TradeKing, acting solely as a disinterested stakeholder, requests that the Court determine the ownership rights to the TradeKing Account and the assets therein as between the Defendants. (Id. at 5-6).

As set forth below, the Defendants agree that Ms. Caramadre has the sole claim, right, title and interest in the TradeKing Account and the assets therein. Consequently, entry of the proposed Order and Judgment is appropriate.

63685-142942
# 1050539

## ARGUMENT

## ENTRY OF AN ORDER CONCLUDING THIS LITIGATION IS APPROPRIATE INASMUCH AS THERE ARE NO ADVERSE CLAIMS TO THE TRADEKING ACCOUNT OR THE ASSETS THEREIN AND THERE IS NO DISPUTE AMONG THE DEFENDANTS AS TO OWNERSHIP OF THE TRADEKING ACCOUNT OR ASSETS

Defendants agree that Ms. Caramadre has all right, title, and interest to the TradeKing Account and the assets therein. They also agree that no other party has a claim, right, or interest in the TradeKing Account or assets, and that the assets should be transferred to Ms. Caramadre as their sole owner.

Defendants acknowledge, stipulate, and agree that no one other than Ms. Caramadre has a claim, right, title, or interest in or to (a) the TradeKing Account or (b) any assets, monies, or proceeds contained in the TradeKing Account or that may in the future be deposited into the TradeKing Account. Moreover, the Defendants acknowledge, stipulate, and agree that Ms. Caramadre has the sole authority to instruct TradeKing as to the disposition of assets in the TradeKing Account and that, in accordance with the proposed Order, Ms. Caramadre has instructed TradeKing that any and all assets, monies and proceeds contained in the TradeKing Account, including any and all interest thereon, should be paid, transferred, and remitted to Ms. Caramadre. Additionally, Defendants acknowledge, stipulate, and agree that any and all assets, monies or proceeds that may in the future be deposited into the TradeKing Account, including any and all interest thereon, should be paid, transferred, and remitted to Ms. Caramadre in accordance with her instructions.

Defendants acknowledge, stipulate, and agree that upon entry of the proposed Order TradeKing shall be released from any liability with respect to the TradeKing Account and assets by the Wiley Estate, GMAC, American General, and International Lease and the Wiley Estate, GMAC, American General, and International Lease shall be permanently restrained and forever

6

enjoined from commencing any action or proceeding, including any arbitration, against TradeKing which action or proceeding relates in any way to the TradeKing Account. Moreover, upon TradeKing's compliance with Ms. Caramadre's instructions, as set forth in the proposed Order, TradeKing shall be released from any liability with respect to the TradeKing Account and assets by Ms. Caramadre and Ms. Caramadre shall be permanently restrained and forever enjoined from commencing any action or proceeding, including any arbitration, against TradeKing which action or proceeding relates in any way to the TradeKing Account.

There is neither a dispute between the Defendants as to the ownership of the TradeKing Account or the assets therein, nor the existence of adverse claims to the TradeKing Account or assets. The Defendants are aligned in their respective positions and are in complete agreement that no one but Ms. Caramadre has any right, claim, or interest in the TradeKing Account and assets and that Ms. Caramadre is their rightful owner with sole authority to instruct TradeKing as to the disposition of assets in the TradeKing Account. Accordingly, entry of the proposed Order is suitable and warranted.

## CONCLUSION

For the foregoing reasons, the Defendants respectfully request that this Court enter the attached proposed Order resolving this interpleader action.

7

PAULA M. CARAMADRE
By her Attorneys.


/s/ Robert G. Flanders, Jr.
Robert G. Flanders, Jr. (# 1785)
Matthew H. Parker (# 8111)
HINCKLEY, ALLEN & SNYDER LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
Tel:    (401) 274-2000
Fax:    (401) 277-9600
rflanders@haslaw.com
mparker@haslaw.com


GENERAL MOTORS ACCEPTANCE
   CORPORATION
By its Attorneys,


/s/ Stephen M. Prignano
Stephen M. Prignano (# 3649)
Raymond M. Ripple (ft 6489)
EDWARDS ANGELL PALMER & DODGE
   LLP
2800 Financial Plaza
Providence, RI 02903
Tel: (401) 274-9200
Fax: (401) 276-6611
sprignano@eapdlaw.com
rripple@eapdlaw.com

ESTATE OF RICHARD WILEY
David A. Sayles, Executor
Louis Trebisacci, Executor
By their Attorneys,


/s/ Jon D. Lallo
Jon D. Lallo (# 5481)
ORSINGER & NARDONE
53 High Street
Westerly, RI 02891
Tel:    (401) 596-2094
Fax:    (401) S96-4555
jdl@oanlaw.com


AMERICAN GENERAL FINANCIAL
   GROUP, INC.
By its Attorneys,


/s/ Stephen M. Prignano
Stephen M. Prignano (# 3649)
Raymond M. Ripple (ft 6489)
EDWARDS ANGELL PALMER & DODGE
   LLP
2800 Financial Plaza
Providence, RI 02903
Tel: (401) 274-9200
Fax: (401) 276-6611
sprignano@eapdlaw.com
rripple@eapdlaw.com

8

63685-142942
# 1050539

INTERNATIONAL LEASE FINANCE
   CORPORATION
By its Attorneys,


*/s/ Stephen M. Prignano*
Stephen M. Prignano (# 3649)
Raymond M. Ripple (ft 6489)
EDWARDS ANGELL PALMER & DODGE
   LLP
2800 Financial Plaza
Providence, RI 02903
Tel: (401) 274-9200
Fax: (401) 276-6611
sprignano@eapdlaw.com
rripple@eapdlaw.com


## <u>CERTIFICATION</u>

     I hereby certify that on May 7, 2010, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


     */s/ Robert G. Flanders, Jr.*

63685-142942
# 1050539