**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 11-186-S |
| v. | ) |
| | ) |
| JOSEPH CARAMADRE | ) |
| | ) |
| and | ) |
| | ) |
| RAYMOUR RADHAKRISHNAN | ) |
| | ) |
| Defendants. | ) |

**GOVERNMENT'S OPPOSITION TO DEFENDANT CARAMADRE'S**
**MOTION TO PRECLUDE EVIDENCE OF SO-CALLED "GAIN/LOSS"**

The United States of America, by and through its undersigned attorneys, hereby opposes Defendant Joseph Caramadre's "Motion in Limine to Preclude Evidence of So-Called 'Loss/Gain' Calculations." For the reasons set forth herein, the motion should be denied.

Caramadre argues that evidence of financial loss or gain should be excluded from the jury's consideration pursuant to Federal Rule of Evidence 403 because it is "so overwhelmingly prejudicial." (Def. Mem at 2).

**A. Loss and Gain Are Admissible as Evidence of Intent**

As an initial matter, the First Circuit has squarely held that evidence of loss is admissible in a fraud case.   In a bank fraud case, the defendant, like Caramadre, claimed that evidence regarding

1

financial loss was "irrelevant and prejudicial in violation of federal Rule of Evidence 403."  United States v. Munoz-Franco, 487 F.3d 25, 61-62 (1st. Cir 2007).  The First Circuit observed that even though loss is not an element of bank fraud "Courts have held repeatedly that loss is relevant in fraud cases to demonstrate a defendant's knowledge or intent to commit fraud." Id. at 62.  "While technically the success or failure of a scheme to defraud is irrelevant in a mail fraud case, realistically, when the contested issue is intent, whether or not victims lost money can be a substantial factor in a jury's determination of guilt or innocence." Id. at 62, (internal citations and quotations omitted). Thus, while "an ultimate purpose of either causing some financial loss to another or bringing about some financial gain to oneself is not the essence of fraudulent intent, the knowledge that one's actions are, in fact, bringing about such losses may demonstrate one's intent to commit fraud."  Munoz-Franco, 487 F.3d at 62, (citations and internal quotation marks omitted).

B. **Rule 403 Analysis Permits Evidence of Loss**

Rule 403 is a rule of inclusion, not of exclusion.  United States v. Norton, 867 F.2d 1354 (11th Cir. 1989), cert. denied, 491 U.S. 907, 493 U.S. 871 (1989); the Rule carries a strong presumption for admissibility. United States v. Grant, 256 F.3d 1146, 1155 (11th Cir. 2001).

2

In United States v. Naranjo, the Tenth Circuit upheld the
admission of gruesome photographs of the crime scene in a murder case
over a Rule 403 objection.  The Court held that:

> "Relevant evidence is inherently prejudicial; but it is
> only *unfair* prejudice, *substantially* outweighing
> probative value, which permits exclusion of relevant
> matter under Rule 403. Unless trials are to be conducted
> on scenarios, on unreal facts tailored and sanitized for
> the occasion, the application of Rule 403 must be cautious
> and sparing. Its major function is limited to excluding
> matter of scant or cumulative probative force, dragged in
> by the heels for the sake of its prejudicial effect. As
> to such, Rule 403 is meant to relax the iron rule of
> relevance, to permit the trial judge to preserve the
> fairness of the proceedings by exclusion despite its
> relevance. It is not designed to permit the court to "even
> out" the weight of the evidence, to mitigate a crime, or
> to make a contest where there is little or none."

United States v. Naranjo, 710 F.2d 1465, 1469 (10th Cir. 1983)
(emphasis in original).

Caramadre concedes that evidence of loss and gain are probative
of intent.  (Def. Mem at 2-3). Use of Rule 403 should be sparing since
it permits exclusion of concededly probative evidence.  United
States v. King, 713 F.2d 627 (11th Cir. 1983), cert. denied sub. nom.;
McGlocklin v. United States, 466 U.S. 942 (1984).  "The damage done
to the defense is not a basis for exclusion; the question under Rule
403 is one of 'unfair' prejudice—not of prejudice alone."  United
States v. Munoz, 36 F.3d 1229, 1233 (1st Cir. 1994).

