IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


```
* * * * * * * * * * * * * *   CRIMINAL ACTION
UNITED STATES OF AMERICA  *   11-186-S
                          *
VS.                       *   NOVEMBER 19, 2012
                          *
JOSEPH CARAMADRE and      *
RAYMOUR RADHAKRISHNAN      *   PROVIDENCE, RI
* * * * * * * * * * * * * *
```

HEARD BEFORE THE HONORABLE WILLIAM E. SMITH

DISTRICT JUDGE

(Changes of Plea)


**APPEARANCES**:

FOR THE GOVERNMENT:          LEE VILKER, AUSA
                             and JOHN P. McADAMS, AUSA
                             U.S. Attorney's Office
                             50 Kennedy Plaza
                             Providence, RI  02903

FOR THE DEFENDANT
Joseph Caramadre:            MICHAEL J. LEPIZZERA, ESQ.
                             Lepizzera & Laprocina
                             117 Metro Center Blvd.
                             Suite 2001
                             Warwick, RI  02886

                             ANTHONY M. TRAINI, ESQ.
                             56 Pine Street
                             Providence, RI  02903

**APPEARANCES**:   (Continued)

FOR THE DEFENDANT
Raymour Radhakrishnan:          OLIN THOMPSON, ESQ.
                                Federal Defender's Office
                                10 Weybosset St.
                                Providence, RI  02903

Court Reporter:                 Anne M. Clayton, RPR
                                One Exchange Terrace
                                Providence, RI  02903

Proceeding reported and produced by computer-aided
stenography

1    19 NOVEMBER 2012 -- 9:20 A.M.

2           THE COURT:  Good morning, everyone.

3           Counsel, are we ready to proceed on the basis of

4    our conversations this morning?

5           MR. LEPIZZERA:  Yes, your Honor.

6           MR. RADHAKRISHNAN:  Yes, your Honor.

7           THE COURT:  All right, then.  My understanding

8    is from my conversations with all counsel that the

9    Defendants have made a decision to change their pleas

10   in this case so we're going to proceed on that basis.

11          Before we begin, Mr. Radhakrishnan, I understand

12   that you wish to have Mr. Thompson take over the role

13   as your counsel at this point; is that correct?

14          MR. RADHAKRISHNAN:  Yes, your Honor.

15          THE COURT:  All right.  Then I'm going to ask

16   both Defendants, Mr. Caramadre and Mr. Radhakrishnan,

17   to please stand and be sworn in by the clerk.

18          **JOSEPH A. CARAMADRE and RAYMOUR RADHAKRISHNAN**,

19   first having been duly sworn, testified as follows:

20          THE CLERK:  Please state your name and spell

21   your last name for the record.

22          THE COURT:  Begin with Mr. Caramadre.

23          MR. CARAMADRE:  Joseph Caramadre,

24   C-A-R-A-M-A-D-R-E.

25          MR. RADHAKRISHNAN:  Raymour Radhakrishnan.

1    Radhakrishnan is R-A-D-H-A-K-R-I-S-H-N-A-N.

2           THE COURT:  Mr. Lepizzera, would you just move

3    the microphone closer to Mr. Caramadre so that each of

4    the Defendants has a microphone in front of them.

5           The way we're going to proceed, gentlemen, is

6    that I'm going to go through a series of questions.

7    I'm going to ask the questions of each of you.  I'm

8    going to ask that you both answer the questions out

9    loud one after the other.  Mr. Caramadre, you'll go

10   first; and Mr. Radhakrishnan, you'll go second.  All

11   right?  But we'll do this together.

12          So you've both been sworn in.  I'm going to ask

13   you a series of questions.  You're expected to answer

14   all of my questions truthfully.  If you fail to answer

15   any of my questions truthfully, it could lead to

16   additional charges against you for perjury or for

17   making a false statement.  Do both of you understand

18   that?

