UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **JOSEPH CARAMADRE** ) | Criminal No. 11-186-S |
| ) | |
| **and** ) | |
| ) | |
| **RAYMOUR RADHAKRISHNAN** ) | |
| ) | |
| **Defendants.** ) | |

**GOVERNMENT'S REPLY MEMORANDUM REGARDING MOTION FOR
PERMISSION TO ISSUE SUBPOENAS TO FORMER ATTORNEYS OF JOSEPH CARAMADRE**

The United States respectfully submits its Reply to Defendant Joseph Caramadre's "Response In Opposition" (ECF No. 138) to the Government's "Motion For Permission to Issue Subpoena's to Former Attorneys of Joseph Caramadre" (ECF No. 136).

In Caramadre's response, he objects both to the production of any documents to the government in connection with his plea withdrawal claims, as well as "any contact at all" between the government and Caramadre's former attorneys. These are distinct issues which the Court can resolve separately.

1. **The Government is entitled to documents to rebut Caramadre's claims in support of his Motion To Withdraw His Guilty Plea**

There is no valid basis for preventing the government from access to documents necessary to respond to Caramadre's claim. The

1

Court should either order production of the documents or deny Caramadre's Motion to Withdraw His Guilty Plea for failure to prosecute it.

Caramadre's objects to the production of *any* documents to the government by Caramadre's former attorneys, and has refused to produce any documents himself.  Caramadre hysterically characterizes the government's request for documents as a "fantastically overbroad" "fishing expedition that would make Ernest Hemingway blanch."  (Def. Mem. at 1).  Notwithstanding Caramadre's lyrical description of the government's request for information, the breadth of the government's request simply tracks Caramadre's broad claims in support of his Motion to Withdraw His Guilty Plea.  For example, the government requested a 373 page correspondence file which Caramadre's own pleadings describe as "critical to the consideration of Caramadre's motion to withdraw his guilty plea." (Def. Motion for Additional Time to File Reply Memorandum at 1").  Yet Caramadre refuses to produce it.[1]  Similarly, Caramadre claims that Traini's fee arrangement with Caramadre constituted a "grave conflict of interest" in the form of an "incentive to induce Mr. Caramadre to plead guilty."  (Motion to Withdraw at 25).  Yet,

---

[1] It bears noting that Caramadre never filed his "Reply Memorandum" incorporating the correspondence referenced, despite twice seeking additional time to do so. The obvious inference is that the contents of the file are not as helpful to his plea withdrawal claims as Caramadre would hope.

Caramadre refuses to provide the government with a copy of that fee arrangement. He claims that "the Government has received all the information to which it is entitled, as exhibits in Mr. Caramadre's motion and memorandum." (Def. Mem. at 6).

Caramadre moved to withdraw his guilty plea alleging sweeping claims of ineffective assistance of counsel and conflict of interest, among other grounds. (See generally, Motion To Withdraw Guilty Plea, ECF No. 122). Caramadre's purported withdrawal reasons were not narrowly focused by time or substance. Rather, he cited his attorneys' "insistent attempts to induce a plea" (Mot. at 2 and 6); "failure to investigate witnesses" (Mot. at 7-9); "failure to give an opening statement" (Mot. at 21); "failure to conduct any meaningful cross-examination" (Mot. at 9-21); "fail[ure] to take appropriate measures" at the Rule 11 hearing (Mot. At 30); and Traini's alleged "conflicts of interest" (Mot. at 22-26).

Caramadre's Motion to Withdraw offers as proof of his claims only isolated pieces of correspondence between himself and his attorneys as proof of their ineffective assistance of counsel. For example Caramadre accuses his attorneys of a failure to interview any government witnesses. As proof, Caramadre cites a single e-mail from himself to Lepizzera in October 2012 requesting interviews of three individuals. (Mot. at Ex. G). Caramadre does not identify what, if any response came from Lepizzera verbally or in writing.

3

Moreover, to rebut the claim that such a particular failure, even if true, constitutes ineffective assistance, the government is entitled to review all efforts by Caramadre's attorneys to investigate the case, including what steps they took to evaluate the strength of the government's witnesses and what they communicated to Caramadre about it.  Caramadre cannot simultaneously rely on cherry-picked privileged documents and unspecified conversations with his former counsel and then refuse to provide the government with access to the context needed to rebut those claims.  To put it more lyrically, Caramadre cannot have his cake and eat it too.

Caramadre's claims that Traini and Lepizzera improperly pressured him to plead guilty are not limited to the period during which he negotiated his guilty plea. Rather, he argues "Traini advocated a plea bargain shortly after the start of his representation."  (Mot. at 24).  Caramadre also alleges that Lepizzera urged him to consider a guilty plea on multiple specified and unspecified dates throughout the representation. (See, e.g., (Mot. at Ex J, ¶10) ("Prior to the trial, Attorney Lepizzera… spoke to me about the possibility of pleading guilty.  I declined each time…").  It is impossible for the government to respond to Caramadre's broad allegations without the context in which such discussions took place, including any written communication or memoranda.

