


**Home** > **For Lawyers** > **Ethics** > **Legal Ethics** > **Opinions**

# Opinion 364


  

**Shopping cart**

View cart  Check out



### Confidentiality Obligations When Former Client Makes Ineffective Assistance of Counsel Claim

When a former client challenges a criminal conviction or sentence on the grounds of ineffective assistance of counsel ("IAC"), D.C. Rule 1.6(e)(3) permits the lawyer to disclose client confidences and secrets only insofar as reasonably necessary to respond to the client's specific allegations about the lawyer's representation. Where appropriate, the lawyer should take steps, such as seeking a judicial protective order or entering into an agreement with the prosecutor, to limit the use of such disclosures to the IAC proceeding.

**Applicable Rule**

- Rule 1.6 (Confidentiality of Information)

**Inquiry**
This Committee has been asked what a lawyer may and may not do when a former client asserts a claim of ineffective assistance of counsel under the District of Columbia's Rules of Professional Conduct ("D.C. Rules" or "Rules") in light of an opinion on the same subject issued by the American Bar Association's Standing Committee on Ethics and Professional Responsibility. This opinion specifically addresses to what extent and under what circumstances D.C. Rule 1.6(e)(3) permits a lawyer to disclose information protected by D.C. Rule 1.6 ("protected information") to the prosecutor defending the IAC claim or to others.

In July 2010, the American Bar Association's Standing Committee on Ethics and Professional Responsibility issued Formal Ethics Opinion No. 10-456, entitled "Disclosure of Information to Prosecutor When Lawyer's Former Client Brings Ineffective Assistance of Counsel Claim," which analyzed the "self-defense exception" in the ABA's Model Rule of Professional Conduct 1.6 to address "whether a criminal defense lawyer whose former client claims that the lawyer provided constitutionally ineffective assistance of counsel may, without the former client's informed consent, disclose confidential information to government lawyers prior to any proceedings on the defendant's claim in order to help the prosecution establish that the lawyer's representation was competent." Applying the Model Rules, that opinion concluded that although a—

> lawyer may have a reasonable need to disclose relevant client information in a judicial proceeding to prevent harm to the lawyer that may result from a finding of ineffective assistance of counsel…, it is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable.

The D.C. Rules differ from the ABA Model Rules. Importantly, the Model Rule allows disclosure of protected information only in the context of an actual or contemplated proceeding, while the D.C. Rule allows such disclosure (assuming its requisites otherwise are satisfied) regardless of whether a proceeding is pending or even contemplated. *Compare* Model Rule 1.6(b)(5) *with* D.C. Rule 1.6(e)(3). As discussed further below, the committee disagrees with the ABA's conclusion that "it is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable."

**Analysis**

An IAC claim pits a lawyer's broad confidentiality obligation to a former client[1] against the lawyer's limited right of self-defense. The target of the IAC claim is not the lawyer personally but the constitutionality of a criminal conviction or sentence in a case where the lawyer represented the defendant. An IAC claim differs from a criminal charge, disciplinary charge, or civil claim filed directly against the lawyer because the lawyer is not a party to the proceeding. In an IAC claim, the lawyer is a mere witness, albeit an important one who might have an independent professional interest in responding to the allegations made in the IAC claim.

To prevail on an IAC claim, a former client must prove that the lawyer's performance was deficient (*i.e.*, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment") and that the deficient performance prejudiced the defense (*i.e.*, that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."). *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Given the waiver of attorney-client privilege that typically accompanies the assertion of an IAC claim, it is tempting to assume that the ethical confidentiality obligation under Rule 1.6 is also waived. However, such an assumption erroneously conflates the lawyer's ethical obligation under the Rules of Professional Conduct with the attorney-client privilege under the rules of evidence.

Under D.C. Rule 1.6, protected information includes not only information within the attorney-client privilege ("confidences," in the parlance of the rule) but also "other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental, to the client" ("secrets," in the parlance of the rule). Rule 1.6(b). Thus, even if there is no enforceable privilege, Rule 1.6 precludes the lawyer from voluntarily revealing protected information other than in accordance with an explicit exception to Rule 1.6. Moreover, even if the confidentiality obligation under Rule 1.6 were congruent with the evidentiary attorney-client privilege, the effective scope of any privilege waiver is not always clear.[2]

D.C. Rule 1.6(e)(3) will allow lawyers to reveal some protected information in response to an IAC claim in some instances. Under that rule, however, the lawyer's discretion to voluntarily reveal information is limited to the extent to which the disclosure is "*reasonably necessary* to *respond* to *specific* allegations by the [former] client concerning the lawyer's representation of the client" D.C. Rule 1.6(e)(3) (emphasis added). "Reasonably" means "the conduct of a reasonably

prudent and competent lawyer." Rule 1.6(j).

The fact that a successful IAC claim may result in a new trial or sentencing for the original underlying charge or offense further complicates the analysis. In assessing what can reasonably be disclosed without seeking a protective order or reaching an agreement with the prosecutor limiting the disclosure and use of the protected information to the IAC proceeding, the lawyer should consider the extent to which information provided in response to the IAC claim could help convict the former client in a new trial.

