## UNITED STATES DISTRICT COURT
## DISTRICT OF RHODE ISLAND

| | |
|---|---|
| _____ ) | |
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | **Criminal No. 1:11-cr-00186-S** |
| ) | |
| **JOSEPH CARAMADRE, and** ) | |
| **RAYMOUR RADHAKRISHNAN** ) | |
| _____ ) | |

## DEFENDANT JOSEPH CARAMADRE'S
## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF HIS
## MOTION TO WITHDRAW HIS GUILTY PLEA

Mr. Caramadre's motion to withdraw his guilty plea is predicated on a perfect storm of circumstances, which, individually and certainly in the aggregate, constitute "fair and just" reason for withdrawal of the plea. Fed. R. Crim. P. 11 (d)(2)(B). These reasons include (1) that Mr. Caramadre was not competent to plead at the time of his plea colloquy; (2) that the plea was induced on the basis of the ineffective assistance of former counsel, who failed, among other failures, to adequately investigate the case, develop and implement a theory of defense, or conduct any meaningful cross-examination consistent with the theory of defense; (3) that the plea was improperly induced as a result of ambiguous and misleading representation to a mentally impaired client with a backdrop of conflict of interest; (4) that Mr. Caramadre presents strong evidence of actual innocence; (5) that the timing of Mr. Caramadre's intention to seek to withdraw the plea demonstrates that it was entered in haste and confusion; and (6) that the Rule 11 colloquy was constitutionally infirm, in that the plea was not entered knowingly and voluntarily.

1

### *Mr. Caramadre's Competence To Plead*

In its response to Mr. Caramadre's memorandum in support of his motion to withdraw his guilty plea (hereinafter "Def. Memo"), the Government maintains that the evidence submitted did not demonstrate the he was mentally incompetent to plead guilty, as it did not "indicate that Caramadre suffered from any type of psychosis at the time of the Rule 11 hearing, which would render him incapable of making a knowing and voluntary decision to plead guilty." Government's Opposition to Defendant Caramadre's Motion to Withdraw His Guilty Plea (hereinafter Gov. Opp. at 14). The Government's contention misses the point. One need not be formally diagnosed as suffering from "psychosis" in order to be mentally impaired to the point that it would affect his ability to knowingly and voluntarily enter a plea. Moreover, Mr. Caramadre's mental impairment constitutes only one factor in a maelstrom of factors which have combined to render the plea defective.

Furthermore, in its assessment of the medical affidavits provided with Mr. Caramadre's motion, the Government conveniently ignores the conclusion of Dr. James Greer, which states that:

> Given that those providing mental health services to him at this time indicate his decision was shocking and out of character, the well-documented and longstanding nature of his depression and the acute situational stress associated with his reports of increasing disorganization and impairment of autonomous ego functions, such as concentration and memory, it is reasonable to conclude based on this information that he was not capable of making an informed and considered decision of such magnitude.

See Def. Memo at Exhibit F, pg. 4.

2

In addition, an updated affidavit of Dr. Caron Zlotnick, Ph.D, filed with this memorandum, adds to her earlier affidavit her own conclusion that "since Mr. Caramadre suffers from major depression which can be severe at times, it is possible that his negative affective state during the trial period compromised his ability to make a well thought out decision regarding whether to enter a guilty plea." See Exhibit A, Updated Affidavit of Dr. Caron Zlotnick, Ph.D.

The Government further argues that Mrs. Caramadre's breakdown does not provide a justification for the withdrawal of the plea. As discussed, Mr. Caramadre's motion does not seek to rely on this factor alone as a legal basis for withdrawal of the plea. Clearly, his wife's breakdown added to Mr. Caramadre's own mental impairment, and was therefore a significant factor in the analysis of the voluntariness of his plea.

Mr. Caramadre's ineffective assistance of counsel claim was in part based on his realization that his attorneys had provided deficient representation. Specifically, his attorneys failed to investigate and interview even a single government witness, and engaged in almost no meaningful cross-examination of the witnesses presented at trial; and that these errors were exacerbated by the decision to defer an opening statement. This deficient performance completely devastated Mr. Caramadre and contributed greatly to his defective plea.

