UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

———————————————————    )
                                                )
**UNITED STATES OF AMERICA**           )
                                                )
**v.**                                            )          **Criminal No. 1:11-cr-00186-S**
                                                )
**JOSEPH CARAMADRE, and**             )
**RAYMOUR RADHAKRISHNAN**      )
———————————————————    )

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO RECONSIDER ORDER OF DETENTION

On May 20, 2013, this Court denied Mr. Caramadre's motion to withdraw his

guilty plea, and ordered him taken into custody. The reason for the detention was a

concern for Mr. Caramadre's safety, as testimony revealed that at some time in the past,

Mr. Caramadre may have briefly entertained suicidal ideation. For the reasons which

follow, this Court should reconsider its decision to detain Mr. Caramadre pending

sentencing, and release him pending his sentencing hearing.

### *Psychiatric Evaluations Establish That*
### *Mr. Caramadre Presents No Danger To Himself*

Since being taken into custody, Mr. Caramadre has been examined by Caron

Zlotnick, Ph.D., Professor, Department of Psychiatry and Human Behavior, Department

of Medicine, Department of Obstetrics and Gynecology, Alpert Brown Medical School,

his treating psychiatrist, and James E. Greer, MD, who performed a psychiatric

evaluation.

Dr. Zlotnick's report indicates that Mr. Caramadre was not experiencing any

suicidal ideation, reported no feelings of hopelessness about the present or the future, and

was feeling "future oriented" and hopeful about his future. Dr. Zlotnick noted that he

"presented definite deterrents to attempting suicide, including his family and his

religion". He was administered a "standardized and well-known suicide risk instrument,

the Modified Scale for Suicidal Ideation". He scored a zero on this measure of suicide

risk, indicating that he is not at risk for any suicide attempt. Dr. Zlotnick noted numerous

protective factors, including no history of any suicide attempt, no familial history of

suicide, strong faith in his religion, and a strong sense of responsibility towards his

family. Dr. Zlotnick concluded that Mr. Caramadre has been her psychotherapy patient

since December of 2009, and that he has never been at risk for suicide attempt and is

currently not at risk for suicide. See Exhibit A.

Dr. Greer's psychiatric evaluation similarly noted Mr. Caramadre's "deep

religious beliefs and concerns for his family as motivation to go on living". Dr. Greer's

report includes that Mr. Caramadre "does not present with recent or current suicidal

ideation" and, based on his "experience of over 20 years of assessing suicide potential of

inmates in a correctional setting and Mr. Caramadre's long history of depressive

symptoms without any history of suicidal behavior, I can state with a reasonable degree

of medical certainty that he does not present an acute risk of suicidal behavior and does

not require hospitalization or other confinement for this reason". See Exhibit B.

These reports of these two highly regarded psychiatrists clearly establish that Mr.

Caramadre presents no risk of any harm to himself. To the extent that the Court's

decision to detain Mr. Caramadre, as stated, was based on this factor, Mr. Caramadre

should be released pending sentencing.

***Mr. Caramadre Presents No Flight Risk Or Danger To The Community***

18 U.S.C. § 3143 (a)(1) provides for release of a defendant pending sentence or appeal where a defendant establishes that he is "not likely to flee or cause a danger to any other person or the community if released . . ." In this case, it is indisputably clear that Mr. Caramadre poses neither a flight risk nor any danger to the community, including himself. Mr. Caramadre has complied with all the conditions of his release since the initiation of the prosecution, including appearances in Court, meetings with United States Probation, and weekly sessions with his treating psychologist, Dr. Caron Zlotnick. He continued to abide by these conditions even after his conviction. See United States v. Price, 611 F. Supp. 502, at 503 (S.D. Fla. 1985) (Court's findings that defendant not likely to flee and did not pose a danger to either himself or the community "borne out by the fact that the defendant was released on bond over the course of the proceedings in this matter (a period of several years), was permitted to leave the jurisdiction, and appeared at every scheduled court date and the sentencing . . . these findings are also supported by the psychiatric reports filed. . . . [which] concluded that the defendant was not likely to flee and was not a danger to himself or the community). Indeed, the Court's decision to detain Mr. Caramadre appears to have been based solely on testimony that he, at one time, entertained thoughts of suicidal ideation, and not at all that he presented a flight risk or a danger to the community. Given Mr. Caramadre's devotion to his family, his demonstrated compliance with the terms of his pretrial release, and the reports of his psychiatrists which establish that he has no thoughts of harming himself, this Court should release Mr. Caramadre pending sentencing.

In addition, this case presents extremely complicated sentencing issues for which

Mr. Caramadre's participation and assistance are required. Moreover, the criminal

conduct for which Mr. Caramadre has been convicted does not involve violence,

firearms, narcotics, or any other conduct of that nature, which would otherwise warrant

his detention.

## CONCLUSION

For the foregoing reasons, this Court should reconsider its decision to detain Mr.

Caramadre, and release him under whatever conditions it deems appropriate.

Respectfully submitted,
Joseph Caramadre,
By his attorney,

/s/Randy Olen, Esq.

_____

478A Broadway
Providence, RI 02909
(401) 274-1400
(401) 274-2480 (fax)

## CERTIFICATION

I hereby certify that on this 7th day of June, 2013, I caused to be delivered, via
electronic delivery, the within *Memorandum of Law*  to:

John P. McAdams, Esq.                     Lee Vilker, Esq.
U.S. Attorney's Office                    U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor             50 Kennedy Plaza, 8th Floor
Providence, RI 02903                      Providence, RI 02903

Olin W. Thompson, Esq.
Federal Defender's Officer
10 Weybosset Street, Suite 300
Providence, RI 02903                      /s/Randy Olen, Esq.

