UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND


| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) **Criminal No. 11-186-S** |
| v. | ) |
| | ) |
| **JOSEPH CARAMADRE** | ) |
| | ) |
| Defendant. | ) |


**GOVERNMENT'S OPPOSITION TO MOTION TO RECONSIDER ORDER OF DETENTION**

The United States of America, by and through its undersigned attorneys, hereby opposes Defendant Joseph Caramadre's "Motion to Reconsider Order of Detention."

Caramadre pled guilty pursuant to a plea agreement on November 20, 2012.  On May 20, 2013, the Court denied Caramadre's Motion to Withdraw His Guilty Plea.  At the conclusion of the evidentiary hearing on that motion, the Court granted the government's request that Caramadre be detained pending sentencing as both a flight risk and a danger to the community.  Sentencing is scheduled for July 9, 2013.  Caramadre now seeks to be released for approximately 3 weeks before imposition of his sentence.  Because Caramadre fails to establish by clear and convincing evidence that he is not a flight risk or a danger to the community, his motion should be denied.

**1. The Standard.**

Release pending sentencing is governed by 18 U.S.C. §3143(a).

That statute requires a Court to order that a defendant who has been found guilty of an offense and who is awaiting imposition of sentencing be detained, unless the Court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the community.  The burden of proof is on the defendant. United States v. Jessup, 757 F.2d 378, 382 (1st Cir. 1985).

**2. Caramadre is a risk of flight.**

It is true that Caramadre complied with the conditions of his release prior to the conclusion of the plea withdrawal hearing. Nonetheless, he presents a risk of flight.  Caramadre now understands that he faces a significant prison sentence as well as a large order of restitution.  Prior to the denial of his motion to withdraw his guilty plea, Caramadre apparently believed that he was not likely to receive a significant sentence.  Moreover, Caramadre has significant resources which could make flight successful.  He obtained millions of dollars through his scheme.  He owns valuable property.  Significantly, he refused to provide a financial statement to the probation office.  Caramadre has the incentive and ability to flee.

**3. Caramadre poses a risk of danger to the community.**

The Supreme Court has stated "[t]he fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness."  Jones v. United States, 463

U.S. 354, 365 (1983).  The fact that Caramadre has been convicted of white-collar crimes does not alter that analysis.  Id. ("We do not agree with petitioner's suggestion that the requisite dangerousness is not established by proof that a person committed a non-violent crime … This Court never has held that 'violence,' however that term might be defined, is a prerequisite for a constitutional commitment").

During the evidentiary hearing, there was repeated testimony that Caramadre was suicidal after his guilty plea.  Caramadre himself testified he was suicidal.  See Transcript of Evidentiary Hearing, Vol. I, pp 92-95.  Caramadre's former attorney Michael Lepizzera testified that Caramadre told a group of people that he would not kill himself because he viewed suicide as a sin.  See Tr. Vol. II, pp 157-158, 173-174; Vol. III, pp 143-145.  However, Caramadre rationalized that in order to avoid moral culpability for committing suicide it would be permissible to hire a hit man to have himself killed.  See id.  Putting aside the faulty loophole logic underlying Caramadre's rationalization, such a course of action would obviously constitute a danger to the community.  It should go without saying that contracting a someone to commit first degree murder is dangerous, even if the intended victim is oneself.

Caramadre's Motion to Reconsider does not directly address any of these issues.  Instead, Caramadre now offers affidavits from two

mental health professionals for the proposition that he is not presently likely to commit suicide.

Curiously, or perhaps tellingly, Caramadre does not offer an affidavit from Dr. Sarah Xavier. According to an affidavit submitted in support of Caramadre's motion to withdraw his guilty plea, as well as testimony from both Caramadre and Lepizzera, Dr. Xavier has been Caramadre's treating psychiatrist since 2011. It was Dr. Xavier that Caramadre called to express his suicidal ideation in November and December 2012. It was Dr. Xavier that treated his suicidal ideation. Caramadre provided the government with documents from Dr. Xavier to corroborate his suicidal ideation. See Ex 1, attached, Affidavit of Dr. Xavier, notes, and correspondence. It would seem that Dr. Xavier's testimony would be most relevant to Caramadre's history and risk of suicide, yet her testimony is not offered by Caramadre.

Caramadre instead submitted an affidavit from Dr. Caron Zlotnik. Although Caramadre's Motion describes Dr. Zlotnik as his "treating psychiatrist" (Def. Motion at 1), at the evidentiary hearing Dr. Zlotnik testified that she is a psychologist, not a psychiatrist. At the hearing, Dr. Zlotnik was unwilling to offer an opinion on the effects Caramadre's medication may have on his state of mind because it fell outside her training. (Tr. Vol. I, pp. 199-200). In an e-mail to Lepizzera, Caramadre claimed his

4

medication regiment was related to his suicidal ideation.  <u>See</u> Ex. 1.

In any event, Dr. Zlotnik's opinion states that "Caramadre has been my psychotherapy patient since 12/01/09 and during this time, he has never been at risk for a suicide attempt and is currently not at risk for suicide." Ex. A to Defendant's Motion to Reconsider. This statement is in direct contradiction to Caramadre's testimony that he was suicidal after his guilty plea, as well as Lepizzera's testimony regarding Caramadre's suicidal ideation, and Dr. Xavier's affidavit and notes.  Accordingly, Dr. Zlotknik's affidavit should be given little or no weight.

Similarly, the affidavit from Dr. James Greer (Def. Ex B), provides the Court with little assurance that Caramadre presents no danger to the community.  Ultimately, Dr. Greer is only willing to go so far as to state that Caramadre does not present an "acute" risk of suicidal behavior.  Dr. Greer, a psychiatrist retained by Caramadre's attorneys, offers an opinion based largely on self-reporting by Caramadre.  Like the boy who cried wolf, Caramadre has lied so often and to so many audiences that he simply cannot be believed.  It the evidentiary hearing established nothing else, it showed that Caramadre is a highly intelligent manipulator who will say whatever he needs to say to achieve in his desired ends, even when those ends are irrational.  In this instance, Caramadre

5

believes that by denying suicidal ideation, he can win his release from prison. The Court should place no reliance on Dr. Greer's evaluation because it is so heavily reliant on Caramadre's self-reporting.

**4. Caramadre can assist his attorney while detained.**

Caramadre claims he needs his release to prepare for sentencing. This argument is specious; Caramadre is provided sufficient opportunities to meet with his attorneys like every other detained inmate. Caramadre's sentencing is scheduled for July 9, 2013, approximately three weeks away. He is unquestionably facing a lengthy prison sentence. His advisory guideline range is life, although the plea agreement caps his exposure at ten years. It is simply not worth the risk of flight or the danger to the community to release Caramadre for a few weeks prior to his sentencing. This request is likely a prelude to an attempt to continue the sentencing, or file other frivolous motions designed to avoid accountability for Caramadre in this case.

## CONCLUSION

For the reasons set forth herein, Defendant Caramadre's Motion to Reconsider should be denied and he should be order to remain detained pending sentencing.

                    Respectfully submitted,

                    PETER F. NERONHA
                    UNITED STATES ATTORNEY


                    /s/ John P. McAdams
                    JOHN P. McADAMS
                    Assistant U.S. Attorney

                    LEE H. VILKER
                    Assistant U.S. Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June, 2013, I caused the within Government's Opposition to Defendant Caramadre's Motion to Reconsider Order of Detention to be served via the Court's Electronic Filing System on:

For Joseph Caramadre:
Randy Olen, Esq.
Robert Watt, Esq.

/s/John P. McAdams
John P. McAdams
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
John.p.mcadams@usdoj.gov