UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 11-186-S |
| v. ) | |
| ) | |
| JOSEPH CARAMADRE ) | |
| ) | |
| and ) | |
| ) | |
| RAYMOUR RADHAKRISHNAN ) | |
| ) | |
| Defendants. ) | |

### GOVERNMENT'S RESPONSE TO DEFENDANT RADHAKRISHNAN'S OBJECTIONS TO THE PRESENTENCE REPORT

The United States of America, by and through its undersigned attorneys, hereby responds to defendant Radhakrishnan's *Objections to the Presentence Report*.

**Loss amount**

Raymour Radhakrishnan objected to the 22-level increase applied pursuant to U.S.S.G § 2B1.1(L).  That enhancement applies because the total loss amount for the conspiracy, $47,5696,398.06 is more than $20,000,000 and less than $50,000,000.

Radhakrishnan's initial objection is that he should not be held accountable for losses that occurred before Radhakrishnan joined the conspiracy in 2007.  The government agrees.  The loss amount was recalculated to exclude all transactions which occurred prior to July

1

1, 2007.  The resulting total loss amount is $35,114,289.70. This figure includes $22,135,726.11 in losses from the annuity transactions and $12,304,392.67 in losses from the bond transactions.  Since the total loss is still more than $20 million and less than $50 million, there is no impact on the guidelines.

Radhakrishnan's next objection is that "much of the total loss amount is due not to any actions of the defendants, but to stock market losses" and therefore not "reasonably foreseeable" to the defendants.  This argument is specious.  It was an explicit part of the defendants' investment strategy to profit from stock market losses.  The defendants executed an investment strategy in which they routinely make parallel investments: one betting the market would go up and the other betting the market would go down.  It was part of the scheme that the defendants would reap the benefits of market gains while the insurance companies bear the burden of losses. The defendants not only foresaw market losses, they actively rooted for them. For example, see Exhibit A attached.

Radhakrishnan's third loss objection is to the entire $12,482,108.36 loss related to the death-put bond portion of the scheme.  Radhakrishnan's argument that the bond issuers did not lose any money and that the defendants somehow did them a favor by taking the bonds "off their debt sheet" is ridiculous and completely contrary to the evidence.  The amount of the bond losses was

calculated by Dr. Andrew Kalotay, one of the foremost experts in valuing bonds in the world.  Dr. Kalotay's report, outlining his findings, is attached as Exhibit B.  Moreover, even if the entire $12 million were discounted, there would be no impact on the guideline range because the loss attributable to Radhakrishnan related to the annuity scheme is still more than $20 million and therefore the same guideline characteristic would apply.

**Misrepresentation of Charitable or Religious Organization**

Radhakrishan objected to the two-level enhancement applied in paragraph 18 of the PSR because the offense involved a "misrepresentation that that the defendant was acting on behalf of a charitable… [or] religious … organization."  Radhakrishnan is wrong.  Much of the success of the scheme was a direct result of the defendants exploiting a targeted demographic of terminally ill, religiously minded people who read the Catholic newspaper.  The ad itself deceptively played on Caramadre's affiliation with the Catholic Church. See Exhibit C, attached.  Moreover, Radhakrishnan played up those ties when he met with the terminally ill and their families.  Numerous family members testified to the grand jury that they believed, based on the advertisement and statements by Radhakrishnan, that the program was associated with the Catholic Church.  Moreover, Caramadre told representatives from Lifemark that "the measuring lives" were referred to him in return for his

3

work for the Catholic Church, falsely claiming he paid for the church's burial expenses for indigent people. Finally, although some people did receive $2,000 without accounts being opened, Caramadre told others he viewed this expense as a "loss leader," a type of marketing technique in which one takes a loss on some transactions in order to achieve greater profits on others.

Radhakrishnan's claim that his representation to some terminally ill people that their participation in the "program" would go to other needy families was "true" is absurd. He claims that "people were told Mr. Caramadre donated a lot of money to charity on an annual basis and that a portion of the proceeds from these investments would go to those charities." None of the witnesses were told that statement. Instead, Radhakrishnan led them to believe that most or all of the money raised from the "program" would go to other terminally ill people in the same situation as themselves, and left out the critically important fact that the overwhelming majority of the profits would go to Caramadre and his clients.

### Gross Proceeds Enhancement

Radhakrishnan objected to the two-level adjustment in paragraph 20 of the PSR, which applies if the defendant, individually, derived in excess of $1,000,000 in gross receipts. Radhakrishan argues that he derived "none of the gross receipts, and certainly not any amount approaching $1,000,000." Radhakrishnan may not have derived *net*

4

proceeds in that amount, but he did in fact receive well over $1,000,000 in *gross* receipts in connection with the numerous annuities he purchased as a straw on behalf of Caramadre, the proceeds of which he channeled back to Caramadre. Accordingly, the adjustment applies.

**Victim Related Adjustment**

Radhakrishnan objected to the 4 level victim adjustments in paragraph 21 of the PSR. The substance of Radhakrishnan's objection is correct but the remedy he requests goes too far. Radhakrishnan should have received a 2 level adjustment, not 4 levels. Paragraph 21 of the PSR correctly applies a 2 level enhancement for vulnerable victim under U.S.S.G. § 3A1.1(b)(1), but the additional 2 point enhancement for a "large number" of vulnerable victims pursuant to U.S.S.G. §3A1.1(b)(2) should not be applied. See Application note 4(D) to U.S.S.G. § 2B1.1.

**Effect of objections on guideline range**

Based on the above analysis, Radhakrishnan's total offense level should be 39. His guideline range would then be 262-327 months.

                                              Respectfully submitted,

                                              PETER F. NERONHA

UNITED STATES ATTORNEY

/S John P. McADAMS
JOHN P. McADAMS
Assistant U.S. Attorney

LEE H. VILKER
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903

CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of June, 2013, I caused the within *Government's Response to Defendant Radhakrishnan's Objections to the Presentence Report* to be served via e-mail on:

For Raymour Radhakrishnan:
Raymour Radhakrishnan, Pro Se
Olin Thompson, Esq.

For Joseph Caramadre:
Randy Olen, Esq.

    /S   John P. McAdams
John P. McAdams
Assistant U.S. Attorney
United States Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
John.p.mcadams@usdoj.gov