## Statement of Facts

The parties agree that the following are the facts of this case:

From in or about 1995 through 2010, Joseph Caramadre ("Caramadre") ran a company called Estate Planning Resources ("EPR") from offices in Warwick, Providence and Cranston, Rhode Island. Defendant Raymour Radhakrishan ("Radhakrishnan") was hired by Caramadre in July 2007. In the mid-1990's, Caramadre developed an investment strategy that depended on the use of terminally ill individuals. On his own behalf and on the behalf of investors, friends and family members, Caramadre began to purchase from insurance companies products called variable annuities. These annuities offered death benefits upon the death of the person identified as the annuitant. These benefits included a guaranteed return of all the money you invested plus, in many instances, a guaranteed profit, even if the market went down, and various other bonuses and enhancements.

In 2006, Caramadre began to invest in another financial product that produced substantial profits upon the death of an individual - so called "death put bonds." Under the terms of these bonds, the owner of the bond is able to redeem the bond years or decades prior to the bond's maturity date upon the death of the bond's co-owner. This investment strategy also depended on the use of terminally-ill individuals.

Beginning in or about July 2007 and continuing at least through August 2010, Caramadre and Radhakrishnan did knowingly and willfully conspire with each other and with others to commit Mail Fraud, in violation of 18 U.S.C. § 1341, Wire Fraud, in violation of 18 U.S.C. § 1343; and Identity Fraud, in violation of 18 U.S.C. § 1028(a)(7). In addition, from 1995 through August 2010, Caramadre executed a scheme to defraud financial institutions and terminally-ill

-1-

individuals. Radharkishnan joined this scheme when he was hired by Caramadre in July 2007.

It was the object of the scheme to defraud and the goal of the conspiracy for Caramadre and Radhakrishnan to fraudulently obtain significant sums of money from the Insurance Companies and Bond Issuers. The insurance companies collectively lost millions of dollars from defendants' submission of variable annuities utilizing terminally-ill annuitants. Defendants submitted annuity applications using terminally-ill individuals as annuitants to the following insurance companies: Metropolitan Life Insurance Company, Genworth Life Insurance Company, Midland National Life Insurance Company, Hartford Life Insurance Company, ING Life Insurance & Annuity Company, Western Reserve Life Insurance Company, Transamerica Life Insurance Company, Jefferson National Life Insurance Company, Minnesota Life Insurance Company, Nationwide Life Insurance Company, Pacific Life Insurance Company, Golden American Life Insurance Company, Allmerica Financial Life Insurance and Annuity Company, AXA Equitable Life Insurance Company, American Skandia Life Assurance Company, Lincoln Benefit Life Company, Security Benefit Life Insurance Company, Travelers Life and Annuity Company, The Life Insurance Company of Virginia and American National Insurance Company. The bond issuers were required to pay the face value of bonds at a date much earlier than they otherwise would have been required to due to defendants' exercise of the death-put features of the bonds. The defendants purchased death-put bonds with terminally-ill individuals from the following companies: American General Financial, Inc., Bank of America, Bank Hapoalim BM, Bear Stearns Co., Carolina First Bank, Caterpillar Financial Services, Corp., CIT Group, Inc., Compass Bank, Countrywide Financial, Corp., Countrywide Home Loan, Inc., Fannie Mae, Federal Home Loan Mortgage Corp., Federal National Mortgage Association, Federated Capital,

Corp., First Bank Pr., Ford Motor Credit Corp., Freddie Mac, General Electric Corp., General Motors, Corp., Genworth, GMAC, John Hancock Life Insurance Co., Hartford Life, Hartford Life Global, HSBC Financial, International Lease Finance Corp., Lassalle Bk Na Chicago Ill., Lassalle Fndg LLC, Lehman Bros Holdings, Inc., Marshall & Isley Corp, MBIA Inc., Mercantile Bk Orlando Fl, Merrill Lynch Co., Protective Life, Provident Bank of Cincinnati, OH, Providian Natl Bank, Prudential Financial, SLM Corp., Standard FedBank Troy Mich., Tennessee Valley Authority, and Western Bank Pr.

Caramadre and Radhakrishanan fraudulently obtained millions of dollars by making or causing to be made material misrepresentations and omissions to (1) terminally-ill people, their family members and care-givers, in order to obtain identity information and signatures for use in furtherance of the scheme; (2) Insurance Companies; and (3) intermediaries, including Brokerage Houses and Broker-Dealers.

