**RANDY OLEN, ESQ.**
*ATTORNEY & COUNSELLOR AT LAW*

September 30, 2013

Kristin Ann Mattias
U.S. Probation Officer
United States District Court
District of Rhode Island
John O. Pastore Federal Bldg.
2 Exchange Terrace, 3rd Floor
Providence, RI 02903

RE: U.S. v. Joseph Caramadre, No. 1:11-cr-00186-S

Dear Ms. Mattias:

I write to present objections to the Presentence Investigation Report (PSR) pertaining to the above-referenced case.

As a threshold matter, Mr. Caramadre believes that his guilty plea was tendered in violation of constitutional guarantees, and that the District Court erred in denying his motion to withdraw the plea. He maintains his innocence of the charges against him, and will appeal the denial of the motion to the United States Court of Appeals for the First Circuit. He therefore objects to any and all language in the PSR which ascribes criminal conduct to him, and any guidelines calculation based on such conduct.

Notwithstanding this blanket objection, Mr. Caramadre specifically objects to the following provisions of the PSR:

**Paragraph 11, p. 31 USSG §3C1.1,**
**"Obstructing or Impeding the Administration of Justice"**

Mr. Caramadre objects to the 2 level increase pursuant to this section on the alleged grounds that he instructed Thomas Maltais to lie to a postal inspector regarding a check Mr. Caramadre wrote to Mr. Maltais. Mr. Caramadre denies that he did so. It is the Government's burden to prove by a preponderance of the evidence that Mr. Caramadre obstructed or impeded the administration of justice. No evidence has been proffered to support the allegation, and Mr. Caramadre did not plead to this count of the indictment.

**Paragraph 16, p. 32 USSG § 2B1.1(b)(1)(L), (Specific Offense Characteristics)**

Mr. Caramadre objects to the 22 level increase pursuant to this section based on an alleged total loss of $47,596,398.06. The loss will be determined at an evidentiary hearing. It is Mr. Caramadre's position that there was no loss to the bond issuers in this case. The redemption

of bonds caused by the exercise of the "death put" option served only to advance the redemption date for these bonds. This caused the issuers to pay the face value of the bonds earlier than they would have otherwise had to, but did not cause the issuers to "lose" any money. In fact, these corporate bond issuers benefitted by taking the face value of the redeemed bonds off their books, and relieved them of paying interest on the bonds until the future date of their redemption.

With respect to the annuities, most of the Government's claimed losses derived from annuity accounts which did not involve fraud, and in which the annuitant was not an agreed victim in the case, pursuant to the plea agreement's statement of facts. The only annuities referenced there are those involving John Gonsalves and Edwin Rodriguez. These annuities resulted in a total loss of $1,641,737.25. See Co-defendant Raymour Radhakrishnan's "Memorandum Regarding Restitution," attached.

Because the loss amount is more than $1,000,000.00 but less than $2,500,000.00, Mr. Caramadre's increase is 16 (rather than 22) levels, pursuant to USSG § 2B1.1(b)(1)(I).

**Paragraph 17, p. 32 USSG § 2B1.1(b)(2)(B) (Specific Offense Characteristics)**

Mr. Caramadre objects to the four level increase pursuant to this section based on the allegation that the offense involved 50 victims. The agreed statement of facts lists 22 individuals as victims, but does not designate the insurance companies as such. Because only two insurance companies were involved in transactions which Mr. Caramadre acknowledged were victims of fraud, the number of victims is 24. Only a 2 level increase applies.

**Paragraph 18, p. 32 USSG § 2B1.1(b)(9)(A) (Specific Offense Chracteristics)**

Mr. Caramadre objects to this 2 level increase on the grounds that the offense involved a misrepresentation that he was acting on behalf of a charitable organization, based on a "false advertisement" in a Catholic newspaper. The advertisement offered "$2,000.00 in cash, immediately available" to anyone between 18 and 98 years old who are either United States citizens or permanent residents and are under hospice or palliative care. The ad stated that a "a member of the Providence Diocese and Church benefactor provides financial assistance for terminally ill individuals and/or their families."

The advertisement contained no misrepresentations. Mr. Caramadre's charitable undertakings are well-known. In conjunction with this advertisement, he provided a total of over $350,000.00, including at least $2,000.00 to every person who responded to the ad, whether they subsequently became involved in any investments or not. Because the ad served a legitimate charitable purpose, this increase should not apply.

