UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Cr. No. 11-186-ALL-S |
| JOSEPH CARAMADRE and RAYMOUR RADHAKRISHNAN | ) ) ) ) ) | |

**SUPPLEMENTAL REPORT AND RECOMMENDATION
REGARDING RESTITUTION CALCULATION**

Patricia A. Sullivan, United States Magistrate Judge

  This supplemental report and recommendation concludes the narrow issue left open in the Report and Recommendation Regarding Restitution Calculation (ECF No. 202): that, for purposes of the restitution calculation, the Government had not sustained its burden of linking to the criminal scheme three variable annuity transactions that used Gerald McGetrick and James O'Donnell as measuring lives.  Mindful that federal law is intended to provide victims with full restitution, United States v. Gushlak, 728 F.3d 184, 188-89, 193 (2d Cir. 2013), this Court directed the Government to produce additional evidence (if available) linking these transactions to the scheme within ten days and gave Defendants another ten days to respond.  The three transactions at issue appear on Appendix C to this Court's prior report and recommendation.

  Within the requisite time period, the Government provided additional evidence regarding transactions involving Messrs. McGetrick and O'Donnell and neither Defendant has filed a response.  Based on the Government's submission and Defendants' lack of objection, the Court recommends a finding that the Government has sustained its burden of demonstrating that the

transactions involving Mr. O'Donnell are part of the scheme, but has not with respect to the transaction involving Mr. McGetrick.  The analysis follows.

Turning first to Mr. O'Donnell, the Government has now demonstrated that he was one of the terminally-ill AIDS patients that Defendant Joseph Caramadre visited in 1995 and 1996 for the purpose of deceptively using them as terminally-ill annuitants as alleged in the Indictment at paragraphs 31 and 70-76.  The Government's submission also establishes that both of the O'Donnell annuities were purchased in increments, with a small initial deposit followed by a more substantial investment after a short period of time, which is consistent with the cover-up strategy that characterized the scheme.  See Indictment ¶ 66; Plea Agreement (Statement of Facts) at 4 ("opening annuities with small deposits that would not attract scrutiny").  Finally, the timing of these transactions (1996-1997) falls squarely within the period of the scheme as admitted in the Plea Agreement.  Plea Agreement (Statement of Facts) at 1.  Such losses may be awarded as restitution without regard to any applicable statute of limitations.  See United States v. Brown, 665 F.3d 1239, 1253 (11th Cir. 2011) (restitution may be awarded for losses caused by conduct outside statute of limitations); United States v. Williams, 356 F. App'x 167, 170 (10th Cir. 2009) (unpublished) (restitution owed to all victims including those whose losses potentially outside statute of limitations); Catherine M. Goodwin, Federal Criminal Restitution § 5:16 (West 2013) ("Restitution can be imposed for acts beyond the statute of limitations as long as the acts are part of the same scheme . . . .").

With respect to Mr. McGetrick, the Government's evidence of linkage to the scheme is insufficient because it merely posits that Mr. McGetrick was terminally ill, the account owner was Caramadre's wife, Caramadre took a commission and he deposited the premium in a high-risk fund.  While consistent with the scheme, these facts are insufficient because the use of a

terminally-ill annuitant is not *per se* illegal, because Caramadre was licensed at the time and entitled to receive commissions and, most importantly, because, while the transaction was initiated on the very eve of the beginning of the scheme (December 30, 1994), the conduct related to setting it up (such as the identification of Mr. McGetrick as the terminally-ill annuitant) likely occurred well prior.  Therefore, I find that the Government has failed to establish that it is falls inside the time period admitted to in the Plea Agreement.  See United States v. Cutter, 313 F.3d 1, 7-8 (1st Cir. 2002) (court must consider timing of scheme to determine whether loss is connected to it).

Accordingly, I recommend that the Court adopt the following additional findings: (1) the two variable annuity transactions involving James O'Donnell and totaling $40,882.77 are part of the scheme; (2) the variable annuity transaction involving Gerald McGetrick is not part of the scheme; (3) after adding Mr. O'Donnell's transactions to the scheme, the total actual losses suffered by insurance company victims and caused by the scheme from its inception in 1995 until it ended in August 2010 is $33,932,120.71 as set forth on Supplement to Appendix A; (4) the revised combined total losses suffered by insurance company and bond issuer victims over the life of the scheme is $46,330,077.61 as set forth on Supplement to Appendix A; and (5) since the two transactions involving Mr. O'Donnell occurred before Defendant Raymour Radhakrishnan joined the scheme, they are attributable only to Caramadre.[1]

---

[1] I note with appreciation that the Government correctly identified an error in footnote 29 of this Court's prior report and recommendation.  ECF 202.  Footnote 29 should read as follows:

> For example, a transaction with Louise Imperotore as annuitant and Lynn Saccoccia as account owner was removed because they were mother-daughter so the transaction fell outside the scheme. Similarly, the Government removed transactions involving Peter DiSaro and Edwin Rodriguez as co-owners of death-put bonds.  Mr. DiSaro's transactions were based on a father-son relationship that the Government conceded fell outside the scheme.  Mr. Rodriquez's transactions were included by mistake because he did not pass away and therefore no death-put bonds were redeemed by Caramadre.

      Any objection to this supplemental report and recommendation must be specific and must be filed with the Clerk of the Court within fourteen (14) days of its service.  See Fed. R. Crim. P. 59(b)(2); DRI LR Cr 57.2(d).  Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Guerrero, 524 F.3d 5, 14 (1st Cir. 2008); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 26, 2013

# SUPPLEMENT TO APPENDIX A

## TOTAL LOSSES ATTRIBUTABLE TO THE SCHEME[2]

### Losses to Insurance Companies

| Insurance Company | Total Loss |
|---|---|
| American National | 64,297.04 |
| AXA Equitable | 540,861.60 |
| Genworth | 3,965,520.76 |
| GoldenAmerica/ING | 439,068.78 |
| Hartford Life | 1,479,095.99 |
| ING | 2,811,345.73 |
| Jefferson National | 2,455,309.25 |
| Life of Virginia/Genworth | 95,187.20[3] |
| Lincoln Benefit | 366,575.04 |
| MetLife | 1,700,791.15 |
| Midland | 1,897,006.36 |
| Minnesota Life | 379,033.01 |
| Nationwide | 11,395,384.65 |
| Pacific Life | 1,329,694.10 |
| Security Benefit | 3,000,578.56 |
| Transamerica | 909,907.21 |
| Western Reserve | 1,102,464.28 |
| **Revised Insurance Company Total** | **$33,932,120.71** |

| **Revised Insurance Company and Bond Issuer Combined Grand Total:** | **$46,330,077.61** |
|---|---|

---

[2] Supplement to Appendix A compiles all losses over the entire period of the scheme, from January 1995 to August 2010. For the period from January 1995 through June 30, 2007, Caramadre is solely responsible for these losses and no apportionment is necessary. For the period from July 1, 2007, to August 2010, when Radhakrishnan joined the scheme, Caramadre continues to be responsible, but the Court may exercise its discretion to apportion these losses with Radhakrishnan. See United States v. Salas-Fernandez, 620 F.3d 45, 49 (1st Cir. 2010) (when more than one defendant has contributed to a victim's loss, court may make each defendant liable for the full amount of restitution or apportion liability based on relative culpability). Apportionment is not addressed by this report and recommendation.

[3] This figure now includes the $40,882.77 in losses attributable to the two transactions involving James O'Donnell.

5