UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

————————————————————————————
                                    )
UNITED STATES OF AMERICA            )
                                    )
        v.                          )    CR. No. 11-186 S
                                    )
JOSEPH CARAMADRE; and               )
RAYMOUR RADHAKRISHNAN,              )
                                    )
            Defendants.             )
————————————————————————————)

## OPINION AND ORDER

WILLIAM E. SMITH, Chief Judge.

     The prosecution of Defendants Joseph Caramadre and Raymour Radhakrishnan has been complex from its inception.  Thus, it comes as no surprise that the question of restitution, which marks the end of this stage of the case, raises complicated issues that have been strenuously argued.

     Before the Court are a Report and Recommendation from Magistrate Judge Patricia A. Sullivan (ECF No. 202), a Supplemental Report and Recommendation (ECF No. 208), and Defendants' objections (ECF Nos. 206; 207).  For the reasons set forth below, the Reports and Recommendations are ADOPTED and the Defendants' objections are OVERRULED.

I.   Background

     On December 16, 2013, the Court sentenced both Defendants to terms of imprisonment to be followed by periods of supervised release.  The Court, however, reserved its ruling on the

restitution issue.  See 18 U.S.C. § 3664(d)(5).  At the request of the Court, Magistrate Judge Sullivan delved into the difficult issues surrounding restitution in this case. Magistrate Judge Sullivan held a three-day evidentiary hearing, reviewed arguments from both sides, and thoroughly examined the evidence.  She then issued a carefully-reasoned Report and Recommendation ("R&R") which identified victims of the Defendants' crimes and computed the actual losses suffered by these victims.  In total, Magistrate Judge Sullivan recommended ordering restitution in the amount of $46,289,194.84 – covering the criminal scheme from its beginning in January 1995 to its end in August 2010.  Subsequently, after additional submissions from the Government, Magistrate Judge Sullivan issued a Supplemental Report and Recommendation ("Supplemental R&R"), finding that the Government had proven that two additional transactions, totaling $40,882.77 in losses, should be added to the restitution amount – leading to a revised total recommended restitution award of $46,330,077.61.[1]

Both Defendants objected to Magistrate Judge Sullivan's R&R raising a litany of issues.  The Court reviews these objections

---

[1] In her Supplemental Report and Recommendation ("Supplemental R&R," ECF No. 208), Magistrate Judge Sullivan determined that the Government had failed to meet its burden in proving that a third transaction should be included in the restitution calculation.

de novo. 18 U.S.C. § 3664(d)(6).   The Court has considered and weighed Defendants' objections, and finds them without merit.

II.  Discussion

A.  Government's Burden

The Mandatory Victim's Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, requires that Defendants pay restitution to the victims of their crimes.   Under the MVRA, victims are those "directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern."  18 U.S.C. § 3663A(a)(2).

Defendants' argument before the Magistrate Judge and in the objection hinges on their contention that the Government has failed to meet its burden of establishing that entities, which were not expressly included in the Plea Agreement, were "victims" under the MVRA.   Furthermore, Caramadre and Radhakrishnan claim that the Government failed to establish the amounts of loss for each of the victims.

Specifically, Defendants argue that Magistrate Judge Sullivan erred in reaching her conclusion by relying upon: (1) an expansive reading of the Defendants' Plea Agreement, (2) portions of the Presentence Investigation Report, (3) the

underlying indictment, and (4) conduct outside the statute of limitations. In addition, Defendants objected to the testimony of Dr. Andrew Kalotay regarding losses to bond issuers and the testimony of Agent Troy Niro with respect to losses to insurance companies, including Agent Niro's use of a summary chart to prove losses.

Defendants admit that the Government "bears a low burden of proof" when determining restitution as compared to the burden it would face in seeking convictions for the underlying crimes. (Def.'s Mem. of Law in Supp. of Objection to R&R 3, ECF No. 206-1.) Still, the Government must tie each victim to the Defendants' conspiracy, and it does indeed bear the burden of establishing the loss of each victim by a preponderance of the evidence. 18 U.S.C. § 3664(e); United States v. Kearney, 672 F.3d 81, 92 n.8 (1st Cir. 2012). It may prove this loss by presenting "a modicum of reliable evidence . . . to establish a restitution award." United States v. Mahone, 453 F.3d 68, 74 (1st Cir. 2006) (internal citations and quotations omitted). The Government fails to meet this burden when it relies on mere "surmise" and "speculation." Id.

