```
                IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF RHODE ISLAND


* * * * * * * * * * * * *   CRIMINAL ACTION
UNITED STATES OF AMERICA *  11-186-S
                         *
VS.                      *  MAY 14, 2013
                         *
JOSEPH CARAMADRE         *
                         *  PROVIDENCE, RI
* * * * * * * * * * * * *


           HEARD BEFORE THE HONORABLE WILLIAM E. SMITH

                         DISTRICT JUDGE

                      (Chambers Conference)
```

**APPEARANCES**:

FOR THE GOVERNMENT:         JOHN P. McADAMS, AUSA
                            U.S. Attorney's Office
                            50 Kennedy Plaza
                            Providence, RI  02903

FOR THE DEFENDANT
Joseph Caramadre:           RANDY OLEN, ESQ.
                            Olen Law Office
                            55 Bradford Street
                            Suite 203
                            Providence, RI  02903

Court Reporter:             Anne M. Clayton, RPR
                            One Exchange Terrace
                            Providence, RI  02903


          Proceeding reported and produced by computer-aided
                            stenography

1                THE COURT:  We're on the record in a chambers
2    conference in the matter of the United States versus
3    Joseph Caramadre.  I've been discussing with counsel
4    the issue of notes and other documents, which Defendant
5    has requested to be turned over to new counsel; and
6    having reviewed a large group of documents that was
7    submitted to me in camera for review over the weekend,
8    I concluded that a group of documents that was in the
9    material given to me should be turned over in spite of
10   the fact that it probably qualifies as attorney work
11   product because it is material that arguably has some
12   relevance to the claim that's being made in this
13   motion.  And so I'm going to turn that material over to
14   counsel for Mr. Caramadre and to the Government, and
15   we'll make a copy of those materials and they will be
16   made part of the file in this case.
17            So we'll mark this as Court Exhibit 1.  This
18   will be the documents that have been reviewed in camera
19   and turned over to counsel.
20            So Ryan, mark those as Court Exhibit 1.
21            (Court Exhibit 1 marked.)
22            So what I've handed over to counsel for
23   Mr. Caramadre and the Government are the following
24   documents Bates stamped 124, 231, 236, 240, 244, 254,
25   256, 260, 279, 283.  The next page doesn't seem to have

1    a Bates stamp on it.  You all see this?
2         MR. McADAMS:  I think it's 605.  If you look in
3    the middle of the bottom.
4         THE COURT:  You're right.  605.  Thank you.
5    661, 16, 18, 20, 256, I think that's a repeat.  271,
6    247, 248 and that's it.
7         All right.  Now, Mr. Gerstein on behalf of
8    Mr. Lepizzera and Mr. Traini would like to incorporate
9    the arguments made on the record this afternoon with
10   respect to the first packet of these documents for all
11   of documents that I just listed; is that right?
12        MR. GERSTEIN:  That's correct, your Honor.  I
13   would just point out in the packet of documents that I
14   was provided this morning, and it's probably just a
15   function of miscopying, I do not have page 254.  So
16   perhaps Ryan or somebody can just make a copy of that
17   page for me.
18        THE COURT:  Okay.  We'll get that for you.
19   Actually, that number, 254 was actually put into
20   evidence this afternoon, I think, right?
21        MR. McADAMS:  I think so, unless the same girl
22   doodles on multiple pages.
23        MR. GERSTEIN:  254, you have that in documents I
24   gave you as 473.
25        MR. McADAMS:  Different numbers.

1               THE COURT:  Probably may be in there.
2          Now, we will make sure that the entire group of
3     documents that was turned over and reviewed in camera
4     but not turned over to Mr. Caramadre's new counsel,
5     we'll make sure that's part of the record so in the
6     event there's some appeal that we have that in camera
7     material retained.  Okay.  We'll do that.
8          Then the last thing I'll put on the record
9     before I let Mr. Olen or Mr. Watt express their
10    objections is that there was a final or next to final
11    submission of documents that I required counsel to
12    prepare over the weekend relating to I guess it's
13    mostly e-mails between counsel, also asserted to be
14    attorney work product.  And these documents we now have
15    under review, and I'm going to review them in camera
16    and see if anything in there needs to be turned over to
17    counsel.  And if I do determine that material should be
18    turned over to counsel once we assess what, if any,
19    documents are to be turned over, I'll consider whether
20    that necessitates any further continuance of the
21    hearing that we're involved in.  I should have a handle
22    on that by tomorrow morning.
23         And finally, Mr. Gerstein is going to work with
24    Mr. Lepizzera to make sure that any e-mails over a
25    couple of day gap in his review, if there are any

