```
                  UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF RHODE ISLAND

_____
                                     )
UNITED STATES OF AMERICA             )
                                     )
     v.                              )    CR. No. 11-186 S
                                     )
JOSEPH CARAMADRE; and                )
RAYMOUR RADHAKRISHNAN,               )
                                     )
          Defendants.                )
_____)
```

**ORDER**

WILLIAM E. SMITH, Chief Judge.

Defendant Joseph Caramadre has filed a motion in this Court pursuant to Rule 10(c) of the Federal Rules of Appellate Procedure for settlement and approval of his Rule 10(c) statement of an untranscribed in-chambers conference. (ECF No. 256.) The government has responded to this motion. (ECF No. 257.) Rule 10(c) provides that this Court has discretion to approve, or not, the statement proposed by the Defendant as to what transpired or was said by the Court during the chambers conference referenced. The Court declines to approve Defendant's proposed statement. The Court rather provides the following summary, to the best of its recollection, of that conference.

Defendant pleaded guilty pursuant to a plea agreement on November 19, 2012; the Court conducted an in-chambers conference

on January 15, 2013 after learning that Defendant had dismissed his trial counsel and retained present counsel to represent him. The Court had received the information through the clerk's office that new counsel intended to file a motion to withdraw Defendant's plea of guilty.

It is a common practice for this Court to hold chambers conferences in both civil and criminal cases, particularly with respect to matters or situations that may have significant consequences for the parties and/or counsel, or where it may be useful to conserve counsel's and the Court's resources and/or where significant scheduling challenges may be present. This case presented all three issues. This form of early intervention has proven effective in managing cases and solving problems in countless cases, both criminal and civil, over the years. (In fact, in this case, the Court held many such conferences on issues ranging from the government's proposal to take pre-indictment video depositions in 2009, to the very involved jury selection process and other issues in between.)

At the referenced conference, the Court initially inquired of counsel what the legal basis for the suggested motion to withdraw the plea would be. Counsel indicated that he was not yet sure of the basis. This equivocal response left the Court with the distinct impression that the motion to withdraw the plea which was forthcoming had not been well thought out by

counsel or Defendant, and that Defendant might be unaware of the potential difficulties inherent in such a motion or the consequences of the motion, whether it was granted or denied.

Given the fact that counsel did not appear certain of his basis for filing such a motion to withdraw the plea, the Court made several observations to assist counsel and Defendant in considering whether such a motion was in fact justified and/or in Defendant's best interest.  Among the observations that the Court made were the following.

First, the Court inquired of counsel whether he had had the opportunity to review the transcript of the first week of trial and assess the strength of the government's evidence against Defendant.  Counsel indicated that he had not had the opportunity to review the trial transcript yet.  The Court explained to counsel that the evidence had been quite compelling and that this may well have been what motivated Defendant, in consultation with his attorneys, to reach the conclusion that a plea was in his best interest.

Second, the Court pointed out to counsel that if the motion to withdraw the plea was successful, counsel would be in the position of defending the case against what appeared to be very compelling evidence.  The Court therefore emphasized to counsel that he should review the evidence carefully in order to

3

properly advise Defendant on whether a motion to withdraw the plea was advisable before filing his motion.

Third, the Court wished to make counsel aware, based on prior experience, of the risks associated with filing a motion to withdraw a plea that was unsubstantiated and unsuccessful. In this context, the Court emphasized to counsel that Defendant could place himself in a difficult situation by moving to withdraw his plea given that he had sworn, under oath, that his plea was knowing and voluntary, and that the underlying facts supporting the plea were in fact true. The Court's goal here was to make sure that Defendant understood that, by filing the motion to withdraw the plea, he would inevitably be conceding that he had perjured himself in the plea hearing, which could lead to additional charges against him. If Defendant was unsuccessful, his explanation of why he sought to withdraw his plea could work against him at the time of sentencing because it would be used by the government, and potentially seen by the Court, as a withdrawal of his acceptance of responsibility.

Fourth, the Court wished to advise counsel of the serious consequences to Defendant of successfully withdrawing his plea and proceeding to trial, given the very high guideline range associated with the case (life imprisonment). It was the Court's view, based on its understanding of the evidence compiled by the government in the run-up to trial, and presented

during the first week of trial, that Defendant faced a strong likelihood of being convicted at trial. Thus, if the motion to withdraw the plea was successful, and Defendant proceeded to trial, Defendant stood a good chance of being convicted and could be in a much more precarious position at sentencing than under the plea agreement.

Finally, the Court wished to emphasize to new counsel that he had obligations to the Court to ensure that his filings were supportable and made in good faith. The Court believed this admonition was appropriate for several reasons. Defendant had highly qualified trial counsel who, in the Court's view as expressed in a later written opinion, had represented him very ably throughout the trial and eventual plea; Defendant had a high degree of legal and business acumen as an individual; and the Court had engaged in a painstaking process to ensure that his plea was knowing and voluntary at the plea colloquy (and in conference with counsel beforehand). In addition, the Court had not dealt previously with new counsel and thus was unaware of his abilities and/or his reputation in the legal community. Given all of these considerations, it seemed prudent to the Court to emphasize to this attorney his obligations to the Court.

Defendant's motion references numerous isolated phrases which he contends may have been used by the Court in expressing

5

the views noted above.  It is quite possible that the Court used some or all of the terms mentioned in the motion and reflected in counsel's notes, but if such terms were used (and the Court does not specifically recall the exact words used in expressing the views discussed above) the phrases and terms were used in order to emphasize the points discussed above in the Court's typical plain-spoken manner and were expressed in such a way as to be helpful to counsel in deciding how to advise his client about how to proceed.

The foregoing statement of what transpired during the January 15, 2013 conference is SETTLED AND APPROVED pursuant to Rule 10(c).  The Clerk is directed to transmit this statement to the First Circuit as part of the record on appeal.

IT IS SO ORDERED.

/s/ WESmith
_____
William E. Smith
Chief Judge
Date:  January 5, 2015