UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                              )
JOSEPH A. CARAMADRE           )
                              )
     v.                       )        Cr. No. 11-186-WES
                              )
UNITED STATES OF AMERICA      )
_____)
```

**MEMORANDUM AND ORDER**

WILLIAM E. SMITH, Chief Judge.

Defendant/Movant Joseph A. Caramadre has filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 ("Mot. to Vacate," ECF No. 267), and supporting memorandum ("Caramadre Mem.," ECF No. 267-1), in the above-captioned matter. The Government has objected to the Motion ("Gov't Obj.," ECF No. 271). Caramadre thereafter filed a reply ("Caramadre Reply," ECF No. 273), to which the Government filed a sur-reply ("Gov't Sur-Reply," ECF No. 274). The Court has determined that no hearing is necessary. For the reasons that follow, the Motion to Vacate is DENIED.

I.    Background and Travel

The background of the case is taken from the Court's Memorandum of Decision (ECF No. 181) explaining its denial of Caramadre's motion to withdraw guilty plea ("Mot. to Withdraw Plea," ECF No. 122). The travel is taken from the Court's Docket.

On November 17, 2011, after a lengthy investigation including pre-indictment depositions and Grand Jury proceedings, the Grand Jury returned a detailed indictment against Defendants Caramadre and Raymour Radhakrishnan. The Indictment charged both Defendants with sixty-five counts including wire fraud, mail fraud, conspiracy, identity fraud, aggravated identity theft, and money laundering. Caramadre was also charged with one count of witness tampering. At its core, the Indictment alleged that Caramadre devised a fraudulent scheme, later joined by Radhakrishnan, to secure the identities of terminally ill people through material misrepresentations and omissions. Caramadre and Radhakrishnan allegedly made millions of dollars by taking these fraudulently obtained identities, making additional misrepresentations to insurance carriers, and then purchasing variable annuities and corporate bonds with death-benefit features. Because of the vast scope of the Indictment and the number of government witnesses, trial was anticipated to last over three months. The jury empanelment process was lengthy as well, involving an extensive questionnaire and individual voir dire.

Trial began on Tuesday, November 13, 2012. After four days of trial, on Monday, November 19, 2012, Caramadre and Radhakrishnan entered guilty pleas pursuant to a package plea agreement (the "Plea Agreement") in which they both pleaded guilty to Counts Nine (wire fraud) and Thirty-three (conspiracy to commit mail fraud, wire fraud, and identity theft). Sentencing was scheduled for March 2013 in anticipation of considerable disagreement over the loss amounts and restitution. All was quiet until January 2013, when Caramadre's attorneys moved to withdraw from the case and his new attorneys alerted the Court that Caramadre would be filing a motion to withdraw his plea. The Motion was eventually filed on February 28, 2013.

United States v. Caramadre, 957 F.Supp.2d 160, 165 (D.R.I. 2013)

(internal citations omitted) ("Caramadre IV"); see also United

States v. Caramadre, 807 F.3d 359, 364-65 (1st Cir. 2015) (denying

Caramadre's direct appeal) ("Caramadre V"), cert. denied, Caramadre v. United States, 136 S. Ct. 2455 (2016) ("Caramadre VI").[1] After an evidentiary hearing spanning four days, the Court denied Caramadre's Motion to Withdraw Plea from the bench on May 20, 2013. The Court issued a Memorandum of Decision on August 1, 2013.

Caramadre was sentenced on December 16, 2013, to 72 months' incarceration as to Count Nine and a concurrent term of 60 months' incarceration as to Count Thirty-Three, to be followed by three years of supervised release on each Count, also to run concurrently, and a special assessment of $200. Restitution was to be determined at a later date. The Government moved to dismiss the remaining counts, and the Court granted the motion. Judgment issued on December 26, 2013, followed on February 25, 2014, by an

---

[1] Throughout this Memorandum and Opinion, the Court will reference a number of decisions rendered in this case. The Court will refer to them, chronologically, as follows: United States v. Caramadre, 882 F. Supp. 2d 302 (D.R.I. 2012)(denying Radhakrishnan's motion to sever) ("Caramadre I"); United States v. Caramadre, No. CR 11-186 S, 2012 WL 4364529 (D.R.I. Sept. 21, 2012)(denying Caramadre's motion to sever) ("Caramadre II"); United States v. Caramadre, Cr. No. 11-186 S, 2012 WL 4762189 (D.R.I. Oct. 5, 2012)(denying Caramadre's motion to waive jury trial) ("Caramadre III"); United States v. Caramadre, 957 F. Supp. 2d 160 (D.R.I. 2013)(denying Caramadre's motion to withdraw guilty plea) ("Caramadre IV"); United States v. Caramadre, 807 F.3d 359 (1st Cir. 2015)(denying Caramadre's direct appeal) ("Caramadre V"); Caramadre v. United States, 136 S. Ct. 2455 (2016)(denying Caramadre's petition for writ of certiorari) ("Caramadre VI").

Amended Judgment, which included the restitution amounts which had been determined.

Caramadre filed Notices of Appeal of both the Judgment and the Amended Judgment. The Court of Appeals for the First Circuit denied Caramadre's appeal on December 7, 2015. The court's Mandate issued on January 20, 2016. On May 23, 2016, the Supreme Court denied further review.

On May 15, 2017, Caramadre timely filed the instant Motion to Vacate.