For example, the government, because of its heavy burden of
proof, is entitled to cumulate evidence. United States v. Gallo, 543

F.2d 361 (D.C. Cir. 1976).   Indeed, the United States is entitled to present its strongest case against a defendant.   United States v. Eufrasio, 935 F.2d 553, 572-73 (3d Cir.), cert. denied sub nom., Idone v. United States, 502 U.S. 925, (1991). See also United States v. Burgess, 576 F.3d 1078, 1098 (10th Cir. 2008), cert. denied, 130 S.Ct. 1028 (2009); ("Within limits delineated in the Federal Rules of Evidence, the government is entitled to introduce all relevant, probative evidence at its disposal. The defense cannot be heard to complain that the government has produced too much evidence of guilt."); United States v. Gartmon, 146 F.3d 1015, 1021(D.C. Cir. 1998)("Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the crimes of Caspar Milquetoasts to be described fully to a jury. It does not generally require the government to sanitize its case, to deflate its witnesses' testimony, or to tell its story in a monotone").

Evidence of the amount of loss (and gain) in this case is directly probative of the defendants' fraudulent intent and motive: greed.   Since a person can only die once, the key to Caramadre's scheme was a steady supply of terminally ill people.   This need for more and more terminally ill people led directly to Caramadre's placing of the misleading advertisement in the *Rhode Island Catholic*. It also helps explain to the jury why Radhakrishnan left out important details when explaining the program to terminally ill people and

4

their families: the more they understood about what Caramadre and Radhakrishnan were doing, the more likely they were to refuse to participate.  Rather than make less money by dealing honestly with the terminally ill, the defendants chose to make misrepresentations.

Evidence of the amount of losses in this case is also material because the defendants have regularly maintained that the companies involved did not suffer any "losses" attributable to the defendants outside of market forces that were beyond the defendants' control. (See *Def. Pre-Trial Mem.* at 10.)   The government will show that this argument is simply wrong, as the whole point of Caramadre's strategy with respect to variable annuities was to shift the risk of investment away from himself (and his clients) onto the insurance company, causing substantial losses to the insurance companies.  Caramadre intentionally selected high-risk funds, and advised his clients to do so, knowing that losses would inevitably be borne by the companies involved.  In many cases, Caramadre directed parallel investments- one betting the market would go up, the other betting the market would go down- knowing that in one investment he would gain and in the other investment the insurance company would lose.

In addition, some of the loss sustained by the companies included direct costs such as bonuses and commissions, which were churned by reinvesting the same principal each time an annuitant died.  In short, the amount of loss suffered by the companies and

how that loss took place is directly probative of the defendants'
motive and course of conduct in this case.

C. **Use of the Terms "Loss" and "Gain" Are Not Inflammatory**

Caramadre also argues that the government should prohibited
from using the term "loss" on summary charts because "while the amount
used-whatever it is- certainly represents, in part the difference
between the amount paid in and the amount paid out, adjusted for
market effects, contract provisions other factors, it is up to the
jury to determine whether this amount is actually a 'loss'." (Def.
Mem at 3-4).

Leaving aside the absurdity of titling a column on a summary
chart "Difference Between the Amount Paid In and the Amount Paid Out,
Adjusted for Market Effects, Contract Provisions Other Factors,"
there is nothing overwhelmingly prejudicial about the term loss.
Indeed in <u>Munoz-Franco</u>, the First Circuit held it was not unduly
prejudicial where the government "referred to loss throughout the
trial to demonstrate [defendant]'s knowledge of the consequences of
their ongoing practices" including in opening statement and closing
argument.  <u>Munoz-Franco</u>, 487 F.3d 25 at 62.  "However, these
references did not dominate the evidence because the government also
presented considerable other evidence of defendants' conduct." <u>Id.</u>
The Court approved the District Court's instruction to the jury that
loss was not an element of the offense and the vigorous cross –

examination of witnesses who discussed loss.  Id.  The Court held

that references to loss were not unduly prejudicial because they

"were relevant as a means of demonstrating [defendants]' intent to

defraud.  Id.

## CONCLUSION

For the reasons set forth herein, Defendant Caramadre's *Motion in Limine to Preclude Evidence of So-Called "Loss/Gain" Calculations* should be denied.

Respectfully submitted,
PETER F. NERONHA
UNITED STATES ATTORNEY


/s/ John P. McAdams
JOHN P. McADAMS
Assistant U.S. Attorney

LEE H. VILKER
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of November, 2012, I caused the within Government's Response to Defendant Caramadre's *Motion in Limine to Preclude Evidence of So-Called "Loss/Gain" Calculations* to be served via the Court's Electronic Filing System on:


For Joseph Caramadre:
Michael J. Lepizzera, Esq.
Anthony M. Traini, Esq.


For Raymour Radhakrishnan:
Raymour Radhakrishnan, Pro Se Defendant
Olin Thompson, Esq., Standby Counsel


/s/John P. McAdams
John P. McAdams
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
John.p.mcadams@usdoj.gov

8