19          MR. CARAMADRE:  Yes, your Honor.

20          MR. RADHAKRISHNAN:  Yes, your Honor.

21          THE COURT:  State your names again, please.

22          MR. CARAMADRE:  Joseph Caramadre.

23          MR. RADHAKRISHNAN:  Raymour Radhakrishnan.

24          THE COURT:  How far did you go to school?

25          MR. CARAMADRE:  Graduated from law school, your

1    Honor.

2          MR. RADHAKRISHNAN:  I finished undergraduate

3    school and had a semester at law school, your Honor.

4          THE COURT:  Have either of you been treated

5    recently for any mental illness or addiction to

6    narcotic drugs?

7          MR. CARAMADRE:  Your Honor, I have been treated

8    for mental depression, both lately and for the last 20

9    years.

10         MR. TRAINI:  Excuse me, your Honor, if I may.  I

11    have with me a list of Mr. Caramadre's medications so

12    that we don't have to go through them.

13         THE COURT:  Sure.  Could you just bring that up.

14         MR. TRAINI:  The Government has seen this, your

15    Honor.

16         THE COURT:  And we can just confirm, with

17    respect to Mr. Caramadre, that you fully understand all

18    the proceedings that are going on here, correct?

19         MR. CARAMADRE:  That is correct, your Honor.

20         THE COURT:  And nothing in terms of these

21    medications would have any effect on your ability to

22    comprehend what's going on here?

23         MR. CARAMADRE:  No, sir.

24         THE COURT:  And counsel can just confirm that,

25    please.

1           MR. TRAINI:  Yes, your Honor.  That's correct.

2           THE COURT:  All right.

3           Now, Mr. Radhakrishnan, what about you?

4           MR. RADHAKRISHNAN:  I do not have any medical

5    conditions, your Honor.

6           THE COURT:  We covered the medications you're

7    taking, Mr. Caramadre.  Beyond that, are either of you

8    under the influence of any drugs or medications or

9    alcoholic beverages of any kind?

10          MR. CARAMADRE:  No, your Honor.

11          MR. RADHAKRISHNAN:  No, your Honor.

12          THE COURT:  Both of you have seen a copy of the

13   Government's charges against you in this case; is that

14   right?

15          MR. CARAMADRE:  That's correct, your Honor.

16          MR. RADHAKRISHNAN:  Yes, your Honor.

17          THE COURT:  And you both had a full opportunity

18   to discuss all of these charges against you with your

19   counsel; is that right?

20          MR. CARAMADRE:  Yes, your Honor.

21          MR. RADHAKRISHNAN:  Yes, your Honor.

22          THE COURT:  And you have each now signed a plea

23   agreement in this case; is that correct?

24          MR. CARAMADRE:  Yes, your Honor.

25          MR. RADHAKRISHNAN:  Yes, your Honor.

1        THE COURT:  And did each of you have a full

2   opportunity to discuss all of the charges against you

3   and the plea agreements and the consequences of these

4   plea agreements with your counsel before you signed the

5   plea agreements?

6        MR. CARAMADRE:  Yes, your Honor.

7        MR. RADHAKRISHNAN:  Yes, your Honor.

8        THE COURT:  Now are each of you fully satisfied

9   -- first of all, were your counsel able to answer all

10   of your questions regarding all of the charges and the

11   terms of these plea agreements with you?

12        MR. CARAMADRE:  Yes, your Honor.

13        MR. RADHAKRISHNAN:  Yes, your Honor.

14        THE COURT:  And are both of you fully satisfied

15   with all of the representation that you've received in

16   this case from your respective counsel?

17        MR. CARAMADRE:  Yes, your Honor.

18        MR. RADHAKRISHNAN:  Yes, your Honor.

19        THE COURT:  Now, has anyone made any promises to

20   you of any kind in order to get you to -- other than

21   what's contained in the plea agreement, of course, in

22   order to get you to plead guilty in these cases?

23        MR. CARAMADRE:  No, your Honor.

24        MR. RADHAKRISHNAN:  No, your Honor.

25        THE COURT:  Has anyone threatened you in any way

1    to get you to plead guilty?

2         MR. CARAMADRE:  No, your Honor.

3         MR. RADHAKRISHNAN:  No, your Honor.

4         THE COURT:  You understand that these plea

5    agreements, essentially, are recommendations to the

6    Court.  I may accept those recommendations or I may

7    choose not to.  If I don't accept those

8    recommendations, you don't get to take back your plea

9    of guilty once you enter your plea today.