4

Similarly, Caramadre' bootstraps his "mental incompetence" claim to a constitutional defect in the Rule 11 colloquy.  Caramadre argues that his attorneys had "known for some time that he suffered from acute mental illness; Attorney Lepizzera was a family friend for years, close neighbor, and fellow parishioner." (Mot. at 29). He argues that Attorney Lepizzera, "the attorney with the most extensive knowledge of Mr. Caramadre's mental health condition," should have intervened during the Rule 11 colloquy. (Mot. at 30). Caramadre admits that "absent knowledge of Mr. Caramadre's serious mental illness, the plea colloquy would have comported with constitutional guarantees." Id.  The defect, Caramadre claims, is that "in light of this information, both the Court and counsel failed to take appropriate measures to ensure that Mr. Caramadre's plea was constitutionally sound."  Id.  Thus Caramadre has put the personal and professional assessment of his mental health status by Lepizzera, throughout the course of their relationship, at issue for purposes of his plea withdrawal.

Moreover, Caramadre asserts a blanket, unspecified denial of all the facts of the case to which he previously admitted under oath. As proof, he offers his longstanding denials of guilt.  It is therefore of consequence whether Caramadre made admissions to Lepizzera, Traini and/or DeMello of specific facts which would contradict his longstanding "assertion of innocence."  Since

5

Caramadre claims he has always maintained his innocence, this cannot be time limited. Since his claim spans the entire representation, so too does its rebuttal.

2. **The Court should require Caramadre's consent to a waiver of confidential information or deny his Motion To withdraw his Guilty Plea for Failuire to Prosecute.**

Caramadre has repeatedly admitted that his plea withdrawal claims necessarily waive the attorney client privilege. The government's motion for permission to subpoena his former attorneys requested Court authorization for government attorneys to meet with Caramadre's former attorneys in advance of the evidentiary hearing which Caramadre requested. In advance of filing that motion, the government alerted the Court and Caramadre's counsel, in a chambers conference, to two competing ethics advisory opinions addressing extrajudicial disclosures of confidential client information (neither of which are binding on attorneys licensed in Rhode Island). See generally, *ABA Standing Committee on Ethics and Professional Responsibility Opinion 10-456* and *District of Columbia Bar Association Ethics Opinion 364*. (Attached as Exhibits A and B, respectively).

Nonetheless, Caramadre criticizes the government of "chutzpah" for "ignor[ing]" *ABA Opinion 10-456*. (Def. Mem. at 2). The ABA opinion, interpreting ABA Model Rule 1.6, concluded that it was "unlikely that a disclosure [of confidential information] in

6

response to a prosecution request, prior to a court-supervised response… will be justifiable."

Caramadre himself then proceeds to ignore the other advisory ethics opinion brought to his attention by the government: *D.C. Ethics Opinion 364*, which disagrees with the conclusion of ABA Opinion 10-456.  *Opinion 364* states "We do not share the [ABA] Opinion's views that extrajudicial disclosure rarely will be justifiable."

In any event, even assuming *ABA Model Opinion 10-456* were the appropriate lens through which to view the issue, at least one federal court has already developed a procedure for dealing with this issue. In United States v. Douglas, 2011 WL 335861, (S.D.N.Y., 2011), the District Court addressed the ABA opinion in the context of an ineffective assistance of counsel claim pursuant to 28 U.S.C. §2255. (Attached as Exhibit C).  The Court developed a procedure where it would order require the defendant to execute a form consenting to a waiver of confidential information.  If the defendant refuses to execute the waiver, the Court will deny the defendant's petition for failure to prosecute.  See id. at *3.  The waiver form reads in part:

> The American Bar Association requires your attorney to obtain your consent before disclosing confidential communications between you and him that may bear on the disposition of your motion. This is a professional ethics requirement; there is no legal requirement that you give your attorney permission to disclose such information. In fact, as a matter of law, you have waived the attorney

7

>     client privilege by making your motion, which means that
>     if you wish to press your claim of ineffective assistance,
>     you cannot keep the communications between yourself and
>     your lawyer a secret—you must allow them to be disclosed
>     to the Government and to the court pursuant to court order.

<u>Id.</u>

   The Court should adopt a similar approach here.  Caramadre has repeatedly admitted that his allegations waive the attorney-client privilege.  He requested an evidentiary hearing on the motion.  The burden of proof is his.  Yet Caramadre seeks to prevent the government from obtaining the information necessary to rebut his claims.  If he persists, his motion should be denied.

 

                         Respectfully submitted,

                         PETER F. NERONHA
                         UNITED STATES ATTORNEY

                         <u>/s/ John P. McAdams</u>
                         JOHN P. McADAMS
                         Assistant U.S. Attorney
                         LEE H. VILKER
                         Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of April, 2013, I caused the within Government's Reply to be served via the Court's Electronic Filing System on:

**For Joseph Caramadre**:

Randy Olen, Esq.
Robert Watt, Esq.

**For Raymour Radhakrishnan**:

Olin Thompson, Esq.

/s/John P. McAdams
John P. McAdams
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
john.p.mcadams@usdoj.gov