What can or should be done in a particular case will depend on the specific facts of that case. Extreme facts illustrate the pressure points in an analysis that ultimately turns on reasonableness:

1. Suppose a former client brings an IAC claim attacking his conviction for a robbery in the Georgetown neighborhood. The former client alleges that the lawyer failed to interview and subpoena potential witness X, whose testimony, the former client alleges, would have contradicted a key element of the prosecution's robbery case. The lawyer's case file contains protected information about the lawyer's handling of issues relating to X, but it also contains protected information tying the former client to an unsolved murder in the Capitol Hill neighborhood. Assume initially that the murder has nothing to do with X or the robbery.

   In such a scenario, the lawyer would violate Rule 1.6 by sharing with prosecutors or others information about the murder. Because the information tying the former client to the murder is not relevant to the specific allegations of IAC, the self-defense exception does not authorize its disclosure. Moreover, even if unprivileged,[3] disclosure of information implicating a former client in a murder would be "embarrassing" and "detrimental" to the former client, thereby falling within the Rule 1.6 definition of a "secret" that the lawyer cannot reveal voluntarily.

2. At the other end of the spectrum, consider a former client's IAC claim that the lawyer failed to file an appeal despite the client's instruction to do so. The client pleaded guilty but now alleges that the sentence he received was too harsh and should have been appealed. If true, the lawyer's failure to file a client-requested appeal breached an important duty to a client. The lawyer is the only witness who can rebut or confirm the allegation, which is both serious and specific. The lawyer's account is that the former client never directed her to file an appeal. Further, the lawyer would say she told the former client that there was no basis for such an appeal because the sentence was the one to which the client had agreed as part of the plea bargain. The lawyer also has a confirming letter sent to the former client stating, "per our conversation today, I will not be filing an appeal in your case." Such disclosure relates solely to the former client's IAC allegation of a clear breach of duty. Thus, as discussed below, the Committee does not believe that a lawyer in this situation must await a court order compelling the lawyer to reveal confidential information about the appeal. Nor must the lawyer seek a protective order confining use of

the information to the IAC proceeding because the disclosure does not implicate the former client in uncharged criminal activity, and will have no foreseeable adverse effects on any retrial or resentencing if the conviction or sentence is reversed.

3. In some cases, the appropriate response may be no response because the allegations simply will not be believed by anyone who reads them. Imagine a sealed juvenile proceeding in which the record will be known only to the judge and the involved lawyers. The former client makes an IAC claim founded on unsubstantiated and palpably incredible allegations of a vast and sinister conspiracy between prosecution and defense lawyers. The accused lawyer knows that the presiding judge, before whom she appears on a regular basis, is going to recognize the allegations for what they are, namely the product of a troubled mind. In that situation, there may be no response that is reasonably necessary to respond to the allegations in the IAC claim.

4. A slight variation in the facts of the first hypothetical can be used to create a difficult case in the middle. As before, the former client challenging the robbery conviction alleges that the lawyer committed IAC by failing to call witness X. In fact, the lawyer had two reasons for not calling witness X. First, X's expected testimony as to the robbery was cumulative of that given by other defense witnesses. In other words, the testimony that X could give as to the robbery would not add materially to what was already in the record and the lawyer was concerned that the court might exclude it for that reason. Second, the lawyer feared that a vigorous cross-examination into X's relationship with the client might lead prosecutors to evidence implicating the client in the uncharged and unrelated murder.

   How can this lawyer explain why she did not call X without (1) misleading the court and prosecutors by suggesting that there was only one reason for not calling X or (2) implicating the former client in an uncharged murder unrelated to the robbery conviction at issue in the IAC proceeding? Should the former client be given an opportunity to reconsider pursuing an IAC claim that opens the door to disclosures in this area? Is it prudent for a lawyer in this situation to voluntarily respond to prosecutor's requests for information without court approval? If compelled to respond, should the lawyer seek a protective order so that the information she provides cannot be used against the client in other proceedings? We address these specific questions below.

   Disclosure questions in the IAC context are necessarily fact-bound, and careful reflection may reveal them to be more complicated than they first appear. Further complicating a lawyer's analysis is the emotional reaction that the lawyer may have upon learning that a former client has accused her of IAC. Feelings of anger and betrayal may impede an objective analysis of these issues.

   This opinion offers a framework for the analysis, beginning with a brief review of the law governing IAC claims in Part A below. Part B summarizes the lawyer's typical role as a witness in an IAC claim. Part C reviews

the ABA's analysis of IAC disclosure issues under the Model Rules of Professional Conduct. Part D analyzes the relevant provisions of the District of Columbia Rules, which differ from the Model Rules in significant respects.

### A. Using an Ineffective Assistance of Counsel Claim to Overturn a Criminal Conviction or Sentence on Sixth Amendment Grounds.[4]

A criminal defendant's constitutional right to counsel, *see* U.S. Const., amend. VI, "is the right to the effective assistance of counsel," *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970)). A conviction or sentence may be reversed if the defendant can show that her lawyer provided "ineffective assistance of counsel." *Strickland* imposes a two-pronged test for ineffective assistance.

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. The court's review of the lawyer's performance "must be highly deferential," with "counsel . . . strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 689-90. "The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011).