It is inconceivable that in a case in which the Government expected to present 100 witnesses, that Mr. Caramadre's lawyers did not interview a single witness. Mr. Caramadre had made a specific request of his attorneys to hire an investigator to investigate the case and interview witnesses. On information and belief, no action was taken in regard to Mr. Caramadre's request, no investigation was undertaken, and no

witnesses were interviewed. See Exhibit B, Email to Attorney Lepizzera from Joseph Caramadre. Indeed, in conjunction with  this motion, one witness who testified before the Grand Jury and was expected to be a Government witness at trial, was investigated and has provided an affidavit in which she swears that she was subjected to strong-arm tactics on the part of the Government, including an attempt "to put words in my mouth"; that she does "not feel like [she] has been made a victim in any way and [] suffered no damage or financial loss as a result of Mr. Caramadre's investment program." See Exhibit C, Affidavit of Jennifer Duarte. One is left to wonder how many other Government witnesses would have responded in similar fashion had Mr. Caramadre's former attorneys bothered to even attempt to interview any witnesses. As discussed in Mr. Caramadre's initial memorandum in support of his motion to withdraw his guilty plea, such an abject failure to investigate clearly constitutes ineffective assistance of counsel.

Similarly, defense counsel's complete failure to conduct any meaningful cross-examination served to compound the ineffective assistance. In his opening memorandum, Mr. Caramadre contrasted the 90 pages of cross-examination conducted by Mr. Pine and Mr. Flanders in the (video) deposition of Edwin Rodriguez with the one and one-half pages of cross-examination of Mr. Rodriguez at trial. The Government found this contrast to be ironic, noting that Mr. Caramadre had sought to "suppress the testimony of Wiley and other terminally ill deponents, arguing that Flanders and Pine had no meaningful ability to cross-examine." Gov. Opp. at 21. The Government misses the salient point; even without a meaningful ability to cross-examine, Attorneys Flanders and Pine managed to do so. In contrast, Attorney Lepizzera, who did have the opportunity to cross-examine Mr. Rodriguez at trial, utterly failed to do so.

In addition, Mr. Caramadre's original memo criticized Mr. Lepizzera's failure to cross-examine Kenneth Blowers who, *inter alia*, testified that his wife had undergone a "lobotomy", when in fact she had undergone a lobectomy, a completely different and far less serious procedure. The Government attempts to justify this failure by characterizing Mr. Lepizzera's inaction as a "tactical decision not to hammer a widower" about his understanding of his wife's condition. Gov. Opp. at 21. While it appears that it was the Government's *modus operandi* to "hammer" its own witnesses in the investigation and prosecution of this case, see Exhibit C, it goes without saying (or should go without saying) that a competent cross-examination can be conducted by a professional attorney without resorting to "hammering." Moreover, Mr. Lepizzera's "cross-examination" of this witness completely ignored the multiple contradictions between his testimony at trial and his testimony at the grand jury.

### Mr. Traini's Conflict Of Interest

In his opening memorandum, Mr. Caramadre argued that Attorney Traini had an unwaivable conflict of interest in that his fee agreement, which purportedly called for a "non-refundable flat fee in the amount of $450,000.00", contained a clause which stated that in the event that the "proceedings terminated prior to the estimated completion of trial (through February 2013), whether by plea or for any other reason", the balance of the fee would be "deemed earned, and will be payable to Attorney Traini forthwith." See Exhibit D, Fee Agreement for Attorney Anthony M. Traini. In its response, the Government found this claim to be "astounding" in light of the fact that Mr. Caramadre had made a valid waiver of any conflict of interest in regard to Attorney Traini's

representation of Government witness, Edward Maggiacomo, an unindicted co-conspirator who had entered into a non-prosecution agreement with the Government.

The Government's position is, at the very least, ironic, in light of the fact that they themselves sought to disqualify Attorney Traini, arguing to this Court that "the potential conflict of interest is so serious that it is unwaivable." See Motion of United States to Disqualify Counsel Based on Conflict of Interest (hereinafter "Gov. Disq.") at 5. Indeed, the Government argued that to permit Attorney Traini to represent Mr. Caramadre "would simply lay the groundwork for a future claim by Caramadre that he was denied effective assistance of counsel due to Traini's representation of Maggiacomo." See Gov. Disq. at 13. In any event, the particular conflict of interest at issue is the result primarily of Attorney Traini's "non-refundable fee agreement", which obviously provides tremendous financial incentive for Attorney Traini to induce Mr. Caramadre to plead guilty.[1] This particular conflict appears to have been unanticipated by the parties in the waiver proceedings.