                                          _____

# EXHIBIT

# A

**Caron Zlotnick, Ph.D.**
Professor
Department of Psychiatry & Human Behavior
Department of Medicine
Department of Obstetrics and Gynecology
Alpert Brown Medical School
345 Blackstone Boulevard
Providence RI 02806
License # RI PS00545

I saw Mr. Joseph Caramadre on 5/30/13 at Wyatt Detention Facility. At this time, Mr. Joseph Caramadre denied any suicidal ideation, intent or plan in the past 10 days. He reported no feelings of hopelessness about the present or the future. He was future-oriented and reported feeling "hopeful" about his future. He presented definite deterrents to attempting suicide. He stated that his family and religion are reasons for staying alive. He has taken good care of his health in the past 10 days. Mr. Joseph Caramadre's affect was euthymic. His judgment and insight was good. He had no delusions or hallucinations. His speech was lucid and he had clarity of thought. He was administered a standardized and well known suicide risk instrument, the Modified Scale for Suicidal Ideation. Mr. Joseph Caramadre scored 0 on this measure of suicide risk, which indicates that he is currently not at risk for a suicide attempt. He has the following protective factors: no history of any suicide attempt, no familial history of suicide, strong faith in his religion, and a strong sense of responsibility towards his family. Mr. Joseph Caramadre has been my psychotherapy patient since 12/01/09 and during this time, he has never been at risk for a suicide attempt and is currently not at risk for suicide.

Caron Zlotnick, Ph.D.

# EXHIBIT

# B

## PSYCHIATRIC EVALUATION OF JOSEPH CARAMADRE

June 1, 2013

NAME:            Joseph Caramadre.

DATE OF BIRTH:    1/10/1960.

Identifying information: Mr. Caramadre is a 53 year old Caucasian male referred for
psychiatric evaluation by his attorney, Randy Olen. He is known to me from a previous
evaluation in February 2013 when he was referred for psychiatric evaluation by his
attorney for the purpose of assessing his psychiatric status at that time, as well as in
November of 2012, when he had pled guilty to charges of fraud. This evaluation was
requested to assist in assessing his mental status, as he wished to withdraw his guilty
plea. He was assigned diagnoses of:

      Major Depressive Disorder, Chronic, Severe
      Generalized Anxiety Disorder
      Depressive Personality Disorder

**Presenting Problem:**

Mr Caramadre was referred for psychiatric evaluation by his attorney for the
purpose of assessing his psychiatric status currently, specifically with reference to
potential suicidal ideation, intent or behavior.

I explained the purpose of the evaluation to Mr. Caramadre and explained the
limits of confidentiality. I informed him that a copy of my evaluation would be provided
to his attorney. He consented to these conditions.

The interview took place at the Wyatt Detention Center in Central Falls, RI and
lasted approximately 60 minutes.

Mr. Caramadre  was cooperative throughout. He reported to me that he has
continued to suffer from depression, noting that he is also depressed about the denial of
his motion for a new trial and his current incarceration. He states he did not receive his
prescribed meds for a couple of days and felt even more depressed, but since he as again
started receiving them (paroxetine, quetiapine, clonazepam and folic acid) he has had
some symptom relief. He states he was seen by a psychiatrist at the Detention Center and
was released form any form of mental health observation to a Protective Custody setting.

He expressed the belief that the judge had ordered him to be held out of fear that
he might commit suicide, or might otherwise arrange his own demise at the hands of
another. He denies that he has experienced recent suicidal ideation. In my previous
evaluation I noted that he had acknowledged that he had "faced suicidal ideation" for
about 2 weeks following his guilty plea but at no time engaged in such behavior. He
denies any history of suicidal behaviors at any time or any intention or plan of self harm

1

or of arranging for someone else to end his life. He referenced his deep religious beliefs and concerns for his family as motivation to go on living. He expresses clear future orientation, stating he is looking forward to appealing the denial of his motion for a new trial, and hopes to be released from prison pending his sentencing if not the hearing of his appeal.

Mental status examination reveals a male, dressed in prison garb, appearing his stated age, who was cooperative with the interview, and who was able to establish appropriate rapport with the examiner. He did not exhibit any abnormal motor movements or behaviors. His thought processes were not characterized by any evidence of psychosis, mania, or disorganization. His speech was clear and coherent, without noted abnormalities. Mood is described as depressed, and his affect was sad and slightly restricted. He endorses persistent depressed mood as well as vegetative signs of depression, including hopelessness, anhedonia, lack of interest, social isolation, and decreased sleep.

Cognitive functions are grossly intact. He reports that he has not experienced severe impairments of concentration and memory except for the episodes surrounding his trial and plea.

**Diagnostic impression:**

Major Depressive Disorder, Severe, Recurrent
Generalized Anxiety Disorder.
Depressive Personality Disorder
**Discussion:**

Mr. Caramadre continues to present with symptoms of severe and refractory depression. He does not present with recent or current suicidal ideation. Based on my experience of over 20 years of assessing suicide potential of inmates in a correctional setting and Mr. Caramadre's long history of depressive symptoms without any history of suicidal behavior I can state with a reasonable degree of medical certainty that he does not present an acute risk of suicidal behavior and does not require hospitalization or other confinement for this reason

James E. Greer, MD
Psychiatric Consultant

2