In order to execute the aforementioned scheme and conspiracy, Caramadre and Radhakrishnan fraudulently obtained the identity information of terminally-ill individuals. Caramadre and Radhakrishnan obtained signatures of numerous terminally-ill individuals on brokerage account and annuity opening documents by means of false misrepresentations and omissions. Radhakrishnan gave a variety of false explanations as to why their signatures were required, including misrepresenting the nature and purpose of documents the terminally-ill individuals were asked to sign. Caramadre and Radhakrishnan concealed from the terminally-ill individuals and their family members that their identities would be used on annuities and bonds that were purchased by Caramadre and others. The names of some of the terminally-ill people whose identity information was used by the defendants without the individuals' knowledge and

consent include, but are not limited to: Antonio DeCastro, John Lang, Michael Mallane, Vincent Moretti, Pia Bernardo, John Gonsalves, Dennis Flori, Edwin Rodriguez, James Kimball, Robert Cazeault, Hattie Strobel, Charles Perry, Maria Nina, John Kivalos, Augusto Escobar de Rodas, Sonia Gonzalez, Donna Perotta, Richard Wiley, Arthur Culotta, William Hazelwood, Linda Barbeau, Bertha Howard and Bruce Marshall.

It was further part of the scheme to defraud and the conspiracy that Caramadre and Radhakrishnan took steps that prevented the terminally ill individuals from understanding the nature of the documents they were signing. The defendants typically did not give the terminally ill people copies of the documents they signed or give them some time with the documents before signing them. In addition, defendants Caramadre and Radhakrishnan often had the terminally-ill individuals sign blank signatures pages of application forms without showing them the completed applications.

It was further part of the scheme to defraud and the conspiracy that Caramadre and Radhakrishnan made and caused to be made material misrepresentations and omissions to various corporate entities, including Insurance Companies, Bond Issuers, Broker-Dealers and Brokerage Houses. Defendant Caramadre and his co-conspirators made numerous false representations to insurance companies that some of the annuity owners were "friends," "clients" or "acquaintances" of the terminally-ill individuals who were named as annuitants. In addition, Caramadre took steps to conceal his use of terminally-ill individuals from the insurance companies, including opening annuities with small deposits that would not attract scrutiny, delaying the filing of death claims and opening annuities in the names of Radhakrishan when the funds actually belonged to Caramadre.

In addition, defendant Caramadre made misrepresentations to representatives of broker-dealer LifeMark concerning the manner in which the annuitants and co-owners for brokerage accounts were identified and whether they were being paid by Caramadre.

Caramadre and Radhakrishnan also provided false and fraudulent information concerning the finances and investment history of many of the terminally-ill individuals listed as co-owners of the brokerage accounts. Moreover, from in or about January 2008 through in or about September 2008, Caramadre and Radhakrishnan made misrepresentations to representatives from brokerage houses concerning the purpose of the numerous joint accounts that had been opened in the names of Caramadre and other individuals. Caramadre and Radhakrishnan falsely told brokerage house representatives that the co-owners of the accounts were estate planning clients of Caramadre and that a portion of the invested funds came from the co-owners.

It was a further part of the scheme to defraud and the conspiracy that Caramadre concealed his true ownership in many of the annuities and bonds by purchasing the annuities and bonds in the names of other individuals, including Radhakrishnan. With three of the annuities submitted in Radhakrishnan's name (but with the funds of Caramadre), Radhakrishnan misrepresented his income and assets in the suitability forms that accompanied the annuity applications.

In furtherance of this scheme and conspiracy, defendants Caramadre and Radhakrishnan caused to be opened a brokerage account at T.D. Ameritrade in the names of Camamadre and Edwin Rodriguez ("Rodriguez"). On or about June 25, 2008, defendants Caramadre and Radhakrishnan knowingly transmitted and caused to be transmitted an interstate wire for the purpose of executing the aforementioned scheme, specifically an interstate wire transfer of

$280,000 in funds from the Citizens Bank account of Caramadre to the Ameritrade account that had been opened in the names of Caramadre and Rodriguez.

Dated: November 19, 2012

_____
Lee H. Vilker
Assistant United States Attorney
District of Rhode Island

_____
Joseph Caramadre
Defendant

_____
John P. McAdams
Assistant United States Attorney
District of Rhode Island

_____
Raymour Radhakrishnan
Defendant