**Paragraph 20, p. 33 USSG § 2B1.1(b)(15)(A) (Specific Offense Characteristics)**

Mr. Caramadre objects to the two level increase on the ground that he derived over $1,000,000.00 from one or more financial institutions. Application Note 11(A) to USSG § 2B1.1 states that for purposes of this section, "the defendant shall be considered to have derived more than $1,000,000.00 in gross receipts if the gross receipts to the defendant individually, rather

than all participants, exceeded $1,000,000.00." Here, the Government has not established that Mr. Caramadre personally, as opposed to all the participants (brokers, owners, investors), derived gross receipts in excess of $1,000,000.00. Therefore, this increase does not apply.

## Paragraph 21, p. 33 USSG § 3A1.1(b)(1) and (2) (Victim Related Adjustment)

Mr. Caramadre objects to the four level increase applied on the basis of a large number of vulnerable victims. If § 2B1.1(b)(2)(B) is found to apply (50 or more victims), § 3A1.1(b)(2) cannot apply. See Application note 4(D) to USSG § 2B1.1. At most, only a two level increase pursuant to § 3A1.1(b)(1) can apply.

Mr. Caramdre's adjusted offense level is therefore 33, with a criminal history category of I. His advisory guideline range is therefore 135-168 months.

### *Mr. Caramadre Should Be Granted A Downward Departure Based On His Medical, Emotional, And Physical Condition*

USSG § 5H1.3 states that "mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the typical cases covered by the guideline." USSG § 5H1.4 does the same with respect to physical condition.

Paragraphs 38-42 of the PSR document myriad physical and mental health impairments from which Mr. Caramadre suffers. These conditions – particularly his lifelong history of severe, refractory depression, including neuromodulation, Transcranial Magnetic Stimulation – are far beyond the typical cases covered in the guidelines, and warrant a downward departure.

Sincerely,

Randy Olen, Esq.

RO/rw

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| VS. ) | CR 11-0186 02 S |
| RAYMOUR RADHAKRISHNAN ) | |

## MEMORANDUM REGARDING RESTITUTION

Now comes Raymour Radhakrishnan, the Defendant in the above captioned matter, and makes argument regarding the loss amounts in this case. The defendant limits his arguments here to the amount of alleged loss caused by the fraud in this case. Defendant leaves for argument at sentencing the issue of whether he should be required to pay all or any part of that loss as restitution.

### I. The Bond Accounts

**A. There Is No Loss to the Bond Issuers from the Investment Scheme in this Case**

The entirety of the $12,482,108.36 in claimed losses to bond issuers is not money or value actually lost by the bond issuers. Corporate bonds are corporate debt agreed to by corporations. Under the terms of those bonds the corporations are obligated to pay to the holder of a bond: 1) interest on the face value of the bond until the redemption date; and 2) the face value of the bond on the redemption date. Some corporations choose to include a "death put" option into the terms of their bonds to make them more attractive to investors. When a corporation chooses to include such an option it is required to hold a certain amount of money in reserve specifically for the possibility that a number of these death put options will be exercised in any given year. Bond terms of bonds including a death put option include a limit on how many death put options the corporation will honor in a given

year.

The redemption of the bonds in this case caused by exercise of the "death put" option simply advanced the redemption date for these bonds. This caused the corporations to pay the face value of the bonds earlier than they would have had to, but did not cause to corporations to "lose" any money. The corporations in fact benefitted by taking the face value of the redeemed bonds off their debt sheet and also by being relieved of paying interest on the bonds until the future date of redemption.

B. The Alleged Losses Due to Agreed Victim Account Holders Is $4,190,483.35

The majority of the government's claimed bond losses comes from accounts on which no fraud occurred. As part of the joint Statement of Facts in this matter (Government Bond Exhibit 1), the government enumerated, and the defendant agreed to, a list of terminally ill individuals whose identity information was used without their knowledge. The government's table 2 includes as Account Holders many names that were not part of that agreed statement of facts.[1] As to those account holders, no fraud has been agreed to or found in a judicial proceeding. Any supposed losses caused by the exercise of death put option on those accounts are not losses for the purposes of restitution in this case because they did not involve fraud.