Here, to find that the Government tied each victim to the Defendants' scheme and met its burden of proof, Magistrate Judge Sullivan properly considered the Plea Agreement, the Presentence Investigation Report, trial testimony and the indictment. She

4

then determined that these documents and testimony, collectively with testimony and evidence taken by Magistrate Judge Sullivan during evidentiary hearings, established Defendants' liability. The Court adopts this analysis in its entirety.

While determining restitution, the normal rules of evidence do not apply. Catherine M. Goodwin, Federal Criminal Restitution § 9:2 (West 2013); see also United States v. Gallardo-Ortiz, 666 F.3d 808, 811 (1st Cir. 2012) (stating "we are mindful that the sentencing judge may consider all relevant information that has 'sufficient indicia of reliability to support its probable accuracy'; the usual rules of evidence do not pertain at sentencing.") (internal citation omitted). Defendants contend that Magistrate Judge Sullivan should have been limited to their Plea Agreement, and the statement of facts contained therein, to define the victims to whom restitution may be ordered. But the very cases Defendants rely on for this position — United States v. Emor, 850 F. Supp. 2d 176 (D.D.C. 2012) and United States v. Rand, 403 F.3d 489 (7th Cir. 2005), belie any such argument. In Emor, the district court held that where a defendant pleads guilty, a court determining the proper extent of restitution may "consider the plea agreement, the statement of the offense, the plea colloquy, and other statements made by the parties at the plea or sentencing stage, in addition to the indictment or information." Emor, 850 F.

Supp. 2d at 203.   Magistrate Judge Sullivan considered this type of evidence here.

A careful reading of Rand as well provides no help to Defendants' argument.   In Rand, the Court of Appeals for the Seventh Circuit rejected the defendant's argument that a restitution order was "invalid because it holds him responsible for acts . . . relating to victims that were not specifically identified in the original indictment and thus not covered by his guilty plea."   Rand, 403 F.3d at 493.   The Seventh Circuit reasoned that the plea agreement establishes the conduct for which a defendant may be held liable to make restitution, but the specific victim to whom restitution must be made need not be identified within the plea agreement.   Id. at 494-95.   Here, the Plea Agreement establishes that the Defendants engaged in a scheme to defraud insurance companies and bond issuers by making false statements or omissions after procuring and using the identities of the terminally ill through misrepresentations. These actions were all a part of the same scheme.   As such, "[h]aving pleaded guilty to conspiracy, [Defendants] may not then pick and choose the victims for which [they] will be held responsible."   Id. at 495.

Emor and Rand establish that Magistrate Judge Sullivan stood on firm ground in considering the evidence that she did. This evidence was of a kind properly considered, even where the

Defendants had entered guilty pleas. In addition, it contained the requisite indicia of reliability to be considered at sentencing.[2]

Next, Defendants argue that summary charts relied upon by Agent Niro are insufficient. This argument, however, overlooks that Agent Niro testified about the charts, how they were created, the data that he used to create them, and the way he verified this data. Such testimony far exceeds a situation where the Government merely submits a chart absent explanation. Indeed, the Government amplified its evidence with respect to these charts after questioning from the Defendants and Magistrate Judge Sullivan. Overall, Defendants were unable to undermine Agent Niro's testimony. The same can be said for Dr. Kalotay, who provided expert testimony establishing the losses sustained by bond issuers. When confronted with reliable evidence from both witnesses, Defendants did not counter that evidence with probative evidence of their own. United States v.

---

[2] Magistrate Judge Sullivan properly swept aside Defendants' blanket objection to the Presentence Investigation Report. "Vague and blanket objections lacking specific clarity are not sufficient" to preclude a sentencing court from relying on facts in the Presentence Investigation Report. United States v. Rodriguez, 711 F.3d 928, 940 (8th Cir. 2013), cert. denied, 134 S. Ct. 715 (2013); see also United States v. Olivero, 552 F.3d 34, 40 (1st Cir. 2009). Additionally, Magistrate Judge Sullivan properly considered evidence outside of the statute of limitations as permitted when determining the proper amount of restitution. United States v. Brown, 665 F.3d 1239, 1253 (11th Cir. 2011).