1     e-mails, get sent to me as well tomorrow morning.
2              MR. McADAMS:  I think it's November 20th to the
3     end of their representation.
4              THE COURT:  So it's the day after the plea to
5     the end of representation.
6              MR. McADAMS:  I think Mike said he hadn't done
7     it, he hadn't checked it over the weekend.
8              THE COURT:  That's the gap period he will look
9     that over.
10             Now, Mr. Olen and Mr. Watt, you wanted to put on
11    the record your objection.
12             MR. OLEN:  Please, your Honor, I don't mean to
13    belabor it.  I wanted to reiterate what I said earlier
14    today.  I don't think it was on the record.  This whole
15    issue derives from whether or not in my view
16    Mr. Caramadre is entitled to his file.  And when I was
17    originally delivered the file, I was led to believe
18    that we did have the entire file; and as the process
19    went on, we discovered some documents that were being
20    forwarded to myself and to Mr. McAdams pursuant to an
21    earlier decision of the Court and I noticed that they
22    were redacted, there were some redacted areas of these
23    things and that was the first indication I had that I
24    did not have the entire file.
25             So I requested the entire file and this work

1  product issue came up.  I think we've agreed that
2  Mr. Caramadre is entitled to his file minus any
3  legitimate work product.  So then the question becomes
4  what is work product and who gets to decide what is
5  work product.  Now, in a chambers conference on April
6  25th, the Court indicated there were two ways to handle
7  this.  One would be to allow us to look at
8  Mr. Caramadre's entire file under a protective order
9  and another way was just to submit documents to the
10 Court for an in camera inspection.  At that time, the
11 Court asked Mr. Gerstein to run that by Mr. Lepizzera.
12              THE COURT:  We've already been over this.
13              MR. OLEN:  I don't think that's on the record.
14              THE COURT:  We did do this on the record.
15              MR. OLEN:  Is it on the record?
16              THE COURT:  Yes.
17              MR. OLEN:  Well, in the past few days, actually
18 yesterday after certain materials were turned over to
19 me, and there was an indication that the work product
20 itself constituted a couple hundred pages, those couple
21 hundred pages turned out to be 11,000 pages, and it was
22 related to us that that was the only -- the only
23 materials remaining in the file.  Yesterday, I
24 received, in the afternoon of Mother's Day, I received
25 a disk through Mr. Gerstein that contains another

1    apparently 4,500 or so documents from Mr. Caramadre's
2    file that had still not been turned over and apparently
3    are not subject to a claim of work product privilege
4    because they were turned over to me.
5         I would ask this Court for a very brief
6    continuance in order for us to digest those documents.
7    That's been denied.  I feel that puts us in a position
8    of not being able to effectively present our case under
9    cross-examination.  And under the circumstances under
10   which this has come about, I believe this to be, as I
11   said earlier, a colossal violation of due process.
12   Because we didn't get these materials, we now can't use
13   them.
14        Secondly, your Honor, I want to note my
15   objection to the way in which the resolution of this
16   issue has been decided, that is to have the Court
17   review these in camera without our being able to see
18   them.  First of all, I can't speak to the issue of what
19   documents should be privileged and what shouldn't be
20   because I have never seen them; and with all respect, I
21   believe that I know that as the Court looks at them in
22   camera the first consideration is whether or not
23   they're relevant to Mr. Caramadre's claims and his
24   motion.  Respectfully, I don't believe the Court should
25   be in a position to decide what's relevant to

1  Mr. Caramadre's motion.  I think that we should be in
2  the position to make that determination and so the far
3  better answer to me is that we be entitled to review
4  these documents under a protective order.  We can
5  identify what's in dispute and the Court can deal with
6  that with what seems to me to be a much fairer and more
7  intelligible manner.
8           THE COURT:  You said a few things that need some
9  clarification.
10          First of all -- and let's make sure I understand
11 this correctly as well.  The thousands of documents
12 that you've complained about that were turned over to
13 you over the weekend, there's a lot of repetition in
14 those documents.  While there may be thousands of
15 pages, it's e-mail chains.  But my understanding from
16 Mr. Gerstein is that these are documents that do not
17 fall within the four corners of the earlier order that
18 I issued in this case that required documents to be
19 turned over that related to the specific claims being
20 made in the motion.
21          Is that right?
22          MR. GERSTEIN:  That's right.
23          THE COURT:  So all of these documents would be
24 documents that counsel has on review determined to be
25 outside the four corners of that order.  And that order

1   is fairly broad in its scope.  What it requires counsel
2   to turn over -- I forget the ECF number of the order,
3   but one of you may have it.
4           MR. GERSTEIN:  Are you speaking about the
5   initial order, Judge?
6           THE COURT:  My initial order.
7           MR. GERSTEIN:  Your initial order looks like
8   it's document 140, and it's dated April 12th, 2013.
9           THE COURT:  What I said in that order was any
10  files, notes, correspondence, e-mails or other
11  documents relating to the plea negotiations or the
12  decision to plead are to be disclosed to the
13  Government.  While the scope of this order covers the
14  entire representation, the central focus should be from
15  the beginning of trial, November 13, through the entry
16  of Caramadre's plea on November 19.
17          Now, in the course of this review of materials,
18  I've been, I think, overly generous in my review and
19  disclosure of additional work product materials to
20  counsel and allowed disclosure of attorney work
21  product, notes that even touch on something that's been
22  maybe mentioned in your very general allegations in
23  your motion to withdraw the plea.
24          This group of documents that you've just made
25  reference to that were turned over to you over the