II. Law

A. Section 2255

Section 2255 provides in relevant part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Generally, the grounds justifying relief under 28 U.S.C. § 2255(a) are limited. A court may grant relief pursuant to § 2255 in instances where the court finds a lack of jurisdiction, a constitutional error, or a fundamental error of law. United States

4

v. Addonizio, 442 U.S. 178, 185 (1979). "[A]n error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." Id. (internal quotation marks omitted). Moreover, § 2255 is not a substitute for direct appeal. Knight v. United States, 37 F.3d 769, 772 (1st Cir. 1994)(citing cases).

B.    Strickland

The Sixth Amendment guarantees defendants the right to effective assistance of counsel. Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993)(citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). However, "[t]he Constitution does not guarantee a defendant a letter-perfect defense or a successful defense; rather, the performance standard is that of reasonably effective assistance under the circumstances then obtaining." United States v. Natanel, 938 F.2d 302, 309-10 (1st Cir. 1991).

A defendant who claims that he was deprived of his Sixth Amendment right to effective assistance of counsel must demonstrate:

(1)   that his counsel's performance fell below an objective standard of reasonableness; and
(2)   a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

Strickland, 466 U.S. at 687-88, 694. In assessing the adequacy of counsel's performance, a defendant "'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' and the court then determines whether, in the particular context, the identified conduct or inaction was 'outside the wide range of professionally competent assistance.'" United States v. Manon, 608 F.3d 126, 131 (1st Cir. 2010)(quoting Strickland, 466 U.S. at 690). With respect to the prejudice requirement under Strickland, a "reasonable probability is one sufficient to undermine confidence in the outcome. In making the prejudice assessment, [the court] focus[es] on the fundamental fairness of the proceeding." Id. (internal citations and quotation marks omitted). "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687; see also Reyes-Vejerano v. United States, 117 F. Supp. 2d 103, 106 (D.P.R. 2000)("The petitioner has the burden of proving both prongs of this test, and the burden is a heavy one."). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.

Strickland instructs that "[j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689; see also id. ("It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable."). The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Moreover, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Finally, "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689.

The same principles apply in the context of guilty pleas. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). The Hill Court held that "the two-part Strickland v. Washington test applies to

challenges to guilty pleas based on ineffective assistance of counsel." Id. at 58; see also Padilla v. Kentucky, 559 U.S. 356, 371 n.12 (2010)("In Hill, the Court recognized—for the first time—that Strickland applies to advice respecting a guilty plea."). The first prong of the Strickland test is nothing more than a restatement of the standard of attorney competence described above. Hill, 474 U.S. at 58.

> The second, or "prejudice," requirement, on the other hand, focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

Id. at 59; see also Lee v. United States, 137 S. Ct. 1958, 1965 (2017)(quoting Hill); Padilla, 559 U.S. at 372 (noting that "to obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances"); Lafler v. Cooper, 566 U.S. 156, 163 (2012) ("In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice."). However, "[c]ourts should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporary evidence to

substantiate a defendant's expressed preferences." <u>Lee</u>, 137 S. Ct. at 1967.

III. Discussion

Caramadre presents one ground for relief: that, as a result of the ineffective assistance of his trial counsel, "his guilty plea was not knowing and voluntary and as a result, his 5th and 6th Amendment rights were abridged." (Mot. to Vacate 5.) Specifically, Caramadre asserts that:

> [H]e was deprived of his 5th Amendment rights to due process of law and his constitutional right to present a complete defense, including the right to present witnesses in his own defense, as well as his 6th Amendment right to the effective assistance of counsel, as a result of his trial counsels' failure to undertake the steps necessary to have determined that Petitioner's co-defendant, Raymour Radhakrishan, was willing to provide compelling exculpatory evidence on Petitioner's behalf if Mr. Radhakrishan was tried at a separate trial and further, that it constituted ineffective assistance of counsel for the failure of his trial counsel to move before the District Court for a severance pursuant to Rule 14 of the Fed. R. Crim. Pro., based upon Petitioner's need for the testimony of co-defendant, Raymour Radhakrishnan, and that as the result of Petitioner's counsels' ineffective assistance, Petitioner was induced to enter a guilty plea, which he would not have entered but rather would have insisted on going to trial. As a result, Petitioner's guilty plea was not a knowing and voluntary waiver of his right to a trial . . . .

(<u>Id.</u>) The Government counters that Caramadre's claim is procedurally barred (Gov't Obj. 3), and that, in any event, Caramadre has failed to meet his burden of demonstrating that

counsels' performance was constitutionally deficient and that he suffered prejudice as a result (id. at 1).

A.   Procedural Default

The Government contends that Caramadre's current claim is procedurally barred because:

> Caramadre already thoroughly argued that his former attorneys were ineffective in the context of his motion to withdraw his guilty plea.  In that motion, petitioner made every argument he could imagine in support of his assertion that his attorneys committed serious errors that caused him to enter a guilty plea. . . . .

(Gov't Obj. 3-4; see also id. at 4 ("Petitioner is now simply recycling this same claim by finding a new spin on the same old argument – that his former counsel's ineffectiveness led him to plead guilty.").)  Thus, the Government concludes, Caramadre has already been "afforded the opportunity for full and fair litigation of his counsel's alleged ineffectiveness in the context of his decision to plead guilty, as required by the Supreme Court in Withrow,"[2] (id. at 4), and is "barred from rehashing the same argument once again" (id. at 5).