10        Let me give a caveat to that.  These are pleas

11   under Rule 11C, and I'll go over the terms of that in a

12   moment.  So it's understood that the potential sentence

13   in this case is capped at ten years and that's in the

14   plea agreement.  But other than that, you understand

15   that these are recommendations and I may accept them or

16   not accept them; but if I don't accept anything that's

17   recommended in the plea agreement, you don't get to

18   take back your plea of guilty once you enter it today.

19   Do you understand that.

20        MR. CARAMADRE:  Yes, your Honor.

21        MR. RADHAKRISHNAN:  Yes, your Honor.  I

22   understand.

23        THE COURT:  Now, you understand, both of you,

24   that the offenses that you're pleading guilty to are

25   felony offenses and if I accept these pleas and you're

1   adjudged to be guilty of these offenses, it could

2   result in the loss of certain valuable civil rights

3   that you enjoy such as the right to vote, the right to

4   serve on a jury, the right to hold public office, the

5   right to possess a firearm.  You both understand that?

6          MR. CARAMADRE:  Yes, your Honor.

7          MR. RADHAKRISHNAN:  Yes, your Honor.

8          THE COURT:  Now, as I mentioned, these plea

9   agreements are made pursuant to Rule 11C, which means

10  the Court is agreeing to certain things in the plea

11  agreement with respect to the penalty.  And I have

12  decided -- I've reviewed these agreements and I've

13  consulted with counsel and I've decided to accept the

14  plea agreements.  And so with respect to the penalties,

15  I'm going to go through the statutory penalties with

16  you, but then I'm going to state what the agreement

17  says the penalty that has been -- the cap on the

18  penalty that's been agreed to and that I've agreed to.

19  All right?

20         So the maximum statutory penalties for the two

21  counts that you're pleading guilty to are as follows:

22  With respect to Count 9, 20 years of imprisonment, a

23  fine of $250,000, a term of supervised release of three

24  years and a mandatory special assessment of $100.

25         With respect to Count 33, five years of

1    imprisonment, a fine of $250,000, a term of supervised

2    release of three years and a mandatory special

3    assessment of $100.

4         If these penalties were imposed consecutively,

5    the maximum penalties would be 25 years of

6    imprisonment, a $500,000 fine, three years of

7    supervised release and a mandatory special assessment

8    of $200.

9         Now, do both of you understand that those are

10   the maximum statutory penalties that could be imposed

11   for the two counts to which you're pleading guilty to,

12   subject to the other conditions which I've described

13   and will describe in a moment.

14        MR. CARAMADRE:  Yes, your Honor.

15        MR. RADHAKRISHNAN:  Yes, your Honor.

16        THE COURT:  Now, as I mentioned, the agreement

17   is pursuant to 11C, and paragraph two of the agreement

18   on page two states that the Government will recommend

19   that the Court impose a term of imprisonment no greater

20   than 120 months.

21        And my understanding was, Counsel, that this

22   agreement calls for the Court to agree that I will not

23   impose a term in excess of 120 months, correct?

24        MR. TRAINI:  That's correct, your Honor.

25        THE COURT:  Where is that in the agreement?

1    MR. TRAINI:  In paragraph five, your Honor, it

2   states that consistent with 11C that you may accept or

3   reject under the provision of the Rules.  So it's our

4   understanding if you accept it, you're accepting the

5   Government's restriction on the cap so that you will be

6   bound not to exceed 120 months at the top, and you can

7   sentence anywhere you want between that and zero.

8    MR. VILKER:  That is correct, your Honor.

9    THE COURT:  Well, what it really says is if I

10  exceed that recommended sentence, then the Defendants

11  are free to withdraw their pleas of guilty.

12   MR. VILKER:  Exactly.

13   MR. TRAINI:  That's correct, Judge.

14   THE COURT:  All right.  So do both of you

15  understand that?  If I were to choose to go above the

16  recommended ten years, then each of you would be free

17  to withdraw your pleas of guilty.  You understand that?