A showing of incompetence alone does not require that the underlying conviction or sentence be vacated: "Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. The defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In this jurisdiction, "[t]here is a presumption in favor of holding [an evidentiary] hearing" on an IAC claim "that requires an inquiry into matters outside of the record" but the trial court may rule without a hearing "[w]here the existing record provides an adequate basis for disposing of the motion." *Ready v. United States*, 620 A.2d 233, 234 (D.C. 1993) (citation omitted); *see also Lanton v. United States*, 779 A.2d 895 (D.C. 2001) (reversing denial of IAC claim and remanding for a hearing). In the District of Columbia courts, "a hearing is unnecessary when the motion consists of (1) vague and conclusory allegations, (2) palpably incredible claims, or (3) allegations that would merit no relief even if true." *Ready*, 620 A.2d at 234.

### B. Former Counsel as Witness to Conduct at Issue in IAC Claim.

When an IAC claim is filed, the lawyer becomes a witness respecting the former client's allegations about the representation:

Where the defendant's allegations of fact, if credited, would support a finding of ineffective assistance, the court is required to obtain testimony from the attorney, either to support the former client's claim or to undermine it, and (if there is a conflict in the testimony of the movant and his former attorney) to make any needed credibility findings.

*Douglas v. United States*, 2011 WL 335861, at *1 (S.D.N.Y. Jan 28, 2011).

Attorney-client privilege often prevents lawyers from disclosing information that prosecutors and others would deem relevant. For example, a client's confession to a lawyer of involvement with a past crime would be relevant to an investigation of that crime. Attorney-client privilege, however, would normally preclude lawyers from revealing – or being forced to reveal – that confession to prosecutors or others. *See, e.g. In re Public Defender Service*, 831 A.2d 890, 906 (D.C. 2003). A client's assertion of an IAC claim, though, generally waives the attorney-client privilege.[5] The waiver allows a court to compel an attorney to testify about the otherwise privileged information that the client has placed in issue.

When an IAC claim is filed, prosecutors may want information from the defense lawyer to help them respond to the claim.[6] Anecdotal evidence suggests that different defense lawyers react differently to prosecutors' requests for information. At one end of the spectrum are lawyers who are angered by the claim and eager to beat it back. Attorneys have a reputational interest in having IAC claims defeated. *E.g., SEC v. Forma*, 117 F.R.D. 515, 524-25 (S.D.N.Y. 1987). They may also fear future civil claims by the former client.[7]

At the other end of the spectrum are attorneys who police themselves for potential IAC issues. When such lawyers or their supervisors spot such an issue, they withdraw, refer the client to other counsel, and cooperate with the new counsel. If new counsel tells them that the client objects to any voluntary disclosure to prosecutors, they do not disclose until a court requires them to do so.

Between those extremes are understandably concerned lawyers who do not want to jeopardize their licenses, their reputations, or their ability to continue doing defense work but who may not want to assist the prosecution against a former client. Court-appointed lawyers under the Criminal Justice Act may be especially uncomfortable because their livelihoods depend on continued appointments by the court that will be considering the IAC claim.

In many places, informal practices developed within the prosecution and defense bars prior to the issuance of ABA Ethics Opinion 10-456. The following was common in at least one jurisdiction:

> Because the need for the attorney's testimony was patent and the waiver of privilege plain, it has become the practice for attorneys to supply the required testimony (in the form of an affidavit or declaration, which qualifies as testimony and so perfectly acceptable) without obtaining express written consent from the former client. Formal consent was deemed unnecessary because the client had waived the

privilege simply by making the motion. Additionally, some attorneys have given their testimony without being formally ordered to do so by a court, knowing that the waiver would be given effect and that a court order was guaranteed to issue. In most instances, the testimony was solicited by and given to the prosecutor's office that originally indicted and prosecuted the defendant, since it is the prosecutor that assembles the record in opposition to the [28 U.S.C.] § 2255 motion

*Douglas v. United States*, 2011 WL 335861, at *1.

### C. ABA Ethics Opinion 10-456, Disclosure of Information to Prosecutor When Lawyer's Former Client Brings Ineffective Assistance of Counsel Claim.

The ABA Opinion addresses whether and the conditions under which a defense lawyer may disclose confidential information to prosecutors in the wake of an IAC claim by the lawyer's former client. The last sentence of the opinion concludes that "it will be extremely difficult for defense counsel to conclude that there is a reasonable need in self-defense to disclose client confidences to a prosecutor outside any court-supervised setting."

The ABA Opinion states that a client's waiver of privilege by bringing an IAC claim "has the legal effect of forgoing the right to bar disclosure of the client's prior confidential communications in a judicial or similar proceeding. Standing alone, however, that does not constitute 'informed consent' to the lawyer's voluntary disclosure of client information outside such a proceeding." *Id*. Thus, a client might agree that the lawyer could testify at an adjudicatory hearing "to the extent the court requires but not agree that the former lawyer voluntarily may disclose the same client confidences to the opposite party prior to the proceeding." *Id.* at 2-3.

Although Model Rule 1.6(b)(5) has several provisions allowing lawyers to reveal confidential information to defend themselves in certain situations,[8] the only one that the ABA Opinion found potentially relevant to an IAC claim was that allowing disclosure "to the extent the lawyer reasonably believes necessary… to respond to allegations in any proceeding concerning the lawyer's representation of the client."[9] The ABA Opinion states that "the exception is a limited one." *Id.* at 3. "A lawyer may act in self-defense under [the exception] only to defend against charges that *imminently* threaten the lawyer or the lawyer's associate or agent with *serious* consequences." *Id.* (quoting *Restatement (Third) of the Law Governing Lawyers* §64 cmt. c (2000)) (emphasis added by ABA Ethics Committee).