### *Evidence of Innocence*

The Government's opposition suggests that Mr. Caramadre's claim of innocence "has no credibility", characterizing his four year history of maintaining his innocence, and unequivocally refusing to consider a plea agreement, as "loud and frequent ballyhoos of innocence." See Gov. Opp. at 26. In so concluding, however, the Government completely ignores the fact that Mr. Caramadre risks a prosecution for perjury, as well as

---

[1] There is some question as to the propriety of the fee agreement itself, as it is not signed by Mr. Caramadre, but appears to have been drafted by Attorney Traini and Mr. Lepizzera, purportedly as a "duly authorized" agent for Mr. Caramadre. It does not bear the signature of Mr. Caramadre, who will testify that he did not authorize such a fee agreement.

his loss of a downward adjustment for acceptance of responsibility. Perhaps the most important evidence of innocence is that which has been filed under seal.

### Timing Of Mr. Caramadre's Request

The Government's memo states that Mr. Caramadre's affidavit "admits" that it was not until December 20, 2012 that he raised the issue of withdrawing his plea with his attorneys, demanding put his options in writing. While the December 20 date was the first time that he formally requested that his options be reduced to writing, he actually notified Mr. Lepizzera verbally of his intention as early as December 8, 2012. In addition, on December 10, Mr. Caramadre contacted Attorney Robert Flanders for a referral to an attorney who could prosecute a motion to withdraw his plea. See Exhibit E, December 12, 2013 Email from Attorney Robert Flanders to Joseph Caramadre. Attorney Flanders responded with a referral on December 12. Moreover, Mr. Caramadre will testify that he first decided to pursue such action within days of having tenderd his plea.

### Plea Agreement

The Government's opposition opines that the fact that Mr. Caramadre pleaded pursuant to a plea agreement "militates against allowing the defendant to withdraw his plea." Gov. Opp. at 27. In its memo, the Government repeatedly states that the statement of facts incorporated into the fee agreement was drafted and negotiated by Mr. Caramadre. See Gov. Opp. at 4 ("the agreed upon facts were repeatedly revised to accommodate changes insisted upon by Caramadre"); at 13 ("most notable are the detailed facts he painstakingly negotiated . . ."); and at 27 ("he negotiated the statement of facts supporting the plea, and swore to them under oath").

In fact, Mr. Caramadre himself did not even see the statement of facts until the Sunday night before his Monday morning plea. In an email from Attorney Lepizzera to AUSA Vilker, Mr. Lepizzera informs Mr. Vilker of his belief that the statement of facts is too broad. In his response to the email, AUSA Vilker informed Mr. Lepizzera that:

> There's not going to be much wiggle room on this Mike. This is a culmination of input from my supervisors. If he's not willing to admit these facts, then we should let the jury decide. If you have some specific changes here and there you want, then we will consider those requests. But by in large, this is what the Statement of Facts will be.

See Exhibit F, Saturday, November 17, 2012 Emails Between Attorney Lepizzera and AUSA Vilker. In fact, the only substantive change to the plea agreement that was suggested by Mr. Caramadre was a request to remove the name of his brother-in-law, and Aegon Insurance, from the statement of facts. He had no other input in the drafting of the statement of facts. Under these circumstances, the existence of a plea agreement militates little, if at all, against withdrawal of the plea.

### *The Rule 11 Colloquoy*

In his motion, Mr. Caramadre maintained that the Rule 11 hearing was defective as a result of the Court's failure to explore questions raised by Mr. Caramadre's acknowledged use of multiple prescription medications. See United States v. Parra, 936 F.2d 588 (1st Cir. 1991); see Memorandum of Law in Support of Defendant Joseph Caramadre's Motion to Withdraw Guilty Plea, 29-34. In response, the Government argues that the Court is entitled to rely on the representations Mr. Caramadre made in the course of the plea colloquy. A court is entitled to give weight to a Defendant's statements at his change of plea colloquy ***absent a good reason for disregarding them***. United States v. Miranda, 654 F.3d 130, 138 (1st Cir. 2011) (emphasis added), quoting United

States v. Torres-Rosario, 447 F.3d 61, 67 (1st Cir. 2006). A "defendant's own assurances in open court [regarding emotional or mental impairment] at the time of the plea may be given less weight if later evidence to the contrary emerges." Miranda, 654 at 138, quoting United States v. Padilla-Galarza, 351 F.3d 594, 598 (1st Cir. 2013).