Mr. Radhakrishnan submits Table A - Claimed Bond Losses by Agreed Account Holder Victims to show the government's claimed bond losses when we only include those account holders who have been agreed to by the parties as victims. As shown on that table, the bond loss value when considering those agreed account holder victims would be $4,190,483.35.

---

[1] Names included in government's Table 2 but not agreed to as identity fraud victims in the Joint Statement of Facts are Bastia, Battey, Bentley, Bento, Bortle, Brisson, Brunt, Buckman, Bulpitt, Carnevale, Cate, Cundy, Daigle, Dinsmore, Disaro, Duarte, Egan, Franco, George, Horton, Ianiero, Lancellotti, Logan, Rainville, Robichaud, Rogers, Ruisi, Sanford, Santagata, Santos, Senecal, Sgambato, Stroup, Taborelli, Taylor, and Turgeon

2

## II. The Annuity Accounts

A.  The Alleged Losses Due to Agreed Victim Annuitants is $1,641,737.25

As in section (I)(B) above, the vast majority of the government's claimed losses from variable annuity accounts occurred on annuity accounts in which the annuitant was not an agreed victim in this case. Government's Exhibit E - Summary of Losses from Variable Annuities lists many annuitants, but only two of those listed are found in the State of Facts.[2] These agreed victims are John Gonzalves and Edwin Rodriguez.

Defense Table B, entitled Claimed Variable Annuity Losses by Agreed Annuitant Victims, shows that the losses in this case on annuities involving named annuitant victims totals $1,641,737.25.

Respectfully Submitted
Raymour Radhakrishnan,
By and through his counsel

/s/ Olin Thompson
Olin Thompson
Assistant Federal Defender

### Certification

I hereby certify that I caused this Objection to be delivered by electronic notification to AUSAs Lee Vilker and John McAdam, 50 Kennedy Plaza, 8th Floor, Providence 02903; Attorney Randy Olen,

---

[2] Names included in government's Annuity Exhibit E but not agreed to as fraud victims in the joint statement of facts are: Ancona, Battey, Blowers, Brunt, C. Buckman, M. Buckman, Bulpitt, Carnevale, Castillona, Conti, Digiovanni, Duarte, Egan, Esser, Friberg, Garvey, Horton, Ianiero, Imperotore, Lamonte, Lancellotti, Lee, Love, Mcgetrick, Mizzoni, O'Donnell, O'Mally, Paneto, Pitocco, Proulx, Restante, Robichaud, Rose, Ruggieri, Sammartino, Stroup, Veveiros, and Zisman.

3

55 Bradford St., Ste. 203, Providence, RI 02903; Attorney William Murphy, 126 Dorrance St., Providence, RI 02903; and USPO Kristin Mattias, 36 Exchange Terrace, Providence 02903, on this the 25th day of September, 2013.

/s/ Olin Thompson

4

**Defense Table A -**  **Claimed Bond Losses by Agreed Account Holder Victims**

| Account Holder | Claimed loss amount |
|---|---|
| Barbeau | 134,696.86 |
| Cazeault | 409,911.81 |
| Culotta | 90,915.25 |
| Decastro | 273,287.91 |
| Escobar | 256,741.91 |
| Flori | 166,604.00 |
| Gonsalves | 314,073.51 |
| Gonzalez | 224,645.59 |
| Kimball | 238,918.12 |
| Kivalos | 338,676.07 |
| Lang | 128,567.27 |
| Mallane | 366,416.58 |
| Marshall | 273,144.33 |
| Parrotta | 297,070.48 |
| Perry | 336,700.43 |
| Rodriguez | 118.77 |
| Strobel | 252,830.64 |
| Wiley | 87,163.82 |
| **Total** | **4,190,483.35** |

Defense Table B -   Claimed Variable Annuity Losses
by Agreed Annuitant Victims

| Annuitant | Insurance Co. | Application Date | Claimed loss amount |
|---|---|---|---|
| Gonsalves | Hartford Life | Unknown | 724,952.44 |
| Gonzalves | ING | 06/20/2008 | 413,829.53 |
| Gonzalves | Nationwide | 06/20/2008 | 502,955.28 |
| Rodriguez | Nationwide | 01/14/2009 | STILL ACTIVE |
| Total | | | 1,641,737.25 |