<u>Burdi</u>, 414 F.3d 216, 222 (1st Cir. 2005) (holding that the government's evidence of restitution value "at least [required defendant] to counter it with probative evidence of his own"). The Court credits the testimony of both witnesses.

Collectively, the evidence reviewed by Magistrate Judge Sullivan established the requisite connection between each of the victims and the underlying crimes.  In addition, the Government met its burden of demonstrating the amount lost by each of these victims. Therefore, the Court adopts the Report and Recommendation of Magistrate Judge Sullivan in its entirety.

B.   Apportionment of Restitution

Magistrate Judge Sullivan left open the question of the proper apportionment of restitution among the Defendants.  Where multiple defendants are responsible for the victims' losses, each may be held liable for the entire loss, or the court may choose to divide the loss among the several defendants.  <u>United States v. Salas-Fernandez</u>, 620 F.3d 45, 48 (1st Cir. 2010); 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.").  While the statute suggests that courts reflect upon relative culpability and the economic

8

situation of the defendant, no specific formula need be applied to apportion restitution.  Salas-Fernandez, 620 F.3d at 48.

The two Defendants are not equally culpable for the victims' losses.  The restitution award of $46,330,077.61 reflects losses from the inception of the criminal conspiracy in 1995 to its culmination in 2010. Caramadre played a key role in the scheme during that 15 year period, but Radhakrishnan became involved in the conspiracy on July 1, 2007.

From the time Radhakrishnan joined the conspiracy until the scheme ended, insurance companies and bond issuers suffered losses of $33,197,425.26.  Radhakrishnan served a vital role during this time period.  Indeed, to the terminally ill people taken advantage of, he was the personification of the Caramadre enterprise.  Additionally, Radhakrishnan provided false information to the defrauded insurance companies and bond issuers. After reviewing these factors, the Court orders Radhakrishnan to pay restitution in the amount of $33,197,425.26 – representing the losses suffered as a result of the scheme from July 1, 2007 to the end of the conspiracy.

Caramadre may aptly be described as the mastermind of the conspiracy at issue in this case.  He was vitally important to its success for a period of 15 years.  After reviewing these factors, the Court orders Caramadre to pay restitution in the

9

amount of $46,330,077.61 – representing the entire loss from the beginning of the conspiracy to its conclusion.

Caramadre and Radhakrishnan are joint and severally liable for $33,197,425.26. Caramadre is solely liable for the remaining $13,132,652.35. The Court notes that the total amount of restitution received by the victims shall not exceed $46,330,077.61. See United States v. Scott, 270 F.3d 30, 53 (1st Cir. 2001). Defendants shall make restitution to those victims and in the amounts listed in Appendices One and Two attached hereto.[3] See United States v. Ani, 515 F. App'x 33, 34 (2d Cir. 2013) (noting that the district court must provide a list of victims and amount of restitution for each victim).

III. Conclusion

For the foregoing reasons, Magistrate Judge Sullivan's R&R, filed on November 6, 2013, and her Supplemental R&R, filed on November 26, 2013, are ACCEPTED. Defendants' objections are OVERRULED.

IT IS SO ORDERED.

/s/ William E. Smith
William E. Smith
Chief Judge
Date:  January 31, 2014

---

[3] The tables set forth at Appendices One and Two are slightly reconfigured versions of those set forth as exhibits to the R&R and the Supplemental R&R.  The figures remain unchanged.