1    weekend would, again, fall outside the scope of that
2    order.  As I said earlier, if I find anything in what's
3    been turned over to me that's claimed to be attorney
4    work product, the stuff that's been turned over to
5    counsel is not claimed to be attorney work product, if
6    I find anything in there that touches on things that
7    have been mentioned, I'll probably require disclosure
8    of those materials because I'm bending over backwards
9    to try to help you make out whatever case you want to
10   make out.  But I have no obligation to let you turn
11   this thing into a generalized fishing expedition that
12   explores the entire scope of the representation between
13   Mr. Caramadre and former counsel that may be designed
14   for some future purpose of suing these lawyers or
15   bringing disciplinary complaints or whatever it is you
16   want to do with it.
17         So I'm not going to require every piece of paper
18   that is legitimate work product material to be turned
19   over to you so that you can try to figure out what
20   to -- how you might fit it into this thing.  I probably
21   expanded the scope of this hearing well beyond what it
22   should have been, but I've done that in an abundance of
23   caution; but as I've said to you before, I haven't seen
24   a single piece of paper in the thousands of pages that
25   I've reviewed over the weekend that in any way would

1    appear to support the claim you're making in this
2    motion.
3         Now, maybe when you have them you can use them
4    to examine Mr. Traini and Mr. Lepizzera.  Maybe they
5    will become something I can't see on the face of them.
6    That's why I'm giving that to you and giving you that
7    chance.  This is not a colossal violation of the
8    process.  If anything it's bending over backwards to
9    give you and your client due process.
10        So that's where we are.  If there is something
11   that turns up in these materials that requires a
12   continuance, I've already reserved a day next Monday in
13   the event that becomes necessary.  But based on what
14   I've seen thus far, at least right now it doesn't
15   appear likely to be necessary.
16        MR. OLEN:  May I respond in 20 seconds?
17        THE COURT:  Go ahead.
18        MR. OLEN:  The order that we're referring to,
19   the earlier order was in response to a Government's
20   motion to turn over the file.  The order in that
21   case --
22        THE COURT:  And you received all of those
23   documents as well the Government.
24        MR. OLEN:  Yes.  That order pertained to what
25   the Government is entitled to have.  It doesn't pertain

1   to what Mr. Caramadre is entitled to.  Mr. Caramadre is
2   entitled to the file.
3              THE COURT:  I made clear to you -- I think I put
4   this on the record.  If I haven't, you can say it
5   again.  You can take your argument and your dispute
6   with Mr. Lepizzera and Mr. Traini about Mr. Caramadre's
7   entitlement to the file and the work product contained
8   in the file that doesn't relate to this motion, you can
9   take that to wherever you should take that, whether
10  it's the disciplinary counsel or the ethics advisory
11  committee or ultimately the Rhode Island Supreme Court.
12  You're free to do that.  And maybe they'll agree with
13  you and order these folks to turn over every piece of
14  paper, the attorney work product, but I don't need to
15  become the arbiter of that dispute that you and
16  Mr. Caramadre have with prior counsel.  All I'm trying
17  to do is get through this motion to withdraw a plea.
18  All I'm interested in is documents that relate to
19  allegations that you've made on behalf of Mr. Caramadre
20  in the motion to withdraw the plea, and I ordered those
21  kinds of documents to be turned over and you received
22  them.  And now I've gone further and ordered work
23  product that touches on some of the things that you've
24  mentioned in your papers, which frankly don't appear to
25  have any serious relevance to this proceeding.  I've

1    ordered those turned over to you.  I'm not going to
2    become the arbiter to turn over the file.
3         Is there anything else you want to say?
4         MR. OLEN:  Thank you for allowing me to put it
5    on the record.  To the extent the Court thinks there is
6    some kind of motive, I am not getting involved in suing
7    any attorneys or filing any disciplinary complaints.
8    That's not my motivation.  I just want to do the best
9    job I can for Mr. Caramadre on this motion, and I won't
10   be involved in anything like that.  So to the extent
11   the Court noted that, I wanted to clear that up.
12        THE COURT:  We can go off the record.
13        (Discussion off the record.)
14        (Chambers conference concluded at 5:30 p.m.)

<u>C E R T I F I C A T I O N</u>

      I, Anne M. Clayton, RPR, do hereby certify that the foregoing pages are a true and accurate transcription of my stenographic notes in the above-entitled case.

/s/ Anne M. Clayton

_____

Anne M. Clayton, RPR

February 12, 2014

_____

Date