---

[2] Withrow v. Williams, 507 U.S. 680, 721 (1993)(Scalia, J., concurring in part and dissenting in part)("[A] prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim.").

Caramadre responds that "the government's argument that Petitioner has somehow 'waived' his right to bring the instant Petition, is without merit." (Caramadre Reply 6.)[3]

> The issue that forms the basis for the instant petition — failure to investigate whether Mr. Caramadre's co-defendant would provide meaningful exculpatory testimony at a separate trial, and/or failing to move the Court for a severance on that basis — is a free standing issue that has never been previously raised and has never been previously litigated or adjudicated either by this Court or in Petitioner's direct appeal to the First Circuit Court of Appeals. It is now being raised, for the first time, by collateral attack in the present habeas corpus proceeding (28 U.S.C. § 2255).

(Id. at 5.) He further asserts that:

> [T]he government's contention that the Petitioner was somehow required — at the hearing on his motion to withdraw his plea — to raise every conceivable issue regarding the conduct of his counsel, is squarely contradicted by this Court's express instruction to Petitioner that: "Should Caramadre wish to levy a more thorough attack on his counsel, he is free to do [so] via a proper collateral attack."

(Id.(quoting Caramadre IV, 957 F. Supp. 2d at 174 n.9)).[4]

---

[3] Page citations refer to the ECF pagination.

[4] Caramadre also states that "[t]he cases relied upon by the government as authority for its 'waiver' argument . . . are so factually dissimilar as to provide no point of comparison to the circumstances extant in this case." (Caramadre Reply 6 (citing Withrow v. Williams, 507 U.S. 680 (1993); United States v. Perez, 129 F.3d 255, 260 (2nd Cir. 1997); Argencourt v. United States, 78 F.3d 14, 16 n.1 (1st Cir. 1996))). As Caramadre fails to develop this argument further, the Court declines to address it. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990)(noting "settled appellate rule that issues adverted to in a perfunctory

As previously noted, on February 28, 2013, Caramadre, now represented by new counsel, filed a motion to withdraw his plea. The motion was fully briefed (see ECF Nos. 122-1, 130, 143, 144), and the Court conducted a four-day evidentiary hearing (see Docket). At the conclusion of the hearing, the Court denied the motion from the bench. See Caramadre IV, 957 F. Supp. 2d at 165. The Court subsequently issued a Memorandum of Decision elaborating on its ruling. See id. at 164-65 ("For the reasons stated at the conclusion of the Hearing, and set forth in more detail herein, the Court found the Motion to be entirely meritless, bordering on frivolous, and denied it from the Bench.").

Caramadre relies on the Court's statement in its Memorandum of Decision that "[s]hould Caramadre wish to levy a more thorough attack on his counsel, he is free to do [so] via a proper collateral attack." (Caramadre Reply 5 (citing Caramadre IV, 957 F. Supp. 2d at 174 n.9); see also Caramadre Mem. 8 n.1). The Court's footnote reads in full:

> Throughout these proceedings, Caramadre has continually sought to morph this Motion into a more general attack on the effectiveness of his counsel. This strategy was improper, resulting in significant delays in the proceedings and causing multiple distractions from the true nature of the Motion. Counsel's alleged ineffectiveness is only relevant to the extent it affected Caramadre's decision to plead guilty. Should

manner, unaccompanied by some effort at developed argumentation, are deemed waived").

Caramadre wish to levy a more thorough attack on his counsel, he is free to do so via a proper collateral attack, though the Court notes that, based on the evidence presented at the Hearing, which ploughed the depths of the effectiveness of the representations provided by Mr. Lepizzera and Mr. Traini, it appears that such an attack would be futile.

Caramadre IV, 957 F. Supp. 2d at 174 n.9 (emphasis added). In the instant Motion to Vacate, Caramadre's focus is also on counsel's alleged ineffectiveness as it relates to his decision to plead guilty. (Mot. to Vacate 5.) Contrary to Caramadre's argument, then, the question is not whether counsel was required "to raise every conceivable issue regarding the conduct of his counsel" (Caramadre Reply 5), but, rather, whether the ineffectiveness Caramadre alleges here "affected [his] decision to plead guilty," Caramadre IV, 957 F. Supp. 2d at 174 n.9. Therefore, the Court turns to Caramadre's motion to withdraw his guilty plea.

Part of Caramadre's allegation of ineffective assistance in that motion involved counsel's failure to hire an investigator to interview witnesses. Id. at 176-77. The hearing transcript reflects that Caramadre initially instructed trial counsel not to hire an investigator to interview witnesses,[5] but subsequently directed counsel to hire an investigator to explore several

_____

[5] In fact, Caramadre initially told counsel that an investigator was unnecessary because "he knew all of the facts . . . ." Caramadre IV, 957 F. Supp. 2d at 176 n.13.

specific potential witnesses.  <u>Id.</u> at 176 n.13; (<u>see also</u> Transcript of May 13, 2013, hearing on Mot. to Withdraw Plea ("Day 2 Tr.") 63-65, ECF No. 178; Transcript of May 14, 2013, hearing on Mot. to Withdraw Plea ("Day 3 Tr.") 42, 45, ECF No. 179.)[6]  There is no apparent reason why Caramadre could not have included Radhakrishnan on that list—except, perhaps, that he had not thought of it yet.  Thus, the Government's point regarding waiver is well-taken.