18   MR. CARAMADRE:  Yes, your Honor.

19   MR. RADHAKRISHNAN:  Yes, your Honor.

20   THE COURT:  So in essence, the Court is agreeing

21  to impose a sentence at that agreed-to amount or below,

22  the 120 months or below.  Do both of you understand

23  that?

24   MR. CARAMADRE:  Yes, your Honor.

25   MR. RADHAKRISHNAN:  Yes, your Honor.

1        THE COURT:  All right.  Now, do both of you

2   understand what supervised release is?  It's like

3   probation?

4        MR. CARAMADRE:  Yes, your Honor.

5        MR. RADHAKRISHNAN:  Yes, your Honor.

6        THE COURT:  Now, you understand that there'll be

7   a term of supervised release as part of the sentence in

8   this case without any question; and as I mentioned

9   earlier, the maximum term of supervised release would

10  be three years.

11        Why wouldn't that be six years?

12        MR. Vilker:  Your Honor, it would not be imposed

13  consecutively given the particular statutes.  It would

14  be concurrent.

15        THE COURT:  All right.  So if the maximum was

16  three years of supervised release, there would be

17  certain conditions imposed as part of that supervised

18  release.  You'd be required to follow those conditions,

19  both standard conditions and there likely would be some

20  special conditions.  If you fail to comply with

21  supervised release, that could result in additional

22  time in prison.  Do you understand that?

23        MR. CARAMADRE:  Yes, your Honor.

24        MR. RADHAKRISHNAN:  Yes, your Honor.

25        THE COURT:  You also understand there's a

1    special assessment of $100 per count that you'd be

2    required to pay.  That's $200 each.  Do you understand

3    that?

4              MR. CARAMADRE:  Yes, your Honor.

5              MR. RADHAKRISHNAN:  Yes, your Honor.

6              THE COURT:  Now, I'm going to ask you a couple

7    of questions about the sentencing guidelines though

8    these questions are somewhat mooted by the agreement

9    with respect to the recommended sentence, but I need to

10   ask you these questions anyway.

11             Both of you understand and have you had an

12   opportunity to speak with your attorneys about the

13   Federal Sentencing Guidelines and how they work?

14             MR. CARAMADRE:  Yes, your Honor.

15             MR. RADHAKRISHNAN:  Yes, your Honor.

16             THE COURT:  You understand that the sentencing

17   guidelines are not mandatory.  They are advisory.  And

18   what that means is I have to give them serious

19   consideration in determining the appropriate sentence

20   in this case, but I'm not required to follow them.  Do

21   you understand that?

22             MR. CARAMADRE:  Yes, your Honor.

23             MR. RADHAKRISHNAN:  Yes, your Honor.

24             THE COURT:  You understand that anything you've

25   been told about how the sentencing guidelines will

1  apply to your case are just estimates, that we won't

2  know precisely how they apply to your case until after

3  the Office of Probation conducts a presentence

4  investigation and issues its report.  You'll have an

5  opportunity to read that report along with your

6  counsel, file any objections that you believe are

7  appropriate.  Once I rule on those objections and set

8  the guideline range, that's when we know how the

9  sentencing guidelines apply to your case.  Do you

10  understand all of that?

11        MR. CARAMADRE:  Yes, your Honor.

12        MR. RADHAKRISHNAN:  Yes, your Honor.

13        THE COURT:  And if it turns out that the

14  sentencing guideline applications are higher than what

15  you thought they were going to be for whatever reason,

16  that does not give you the right to withdraw your plea

17  of guilty.  Do you understand that?

18        MR. CARAMADRE:  Yes, your Honor.

19        MR. RADHAKRISHNAN:  Yes, your Honor.

20        THE COURT:  Now, you have a number of very

21  important constitutional rights, as you know, that

22  you're giving up by entering a plea of guilty in this

23  case.  I'm going to go through those rights with you

24  now.  They're contained at paragraph seven of your plea

25  agreements, but I want to go through them with you on

1    the record.

2         So first of all, you have the right to plead not

3    guilty and to persist in your plea of not guilty

4    through trial to the jury that's currently impaneled.