The ABA Opinion states that this provision might be read to apply to an IAC claim seeking to set aside a criminal conviction. *Id*. However—

> a lawyer may respond to allegations only insofar as the lawyer reasonably believes it is *necessary* to do so. It is not enough that the lawyer genuinely believes the particular disclosure is necessary; the lawyer's belief must be objectively reasonable. The Comment explaining Rule 1.6(b)(5) cautions lawyers to take steps to limit "access to the information to the tribunal or

> other persons having a need to know it" and to seek "appropriate protective orders or other arrangements ... to the fullest extent practicable." [Model Rule 1.6 cmt.14.] Judicial decisions addressing the necessity for disclosure under the self-defense exception to the attorney-client privilege recognize that when there is a legitimate need for the lawyer to present a defense, the lawyer may not disclose all information relating to the representation, but only particular information that reasonably must be disclosed to avoid adverse legal consequences. These limitations are equally applicable to Rule 1.6(b)(5).
>
> Permitting disclosure of client confidential information outside court-supervised proceedings undermines important interests protected by the confidentiality rule. Because the extent of trial counsel's disclosure to the prosecution would be unsupervised by the court, there would be a risk that trial counsel would disclose information that could not ultimately be disclosed in the adjudicative proceeding. Disclosure of such information might prejudice the defendant in the event of a retrial. Further, allowing criminal defense lawyers voluntarily to assist law enforcement authorities by providing them with protected client information might potentially chill some future defendants from fully confiding in their lawyers.
>
> Against this background, it is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable....

*Id.* at 4-5 (emphasis in original, footnotes and most citations omitted).

**D. Confidentiality Under D.C. Rule 1.6**

District of Columbia lawyers have an ethical duty of confidentiality under Rule 1.6 that is separate from, and broader than, the attorney-client privilege under the law of evidence. *See Adams v. Franklin*, 924 A.2d 993, 999 n. 6 (D.C. 2007). D.C. Rule 1.6 commands that "except when permitted under paragraph (c), (d), or (e), a lawyer shall not knowingly . . . reveal a confidence or secret of the lawyer's client." A "confidence" is "information protected by the attorney–client privilege under applicable law," while a "secret" is "other information gained in the professional relationship that the client has requested be held inviolate, or the disclosure of which would be embarrassing, or would be likely to be detrimental to the client." Rule 1.6(b).**[10]** "These definitions and comment [6] to Rule 1.6 make it clear that the lawyer's ethical duty to preserve a client's confidences and secrets is broader than the attorney-client privilege." *Adams*, 924 A.2d at 996-97.

The ethical obligation is broader than the privilege because a protected "secret" under Rule 1.6 is, by definition, not subject to the attorney client privilege. Thus, it is not sufficient for a lawyer to conclude that information she wants to disclose is outside the attorney-client privilege. The lawyer will still violate

the ethical confidentiality obligation if she voluntarily reveals a "secret" other than in accordance with an exception in subsection (c), (d), or (e) of Rule 1.6. Information gained in the professional relationship that the former client does not want revealed or that would be embarrassing or detrimental to the client is a protected "secret" even if it is not subject to any enforceable evidentiary privilege.

This expansive confidentiality obligation "[t]ouch[es] the very soul of lawyering." *In re Gonzalez*, 773 A.2d 1026, 1030 (D.C. 2001) (quoting *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 607 (8th Cir. 1977)). "Disclosure of client confidences is 'contrary to the fundamental principle that an attorney owes a fiduciary duty to his client and must serve the client's interests with the utmost loyalty and devotion.'" *Herbin v. Hoeffel*, 806 A.2d 186, 197 (D.C. 2002) (quoting *In re Gonzalez*, 773 A.2d at 1031).

Violations of the confidentiality rule have consequences. The Court in *In re Gonzalez* sanctioned a lawyer for revealing too much in a motion to withdraw from representation of a difficult client.**[11]**

> We think it obvious that a public allegation by a client's own lawyer that the client deliberately lied to him would be "embarrassing" to the client and "would be likely to be detrimental" to her …. Indeed, it is difficult to understand how a reasonable person could conclude otherwise.

*In re Gonzalez*, 773 A.2d at 1030.**[12]**

Even had the disclosure been justified, the court noted, the lawyer "could have submitted his documentation *in camera*,... [with] appropriate redactions of the material most potentially damaging to his clients (*e.g.*, his allegations that [the client] had misrepresented facts to him and his suggestion… that a demand of $90,000 by the plaintiffs in the underlying litigation might be reasonable)." *Id.* at 1032. A few years after *Gonzalez* was decided, the Court of Appeals sanctioned another lawyer for saying too much while withdrawing from the representation of a another difficult client. *In re Ponds*, 876 A.2d 636 (D.C. 2005).

D.C. Rule 1.6(e)(3) contains two exceptions that allow lawyers to reveal certain confidential client information in order to defend themselves. Client confidences and secrets may be disclosed:

> (1) "to the extent reasonably necessary to establish a defense to a criminal charge, disciplinary charge, or civil claim, formally instituted against the lawyer, based upon conduct in which the client was involved," or

> (2) "to the extent reasonably necessary to respond to specific allegations by the client concerning the lawyer's representation of the client."