In this case, abundant reason has been given to disregard Mr. Caramadre's responses at the plea colloquy. His severe depression, the use of multiple medications to treat his depression, the effect on him of his wife's breakdown, and the realization that his attorneys were providing no resistance to the Government's case, in the aggregate, induced a plea which was involuntary. Pursuant to Parra, it is incumbent upon the Court, in light of its awareness of Mr. Caramadre's medical history, to conduct a far more searching inquiry into his ability to knowingly and voluntarily enter a guilty plea. The failure to do so constitutes a Rule 11 violation, which itself warrants the withdrawal of his plea.

Perhaps most importantly, is the fact that Mr. Caramadre made it clear to his attorneys, prior to and at the time that he tendered his plea, that in order to plead guilty he would have to lie to the Court regarding his admission to criminal conduct. At all times prior to the tender of his plea, Mr. Caramadre denied any criminal conduct, and has admitted to lying at the plea colloquy in order for the Court to accept the plea. There is no dispute that Mr. Caramadre informed his attorneys that the only way he could agree to the criminal conduct, as outlined in the statement of facts, was to lie.

"The First Circuit has stated that 'whether a defendant has pled intelligently and voluntarily, depends upon the competence of counsel's advice' and 'ineffective assistance of counsel, is . . . a fair and just reason' supporting withdrawal." United States

v.  Desimone, 736 F.Supp. 2d 477, at 485-86 (D.C. RI 2010), quoting United States v. Ramos, 810 F.2d 308, 313 (1st Cir. 1987). Mr. Caramadre will testify that despite making former counsel aware of the circumstance, he was led to believe that he could indeed plead guilty despite his claims of actual innocence. Mr. Caramadre will testify that Attorney Traini advised him (through some type of fanciful contrivance) that at the exact moment that he pleaded guilty, he would in fact be guilty and therefore could tender his plea under these circumstances. Nor was this the only misadvice Attorney Traini gave Mr. Caramadre in an attempt to induce his plea. See Affidavit of Joseph Caramadre (factually misadvising Mr. Caramadre that the longer the trial went on, the longer Mr. Caramadre's sentence would be). These circumstances alone warrant the grant of the motion to withdraw guilty plea.

## CONCLUSION

For the foregoing reasons, this Court should grant Mr. Caramadre's motion to withdraw his guilty plea.

Respectfully submitted,
Joseph Caramadre,
By his attorneys,


/s/ Randy Olen
_____
Randy Olen, Esq.
478A Broadway
Providence, RI 02909
(401) 274-1400
(401) 274-2480 (fax)


/s/ Robert D. Watt, Jr.
_____
Robert D. Watt, Jr., Esq.
84 Ship Street
Providence, RI 02903
(401) 273-0484
(401) 453-4906 (fax)


## **CERTIFICATION**

I hereby certify that on this 23rd day of April, 2013, I caused to be delivered, via electronic delivery, the within ***Supplemental Memorandum of Law*** to:

John P. McAdams, Esq.                Lee Vilker, Esq.
U.S. Attorney's Office               U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor        50 Kennedy Plaza, 8th Floor
Providence, RI 02903                 Providence, RI 02903

Olin W. Thompson, Esq.
Federal Defender's Officer
10 Weybosset Street, Suite 300
Providence, RI 02903

                                     /s/ Randy Olen
                                     _____

# EXHIBIT

# A

## UPDATED AFFIDAVIT

To Whom It May Concern:

I wish to update my affidavit on Mr. Joseph Caramadre. Since Mr. Caramadre suffers from major depression which can be severe at times, it is possible that his negative affective state during the trial period compromised his ability to make a well thought out decision regarding whether to enter a guilty plea.

I hereby swear that the above is true and correct to the best of my knowledge and belief under the penalty of perjury.