# APPENDIX ONE

## RESTITUTION OWED JOINTLY AND SEVERALLY
## BY CARAMADRE AND RADHAKRISHNAN

### Restitution to Insurance Companies

| Insurance Company | Restitution Amount Owed |
|---|---|
| AXA Equitable | 32,326.37 |
| Genworth | 1,199,093.46 |
| Hartford Life | 1,479,095.99 |
| ING | 2,312,062.84 |
| Jefferson National | 1,760,532.06 |
| MetLife | 586,157.39 |
| Midland | 542,535.50 |
| Minnesota Life | 379,033.01 |
| Nationwide | 9,628,530.89 |
| Security Benefit | 1,149,426.08 |
| Transamerica | 805,926.18 |
| Western Reserve | 1,102,464.28 |
| **Insurance Company Total** | **$20,977,184.05** |

# APPENDIX ONE, *continued*

## RESTITUTION OWED JOINTLY AND SEVERALLY
## BY CARAMADRE AND RADHAKRISHNAN

### Restitution to Bond Issuers

| Bond Issuer | Restitution Amount Owed |
|---|---|
| General Motors ACCEP Corp. | 4,639,275.86 |
| Countrywide Financial | 2,727,770.59 |
| CIT Group Inc. | 2,330,100.04 |
| Bear Stearns Co. Inc. | 511,070.31 |
| Lehman Brothers Holdings | 327,204.93 |
| Amer Genl Fin | 312,191.64 |
| Lasalle BK NA Chicago Ill | 208,107.81 |
| Genworth | 197,330.30 |
| Bank of America Corp. | 193,381.90 |
| Hancock John Life Ins | 163,233.73 |
| Standard Fed BK NA | 112,360.16 |
| Prudential Fin. | 93,096.19 |
| Mercantile BK Orlando Fla | 50,531.21 |
| Carolina First BK | 48,717.58 |
| General Elec Cap Corp. | 44,340.15 |
| Caterpillar Finl Svcs Corp. | 42,772.25 |
| Protective Life | 34,939.61 |
| HSBC Finance CP | 25,593.47 |
| Firstbank PR | 25,089.86 |
| Westernbank PR | 24,124.11 |
| Intl Lease | 23,740.26 |
| Marshall & Ilsley Corp | 18,144.82 |
| Merrill Lynch BK USA | 17,867.77 |
| MBIA Inc. | 12,354.64 |
| Hartford Life | 9,710.72 |
| Providian Natl BK | 7,594.98 |
| Compass BK | 5,525.58 |
| Tennessee Valley Auth | 4,568.45 |
| Fed Natl Mtg Assn | 3,980.33 |
| Federal Home Ln Mtg Corp. | 3,276.73 |
| Provident Bank of Cincinnati Ohio | 2,245.23 |
| **Bond Issuer Total** | **$12,220,241.21** |

| | |
|---|---|
| **Grand Total Joint and Several Restitution Owed by Radhakrishnan and Caramadre** | **$33,197,425.26** |

# APPENDIX TWO

## RESTITUTION OWED ONLY BY CARAMADRE
## FOR THE PERIOD BEFORE RADHAKRISHNAN JOINED THE SCHEME

### Restitution to Insurance Companies

| Insurance Company | Restitution Amount Owed |
|---|---|
| American National | 64,297.04 |
| AXA Equitable | 508,535.23 |
| Genworth | 2,766,427.30 |
| GoldenAmerica | 439,068.78 |
| ING | 499,282.89 |
| Jefferson National | 694,777.19 |
| Life of Virginia/Genworth | 95,187.20 |
| Lincoln Benefit | 366,575.04 |
| MetLife | 1,114,633.76 |
| Midland | 1,354,470.86 |
| Nationwide | 1,766,853.76 |
| Pacific Life | 1,329,694.10 |
| Security Benefit | 1,851,152.48 |
| Transamerica | 103,981.03 |
| **Insurance Company Total** | **$12,954,936.66** |

### Restitution to Bond Issuers

| Bond Issuer | Restitution Amount Owed |
|---|---|
| General Motors ACCEP Corp. | 64,362.97 |
| Lehman Brothers Holdings | 2,678.81 |
| Lasalle BK NA Chicago Ill | 11,942.23 |
| Hancock John Life Ins | 49,637.96 |
| Standard Fed BK NA | 2,974.56 |
| Marshall & Ilsley Corp. | 35,819.58 |
| Caterpillar Finl Svcs Corp. | 2,648.69 |
| Bank Hapoalim B M New York | 5,791.74 |
| SLM Corp. | 1,859.15 |
| **Bond Issuer Total** | **$177,715.69** |

| **Grand Total Restitution Owed Only by Caramadre for the Period Before Radhakrishnan Joined the Scheme** | **$13,132,652.35** |
|---|---|

13