The Court need not decide the issue, however, because, even assuming that Caramadre has not waived his claim, the allegation that Caramadre received ineffective assistance based on trial counsel's alleged failure to interview Radhakrishnan to ascertain whether he had exculpatory evidence, or file a motion to sever on that basis, fails on the merits.

B.   Merits

The record in this case reflects that on May 30, 2012, Radhakrishnan, through counsel, filed a motion to sever his trial from Caramadre's (ECF No. 58).  Radhakrishnan argued in part that

---

[6] The Court will hereafter refer to the transcripts of the evidentiary hearing on Caramadre's motion to withdraw his plea as follows: Transcript of April 24, 2013, hearing (ECF No. 147) ("Day 1 Tr."); Transcript of May 13, 2013, hearing (ECF No. 178) ("Day 2 Tr."); Transcript of May 14, 2013, hearing (ECF No. 179) ("Day 3 Tr."); and Transcript of May 20, 2013, hearing (ECF No. 180) ("Day 4 Tr.").

"because the co-Defendants' defenses will be so antagonistic to one another, the jury will hear otherwise inadmissible bad-character evidence against each Defendant and be required to choose one Defendant over the other . . . ." Caramadre I, 882 F. Supp. 2d at 304. After hearing, the Court denied the motion, noting the preference for joint trials in the federal system because "[t]hey promote efficiency and serve the interests of justice . . . ." Id. (alterations in original).

Radhakrishnan subsequently filed a notice of intent to proceed pro se (ECF No. 73), which the Court granted and appointed stand-by counsel during an August 7, 2012, hearing. (See Docket.) This development prompted Caramadre to file a motion to sever his trial from Radhakrishnan's (ECF No. 80), arguing that Radhakrishnan's self-representation would result in "irremediable prejudice" to Caramadre. Caramadre II, 2012 WL 4364529, at *1. The Court denied Caramadre's motion, again pointing out that "joint trials are preferred in the federal system," especially in conspiracy cases. Id.

Caramadre then filed a motion for leave to waive a jury trial and proceed with a bench trial (ECF No. 82), as an alternative to severance. See Caramadre III, 2012 WL 4762189, at *1. The Government opposed this motion (ECF No. 85), and the Court denied it, citing its belief that a fair trial, with an impartial jury,

could be obtained.  See id. at *2.  The Court further noted its intention to "provide comprehensive instructions to ensure the jury remains impartial and no party is prejudiced," id., and its "ability to sever the trial at a later date should it become necessary," id.

Against this backdrop, the Court turns to the merits of Caramadre's claim.

Caramadre's claim can be broken into three components: counsels' failure to investigate what testimony Radhakrishnan would have been willing to provide had the Defendants been tried separately; counsels' failure to move to sever the trials based on Caramadre's need for Radhakrishnan's testimony; and the resulting unknowing and involuntary entry of Caramadre's plea.  (Mot. to Vacate 5.)  The Court addresses each of these issues in turn.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."  Strickland, 466 U.S. at 691; see also Janosky v. St. Amand, 594 F.3d 39, 49 (1st Cir. 2010) (quoting Strickland).  However, "this duty does not invariably require a lawyer, at all times and under all circumstances, to probe every evidentiary lead."  Janosky, 594 F.3d at 49; see also United States v. Pellerito, 878 F.2d 1535, 1540 (1st Cir. 1989)("'Effectiveness' does not require that counsel jump through every conceivable hoop,

16

or engage in futile exercises."). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." Strickland, 466 U.S. at 691. "The relevant inquiry is not what defense counsel might ideally have mounted but, rather, whether the choice that he made was within the universe of objectively reasonable choices." Janosky, 594 F.3d at 49. Moreover,

> The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.

Strickland, 466 U.S. at 691.

Radhakrishnan has provided an affidavit ("Radhakrishnan Aff.," ECF No. 267-3) in which he asserts that he would have been willing to testify for Caramadre at a separate trial. (Radhakrishnan Aff. ¶ 8.) At the time, however, counsel had no reason to believe that Radhakrishnan would provide exculpatory testimony for Caramadre. See Strickland, 466 U.S. at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").

On the contrary, Radhakrishnan had already stated in his motion to sever that his defense would be severely antagonistic to Caramadre's. (See Memorandum of Law in Support of Defendant Raymour Radhakrishnan's Motion to Sever ("Radhakrishnan Severance Mem." 8, ECF No. 58); (Gov't Ex. B 7, ECF No. 271-2); see also Caramadre I, 882 F. Supp. 2d at 304. As noted by the Government (Gov't Obj. 7), Radhakrishnan argued that:

> Mr. Caramadre was the older experienced businessman and known philanthropist while Mr. Radhakrishnan was his young aide in his first job out of college. Mr. Caramadre had the money, made the decisions, and had devised the investment strategy at issue in this case many years earlier. Mr. Radhakrishnan was paid a salary, was told what to do, and was asked to learn on the job. Part of Mr. Radhakrishnan's defense will be based on the theory that Mr. Caramadre was always in charge, he directed Mr. Radhakrishnan to perform certain acts, and assured him that all of the business they were conducting was legal.