5    Do you understand that?

6         MR. CARAMADRE:  Yes, your Honor.

7         MR. RADHAKRISHNAN:  Yes, your Honor.

8         THE COURT:  And in trial, you are presumed to be

9    innocent of the charges against you and it's the

10   Government's burden to prove your guilt beyond a

11   reasonable doubt.  Do you understand that?

12        MR. CARAMADRE:  Yes, your Honor.

13        MR. RADHAKRISHNAN:  Yes, your Honor.

14        THE COURT:  And at trial, you have the right to

15   be represented throughout trial by counsel; you have

16   the right to see and hear all witnesses who would

17   testify against you and to have them cross-examined by

18   your counsel.  Do you understand that?

19        MR. CARAMADRE:  Yes, your Honor.

20        MR. RADHAKRISHNAN:  Yes, your Honor.

21        THE COURT:  And at trial, you would have the

22   right to testify on your own behalf if you wished to do

23   so, or you could decide to not testify, that is, you

24   could exercise your constitutional right to remain

25   silent.  Now, if you chose to remain silent and not

1    testify, the Government could not use your silence

2    against you to try to prove your guilt.  Do you

3    understand that?

4             MR. CARAMADRE:  Yes, your Honor.

5             MR. RADHAKRISHNAN:  Yes, your Honor.

6             THE COURT:  Finally, at trial you'd have the

7    right to use the power of the Court to obtain documents

8    or other items of evidence that you believe might be

9    helpful to your defense, or to compel witnesses to come

10   to Court and testify if you thought that might be

11   helpful to your defense.  Do you understand all of

12   that?

13            MR. CARAMADRE:  Yes, your Honor.

14            MR. RADHAKRISHNAN:  Yes, your Honor.

15            THE COURT:  Now, by entering these pleas of

16   guilty today, you're giving up all of these rights that

17   I've just described to you and you understand that

18   there will not be or we will not complete the trial in

19   this case.  Do you understand that?

20            MR. CARAMADRE:  Yes, your Honor.

21            MR. RADHAKRISHNAN:  Yes, your Honor.

22            THE COURT:  Now, in your plea agreements, you

23   understand that you're waiving the right to appeal the

24   sentence that is imposed as long as the sentence is

25   below the recommended sentence of ten years.  Do you

1    understand that?

2         MR. CARAMADRE:  Yes, your Honor.

3         MR. RADHAKRISHNAN:  Yes, your Honor.

4         THE COURT:  That's paragraph 10 of your plea

5    agreement.

6         You also both understand that there's no such

7    thing as parole in the federal system; that is,

8    whatever sentence you receive, that's the sentence that

9    you will serve.  Do you understand that?

10        MR. CARAMADRE:  Yes, your Honor.

11        MR. RADHAKRISHNAN:  Yes, your Honor.

12        THE COURT:  Now, what I'm going to do at this

13   point is ask Mr. Vilker to come forward, and he's going

14   to put on the record the legal elements that the

15   Government is required to prove with respect to the two

16   counts that you are pleading guilty to, and then he's

17   going to review the agreed-to statement of facts, which

18   has been attached to your plea agreements and which I

19   understand each of you has signed, but we need to put

20   all of that on the record.

21        So you can sit down when he does this.  And

22   Mr. Vilker, you may come forward.

23        MR. VILKER:  Thank you, your Honor.

24        Your Honor, the Defendants have agreed to plead

25   guilty to one count of wire fraud and one count of

1    conspiracy.  The elements for the wire fraud count,

2    that, first, that there was a scheme substantially as

3    charged in the indictment to defraud or obtain money or

4    property by means of false or fraudulent pretenses;

5    second, that each Defendant knowingly and willfully

6    participated in this scheme with the intent to defraud;

7    and third, that the Defendants used interstate wires on

8    or about the date alleged in furtherance of the scheme.

9        The elements of the conspiracy count are:

10   First, that there was an agreement specified in the

11   indictment and not some other agreement that existed

12   between at least two people to commit the offenses

13   listed in the indictment, which are mail fraud, wire

14   fraud and identity fraud; second, that each Defendant

15   willfully joined in that agreement; and third, that one

16   of the conspirators committed at least one overt act in

17   an effort to further the purpose of the conspiracy.