The first exception does not apply to an IAC claim because such a matter is not "a criminal charge, disciplinary charge, or civil claim formally instituted against the lawyer." The target of the ineffective assistance claim is the defendant's criminal

conviction rather than the lawyer personally." The lawyer is not a party to the proceeding in which the claim is made.

The second exception does apply to an IAC claim.[13] This exception allows a lawyer to reveal protected information "to the extent reasonably necessary to respond to specific allegations by the client concerning the lawyer's representation of the client." One court has said that information is "reasonably necessary" if it would "seem likely to provide significant assistance" to the lawyer's response. *First Fed. Sav. & Loan Ass'n v. Oppenheim, Appel, Dixon & Co.*, 110 F.R.D. 557, 567 (S.D.N.Y. 1986).

The use of the second exception is circumscribed in three ways. First, voluntary disclosure can be made only "to the extent reasonably necessary to respond" to the allegations. "Reasonably" in this context "denotes the conduct of a reasonably prudent and competent lawyer." D.C. Rule 1.0(j). This is an objective test; the lawyer's subjective belief is not relevant to the inquiry.

The analysis of what is reasonably necessary to respond to any particular IAC claim will depend on the facts and circumstances surrounding the claim. As with any proposed disclosure of confidential information, a lawyer will want to carefully consider (1) whether to disclose, and (2) how much to disclose. The resolution of both questions may depend on, among other things, the nature of the claim and the content of the lawyer's file. Because the exception is permissive, not mandatory, the lawyer may choose not to respond because, for example, the lawyer may think the disclosure may harm the client, the prosecutor already has the information necessary to respond to the claim, and the disposition of the IAC claim solely on "lack of prejudice" grounds will sufficiently protect the lawyer from reputational or other harm that might arise from the specific allegations of deficient performance.

The lawyer also may consider whether it is necessary to respond outside the IAC proceeding (in addition to responding within that proceeding) in order to protect her reputation or other interests. Unlike the Model Rule, D.C. Rule 1.6(e)(3) authorizes lawyers to respond to a client's "specific allegations" concerning the lawyer's representation even if those allegations are not made in a "proceeding." As the "Jordan Committee" report recommending adoption of the current rules noted, "public allegations concerning the lawyer's representation of the client may be responded to publicly if they have been made 'by the client,' even if those charges have not been instituted formally. Thus, the client (but no one else) can waive the client's right to confidentiality by opening the issue to public discussion." *Proposed Rules of Professional Conduct and Related Comments Showing the Language Proposed by the American Bar Association, Changes Recommended by the D.C. Bar Model Rules of Professional Conduct Committee, and Changes Recommended by the Board of Governors of the District of Columbia Bar*, at 53, ¶44 (Nov. 19, 1986).

Second, "[t]he requirement… that there be 'specific' charges of misconduct by the client precludes the lawyer from disclosing confidences or secrets in response to general criticism by a client; an example of such a general criticism would be an assertion by the client that the lawyer 'did a poor job' of representing the client." Rule 1.6 cmt. [25]. As a matter of substantive law, general criticisms lack the specificity necessary to state a viable IAC claim. *See, e.g., Ready v. United States*,

620 A.2d at 234 ("vague and conclusory" allegations insufficient). More fundamentally, however, D.C. Rule 1.6(e)(3) precludes former defense lawyers from responding because "general" allegations are outside the scope of the only potentially applicable self-defense exception.

> Third, comment [25][14] cautions that—
>
> disclosure should be no greater than the lawyer reasonably believes is necessary to vindicate innocence, the disclosure should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it, and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable.

The *Restatement* describes the operative concept as one of "proportionate and restrained use." *Restatement (Third) of the Law Governing Lawyers* §64 cmt. (e) (2000). "The lawyer must reasonably believe that options short of use or disclosure have been exhausted or will be unavailing or that invoking them would substantially prejudice the lawyer's position in the controversy. *Id*.

Courts in other jurisdictions have endorsed the use of protective orders in order to prevent, for example, prosecutors from using information obtained during the adjudication of the IAC claim in a subsequent prosecution. In 2003, the Ninth Circuit affirmed a protective order precluding use of privileged attorney-client materials obtained in discovery for any purpose other than litigating the instant federal habeas petition.

> If a prisoner is successful in persuading a federal court to grant the writ, the court should aim to restore him to the position he would have occupied, had the first trial been constitutionally error-free. Giving the prosecution the advantage of obtaining the defense case file—and possibly even forcing the first lawyer to testify against the client during the second trial—would assuredly not put the parties back at the same starting gate.

*Bittaker v. Woodford*, 331 F.3d 715, 722-23 (9th Cir. 2003) (en banc); *accord United States v. Nicholson*, 611 F.3d 191, 216-217 (4th Cir. 2010) (applying *Bittaker* to preclude use at resentencing of privileged material revealed in connection with the successful IAC claim).[15]

In the first hypothetical above, for example, a client convicted of robbery has alleged that the lawyer failed to interview and subpoena a key witness named X. The lawyer's case file has information about X. It also has information from the client that links the client to an uncharged murder that is unrelated to the robbery conviction that the client is attacking with the IAC Claim. Obviously, disclosure of the incriminating evidence as to the murder is not required to vindicate the lawyer's handling of matters involving witness X. That alone takes the murder evidence outside the second self-defense exception of Rule 1.6(e)(3).