_Caron Zlotnick_
SIGNATURE

_3/22/13_
Date

_Caron Zlotnick, Ph.D_
Printed Name

# EXHIBIT B

## Joseph Caramadre

| | |
|---|---|
| **From:** | Joseph Caramadre |
| **Sent:** | Friday, October 05, 2012 6:20 PM |
| **To:** | Lepizzera, Michael |
| **Cc:** | P.C. Anthony M. Traini; DeMello, Scott; Joseph Caramadre |
| **Subject:** | What happened in chambers conference |

Can anybody please respond or call me at 401-573-1162 to inform me as to what we learned at this afternoon's conference.
Thank you, Joe

On Oct 5, 2012, at 12:39 PM, "Lepizzera, Michael" <mlepizzera@LepLap.com> wrote:

> We will discuss this afternoon after the conference.
>
> Michael J. Lepizzera, Jr.
> Partner
> Email mlepizzera@leplap.com
>
> 117 Metro Center Blvd., Suite 2001
> Warwick, RI 02886
>
> Phone 401.739.7397
> Toll Free 888.313.2345
> Fax 401-384-6950
>
>
>
>
>
> NOTICE: The information contained in this transmission is privileged, confidential, and intended only for the use of the individual or entity named above. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this transmission is strictly prohibited. If you have received this transmission in error, please notify the sender by e-mail and destroy the original message and all copies. Thank you.
>
>
> -----Original Message-----
> From: Joseph Caramadre [mailto:Joe@eprworld.com]
> Sent: Friday, October 05, 2012 11:16 AM
> To: Lepizzera, Michael; P.C. Anthony M. Traini; DeMello, Scott
> Cc: Joe Caramadre
> Subject: Retain defense investigators
>
> Mike
> Please let me know if you have spoken to Tony about getting a private investigator.  I believe it is something we must get on as soon as possible.
> Let me know.  Joe

1

# EXHIBIT C

# **AFFIDAVIT**

I, Jennifer Duarte, D..O.B. April 9, 1979 , having been duly sworn upon oath, do hereby depose and say:

1.       I was called as a witness before the Grand Jury in connection with the case of United States v. Joseph Caramadre, No. 1:11-cr-00186-S.

2.       My husband, Donald Duarte, was an annuitant in certain investments made in association with Joseph Caramadre.

3.       I was first contacted by United States Postal Inspector Stephen E. Souza in early 2010. Mr. Souza repeatedly contacted me by telephone, asking if I would agree to be interviewed regarding an investigation involving Joseph Caramadre and Raymour Radhakrishnan. I repeatedly informed him that I was not interested in meeting with him, and would not voluntarily do so. I was made to believe that I had no choice but to meet with him.

4.       On April 29, 2010, I met with Postal Inspector Souza and FBI Agent Pamela McDaid in Barrington, Rhode Island. I met with them because they led me to believe that I was required to do so. At this interview, the agents led me to believe that Mr. Caramadre was a criminal, and had improperly used my husband's name to make millions of dollars in an unlawful investment scheme.

5.       I informed the agents that Mr. Caramadre was a close friend of my family, that I trusted him implicitly, and that I did not believe that he had done anything improper with respect to the opening of annuities or bond accounts with my husband.

6.       Prior to my husband signing the account opening documents, I spoke to Mr. Caramadre regarding the use of my husband's name. I repeatedly told the investigators that I did not have a present recollection of exactly what Mr. Caramadre had told my husband and myself regarding the particulars of these investments, but I had no objection to having my husband participate in these investments.  In response to these repeated statements, the investigators attempted to put words in my mouth, suggesting that he had

been less than forthcoming regarding the details of these investments, and was in fact involved in criminal activity.

7.      On the day that Mr. Maggiacomo came to my home to execute the documents for these investments, I was busy caring for my terminally ill husband, was pregnant, and therefore did not remember the particulars of what Mr. Maggiacomo discussed regarding these investments. I do know that my husband spoke with Mr. Maggiacomo at some length regarding this program.

8.      At all times in my meetings with these Government agents, I felt as if I myself was being treated like a criminal. I repeatedly told the agents that I did not appreciate being "drilled", and having words put into my mouth. When I told them that I had no interest in cooperating in any Grand Jury proceeding or prosecution of Mr. Caramadre, I was told that I had no choice and would have to appear subject to a subpoena.

9.      I do not feel like I have been made a victim in any way and I suffered no damages or financial loss as a result of Mr. Caramadre's investment program, notwithstanding the Government agent's attempts at convincing me that I was victimized by Mr. Caramadre.