(Radhakrishnan Severance Mem. 7.) The fact that Radhakrishnan now states that, had he been asked, he would have agreed to testify for Caramadre in a separate trial (Radhakrishnan Aff. ¶ 8), has no bearing on the decisions of counsel, based on the facts before them at the time, leading up to the trial. See Strickland, 466 U.S. at 689 (warning that court should "eliminate the distorting effects of hindsight" in assessing counsel's conduct and "evaluate the conduct from counsel's perspective at the time"); see also Lee, 137 S. Ct. at 1967; Premo v. Moore, 562 U.S. 115, 124

(2011)("Acknowledging guilt and accepting responsibility by an early plea respond to certain basic premises in the law and its function.  Those principles are eroded if a guilty plea is too easily set aside based on facts and circumstances not apparent to a competent attorney when actions and advice leading to the plea took place.").

Further, there is no evidence in the record that Caramadre asked trial counsel to contact Radhakrishnan's counsel or, after Radhakrishnan determined to represent himself, contact him directly, with respect to testifying for Caramadre.  Nothing in Caramadre's affidavit ("Caramadre Aff.," ECF No. 267-2), indicates that Caramadre made such a request to counsel.  He did, as noted above, eventually discuss hiring an investigator to interview other witnesses, but the record does not reflect that Radhakrishnan was ever mentioned.  See Caramadre IV, 957 F. Supp. 2d at 176 n.13; (see also Day 2 Tr. 55, 63-68, 74-75; Day 3 Tr. 26-57; Day 4 Tr. 37-38, 79-80).

"The decision to interview potential witnesses, like the decision to present their testimony, must be evaluated in light of whatever trial strategy reasonably competent counsel devised in the context of the particular case."  Lema, 987 F.2d at 55.  Trial counsel testified at the hearing on Caramadre's motion to withdraw his guilty plea that their strategy was to show that:

> (1) there was no conspiracy between Caramadre and
> Radhakrishnan; (2) to the extent Radhakrishnan did make
> misrepresentations to the terminally ill, he did so
> without Caramadre's knowledge or approval; (3) some of
> the alleged misrepresentations to the insurance
> companies were not misrepresentations at all while
> others were not material; and (4) the insurance
> companies either did not lose money or lost money due to
> their own willful blindness.

Caramadre IV, 957 F. Supp. 2d at 175; (see also Day 3 Tr. 20-22;

Day 4 Tr. 20-21). While Radhakrishnan's affidavit, executed well

over four years after the fact, appears to support the first two

defenses (Radhakrishnan Aff. ¶¶ 12-23), counsel had no reason to

suspect that that was the case, either prior to or during the

trial. In fact, Mr. Lepizzera, one of Caramadre's two trial

attorneys, testified that Caramadre had made certain "admissions"

to him which led him to believe that there was a valid basis on

which to enter the plea. (Day 2 Tr. 117-18, 126-27, 143; Day 3

Tr. 95-98, 113, 125, 158-59, 185); see also Caramadre IV, 957 F.

Supp. 2d at 183 (citing Day 2 Tr. 117-18, 121, 126-27; Day 3 Tr.

194 ("Mr. Lepizzera and Mr. Traini both testified that they knew

there was a factual basis to support the plea . . . ."); id. at

185 ("Mr. Lepizzera and Mr. Traini testified that they knew based

on their investigation and based on admissions from Caramadre that

the Statement of Facts was true.")).

Finally, Radhakrishnan pled guilty at the same time Caramadre

did. (Transcript of November 19, 2012, Change of Plea hearing

("Plea Hr'g. Tr.") 25-26.)  He admitted that he was guilty of the
same two counts, Counts Three (wire fraud) and Nine (conspiracy)
(id. at 17-18, 26; Plea Agreement, ¶ 1.a.) and agreed to the
detailed statement of facts which was part of both Defendants'
Plea Agreements. (Plea Hr'g. Tr. 25; Plea Agreement, Statement of
Facts, ECF No. 105-1, ECF No. 106-1; see also Gov't Obj., Ex. A.,
ECF No. 271-1.)  Thus, Radhakrishnan either committed perjury when
he signed the Plea Agreement and testified at the change of plea
hearing, or he is committing perjury now.  "[A] defendant is
normally bound by the representations he makes in open court at
the time of his plea because they are 'more likely to be reliable
than later versions prompted by second thoughts.'"  Caramadre IV,
957 F. Supp. 2d at 167 (quoting United States v. Padilla-Galarza,
351 F.3d 594, 598 (1st Cir. 2003)); see also United States v.
Gates, 709 F.3d 58, 69-70 (1st Cir. 2013) (same).

In Caramadre IV, the Court found that counsels' decision not
to hire an investigator to interview the witnesses suggested by
Caramadre was not ineffective assistance of counsel.  957 F. Supp.
2d at 177.  The Court reaches the same conclusion with respect to
counsels' actions (or inaction) with respect to Radhakrishnan.

Next, Caramadre asserts that trial counsel were ineffective
due to their failure to move for a severance pursuant to Fed. R.

Crim. P. 14 based on his need for Radhakrishnan's testimony.  (Mot.
to Vacate 5.)  Rule 14 provides in relevant part that:

> If the joinder of offenses or defendants in an
> indictment, an information, or a consolidation for trial
> appears to prejudice a defendant or the government, the
> court may order separate trials of counts, sever the
> defendants' trials, or provide any other relief that
> justice requires.