18       The statement of facts that are agreed to by the

19   parties are as follows:  From in or about 1995 through

20   2010, Joseph Caramadre ran a company called Estate

21   Planning Resources from offices in Warwick, Providence

22   and Cranston, Rhode Island.  Defendant Raymour

23   Radhakrishnan was hired by Mr. Caramadre in July of

24   2007.  In the mid-1990's, Mr. Caramadre developed an

25   investment strategy that depended on the use of

1    terminally-ill individuals.  On his own behalf, and on

2    the behalf of investors, friends and family members,

3    Mr. Caramadre began to purchase from insurance

4    companies products called variable annuities.  These

5    annuities offered death benefits upon the death of the

6    person identified as the annuitant.  These benefits

7    included a guaranteed return of all the money invested

8    plus, in many instances, a guaranteed profit even if

9    the market went down and various other bonuses and

10   enhancements.

11       In 2006, Mr. Caramadre began to invest in

12   another financial product that produced substantial

13   profits upon the death of an individual, so-called

14   death-put bonds.  Under the terms of these bonds, the

15   owner of the bond is able to redeem the bond years or

16   decades prior to the bond's maturity date upon the

17   death of the bond's co-owner.  This investment strategy

18   also depended on the use of terminally-ill individuals.

19       Beginning in or about July of 2007 and

20   continuing at least through August 2010, Mr. Caramadre

21   and Mr. Radhakrishnan did knowingly and willfully

22   conspire with each other and with others to commit mail

23   the fraud in violation of 18 U.S.C. 1341, wire fraud in

24   violation 18 U.S.C. 1343, and identity fraud in

25   violation of 18 U.S.C. 1028(a)(7).

1           In addition, from 1995 through August 2010,

2    Mr. Caramadre executed a scheme to defraud financial

3    institutions and terminally-ill individuals.

4           Mr. Radhakrishnan joined the scheme when he was

5    hired by Mr. Caramadre in July 2007.

6           It was the object of the scheme to defraud and

7    the goal of the conspiracy for Caramadre and

8    Radhakrishnan to fraudulently obtain significant sums

9    of money from the insurance companies and bond issuers.

10   The insurance companies collectively lost millions of

11   dollars from the Defendants' submission of variable

12   annuities utilizing terminally-ill annuitants.

13          Defendants submitted annuity applications using

14   terminally-ill individuals as annuitants to a number of

15   insurance companies that are identified in the

16   statement of facts agreed upon by the parties.

17          The bond issuers were required to pay the face

18   value of bonds at a date much earlier than they

19   otherwise would have been required to due to

20   Defendants' exercise of death-put features of the

21   bonds.  The Defendants purchased death-put bonds with

22   terminally-ill individuals from a number of companies

23   that are also identified in the statement of facts

24   agreed to by the parties.

25          Mr. Caramadre and Mr. Radhakrishnan fraudulently

1    obtained millions of dollars by making or causing to be

2    made material misrepresentations and omissions to,

3    first, terminally ill people, their family members and

4    caregivers in order to obtain identity information and

5    signatures for use in furtherance of the scheme;

6    second, insurance companies; and, third,

7    intermediaries, including brokerage houses and

8    broker/dealers.

9        In order to execute this scheme and conspiracy,

10   Mr. Caramadre and Mr. Radhakrishnan fraudulently

11   obtained the identity information of terminally-ill

12   individuals.  Mr. Caramadre and Mr. Radhakrishnan

13   obtained signatures of numerous terminally-ill

14   individuals on brokerage accounts and annuity opening

15   documents by means of false misrepresentations and

16   omissions.

17       Mr. Radhakrishnan gave a variety of false

18   explanations as to why the signatures of these

19   terminally-ill individuals were required, including

20   misrepresenting the nature and purpose of the documents

21   the terminally-ill individuals were asked to sign.