The self-defense exception in Rule 1.6(e)(3) does not require defense lawyers to share information with prosecutors when an

IAC claim is filed. Instead it gives lawyers discretion ("may use or reveal") to share information voluntarily, but only "to the extent reasonably necessary to respond to specific allegations by the client concerning the lawyer's representation of the client." Moreover, even where disclosure of protected information is authorized, the defense lawyer should seek to protect the information against use against the former client in other contexts to the fullest extent practicable. D.C. Rule 1.6, cmt. [25]; *accord Nicholson*, 611 F.3d 191; *Bittaker*, 331 F.3d 715. In the context of an IAC proceeding, a lawyer can seek this protection from the tribunal hearing the case, through a litigated motion or a so-ordered stipulation between counsel. Alternatively, the lawyer might make the disclosure extrajudicially after obtaining the prosecutor's binding written agreement that the government will not use the information in other contexts. The former lawyer also could work with the former client or the former client's new counsel in deciding how to proceed.

Further, there is case law that a client can prevent the disclosure of protected information by abandoning the claim that would otherwise waive the privilege. *Bittaker*, 331 F.3d at 721. To the extent that the IAC claim seems likely to lead to the prosecution's discovery of information incriminating the former client in other matters, a call to the client's new defense lawyer may lead to an abandonment of the IAC claim without the need for any disclosure to prosecutors. *See Dunlap v. United States*, 2011 WL 2693915, at *3 (D.S.C. July 12, 2011) (ordering the IAC petitioner to choose between (1) preserving the attorney-client privilege by abandoning or withdrawing the IAC claims, or (2) continuing to pursue the IAC claims and waiving privilege, so as to require his former counsel to respond to the allegations via an affidavit and, potentially, in live testimony if an evidentiary hearing takes place).**[16]**

The ABA Opinion concluded that "it is highly unlikely that a disclosure in response to a prosecution request, prior to a court-supervised response by way of testimony or otherwise, will be justifiable." Although we view the ABA's approach as providing a safe harbor within which a defense attorney's conduct cannot reasonably be questioned later, we do not share the Opinion's view that extrajudicial disclosure rarely will be justifiable. Under D.C. Rule 1.6(e)(3), a former defense lawyer may share information with prosecutors "to the extent reasonably necessary to respond to specific allegations by the client concerning the lawyer's representation of the client." The text of the rule does not require a court order to make the disclosures that the rule permits. Lawyers who are uncertain about whether disclosure of confidential information falls within the exception, however, should consider seeking a ruling from the court on the applicability of the exception. Obtaining such review will be prudent in close cases.

In the second hypothetical, the former client files an IAC claim alleging that the lawyer violated the client's direction to file an appeal from the fact that the sentence was too long. There, the lawyer may choose to share with prosecutors the reason no appeal was filed: that, in fact, the client never instructed the lawyer to file the appeal; that the lawyer had discussed the possibility of an appeal with the client and the lawyer told the client there was no basis for doing so because the client had received the sentence he agreed to in the plea bargain; and that the lawyer also had sent the client a one-sentence letter stating, "per our conversation today, I will not be filing an appeal in your case."

The defense lawyer here may correctly conclude that sharing this information and the "no appeal" letter with the prosecutor is reasonably necessary to respond to the IAC claims because:

- The alleged failure to follow client's instruction to file an appeal, if true, involves professional misconduct by the lawyer.
- The lawyer is the only witness who can confirm or rebut the client's allegation that he told the lawyer to file the appeal.**[17]**
- The potential disclosure relates only to the former client's specific allegations about the failure to file an appeal.
- No other portion of the file will be disclosed to prosecutors.

The lawyer is not required to await a subpoena or court order before disclosing information to the prosecutor, for the D.C. Rule contemplates disclosure under the second exception in paragraph (e)(3) even where no proceeding is under way or even contemplated.**[18]** Moreover, the lawyer does not need to seek a protective order or an agreement with the prosecutors limiting use and disclosure of the protected information to the IAC proceeding because the reasons for not filing the appeal will have no foreseeable impact on the former client in any other proceeding.

In the third hypothetical, the former client's allegations are so outrageous, far-fetched, and unsubstantiated that the lawyer is certain that neither the judge nor any rational reader will believe them. The ethically correct initial response to such a claim might well be no response at all.**[19]** That initial assessment can, of course, be revisited later if the allegations gain some unexpected traction. If the court surprises the lawyer by ordering an evidentiary hearing, for example, the lawyer would want to reconsider whether and how much to respond.

The fourth hypothetical is more difficult. In that hypothetical, the lawyer declined to call witness X in the robbery trial because (1) X's testimony was cumulative of that provided by other witnesses, and (2) the expected cross-examination of X with respect to her relationship with the client was likely to lead prosecutors to evidence of the former client's involvement in an unsolved murder.

The fact that X's testimony was cumulative of that provided by others may itself be dispositive of the IAC claim.**[20]** In this case, however, the lawyer cannot truthfully suggest that this was her only reason for not calling X. An answer that goes into the other reason will implicate the former client in a crime unrelated to the conviction being attacked through the IAC claim. A suggestion that there was another reason may lead prosecutors down a path that will cause collateral harm to the former client in a later proceeding unconnected with the IAC claim.**[21]** For that reason alone, the lawyer may choose not to disclose the information pursuant to the self-defense exception.