10.     Mr. Caramadre provided us with a gift of $5,000.00, which we greatly appreciated then and now. I advised the Government agents that this was a gift, for the simple reason that it was a gift. I also referred my father-in-law to Mr. Caramadre, who also received a $5,000.00 gift, even though he was not used in any investment. I do not believe that Mr. Caramadre engaged in any conduct in connection with me or my husband, which was in any way immoral, improper, or illegal.

## VERIFICATION

I hereby swear that the above declaration is true and correct to the best of my

knowledge and belief, under the penalty for perjury.

Jennifer Duarte

Witness: _____

Date: _4/10/13_

# EXHIBIT
# D

# ANTHONY M. TRAINI, P.C.
## ATTORNEY AT LAW

56 PINE STREET - SUITE 200 • PROVIDENCE, RI 02903-2819 • TELEPHONE (401) 621-4700 • FAX (401) 621-5888
E-MAIL: amt@atrainilaw.com

21 June 2012

Michael J. Lepizzera, Jr., Esquire
LEPIZZERA & LAPROCINA, COUNSELORS AT LAW, LTD.
117 Metro Center Boulevard - 2001
Warwick, RI 02886-1774

Re:     <u>United States v. Joseph Caramadre</u>
        United States District Court, District of Rhode Island, Cr. No. 11-186-S

Dear Michael:

Pursuant to our multiple meetings and conversations, and specifically including our meeting in
your office on June 20, 2012, and consistent with the provisions of the Rules of Professional
Conduct (the "Rules"), the purpose of this letter is to confirm my engagement to assist you, at your
request and under your direction, in the performance of legal services for your client, Joseph
Caramadre ("Mr. Caramadre"), in the above matter. This engagement letter is addressed to you as
Mr. Caramadre's authorized legal representative in this matter, and you execute it representing that
you are authorized to do so.

### SCOPE OF WORK

My work may include, without limitation, reviewing, preparing or amending documents;
communications with you and others, including other co-counsel and any other counsel (for other
parties or non-parties) involved in this matter; consultation with legal and forensic professionals,
as well as others either of us may deem appropriate or necessary to the representation of Mr.
Caramadre in this matter; engaging in and responding to pleadings and discovery matters;
preparing and arguing appropriate motions; correspondence with the court and other counsel, as
well as with other individuals, including without limitation any experts; court appearances as
necessary for hearings, trial, and other related legal proceedings. We have agreed that my
representation commenced on June 14, 2012 when I entered my appearance in federal court, and
this agreement relates back to that date.

### CONFLICTS OF INTEREST

We are both aware that the government has alleged a potential conflict of interest on my part in this
matter, specifically involving my former representation of Edward Maggiacomo, Jr., who is expected
to be a government witness at trial. As you also know, the government has filed a motion with the
court seeking to disqualify me from participating as co-counsel in Mr. Caramadre's defense as a
result of that representation, and that motion will be heard and decided by Judge Smith at some
time in the near future. We have agreed that it is not necessary to restate the issue here, as it will
be fully described in the motion to disqualify me, in my response to that motion, and in the court's
eventual decision. Neither of us is aware of any other information which would indicate that there
is a conflict of interest which would prevent me from assisting you in Mr. Caramadre's
representation.

Michael J. Lepizzera, Jr., Esq.
21 June 2012
Page Two

## FEES AND COSTS

My fees are based upon my knowledge and experience, as well as the skill and time required to properly handle this matter, the novelty and complexity of the legal issues, the possibility that undertaking this matter will preclude my taking other matters, and the particular circumstances of this case, including without limitation time limitations imposed by you, by the court, or otherwise. Specifically because of the circumstances of this case, including without limitation the time between my engagement and the date certain trial, my particular knowledge of the facts and issues in this case, and as a result of my conversations with you, we have agreed that my fee for the preparation, trial and/or sentencing (if any) proceedings in this case [specifically excluding (a) any appeal of (i) any conviction that may occur and/or (ii) any sentencing matter, and (b) any retrial or resentencing in the United States District Court if the case must be retried, or is remanded for any reason, including without limitation, resentencing], is a non-refundable flat fee in the amount of four hundred fifty thousand ($450,000) dollars, which is currently on deposit in your IOLTA account. We have further agreed that the fee will be paid in installments of fifty thousand ($50,000) dollars per month, on the first day of each month, commencing immediately upon execution and return of this engagement letter (for the payment due June 1, 2012), with successive payments on the first day of the months of July 2012 through February, 2013, except as herein otherwise provided.