Fed. R. Crim. P. 14(a).

As previously discussed, by the time Caramadre's trial began,
the Court had already denied two motions for severance.  Caramadre
II, 2012 WL 4364529, at *1; Caramadre I, 882 F. Supp. 2d at 304.
The Court had also denied Caramadre's motion to waive a jury trial.
Caramadre III, 2012 WL 4762189, at *1.  The Court subsequently
denied Caramadre's motion to withdraw his guilty plea.  Caramadre
IV, 957 F. Supp. 2d at 165, 186.  Tellingly, the Court stated in
its Memorandum of Decision that it believed that the purpose of
that motion was, at least in part, "a way to get what he wanted
from the start, which is a trial severed from Radhakrishnan
. . . ."  Id. at 184; see also id. ("Caramadre attempted on at
least two occasions to sever his trial from Radhakrishnan's, once
through a traditional motion to sever and once through a more
creative motion for a bench trial.")(internal citations omitted).
Given the fact that the Court had rejected Radhakrishnan's attempt
to sever his trial from Caramadre's and Caramadre's two attempts

to sever his trial from Radhakrishnan's, it defies logic to think that the Court would have granted yet another motion to sever.

Caramadre, however, suggests that the motion to sever he faults counsel for failing to file would not necessarily have come after the previous two motions to sever (as well as his motion to waive a jury trial) but, perhaps, before the prior motions. (Caramadre Reply 9 ("[I]t is Petitioner's contention that his counsel should have made inquiry of Mr. Radhakrishnan as soon as possible.")). Caramadre takes issue with "the government's incongruous assumption that the severance motion based upon the need for Mr. Radhakrishnan['s] exculpatory testimony would have been brought <u>after</u> the Court had already denied two previous severance motions (based on completely different grounds) . . . ." (<u>Id.</u> at 9-10.) The problem with Caramadre's argument is that while the motions may have been brought on different grounds, the Court's rationale for denying them was the same.

With respect to Radhakrishnan's motion to sever, the Court stated:

> However, joint trials are preferred in the federal system because [t]hey promote efficiency and serve the interests of justice by avoiding the . . . inequity of inconsistent verdicts. Indeed, the presumption and common practice favor trying together defendants who are charged with crimes arising out of a common core of facts.

23

<u>Caramadre I</u>, 882 F. Supp. 2d at 304 (alterations in original)(internal citations and quotation marks omitted). Further,

> In this matter, concerns of efficiency and the due administration of justice are especially apparent, as the trial is expected to span several months, the government will call between seventy-five and one hundred witnesses to testify, and the government proffers that most of the evidence would need to be introduced at both trials, if Defendants were in fact tried separately. Hence, there can be no doubt that a joint trial would significantly conserve judicial and prosecutorial resources.

<u>Id.</u> at 305. Regarding Caramadre's motion to sever, the Court reiterated:

> As this Court previously explained when Radhakrishnan made a similar motion to sever, joint trials are preferred in the federal system because [t]hey promote efficiency and serve the interests of justice by avoiding the . . . inequity of inconsistent verdicts. This is especially true in a conspiracy case.

<u>Caramadre II</u>, 2012 WL 4364529, at *1 (alterations in original) (internal citations omitted). The same concerns would have been present even if counsel had filed an earlier motion to sever.

Moreover, as is clear from the above discussion, counsel had no reason to believe that Radhakrishnan possessed exculpatory evidence, based on Radhakrishnan's own statements and actions. It was not unreasonable for counsel to conclude that filing a motion to sever based on Caramadre's supposed need for Radhakrishnan's testimony would be futile. <u>See</u> <u>Lema</u>, 987 F.2d at 55 ("Counsel

24

need not chase wild factual geese when it appears, in light of
informed professional judgment, that a defense is implausible or
insubstantial as a matter of law, or, as here, as a matter of fact
and of the realities of proof, procedure, and trial tactics.");
see also Knight v. Spencer, 447 F.3d 6, 16 (1st Cir. 2006)(quoting
Vieux v. Pepe, 184 F.3d 59, 64 (1st Cir. 1999))("[F]ailing to
pursue a futile tactic does not amount to constitutional
ineffectiveness.")(alteration in original); Dure v. United States,
127 F. Supp. 2d 276, 280 (D.R.I. 2001)(citing Vieux, 184 F.3d at
64 ("Counsel cannot be deemed ineffective for failing to pursue
futile arguments.").