22       Mr. Caramadre and Mr. Radhakrishnan concealed

23   from the terminally-ill individuals and their family

24   members that their identities would be used on

25   annuities and bonds that were purchased by

1    Mr. Caramadre and others.  The names of some of the

2    terminally-ill people whose identity information was

3    used by the Defendants without the individual's

4    knowledge and consent include, but are not limited to,

5    Antonio DeCastro, John Lang, Michael Mallane, Vincent

6    Moretti, Pia Bernardo, John Gonsalves, Dennis Flori,

7    Edwin Rodriguez, James Kimball, Robert Cazeault, Hattie

8    Strobel, Charles Perry, Maria Nina, John Kivalos,

9    Augusto Escobar de Rodas, Sonia Gonzalez, Donna

10   Perotta, Richard Wiley, Arthur Culotta, William

11   Hazelwood, Linda Barbeau, Bertha Howard and Bruce

12   Marshall.

13        It was further part of the scheme to defraud and

14   the conspiracy that Mr. Caramadre and Mr. Radhakrishnan

15   took steps that prevented the terminally-ill

16   individuals from understanding the nature of the

17   documents they were signing.

18        The Defendants typically did not give the

19   terminally-ill people copies of documents they signed

20   or give them time with the documents before signing

21   them.

22        In addition, Defendants Caramadre and

23   Radhakrishnan often had the terminally-ill individuals

24   sign blank signature pages of application forms without

25   showing them the completed applications.

1    It was further part of the scheme to fraud and

2    the conspiracy that Mr. Caramadre and Mr. Radhakrishnan

3    made and caused to be made material misrepresentations

4    and omissions to various corporate entities, including

5    insurance companies, bonds issuers, broker/dealers and

6    brokerage houses.  Defendant Caramadre and his

7    co-conspirators made numerous false representations to

8    insurance companies that some of the annuity owners

9    were friends, clients or acquaintances of the

10   terminally-ill individuals who were named as

11   annuitants.

12   In addition, Mr. Caramadre took steps to conceal

13   his use of terminally-ill individuals from the

14   insurance companies, including opening annuities with

15   small deposits that would not attract scrutiny,

16   delaying the filing of death claims and opening

17   annuities in the name of Mr. Radhakrishnan when the

18   funds actually belonged to Mr. Caramadre.

19   In addition, Mr. Caramadre made

20   misrepresentations to representatives of broker/dealer

21   LifeMark concerning the manner in which the annuitants

22   and co-owners of brokerage accounts were identified and

23   whether they were being paid by Mr. Caramadre.

24   Mr. Caramadre and Mr. Radhakrishnan also

25   provided false and fraudulent information concerning

1    the finances and investment history of many of the

2    terminally-ill individuals listed as co-owners of

3    brokerage accounts.  Moreover, from in or about January

4    2008 to in or about September 2008, Mr. Caramadre and

5    Mr. Radhakrishnan made misrepresentations to

6    representatives from brokerage houses concerning the

7    purpose of the numerous joint accounts that had been

8    opened in the names of Mr. Caramadre and other

9    individuals.

10       Mr. Caramadre and Mr. Radhakrishnan falsely told

11   brokerage house representatives that the co-owners of

12   the accounts were estate planning clients of

13   Mr. Caramadre and that a portion of the investment

14   funds came from the co-owners.

15       It was a further part of the scheme to defraud

16   and the conspiracy that Mr. Caramadre concealed his

17   true ownership in many of the annuities and bonds by

18   purchasing the annuities and bonds in the names of

19   other individuals, including Mr. Radhakrishnan.  With

20   three of the annuities submitted in Mr. Radhakrishnan's

21   name, but with the funds of Mr. Caramadre,

22   Mr. Radhakrishnan misrepresented his income and assets

23   in the suitability forms that accompanied the annuity

24   applications.

25       Finally, in furtherance of the scheme and

1  conspiracy, Defendants Caramadre and Radhakrishnan

2  caused to be opened a brokerage account at T.D.