Cognizant of the fact that the District of Columbia has disciplined lawyers for disclosing protected information in the context of a judicial proceeding but outside the limits of a Rule 1.6 exception, *e.g., In re Ponds*, 876 A.2d 636 (D.C. 2005) (withdrawal motion); *In re Gonzalez*, 773 A.2d 1026 (D.C. 2001) (same), the lawyer who finds herself in this situation may well find it prudent to seek the court's guidance. The

lawyer may also want to seek a protective order to confine the use of any disclosed information to the IAC proceeding.

Although the District of Columbia's self-defense exception does not require a court order, in close cases—particularly where, as in an IAC proceeding, a tribunal is readily available—the lawyer may find it prudent to seek a judicial determination of the limits of the exception.[22] We urge careful and dispassionate thought.[23] Lawyers who react quickly to an IAC claim may later find themselves facing discipline for having said too much too soon.

**Conclusion**

D.C. Rule 1.6(e)(3) permits a defense lawyer whose conduct has been placed in issue by a former client's ineffective assistance of counsel claim to make, without judicial approval or supervision, such disclosures of information protected by Rule 1.6 as are reasonably necessary to respond to the client's specific allegations about the lawyer's performance. Even so, a lawyer should reflect before making disclosures of protected information to prosecutors, courts, or others. A lawyer's confidentiality obligations to her former client are broader than the attorney-client privilege. Although the former client's claim likely waives the evidentiary privilege, that alone does not eliminate the broader confidentiality obligation owed under Rule 1.6. Nor does the limited "self-defense" exception to confidentiality in Rule 1.6(e)(3) open the door to unlimited disclosures to prosecutors, courts or others of protected information. The rule allows a lawyer to disclose protected information only to the extent "reasonably necessary" to respond to "specific allegations" by the former client. Reasonableness is a fact-bound issue about which others may later disagree. Lawyers who are uncertain about the permissibility of disclosing protected information in response to an IAC claim should consider seeking independent advice or judicial approval of the disclosure.

Published: January 2013

[1] An IAC claim typically is made by a former client of the accused lawyer. If the lawyer is still representing the client, the resulting conflict of interest likely will require the lawyer to withdraw from the representation. *In re Ponds*, 888 A.2d 234, 239 (D.C. 2005) (applying Maryland Rules of Professional Conduct pursuant to choice of law provisions of D.C. Rule 8.5 (b)(1)).

[2] This opinion uses the phrase "protected information" to describe the information protected from voluntary disclosure by Rule 1.6. Other short-hand phrases were considered but rejected because of a risk of confusion with the "confidence" and "secret" concepts so carefully defined by Rule 1.6.

[3] The incriminating information might have come to the lawyer directly from the former client in a communication protected by the attorney-client privilege. However, the lawyer might also have obtained the information in communications with third parties to which the attorney-client privilege did not apply. Such information might still be protected by the work product doctrine. Even in the absence of an enforceable evidentiary privilege, however, the information would still be protected from voluntary disclosure by the broader confidentiality obligation imposed by Rule 1.6.

[4] Although this Committee does not opine on questions of law

outside the Rules of Professional Conduct, ethical issues rarely arise in a vacuum. Here, as in many cases, the ethics analysis benefits from an understanding of the legal context in which the question arises. The accompanying discussion of ineffective assistance of counsel jurisprudence under the Sixth Amendment reflects the Committee's understanding of relevant law.

[5] *Eldridge v. United States*, 618 A.2d 690, 693 n. 3 (D.C. 1992); *Doughty v. United States*, 574 A.2d 1342, 1343 (D.C. 1990); *see also Bittaker v. Woodford*, 331 F.3d 715, 722 (9th Cir. 2003); *United States v. Wiggins*, 184 F. Supp. 673, 677-78 (D.D.C. 1960).

[6] The former client or any new defense lawyer for the former client will also want information from the lawyer about the conduct at issue in the IAC claim. That lawyer may, after all, end up becoming a witness for the former client and give testimony that helps the former client's allegations of IAC. The analysis that governs the lawyer's ability to talk to the former client or the former client's new counsel is quite different from the analysis that governs the lawyer's ability to share information about the representation with prosecutors.

[7] In some cases, the rejection of a post-conviction IAC claim may collaterally estop a later malpractice claim against the attorney for the same alleged conduct. *Johnson v. Sullivan*, 748 F.Supp. 2d 1, 9-12 (D.D.C. 2010); *Smith v. Public Defender Serv.*, 686 A.2d 210, 211-12 (D.C. 1996). *But see Brown v. Jonz,*572A.2d455, 457 n.7 (D.C. 1990).

[8] Model Rule 1.6(b)(5) provides that "[a] lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary… to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client."

[9] The ABA Opinion found that the other two clauses of Model Rule 1.6(b)(5) did not apply. As to the first clause, an IAC claim is not a legal "controversy" between the lawyer and the client. ABA Opinion, at 3-4. As to the second, an IAC claim is neither a "criminal charge" nor a "civil claim" against which the lawyer must defend. *Id.* at 4.

[10] This is one area where D.C. Rule 1.6 differs from Model Rule 1.6. The former requires confidentiality as to any "confidence" or "secret," while the latter compels confidentiality as to "information relating to the representation of a client." In the IAC context, however, this appears to be a distinction without a difference.

[11] The Committee has not found any cases or bar opinions holding that a defense attorney relying on the self-defense exception disclosed more than was reasonably necessary in response to an IAC claim. This, of course, does not mean that such overly broad disclosures do not occur or that they will go unsanctioned if they do.