For purposes of any fee disputes, claims or accountings made upon early termination of my services, I have accrued and computed my time thus far at the hourly rate of four hundred ($400) dollars, and will continue to do so. You expressly agree, for all purposes, that this is a reasonable hourly rate for my services in this matter. You further understand and agree that if this were an hourly rate case, and for purposes of any computation which may become necessary as a result of the early termination of my services or for any other reason (including any fee dispute absent early termination of my services),  the hourly time charges for my services include, without limitation, court or agency appearances, preparation time, travel time, meetings, conferences, telephone calls, correspondence, consultations and communications with my co-counsel, research, depositions, interviews, reading and review of file materials, waiting time, or for any other event or service.  All activity, including telephone calls and correspondence, are billed at a minimum increment of one-tenth (1/10) hour.

**In the event the court disqualifies me from participating in Mr. Caramadre's representation, my services will be converted to hourly billing as described above, and I will provide you with the time charges for all services rendered from the beginning of this engagement through the date on which I withdraw my appearance, the amount of those charges will be deducted from whatever funds I have received from you in monthly installments, and the balance, if any, will be returned to you; conversely, if those charges exceed the amount I have received, you will be responsible for immediate payment of the balance.**

**It is also expressly agreed and understood that if the proceedings terminate prior to the estimated completion of the trial, whether by plea or for any other reason, whatever portion of the fee remains in your IOLTA account will have been deemed earned, and will be payable to me forthwith.**

Michael J. Lepizzera, Jr., Esq.
21 June 2012
Page Three

In addition to my fees, and whether billed through me or directly by the vendor, you agree to assume and pay all costs and expenses incurred in connection with this matter. These items are billed at my cost without any added overhead or other charges, and include, but are not limited to, such items as travel expenses, sheriffs' fees, expenses of depositions or interviews, transcription of audio materials, fees and expenses for investigation, expert consultations, reports, and testimony, long-distance telephone and fax charges, courier delivery expenses, outside professional copying costs, and other incidental expenses. (I do not bill for minor out-of-pocket costs for such items as in-house photocopies, regular mail postage, local telephone calls or faxes, or items of a similar, minor nature). I will obtain your prior approval before incurring any individual expense in excess of five thousand ($5,000) dollars.

I will also determine the extent to which I require that certain legal or other services be performed by other individuals with whom I may associate for any purpose I deem necessary, which may include co-counsel, paralegal assistance, etc., and these individuals will bill me for their time as expense items, and these expense items will be reflected on my invoices to you at their cost to me. No attorney/paralegal providing any legal/paralegal services will do so at an hourly rate in excess of my hourly rate without your express consent. You agree that upon receipt of any invoice or advanced expense item, you will promptly pay the amount of the invoice or expense item, and that you are responsible for the payment of all fees and expenses pursuant to this agreement.

## TERMINATION OF ENGAGEMENT

You have the right to terminate my engagement at any time; however, you will continue to be responsible for all legal fees and/or expenses already incurred or accrued based on the time then expended, at the agreed hourly rate as stated above, as well as any additional fees or expenses incurred as a result of my inability to disengage from the representation as a result of compliance with any obligation imposed by the Rules or by any court or tribunal. Likewise, I may terminate my assistance to you and representation of Mr. Caramadre if you fail to pay any invoice when rendered, if you, Mr. Caramadre, or any consultant, agent, or employee acting on behalf of you or Mr. Caramadre, misrepresents or fails to disclose any material facts in the course of my representation that, in my sole and exclusive judgment, prevents, impedes or otherwise impairs my participation in the case. Consistent with the Rules, I reserve the right to withdraw from this representation, either with your consent, or for good cause, which would include without limitation any breach of this agreement by you or Mr. Caramadre, and any failure to cooperate with me or to follow my advice on a material matter. In the event that my representation is terminated for any reason prior to conclusion of the matter by judgment of the court, you will be liable to me, at a minimum, for fees based on the agreed hourly rate as stated above, as well as any accrued expenses.

## DISCLAIMER OF GUARANTEE

Nothing in this agreement and nothing in my statements to you can be construed as a promise or guarantee about the outcome of this matter. I will assist you in your representation of Mr. Caramadre to the best of my ability; however, I make no promises or guarantees about the outcome of this matter, and any comments about the outcome are expressions of opinion only.