The Court's finding that Caramadre's counsel were not
ineffective for failing to hire an investigator to look into the
possibility that Radhakrishnan would provide exculpatory testimony
at a separate trial and failing to move to sever on that basis
effectively renders moot the final portion of Caramadre's final
claim, that, as a result of counsels' ineffectiveness, his plea
was not knowingly and intelligently entered. Should more be
required, however, one need only look to the plea colloquy and
Caramadre's contemporaneous statements.[7]

---

[7] The Plea Agreement itself directly contradicts the instant
claim that Caramadre's plea was not knowingly and voluntarily
entered. (Plea Agrmt. ¶ 1.b. ("Defendant further agrees that

25

During the plea colloquy, the Court first confirmed that Caramadre "fully underst[ood] all the proceedings that are going on here . . . ." (Plea Hr'g. Tr. 5). The Court then ascertained that Caramadre had a copy of the charges against him, had discussed those charges with counsel, had signed a plea agreement, and was "fully satisfied" with the representation he had received. (<u>Id.</u> at 6-7.) Caramadre acknowledged that no one had promised him anything (other than what was contained in the Plea Agreement) or threatened him in order to get him to plead guilty. (<u>Id.</u> at 7-8.) After ensuring that Caramadre understood the civil rights he could lose by pleading guilty, the maximum statutory penalties, the sentencing guidelines, and the constitutional rights he was giving up by pleading guilty (<u>id.</u> at 8-16), the Court asked: "Now, by entering these pleas of guilty today, you're giving up all of these rights that I've just described to you and you understand that there will not be or we will not complete the trial in this case. Do you understand that?" (<u>Id.</u> at 16.) Caramadre responded: "Yes, your Honor." (<u>Id.</u>) The Court then asked the Government to put on the record the elements it would have to prove and to review the agreed-to statement of facts. (<u>Id.</u> at 17.)

---

Defendant's decision to enter into a package plea agreement is completely knowing and voluntary.")).

At the conclusion of the Government's recitation of the elements and facts, the following exchange occurred:

> THE COURT: Now, you heard Mr. Vilker describe the statement of facts, which you've signed, the only difference being that he didn't list the long list of insurance companies and other companies.
>
> So I need to ask you on the record, do each of you agree that these facts are true and these are the facts of the case?  Mr. Caramadre?
>
> MR. CARAMADRE: Yes, your Honor.
>
> . . . .
>
> THE COURT: I'm now going to ask each of you how you wish to plead to these charges, guilty or not guilty? Beginning with you, Mr. Caramadre.
>
> MR. CARAMADRE: Guilty.
>
> . . . .
>
> THE COURT: It is the finding of this court in the case of the United States versus Joseph Caramadre and Raymour Radhakrishnan that the Defendants are fully competent and capable of entering an informed plea; that the Defendants are aware of the nature of the charges against them and the consequences of their pleas; and their pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the offenses.  These pleas are, therefore, accepted, and the Defendants are hereby adjudged guilty of those offenses.

(Id. at 25-26.)  At no point during the foregoing plea colloquy did Caramadre evince any hesitation, indecision, or desire to confer with counsel.  See Caramadre V, 807 F.3d at 372 ("Caramadre unhesitatingly agreed under oath with the prosecutor's version of

the relevant events and unambiguously admitted his guilt."); see also United States v. Fernandez-Santos, 856 F.3d 10, 20 (1st Cir. 2017)(citing United States v. Chambers, 710 F.3d 23, 29 (1st Cir. 2013))("The Rule 11 colloquy provides strong evidence that [the defendant] pled guilty knowingly, intelligently, and voluntarily.").

Further, Caramadre's contemporaneously expressed reasons for pleading guilty do not reflect any lack of understanding of what he was doing by pleading guilty, feelings of having been coerced or induced, or dissatisfaction with counsel. Rather, as the Court previously stated:

> Lastly, and perhaps most telling, are the contemporaneous or near-contemporaneous statements made by Caramadre himself in the days leading up to the plea and the days and weeks following the plea. On Thursday morning, November 15, Caramadre instructed Mr. Lepizzera and Mr. Traini to open plea negotiations because "my wife's health is very serious, my children cannot go without a father who would be potentially incarcerated for many, many years and without a mother who is healthy or possibly even alive." That weekend, when speaking with Reverend Lacombe, Caramadre stated that "his primary motivation, corroborated by his attorneys at the time, was to protect his fragile wife and family from further psychological demise." According to his wife, Caramadre "permitted his attorneys to negotiate a plea bargain with the Government . . . . because he was overcome by his fears and distress regarding my welfare and that of our children." Even on the day of the plea, Caramadre told his aunt, Susan Caramadre, that "he pled guilty because his family needed him, that he had moral obligations and this is what was necessary.

Caramadre IV, 957 F. Supp. 2d at 173 (alteration in original) (internal citations omitted). Even as he began to contemplate withdrawing his plea, Caramadre told Mr. Lepizzera several weeks later that he "had to protect my wife and children but I'm not doing it anymore. My wife is much better now." Id.

It is clear from the foregoing plea colloquy and Caramadre's statements that he chose to plead guilty. He knew exactly what he was doing, and why. He was not coerced, and his plea was not the result of any perceived ineffectiveness of his trial counsel. Caramadre's claim that his trial counsel were ineffective for failing to hire an investigator to interview Radhakrishnan or move to sever his trial from Radhakrishnan's (based on the notion that Radhakrishnan might have provided exculpatory evidence) is unpersuasive. Nor did counsels' performance render his plea unknowing or involuntary. See Hill, 474 U.S. at 56 ("Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases.")(internal quotation marks omitted).[8] Therefore, the Court

---

[8] Both of his trial attorneys testified that they believed pleading guilty was in Caramadre's best interest. (Day 3 Tr. 133, 192; cf. Day 3 Tr. 114 (noting that it would not have been in Caramadre's best interest to continue with the trial)).

cannot conclude that Caramadre's guilty plea was anything but knowing, intelligent, and voluntary.

Caramadre has not demonstrated that counsels' conduct was "outside the wide range of professionally competent assistance," Manon, 608 F.3d at 131; see also Strickland, 466 U.S. at 690, or "fell below an objective standard of reasonableness," Strickland, 466 U.S. at 688. Therefore, he has not satisfied the first prong of the Strickland test.