3  Ameritrade in the names of Mr. Caramadre and Edwin

4  Rodriguez. On or about June 25th of 2008, Defendants

5  Caramadre and Radhakrishnan knowingly transmitted and

6  caused to be transmitted in interstate wire for the

7  purpose of executing the scheme specifically an

8  interstate wire of $280,000 in funds from the Citizens

9  Bank account of Mr. Caramadre to the Ameritrade account

10 that had been opened in the names of Mr. Caramadre and

11 Mr. Rodriguez.

12       THE COURT: All right. Will the Defendants

13 please stand.

14       Now, you heard Mr. Vilker describe the statement

15 of facts, which you've signed, the only difference

16 being that he didn't list the long list of insurance

17 companies and other companies.

18       So I need to ask you on the record, do each of

19 you agree that these facts are true and these are the

20 facts of the case? Mr. Caramadre?

21       MR. CARAMADRE: Yes, your Honor.

22       MR. RADHAKRISHNAN: Yes, your Honor.

23       THE COURT: I'm now going to ask each of you how

24 you wish to plead to these charges, guilty or not

25 guilty? Beginning with you, Mr. Caramadre.

1          MR. CARAMADRE:  Guilty.

2          MR. RADHAKRISHNAN:  Guilty, your Honor.

3          THE COURT:  It is the finding of this Court in

4     the case of the United States versus Joseph Caramadre

5     and Raymour Radhakrishnan that the Defendants are fully

6     competent and capable of entering an informed plea;

7     that the Defendants are aware of the nature of the

8     charges against them and the consequences of their

9     pleas; and their pleas of guilty are knowing and

10    voluntary pleas supported by an independent basis in

11    fact containing each of the essential elements of the

12    offenses.  These pleas are, therefore, accepted, and

13    the Defendants are hereby adjudged guilty of those

14    offenses.

15          The sentencings in these cases are going to be

16    set down for the time being as follows, with the

17    understanding that these dates may change based on my

18    prior discussion with counsel.  These may be viewed as

19    placeholder dates.  Friday, February 8th for

20    Mr. Caramadre at 9:00 a.m., this is 2013, obviously;

21    and Friday, February 8, 2013, at 10:00 a.m. for

22    Defendant Radhakrishnan.

23          Now, between now and the sentencing date,

24    whether it's that date or another, the Office of

25    Probation will be preparing a Presentence Investigation

1    Report to be used in determining the appropriate

2    sentence in this case, and I want to encourage both of

3    you to cooperate fully with the probation officer in

4    the preparation of that report.

5         Now, my understanding also is that the

6    Government is agreeable to both of you remaining on

7    your current bail status and that's agreeable to me as

8    well based on my understanding that both of you have

9    been compliant up to this point.

10        I do want to emphasize to you, though, that your

11   status before the Court has changed.  Now you're no

12   longer individuals that have been accused of a crime.

13   You've now been convicted of those crimes.  It's very

14   important that you continue to fully comply with all

15   the conditions of your release pending your sentencing;

16   otherwise, I might be in a position where I would have

17   to incarcerate you pending sentence, and I don't want

18   to do that.  So make sure you continue to be fully

19   compliant with your conditions of release.

20        All right.  I believe that -- is there anything

21   else?

22        MR. VILKER:  I just have one other thing that I

23   want to say, your Honor.  Under the plea agreement, the

24   Government has agreed to dismiss the remaining counts

25   at sentencing.  I just wanted to put on the record,

1    because it wasn't contained in the plea agreement, the

2    Government also agrees to dismiss the forfeiture

3    allegation at the time of sentencing as well.

4              THE COURT:  All of this will take place at the

5    time of sentencing?

6              MR. VILKER:  Exactly.

7              THE COURT:  Anything else from defense side?

8              MR. LEPIZZERA:  That was my only point, your

9    Honor.

10             MR. THOMPSON:  Nothing, your Honor.  Thank you.

11             THE COURT:  Okay.  Very well.

12             Charlie, just let the jury know I'm going to

13    come down and speak to them now.

14             Okay.  Thank you all very much.  And thank you

15    for all of your hard work over the weekend to make this

16    happen.

17             (Court concluded at 10:00 a.m.)

18

19

20

21

22

23

24

25

C E R T I F I C A T I O N

        I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.


/s/ Anne M. Clayton

_____

Anne M. Clayton, RPR




December 10, 2012

_____

Date