[12] Because the lawyer's conduct was before a Virginia court, the D.C. Court of Appeals was applying Virginia's confidentiality

Rule. *See* D.C. Rule 8.5(b)(1) (choice-of-law rule). Virginia's confidentiality rule, however, shared the "confidences and secrets" approach of D.C. Rule 1.6. *In re Gonzalez*, 773 A.2d at 1029.

**[13]** The permissive disclosure exception in D.C. Rule 1.6(e)(3) differs from its Model Rule counterpart in three respects. D.C. Rule 1.6(e)(3) applies only to "specific" allegations, and only when made "by the client." By contrast, Model Rule 1.6(b)(5) does not condition disclosure on the allegations being "specific," and does not require that the "allegations" come from the lawyer's client. Finally, D.C. Rule 1.6(e)(3), unlike Model Rule 1.6(b)(5), does not require that the disclosure be made in the context of a "proceeding."

**[14]** Comment [25] to D.C. Rule 1.6 is somewhat confusing because it conflates the two exceptions of subsection (e)(3). For example, the first sentence discusses "specific allegations," a phrase that appears only in the second exception, and "establish[ing] a defense," a phrase that appears only in the first exception. In any event, it is "the text of each Rule [that] is controlling"; the comments are only "guides to interpretation." D.C. Rules, Scope [6].

**[15]** *Accord Restatement (Third) of the Law Governing Lawyers* §64 cmt. (e) (2000) ("When feasible, the lawyer must also invoke protective orders, submissions under seal, and similar procedures to limit the extent to which the information is disseminated.").

**[16]** *Dunlap* warned the petitioner "that withdrawing the pending § 2255 motion *may* foreclose his ability to pursue these same claims at a later date as it is a possibility that a future § 2255 could be considered untimely or successive in nature." *Id.* (citing 28 U.S.C. §2255(f) & (h).

**[17]** The fact that the information may be available elsewhere does not necessarily preclude disclosure by the lawyer. The criterion in all instances is whether disclosure is "reasonably necessary to respond to specific allegations by the client concerning the lawyer's representation of the client." D.C. Rule 1.6(e)(3).

**[18]** *See supra* note 13.

**[19]** "The concept of necessity precludes disclosure in responding to casual charges, such as comments not likely to be taken seriously by others." *Restatement (Third) of the Law Governing Lawyers* §64 cmt. (e) (2000).

**[20]** If that were all that there was—*e.g.*, that the lawyer chose not to call X because X's testimony would be duplicative of the testimony of other witnesses—disclosure of that reasoning might well be within the self-defense exception in many IAC cases.

**[21]** The former client's IAC claim will, of course, be harmed by any contrary response by the accused lawyer. Rule 1.6(e)(3) permits such harm to the former client by authorizing the lawyer to respond to the claim. However, cases like *Bittaker v. Woodford* and *United States v. Nicholson* take steps to prevent collateral harm to the client by confining use of the disclosed information to the IAC proceeding itself and by prohibiting use of that information against the former client in any subsequent

retrial if the IAC claim is successful. Comment [25] to Rule 1.6 urging lawyers to seek "appropriate protective orders or other arrangements… to the fullest extent practicable" also seems directed at the prevention or mitigation of collateral harm. It should be noted, however, that the District of Columbia's Rule 1.6(e)(3) allows a lawyer in appropriate cases to respond to specific allegations by a former client even if those allegations are not made in the context of a pending or threatened proceeding. If it really is reasonably necessary for the lawyer to make a public response to a specific public allegation by a former client, protective orders or similar arrangements may not be available or practicable. In that situation, the possibility of harm to the client, collateral or otherwise, cannot preclude a self-defense disclosure otherwise authorized by Rule 1.6(e)(3).

**[22]** The confidentiality obligation imposed by Rule 1.6 applies equally to disclosures made to the court. Lawyers need to remember that in deciding what to say to the court while seeking a judicial determination.

**[23]** The most important thing is to stop and think before making any disclosures. In *Nesse v. Shaw Pittman*, a lawyer's attempt to use the self-defense exception to justify an exchange of information with opposing counsel was undermined by the court's finding of "absolutely no indication that [the lawyer] was aware of that exception and explicitly relied upon it when he spoke to [opposing counsel]." 202 F.R.D. 344, 355 (D.D.C. 2001). "Given the [the lawyer's] vulnerable position, and the demand for information to be used against his former client, the first thing he should have done upon hearing from [opposing counsel] was to seek independent advice. Accepting [the law firm's] post hoc rationalization of his behavior now is the surest way to discourage lawyers from seeking such advice; lawyers would be encouraged to make disclosures to their former client's opponents without getting independent advice as to whether to do it in the hope that, after the disclosure, a second lawyer will come up with an ethical justification that never occurred to them in the first place." *Id*. That case did not involve an IAC claim. This Committee does not believe that independent professional advice is required before a lawyer who is accused of IAC can disclose responsive information to prosecutors. The lawyer needs to recognize the issue and think it through.



The District of Columbia Bar | 1101 K Street NW, Suite 200 | Washington DC 20005 | 202-737-4700 | **Hours/Directions/Parking**
©2013 D.C. Bar **Restrictions on Use** All rights reserved. **Mobile site** | **Privacy Policy** | **Accessibility Policy** | **Disclaimer** | **Author guidelines**