Michael J. Lepizzera, Jr., Esq.
21 June 2012
Page Four

Please execute this agreement in the place provided below and return to me the original along with the first monthly retainer payment. I have enclosed a return envelope for your convenience. I appreciate the opportunity to be of service to you in this matter, and I look forward to a successful result and a mutually satisfactory relationship.

Very truly yours,

Anthony M. Traini

Accepted and agreed to as of June 20, 2012:

Michael J. Lepizzera, Jr.,        6-29-12
individually and on behalf of           Date
Joseph Caramadre, thereunto
duly authorized

P.378

# EXHIBIT E

## Joseph Caramadre

**From:** Flanders, Robert G. [rflanders@haslaw.com]
**Sent:** Wednesday, December 12, 2012 3:31 PM
**To:** Joseph Caramadre
**Subject:** Please call Lauren Jones at 274-4446, Ext. 11, anytime between 2:30 and 5:00 p.m. today

Joe:

I spoke with Lauren Jones today.  He is busy writing an appellate brief but said he would get back to me on Monday.  I told him that you wanted to consult with him ASAP about your situation and options.  He thought he would be able to see you next week, but will know better on Monday.

Bob

**From:** Falcoa, Donna M.
**Sent:** Wednesday, December 12, 2012 12:43 PM
**To:** Flanders, Robert G.
**Subject:** Please call Lauren Jones at 274-4446, Ext. 11, anytime between 2:30 and 5:00 p.m. today


Donna M. Falcoa
Secretarial Coordinator - Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500 | Providence, RI 02903-2319
p 401.274.2000 x5634 | f 401.277.9600

# EXHIBIT F

Lori Capuano

| | |
|---|---|
| From: | Vilker, Lee (USARI) [Lee.Vilker@usdoj.gov] |
| Sent: | Saturday, November 17, 2012 3:01 PM |
| To: | Lepizzera, Michael; McAdams, John P. (USARI) |
| Subject: | Re: Statement of Facts |

There's not going to be much wiggle room on this Mike. This is a culmination of input from my supervisors. If he's not willing to admit these facts, then we should let the jury decide. if you have some specific changes here and there you want, then we will consider those requests. But by in large, this is what the Statement of Facts will be.

From: Lepizzera, Michael [mailto:mlepizzera@LepLap.com]
Sent: Saturday, November 17, 2012 03:00 PM
To: Vilker, Lee (USARI)
Subject: RE: Statement of Facts

Lee:

That's fine. I can open it. Enjoy the rest of the day. I will call you only if necessary. I will print it out and "play" with it!

Reading the entire document as a whole, my gut reaction is that it goes on to say way too much and may jeopardize a plea deal. You can put whatever you want in the prosecution version and your office can issue whatever press release it wants following the plea hearing. Unlike the government, my client cannot make any statements in the coming weeks or months which would perceived by the other to be derogatory. As I told you over the phone, the jury may wind up being discharged but Judge Smith isn't discharged from his role as sentencing judge. If my client issues any statement to the effect that he is not guilty after the plea hearing, he will run the real risk of being whacked at sentencing or having the judge disregard the plea agreement. And, if the concern is that he will make statements following the sentencing hearing, my point is: "So what?" He will be a convicted felon at that point who knowingly, intelligently and voluntarily pled guilty. In fact, a guilty plea by Caramadre muzzles him much more than a guilty plea issued by a jury. Any defendant convicted after trial can claim that the jury simply made the wrong decision and continue to claim their innocence. A defendant who voluntarily pleas can always cry foul too but the question back to that defendant is: "But sir, didn't you plead

guilty?". Your office survived the aborted disciplinary complaint, the Jim Taricani stories and the NPR tale of his many creations. This is all came at a time when Caramadre was just a target of a grand jury investigation or a defendant charged by indictment. If we all keep our eye on the ball, any further story that comes out of this guy's mouth will be from a convicted felon who voluntarily pled guilty. End of story.

Do us all a favor and save this document for Jim Martin.

This case needs to end for a variety of reasons benefitting both sides. Let's keep moving this towards the finish line.

ML

Michael J. Lepizzera, Jr.
Partner
Email mlepizzera@leplap.com

117 Metro Center Blvd., Suite 2001
Warwick, RI 02886

Phone 401.739.7397
Toll Free 888.313.2345
Fax 401-384-6950

1