Having determined that counsels' performance was not deficient, the Court need not address whether Caramadre has demonstrated prejudice under Strickland's second prong. See Knight v. Spencer, 447 F.3d at 15 ("Knight has not made a showing regarding the first prong with respect to any of his four ineffective assistance claims, so we do not reach the second prong of the analysis."); see also Strickland, 466 U.S. at 697. In the interest of completeness, however, the Court will briefly discuss the prejudice component of the Strickland analysis.

As summarized above, in order to show prejudice in the plea context, a defendant must "demonstrate 'a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Premo, 562 U.S. at 129 (quoting Hill, 474 U.S. at 59); see also Lee, 137 S. Ct. at 1965 (same). He need not show that "had he gone to trial, the

30

result of that trial would have been different than the result of the plea bargain." Lee, 137 S. Ct. at 1965 (internal quotation marks omitted). That is not to say that a defendant never looks at the possibility of conviction; rather, "defendants obviously weigh their prospects at trial in deciding whether to accept a plea." Id. at 1966; see also id. ("The decision whether to plead guilty also involves assessing the respective consequences of a conviction after trial and by plea."). The Court reiterates the Supreme Court's admonishment that courts "should not upset a plea solely because of post hoc assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," id. at 1967, but, rather "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences," id.

Here, Caramadre stated at the time he entered his plea that his "primary motivation . . . was to protect his fragile wife and family from further psychological demise." Caramadre IV, 957 F. Supp. 2d at 173. In addition, he had heard at least the beginning of the Government's case against him, since the trial had begun. As the Court stated in Caramadre IV, "under the circumstances, and in light of the damning evidence of his guilt presented by the government, the most rational thing Caramadre could have done was exactly what he did—negotiate the best plea deal he could and end the trial." Id. at 174; see also Padilla, 559 U.S. at 372 (noting

31

that defendant must demonstrate that "a decision to reject the plea bargain would have been rational under the circumstances").

Further, in weighing the consequences of a guilty verdict at trial, Caramadre was facing a bleak future. See Lee, 137 S. Ct. at 1966. During the change of plea hearing, the Court summarized the maximum statutory penalties Caramadre faced:

> So the maximum statutory penalties for the two counts that you're pleading guilty to are as follows: With respect to Count 9, 20 years of imprisonment, a fine of $250.00, a term of supervised release of three years and a mandatory special assessment of $100.
>
> With respect to Count 33, five years of imprisonment, a fine of $250,000, a term of supervised release of three years and a mandatory special assessment of $100.
>
> If these penalties were imposed consecutively, the maximum penalties would be 25 years of imprisonment, a $500,00 fine, three years of supervised release and a mandatory special assessment of $200.

(Plea Hr'g. Tr. 9-10; see also Plea Agmt. ¶ 6.) Under the terms of the Plea Agreement, the Government agreed to recommend imposition of a term of imprisonment no greater than 120 months, (Plea Hr'g. Tr. 10; Plea Agrmt. ¶ 2.a.), and the Court agreed to accept that recommendation (Plea Hr'g. Tr. 9, 11). In addition, the Government agreed to dismiss the remaining sixty-four counts of the Indictment at the time of Caramadre's sentencing. (Id. ¶ 2.d.) Even assuming that Caramadre expected to be acquitted at trial, "the possibility of even a highly improbable result may be

32

pertinent to the extent it would have affected his decisionmaking."

Lee, 137 S. Ct. at 1967.  In instructing counsel to pursue plea negotiations with the Government, Caramadre was at least cognizant of the consequences of a guilty verdict.  (See Day 1 Tr. 68-69)("[M]y wife's health is very serious, my children cannot go without a father who would be potentially incarcerated for many, many years . . . .").

Clearly Caramadre's counsel negotiated a favorable plea agreement.  Caramadre's potential term of incarceration was capped at ten years.  Counsel were free to argue for a sentence below the cap, which they did during the sentencing hearing.  (Transcript of December 16, 2013, Sentencing Hearing ("Sent. Hr'g. Tr.") 45-46, ECF No. 251.)  Caramadre was ultimately sentenced to 72 months' incarceration.  (Id. at 67, 70.)  Sixty-four of the sixty-six counts against him were dismissed by the Government.  (Id. at 71.)

Caramadre cannot "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," Hill, 474 U.S. at 59, despite his current statements to the contrary (Caramadre Aff. ¶¶ 4, 8).  He, therefore, cannot demonstrate prejudice under Strickland.

Caramadre has not met his burden of showing that counsel provided less than "reasonably effective assistance under the

circumstances then obtaining," <u>Natanel</u>, 938 F.2d at 310, or a reasonable probability that, but for counsels' alleged errors, "the result of the proceeding would have been different," <u>Strickland</u>, 466 U.S. at 694, that is, he would not have pled guilty but instead would have insisted on continuing the trial, <u>see</u> <u>Hill</u>, 474 U.S. at 59.

IV.  Conclusion

Based on the foregoing, Caramadre's ineffective assistance of counsel claim is rejected in its entirety.  Accordingly, the Motion to Vacate is DENIED.

<u>RULING ON CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA) because Caramadre failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).

Caramadre is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter. See Rule 11(a), Rules Governing Section 2255 Proceedings.

IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date:  October 22, 2018